HRUTKAY LAW PC
MATTHEW HRUTKAY, Bar No. 297485
matt.hrutkay@hrutkaylaw.com
600 W. Broadway, Suite 700
San Diego, CA. 92101
Tel: (858) 868-0018

TENCER SHERMAN LLP
PHILIP C. TENCER, ESQ., Bar No. 173818
Phil@TencerSherman.com
12520 High Bluff Drive, Suite 230
San Diego, CA  92130
T: 858.408.6900
F:858.754.1260

*Attorneys for Plaintiff*
*CHRISTOPHER RICHMOND*

## UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RICHMOND, an individual; <br><br> Plaintiff, <br><br> v. <br><br> DAVID MIKKELSON, an individual; BRAD WESTBROOK, an individual; and DOE DEFENDANTS 1-10, inclusive <br><br> Defendants, <br><br> and <br><br> SNOPES MEDIA GROUP, INC. <br><br> Nominal Defendant. | Case No:  **'20CV1925 BEN KSC** <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

*(left margin, vertical text)* HRUTKAY LAW PC 600 W. BROADWAY, SUITE 700 SAN DIEGO, CA 92101

- 1 -

## **COMPLAINT**

Plaintiff Christopher Richmond ("Richmond" or "Plaintiff"), both in his individual capacity and derivatively on behalf of Nominal Defendant Snopes Media Group, Inc. ("Snopes" or "Company") by and through his undersigned counsel, alleges, on the basis of personal knowledge as to his own actions, and on information and belief as to the actions of others, as follows:

## **I.   INTRODUCTION**

1.      Snopes' primary operation is the ownership and publication of Snopes.com, a website that is self-proclaimed as the "definitive Internet reference source for urban legends, folklore, myths, rumors, and misinformation. . . ."

2.      This action concerns Defendant David Mikkelson's ("Mikkelson") effort to defraud Snopes and its investors, by directing the Company to pay hundreds of thousands of dollars to cover his personal legal fees for claims against Plaintiff Richmond and others, when those claims provided no benefit to Snopes, given that such claims are pursued in his individual capacity to further his personal interests.

3.      Mikkelson also used his control over Snopes to approve legal fee advancement requests made by two others who work at Snopes, knowing that the documents in which the advancements were requested, and which purported to provide security to the Company, contained false statements about the basis for those requests and how the advancements would be used.

4.      Snopes' CFO, Defendant Brad Westbrook ("Westbrook"; together with Mikkelson, "Defendants") also played a key role in Mikkelson's fraudulent scheme, by looking the other way and approving payment of wrongful legal fee advancements, knowing full well that such advancements provided no benefit to Snopes, and that those legal fees were being used for personal claims, which ultimately allowed Mikkelson to pursue his personal vendetta against Richmond and others through costly litigation on Snopes' dime.

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

5.     These advances ultimately caused the Company to report losses for 2017 and 2018, when Snopes would have reported a significant profit for those years if it had not paid for Mikkelson and others' personal legal fees.

6.     Defendants' harm to Snopes and its shareholders did not stop there. Doubling down, they caused the Company to file income tax returns in 2017 and 2018 that improperly reported Snopes' ordinary business income, by claiming these personal legal fee advances as deductible business expenses, before there has been any determination that the advances served any benefit to the Company or were legally permitted. Because it was "premature" for the Company to determine indemnification of Mikkelson and others was proper, those fees were not deductible business expenses, and should not have been deducted on Snopes' 2017- and 2018- income tax returns.

7.     Because of this error, Snopes's ordinary business income was underreported by millions over the course of two years. And because Snopes is a pass-through S-corporation, its shareholders will be the ones left holding the bag, and who will be personally liable for any tax deficiencies and/or penalties related to Snopes' underreporting of income and improper deduction of personal legal fee advances.

8.     The actions of Defendants Mikkelson and Westbrook were the root cause of injury to Snopes and its shareholders, and the Company and its shareholders deserve to be justly compensated for the losses Defendants caused.

## II.    PARTIES

9.     Plaintiff Christopher Richmond is an individual who currently serves and has served on Snopes' Board of Directors ("Board") since March 20, 2018. At all times relevant herein, he was a Snopes shareholder. He brings these claims against Defendants in his individual capacity as a Snopes shareholder and derivatively on behalf of and for the benefit of Snopes. He is a resident of San Juan, Puerto Rico.

