1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Paul A. Tyrell (Bar No. 193798)
E-mail:    paul.tyrell@procopio.com
Ryan C. Caplan (Bar No. 253037)
E-mail:    ryan.caplan@procopio.com
Jacob Kozaczuk (Bar No. 294734)
E-mail:    jacob.kozaczuk@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Nominal Defendant Snopes Media
Group, Inc.

## UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RICHMOND, an individual, <br><br> Plaintiff, <br><br> v. <br><br> DAVID MIKKELSON, an individual; BRAD WESTBROOK, an individual; and DOE DEFENDANTS 1-10, inclusive, <br><br> Defendants, <br><br> and <br><br> SNOPES MEDIA GROUP, INC. <br><br> Nominal Defendant. | Case No. 3:20-CV-1925-W-KSC <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SNOPES MEDIA GROUP, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT <br><br> Date:      January 25, 2021 <br> Dept:      3C Third Floor <br> Judge:     Hon. Thomas J. Whelan |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................... 1

II. RELEVANT BACKGROUND ................................................. 2

    A.   Richmond's Record of Hostility Toward Snopes and Efforts to Usurp Corporate Control ................................................................. 2

    B.   Richmond's Use of Derivative Claims to Try to Cut Off Litigation Funding ........................................................................... 3

    C.   The State Court Struck Richmond's Derivative Litigation Funding Claims and Dismissed the Remainder of his Derivative Claims with Prejudice .................................................................................. 4

III. LEGAL STANDARD ............................................................. 4

IV. ARGUMENT ......................................................................... 5

    A.   Richmond Fails to Plead Demand Futility ................................. 5

    B.   Richmond Cannot Plead Demand Futility ................................. 7

        1.   Richmond Cannot Establish a Majority of Directors' Interestedness .................................................................. 8

            a.   Richmond has not Pleaded Particularized Facts Showing that a Majority of Directors Derived a Personal Benefit .................................................... 9

            b.   Richmond has not Pleaded Particularized Facts Showing a Substantial Likelihood of Director Liability ..... 9

        2.   Richmond Cannot Establish the Board's Lack of Independence ................................................................. 12

    C.   The anti-SLAPP Order Rulings Preclude Richmond's Derivative Claims .............................................................................. 13

        1.   The anti-SLAPP orders are Final Judgments on the Merits ........ 13

        2.   The Same Claims were Litigated in the State Court Action ....... 14

            a.   The Alleged Misrepresentations were Expressly Raised in the State Action ............................................ 17

            b.   Any issues ostensibly raised for the first time could have been raised in the State Action ................................. 18

        3.   Preclusion is Asserted by the Same Parties or Parties in Privity ............................................................................. 19

4. The anti-SLAPP order also has an Issue Preclusive Effect .........19

D. Richmond is Not a Proper Representative of Snopes ...........................20

1. Richmond is Not Free from Economic Interests that are Antagonistic to the Interests of Snopes and the Class .................21

a. The *Larson* factors further confirm that Richmond is not an adequate representative ...........................................24

V. CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adams v. Johnson*
355 F.3d 1179 (9th Cir. 2004) ................................................................ 5

*Amy Liu v. Levinson*
No. 17-CV-05384-JSW, 2018 WL 10604346 (N.D. Cal. May 11, 2018) ... 14, 18

*Arduini v. Hart*
774 F.3d 622 (9th Cir. 2014) .................................................................. 6

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................... 5

*Bass v. First Pac. Networks, Inc.*
No. C 92-20763 JW, 1993 WL 484715 (N.D. Cal. Sept. 30, 1993) ........... 23, 24

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................... 4

*Blasband v. Rales*
971 F.2d 1034 (3d Cir.1992) ................................................................ 11

*City Drinker, Inc. v. Kodali*
No. CV 13-9223 PA, 2014 WL 12600261 (C.D. Cal. May 27, 2014)............... 7

*Cochoit v. Schiff Nutrition Int'l, Inc.*
227 F. Supp. 3d 1119 (C.D. Cal. 2017)................................................. 13

*Crawford v. Cnty. of Solano*
2010 WL 5478294 (E.D. Cal. Dec. 30, 2010)....................................... 19

*Crawford v. Cnty. of Solano*
No. 2:10-CV-02091 JAW-EFB, 2010 WL 5478294, at *4 (E.D. Cal. Dec. 30, 2010) ...................................................................................................... 13

*DeLeo v. Swirsky*
2002 WL 989526 (N.D. Ill. 2002)......................................................... 22

*Fayer v. Vaughn*
649 F.3d 1061 (9th Cir. 2011) ............................................................... 5

iv

*Field Turf Builders, LLC v. FieldTurf USA, Inc.*
  2010 WL 817628 (D. Or. Mar. 4, 2010) ............................................................23

*Finander v. Eskanos & Adler*
  255 F. App'x 192 (9th Cir. 2007) (unpublished) ...............................................13

*Foss on Behalf of Quality Sys. Inc. v. Barbarosh*
  No. SACV1400110CJCJPRX, 2018 WL 5276292 (C.D. Cal. July 25, 2018) ..10

*Glenbrook Capital Ltd. Partnership v. Kuo*
  525 F.Supp.2d 1130 (N.D.Cal.2007).................................................................11

*Gordon v. Bindra*
  No. 2:14-CV-01058-ODW, 2014 WL 2533798 (C.D. Cal. June 5, 2014) ........10

*Haynes v. Hanson*
  No. 11-CV-05021-JST, 2013 WL 1390387 (N.D. Cal. Apr. 4, 2013), *aff'd*, 695 F.
  App'x 317 (9th Cir. 2017).................................................................................20

*In re Accuray*
  757 F.Supp.2d at 930 .......................................................................................12

*In re Bofi Holding, Inc. Shareholder Litigation*
  382 F.Supp.3d 992 (2019) ..................................................................................8

*In re Facebook, Inc. S'holder Derivative Privacy Litig.*
  367 F. Supp. 3d 1108 (N.D. Cal. 2019).............................................................12

*In re Maxwell Techs., Inc. Derivative Litig.*
  No. 13-CV-966-BEN-RBB, 2014 WL 2212155 (S.D. Cal. May 27, 2014) ......12

*In re Yahoo! Inc. S'holder Derivative Litig.*
  153 F. Supp. 3d 1107 (N.D. Cal. 2015)..........................................................7, 12

*Kamen v. Kemper Fin. Servs., Inc.*
  500 U.S. 90 (1991) .............................................................................................5

*Kayes v. Pac. Lumber Co.*
  51 F.3d 1449 (9th Cir. 1995) ........................................................................6, 25

*Kenneth v. Yeung Chi Shing Holding (Delaware), Inc.*
  No. 18-CV-07644-YGR, 2020 WL 409010 (N.D. Cal. Jan. 24, 2020) .21, 24, 25

*Larson v. Dumke*
   900 F. 2d 1363 (9th Cir.1990) ..................................................................23, 24

*Manufactured Home Cmtys. Inc. v. City of San Jose*
   420 F.3d 1022 (9th Cir. 2005) ..................................................................5

*Mieuli v. DeBartolo*
   No. C-00-3225 JCS, 2001 WL 777091 (N.D. Cal. May 7, 2001) ......................6

*Nayab v. Capital One Bank (USA), N.A.*
   942 F.3d 480 ..................................................................................11