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

10. David Mikkelson is an individual who serves as Snopes' President, Chief Executive Officer ("CEO"), Chair of the Board ("Chair"), and its largest single shareholder. As an officer and director of Snopes, Mikkelson owes the Company and its shareholders a fiduciary duty with respect to matters concerning Snopes. Mikkelson initially formed Snopes (f/k/a Bardav, Inc.) in 2003 with his (now) ex-wife Barbara. On information and belief, Mikkelson owns 50% of the Snopes' outstanding shares. On further information and belief, Mikkelson is a citizen of the State of Washington, and resides in Port Orchard, Washington.

11. Brad Westbrook ("Westbrook") is an individual, and serves as Snopes' Chief Financial Officer ("CFO"), corporate Secretary, and he is a director on Snopes' Board. As such, Westbrook owes the Company and its shareholders a fiduciary duty with respect to matters concerning Snopes. Westbrook was initially appointed as a director by Mikkelson in 2017 to fill a vacancy on the then-two-member Snopes' Board, following Barbara Mikkelson's resignation nearly a year prior. Westbrook was appointed as Snopes' CFO on October 27, 2017. On further information and belief, Westbrook is a citizen of the State of Connecticut, and resides in Darien, Connecticut.

12. Plaintiff has not ascertained the true names and capacities of DOES 1 through 10, inclusive ("DOE Defendant(s)") and thus complains against the DOE Defendants by fictitious names. Plaintiff will serve each DOE Defendant with this Complaint upon ascertaining the true and correct name of such DOE Defendant, and/or will amend this Complaint to allege the true and correct name of such DOE Defendant, capacity, and any further wrongful act(s) of such DOE Defendant, when he has ascertained the same. Plaintiff is informed and believes and, on that basis alleges, that each fictitiously named DOE Defendant(s) is responsible in some manner for the acts and omissions alleged in this Complaint and that the acts and

/ / /

/ / /

HEUYKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

omissions of the DOE Defendant(s) proximately caused the wrongful acts alleged and the harm to Plaintiff.

13.     Plaintiff is informed and believes and, on that basis alleges that, at all times alleged in this Complaint, Defendants, as well as the DOE Defendants were the agents, servants, and co-conspirators of one another and were, in committing the acts complained of herein, acting within the scope of their agency and conspiracy, with the full knowledge or subsequent ratification of their principals and co-conspirators.

14.     Nominal Defendant Snopes Media Group, Inc., is a California corporation with its principal place of business in San Diego, California. Snopes has designated itself as an S-Corp for income tax purposes, and thus its ordinary business income and losses are passed through to its shareholders on a pro-rata basis, and the individual shareholders are personally and individually liable for any income taxes relating to the Company's income tax reporting.

## III.   VENUE AND JURISDICTION

15.     This court has personal jurisdiction over Defendants Mikkelson and Westbrook pursuant to California Code of Civil Procedure ("CCP") § 410.10. Both serve as a director and officer of Snopes, a California corporation, a substantial part of both Defendants' misconduct that gave rise to this action occurred in California and/or was directed toward California residents, and/or the primary injury as a result of Defendants' misconduct was felt in California by California residents, and/or Defendants sought to benefit from the laws of the State of California in performing the tortious acts alleged herein in their capacity as officers and directors of a California corporation.

16.     This court has personal jurisdiction over Nominal Defendant Snopes pursuant to CCP § 410.10. Snopes is a California corporation and maintains its principal place of business in San Diego, California, and as such Snopes is a resident and citizen of the State of California.

HEUFKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

17. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen and resident of Puerto Rico. On information and belief, Mikkelson is a citizen and resident of the State of Washington. On further information and belief, Westbrook is a citizen and resident of the State of Connecticut. Nominal Defendant Snopes is a California corporation and maintains its principal place of business in San Diego, California, and as such is a resident and citizen of the State of California. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

18. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

## IV.   FACTUAL ALLEGATIONS

### A.   Plaintiff Invests in Snopes With His Business Partners

19. In July 2016, Plaintiff Richmond, together with the four other members of Proper Media, LLC ("Proper Media"),[1] purchased the single Snopes share previously owned by Barbara Mikkelson, Mikkelson's ex-wife, which represented a 50% equity interest in Snopes (the "Share").

20. Prior to this purchase, Proper Media provided digital advertising and website hosting services for Snopes pursuant to a General Services Agreement ("GSA") executed on or about August 11, 2015. Green was the Proper Media employee primarily responsible for client communication on the Snopes' account. This partnership was smooth and profitable for both Snopes and Proper Media until just after the Proper Media Members purchased the Share.