*Noll v. Carlson*
   809 F.2d 1446 (9th Cir. 1987) ..................................................................13

*Oswald on Behalf of Identiv, Inc. v. Humphreys*
   806 F. App'x 577 (9th Cir. 2020) ..............................................................7

*Potter v. Hughes*
   546 F.3d 1051 (9th Cir. 2008) ..................................................................6, 7

*Puri v. Khalsa*
   674 Fed.Appx. 679 (9th Cir. 2017) (unpublished) ......................................22

*Quinn v. Anvil Corp.*
   620 F.3d 1005 (9th Cir. 2010) ..................................................................6

*Rangel v. PLS Check Cashers of California, Inc.*
   899 F.3d 1106 (9th Cir. 2018) ..................................................................13

*RePET Inc. v. Zhao*
   EDCV 15-2315-VAP (SPx), 2016 WL 11518482, at *5 (C.D. Cal. June 28, 2016)
   ..................................................................................................21

*Rodriguez v. City of San Jose*
   930 F.3d 1123 (9th Cir. 2019) ..................................................................20

*Rosenbloom v. Pyott*
   765 F.3d 1137 (9th Cir. 2014) ..................................................................7

*Schwarz v. United States*
   234 F.3d 428 (9th Cir. 2000) ..................................................................5

*Shack v. NBC Universal Media, LLC*
    467 F. Supp. 3d 885 (C.D. Cal. 2020) .................................................. 14

*Shaw v. Hahn*
    56 F.3d 1128 (9th Cir. 1995) ................................................................ 5

*Tindall v. First Solar Inc.*
    892 F.3d 1043 (9th Cir. 2018) .............................................................. 5

*Towers v. Iger*
    2017 WL 6044035 (N.D. Cal. Mar. 10, 2017) .................................... 12

*Towers v. Iger*
    912 F. 3d 523 (9th Cir. 2018) ............................................................... 7

*White v. City of Pasadena*
    671 F.3d 918 (9th Cir. 2012) .............................................................. 20

*Zarowitz v. BankAmerica Corp.*
    866 F.2d 1164 (9th Cir. 1989) ............................................................ 23

**CALIFORNIA CASES**

*Apple Inc. v. Super. Ct.*
    18 Cal. App. 5th 222 (2017) ............................................................ 1, 7

*Bader v. Anderson*
    179 Cal. App. 4th 775 (Ct. App. 2009) ................................................ 6

*Boeken v. Philip Morris USA, Inc.*
    48 Cal. 4th 788 (2010) ....................................................................... 13

*Cal Sierra Development, Inc. v. George Reed, Inc.*
    14 Cal. App. 5th 663 (2017) .............................................................. 14

*Choi v. Sagemark Consulting*
    18 Cal. App. 5th 308 (2017) .............................................................. 14

*Cole v. Patricia A. Meyer & Associates*
    APC 206 Cal. App. 4th 1095 (2012) .................................................. 20

*Kemper v. County of San Diego*
    242 Cal. App. 4th 1075 (2015) .......................................................... 20

*Mycogen Corp. v. Monsanto Co.*
   28 Cal. 4th 888 (2002) ........................................................................ 19

*Roche v. Hyde*
   51 Cal. App. 5th 757 (2020) ......................................................... 14, 17

*Shields v. Singleton*
   15 Cal. App. 4th 1611 (1993) ............................................................ 11

*Silverado Modjeska Recreation and Park Dist. v. County of Orange*
   197 Cal. App. 4th 282 (2011) ............................................................ 15

*Villacres v. ABM Industries Inc.*
   189 Cal. App. 4th 562 (2010) .................................................. 15, 18, 19

**OTHER STATE CASES**

*Aronson v. Lewis*
   473 A.2d 805 (Del.1984) ................................................................... 13

*Citadel Holding Corp. v. Roven* (Del.1992)
   603 A.2d 818 ................................................................................... 11

*Desimone v. Barrows*
   924 A.2d 908 (Del. Ch. 2007) .............................................................. 9

*Grobow v. Perot*
   539 A.2d 180 (Del. 1988) ................................................................... 12

*Guttman v. Huang*
   823 A.2d 492 (Del. Ch. 2003) .............................................................. 8

*Hartsel v. Vanguard Group, Inc.* (Del. Ch. June 15, 2011)
   2011 WL 2421003, *aff'd*, 38 A.3d 1254 (Del. 2012) ............................. 9

*In re Citigroup Inc. S'holder Derivative Litig.*
   964 A.2d 106 (Del. Ch. 2009) ............................................................ 12

*In re Goldman Sachs Grp., Inc. S'holder Litig.*
   No. 5215, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ....................... 10

*Lenois v. Lawal*
   No. CV 11963-VCMR, 2017 WL 5289611 (Del. Ch., Nov. 7, 2017) .............. 11

*Rales v. Blasband*
    634 A.2d 927 (Del. 1993) ............................................................. 8, 9

*Seminaris v. Landa*
    662 A.2d 1350 (Del. Ch. 1995) ......................................................... 10

*Wood v. Baum*
    953 A.2d 136 (Del. 2008) ................................................................. 12

**FEDERAL STATUTES, REGULATIONS, AND RULES**

Federal Rules of Civil Procedure
    Rule 8(a)(2) ................................................................................... 4
    Rule 9(b) ........................................................................................ 5
    Rule 12(b)(6) ................................................................................. 5
    Rule 23.1 ............................................................................... passim
    Rule 23.1(b) ................................................................................. 11

**CALIFORNIA STATUTES, REGULATIONS, AND RULES**

Code of Civil Procedure § 425.16 ......................................................... 4

Corporations Code
    § 204(a)(10) ................................................................................ 10
    § 309(b) ....................................................................................... 12
    § 310(a) ....................................................................................... 15

# I. INTRODUCTION

Nominal Defendant Snopes Media Group (Snopes) owns the popular Snopes.com fact-checking website. Plaintiff Christopher Richmond is a Snopes shareholder and director. Richmond is also the CEO of Proper Media, LLC, a company that previously seized control of the Snopes.com website and redirected all of the website's advertising revenue to itself, until Snopes obtained injunctive relief allowing it to regain control of its website and recoup funds that were wrongfully diverted. That injunction was just one aspect of the multi-year, multi-faceted state court litigation involving claims between Snopes and Richmond, Proper Media, and others.

In this action, Richmond purports to assert erroneous derivative claims on behalf of Snopes against Snopes' two other directors—David Mikkelson, the company's founder, President, and 50% shareholder and Brad Westbrook, an independent, non-shareholder director. This is not Richmond's first try at bringing a derivative claim. In fact, the San Diego Superior Court previously dismissed virtually identical derivative claims in the still-ongoing state court action. By repackaging those same claims into this federal action, it seems clear that Richmond is forum shopping in an effort to circumvent the state court's ruling.

In the state action, Snopes exercised its right to challenge Richmond's derivative claims based on his lack of standing to pursue such claims.[1] Snopes now requests that this Court dismiss Richmond's latest derivative gambit for similar reasons.

First, Richmond failed to make a presuit demand on Snopes' Board (FAC, ¶57) or establish that such a demand would have been futile; indeed, he cannot. A presuit demand may only be excused under "extraordinary conditions" that satisfy the "stringent" requirements for bringing derivative claims under Rule 23.1. Richmond's perfunctory demand futility allegations fail to meet this standard, and the facts reveal that he cannot establish futility.