/ / /

---

[1] In July 2016, there were five members of Proper Media: Christopher Richmond, Drew Schoentrup ("Schoentrup"), Tyler Dunn ("Dunn"), Vincent Green ("Green"), and Ryan Miller ("Miller"; together with Richmond, Schoentrup, Dunn, Green, and Miller, "Proper Media Members")). As discussed in greater detail below, Green and Miller left Proper Media in early 2017 to work for Mikkelson as employees and officers of Snopes.

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

21.     In late 2016, however, under Green's watch, the relationship between Snopes and Proper Media (and the members/shareholders of those entities) soured. On information and belief, between July 1, 2016 and May 4, 2017, and while still a member of Proper Media, Green cooperated with and conspired with Mikkelson and Miller to intentionally frustrate the working relationship between Snopes and Proper Media.

**B.     Green and Miller Breach Their Duties to the Other Members of Proper Media at Mikkelson's Behest**

22.     The cooperation and conspiracy between and among Mikkelson, Green, and Miller was predicated on a secret agreement between them. Pursuant to this agreement, Green and Miller agreed to support Mikkelson in his efforts to use his 50% interest in Snopes to obtain control over the Company, and then to use that control to use Snopes' funds to personally benefit himself, Green, and Miller. To effectuate this scheme, Green and Miller agreed to support Mikkelson's efforts to fractionalize the Share, and to vote their equity interests in Snopes as directed by Mikkelson before he had even formally tried to fractionalize the Share, in an effort to allow Mikkelson to obtain a majority controlling voting bloc which would allow the three of them to do with Snopes as they pleased.

23.     On information and belief, pursuant to this agreement, Mikkelson offered Green and Miller lucrative and influential officer roles within Snopes in exchange for their support and votes in his favor.

24.     On information and belief, this scheme between Mikkelson, Green, and Miller was intended to push out the only other Snopes shareholders, Richmond, Schoentrup, and Dunn, marginalize their influence on Snopes, and to devalue their Snopes' holdings by making them minority interests, rather than the 50% interest that was originally purchased by the Proper Media Members.

/ / /

/ / /

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

25.     In performing the acts cited above, Mikkelson was acting *ultra vires*, and outside of the scope of his authority as an employee, officer, and/or agent of Snopes.

26.     In early 2017, the relationship between Snopes and Proper Media quickly began to unravel, as Mikkelson had intended. Although unaware of Miller's role, Richmond and the other members of Proper Media began to see that Green was not acting in the best interests of Proper Media.

27.     During a February 18, 2017 meeting with Richmond and Schoentrup, Green admitted that he had not been acting in the best interests of Proper Media, and subsequently left the Proper Media offices. He returned later in the day under the guise of obtaining his personal items, but unbeknownst to Richmond and others at Proper Media, Green also took with him Snopes-related items, including, account access information, communications, and confidential source code for the platform created by Proper Media which hosted the Snopes.com website.

28.     At the time that Green left Proper Media, Richmond and other members of Proper Media had no idea that Miller was working with Green and Mikkelson against Proper Media's interests and those of its members. His role in the plan became clear only after he submitted his notice resigning from Proper Media on April 6, 2017 and became a Snopes employee immediately thereafter.

29.     Based on these events, claims were brought in California Superior Court against Mikkelson, Green, and Miller in their individual capacities. In response Mikkelson, Green, and Miller brought numerous cross-claims against Richmond and others, all in their individual capacities, and unrelated to their roles as employees, officers, and/or agents of Snopes.

/ / /

/ / /

/ / /

/ / /

- 8 -

1
2
3

**C.     Mikkelson, Green, and Miller Make False and Misleading Statements to Snopes' Board of Directors to Request Legal Fee Advances in the State Court Action**

4
5
6
7
8
9
10

30.     With Mikkelson as CEO, Chair of the Board, and the largest single shareholder, and with a voting agreement providing majority control, the wheels were in motion. He used this newfound control to pay for what should have been personal expenses – legal fees relating to claims brought against himself, Green, and Miller, in their individual capacities, as well as fees related to cross-claims he, Green, and Miller brought in their individual capacities against Richmond and others.

11
12
13

31.     In the summer and fall of 2017,  Mikkelson, Green, and Miller requested Snopes to indemnify and advance legal fees pursuant to California Corporations Code § 317(b) and (f) and Labor Code § 2802.[2]

14
15

32.     On information and belief, Snopes' corporate counsel, in responding to these requests, described the request for indemnification as "premature."