---

[1] Challenges to a plaintiff's standing or right to bring a derivative action may properly be raised by the corporation. *Apple Inc. v. Super. Ct.*, 18 Cal. App. 5th 222, 239 (2017).

Second, because Richmond's derivative claims were already litigated, they are precluded under the doctrines of res judicata and collateral estoppel. Although Richmond superficially pleads new theories and facts in the FAC, his derivative claims are squarely based on the same advancement claims he asserted in the state court action. Claim and issue preclusion bar Richmond's repackaged claims, which were already adjudicated on the merits in a final, non-appealable order.

Third, Richmond is unqualified to serve as Snopes' representative in a derivative suit due to his well-established hostility and hostile interests, which preclude him from representing Snopes under Rule 23.1[2].

For these reasons, dismissal of Richmond's Claims 1 through 4 is warranted pursuant to Rules 12(b)(6) and 23.1.

## II.  RELEVANT BACKGROUND

### A.    Richmond's Record of Hostility Toward Snopes and Efforts to Usurp Corporate Control

Richmond presents himself as a shareholder and director of Snopes, but his relationship to Snopes is more complex than that—and certainly more hostile. Richmond is also the CEO and a controlling member of Proper Media, a company that provided certain services to Snopes from 2015 until the relationship was terminated by Snopes in 2017. Following the termination, Richmond and Proper Media unlawfully held Snopes' website hostage, refusing to relinquish control of the website or its email accounts. *See* Request for Judicial Notice (RJN), Exhs. 2, 32 at ¶¶3-4, 110, 153. Worse, Richmond and his co-conspirators improperly withheld *all* advertising revenues from Snopes, effectively cutting off Snopes' primary source of income and inflicting severe financial distress on the company. *See* RJN, Exhs. 2, 32 at ¶52, fn. 2.

In addition to applying external pressure on Snopes by withholding its revenue, Richmond has used litigation to try to usurp control of Snopes from its Board and

---

[2] All "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise stated.

majority shareholders. In 2017, Richmond initiated litigation against Snopes and its shareholders in San Diego Superior Court in which he tried to disenfranchise Snopes' shareholders and oust Mikkelson as its CEO (the "State Action"). *See* RJN, Exh. 1. Snopes promptly cross-complained and obtained a preliminary injunction which resulted in Snopes regaining control of its website and its advertising revenue which Richmond and his company had diverted. *See* RJN, Exh. 2.

**B.      Richmond's Use of Derivative Claims to Try to Cut Off Litigation Funding**

For the next three-and-a-half years, Richmond continued litigating against Snopes and its shareholders in the State Action to further his own interests, including by trying to force Snopes to continue contracting with Proper Media for Richmond's own financial benefit. *See* RJN, Exh. 8 [Richmond's Third Amended Complaint or "TAC"] at ¶220. Richmond amended his complaint in the State Action three times and in the process asserted a number of derivative shareholder claims ostensibly on Snopes' behalf, including claims challenging Snopes' lawful advancement of legal fees and costs to its agents: Mikkelson, Vincent Green (Green), and Ryan Miller (Miller). TAC, ¶¶316-320, 340-349; *see* RJN, Exh. 10 at p. 7:2-3.

Richmond then moved for a mandatory injunction to order Mikkelson, Green, and Miller to "disgorge, restore, and repay to [] Snopes any and all funds or monies that Snopes has previously advanced, reimbursed, transferred, or otherwise paid to them, or to their agents, to pay for their respective legal expenses incurred in connection with either defending themselves or pursuing any of their affirmative counterclaims in this litigation." RJN, Exh. 9 at p. 2:21-27. He further sought a prohibitory injunction to enjoin Snopes from advancing any additional funds for Mikkelson, Green, or Miller's legal expenses. RJN, Exh. 9 at p. 2:14-20. Richmond argued that Snopes' advancement of any legal expenses incurred by Mikkelson, Green, and Miller were altogether unlawful because the defendants were "not being sued in their capacities as 'agents' of Snopes." RJN, Exh. 9 at p. 14:9. The Court denied Richmond's request for injunctive relief in its entirety. RJN, Exh. 16.

## C.  The State Court Struck Richmond's Derivative Litigation Funding Claims and Dismissed the Remainder of his Derivative Claims with Prejudice

Shortly thereafter, Snopes and Mikkelson filed motions to strike all of the claims and allegations relating to Snopes' advancement of legal fees in Richmond's complaint pursuant to California Code of Civil Procedure section 425.16 (the "anti-SLAPP statute"). The state court found that Snopes' litigation funding constituted a protected activity under the anti-SLAPP statute, and determined that the Board's authorizations of the fee advancements were "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." RJN, Exh. 28, at p. 5. The Court further determined that Richmond failed to show his advancement-related claims lacked minimal merit. As a result, the Court granted Snopes and Mikkelson's motions to strike all of Richmond's derivative advancement claims from the State Action with prejudice. *Id.* Richmond waived his right to appeal these orders, which are now final, non-appealable judgments. *See* RJN, Exhs. 33-35.

After striking Richmond's derivative claims challenging Snopes' advancements for legal expenses, the state court determined Richmond was overtly hostile to the Snopes, had conflicting interests with the company, was therefore not qualified to represent Snopes as a derivative plaintiff. RJN, Exh 31. Accordingly, the state court dismissed his remaining derivative claims without leave to amend.

### III.  LEGAL STANDARD

Even under the liberal pleadings standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must not allege conduct that is merely conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable

inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In alleging fraud or mistake, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Rule 9(b).

Moreover, the court need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) (federal court may "[take] judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes"). Nor must the court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.  ARGUMENT

As noted above, the Court may dismiss Claims 1 through 4 of the FAC on any of three grounds: Richmond's failure to plead demand futility; the preclusive effect of the final, non-appealable order state court adjudication of the derivative claims; and Richmond's inadequacy as a derivative plaintiff in light of his well-established hostility toward Snopes, whose interests he purports to represent.

### A.    Richmond Fails to Plead Demand Futility

Because it is a "basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors," *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991), Rule 23.1 requires a shareholder plaintiff to either "'demand action from the corporation's directors'" before bringing a derivative suit or "'plead with particularity the reasons why such demand would have been futile.'" *Tindall v. First Solar Inc.*, 892 F.3d 1043,

1046 (9th Cir. 2018) (quoting *La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016)).

Rule 23.1's requirements are "stringent," *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010), and "strict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors." *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008); *see also Mieuli v. DeBartolo*, No. C-00-3225 JCS, 2001 WL 777091, at *11 (N.D. Cal. May 7, 2001) ("As numerous California courts have explained, the purpose of the demand requirement for derivative claims is to ensure that the corporation is given the opportunity to exercise its business judgment in deciding whether or not to proceed with an action."). Due to the "fear that shareholder derivative suits could subvert the basic principle of management control over corporate operations, courts have generally characterized shareholder derivative suits as 'a remedy of last resort.'" *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995).