16
17
18
19

33.     One reason that such determination was premature is that the claims subject to the indemnification requests and advances were brought against Mikkelson, Green, and Miller solely in their individual capacities and not with respect to their roles as Snopes' employees, officers, and/or agents.

20
21
22
23
24

34.     In the fall of 2017, Mikkelson, Green, and Miller each executed an undertaking "[i]n connection with the approval" by Snopes' Board of their requests for legal fee advancements (each individually, an "Undertaking"; collectively, the "Undertakings"). The Undertakings state falsely and misleadingly that the claims for which they sought advances, were brought as "agents" of Snopes. On

25
26
27

---

[2] Corp. Code § 317 allows for indemnification for claims brought "by reason of the fact" that a person was acting as an "agent" for the Corporation, but only "if that person acted in good faith and in a manner the person reasonably believed to be in the best interests of the corporation".

28

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

information and belief, Mikkelson, Green, and Miller each knew and understood that the statements in their respective Undertakings were materially false and misleading. Each intended that Snopes' Board rely on these statements in considering and approving advances of personal legal fees.

35.     The Undertakings also limited the scope to advances of "attorneys' fees and costs incurred in ***defending*** against" the claims brought against Mikkelson, Green, and Miller. This intent rendered the statements in the Undertakings false and misleading, because they omitted to disclose that Mikkelson, Green, and Miller also used and intended to use the advanced funds to file affirmative claims in their individual capacities. On information and belief, Mikkelson, Green, and Miler each knew and understood this statement was false and misleading because it omitted this material information.

36.     Although the Undertakings purported to protect Snopes should it ultimately be determined that Mikkelson, Green, and Miller are not entitled to indemnification, this purported security was illusory, in that these individuals are without sufficient assets available, and had no reasonable expectation of obtaining such assets, to repay the aggregate amount of the attorneys' fees and costs incurred.

37.     Mikkelson and Westbrook, as the only two members of Snopes' Board and in reliance on the statements in the Undertakings, executed three unanimous written consents (the "Consents") approving of the advances to Mikkelson, Green, and Miller "subject to and in accordance with Section 317(f) of the [Corporations Code] and receipt of [the] Undertaking . . . ."[3] Plaintiff Richmond was not a member of the Board at the time the Consents were executed and did not approve of the Advances.

38.     On information and belief, at all times relevant to Snopes' and the Board's consideration of the indemnification and advancement of legal fees

_____

[3] The advancements actually received by Mikkelson, Green, and Miller pursuant to the Consents are defined as the "Advances".

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

requests, Mikkelson knew and understood that: (i) the claims for which the Advances were provided were brought solely in individual capacities (and not by virtue of any role as an employee, officer, and/or agent of Snopes); and that (ii) neither himself, nor Green nor Miller would likely be able to repay Snopes pursuant to the Undertakings if it should ultimately be determined that they did not qualify for indemnification.

39.     On information and belief, invoices reflecting legal fees and costs for which Mikkelson, Green, and Miller sought advancement, reimbursement and/or indemnification pursuant to the Consents were to be submitted to Westbrook in his role as Snopes' CFO. Reasonable review of these invoices would have disclosed to Westbrook the false and misleading nature of the statements made in the Undertakings.

40.     As discussed above, in considering the requests for advances by Mikkelson, Green, and Miller, Snopes' corporate counsel determined it would be premature to indemnify them. For this reason, and also because the Advances to Mikkelson, Green, and Miller were subject to repayment, the advances effectively act as personal loans which are subject to forgiveness, if it should later be determined that indemnification is merited. Pursuant to applicable accounting rules and IRS regulations, only upon the determination that the claims were brought "by reason of the fact" that the "agent" was acting on the company's behalf, and that the "agent" was acting in good faith, can the "agent" be indemnified and the advances properly be characterized as a company business expense.

41.     Because of this, the funds advanced are not properly characterized for accounting and tax reporting purposes as deductible business expenses.

/ / /

/ / /

/ / /

/ / /

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

**D.   Defendants Mikkelson and Westbrook Breach Their Fiduciary Duties by Causing Snopes to Take Impermissible Income Tax Deductions**

42.     On information and belief, Snopes' income tax returns for 2017 ("2017 Returns") represented that Mikkelson and Westbrook both devoted 100% of their respective time to Snopes' business operations. The 2017 Returns also included as a deductible business expense the total amount of the Advances provided to Mikkelson, Green, and Miller, even though there had been no determination that any of the three was entitled to indemnification, and in fact, after Snopes' corporate counsel had deemed any such determination "premature."