Although Richmond sits on Snopes' Board, he made no effort to demand Board action before filing his derivative lawsuit. "[E]ven if *all* of the current [] board members had been named as defendants in th[e] suit, that fact alone would be insufficient to show that demand would be futile." *Arduini v. Hart*, 774 F.3d 622, 632 (9th Cir. 2014) (emphasis in original) (citing *Aronson v. Lewis*, 473 A.2d 805, 818 (Del.1984)); *see Bader v. Anderson*, 179 Cal. App. 4th 775, 792 (Ct. App. 2009) ("A plaintiff may not bootstrap allegations of futility by pleading merely that the directors participated in the challenged transaction or that they would be reluctant to sue themselves."). Here, Richmond alleges that a presuit demand would have been futile simply "because one Director is bringing claims of fraud and breach of fiduciary duty against the other two Directors of Snopes." FAC, ¶57. Richmond reasons that "under these circumstances . . . no director could be expected to make an unbiased assessment of the claims alleged [in the FAC]." *Id.* These threadbare futility allegations do not satisfy Rule 23.1's baseline pleading requirements and are therefore insufficient to

excuse a presuit demand on Snopes' Board.

**B.      Richmond Cannot Plead Demand Futility**

For purposes of granting Snopes' motion to dismiss, the court's analysis should end here. However, should Richmond seek leave to add additional futility allegations, granting such a request would be gratuitous because Richmond cannot allege futility as to two of the Board's three members as a matter of law. *See Towers v. Iger*, 912 F. 3d 523 (9th Cir. 2018) ("[D]emand must be assessed on a director-by-director basis such that, 'looking to the whole board of directors,' demand is excused as to a majority of members."). In fact, Richmond cannot show that demand would be futile as to either Westbrook or himself for any of the derivative shareholder claims. *Oswald on Behalf of Identiv, Inc. v. Humphreys*, 806 F. App'x 577, 579 (9th Cir. 2020) ("Demand futility analysis is conducted on a claim-by-claim basis.").

Finally, Richmond's assertion that making a demand on himself would be futile defies logic. *See* FAC, ¶57. The fact that Richmond brought this lawsuit unequivocally proves that a pre-lawsuit demand on Richmond would *not* be futile.

While Rule 23.1 establishes the baseline "pleading requirements for derivative actions filed in federal courts," the "law of a corporation[]'s state of incorporation provides the substantive standards for measuring the adequacy of a shareholder's demand and the futility of making a demand." *City Drinker, Inc. v. Kodali*, No. CV 13-9223 PA (PLAx), 2014 WL 12600261, at *3 (C.D. Cal. May 27, 2014); *see Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014). Snopes is a California corporation, and California courts look to Delaware law to determine the adequacy of pleading demand futility. *Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222, 233 (Ct. App. 2017) (citing *Bader*, 179 Cal. App. 4th at 797); see *Potter*, 546 F.3d at 1057 ("California law is identical to Delaware law on the demand requirement.").

Where a shareholder plaintiff seeks to challenge a "particular decision or transaction of the corporation's board of directors", courts apply the Aronson test. *In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107, 1119 (N.D. Cal.

2015). Under this test, a court must determine "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993) (quoting *Aronson*, 473 A.2d at 814). However, when the claim does not challenge a board action, "no business judgment has been made and thus the second prong of the Aronson test . . . is inapplicable." *Rales*, 634 A.2d at 933-34. This includes situations where "the subject of the derivative suit is not a business decision of the board." *Id.* at 934. In such a case, the appropriate inquiry is whether the particularized factual allegations in a complaint "'create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'" "Stated differently, the Rales test requires the shareholder to satisfy the first prong of the Aronson test." *In re Bofi Holding, Inc. Shareholder Litigation*, 382 F.Supp.3d 992 (2019).

Here, the Rales test applies because the claims do not challenge Board decisions. Rather, Richmond alleges fraudulent conduct by Mikkelson in connection with the first three causes of action. And with respect to the fourth cause of action, Richmond alleges that Mikkelson aided and abetted fraud by executing consents (FAC, ¶82), and Westbrook aided and abetted fraud by approving payments for legal fee advancements (FAC, ¶84). Accordingly, these claims are governed by the Rales test.

### 1. Richmond Cannot Establish a Majority of Directors' Interestedness

A plaintiff can demonstrate interestedness by alleging particularized facts demonstrating that "a director has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders." *Rales,* 634 A.2d at 933 (quoting *Pogostin v. Rice,* 480 A.2d 619, 624 (Del. 1984)). A plaintiff can also plead interestedness by pleading particularized facts showing that "the directors face a 'substantial likelihood' of personal liability," such that "their ability to consider a demand impartially is compromised." *Guttman v.*

*Huang,* 823 A.2d 492, 501 (Del. Ch. 2003). "But, demand will be excused on this basis 'only in the rare case' where a plaintiff can demonstrate director conduct that is 'so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" *Hartsel v. Vanguard Group, Inc.* (Del. Ch. June 15, 2011) 2011 WL 2421003, at p. 25, *aff'd*, 38 A.3d 1254 (Del. 2012). A "mere threat of personal liability" is not enough to challenge the directors' disinterestedness. *Rales,* 634 A.2d at 936.

In either case, a plaintiff must "plead facts *specific to each director,* demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone v. Barrows,* 924 A.2d 908, 943 (Del. Ch. 2007). Richmond has not pleaded specific facts as to Westbrook or Richmond to demonstrate interestedness, either as to a substantial likelihood of liability or through a personal benefit.

### a.   Richmond has not Pleaded Particularized Facts Showing that a Majority of Directors Derived a Personal Benefit

Aside from Mikkelson, the FAC does not identify any "personal benefit" to Snopes' directors. Richmond does not allege that either he or Westbrook received, or is entitled to receive, a personal financial benefit from any challenged transaction that is not equally shared by the stockholders. In fact, as to the fourth claim, not even Mikkelson is alleged to derive a personal benefit from the transaction.

### b.   Richmond has not Pleaded Particularized Facts Showing a Substantial Likelihood of Director Liability

The "substantial likelihood of liability" route is a dead end as well. Richmond does not allege any personal liability as to himself or Westbrook regarding the first three causes of action. As to the fourth derivative claim, Richmond fails to provide specific, detailed, and credible allegations necessary to show a significant risk of personal liability by a majority of Snopes' directors. A director has a disabling interest only if specific facts show the defendants' actions "were so egregious that a substantial

likelihood of director liability exists." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995); *see In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215, 2011 WL 4826104, at *18 (Del. Ch. Oct. 12, 2011) ("A simple allegation of potential directorial liability is insufficient to excuse demand, else the demand requirement itself would be rendered toothless.")

Moreover, "[t]he likelihood of directors' liability is significantly lessened where, as here, the corporate charter exculpates the directors from liability." *In re Goldman Sachs*, 2011 WL 4826104, at *18. "'When a corporation includes an exculpation provision in its articles of incorporation, 'a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.'" *Gordon v. Bindra*, No. 2:14-CV-01058-ODW, 2014 WL 2533798, at *5 (C.D. Cal. June 5, 2014).

Under Article IV of Snopes' Articles of Incorporation: "The liability of the directors of this corporation for monetary damages shall be eliminated to the fullest extent permissible under California law, subject to the limits set forth in Section 204(a)(10) of the California Corporations Code." RJN, Exh. 3. Consequently, the plaintiff "must demonstrate that her selected majority of the board . . . acted intentionally, knowingly, or in bad faith." *Gordon*, 2014 WL 2533798, at *7; Cal. Corp. Code § 204(a)(10). This requires the shareholder to plead "particularized facts that demonstrate that the directors acted with scienter, i.e., that they had 'actual or constructive knowledge' that their conduct was legally improper." *Foss on Behalf of Quality Sys. Inc. v. Barbarosh*, No. SACV1400110CJCJPRX, 2018 WL 5276292, at *7 (C.D. Cal. July 25, 2018).