43.     For tax year 2017, this specific deduction made the difference between reporting a profit – and thus owing taxes – and claiming a loss. Without this deduction, Snopes would have reported significant ordinary business income, and that income would have passed through to its shareholders on a pro rata basis, who would then be obligated to pay taxes on that income, pursuant to Snopes' status as a designated S-Corp. This sole deduction was critical to the Company's ability to report a loss for 2017, and for the financial consequences to its shareholders. The improper deduction not only caused an improper calculation of the taxes to be paid by each individual shareholder, it also resulted in an overall underpayment of income taxes with respect to Snopes' 2017 income, and the related penalties.

44.     On information and belief, at the time Snopes' 2017 Returns were filed, Mikkelson knew, or intentionally and/or recklessly ignored that the Company's income tax deduction for the Advances did not accurately reflect Snopes' business expenses. Yet Mikkelson still directed the Company to claim these deductions because he would have been subject to a substantial tax liability otherwise. Mikkelson's intentional or reckless conduct as an officer and/or director of Snopes that caused the Company to file these inaccurate 2017 Returns breached his duty of care to Snopes and its shareholders. This conduct also breached his duty

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

of loyalty to Snopes' shareholders, to the extent such conduct was performed to reduce his own personal income tax liability.

45.     On information and belief, at the time Snopes' 2017 Returns were filed, Westbrook knew, or intentionally and/or recklessly ignored that the Company's income tax deduction for the Advances did not accurately reflect Snopes' business expenses. Yet, in his role as CFO and/or Director, Westbrook directed the Company to claim these deductions for the personal benefit of Snopes' largest single shareholder, Mikkelson. Westbrook's failure to adequately review and file accurate income tax returns as the Company's CFO breached his fiduciary duty of care to Snopes and to Mr. Richmond.

46.     On information and belief, Snopes' income tax returns for 2018 ("2018 Returns") represented that Defendants Mikkelson and Westbrook both devoted 100% of their respective time to Snopes' business operations. The 2018 Returns also included as a deductible business expense the total amount of the Advances provided to Mikkelson, Green, and Miller, even though there had been no determination that any of the three was entitled to indemnification, and in fact, after Snopes' corporate counsel had deemed any such determination "premature."

47.     For tax year 2018, this specific deduction made the difference between reporting a profit – and thus owing taxes – and claiming a loss. Without this deduction, Snopes would have reported significant ordinary business income, and that income would have passed through to its shareholders on a pro rata basis, who would then be obligated to pay taxes on that income, pursuant to Snopes' status as a designated S-Corp. This sole deduction was critical to the Company's ability to report a loss for 2018, and for the financial consequences for its shareholders. The improper deduction not only caused an improper calculation of the taxes to be paid by each individual shareholder, it also resulted in an overall underpayment of income taxes with respect to Snopes' 2018 income, and the related penalties.

/ / /

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

48.     On information and belief, at the time Snopes' 2018 Returns were filed, Mikkelson knew, or intentionally and/or recklessly ignored that the Company's income tax deduction for the Advances did not accurately reflect Snopes' business expenses. Yet Mikkelson still directed the Company to claim these deductions because he would have been subject to a substantial tax liability otherwise. Mikkelson's intentional or reckless conduct as an officer and/or director of Snopes that caused the Company to file these inaccurate 2018 Returns breached his duty of care to Snopes and its shareholders. This conduct also breached this duty of loyalty to Snopes' shareholders, to the extent such conduct was performed to reduce his own personal income tax liability.

49.     On information and belief, at the time Snopes' 2018 Returns were filed, Westbrook knew, or intentionally and/or recklessly ignored that the Company's income tax deduction for the Advances did not accurately reflect Snopes' business expenses. Yet, in his role as CFO and/or Director, Westbrook directed the Company to claim these deductions for the personal benefit of Snopes' largest single shareholder, Mikkelson. Westbrook's failure to adequately review and file accurate income tax returns as the Company's CFO breached his fiduciary duty of care to Snopes and to Mr. Richmond.

**E.     Richmond Identifies the Fraud and Breach of Duties**

50.     More than 15 years after its formation, and nearly two years after the Proper Media Members purchased the Share, Mikkelson set Snopes' first Board election. In lieu of having a shareholder meeting, the Proper Media Members and Mikkelson stipulated that Richmond would fill the third Board seat, which had previously been unfilled. Richmond continues to serve as a Snopes' director, alongside Mikkelson and Westbrook.