Here, Richmond fails to supply particularized factual allegations showing a substantial likelihood that a majority of Snopes' directors engaged in deliberate misconduct so egregious that it falls outside the company's exculpatory clause. Instead, he summarily claims "Westbrook knew or was reckless in not knowing" that the legal fee advancements exceeded the scope of the Undertakings because, on

10

information and belief, it was "clear" from the legal fee invoices that legal fee advancements were "personal in nature and provided no meaningful benefit to Snopes." FAC, ¶¶83-85. However, such generalized assertions that a director participated in, conspired in, or aided and abetted alleged unlawful activities will not excuse demand. *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1622 (1993); *see also Blasband v. Rales*, 971 F.2d 1034, 1049 (3d Cir.1992) (plaintiff may not "bootstrap allegations of futility" by simply pleading that directors "participated in the challenged transaction"). Here, Richmond does not even explain how these invoices "clearly indicate" the advancements exceeded the scope of the undertakings.[3]

As a preliminary matter, the underlying advancement of litigation expenses upon receipt of undertakings is expressly authorized by the Corporations Code and condoned by courts, including the advancement of litigation fees used to prosecute counterclaims. "In a litigation context the term 'defense' has a broad meaning" and therefore applies to counterclaims and affirmative defenses that are part of the same dispute and are advanced to defeat or offset the plaintiffs' claims. *Citadel Holding Corp. v. Roven* (Del.1992) 603 A.2d 818, 824. As such, it cannot rise to the level of being "so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests' and was 'essentially inexplicable on any ground other than bad faith.'" *Lenois v. Lawal* No. CV 11963-VCMR, 2017 WL 5289611, at *10 (Del. Ch., Nov. 7, 2017).

Moreover, courts have routinely rejected the notion that director review and/or

---

[3] These allegations further fail to meet the Rule 23.1 pleading requirements because Richmond does not substantiate his allegations made on information and belief. *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493-94 ("allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded"), citations and quotation marks omitted. These omissions are especially problematic in the derivative context, where verification is required. Rule 23.1(b); *see Glenbrook Capital Ltd. Partnership v. Ku*o, 525 F.Supp.2d 1130, 1146 fn. 6 (N.D.Cal.2007) ("The purpose of the verification requirement is to discourage suits by plaintiffs who have no reason to believe that the accusations made in their complaints are true.") By pleading allegations on information and belief without stating the facts for which those beliefs are founded, the FAC fails to meet the strict pleading requirements for derivative claims, let alone the heightened pleading requirements for claims based on fraud.

approval of a challenged transaction shows substantial likelihood of liability. *See, e.g., In re Yahoo!*, 153 F. Supp. 3d at 1120 (conclusory allegations that directors "'signed' or were involved in 'reviewing' the disclosures at issue" did not excuse demand); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 130 n.88, 134 (Del. Ch. 2009) (conclusory allegations that the board "reviewed" statements did not show they were "directly responsible for the misstatements or omissions" as required); *In re Maxwell Techs., Inc. Derivative Litig.*, No. 13-CV-966-BEN-RBB, 2014 WL 2212155, at *35 (S.D. Cal. May 27, 2014) (allegations that directors "reviewed the [false] statements pursuant to their responsibilities are insufficient" to show substantial likelihood of liability).

In fact, directors are entitled to rely on information provided by management in performing their duties. Cal. Corp. Code § 309(b). The FAC does not set forth particularized facts showing that Westbrook and Mikkelson knew the legal fee advancements were wrongful and acted with the requisite scienter or bad faith. *See Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) ("approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith"). This is simply not the "rare case where the circumstances are so egregious that there is a substantial likelihood of liability." *Towers v. Iger*, 2017 WL 6044035, at *6 (N.D. Cal. Mar. 10, 2017) (quoting *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1269, 1271 (Del. Ch. 1995), *aff'd*, 912 F.3d 523 (9th Cir. 2018)).

## 2. Richmond Cannot Establish the Board's Lack of Independence

"To plead a lack of independence, Plaintiffs must 'show that the directors are beholden to the [other directors] or so under their influence that their discretion would be sterilized.'" *In re Accuray*, 757 F.Supp.2d at 930 (citing *Rales*, 634 A.2d at 936); *see In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1128 (N.D. Cal. 2019). Richmond alleges no facts that show lack of director independence, let alone suggest that any directors were "dominated or controlled" by an individual or entity interested in the transaction. *Grobow v. Perot*, 539 A.2d 180,

189 (Del. 1988). Accordingly, the Board's directors are presumed to be independent. *See Aronson*, 473 A.2d at 815 (even proof of majority ownership will "not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation").

The FAC does not satisfy the stringent requirement for pleading demand futility and Richmond cannot allege such particularized facts. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (leave to amend should not be granted where it appears amendment would be futile).

## C.    The anti-SLAPP Order Rulings Preclude Richmond's Derivative Claims

The derivative claims are also barred under res judicata. "'[T]he doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy.'" *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010), citation omitted. Where, as here, the prior underlying judgment was rendered in state court, federal courts must apply state law claim and issue preclusion rules. *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1110, fn. 2 (9th Cir. 2018). "Under California law, the elements of res judicata are '(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.'" *Cochoit v. Schiff Nutrition Int'l, Inc.*, 227 F. Supp. 3d 1119, 1122 (C.D. Cal. 2017) (citing *Boeken*, 48 Cal. 4th at 797). All three requirements for claim preclusion are met here.

### 1.    The anti-SLAPP orders are Final Judgments on the Merits

The orders granting Snopes and Mikkelson's anti-SLAPP motions are final judgments on the merits of Richmond's derivative fee advancement claims. *See ex rel Crawford v. Cnty. of Solano,* No. 2:10-CV-02091 JAW-EFB, 2010 WL 5478294, at *4 (E.D. Cal. Dec. 30, 2010) (order granting anti-SLAPP motion was a final judgment on the merits); *accord Finander v. Eskanos & Adler*, 255 F. App'x 192, 192-

93 (9th Cir. 2007) (unpublished). Once Richmond dismissed his appeal of Snopes' anti-SLAPP ruling and declined to appeal Mikkelson's anti-SLAPP ruling as to any of the stricken derivative claims, the judgments became final for res judicata purposes. *See* RJN, Ehx. 33-35; *Amy Liu v. Levinson*, No. 17-CV-05384-JSW, 2018 WL 10604346, at *5 (N.D. Cal. May 11, 2018) (citing *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th 1168, 1174 (2000)).

### 2.     The Same Claims were Litigated in the State Court Action

Richmond's derivative claims are plainly based on the same derivative litigation funding claims he asserted in the State Action. "'To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the 'primary rights' theory.'" *Shack v. NBC Universal Media, LLC*, 467 F. Supp. 3d 885 (C.D. Cal. 2020) (quoting *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975)). "[T]he primary right theory has a fairly narrow field of application most commonly invoked when a plaintiff attempts to divide a primary right and enforce it in two suits." *Choi v. Sagemark Consulting*, 18 Cal. App. 5th 308, 336 (2017) (internal citation and quotation marks omitted).