51.     The first meeting of Snopes' Board following Richmond's election was held on June 14, 2018. At no time prior to that meeting was Richmond provided with materials necessary to make any meaningfully informed decision

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

concerning issues facing the Company. On March 13, 2020, Mikkelson provided Richmond with a preliminary draft of Snopes' financial statements for 2019 ("2019 Financials") in preparation for a Board meeting to be held on March 26, 2020. Throughout his time as a Director, Richmond has been repeatedly denied access to information concerning key issues facing the Company, including, but not limited to the Advances, despite the fact that Mikkelson has engaged in numerous acts to approve self-interested Company decisions and transactions that provide himself with significant personal benefit with little or no identifiable benefit to Snopes.

52.     On review of the 2019 Financials, before he had ever seen any Snopes tax returns, Richmond noticed a line item that appeared to reflect the Advances itemized on the balance sheet.

53.     During the Snopes' telephonic Board meeting on March 26, 2020, Richmond questioned this line item in the 2019 Financials, and asked whether these figures included money paid to Mikkelson, Green, and Miller pursuant to the Advances. The following day, Mikkelson confirmed that the Company "had previously been recording [the Advances] as part of the company's litigation expenses, but for 2020 [the Company] began classifying them differently since those funds are legally considered advances until the conclusion of the litigation."

54.     On review of Snopes income tax returns (obtained after the 2020 Board meeting), Richmond learned of the Company's deduction of Advances that were not properly characterized as current Snopes' business expenses that would be tax-deductible.

55.     On May 28, 2020, Richmond identified these issues in correspondence to counsel for Snopes.

56.     Counsel for Snopes responded on June 11, 2020, but provided no proposed action or resolution of Richmond's concerns, and claimed that amendments to previous years' income tax returns were unnecessary.

/ / /

57.     Although Richmond has not previously identified the specific causes of action alleged herein to Mikkelson or Westbrook in an effort to demand Snopes' prosecution of such claims, demand to Snopes' Board of Directors is futile under these circumstances. This is because one Director is bringing claims of fraud and breach of fiduciary duty against the other two Directors of Snopes. As such, no director could be expected to make an unbiased assessment of the claims alleged herein, and accordingly, demand on Snopes' board was futile.

## **FIRST CAUSE OF ACTION**

### **FRAUD**

### **AGAINST MIKKELSON**

### **(DERIVATIVELY ON BEHALF OF SNOPES)**

58.     Plaintiff incorporates by reference the allegations in Paragraphs 1-57 hereof.

59.     Mikkelson's statement in the Undertakings, that the Advances would be used for legal fees relating to claims as an "agent" of Snopes, was materially false and misleading, because the claims brought against him were filed solely in his individual capacity. At the time he made this statement, Mikkelson knew or recklessly disregarded that the statement was materially false and misleading and/or omitted material information necessary to avoid a misleading understanding.

60.     Mikkelson's statement in the Undertakings, limiting its scope to advances of "attorneys' fees and costs incurred in *defending* against" claims, was false and misleading, because it omitted to disclose that he intended to use the Advances to prosecute affirmative cross-claims in his individual capacity. At the time he made this statement, Mikkelson knew or recklessly disregarded that this statement was materially false and misleading and/or omitted material information necessary to avoid a misleading understanding.

61.     Mikkelson intended that Snopes and its Directors rely on the materially false and misleading statements in the Undertakings.

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

62.     Snopes and its Directors relied on the materially false and misleading statements in the Undertakings in approving Mikkelson's request for the Advances.

63.     As a result of Snopes' reasonable reliance on  Mikkelson's materially false and misleading statements, Snopes has been harmed. Snopes funds have been used to further the personal litigation interests of Mikkelson with no identifiable benefit to Snopes or its shareholders. Because Mikkelson is unable to, and would be unable to, satisfy his repayment obligations pursuant to the Undertakings, Snopes has no security interest protecting against loss should indemnification ultimately be denied. Snopes' approval of the Advances based on the false and misleading statements in the Undertakings also made unavailable funds that would have otherwise been available for operational purposes, distribution to shareholders, and/or re-investment into Snopes' future growth.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
## AGAINST  MIKKELSON
## (DERIVATIVELY ON BEHALF OF SNOPES)

64.     Plaintiff incorporates by reference the allegations in Paragraphs 1-63 above.

65.     Mikkelson's statement in the Undertakings, that the Advances would be used for legal fees relating to claims as an "agent" of Snopes, was materially false and misleading, because the claims brought against him were filed solely in his capacity as an individual and not as an employee, officer, and/or agent of Snopes. At the time he made this statement, Mikkelson was negligent in making such statement without knowing its' false and misleading nature.