"'When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.'" *Shack*, 467 F. Supp. 3d 885 (quoting *Slater*, 15 Cal. 3d at 795). "Moreover, 'a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief.'" *Id.*; *see Roche v. Hyde*, 51 Cal. App. 5th 757, 823 (2020) ("They all seek recovery for the same damage, which is the determining factor under California's primary rights approach to defining a single cause of action.")

Because Richmond's claims are ostensibly brought on Snopes' behalf, the primary right at issue is Snopes' "right to be free of a particular injury." *See Cal Sierra Development, Inc. v. George Reed, Inc.*, 14 Cal. App. 5th 663, 675-76 (2017). Here, Richmond alleges that Snopes suffered damages as a result of advancing legal

expenses to Mikkelson, Green, and Miller. Accordingly, Snopes' primary right at issue is the right to be free from the improper advancement of litigation funding. *See Silverado Modjeska Recreation and Park Dist. v. County of Orange* 197 Cal. App. 4th 282, 297-98 (2011) ("'An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose.'") (citation omitted).

Richmond sought recovery for these same damages in the State Action:

> 119. On information and belief, Mikkelson has continued to direct or otherwise cause Snopes [] to pay for his personal expenses as well as the personal expenses of Green and Miller, including without limitation by improperly directing Snopes [] to advance ***the attorneys' fees Mikkelson, Green, and Miller have personally incurred in connection with defending and pursuing their respective affirmative claims*** both in this lawsuit and the consolidated interpleader lawsuit . . . .
> . . .

> 316.  . . . Mikkelson has knowingly directed or otherwise caused Snopes [] to improperly advance attorneys' fees himself, and to his co-conspirators, Green and Miller, in violation of Corporations Code sections 310(a) and 317(f), and the Bylaws.
> . . .

> 319.   On information and belief, Mikkelson directed or otherwise caused Snopes Media Group to advance large sums of ***personal*** legal expenses to himself, Green, and Miller, all in violation of the Corporations Code and Bylaws, even though he knew, or reasonably should have known, that Snopes Media Group was in dire financial straits, and on the verge of insolvency.

> 320.   Mikkelson's conduct, as set forth above, was and is unlawful, unfair, ***and fraudulent*** . . . .

Emphasis added. Thus, the primary rights analysis is straightforward here because the same matters were already raised as an issue in Richmond's prior derivative advancement claims. *Villacres v. ABM Industries Inc.*, 189 Cal. App. 4th 562, 569 (2010) ("Obviously, if [the matter] is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment.").

In fact, in the State Action, Richmond extensively alleged that Mikkelson improperly caused and thereafter continued to cause Snopes to advance legal fees to

himself, Green, and Miller for "personal legal expenses" including their affirmative claims in the State Action. *See* RJN, Exh. 35 at p. 31 ("The TAC added allegations concerning Snopes' Advancements of personal legal expenses and [Mikkelson]'s self-interested approval of those Advancements, at significant cost to the Company . . . ."). Not only did Richmond litigate these issues, he even sought prohibitory and mandatory "injunctive relief as shareholders on behalf of Snopes", claiming that he was likely to succeed one the derivative UCL claim—which was subsequently stricken by the anti-SLAPP order. RJN, Exh. 10 at pp. 12:28-13:2. Even in opposing Snopes' anti-SLAPP motion, Richmond cited the abovementioned allegations from his complaint and argued that Mikkelson harmed Snopes by "using Snopes' to fund his, Green, and Miller's participation in the [State Action], including their pursuit of affirmative counterclaims." RJN, Exh. 23 at p. 6:8-10, citing TAC, ¶¶119-34.

A cursory review of the FAC reveals that Richmond is now reasserting the same shareholder derivative claims in this action. The third cause of action for unjust enrichment claims Mikkelson was personally enriched by the fee advancements and the fee advancement deprived Snopes of funds without providing a meaningful benefit. FAC, ¶71. Richmond repeatedly alleged and raised this exact issue in connection with his prior derivative UCL claim. In fact, claiming that the advancements were improperly made for Mikkelsen's personal benefit, Richmond's derivative UCL claim sought disgorgement of the Advances as unjust enrichment. *E.g.,* TAC, ¶324 ("Richmond, on behalf of Snopes [], [is] entitled to disgorgement of all gains, profits, advantages, and *unjust enrichment* derived by Mikkelson . . . ."), emphasis added; TAC, p. 68:28 (seeking "[r]estitution and/or disgorgement of ill-gotten gains"). The first two claims allege the same damages as the unjust enrichment claim: namely, the misappropriation of Snopes' funds to further the personal litigation interests of Mikkelson. FAC, ¶¶63, 69. And the fourth cause of action similarly alleges Snopes was harmed by the misappropriation of Snopes' funds "to further the personal litigation interests of Green and Miller." *Id.* at ¶80. These are the same damages

16

alleged in Richmond's UCL derivative claim. And because seeking recovery for the same damage "is the determining factor under California's primary rights approach to defining a single cause of action", *Roche*, 51 Cal. App. 5th at 823 (2020), Richmond's claims were incontrovertibly raised in the State Action.

### a. The Alleged Misrepresentations were Expressly Raised in the State Action

The derivative claims challenging Snopes' advances are all predicated on two purported misrepresentations in Mikkelson, Green, and Miller's undertakings:

1) that "the Advances would be used for legal fees relating to claims as an 'agent' of Snopes" (FAC, ¶¶59, 65, 76), and

2) that the Advances would be used for legal fees incurred in "defending against" claims (*id.*, ¶¶60, 66, 77).

Richmond already raised both of these issues expressly in the State Action. In fact, both misrepresentations are repeatedly pleaded as issues in the very derivative claims stricken by the anti-SLAPP Order. In the TAC, Richmond alleges:

> 14.   Mikkelson has also abused his controlling position by directing and causing Snopes Media Group to improperly advance legal expenses that Mikkelson, Green, and Miller have personally incurred in connection with not only defending themselves against the claims asserted by Plaintiffs against them, but also their affirmative counterclaims against Plaintiffs. . . .

> 131. Moreover, Mikkelson, Green, and Miller are certainly not entitled to the advancement of their attorneys' fees incurred in pursing their ***affirmative*** counterclaims in this litigation.

> 348. Mikkelson, Green, and Miller are not entitled to advanced attorneys' fees in this litigation because they are not being sued "by reason of the fact" that they are "agents" of Snopes [] . . . .

Emphasis in original; see also TAC, ¶¶302, 326 (realleging and incorporating by reference all preceding paragraphs into the derivative UCL and rescission claims].

In addition, Richmond actively and repeatedly litigated these issues in connection with the stricken derivative claims. In seeking a temporary restraining

order against Snopes, Mikkelson, Green, and Miller, Richmond argued he was likely to prevail on his derivative UCL claim by showing the legal fee advancements were unlawful because "[Mikkelson, Green, and Miller were] not being sued in their respective capacities as 'agents' of Snopes." *See* RJN, Exh. 7 at p. 14:1. Richmond further argued he was likely to prevail on his derivative UCL claim because Mikkelson, Green, and Miller were "not entitled to advancement of fees associated with pursuing their affirmative counterclaims." *Id.* at p. 18:4-5. After the trial court denied Richmond's request for a TRO, Richmond filed another motion requesting a preliminary injunction against Snopes and Mikkelson based on his derivative UCL claim and re-raised and re-argued both issues in support of his request. RJN, Exh. 10 at pp. 6:23-7:3; 16:1-18:12. After extensive briefing, the state court again denied Richmond's request. RJN, Exh. 16. Months later, the derivative advancement claims were stricken from pursuant to the anti-SLAPP statute.