66.     Mikkelson's statement in the Undertakings limiting its scope to advances of "attorneys' fees and costs incurred in ***defending*** against" claims, was false and misleading, because it omitted to disclose that he intended to use the Advances to prosecute affirmative cross-claims in his individual capacity. At the

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA  92101

- 17 -

time he made the statements in the Undertakings, Mikkelson was negligent in failing to adequately investigate whether the statements were true or false. Mikkelson's negligence in making such statements without adequate investigation into their truth was a proximate cause of the injury to Snopes described herein.

67.    Mikkelson intended that Snopes and its Directors rely on the materially false and misleading statements in the Undertakings.

68.    Snopes and its Directors relied on the materially false and misleading statements in the Undertakings in approving  Mikkelson's request for the Advances.

69.    As a result of Snopes' reasonable reliance on Mikkelson's materially false and misleading statements in the Undertakings, Snopes has been harmed. Snopes funds have been used to further the personal litigation interests of Mikkelson with no identifiable benefit to Snopes or its shareholders. Because Mikkelson is unable to, and would be unable to, satisfy his repayment obligations pursuant to the Undertakings, Snopes' has no security interest protecting against loss should indemnification ultimately be denied. Snopes' approval of the Advances based on the false and misleading statements in the Undertakings also made unavailable funds that would have otherwise been available for operational purposes, distribution to shareholders, and/or re-investment into Snopes' future growth.

**THIRD CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**AGAINST  MIKKELSON**

**(DERIVATIVELY ON BEHALF OF SNOPES)**

70.    Plaintiff incorporates by reference the allegations in Paragraphs 1-69 above.

71.    Mikkelson was personally enriched from Snopes' payment of the Advances for his personal benefit based on claims brought against and by him in his personal capacity. These Advances provided no meaningful benefit to Snopes.

72.     Mikkelson's enrichment by Snopes' payment of his personal legal fees caused damage to Nominal Defendant Snopes by making such funds unavailable to Snopes for its operations and other financial needs.

73.     The payments made to Mikkelson by Snopes for his personal legal fees were not justified.

74.     No adequate remedy is available at law to compensate Snopes for the damages caused by  Mikkelson's unjust enrichment.

## FOURTH CAUSE OF ACTION
### AIDING AND ABETTING FRAUD
### AGAINST  MIKKELSON AND WESTBROOK
### (DERIVATIVELY ON BEHALF OF SNOPES)

75.     Plaintiff incorporates by reference the allegations in Paragraphs 1-74 above.

76.     The statements in the Undertakings, that the claims against Green and Miller were brought as "agents" of Snopes, were materially false and misleading, because the claims were brought solely in their individual capacities. At the time they made these statements, Green and Miller each knew or recklessly disregarded that the statements were materially false and misleading, and/or omitted material information necessary to avoid a misleading understanding.

77.     The statements by Green and Miller, limiting the scope of the Undertakings to advances of "attorneys' fees and costs incurred in *defending* against" claims, were false and misleading, because they omitted to disclose that they intended to use the Advances to prosecute affirmative cross-claims in their individual capacities. At the time they made these statements, Green and Miller each knew or recklessly disregarded that the statements were materially false and misleading, and/or omitted material information necessary to avoid a misleading understanding.

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

78.     Green and Miller intended that Snopes and its Directors rely on the materially false and misleading statements in the Undertakings.

79.     Snopes and its Directors relied on the materially false and misleading statements in the Undertakings in approving their requests for the Advances.

80.     As a result of Snopes' reasonable reliance on Green and Miller's materially false and misleading statements in the Undertakings, Snopes has been harmed. Snopes funds have been used to further the personal litigation interests of Green and Miller with no identifiable benefit to Snopes or its shareholders. Because Green and Miller are unable to, and would be unable to, satisfy their repayment obligations pursuant to the Undertakings, Snopes has no security interest protecting against loss should indemnification ultimately be denied. Snopes' approval of the Advances based on the false and misleading statements in the Undertakings also made unavailable funds that would have otherwise been available for operational purposes, distribution to shareholders, and/or re-investment into Snopes' future growth.