Richmond's derivative claims here are identical to the claims litigated in the State Action. For res judicata purposes, "[i]t does not matter that Plaintiff includes additional allegations in this action . . . or that Plaintiff asserts new theories of relief" if the allegations in both actions "are fundamentally the same." *Amy Liu* , 2018 WL 10604346, at *5 (finding irrelevant that the plaintiff included new allegations of a conspiracy between the defendant and other attorneys, the judge, and the court's staff). Any strained distinction Richmond might try to make between the stricken derivative claims and his federal derivative suit are simply "different theories of relief based upon the same factual background", and squarely fall within the "re-imagined" claims res judicata is intended to bar. *See Villacres*, 189 Cal.App.4th at 569 (2010).

**b.    Any issues ostensibly raised for the first time could have been raised in the State Action**

In any event, "[r]es judicata bars not only issues that were raised in the prior suit but related issues that could have been raised." *Villacres*, 189 Cal.App.4th at 569. As the court explained in *Villacres*:

> If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it. . . . The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. [¶] The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, "litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background. . . . [A]n issue may not be thus split into pieces.

*Id.* at 569. This is precisely what Richmond attempts to accomplish here. The derivative suit is nothing more than a thinly-veiled attempt to split his already-litigated issues into additional claims before a new forum.

While the derivative claims in the FAC are nearly indistinguishable from the state court pleadings, Richmond does allege that in 2020, he learned some legal fee advancements were "not properly characterized" on Snopes' financial statements. FAC, ¶¶51-54. Even if this allegation is relevant to Richmond's direct claim against Mikkelson and Westbrook, it has no bearing on the causes of action brought derivatively on Snopes' behalf. Thus, the court need not even consider whether any new issues ostensibly raised in the FAC could have been raised in State Action.

### 3. Preclusion is Asserted by the Same Parties or Parties in Privity

Res judicata protects parties who obtained a favorable judgment as well as those in privity with those parties. *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). In both actions, Richmond asserted derivative claims against Snopes' directors with Snopes named as the nominal defendant. Because Snopes is the same party that obtained a favorable judgment in the State Action, this requirement is met.

### 4. The anti-SLAPP order also has an Issue Preclusive Effect

In addition to claim preclusion, the anti-SLAPP order has an issue preclusive effect on the derivative claims as well. *See ex rel Crawford v. Cnty. of Solano,* 2010 WL 5478294, at *4 (E.D. Cal. Dec. 30, 2010) (finding the anti-SLAPP order had a claim preclusive effect on the entire case, but noting that the alternative issue

1    preclusion argument was meritorious as well).

2    Because a cause of action "needs to have only minimal merit to survive an anti-

3    SLAPP motion," *Cole v. Patricia A. Meyer & Associates*, APC 206 Cal. App. 4th

4    1095, 1104-05 (2012), "where a court grants an anti-SLAPP motion because plaintiff

5    cannot meet this threshold, the court is concluding that plaintiff's claim lacks even

6    minimal merit." *Haynes v. Hanson*, No. 11-CV-05021-JST, 2013 WL 1390387, at *4

7    (N.D. Cal. Apr. 4, 2013), *aff'd*, 695 F. App'x 317 (9th Cir. 2017). Thus, in granting

8    the anti-SLAPP motions, the court found that both of these alleged misrepresentations

9    lacked even minimal merit, and all six criteria required to apply issue preclusion to the

10   purported misrepresentations are met. *See Rodriguez v. City of San Jose*, 930 F.3d

11   1123, 1131-32 (9th Cir. 2019) (discussing six "*Lucido*" factors"). The alleged

12   misrepresentations (1) are identical to the misrepresentations decided in the State

13   Action, (2) were litigated in the State Action, and (3) were necessarily decided by the

14   anti-SLAPP rulings. Additionally, (4) the anti-SLAPP orders are final judgments on

15   the merits, (5) Snopes was a party to the derivative advancement claims in the State

16   Action, and (6) applying issue preclusion to these issues is consistent with the public

17   policies identified by the California courts because "it prevents relitigation of issues

18   already decided." *See White v. City of Pasadena*, 671 F.3d 918, 929 (9th Cir. 2012).

19   Because issue preclusion bars Richmond from re-litigating the disputed

20   misrepresentations—which are an indispensable elements of his claims—the prior

21   judgment is fatal to Richmond's derivative claims. *See Kemper v. County of San*

22   *Diego*, 242 Cal. App. 4th 1075, 1079 (2015).

23   **D.   Richmond is Not a Proper Representative of Snopes**

24   Not only were Richmond's derivative fee advancement claims dismissed with

25   prejudice in the State Action, the trial court also found that Richmond could not serve

26   as Snopes' shareholder derivative representative because he has "hostile interests that

27   disqualify [him] as an adequate representative of Snopes." RJN, Exh 31. Richmond

28   attempts to circumvent the state court's ruling by refiling his derivative claims in

federal court. However, Rule 23.1 likewise provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation." Richmond is no less *unqualified* to serve as Snopes' representative here than he is in the State Action.

"First and foremost, '[a]n adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class.'" *Kenneth v. Yeung Chi Shing Holding (Delaware), Inc.*, No. 18-CV-07644-YGR, 2020 WL 409010, at *6 (N.D. Cal. Jan. 24, 2020) (citing *Larson v. Dumke*, 900 F. 2d 1363, 1367 (9th Cir.1990). "Other factors to consider . . . include:"

> (1) indications that the plaintiff is not the true party in interest;
> (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit;
> (3) the degree of control exercised by the attorneys over the litigation;
> (4) the degree of support received by the plaintiff from other shareholders;
> (5) the lack of any personal commitment to the action on the part of the representative plaintiff;
> (6) the remedy sought by plaintiff in the derivative action;
> (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and
> (8) plaintiff's vindictiveness toward the defendants.

*Id.*, citing *Larson*, 900 F. 2d at 1367. Because these factors are intertwined, "it is frequently a combination of factors which leads a court to conclude that the plaintiff does not" adequately represent shareholders. *Id.* "Courts may also consider a potential representative's outside entanglements making it likely that the interests of the other stockholders will be disregarded in the management of the suit." *RePET Inc. v. Zhao*, EDCV 15-2315-VAP (SPx), 2016 WL 11518482, at *5 (C.D. Cal. June 28, 2016).

### 1.   Richmond is Not Free from Economic Interests that are Antagonistic to the Interests of Snopes and the Class

"[T]he most important element to be considered is whether [the purported

representative's] interests are antagonistic to those plaintiff is seeking to represent." *Puri v. Khalsa*, 674 Fed.Appx. 679, 682 (9th Cir. 2017) (unpublished) (quoting 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1833 (3d ed. 2016)). "Antagonistic interests sufficient to warrant disqualification may exist where the named plaintiff is involved in separate litigation with the defendant corporation or its directors, where the named plaintiff is a competitor of the defendant corporation, or where the named plaintiff has a personal dispute with the defendant directors." *DeLeo v. Swirsky*, 2002 WL 989526, *3 (N.D. Ill. 2002). Here, each of these antagonistic interests warrant Richmond's disqualification.