81.     On information and belief, at all times relevant to Snopes' and the Board's consideration of Green's and Miller's requests for indemnification and advancement of legal fees, Mikkelson knew and understood that: (i) the claims brought against Green and Miller were brought against them in their individual capacities; (ii) that Green and Miller used and intended to use the Advances to prosecute cross-claims in their individual capacities; and that (iii) Green and Miller would likely be unable to repay Snopes pursuant to the Undertakings if indemnification was ultimately denied. On information and belief, at the time he executed the Consents, Mikkelson understood that the Undertakings would provide no security against loss of the significant funds Snopes advanced, funds which otherwise would and should have gone to Snopes' operations and/or been available to Snopes' shareholders, including, but not limited to Richmond, as distributions. / / /

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

82.     By executing the Consents while knowing that the Green and Miller Undertakings were materially false and misleading, Mikkelson provided substantial assistance and/or encouragement to Green and Miller in defrauding Snopes.

83.     On information and belief, the legal fee invoices submitted by Green, Miller, and Mikkelson to Westbrook in his capacity as CFO, for purposes of Snopes' payment of the Advances, clearly indicate that the Advances paid pursuant to the undertakings were personal in nature, and provided no meaningful benefit to Snopes.

84.     As such, Westbrook knew or was reckless in not knowing that the Advances exceeded the scope of the Undertakings and approvals granted by Snopes' Board. Despite this knowledge, Westbrook nonetheless arranged for and approved payment of the Advances requested by Green, Miller, and  Mikkelson, to Snopes' detriment.

85.     By approving of payment for the Advances requested by Green, Miller, and  Mikkelson, despite his knowledge that the Advances exceeded the scope of the Undertakings and Snopes' Board's approvals, Westbrook provided substantial assistance and/or encouragement to Green, Miller, and Mikkelson in defrauding Snopes.

86.     The assistance and/or encouragement provided by Mikkelson and Westbrook in furtherance of the fraud perpetrated on Snopes by Green and Miller was a substantial factor in causing harm to Snopes.

## FIFTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### AGAINST MIKKELSON AND WESTBROOK
### (DIRECT CLAIM)

87.     Plaintiff incorporates by reference the allegations in Paragraphs 1-86 above.

/ / /

HEUIKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

88.     As President, CEO, Chair of the Board of Directors, and the largest individual shareholder in Snopes, Mikkelson owes the Company and its shareholders fiduciary duties to place the interests of the Company and its shareholders above his individual interest in performing his various Snopes-related roles.

89.     In his role as President and CEO of Snopes, Mikkelson caused Snopes to file the 2017 and 2018 Returns, which significantly underrepresented the Company's ordinary business income for those years, by improperly deducting from Snopes' business income Advances which funded personal legal fees and which served no business purpose to Snopes. Because of his fiduciary obligations to the Company, and because of the sheer significance of the Company's deduction of the Advances to its business income for 2017 and 2018, Mikkelson knew or should have known at the time of the filing of the 2017 and 2018 Returns that they represented false statements to various governmental agencies, and that making such false statements to government regulators subjected Richmond to potential criminal, regulatory, and/or civil liability, among other damages. By causing Snopes to file income tax returns that he knew or should have known were false, Mikkelson breached his fiduciary duties to Richmond.

90.     In his role as CFO of Snopes, Westbrook caused Snopes to file the 2017 and 2018 Returns, which significantly underrepresented the Company's ordinary business income for those years, by improperly deducting from Snopes' business income Advances which funded personal legal fees, and which served no business purpose to Snopes. Because of his fiduciary obligations to the Company, his unique obligation as CFO to ensure accurate reporting of the Company's finances, and because of the sheer significance of the Company's deduction of the Advances to its reported ordinary business income for 2017 and 2018, Westbrook knew or should have known at the time of the filing of the 2017 and 2018 Returns that they represented false statements to various governmental agencies, and that

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

making such false statements subjected Richmond to potential criminal, regulatory, and/or civil liability, among other individual damages. By causing Snopes to file income tax returns that he knew or should have known were false, Westbrook breached his fiduciary duties to Richmond.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief herein:

1. For compensatory damages according to proof;

2. For punitive damages;

3. For interest according to California law;

4. For attorneys' fees and costs of suit; and

5. For such other relief as the Court deems just and proper.

Dated:     September 25, 2020     HRUTKAY LAW PC

By:     ___s/ Matthew Hrutkay_____
           Matthew Hrutkay

600 W. Broadway, Suite 700
San Diego, CA 92101
matt.hrutkay@hrutkaylaw.com

and

TENCER SHERMAN LLP

Philip C. Tencer, Esq., Bar No. 173818
12520 High Bluff Drive, Suite 230
San Diego, CA 92130
phil@tencersherman.com

*Attorneys for Plaintiff CHRISTOPHER RICHMOND*