As discussed above, Richmond is involved in a separate litigation with the defendant corporation and its directors. In that action, Richmond and his company, Proper Media, assert direct claims against Snopes and its directors for the explicit benefit of Richmond and Proper Media. *E.g.*, TAC, ¶220. Among other things, Richmond alleged that Mikkelson breached his fiduciary duty by terminating Snopes' contract with *Proper Media*, allegedly interfering with *Proper Media's* ability to perform under that contract, and "poaching" other defendants from *Proper Media*. *Id.*

Snopes, in turn, asserts multiple claims against Richmond and Proper Media for engaging in a series of unlawful actions designed to inflict financial harm on Snopes. *See* RJN, Exh. 32. Indeed, the California Superior Court already acknowledged Richmond's hostility towards Snopes on numerous occasions, including when it issued a preliminary injunction to enjoin Richmond's unlawful conduct and when it issued an OSC re: contempt when faced with prima facie evidence of Proper Media's intentional disregard for the Court's earlier injunction. *See, e.g.,* RJN, Exh. 2. While there is no per se rule prohibiting shareholders from simultaneously bringing derivative actions and direct claims against a company, these conflicts of interest "must be considered", *Field Turf Builders, LLC v. FieldTurf USA, Inc.*, 2010 WL 817628, *3 (D. Or. Mar. 4, 2010), and often warrant disqualification of the representative plaintiff. *E.g.*, *Zarowitz v. BankAmerica Corp.*, 866 F.2d 1164, 1166

(9th Cir. 1989) (individual with litigation against the corporation lacked standing to sue as a representative in a separate derivative action); *Bass v. First Pac. Networks, Inc.*, No. C 92-20763 JW, 1993 WL 484715, at *1 (N.D. Cal. Sept. 30, 1993).

Moreover, Richmond is using the derivative claims to create leverage for his personal litigation against Snopes' employees. *See Larson*, 900 F. 2d at 1367 (affirming dismissal of a derivative action where the plaintiff attempted to use the derivative suit as leverage in his individual suit against the same defendants). The derivative claims relate to legal fees advanced to Snopes' employees in the State Action, all of whom are currently being sued by Richmond. By challenging the legitimacy of Snopes' legal fee advancements, Richmond is threatening the ability of Snopes' employees and directors to obtain the legal funds needed to combat Richmond's onslaught of claims pending against them. *See Bass*, 1993 WL 484715 (dismissing a derivative action brought by a shareholder who sought relief that was "clearly designed to favorably impact his own suit"). Richmond's use of a shareholder derivative action to gain an advantage in the State Action further disqualifies him from bringing claims on Snopes' behalf.

Richmond is also involved in a personal dispute with the defendant directors in a consolidated interpleader action, where an appeal between Richmond and Mikkelson is currently pending. *See* RJN, Exhs. 5, 35.

Moreover, Richmond and his companies are competitors of Snopes, creating yet another economic interest that is antagonistic to Snopes and its shareholders. As Snopes asserts in the State Action, Richmond and Proper Media are "competitor[s] to Snopes in the online advertising revenue market", which has already forced Snopes to take "precautionary measures to ensure Plaintiffs are unable to inflict further harm by usurping corporate opportunities or disrupting Snopes' business partnerships, among other things." RJN, Exh. 11 at p. 3:7-13; see also RJN, Exh. 21 at p. 17:11-13 (referring to Proper Media as Snopes' and Mikkelson's alleged competitor).

For these reasons, Richmond is plainly *not* free from economic interests that are

antagonistic to the interests of Snopes and its shareholders. Rather, as the state court determined, he is "overtly hostile" to Snopes. The clear conflict of interest—including his private claims against Snopes and its employees as well as Snopes' claims against him—disqualifies Richmond as a fair and adequate representative under Rule 23.1.

### a. The *Larson* factors further confirm that Richmond is not an adequate representative

Consideration of the *Larson* factors further confirms that Richmond is not an adequate representative under Rule 23.1. *See Kenneth*, 2020 WL 409010, at *7. Courts usually combine a number of these interrelated factors to conclude that the plaintiff does not meet the requirements of Rule 23.1. *Larson*, 900 F.2d at 1367 (9th Cir. 1990) (citing *Lewis v. Curtis,* 671 F.2d 779, 788-89 (3rd Cir. 1982)).

Here, four *Larson* factors militate decidedly against Richmond serving as Snopes' representative. The fifth *Larson* factor weighs against Richmond because of his personal commitment to the action. In essence, the derivative action seeks to claw back the legal fees Snopes advanced to defend its employees against the claims Richmond brought in the State Action. The relief sought in these derivative claims would effectively starve Snopes' employees of the funding needed to defend against Richmond's personal claims. *See Bass*, 1993 WL 484715, at *1 (dismissing action where shareholder sought relief "clearly designed" to favorably impact his own interests and his own suit).

The sixth factor (the remedy sought) also weighs against Richmond, who attempts to hold every director on the Board liable for wrongdoing except himself. *See Kenneth*, 2020 WL 409010, at *9 (finding sixth factor weighed against plaintiff where plaintiff sought to hold every director on Board liable for wrongful conduct but himself, and that "such a conflict in the discrepancy between the relief requested as to himself and as to other directors demonstrates that he is an inadequate individual to maintain a shareholder derivative action under Rule 23.1"). Moreover, Richmond broadly seeks compensatory damages, punitive damages, interest, and attorneys' fees

against the each of the other Directors. FAC, p. 22:19-22; *see Kenneth*, 2020 WL 409010, at *9 (rejecting shareholder plaintiff's assertion that the remedy sought was narrowly tailored).

Weighing Richmond's personal interests as compared to the interest of the derivative action itself, the seventh factor once again weighs against Richmond, particularly given Richmond's numerous claims against Mikkelson and Snopes' as well as the substantial claims asserted against Richmond in the State Action. *See* RJN, Exhs. 4, 8, 32. *See Kenneth*, 2020 WL 409010, at *9 (finding seventh factor weighed against the plaintiff where he was not free from economic interests antagonistic to the class). Finally, as to the eight factor, Richmond as clearly possesses animus that would preclude the possibility of a suitable settlement. *Kayes*, 51 F.3d at 1464. Richmond's filing of multiple lawsuits further demonstrates vindictiveness and his disqualification as an individual representative under Rule 23.1. *See Kenneth*, 2020 WL 409010, at *9.

In light of these factors, Richmond is clearly unqualified under Rule 23.1 to serve as Snopes' representative.

## V.  CONCLUSION

There are at least three compelling reasons to dismiss Richmond's derivative claims. First, Richmond failed to make a presuit demand on Snopes' Board or establish that such a demand would have been futile. Second, Richmond's repackaged derivative claims were already litigated and are precluded under the doctrines of res judicata and collateral estoppel. Third, Richmond is disqualified from serving as Snopes' representative in a derivative suit.

DATED: December 16, 2020

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


By: */s/Jacob Kozaczuk*
Paul A. Tyrell
Ryan C. Caplan
Jacob Kozaczuk
Attorneys for Nominal Defendant
Snopes Media Group, Inc.

25