SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
JOHN A. YACOVELLE, Cal. Bar No. 131781
MARISA B. MILLER, Cal. Bar No. 270860
KRISTIN P. HOUSH, Cal. Bar No. 286651
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone:    858.720.8900
Facsimile:    858.509.3691
E mail:        jyacovelle@sheppardmullin.com
                mmiller@sheppardmullin.com
                khoush@sheppardmullin.com

Attorneys for Plaintiffs/Cross-Defendants/Cross-Complainants
PROPER MEDIA, LLC, CHRISTOPHER RICHMOND,
PUBLIFE LLC and DREW SCHOENTRUP

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO, CENTRAL

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company; CHRISTOPHER RICHMOND, an individual; and DREW SCHOENTRUP, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BARDAV INC., a California corporation; DAVID MIKKELSON, an individual; VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual, <br><br> Defendants. | Lead Case No. 37-2017-00016311-CU-BC-CTL <br><br> *(Consolidated with 37-2018-00004335-CU-MC-CTL)* <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS DREW SCHOENTRUP AND CHRISTOPHER RICHMOND MOTION FOR PRELIMINARY INJUNCTION** <br><br> [*Notice of Motion and Motion, Declaration of Kristin P. Housh, Declaration of Christopher Richmond, Declaration of Gregory A. Kaseno,[Proposed] Order, and Notice of Lodgment filed concurrently herewith*] <br><br> Date:        May 10, 2019 <br> Time:        10:30 a.m. <br><br> The Hon. Richard S. Whitney <br> Dept. C-68 <br><br> Complaint Filed:        May 4, 2017 <br> Trial Date:                October 4, 2019 |

[*Additional Caption Continued on Next Page*]

-1-

MEMORANDUM OF POINTS & AUTHORITIES ISO PLTFS. SCHOENTRUP & RICHMOND'S MOTION FOR PRELIMINARY INJUNCTION

1    BARDAV INC., a California corporation,

2                Plaintiff,

3         v.

4    DREW SCHOENTRUP, an individual;
CHRISTOPHER RICHMOND, an
5    individual; VINCENT GREEN, an
individual; RYAN MILLER, an individual;
6    TYLER DUNN, an individual; DAVID
MIKKELSON, an individual and DOES 1
7    through 10, inclusive,

8                Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS & AUTHORITIES ISO PLTFS. SCHOENTRUP &
RICHMOND'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................6

II. STATEMENT OF FACTS ........................................................................................7

    A. The Lawsuit ....................................................................................................7

    B. Snopes Advances Attorneys' Fees to the Individual Defendants ...................9

    C. Defendants Repeatedly Obstruct Plaintiffs' Efforts to Obtain Discovery ...............10

    D. Plaintiffs Amend Their Complaint To Add New Claims.........................................11

III. LEGAL STANDARD ............................................................................................11

IV. ARGUMENT ........................................................................................................12

    A. Plaintiffs Are Likely To Prevail On Their Shareholder Derivative UCL Claim ...............13

        1. Snopes' Advancement of Attorneys' Fees Is Unlawful .............................14

            a. The Board Authorizations Are Improper "Interested Director" Transactions Under Corporations Code Section 310(a) ...............14

            b. Snopes' Advancement of Attorneys' Fees Violates Corporations Code Section 317(f) and the Bylaws .........................16

    B. Without An Injunction, Snopes Will Be Irreparably Harmed...................................18

    C. An Undertaking, If Any, Should Be Minimal ........................................................20

V. CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Allergia, Inc. v. Bouboulis*
    229 F. Supp. 3d 1150 (S.D. Cal. 2017) ...............................................................16, 17

*Ass'n for Los Angeles Deputy Sheriffs v. Superior Court*
    13 Cal. App. 5th 413, 430 (2017).........................................................................12

*Butt v. State of California*
    4 Cal. 4th 668 (1992)...........................................................................................12

*Byars v. SCME Mortg. Bankers, Inc.*
    109 Cal. App. 4th 1134 (2003).............................................................................13

*Doran v. Salem Inn, Inc.*
    422 U.S. 922 (1975) .......................................................................................18, 19

*Farmers Ins. Exchange v. Superior Court*
    2 Cal. 4th 377 (1992)...........................................................................................13

*hiQ Labs, Inc. v. LinkedIn Corp.*
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ...............................................................18

*Integrated Dynamic Sols., Inc. v. VitaVet Labs, Inc.*
    6 Cal. App. 5th 1178, 1186 (2016).......................................................................18

*Johnson v. Couturier*
    572 F.3d 1067 (9th Cir. 2009)..............................................................................20

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134 (2003).......................................................................................13

*Plate v. Sun–Diamond Growers*
    225 Cal. App. 3d 1115 (1990)..............................................................................16

*SB Liberty, LLC v. Isla Verde Assn., Inc.*
    217 Cal. App. 4th 272 (2013)...............................................................................12

*State Farm Fire & Casualty Co. v. Superior Court*
    45 Cal. App. 4th 1093 (1996)...............................................................................13

*W. Coast Constr. Co. v. Oceano Sanitary Dist.*
    17 Cal. App. 3d 693 (1971)..................................................................................19

*Warner v. Sims Metal Mgmt.*
    No. C 13-02190 WHA, 2013 WL 4777314 (N.D. Cal. Sept. 6, 2013) ......................16

<u>Statutes</u>

Business & Professions Code § 17200, *et seq.* ...........................................................................7, 13

Cal. Bus. & Prof. Code § 17203...........................................................................................................13

Cal. Code Civ. Proc. § 526(a) .............................................................................................................12

Corporations Code § 310......................................................................................................................9

Corporations Code § 310(a) ....................................................................................................6, 14, 15

Corporations Code § 317.......................................................................................9, 16, 17, 18

Corporations Code § 317(f)..................................................................................6, 9, 14, 15, 16

SMRH:490056630.2

MEMORANDUM OF POINTS & AUTHORITIES ISO PLTFS. SCHOENTRUP &
RICHMOND'S MOTION FOR PRELIMINARY INJUNCTION

## I. **<u>INTRODUCTION</u>**

Plaintiff-Shareholders Drew Schoentrup ("Schoentrup") and Christopher Richmond ("Richmond") seek a preliminary injunction from this Court to maintain the status quo pending trial, that: (1) enjoins Defendant Snopes Media Group, Inc. ("Snopes") from using company funds to advance the legal expenses that the individual defendants David Mikkelson ("Mikkelson"), Vincent Green ("Green"), and Ryan Miller ("Miller") (together, the "Individual Defendants") are personally incurring in this litigation, and (2) requires the Individual Defendants to repay to Snopes all funds that Snopes has advanced for the purpose of covering their personal legal expenses.

This litigation was initiated by Plaintiffs Schoentrup and Richmond to address an unlawful effort by Defendants Mikkelson, Green and Miller to seize control of Defendant Snopes, and its web property Snopes.com, a leading fact-checking and "fake news" debunking website. On one side of the dispute are Schoentrup and Richmond, Snopes shareholders, and their company Plaintiff Proper Media LLC ("Proper Media")—a San-Diego based Internet company that provided content and advertising management services to Snopes.com. On the other side sit the Defendants, including Mikkelson, Snopes' founder, director, CEO, and a 50% shareholder, as well as two minority shareholders and former members, officers, and employees of Proper Media, Green and Miller.

In early 2017, Mikkelson, Green, and Miller conspired to seize control of Snopes so that Mikkelson could continue using the company as his personal piggy bank. At the time, Green and Miller were equity holders and employees of Proper Media, and, as such owed fiduciary duties to Proper Media and its other members. Plaintiffs filed the instant lawsuit, in which they have asserted multiple claims arising out of the Individual Defendants' conspiracy, including claims for breach of fiduciary duties and corporate waste.

Schoentrup and Richmond recently discovered that Mikkelson, as a company director, voted to authorize Snopes to pay the legal expenses that he and his co-conspirators, Green and Miller, are personally incurring in this litigation, including the legal expenses associated with their defense in this litigation, as well as the legal expenses associated with pursuing their respective affirmative counterclaims. Snopes' advancement of legal expenses to the Individual Defendants is unlawful under Corporations Code sections 310(a) and 317(f), and Snopes' Bylaws, and as such, is actionable

1   under the Unfair Competition Law ("UCL") at Business & Professions Code section 17200, *et seq.*

2   Accordingly, Schoentrup and Richmond recently amended their complaint to add several claims

3   arising from the unlawful advancement of attorneys' fees.

4        By wrongfully diverting Snopes' funds to pay for their personal legal fees, the Individual

5   Defendants have caused and continue to cause immediate and irreparable harm to Snopes. The

6   record evidence demonstrates that, as a direct result of being forced to bankroll the Individual

7   Defendants' legal fees, Snopes is in imminent danger of insolvency (and, in fact, is very likely

8   already insolvent) and may not survive past trial. Moreover, the Individual Defendants have

9   admitted in sworn statements filed with this Court that they are unlikely to be able to repay their

10   advanced attorneys' fees in the event the Court ultimately finds that the advancement was unlawful.

11   Accordingly, in the absence of a preliminary injunction, Snopes faces a real possibility of shutting

12   its doors and never recouping the hundreds of thousands of dollars in attorneys' fees that it has

13   already advanced to the Individual Defendants over the past two years.

14        Indeed, the requested preliminary relief is necessary to protect Snopes from financial ruin

15   and from obtaining a worthless monetary judgment on which it has no hope of collecting. The

16   requested relief is also appropriate because it simply requires that Snopes comply with the

17   Corporations Code and its own Bylaws, thereby ensuring that Snopes can continue to operate during

18   the pendency of this lawsuit.

19 **II.**    **STATEMENT OF FACTS**

20      **A.**    **The Lawsuit**

21        Mikkelson and his then-wife Barbara Mikkelson ("Barbara") founded Snopes in 2003 and

22   each owned one share of the company's two shares of stock, representing an equal 50% ownership

23   interest in the company. (Declaration of Christopher Richmond ("Richmond Decl."), ¶ 5.) From

24   August 2015 through May 2017, Proper Media, and its two founding members, Schoentrup and

25   Richmond, provided content and advertising management services to Snopes and its web property

26   Snopes.com, pursuant to a general services agreement. (*Id.*, ¶¶ 7-8.) In July 2016, nearly a year

27   after Proper Media began providing services to Snopes, and after Mikkelson's and Barbara's

28

MEMORANDUM OF POINTS & AUTHORITIES ISO PLTFS. SCHOENTRUP &
RICHMOND'S MOTION FOR PRELIMINARY INJUNCTION

contentious divorce, Barbara elected to sell her 50% share to Proper Media.[1]  (*Id.*, ¶¶ 10-13.)

Since at least 2015, Mikkelson has put the financial viability of Snopes at risk by padding his salary through the submission of astronomical personal expenses for reimbursement by Snopes, including, but not limited to, personal legal fees connected to his divorce and a honeymoon trip to Asia with his new wife.  (*Id.*, ¶¶ 20-25.)  Schoentrup and Richmond objected to Mikkelson's use of the company as his personal piggybank.  Mikkelson chafed at questions and concerns raised by Schoentrup and Richmond about Mikkelson's use of corporate assets.

In early 2017, Mikkelson began conspiring with Green and Miller to seize control of Snopes. (*Id.* at ¶¶ 25-35.)  Mikkelson—a 50% shareholder of Snopes—lacked the majority control necessary to effectuate his scheme.  (*Id.*, ¶ 27.)  Indeed, Mikkelson required the assistance of Green and Miller, who together held (again, for the benefit of Proper Media) a 6.66% equity interest in Snopes.  (*Id.*)

Therefore, Mikkelson, Green, and Miller sought to combine their shares to take control of Snopes, terminate the general services agreement with Proper Media, and edge Schoentrup and Richmond out of the company.  (*Id.*, ¶¶ 25-35; Exs. 42-45, 16.)  Green and Miller took all of these actions while they were members and employees of Proper Media.  (Richmond Decl., ¶¶ 29-30.)

Consistent with his use of the company's financial resources as his personal piggybank, Mikkelson undertook actions to have Snopes bankroll the Individual Defendants' legal expenses. Specifically, on October 27, 2017, the Board, consisting at the time solely of Mikkelson and Brad Westbrook ("Westbrook"), executed a written consent whereby it adopted a full set of corporate bylaws, effective as of July 14, 2017 ("Bylaws").  (Richmond Decl., ¶¶ 47, 52; Ex. 28; Ex. 27, 19:4-21:4.)  Section 6.3 of the Bylaws contains an advancement of legal fees provision.  (*Id.*, ¶ 48; Ex. 28, § 6.3; Ex. 27, 21:25-24:20.)  It states in relevant part that Snopes may advance attorneys' fees incurred by an "agent" "in ***defending*** any proceeding ..., or any particular claim(s) within such

---

[1] The original members of Proper Media—Plaintiffs Schoentrup and Richmond, Defendants Green and Miller, and nominal Defendant Tyler Dunn ("Dunn") (the "Proper Media Members")—acquired Barbara's interest in Snopes in proportion to their respective equity interest in Proper Media (to hold for the benefit of Proper Media). (Richmond Decl., ¶¶ 10-13.) The Proper Media Members held an interest in Barbara's share as follows: Schoentrup and Richmond—20% each; Green and Miller—6.66% each; Dunn—6.68%.  (*Id.*)

-8-

1   proceeding (as determined by the Board) prior to the final disposition of the proceeding,"

2   conditioned on (1) "approval by, and to the extent authorized by, the Board of Directors (which

3   directors may include any director(s) who is/are named defendant(s) in any such proceeding(s))",

4   and (2) the agent's "undertaking ... to repay such amount if it shall be determined that such agent is

5   not entitled to be indemnified as authorized by Section 317 of the Corporations Code and these

6   Bylaws." (Ex. 28, § 6.3.) Notably, the Bylaws require that the person seeking advancement must

7   be an "agent" of the company at the time that the actions giving rise to legal claims against that

8   person accrue, and they **do not allow** Snopes to advance legal fees incurred in pursuing affirmative

9   claims in a legal proceeding. (*Id.*)

10      On September 29, October 13, and November 20, 2017, the Snopes Board—which at the

11   time consisted of only two directors (Mikkelson, an interested director, and Westbrook)—

12   authorized the advancement of attorneys' fees and costs incurred by Green, Mikkelson, and Miller,

13   respectively, in **defending** themselves in connection with this lawsuit subject to and in accordance

14   with Corporations Code section 317(f). (Richmond Decl., ¶¶ 49-52; Exs. 1-3; Ex. 27, 19:4-21:4,

15   31:9-13.) Without Mikkelson's vote, Snopes could not have approved the advancement of

16   attorneys' fees to the Individual Defendants because the Bylaws require a majority of the directors

17   to make decisions. (Ex. 28, § 3.9 ("Every act or decision done or made **by a majority of the directors**

18   **present at a meeting** duly held at which a quorum is present is the act of the Board of Directors,

19   subject to the provisions of Section 310 of the Corporations Code . . . .").) Around the same time,

20   the Individual Defendants each executed an undertaking to repay the attorneys' fees advanced to

21   them by Snopes in the event that it was later determined that they are **not** in fact entitled to

22   indemnity. (Exs. 1-3; Ex. 27, 26:14-30:5.)

23      **B.      Snopes Advances Attorneys' Fees to the Individual Defendants**

24      In accordance with the Board's improper authorization of the advancement of attorneys'

25   fees, Snopes thereafter reimbursed Mikkelson, Green, and Miller for the fees they had already

26   incurred in connection with this lawsuit, and also began advancing their attorneys' fees on a going-

27   forward basis. (Ex. 26, 53:19-55:1.) Snopes has advanced all attorneys' fees that the Individual

28   Defendants have incurred in this lawsuit to date, including the attorneys' fees they have incurred in

-9-

1    defending themselves against the claims brought by Plaintiffs, the pursuing their own counterclaims

2    against Plaintiffs, and litigating the interpleader action, captioned *Snopes Media Group, Inc. v.*

3    *Schoentrup, et al.*, Case No. 37-2018-00004335 (the "Interpleader Action").  (*Id.*, 40:25-42:24.)

4         Schoentrup and Richmond did not discover that Snopes was advancing the Individual

5    Defendants' attorneys' fees until after Snopes produced the Board's written consents authorizing

6    the advancements.  (Richmond Decl., ¶¶ 53-54; Declaration of Kristin Housh ("Housh Decl."), ¶ 5.)

7         **C.      Defendants Repeatedly Obstruct Plaintiffs' Efforts to Obtain Discovery**

8         In March 2018, Richmond was appointed and took the third seat on the Snopes Board.

9    (Richmond Decl., ¶ 55.)  Once Richmond discovered that Snopes was paying the Individual

10   Defendants attorneys' fees, he began requesting information about that practice from his fellow

11   Board members, Mikkelson and Westbrook, as well as Snopes' corporate counsel, William

12   Belanger.  (*Id.*, ¶ 60.)  To date, despite multiple requests, neither Mikkelson, Westbrook, nor

13   Belanger have provided ***any*** information to Richmond—a Snopes' Board member—about Snopes'

14   use of corporate funds to pay for the Individual Defendants' personal legal fees in this lawsuit.  (*Id.*,

15   ¶¶ 59-62; Housh Decl., ¶ 12; Ex. 5; Ex. 27, 104:7-108:12.)

16        For months, Plaintiffs have requested the production of materials necessary to assess the

17   legality and propriety of the Board's decision to pay legal fees incurred by the Individual

18   Defendants.  For example, on November 30, 2018, Schoentrup served his third set of requests for

19   production on Snopes, requesting documents relating to Snopes' advancement of attorneys' fees to

20   the Individual Defendants.  (Housh Decl., ¶ 13.)  Snopes served boilerplate objections on January

21   4, 2019, did not substantively respond until March 25, 2019, and did not produce ***any*** documents in

22   response to the document requests until ***more than four months later*** (April 16, 2019), the day of

23   the deposition of Snopes' corporate representative on the advancement of attorneys' fees and a mere

24   two days before this Motion was due.  (*Id.*, ¶¶ 13-17, 71; Exs. 6, 7.)  To date, Mikkelson, Green,

25   and Miller have failed to produce documents responsive to similar document requests served on

26   them.  (Housh Decl., ¶¶ 23-32; Exs. 10-12.)  Moreover, Snopes has failed and refused to produce

27   materials pertinent to the company's financial condition, including general ledgers, Quickbook files,

28   accounts receivable and payable reports, and any documents showing the apportionment of legal

-10-

1  fees to the Individual Defendants—documents that its corporate representative admitted were

2  responsive to the document requests set forth in the deposition notice.  (Housh Decl., ¶¶ 74-75; Ex.

3  26, 14:20-18:2, 21:1-24:11, 26:19-22; 39:17-40:20.)

4      Snopes also refused to produce a corporate representative to testify about Snopes'

5  advancement of attorneys' fees and financial condition, among other relevant topics, until April 16,

6  2019—again, two days before this Motion was due—despite the fact that Plaintiffs had requested

7  the deposition *three months* earlier.  (Housh Decl., ¶¶ 57-66; Exs. 19-24.)  Even then, ***on the day***

8  ***of the deposition***, Snopes refused to produce a representative knowledgeable on the issue of

9  advancement of attorneys' fees.  Instead, it tendered a vendor bookkeeper who was unprepared to

10  testify about the Board's decision to advance attorneys' fees to the Individual Defendants (indeed,

11  she had never even seen the written consents purporting to authorize the advancement of legal fees).

12  Moreover, she did not know the total amount of fees advanced to the Individual Defendants or the

13  percentage of the amount of fees incurred by Snopes that have been paid to the attorneys for the

14  Individual Defendants.  Most egregiously, Snopes refused to allow Mikkelson—the person who is

15  most knowledgeable about the Board's decision to advance fees—to answer questions about the

16  advancement of fees.  (Ex. 26, 13:10-18, 27:21-29:7, 40:12-20, 85:20-86:8; Ex. 27, 48:5-51:12,

17  66:15-70:14, 127:8-130:25; Housh Decl., ¶¶ 76-78.)  Snopes' gamesmanship conduct prevented

18  Plaintiffs from obtaining evidence to support this Motion, and is an egregious abuse of discovery.

19      **D.      Plaintiffs Amend Their Complaint To Add New Claims**

20      After filing their Second Amended Complaint, Schoentrup and Richmond discovered

21  additional facts relevant to this lawsuit, including that Snopes has been improperly advancing

22  attorneys' fees to the Individual Defendants.  (Housh Decl., ¶¶ 3-5; Richmond Decl., ¶¶ 53-54; Exs.

23  1-3.)  Accordingly, Schoentrup and Richmond sought to amend their complaint to add claims arising

24  from Snopes' improper advancement of legal fees.  (Housh Decl., ¶¶ 35-37.)  Defendants opposed

25  the filing of the amended complaint, requiring motion practice.  (*Id.* ¶¶ 35-39, 46-54, 67-69.)  On

26  April 2, 2019, this Court rejected Defendants' arguments and granted Plaintiffs' motion for leave to

27  file their Third Amended Complaint.  (*Id.* ¶¶ 69-70.)

28  **III.   LEGAL STANDARD**

-11-

Preliminary injunctive relief is appropriate under any the following circumstances: "(1) When it appears by the Complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually"; (2) "When it appears by the Complaint or affidavits that the commission or continuance of some act during the litigation will produce waste, or great or irreparable injury, to a party to the action"; (3) "When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual"; (4) "When pecuniary compensation will not afford adequate relief'; (5) "Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief"; (6) "Where the restraint is necessary to prevent a multiplicity of judicial proceedings"; or (7) "Where the obligation arises from a trust." Cal. Code Civ. Proc. § 526(a). Preliminary injunctive relief "preserve[s] the status quo . . . ." *SB Liberty, LLC v. Isla Verde Assn., Inc.*, 217 Cal. App. 4th 272, 280 (2013).

When deciding whether to issue a preliminary injunction, the court considers two interrelated factors: "(1) the reasonable probability that the party seeking the injunction will prevail on the merits at trial and (2) a comparison of the 'irreparable harm' that will be suffered by that party if the preliminary injunction is denied to the 'irreparable harm' that will be suffered by the opposing party if the preliminary injunction is granted." *Ass'n for Los Angeles Deputy Sheriffs v. Superior Court*, 13 Cal. App. 5th 413, 430 (2017) (citations omitted). "[T]he greater the plaintiff's showing on one, the less must be shown on the other . . . ." *Butt v. State of California*, 4 Cal. 4th 668, 678 (1992).

## IV. <u>ARGUMENT</u>

The Court should issue a preliminary injunction enjoining Snopes from advancing any more legal fees to Mikkelson, Green, and Miller in connection with this lawsuit. It should additionally require the Individual Defendants to repay to Snopes any and all corporate funds that they have improperly obtained as a result of the improper and void Board consents authorizing the advancement of attorneys' fees to the Individual Defendants.

Schoentrup and Richmond request this preliminary injunctive relief as shareholders on

behalf of Snopes.  Schoentrup and Richmond are entitled to this relief, on behalf of Snopes, because they are likely to succeed on the merits of their derivative UCL claim, and because Snopes will be irreparably harmed without the injunction.  Absent the granting of the preliminary injunctive relief sought herein, Snopes is highly likely to become insolvent due to the costs associated with advancing the Individual Defendants' legal fees, and it almost certainly will not be able to recoup the funds that have been advanced to the Individual Defendants.  There may not be a Snopes left, or any money to make Snopes whole, if Schoentrup and Richmond are forced to wait until trial.

### A.     Plaintiffs Are Likely To Prevail On Their Shareholder Derivative UCL Claim

Schoentrup and Richmond have stated a claim, derivatively on behalf of Snopes, against Mikkelson for unfair competition under Business and Professions Code section 17200, *et seq.*  (Ex. 25, ¶¶ 311-334.)  "Section 17200 is violated if a business practice is unlawful or unfair or deceptive." *Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147 (2003); *see also* Cal. Bus. & Prof. Code § 17200.  A business practice is "unlawful" if it violates some law.  *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  Accordingly, the UCL essentially "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder."  *Farmers Ins. Exchange*, 2 Cal. 4th at 383.  "Virtually any law-federal, state or local-can serve as a predicate for a section 17200 action."  *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1102-03 (1996) (internal citation omitted).

Section 17203 of the UCL specifically provides for injunctive relief:  "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."  Cal. Bus. & Prof. Code § 17203.  And, Section 17203 gives courts wide discretion to fashion appropriate injunctive relief, including ordering restitution.  *Id.* ("The court may make such orders or judgments ... as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("Under the UCL, an individual may recover profits

-13-

unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest.").

### 1. Snopes' Advancement of Attorneys' Fees Is Unlawful

Snopes' advancement of legal fees to the Individual Defendant constitutes an "unlawful" business practice under the UCL for two independent reasons: (1) the Board's authorizations of the advancement of legal fees are void because they violate the "interested director" rule under Corporations Code section 310(a); and, (2) Snopes' advancement of legal fees violates both Corporations Code section 317(f) and the Bylaws because the Individual Defendants are not being sued in their respective capacities as "agents" of Snopes.

#### a. The Board Authorizations Are Improper "Interested Director" Transactions Under Corporations Code Section 310(a)

The Board, consisting only of Mikkelson and Westbrook, voted to authorize Snopes to advance the Individual Defendants' legal expenses in this lawsuit. (Richmond Decl., ¶¶ 49-51; Exs. 1-3; Ex. 27, 19:4-21:4.) These purported authorizations violate Corporations Code section 310(a), which prohibits "interested director" transactions except if certain conditions are met:

> "No . . . transaction between a corporation and one or more of its directors . . . is either void or voidable because such director or directors . . . are present at the meeting of the board of a committee thereof which authorizes, approves or ratifies the . . . transaction, if . . .

> (2) The material facts as to the transaction and as to such director's interest are fully disclosed or known to the board or committee, and the board or committee authorizes, approves or ratifies the . . . transaction in good faith **by a vote sufficient without counting the vote of the interested director** or directors **and** the . . . transaction is **just and reasonable** as to the corporation at the time it is authorized, approved or ratified . . . ."; or

> (3) the person asserting the validity of the contract or transaction sustains the burden of proving that the contract or transaction was **just and reasonable** as to the corporation at the time it was authorized, approved or ratified.

(Cal. Corp. Code § 310(a)). Accordingly, under Section 310(a), a corporate transaction in which a director has a material financial interest is **unlawful** and **void** if the Board, in authorizing the transaction, counts the vote of that "interested director." An "interested director" is a director who has a "material financial interest" in approving the transaction. *See id.*

MEMORANDUM OF POINTS & AUTHORITIES ISO PLTFS. SCHOENTRUP & RICHMOND'S MOTION FOR PRELIMINARY INJUNCTION

Here, Mikkelson is an "interested director" under Corporations Code section 310(a) with respect to the Board's decision to advance the legal fees that he, Green, and Miller are personally incurring in connection with this litigation. Moreover, Mikkelson has a "material financial interest" in the advancement of legal fees to himself and to his co-defendants in this case. Mikkelson benefitted and continues to benefit from the Board's decision to advance the Individual Defendants' legal fees. The Board's decision ensured that the Individual Defendants: (1) would not have to shoulder their own legal bills during the pendency of this litigation; and (2) with the corporate funds, could retain reputable attorneys and firms to represent their personal interests.

Mikkelson, as an "interested director," was not permitted to vote on the advancement of attorneys' fees to himself and to his co-conspirators, Green and Miller.[2] Nevertheless, Mikkelson did in fact vote, notably as one of only two directors, in favor of the advancement of attorneys' fees to the Individual Defendants. Without counting Mikkelson's "interested director" vote, the Board's fee advancement authorization was not a valid corporate transaction, because, under the Bylaws, a "majority" of Snopes directors are required to transact corporate business, and Westbrook by himself does not constitute a majority. (Ex. 28, § 3.9.)

The Board's authorizations of the advancement of attorneys' fees to the Individual Defendants are also not permissible under the "just and reasonable" exception to the "interested director" rule under Section 310(a). The Board's authorizations were not "just and reasonable" to Snopes for two reasons: (i) Mikkelson, Green, and Miller are not entitled to advanced attorneys' fees in this litigation, as a matter of law, under Corporations Code section 317(f) because (as set forth in detail below) they are not being sued "by reason of the fact" that they are "agents" of Snopes; and (ii) Snopes' improper advancement of fees to the Individual Defendants is siphoning away Snopes' already dwindling profits, placing it in imminent danger of insolvency.

In sum, the Board's corporate transactions authorizing Snopes to advance legal fees to the Individual Defendants stand in violation of Corporations Code section 310(a), and are void.

---

[2] Section 6.3 of the Bylaws violates Section 310(a) of the Corporations Code to the extent that it purports to permit an "interested director" to vote in favor of the advancement of legal fees to himself and/or to his co-defendants in a litigation. (Ex. 28, § 6.3.)

MEMORANDUM OF POINTS & AUTHORITIES ISO PLTFS. SCHOENTRUP & RICHMOND'S MOTION FOR PRELIMINARY INJUNCTION

**b.  Snopes' Advancement of Attorneys' Fees Violates Corporations Code Section 317(f) and the Bylaws**

Snopes' advancement of attorneys' fees to the Individual Defendants is unlawful because it violates both Corporations Code section 317(f) and the Bylaws.  Corporations Code section 317(f) provides, in relevant part, that "[e]xpenses incurred in defending any proceeding may be advanced by the corporation prior to the final disposition of the proceeding upon receipt of an undertaking by or on behalf of the agent to repay that amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section."

In order to be eligible for indemnification under Section 317, the person seeking indemnification must have been sued "by reason of the fact" that he was performing his corporate duties (as a director, officer, employee, or other agent).  "In other words, the conduct of the agent which gives rise to the claim against him must have been performed in connection with his corporate functions and not with respect to purely personal matters."  *Plate v. Sun–Diamond Growers*, 225 Cal. App. 3d 1115, 1123 (1990) (citation omitted).  The "by reason of the fact" prerequisite is not met "[w]here ***personal motives***, not the corporate good, are predominant in a transaction giving rise to an action."  *Id*. (emphasis added).  For example, "[i]t would ... appear unlikely that an officer could properly claim that he was entitled to indemnification as the result of litigation brought [against him] to recover short-swing profits or profits from trading in the stock of his corporation on the basis of inside information ... ."  *Id*. (citation omitted); *see also Warner v. Sims Metal Mgmt.*, No. C 13-02190 WHA, 2013 WL 4777314, at *2 (N.D. Cal. Sept. 6, 2013) (holding that plaintiff was not sued "by reason of the fact" that he was an agent of the corporation because he allegedly "converted property and submitted fraudulent expense reimbursements, which are ***purely self-serving acts*** that do not further the corporate good") (emphasis added).

The Southern District of California, applying California law, recently evaluated the "by reason of the fact" standard in connection with the advancement of legal fees under Section 317(f). In *Allergia, Inc. v. Bouboulis*, 229 F. Supp. 3d 1150 (S.D. Cal. 2017), the plaintiff-corporation brought an action against its president asserting claims for breaches of fiduciary duty and implied contract.  The defendant president requested advancement of legal fees.  The plaintiff-corporation's

-16-

bylaws provided for fee advancement to a director or officer incurred in defending himself in any proceeding to the fullest extent authorized by Section 317.  *Id*. at 1157.  The Court reasoned that, whether a corporate officer or director "is entitled to advancement of his fees depends in part on whether he was sued 'by reason of the fact that' he was an agent, officer, or director of [the company]."  *Id*.  The Court then found that the president "was not sued 'by reason of the fact' that he was an agent and/or officer of Plaintiff" (and therefore was not entitled to advanced legal fees) because "all of Plaintiff's claims against Defendant appear to implicate actions that predominantly benefit Defendant, but do not appear to be in furtherance of the corporate good or performed in connection with Defendant's corporate functions."  *Id*. at 1159.  Applying the "by reason of the fact" standard, the court found that the president was not entitled to advancement of his legal fees in connection with his defense of the breach of fiduciary duties or implied contract claims because "these claims for relief largely—if not entirely—implicate Defendant's personal motives . . ."  *Id*.

Here, like the bylaws at issue in *Allergia*, Section 6.3 of Snopes' Bylaws provide for advancement of legal fees incurred by an "agent" of the corporation in "defending" a legal proceeding to the extent authorized by Corporations Code section 317.  (Ex. 28, § 6.3.)  The Individual Defendants are not entitled to advancement of legal fees incurred in defending themselves in this litigation, because they are not being sued "by reason of the fact" that they are "agents."

In this litigation, Plaintiffs allege that Mikkelson acted in his own personal interests to the detriment of Snopes, by, among other acts, misappropriating corporate funds to pay for his personal expenses, and conspiring with Green and Miller to obtain a majority interest in Snopes to facilitate control over Snopes for his own benefit.  (Richmond Decl., ¶¶ 20-44; Ex. 25, ¶¶ 61-93.)  Because Mikkelson is being sued for actions he took in pursuit of his own personal interests, and in breach of the fiduciary duties he owed to Snopes and its other shareholders, he is not entitled to the advancement of attorneys' fees under either Corporations Code section 317 or the Bylaws.

Moreover, Green and Miller are not being sued in their capacities as Snopes' agents, and therefore could not possibly meet the "by reason of the fact" criteria required to receive advanced attorneys' fees.  To the contrary, Green and Miller are being sued for actions they took that (1) violated the fiduciary duties they owed to Proper Media, while still employed by and members of

1   Proper Media, and (2) **predated** their employment with Snopes.  (Richmond Decl., ¶¶ 15-19, 26-44;

2   Ex. 25, ¶¶ 70-93, 179-84, 193-200, 241-48, 257-68.)  Specifically, Plaintiffs allege that Green and

3   Miller breached the fiduciary duties they owed to Proper Media.  (*Id.*)  Green's and Miller's

4   misconduct occurred between January and March 2017, while they were still members of and owed

5   fiduciary duties to Proper Media, and **before** they commenced their employment with Snopes.  (*Id.*)

6          Moreover, the Individual Defendants are not entitled to advancement of fees associated with

7   pursuing their **affirmative counterclaims** against Plaintiffs.  Both Section 317(f) and Section 6.3 of

8   the Bylaws provide for advancement of legal fees incurred in "**defending** any proceeding."  (Ex. 28,

9   § 6.3.)  They do not authorize the advancement of legal fees incurred in bringing affirmative claims.

10  And, the Individual Defendants are not entitled to any advancement of fees associated with the

11  Interpleader Action.  The Board's (unlawful) authorization to advance attorneys' fees pertains only

12  to fees associated with the Individual Defendants' **defense** in the Lead Case.  (Exs. 1-3.)

13          **B.      Without An Injunction, Snopes Will Be Irreparably Harmed**

14          In the absence of an injunction enjoining Snopes from advancing any more legal fees to the

15  Individual Defendants, and requiring the Individual Defendants to disgorge any already improperly

16  advanced fees, Snopes will suffer irreparable harm in the form of a substantial, and potentially fatal,

17  loss of corporate funds.  An imminent and substantial loss of corporate funds constitutes irreparable

18  harm that warrants preliminary injunctive relief.  *See, e.g.*, *Integrated Dynamic Sols., Inc. v. VitaVet*

19  *Labs, Inc.*, 6 Cal. App. 5th 1178, 1186 873, 879 (2016) (upholding preliminary injunction where

20  plaintiff faced "significant business losses").  This is particularly so where, as here, the substantial

21  loss of corporate funds threatens a company's solvency.  *See hiQ Labs, Inc. v. LinkedIn Corp.*, 273

22  F. Supp. 3d 1099, 1105 (N.D. Cal. 2017) ("potential consequence[]" of being put "out of business"

23  sufficient to warrant interim relief); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (holding

24  that "a substantial loss of business and perhaps even bankruptcy" constitutes irreparable harm).

25          Here, if Snopes continues to pay for each of the Individual Defendants' personal legal fees,

26  in addition to its own, it risks imminent financial ruin.  (Declaration of Greg Kaseno ("Kaseno

27  Decl.") at ¶¶ 6-10.)  Snopes' financial records, as well as the testimony of its corporate designee on

28  the financial health of the company, demonstrate that Snopes is in seriously bad financial condition

-18-

and is very likely already insolvent, as a direct result of being forced to pay the Individual Defendants' legal fees. (*Id.*; Ex. 26, 64:6-65:5, 70:8-73:22, 75:17-96:21; Exs. 4, 29-40, 46; Richmond Decl., ¶¶ 63-75.) Indeed, Snopes' equity value decreased from nearly ███ at the end of 2017 to a mere ███ by the end of February 2019. (Exs. 33, 27; Ex. 26, 92:14-93:2.) Assuming Snopes spent at least ███ in legal fees in March (Snopes' average spend per month in this case), at present (in April 2019), Snopes' liabilities now very likely exceed its assets (i.e., it is insolvent). (Kaseno Decl., ¶¶ 6, 10; Ex. 26, 96:17-21.) If this Court does not grant the requested preliminary injunctive relief ***now***, and Snopes continues to advance the Individual Defendants' legal fees—particularly considering that those fees are only likely to increase as this case proceeds through discovery and trial—Snopes will become bankrupt by the time this case is adjudicated.

Moreover, in the absence of a preliminary injunction preventing the continued advancement of legal fees, Snopes risks never being able to recoup the advanced funds. A defendant's potential insolvency and inability to pay a monetary judgment constitutes irreparable harm. *See W. Coast Constr. Co. v. Oceano Sanitary Dist.*, 17 Cal. App. 3d 693, 701 (1971) (upholding preliminary injunction enjoining defendant from diverting funds for litigation expenses where there was evidence that the defendant was insolvent). Here, Green and Miller have testified that they cannot repay the fees that have been advanced to them thus far, and Mikkelson has testified that he is unlikely to be able to repay the fees advanced to him. (Ex. 15, ¶ 9; Ex. 16, ¶¶ 22-23; Ex. 17, ¶¶ 16-17; Ex. 41.) These admissions are particularly troubling given that the Individual Defendants each signed an "undertaking"—as a pre-condition to receiving advanced legal fees—promising to repay the advanced fees in the event it is ultimately determined that they are not entitled to indemnification. (Exs. 1-3.) The Individual Defendants' inability to repay the advanced attorneys' fees constitutes irreparable harm and serves as sufficient grounds for granting this injunction.

In stark contrast, Defendants will not be harmed by the requested injunctive relief. The injunction simply requires Defendants to adhere to the Corporations Code and Bylaws and cease the improper advancement of attorneys' fees. The Individual Defendants will not be harmed by an injunction because they can simply arrange for the payment of their own legal fees, instead of unlawfully reaching into Snopes' coffers. Moreover, instead of unlawfully reaching into Snopes'

-19-

coffers., the Individual Defendants have a myriad of options to address the challenge of paying for their own legal fees, including (i) finding attorneys who are willing to accept the risk of payment after trial, (ii) continuing the litigation without representation, or (iii) settling. Finally, Snopes certainly will not be harmed by the requested injunctive relief—it will no longer have to pay for the Individual Defendants' personal legal fees.

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) is instructive. In *Johnson*, the Ninth Circuit held that the trial court had not abused its discretion in enjoining defendant directors from receiving advanced defense costs. *Id*. at 1086. The Court found that plaintiffs would suffer irreparable harm in the absence of a preliminary injunction where one of the defendants admitted (similar to the Individual Defendants' admissions here) that "Defendants even now would not be able to pay their legal bills without advancement of funds" and therefore, where "there [was] a likelihood that Defendants will not have the resources to reimburse [the company] if defense costs are advanced." *Id*. at 1081. The court found that "the balance of equities tip[ped] in Plaintiffs' favor" even though the "Defendants [would] be forced to either: (1) to find a way to pay for their own defense and seek recovery after trial; (2) to find attorneys willing to accept the risk of payment after trial; (3) to continue litigation without representation; or (4) settle." *Id*. The Court held that these "consequences" were "outweighed by the potential hardship to Plaintiffs if advanced defense costs are not reimbursed." *Id*. at 1081-82.

### C. An Undertaking, If Any, Should Be Minimal

Because Snopes and the Individual Defendants have no right to engage in the unlawful conduct described herein, the Individual Defendants will not suffer any injury in the event the Court issues the requested preliminary injunction. To that end, Mikkelson, Green, and Miller can pay their own legal fees and seek indemnification later, if it is warranted. Or, they can hire counsel willing to take their respective cases on a contingency basis. And, as set forth above, Snopes will benefit from the preliminary injunction. Accordingly, only a minimal bond of $1,500.00 is warranted.

### V. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs Schoentrup and Richmond, on behalf of Snopes, respectfully request that the Court grant this Motion and enter a preliminary injunction.

-20-

Dated: April 18, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By          */s/ Kristin P. Housh*
JOHN A. YACOVELLE
MARISA B. MILLER
KRISTIN P. HOUSH
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
-and-
STEPHEN E. FOX (*Pro Hac Vice*)
sfox@sheppardmullin.com
2200 Ross Avenue, 24th Floor
Dallas, Texas 75201

Attorneys for Plaintiffs/Cross-Defendants/
Cross-Complainants
PROPER MEDIA, LLC, CHRISTOPHER
RICHMOND, PUBLIFE LLC and
DREW SCHOENTRUP

-21-

Page 357 of 396

SMRH:490056630.2      MEMORANDUM OF POINTS & AUTHORITIES ISO PLTFS. SCHOENTRUP &
RICHMOND'S MOTION FOR PRELIMINARY INJUNCTION

Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California  92101
Telephone:     619.238.1900
Facsimile:      619.235.0398
E-mail:    paul.tyrell@procopio.com
               ryan.caplan@procopio.com
               jacob.kozaczuk@procopio.com

Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly known and
having appeared as Bardav Inc

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

04/25/2019 at 09:05:00 AM

Clerk of the Superior Court
By Vanessa Bahena,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, an individual, and DREW SCHOENTRUP, an individual,<br><br>              Plaintiffs,<br><br>v.<br><br>BARDAV INC, a California corporation; and DAVID MIKKELSON, an individual, VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual,<br><br>              Defendants,<br><br>_____<br><br>AND RELATED CROSS-ACTIONS<br>_____ | Case No. 37-2017-00016311-CU-BC-CTL<br>(consolidated with Case No. 37-2018-00004335-CU-MC-CTL)<br><br>**OPPOSITION OF DEFENDANT SNOPES MEDIA GROUP, INC. TO PLAINTIFF DREW SCHOENTRUP'S *EX PARTE* APPLICATION FOR AN ORDER REQUIRING SNOPES MEDIA GROUP, INC. TO RE-DESIGNATE SLACK MESSAGES AS CONFIDENTIAL**<br><br>Date:         April 25, 2019<br>Time:        8:45 a.m.<br>Dept.:       C-68<br>Judge:      Hon. Richard S. Whitney<br><br>Complaint Filed:    May 4, 2017<br>Trial Date:           October 4, 2019<br><br>***IMAGED FILE*** |

SNOPES' OPPOSITION TO SCHOENTRUP'S *EX PARTE* APPLICATION RE:
CONFIDENTIAL DESIGNATION OF SLACK MESSAGES
Page 358 of 732

DOCS 125263-000001/3634218.2

Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as BARDAV INC ("Snopes"), respectfully opposes Plaintiff DREW SCHOENTRUP ("Schoentrup")'s *Ex Parte* Application for an Order Requiring Defendant Snopes to Re-Designate Slack Messages as Confidential.

## I. <u>SUMMARY OF THIS OPPOSITION</u>

The Court should deny Schoentrup's baseless ex parte application. He and the other Plaintiffs have shown themselves to be overtly hostile to Snopes and are engaged in a competitive business. Snopes, therefore, properly designated a limited number of documents as "Highly Confidential – Attorneys' Eyes Only" in accordance with the Protective Order. Plaintiffs now complain about that designation. Fatally, Plaintiffs never attempted to meaningfully meet and confer, as required under the Protective Order and the Discovery Act, because they did not identify any particular documents that they believe were mis-designated by Snopes. Because Plaintiffs never tried to meet and confer, the Court should deny the instant ex parte application outright and instruct Plaintiffs' attorneys (other than Schoentrup) to meet and confer by identifying *specific* documents that they think should be re-designated under the Protective Order.[1] Similarly, Plaintiffs' failure to identify any particular items in dispute in their ex parte papers warrants denial of this premature ex parte application.

## II. <u>INTRODUCTION</u>

Schoentrup's *ex parte* application is the latest attempt by Plaintiffs to disrupt Snopes' business operations through the litigation process, this time by seeking to pierce into Snopes' sensitive business operations by challenging Snopes' designations of such materials as Highly Confidential under the Protective Order.

Disruption of Snopes' business has been Plaintiffs' goal throughout this lawsuit. Plaintiffs initially sought to starve Snopes' of its primary revenue source so it would capitulate to Plaintiffs' demands. Rightfully so, this Court saw through Plaintiffs' tactics and enjoined their misconduct through a preliminary injunction. Thereafter, Plaintiffs disregarded this Court's injunction,

---

[1] Plaintiffs have suggested that a discovery referee might help resolve this dispute. Although it is premature to order <u>any</u> relief with respect to the issue raised by Schoentrup in the instant ex parte, Snopes is open to the appointment of an all-purpose discovery referee to assist with discovery disputes in this matter.

prompting this Court to issue an OSC re: contempt to Plaintiffs. Currently, Plaintiffs are seeking to usurp Snopes' board of directors by moving to enjoin a duly enacted corporate resolution to advance legal fees to certain of its officer, directors, and employees in defense of Plaintiffs' claims. Plaintiffs have engaged in a long-standing pattern and practice aimed at disrupting Snopes' business and causing Snopes' financial distress, utilizing their positions as party opponents, shareholders, and competitors to do so.

In light of this historical backdrop, and Plaintiffs' positions as a competitor to Snopes in the online advertising revenue market, Snopes has understandably taken precautionary measures to ensure Plaintiffs are unable to inflict further harm by usurping corporate opportunities or disrupting Snopes' business partnerships, among other things. Snopes has significant and legitimate concerns with Plaintiffs viewing documents relating to its business operations that could be used to inflict further financial harm on its business. As such, Snopes has taken care to protect this Highly Confidential information through use of the parties' Stipulate Protective Order.

Nevertheless, Snopes has consistently advised Plaintiffs' counsel that it remains willing to engage in good faith meet and confer discussions to the extent there are any specific documents Plaintiffs' counsel believes are improperly designated under the Protective Order. Plaintiffs have refused to identify any such particular documents, instead opting to challenge the entirety of Snopes' designations in global fashion. This does not constitute a good faith meet and confer, and as such, Plaintiffs have not satisfied their burden to challenge any particular designation under the procedures mandated by the Protective Order. Accordingly, Snopes respectfully requests Schoentrup's application is denied.

III.     **SCHOENTRUP'S APPLICATION SHOULD BE DENIED BECAUSE SNOPES HAS COMPLIED WITH THE PROTECTIVE ORDER AND PLAINTIFFS HAVE NOT MET AND CONFERRED IN GOOD FAITH AS IS REQUIRED**

A.     **Snopes' Designations Are Warranted**

The Protective Order entered in this action allows the parties to designate documents produced during the course of discovery as "Confidential" or "Highly Confidential – Attorneys'

Eyes Only," depending on the level confidential deemed warranted by the designating party.[2]  With respect to the highly confidential designation, the Protective Order provides:

> For purposes of this Stipulation and Order, "Highly Confidential Information" includes documents (including documents to be produced in this litigation, discovery responses, deposition testimony, exhibits to depositions, summaries, compilations, extracts, and abstracts of information) that actually contain, disclose or reflect extremely sensitive "Confidential Information," disclosure of which to another party or non-party to the above-entitled action would create a substantial risk of serious harm that could not be avoided by less restrictive means.

(Protective Order, ¶ 2, p. 3.)

Here, to a large degree, Snopes and Proper Media are competitors in the business of procuring and collecting online advertising revenues.  Proper Media previously performed this work for Snopes under the parties' prior General Services Agreement (the "GSA") until Snopes terminated the GSA upon determining, among other things, that Snopes could perform the same services on its own behalf for much less than Proper Media was charging.  On information and belief, Proper Media remains in the business of procuring and collecting online advertising revenues.

Additionally, Plaintiffs in this lawsuit have already been found to have willfully inflicted substantial harm on Snopes by unlawfully withholding advertising revenues, including long after the GSA terminated.  These actions resulted in this Court issuing a preliminary injunction against Plaintiffs and ultimately an Order to Show Cause why Plaintiffs should not be held in contempt for willfully violating the protective order.  Plaintiff Christopher Richmond holds a seat on Snopes' board of directors and is simultaneously exploiting that position along with his fellow Plaintiffs to undermine Snopes' corporate governance through this litigation.

Under this backdrop, Snopes has grave concerns with Plaintiffs viewing Snopes' highly confidential information concerning, among other things, Snopes' business operations, Snopes' efforts collecting online advertising revenues, and Snopes' business opportunities and partnerships that Plaintiffs could seek to disrupt or usurp if they became aware of them.  Given these valid

---

[2] Notably, the Protective Order was stipulated to by all parties, including the moving party here.

concerns based on Plaintiffs' own extensive pattern of misconduct as recognized by this Court, Snopes believes its "Highly Confidential" designations are warranted.

### B.  <u>Plaintiffs Have Not Met and Conferred in Good Faith</u>

The Protective Order also provides a mechanism by which a party can challenge a particular designation made by another party, by meeting and conferring in good faith with respect to a particular challenge"

> Whenever a party objections to the designation of material as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" or wishes to disclose such materials beyond the terms of this Protective Order or believes that such designation is improper and imposes an undue burden under the circumstances, the party challenging the designation shall provide the designating party with reasonable written notice of its desire and intent to so dispute the designation. If the parties cannot resolve their dispute …, then the party who wishes to remove such designation shall make a motion or *ex parte* application to this Court for resolution of the dispute.

(Protective Order, ¶ 19, p. 9.)

Here, rather than specify particular documents they believe were improperly designated by Snopes, Plaintiffs sent a letter demanding in scorched earth fashion that every single document designated by Snopes be re-designated as only "Confidential" under the Protective Order. Snopes welcomed a meaningful meet and confer process by requesting that Plaintiffs identify which specific documents they contend are over-designated, but Plaintiffs refused to do so. Instead, Plaintiffs took the position that they could simply demand every "Highly Confidential" document be de-designated by Snopes all at once, without any focused request.

Snopes has always been willing to engage in a meaningful meet and confer if there are particular documents Plaintiffs believe are improperly designated, and in fact reiterated that position on the eve of Plaintiffs filing this application, but Plaintiffs have steadfastly declined to engage in such a meet and confer process. (*See* Exhibit "A" hereto.) As such, Plaintiffs have not met and conferred in good faith as is required under the Protective Order before bringing the instant *ex parte* application, and their request should be denied on that basis alone.

SNOPES' OPPOSITION TO SCHOENTRUP'S *EX PARTE* APPLICATION RE:
CONFIDENTIAL DESIGNATION OF SLACK MESSAGES
Page 362 of 732

DOCS 125263-000001/3634218.2

**C. Schoentrup's Application is Facially Inadequate**

Finally, Schoentrup fails to satisfy his burden of establishing a prima facie case for modifying any designations made by Snopes. Schoentrup does not (nor can he) identify the specific documents at issue or lodge the documents under seal for the Court's consideration. Rather, just as was the case in the inadequate meet and confer process, Schoentrup simply states in conclusory fashion that everything was improperly designated, based on another attorney's subjective belief. This was insufficient to commence a meaningful meet and confer under the Protective Order, and it is insufficient to warrant a blanket order of de-designation of 475 separate documents in the context of this *ex parte* application.

**IV. IF THE COURT IS INCLINED TO REFER THIS MATTER TO A DISCOVERY REFEREE, SNOPES REQUESTS THAT A DISCOVERY REFEREE BE APPOINTED FOR ALL DISCOVERY DISPUTES IN THIS MATTER**

In the alternative, Schoentrup requests the Court appoint a discovery referee to review Snopes' Highly Confidential documents in-camera. To the extent the Court is inclined to do so, Snopes respectfully requests the Court appoint a discovery referee to address <u>all</u> discovery disputes in this matter. Indeed, there are numerous other discovery issues currently percolating, including improper privilege claims made by Plaintiffs in reliance on Mr. Schoentrup's newly-stated role as counsel for Plaintiffs, which is in direct contradiction to Mr. Schoentrup's own verified discovery responses. Given the number of pending and looming discovery disagreements, it would serve all parties and this Court to appoint a single discovery referee to handle all such disputes, freeing up this Court's calendar to deal with more substantive issues.

**V. CONCLUSION**

Snopes' designations of its Highly Confidential information are warranted under the Protective Order. Nevertheless, Plaintiffs failed to meet and confer in good faith, precluding the relief they seek herein. To the extent this Court is inclined to refer this matter to a discovery

referee, Snopes respectfully requests the discovery referee be appointed to address all discovery disputes in this action.

DATED: April 25, 2019

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: _s/ Paul A. Tyrell_
Paul A. Tyrell
Ryan C. Caplan
P. Jacob Kozaczuk
Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly
known and having appeared as Bardav Inc

EXHIBIT A

| | |
|---|---|
| **From:** | Caplan, Ryan C. |
| **Sent:** | Tuesday, April 23, 2019 4:30 PM |
| **To:** | Drew Schoentrup |
| **Cc:** | Tyrell, Paul A.; 'Stephen Fox'; 'Kristin Housh'; Kozaczuk, Jacob |
| **Subject:** | RE: Proper Media et. al. v. Snopes Media Group et. al |

Drew,

The authorities cited in plaintiffs' March 22nd letter are inapplicable for the reasons stated in our April 8th response. We do not believe it is necessary to update the privilege and redaction logs.

We note that plaintiffs have not responded to Jacob's April 8th request that communications withheld/redacted on the basis of your purported role as general counsel for periods after June 2016 be produced (see below). Please advise ASAP.

Regarding the confidential designations, it is our understanding based on Mr. Fox's April 11th email that you have not reviewed any materials designated as AEO. Please confirm immediately that is the case. With respect to plaintiffs' request that Slack communications be re-designated, we have asked repeatedly for plaintiffs to identify which specific communications they believe should be re-designated, and advised that we would meet and confer in good faith with respect to any such requests. To date we have not been provided reasonable written notice from plaintiffs as to any specific communications they believe are improperly designated, as required under the protective order. If plaintiffs' outside counsel would like us to reconsider any specific communications, please provide notice of the same.

Best,
Ryan

**RYAN C. CAPLAN | ** SENIOR COUNSEL
**PROCOPIO | ** 619.515.3260 | ryan.caplan@procopio.com
View Profile **| ** LinkedIn **| ** procopio.com
─────────────────────────────────────────────
**From:** Drew Schoentrup [mailto:drew@proper.io]
**Sent:** Tuesday, April 23, 2019 11:04 AM
**To:** Kozaczuk, Jacob
**Cc:** Tyrell, Paul A.; Caplan, Ryan C.; 'Stephen Fox'; 'Kristin Housh'
**Subject:** RE: Proper Media et. al. v. Snopes Media Group et. al

Hi Jacob,

Quickly following-up here as we may be able to avoid motion practice if Snopes will be providing updated privilege and redaction logs today.

Also, will Snopes be re-designating the Slack production from Highly Confidential – AEO to just Confidential? During the deposition last week a few Slack communications were re-designated in this manner, and it sounded like we should be expecting similar adjustments to the broader Slack production. If this is the case, please let us know, as we intend to appear *Ex Parte* on Thursday challenging the current designations as Highly Confidential – AEO for the reasons set forth in our prior meet and confer letters.

Thanks,

Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone:     619.238.1900
Facsimile:     619.235.0398
E-mail:    paul.tyrell@procopio.com
            ryan.caplan@procopio.com
            jacob.kozaczuk@procopio.com

Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly known and
having appeared as BARDAV INC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, an individual, and DREW SCHOENTRUP, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BARDAV INC, a California corporation; and DAVID MIKKELSON, an individual, VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual, <br><br> Defendants, <br><br> _____ <br><br> AND RELATED CROSS-ACTIONS | Case No. 37-2017-00016311-CU-BC-CTL <br> (consolidated with Case No. 37-2018-00004335-CU-MC-CTL) <br><br> **DEFENDANT/CROSS-COMPLAINANT SNOPES MEDIA GROUP, INC.'S NOTICE OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT** <br><br> Date:       August 16, 2019 <br> Time:       10:30 a.m. <br> Dept.:      C-68 <br> Judge:     Hon. Richard S. Whitney <br><br> Complaint Filed:    May 4, 2017 <br> Trial Date:           October 4, 2019 <br><br> ***IMAGED FILE*** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that the Demurrer of Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as BARDAV INC ("Snopes") to the Third Amended Complaint ("TAC") of Plaintiffs/Cross-Defendants PROPER MEDIA, LLC ("Proper Media"), DREW SCHOENTRUP ("Schoentrup") and CHRISTOPHER RICHMOND ("Richmond") (collectively, "Plaintiffs"), filed and served herewith, has been set for hearing on August 16, 2019 at 10:30 a.m. or as soon thereafter as the matter may be heard, in Department C-68 of the above-entitled court, located at 330 West Broadway, California 92101, the Honorable Richard S. Whitney presiding.

Snopes demurs the TAC on the following grounds:

**Demurrer to the Fifth Cause of Action**

1.      The Fifth Cause of Action for Corporate Waste fails to state facts sufficient to constitute a cause of action upon which relief can be granted against Snopes because Plaintiffs do not have standing to assert this derivative claim as a matter of law. (Code Civ. Proc. § 430.10(e).)

2.      The Fifth Cause of Action for Corporate Waste fails suffers from a defect or misjoinder of parties because Plaintiffs do not have standing to assert this derivative claim as a matter of law. (Code Civ. Proc. § 430.10(d).)

**Demurrer to the Seventh Cause of Action**

3.      The Seventh Cause of Action for Breach of Fiduciary Duty fails to state facts sufficient to constitute a cause of action upon which relief can be granted against Snopes because Plaintiffs do not have standing to assert this derivative claim as a matter of law. (Code Civ. Proc. § 430.10(e).)

4.      The Seventh Cause of Action for Breach of Fiduciary Duty suffers from a defect or misjoinder of parties because Plaintiffs do not have standing to assert this derivative claim as a matter of law. (Code Civ. Proc. § 430.10(d).)

**Demurrer to the Fifteenth Cause of Action**

5.     The Fifteenth Cause of Action for Violation of Business and Professions Code Section 17200, *et seq.* fails to state facts sufficient to constitute a cause of action upon which relief can be granted against Snopes because Plaintiffs do not have standing to assert this derivative claim as a matter of law.  (Code Civ. Proc. § 430.10(e).)

6.     The Fifteenth Cause of Action for Violation of Business and Professions Code Section 17200, *et seq.* suffers from a defect or misjoinder of parties because Plaintiffs do not have standing to assert this derivative claim as a matter of law. (Code Civ. Proc. § 430.10(d).)

**Demurrer to the Seventeenth Cause of Action**

7.     The Seventeenth Cause of Action for Rescission fails to state facts sufficient to constitute a cause of action upon which relief can be granted against Snopes because Plaintiffs do not have standing to assert this derivative claim as a matter of law. (Code Civ. Proc. § 430.10(e).)

8.     The Seventeenth Cause of Action for Rescission suffers from a defect or misjoinder of parties because Plaintiffs do not have standing to assert this derivative claim as a matter of law.  (Code Civ. Proc. § 430.10(d).)

The Demurrer is based on this Notice of Demurrer and Demurrer, the accompanying Memorandum of Points and Authorities, Notice of Lodgment, Request for Judicial Notice, Declaration of Ryan C. Caplan, the papers and pleadings on file, and on such additional evidence, whether documentary or oral, as may be presented at hearing.

The Demurrer will be decided on the date set forth and attendance is required at the hearing.  The Court may issue a tentative ruling in this matter.  The tentative ruling may be obtained through the court's website at http://www.sdcourt.ca.gov and clicking on the tentative ruling link listed under the civil tab, or by telephoning the independent calendar clerk for the assigned department. The tentative ruling may note any issues on which the Court wishes the

parties to provide further argument at the hearing.  Failure to file timely pleadings may constitute a

waiver of the right to orally argue.

DATED: May 7, 2019

PROCOPIO, CORY, HARGREAVES &
SAVITCH LLP

By: _____
Paul A. Tyrell
Ryan C. Caplan
P. Jacob Kozaczuk
Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly
known and having appeared as BARDAV INC

Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone:    619.238.1900
Facsimile:    619.235.0398
E-mail:    paul.tyrell@procopio.com
            ryan.caplan@procopio.com
            jacob.kozaczuk@procopio.com

Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly known and
having appeared as Bardav Inc

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, an individual, and DREW SCHOENTRUP, an individual,<br><br>              Plaintiffs,<br><br>v.<br><br>BARDAV INC, a California corporation; and DAVID MIKKELSON, an individual, VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual,<br><br>              Defendants,<br><br>AND RELATED CROSS-ACTIONS | Case No. 37-2017-00016311-CU-BC-CTL<br>(consolidated with Case No. 37-2018-00004335-CU-MC-CTL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT/CROSS-COMPLAINANT SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Date:       August 16, 2019<br>Time:      10:30 a.m.<br>Dept.:     C-68<br>Judge:    Hon. Richard S. Whitney<br><br>Complaint Filed:  May 4, 2017<br>Trial Date:      October 4, 2019<br><br>***IMAGED FILE*** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... 3

I. INTRODUCTION ....................................................................................................... 6

II. PERTINENT FACTUAL BACKGROUND ................................................................. 7

    A. The Primary Underlying Dispute ...................................................................... 7

    B. Operative Claims and Procedural Posture ......................................................... 7

    C. This Court Denies Plaintiffs' Preliminary Injunction and Grants Snopes'
       Preliminary Injunction ....................................................................................... 9

    D. The TAC and Schoentrup's New Role ............................................................. 10

    E. Demurrer Meet & Confer .................................................................................. 11

III. LEGAL STANDARD ................................................................................................. 11

IV. PLAINTIFFS' PURPORTED DERIVATIVE CLAIMS ARE FATALLY DEFECTIVE
     AS A MATTER OF LAW ......................................................................................... 12

    A. Plaintiffs Fail to Plead Facts Establishing the Requisite Board Demand or
       Futility for Their Derivative Claims ................................................................. 12

        1. The Board Demand/Futility Requirement ................................................. 12

        2. Plaintiffs' Erroneous "Quorum" Contention Does Not Establish Futility
           as a Matter of Law ................................................................................. 13

        3. Plaintiffs Cannot Plead Futility as a Matter of Law ................................. 14

        4. Plaintiffs' Cause of Action for Waste Fails for a Separate Reason .............. 16

    B. Schoentrup and Richmond Cannot Adequately Serve as Fair and Adequate
       Representatives of Snopes .................................................................................. 17

V. CONCLUSION .......................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Beam v. Stewart* (Del.2004)
  845 A.2d 1040 ...........................................................................................15

*Davis v. Corned, Inc.* (6th Cir. 1980)
  619 F.2d 588 ..............................................................................................18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat. Mortgage
  Ass'n v. Raines* (D.C. Cir. 2008)
  534 F.3d 779 ..............................................................................................13

*Rales v. Blasband* (Del.1993)
  634 A.2d 927 ..............................................................................................15

*Zarowitz v. Bank America Corp.* (9th Cir. 1988)
  866 F.2d 1164 ............................................................................................17

**CALIFORNIA CASES**

*Apple Inc. v. Superior Court* (2017)
  18 Cal.App.5th 222 ....................................................................................16

*Bader v. Anderson* (2009)
  179 Cal.App.4th 775..................................................................12, 13, 15, 17

*Barbara A. v. John G.* (1983)
  145 Cal.App.3d 369 ...................................................................................18

*Beauchene v. Synanon Foundation, Inc.* (1979)
  88 Cal.App.3d 342 .....................................................................................11

*C & H Foods Co. v. Hartford Ins. Co.* (1984)
  163 Cal.App.3d 1055 .................................................................................11

*Charter Twp. of Clinton Police & Fire Ret. Sys. v. Martin* (2013)
  219 Cal.App.4th 924 ..................................................................................13

*Gentry v. eBay, Inc.* (2002)
  99 Cal.App.4th 816.....................................................................................11

*Gottesfeld v. Richmaid Ice Cream Co.* (1953)
  115 Cal.App.2d 854 ...................................................................................14

*Grosset v. Wenaas* (2008)
  42 Cal.4th 1100 ..........................................................................................17

3

1  *Halvorsen v. Aramark Uniform Svcs., Inc.* (1998)
2      65 Cal.App.4th 1383...................................................................................12

3  *Heckendorn v. City of San Marino* (1986)
      42 Cal.3d 481...........................................................................................12

4  *Heckman v. Ahmanson* (1985)
5      168 Cal.App.3d 119...........................................................................17, 18

6  *Keeler v. Schulte* (1957)
      47 Cal.2d 801...........................................................................................16
7
8  *Lavine v. Jessup* (1958)
      161 Cal.App.2d 59.....................................................................................11

9  *Lawrence v. Bank of America* (1985)
10      163 Cal.App.3d 431...................................................................................12

11  *Moore v. Regents of Univ. of Cal.* (1990)
      51 Cal.3d 120...........................................................................................11
12
    *Oakland Raiders v. Nat'l Football League* (2001)
13      93 Cal.App.4th 572...................................................................................13

14  *Otworth v. Southern Pac. Transp. Co.* (1985)
15      166 Cal.App.3d 452...................................................................................11

16  *Reed v. Norman* (1957)
      152 Cal.App.2d 892...................................................................................14
17
18  *Shields v. Singleton* (1993)
      15 Cal.App.4th 1611.............................................................................12, 13

19  *Smith v. Dorn* (1892)
20      96 Cal. 73................................................................................................14

21  *Stockton v. Ortiz* (1975)
      47 Cal.App.3d 183...................................................................................16
22
23  *Vandenberg v. Superior Court* (1999)
      21 Cal.4th 815.........................................................................................16

24  *Wickersham v. Crittenden* (1985)
25      106 Cal. 329............................................................................................14

26  *Zumbrun v. Univ. of So. Cal.* (1972)
      25 Cal.App.3d 1........................................................................................11
27

28

1

**OTHER STATE CASES**

2

*In re Affiliated Computer Services Shareholders Litigation* (Del.Ch. 2009)
  2009 Del.Ch. Lexis 35 ............................................................................16

3

4

**CALIFORNIA STATUTES, REGULATIONS, AND RULES**

5

Code of Civil Procedure § 430.30(a) .........................................................12

6

Corporations Code
  § 307(a)(7) ...............................................................................................13
  § 310 ........................................................................................................13
  § 310(c) ....................................................................................................14
  § 709 ..........................................................................................................8
  § 800 ........................................................................................................17
  § 800(b) ..............................................................................................12, 13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as BARDAV INC ("Snopes"), respectfully submits this Memorandum of Points and Authorities in support of its Demurrer to the Third Amended Complaint ("TAC") filed by Plaintiffs PROPER MEDIA, LLC ("Proper Media"), DREW SCHOENTRUP ("Schoentrup"), and CHRISTOPHER RICHMOND ("Richmond") (collectively, "Plaintiffs").

## I.     INTRODUCTION

Nearly two years into this lawsuit, Plaintiffs Schoentrup and Richmond—who have been aggressively litigating against Snopes, causing it financial harm in and out of court—want to usurp corporate control over Snopes by trying to assume the role of derivative plaintiffs. However, Schoentrup and Richmond do not have standing to assert derivative claims as a matter of law, for a multitude of reasons.

First, Plaintiffs are unable to plead or otherwise establish the prerequisite demand on Snopes' board, or futility in so doing, necessary to bring a derivative claim. Establishing futility requires a majority of the company's board of directors be interested or not independent with respect to the underlying alleged wrongful conduct forming the basis of the derivative claims. Here, on the facts pleaded in the TAC, a majority of Snopes' board of directors is disinterested and independent with respect to the alleged derivative claims, rendering Plaintiffs' futility allegations defective as a matter of law. The failure and inability to plead futility is fatal to a derivative claim.

Second, Schoentrup and Richmond are not "fair and adequate" representatives of Snopes, as required to assume the role of a shareholder derivative plaintiff. Schoentrup and Richmond are simultaneously asserting direct claims against Snopes, and both have engaged in a series of unlawful actions designed to inflict financial harm on Snopes. This Court has already acknowledged Plaintiffs' hostility towards Snopes on numerous occasions, including when it issued a preliminary injunction to enjoin these Plaintiffs' unlawful conduct and when it issued an OSC re: contempt when faced with prima facie evidence of their intentional disregard for the Court's earlier injunction. Moreover, Schoentrup has recently associated in as counsel of record for Plaintiffs, causing him to have an irrefutable conflict of interest between his duties to the Plaintiffs and the duties owed to Snopes as a derivative plaintiff.

For these reasons, Snopes respectfully requests the Court sustain its demurrer to Plaintiffs' derivative claims in the TAC, which are the Fifth, Seventh, Fifteenth, and Seventeenth Causes of Action. Additionally, because Plaintiffs have already amended their complaint three times, and because these defects cannot be cured as a matter of law, Snopes requests its demurrer be sustained without leave to amend.

## II. PERTINENT FACTUAL BACKGROUND[1]

### A. The Primary Underlying Dispute

Snopes owns the popular Snopes.com website, which it uses to support and advance the quality, authenticity, and accuracy of news media. As recognized in Proper Media's operative Complaint, Snopes.com "is one of the 1000 most popular websites in the United States, … with revenue coming primarily from advertising that appears on the site." (*See* Notice of Lodgment ("NOL") Exh. A [TAC] at ¶ 41.) From August 2015 until early 2017, Plaintiff Proper Media (an entity controlled by Schoentrup and Richmond) provided certain internet advertising services to Snopes pursuant to a General Service Agreement ("GSA"). (*Id.* at ¶¶ 42, 104.)

After Snopes notified Proper Media it was exercising its right to terminate the GSA, Plaintiffs unlawfully held Snopes' website hostage and refused to relinquish control of its website or its email accounts. (*See* NOL Exhs. E, F, and G.) Worse, Plaintiffs also improperly withheld *all* advertising revenues from Snopes—effectively cutting off Snopes' primary source of income and inflicting severe financial distress on the company. (*Ibid.*) Plaintiffs also erroneously contended Proper Media was a beneficial owner of 50% of Snopes and that Schoentrup was a director of Snopes, despite never having been appointed to the position, in their unlawful efforts to exert control over Snopes and oust its founder, Defendant/Cross-Complainant DAVID MIKKELSON ("Mikkelson"). (*See* NOL Exhs. A, B, and I.)

### B. Operative Claims and Procedural Posture

On May 4, 2017, Plaintiffs initiated this action with a complaint against Snopes and Mikkelson, seeking direct damages based on claims of breach of the GSA, intentional interference

---

[1] While Snopes disputes the manner in which Plaintiffs characterize underlying facts in their TAC, Snopes nevertheless cites to the TAC and other judicially noticeable material consistent with the applicable standard on demurrer.

with the GSA, civil conspiracy, abuse of control, and corporate waste. (NOL Exh. B [Complaint].) Notably, Plaintiffs alleged only individual claims, not any derivative claims. (*Ibid*.) Before Defendants could respond, Plaintiffs filed their First Amended Complaint on May 16, 2017, adding allegations that Proper Media was the beneficial owner of Plaintiffs' shares in Snopes. (NOL Exh. C [FAC].) Again, Plaintiffs did not plead any derivative claims. (*Ibid*.) Snopes demurred to the FAC, which the Court sustained with leave to amend on the grounds that Plaintiffs failed to name indispensable parties in their amended claims. (NOL Exh. F [Demurrer/PI Order] at pp. 1-2.)

Following Snopes' demurrer, on September 6, 2017, Plaintiffs filed their Second Amended Complaint ("SAC"). (NOL Exh. D [SAC].) As to Snopes, the SAC alleged claims for breach of the GSA, involuntary dissolution of corporation, removal of director, *quantum meruit*, and declaratory relief. (*Ibid*.) Plaintiffs also added Defendants VINCENT GREEN ("Green"), RYAN MILLER ("Miller"), and TYLER DUNN ("Dunn") as necessary party defendants, pursuant to the earlier demurrer ruling. (*Ibid*.) Although Plaintiffs alleged in the SAC that a pre-lawsuit demand on Snopes' board of directors would be futile with respect to their claims of abuse of control and corporate waste, neither claim was brought derivatively and neither claim included Snopes as party, nominal or otherwise. (*Id*. at pp. 19-22.)

On October 11, 2017, Mikkelson filed a demurrer to Plaintiffs' SAC, which this Court sustained without leave to amend as to Proper Media. (ROA #138, 246.) On February 5, 2018, the Court entered a judgment of dismissal with prejudice in favor of Mikkelson on all of Proper Media's claims. (NOL Exh. I [Mikkelson PM Judgment].)

On October 31, 2017, Mikkelson filed a cross-complaint against Plaintiff and requested relief under Corporations Code section 709 regarding various corporate governance issues for Snopes. (ROA #147.) On February 9, 2018, the Court heard and granted Mikkelson's requested relief under Section 709. (ROA #257.) On April 16, 2018, the Court entered judgment on Mikkelson's Section 709 claim, finding, among other things: (1) that Schoentrup was never a director of Snopes; (2) that Mikkelson had the right to appoint non-party independent director Brad Westbrook to Snopes' Board of Directors; (3) that Proper Media did not have a beneficial ownership interest in Snopes; (4) that Green and Miller had the right to cast votes as fractional

8

MEMO OF POINTS AND AUTHORITIES ISO SNOPES' DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT
DOCS 125263-000001/3629558.3
Page 378 of 732

shareholders; (5) that the ratification of Snopes' Bylaws was proper; and (6) that the indemnity provisions of Snopes' Bylaws are not unlawful. (ROA #258 [2/15/18 minute order]; NOL Exh. J [Mikkelson 709 Judgment].)

On January 25, 2018, Snopes filed an interpleader action to address the competing claims to the share certificates comprising 50% of Snopes. (ROA #348.) On April 25, 2018, Miller and Green answered and cross-complained against Schoentrup and Richmond in the interpleader action. (ROA #355.) On May 18, 2018, Mikkelson answered and cross-complained against Schoentrup and Richmond in the interpleader action. (ROA #356.) On May 25, 2018, the interpleader action was consolidated with the instant action. (ROA #357.)

**C.  This Court Denies Plaintiffs' Preliminary Injunction and Grants Snopes' Preliminary Injunction**

As a result of Plaintiffs' underlying unlawful conduct, Snopes was forced to seek preliminary injunctive relief early in the case just to stay afloat. On June 29, 2017, Snopes applied for a TRO and preliminary injunction. The Court granted Snopes' TRO in part, requiring Proper Media to turn over $100,000 pending further briefing and a hearing on the preliminary injunction. (NOL Exh. E [TRO/OSC re: PI].)

Plaintiffs simultaneously sought a preliminary injunction to enjoin Mikkelson from serving on Snopes' board of directors, to enjoin Snopes from terminating the GSA, and to order Snopes to produce corporate records in response to Plaintiffs' alleged shareholder and director requests. (ROA #13.)

On August 22, 2017, after further briefing and a hearing, the Court **denied** Plaintiffs' requested preliminary injunction and **granted** Snopes' requested preliminary injunction. (NOL Exh. F [Demurrer/PI Order] at pp. 2-5.) Later, on September 7, 2017, after supplemental briefing and hearings, the Court issued its Preliminary Injunction. (NOL Exh. G.) The Preliminary Injunction enjoined Proper Media and those acting in concert with it, including Schoentrup and Richmond, from withholding revenues procured from the placement of advertisement on the Snopes.com website, subject to narrowly limited exceptions. (*Id*. at p. 1.) According to Plaintiffs' own filings, Proper Media "made over $1.1 million in payments to [Snopes] pursuant to the

9

Preliminary Injunction" as of April 2018 (ROA #298, p.1.) – payments reflecting sums Schoentrup and Richmond unlawfully withheld from Snopes.

Nevertheless, despite having already been admonished by the Court for their efforts to harm Snopes, Plaintiffs *continued* to unlawfully withhold Snopes' own revenues from Snopes in defiance of the Court's Preliminary Injunction. Plaintiffs' defiance and ongoing unlawful conduct resulted in the Court issuing an Order to Show Cause as to why Proper Media and Schoentrup should not be held in contempt for violating the Preliminary Injunction. (NOL Exh. H [OSC].)[2]

### D. The TAC and Schoentrup's New Role

On January 28, 2019, Plaintiffs brought a motion for leave to file their then-proposed TAC. (ROA #684-687.) As relevant to this demurrer, the TAC asserts the following new derivative causes of action against Snopes: Fifth Cause of Action for Corporate Waste (derivative); Seventh Cause of Action for Breach of Fiduciary Duty (derivative); Fifteenth Cause of Action for Violations of Business & Professions Code section 17200 (derivative); and Seventeenth Cause of Action for Rescission (derivative). (NOL Exh. A [TAC].)

Snopes opposed Plaintiffs' motion for leave on the grounds that, among other things, Plaintiffs could not assert derivative claims as a matter of law because they were unable to plead or establish futility, and they were not fair and adequate representatives of Snopes. (ROA #760.) The Court ultimately granted Plaintiffs' motion, but correctly modified its tentative ruling to reflect that Snopes' board could approve the actions Plaintiffs' seek in their derivative claims, declining to rule "at this time" that Plaintiffs could not allege demand futility:

> Plaintiffs seek to assert derivative claims against Snopes. Plaintiffs, to bring derivative claims, must allege a corporate demand or futility to do so. (Corp. Code § 800(b); *Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1618.) While the undisputed facts suggest that after Westbrook was added as a director, a majority of the board, Westbrook and Richmond, could possibly have approved the actions Plaintiffs seek, the Court declines to rule, ***at this time,*** that Plaintiffs cannot, as a matter of law, allege demand futility.

(NOL Exh. K [Minute Order; ROA #809] at p. 2 [emphasis added].)

[2] Snopes and Plaintiffs reached a resolution of the OSC ahead of the hearing, and as a result took it off calendar. (ROA #548.)

The Court similarly granted Plaintiffs' motion over Snopes' objection to Schoentrup and Richmond serving as fair and adequate representatives of Snopes (*ibid.*), despite their roles as adverse parties suing Snopes who have already been found by this Court to have unlawfully inflicted significant financial strain on Snopes. (NOL Exhs. G and H [PI & OSC Rulings].)

Thereafter, on April 8, 2019, Schoentrup himself filed an Association of Attorney in this lawsuit, purporting to associate in as counsel of record for Plaintiffs. (ROA #843.) The result is that Schoentrup is not simply a party suing Snopes while simultaneously attempting to be a representative of Snopes on the derivative claims, but he is also one of the attorneys suing Snopes while simultaneously seeking to be Snopes' representative on the derivative claims.

**E.     Demurrer Meet & Confer**

On April 19, 2019, counsel for Snopes met and conferred with Plaintiffs regarding the substance of this demurrer. (Declaration of Ryan C. Caplan ("Caplan Decl."), ¶ 15.) Plaintiffs chose not to dismiss their derivative claims at that time. (*Id.* at ¶ 16.)

**III.     LEGAL STANDARD**

Snopes disputes the factual allegations of the TAC. Nonetheless, this demurrer assumes, as it must, the truth of the facts alleged therein. It does not, however, assume the truth of allegations that are contradicted by judicially noticeable matters or the truth of unsupported contentions, deductions, or conclusions of fact and law contained in the TAC; indeed, it is improper for the Court to even consider such contentions and conclusions in judging its sufficiency. (*C & H Foods Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062; *Moore v. Regents of Univ. of Cal.* (1990) 51 Cal.3d 120, 125; *Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.) Facts, not conclusions, must be pleaded. (*Zumbrun v. Univ. of So. Cal.* (1972) 25 Cal.App.3d 1, 8.) General and indefinite assertions of liability are not sufficient within the rules of pleading. (*Lavine v. Jessup* (1958) 161 Cal.App.2d 59, 69.)

A complaint fails to state a cause of action if it omits an essential element of the cause of action sought (*Beauchene v. Synanon Foundation, Inc.* (1979) 88 Cal.App.3d 342, 348); if no cause of action exists on any theory stated (*Otworth v. Southern Pac. Transp. Co.* (1985) 166 Cal.App.3d 452, 461); or if it appears on its face or from judicially noticed matters that the cause of action is

barred (Code Civ. Proc. § 430.30(a); *Halvorsen v. Aramark Uniform Svcs., Inc.* (1998) 65 Cal.App.4th 1383, 1398). A demurrer should be sustained without leave to amend if the nature of the claim is such that it cannot result in liability as a matter of substantive law; in such cases, amendment will not serve any useful purpose. (See, e.g., *Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481, 489; *Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436-37.) Application of these principles here compels sustaining Snopes' demurrer without leave to amend.

## IV. PLAINTIFFS' PURPORTED DERIVATIVE CLAIMS ARE FATALLY DEFECTIVE AS A MATTER OF LAW

Schoentrup's and Richmond's Fifth, Seventh, Fifteenth, and Seventeenth Causes of Action are pleaded in a derivative capacity on behalf of and for the benefit of Snopes. However, neither Schoentrup nor Richmond is capable of asserting these derivative claims as a matter of law. Preliminarily, the TAC fails to plead futility for these claims, which is prerequisite to any derivative claim. Additionally, neither Schoentrup nor Richmond is a fair and adequate representative of Snopes, precluding either of them from acting in the capacity of a derivative plaintiff here.

### A. Plaintiffs Fail to Plead Facts Establishing the Requisite Board Demand or Futility for Their Derivative Claims

#### 1. The Board Demand/Futility Requirement

As a precondition for bringing any derivative suit on a corporation's behalf, a plaintiff must establish with particularly either that he made a demand on the board of directors to act on the corporation's behalf or that such a demand would have been futile. (Corp. Code § 800(b).) Failure to comply with this demand requirement deprives the plaintiff of standing to pursue his claims. (*Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1618.) The purpose of the requirement is to "encourage intracorporate resolution of disputes and to protect the managerial freedom of those to whom the responsibility of running the business is delegated...." (*Id.* at 1619.) The requirement is also another safeguard against abusive derivative claims. (See *Bader v. Anderson* (2009) 179 Cal.App.4th 775, 790.)

A plaintiff who asserts that demand would have been futile must satisfy a high burden. As one court noted, "the bar is high, the standards are stringent, and the situations where demand will be excused are rare." (*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat. Mortgage Ass'n v. Raines* (D.C. Cir. 2008) 534 F.3d 779, 782-83.) The plaintiff also must allege demand futility "with particularity." (Corp. Code § 800(b).) The test for demand futility is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. (*See Oakland Raiders v. Nat'l Football League* (2001) 93 Cal.App.4th 572, 587.) If a plaintiff fails to satisfy the first prong there is a presumption that the board's actions were the product of a valid exercise of business judgment. (*Charter Twp. of Clinton Police & Fire Ret. Sys. v. Martin* (2013) 219 Cal.App.4th 924, 935.)

General allegations that the directors were involved in, or approved of the wrongdoing, or that the directors face the threat of personal liability for approving the transaction, are insufficient. (*See Bader*, *supra*, 179 Cal.App.4th at 790.) Instead, "the court must be apprised of *facts specific to each director* from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." (*Shields*, *supra*, 15 Cal.App.4th at 1622 [emphasis added].) Thus, Plaintiffs must allege specific facts as to all three directors – Mikkelson, Westbrook, and Richmond.

**2.  Plaintiffs' Erroneous "Quorum" Contention Does Not Establish Futility as a Matter of Law**

Plaintiffs attempt to sidestep this analysis in the TAC by pleading, without authority, that a "quorum of disinterested directors" is both required and unattainable here. These statements are contrary to the law, which expressly authorizes counting <u>all</u> directors (including alleged interested directors) for purposes of establishing a quorum. The baseline rule for a corporate action is that "[a] majority of the authorized number of directors constitutes a quorum of the board for the transaction of business." (Corp. Code § 307(a)(7).) California Corporations Code section 310 further makes clear: "<u>**Interested or common directors may be counted in determining the**</u>

1 **presence of a quorum** at a meeting of the board or a committee thereof which authorizes,
2 approves or ratifies a contract or transaction." (Corp. Code § 310(c) [emphasis added].)

3 The TAC acknowledges Snopes has three directors: Mikkelson, Westbrook, and
4 Richmond. (*See, e.g.*, TAC at ¶ 240(a).) Putting aside Plaintiffs' attempts to cast Richmond as an
5 "interested" director for purposes of the futility requirement (addressed below), there is no
6 obligation that a quorum be established exclusively of disinterested directors. As such, Plaintiffs'
7 allegations that "Westbrook is the only allegedly disinterested and independent Director" and "a
8 single Director does not constitute a quorum" does not, and cannot, establish futility. These
9 allegations are contrary to controlling law and do not excuse Plaintiffs' fatal futility problem.

10 **3.     Plaintiffs Cannot Plead Futility as a Matter of Law**

11 Under the correct analysis, a demand on the board is futile only if a majority of the directors
12 are implicated in the underlying alleged wrongful conduct. Under those circumstances, a demand
13 would in effect be a request to the directors to sue themselves, and it is assumed under the law that
14 such a request would be futile. (See *Reed v. Norman* (1957) 152 Cal.App.2d 892, 898; *Gottesfeld*
15 *v. Richmaid Ice Cream Co.* (1953) 115 Cal.App.2d 854, 860; *Smith v. Dorn* (1892) 96 Cal. 73.)
16 Put another way, a demand on the board is excused as futile only if a majority of the directors are
17 either interested or not independent (i.e., under the alleged wrongdoer's control). (*Smith*, *supra*, 96
18 Cal. 73; *see also*, *Wickersham v. Crittenden* (1985) 106 Cal. 329, 331.)

19 It is undisputed under the allegations of the TAC that neither Westbrook nor Richmond are
20 alleged to have engaged in any of the conduct forming the basis of the derivative causes of action.
21 (*See* TAC at ¶¶ 201-210, 226-239, 302-310, 336-349.) Preliminarily, Plaintiffs concede Westbrook
22 is disinterested and independent. (*See* TAC at ¶ 240(f).) Plaintiffs nevertheless go on to allege
23 Richmond is "not disinterested and independent" simply because "he is both a Plaintiff and
24 Defendant in this lawsuit[.]" (See, e.g., TAC at ¶ 240(e).) This conclusory statement, which is not
25 taken as true for purposes of a demurrer, does not reflect the appropriate assessment for
26 determining futility for a derivative claim. Richmond is not alleged to have engaged in the
27 purported wrongdoing, nor is he alleged to be under Mikkelson's control.

28

"A director will be deemed not to be disinterested if the facts alleged 'demonstrate[] a potential personal benefit or detriment to the director as a result of the decision.'" (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 792 [quoting *Beam v. Stewart* (Del.2004) 845 A.2d 1040, 1049, fn. omitted (*Beam*); citing *Rales v. Blasband* (Del.1993) 634 A.2d 927, 936].) "A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders" or "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." (*Rales*, *supra*, 634 A.2d 927, 936.) The TAC alleges no facts contending Richmond received a personal financial benefit from the underlying conduct forming the basis of the derivative claims. In fact, it alleges the opposite.

Similarly, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." (*Rales*, *supra*, 634 A.2d at 936.) A "lack of independence" is "demonstrated by specific facts 'showing that the director is 'beholden' to an interested director or officer, 'or so under their influence that their discretion would be sterilized.' [Citation.]'" (*Bader*, *supra*, 179 Cal.App.4th at 792 [quoting *In re IAC/InterActiveCorp Securities Litigation* (S.D.N.Y.2007) 478 F.Supp.2d 574, 599, quoting *Rales*, *supra*, 634 A.2d at p. 936.) Again, the TAC does not allege that Richmond is beholden to Mikkelson—the only director alleged to have undertaken any conduct forming the basis of the derivative claims. In contrast, Richmond is purporting to bring the very derivative claims that he, as a board member, would be asked to approve the corporation bringing if a board demand was made. By asserting derivative claims here, Richmond implicitly concedes his decision would be based on corporate merits by his own standards.

Put simply, a demand made upon Richmond in his role as director would not be "futile," as he himself has chosen to assert the derivative claims in the TAC. Similarly, a demand made upon Westbrook in his role as director would not be futile, as Plaintiffs concede Westbrook is disinterested and independent. (*See, e.g.*, TAC at ¶ 240(f).) As Richmond and Westbrook constitute a majority of disinterested directors at Snopes, Plaintiffs cannot plead futility as a matter of law.

**4.     Plaintiffs' Cause of Action for Waste Fails for a Separate Reason**

Additionally, with respect to the Fifth Cause of Action for Corporate Waste, Plaintiffs' erroneously refer to the period of time leading up to when their SAC was filed, not when the TAC was filed.  Because the Corporate Waste claim was not properly pleaded as a derivative claim in the SAC, the operative timeframe for assessing futility is the time leading up to the proposed TAC. (*Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 246 [citing *Braddock v. Zimmerman* (Del. 2006) 906 A.2d 776. 786 ["Plaintiffs offer no compelling reason—and we have identified none—for departing from *Braddock's* sound conclusion that when an amended complaint asserts derivative claims that are not already validly in litigation, the demand requirement pertains to the board of directors in place at that time.]; *see In re Affiliated Computer Services Shareholders Litigation* (Del.Ch. 2009) 2009 Del.Ch. Lexis 35, discussed in *Apple*, 18 Cal.App.5th at 248 [finding the original derivative claims were not validly in litigation when the plaintiffs amended their complaint; thus the plaintiffs were required to make demand at the time they filed the second amended complaint].)

Snopes was not named as a party, nominal or otherwise, on Plaintiffs' prior waste cause of action in the SAC.  (NOL Exh. D at p. 21.)  It is bedrock law that the corporation must be named as a nominal party-defendant on any derivative action.  (*Keeler v. Schulte* (1957) 47 Cal.2d 801, 803; *Stockton v. Ortiz* (1975) 47 Cal.App.3d 183, 191-92.)  Plaintiffs have argued that a ruling on a demurrer brought by a separate defendant (Mikkelson) to their waste cause of action establishes that the claim was derivative, but Snopes was not a party to that proceeding and is not bound by that ruling.  (See *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [when applying non-mutual collateral estoppel, "the party against whom the doctrine is invoked must be bound by the prior proceeding"].)  As Snopes was not named on Plaintiffs' waste claim in the SAC, the claim could not have been derivative and Snopes had no basis to challenge it earlier.

In contrast to when the SAC was filed, non-party Westbrook was on the board the period of time leading up to when the TAC was filed.  (*See* TAC at ¶¶ 120-121.)  However, Plaintiffs do not acknowledge Westbrook's presence in their deficient futility allegations for the Fifth Cause of Action.  (TAC at ¶ 211.)  The failure to address each and every board member for purposes of

futility is fatal.  (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 790.)  As such, Plaintiffs fail to plead the requisite futility as to the amended Fifth Cause of Action, rendering that claim defective as a matter of law for a separate, independent reason.

**B.  Schoentrup and Richmond Cannot Adequately Serve as Fair and Adequate Representatives of Snopes**

Schoentrup and Richmond are disqualified from bringing derivative claims because they are overtly hostile to Snopes and cannot fairly and adequately represent the interests of Snopes and all of its shareholders.  It is axiomatic that a derivative plaintiff is not suing for his own benefit, but rather for the benefit of the corporation and its shareholders.  As a result, the derivative plaintiff assumes a fiduciary duty to the other shareholders, and must serve their interests.  (*See Heckman v. Ahmanson* (1985) 168 Cal.App.3d 119, 128-29.)  The California Supreme Court has expressly rejected the notion that Corporations Code section 800 does not require that a derivative plaintiff fairly and adequately represents the interests of the company.  (*See Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1115 n.10.)  Here, Schoentrup and Richmond cannot serve as fair and adequate representatives of Snopes and its other shareholders for several reasons.

A plaintiff who is in litigation against a corporation has a <u>direct conflict of</u> interest that disqualifies him from bringing derivative claims on the same corporation's behalf.  (*See, e.g.*, *Zarowitz v. Bank America Corp.* (9th Cir. 1988) 866 F.2d 1164, 1165-66.)  Rather, "a plaintiff breaches the duty to fairly and adequately represent the other shareholders when he uses the derivative action as leverage to achieve his own personal objectives." (*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 131.)  Here, Schoentrup and Richmond are asserting numerous direct claims against Snopes while purportedly seeking to assume a fiduciary role on Snopes' behalf. (*See* TAC at pp. 45-46, 49-54, 61-64, and 67-68.)

This Court has already recognized the extensive harm Schoentrup and Richmond have inflicted on Snopes though its issuance of the Preliminary Injunction, which enjoined Plaintiffs from further withholding Snopes' own revenues and Snopes' own property, among other things. (*See* NOL Exh. F and G [Order & PI].)  Worse yet, this Court similarly already found there was prima facie evidence that Schoentrup knew they were violating the Preliminary Injunction by

continuing to unlawfully withhold Snopes' own revenues from Snopes. (NOL Exh. H.) This conduct—over and above simply being a litigation opponent—was done with the specific intent to inflict harm on the corporation. Neither Schoentrup nor Richmond can fairly and adequately represent the corporation's interests when their own conduct—as recognized and enjoined by this Court—has been in conflict with Snopes' interests.

Additionally, Schoentrup's newly adopted role as counsel of record for Plaintiffs provides a further conflict of interest precluding his ability to fairly and adequately represent Snopes in a derivative setting. "[A] stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character." (*Heckmann*, *supra*, 168 Cal.App.3d at 129.) Similarly, "[t]he relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity…." (*Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 383 [citing *Cox v. Delmas* (1893) 99 Cal. 104, 123].) Here, by associating in as counsel of record *for Plaintiffs*, Schoentrup puts himself in a position of having competing, inconsistent fiduciary duties—one *to Plaintiffs* who are suing Snopes, and other *to Snopes* who is defending Plaintiffs' claims. It is impossible for Schoentrup to be a fair and adequate representative of Snopes' while simultaneously serving in a fiduciary capacity to Snopes' adversaries in this very lawsuit.

Finally, Schoentrup and Richmond are not the only shareholders who could pursue the purported derivative claim, presuming a showing of board demand futility could be made. As acknowledged in the TAC, Tyler Dunn also has an alleged shareholder interest in Snopes. (TAC at ¶ 48.) While Plaintiffs allege Dunn's interest "reverted" to them when they allegedly foreclosed on Green and Miller's interest, any alleged revision remains unresolved and is subject to the pending interpleader action, which has since been consolidated with this action. (*See* TAC at ¶ 173.)

Put simply, neither Schoentrup nor Richmond can fairly and adequately serve as derivative plaintiffs on Snopes' behalf. (*See*, e.g., *Davis v. Comed, Inc.* (6th Cir. 1980) 619 F.2d 588, 593-594.) Schoentrup's additional role as counsel of record to Plaintiffs, which requires him to have competing fiduciary duties, further precludes him from serving as a corporate representative here. Accordingly, the derivative claims in the TAC fail as a matter of law.

18

# V.    __CONCLUSION__

Plaintiffs cannot assert their purported derivative claims as a matter of law.  On the pleaded and indisputable facts, Plaintiffs are incapable of pleading or establishing the futility of a prior board demand necessary for a shareholder plaintiff to bring a derivative claim.  Moreover, neither Schoentrup nor Richmond is capable of fairly and adequately representing Snopes' interests on the derivative claims asserted.  Accordingly, Snopes respectfully requests the Court sustain this demurrer without leave to amend.

DATED: May 7, 2019                                    PROCOPIO, CORY, HARGREAVES &
                                                      SAVITCH LLP


By: _____
        Paul A. Tyrell
        Ryan C. Caplan
        P. Jacob Kozaczuk
        Attorneys for Defendant/Cross-Complainant,
        SNOPES MEDIA GROUP, INC., formerly
        known and having appeared as Bardav Inc

DOCS 125263-000001/3629558.3

1   RICHARD P. SYBERT (SBN: 080731)
    rsybert@gordonrees.com
2   KIMBERLY D. HOWATT (SBN: 196921)
    khowatt@gordonrees.com
3   HOLLY L. K. HEFFNER (SBN: 245384)
    hheffner@gordonrees.com
4   GORDON & REES LLP
    101 W. Broadway Suite 2000
5   San Diego, CA 92101
    Telephone: (619) 230-7461
6   Facsimile: (619) 696-7124

7   Attorneys for Defendant, Cross-complainant, and Cross-defendant
    DAVID MIKKELSON

8

9                       SUPERIOR COURT OF CALIFORNIA

10                        COUNTY OF SAN DIEGO

11   PROPER MEDIA, LLC, a California limited      )   LEAD CASE NO. 37-2017-00016311-CU-
     liability company; CHRISTOPHER              )   BC-CTL
12   RICHMOND, an individual and DREW            )
     SCHOENTRUP, an individual,                  )   CONSOLIDATED WITH CASE NO. 37-
13                                                )   2018-00004335-CU-MC-CTL
     Plaintiffs                                   )
14                                                )   **NOTICE OF DEMURRER AND DAVID
     v.                                           )   MIKKELSON'S DEMURRER TO
15                                                )   PLAINTIFFS' THIRD AMENDED
     BARDAV INC, a California corporation;        )   COMPLAINT**
16   DAVID MIKKELSON, an individual;             )
     VINCENT GREEN, an individual; RYAN          )   Date:   August 30, 2019
17   MILLER, an individual; and TYLER            )   Time:   10:30 a.m.
     DUNN, an individual,                        )   Dept.:  C-68
18                                                )   Judge:  Hon. Richard Whitney
     Defendants.                                  )
19                                                )   **IMAGED FILE**
                                                  )
20   AND RELATED CROSS-ACTIONS.                   )   Interpleader Complaint Filed: January 25,
                                                  )   2018
21                                                )   Trial Date: April 12, 2019
                                                  )
22                                                )
                                                  )
23                                                )

24

25

26

27

28

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**05/07/2019** at 03:18:00 PM

Clerk of the Superior Court
By Adriana Ive Anzalone,Deputy Clerk

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 30, 2019 at 10:30 a.m. in Department 68 of the above-entitled Court, defendant and cross-complainant in the lead case DAVID MIKKELSON ("Mr. Mikkelson") will and hereby does demur to the third amended complaint ("TAC") filed by plaintiffs PROPER MEDIA, LLC, DREW SCHOENTRUP and CHRISTOPHER RICHMOND (collectively "Plaintiffs").

This demurrer is brought both generally and specifically pursuant to California Code of Civil Procedure § 430.10, *et seq*. and the additional statutory and decisional law set forth in the memorandum of points and authorities filed herewith, and is made as follows and on the following grounds:

<u>DEMURRER TO FIFTH CAUSE OF ACTION</u>

<u>FOR CORPORATE WASTE (DERIVATIVELY)</u>

The cause of action fails for lack of standing, as Plaintiffs Schoentrup and Richmond are not proper derivative plaintiffs and did not make or are excused from proper demand. (Code Civ. Proc. § 430.10 (b), (e), (f); Corp. Code § 800.)

<u>DEMURRER TO SEVENTH CAUSE OF ACTION</u>

<u>FOR BREACH OF FIDUCIARY DUTY (DERIVATIVELY)</u>

The cause of action fails for lack of standing, as Plaintiffs Schoentrup and Richmond are not proper derivative plaintiffs and did not make or are excused from proper demand; further, plaintiffs fail to allege facts sufficient or adequately certain to state this cause of action. (Code Civ. Proc. § 430.10 (b), (e), (f); Corp. Code § 800.)

<u>DEMURRER TO TWELFTH CAUSE OF ACTION FOR BREACH CONTRACT</u>

Plaintiffs Proper Media, Schoentrup, and Richmond each and all fail to allege facts sufficient or adequately certain to state this cause of action against Mr. Mikkelson. (Code Civ. Proc. § 430.10 (e), (f).)

///
///
///

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

-1-
NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 30, 2019 at 10:30 a.m. in Department 68 of the above-entitled Court, defendant and cross-complainant in the lead case DAVID MIKKELSON ("Mr. Mikkelson") will and hereby does demur to the third amended complaint ("TAC") filed by plaintiffs PROPER MEDIA, LLC, DREW SCHOENTRUP and CHRISTOPHER RICHMOND (collectively "Plaintiffs").

This demurrer is brought both generally and specifically pursuant to California Code of Civil Procedure § 430.10, *et seq*. and the additional statutory and decisional law set forth in the memorandum of points and authorities filed herewith, and is made as follows and on the following grounds:

<u>DEMURRER TO FIFTH CAUSE OF ACTION</u>

<u>FOR CORPORATE WASTE (DERIVATIVELY)</u>

The cause of action fails for lack of standing, as Plaintiffs Schoentrup and Richmond are not proper derivative plaintiffs and did not make or are excused from proper demand. (Code Civ. Proc. § 430.10 (b), (e), (f); Corp. Code § 800.)

<u>DEMURRER TO SEVENTH CAUSE OF ACTION</u>

<u>FOR BREACH OF FIDUCIARY DUTY (DERIVATIVELY)</u>

The cause of action fails for lack of standing, as Plaintiffs Schoentrup and Richmond are not proper derivative plaintiffs and did not make or are excused from proper demand; further, plaintiffs fail to allege facts sufficient or adequately certain to state this cause of action. (Code Civ. Proc. § 430.10 (b), (e), (f); Corp. Code § 800.)

<u>DEMURRER TO TWELFTH CAUSE OF ACTION FOR BREACH CONTRACT</u>

Plaintiffs Proper Media, Schoentrup, and Richmond each and all fail to allege facts sufficient or adequately certain to state this cause of action against Mr. Mikkelson. (Code Civ. Proc. § 430.10 (e), (f).)

///
///
///

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

<u>DEMURRER TO THIRTEENTH CAUSE OF ACTION FOR BREACH OF PROMISSORY</u>

<u>ESTOPPEL/SPECIFIC PERFORMANCE</u>

Plaintiffs Proper Media, Schoentrup, and Richmond each and all fail to allege facts sufficient or adequately certain to state all elements of this cause of action against Mr. Mikkelson.  (Code Civ. Proc. § 430.10 (e), (f).)

<u>DEMURRER TO FOURTEENTH CAUSE OF ACTION FOR DEFAMATION</u>

Plaintiff Proper Media fails to allege facts sufficient or adequately certain to state all elements of this cause of action against Mr. Mikkelson, particularly against the defense of truth.  (Code Civ. Proc. § 430.10 (e), (f).)  Moreover, it is barred by the litigation privilege and first amendment protections.  (Civ. Code § 47(b).)

<u>DEMURRER TO FIFTEENTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA</u>

<u>UNFAIR COMPETITION LAW – CAL. BUS. & PROF. CODE 17200, ET SEQ.</u>

<u>(DERIVATIVELY)</u>

The cause of action fails for lack of standing because Plaintiffs Schoentrup and Richmond are not proper derivative plaintiffs and did not make or are excused from proper demand.  (Corp. Code § 800.)  They further lack standing for failure to allege facts establishing such under Bus. & Prof. Code § 17204.  Further, plaintiffs fail to allege facts sufficient or adequately certain to state unfair, unlawful, or fraudulent conduct by Mr. Mikkelson.  (Code Civ. Proc. § 430.10 (b), (e), (f).)  Moreover, it is barred by the litigation privilege and first amendment protections.  (Civ. Code § 47(b).)

<u>DEMURRER TO SIXTEENTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA</u>

<u>UNFAIR COMPETITION LAW – CAL. BUS. & PROF. CODE 17200, ET SEQ.</u>

<u>(DERIVATIVELY)</u>

The cause of action fails for lack of standing, as plaintiff Proper Media fails to state facts establishing such under Bus. & Prof. Code § 17204.  Further, plaintiffs fail to allege facts sufficient or adequately certain to state unfair, unlawful, or fraudulent conduct by Mr. Mikkelson under this cause of action.  (Code Civ. Proc. § 430.10 (b), (e), (f).)  Moreover, it is barred by the litigation privilege and first amendment protections.  (Civ. Code § 47(b).)

NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

## DEMURRER TO SEVENTEENTH CAUSE OF ACTION FOR RESCISSION (DERIVATIVELY)

The cause of action fails for lack of standing, as plaintiffs Schoentrup and Richmond are not proper derivative plaintiffs and did not make or are excused from proper demand. (Corp. Code § 800.) Further, Plaintiffs fail to allege facts sufficient or adequately certain to state this cause of action, namely, any legal or factual basis for rescission, which is a remedy and not an independent claim. (Code Civ. Proc. § 430.10 (e), (f); *Nakash v. Superior Court* (1997) 196 Cal.App.3d 59, 70.)

## DEMURRER TO EIGHTEENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

Plaintiffs Proper Media, Schoentrup, and Richmond each and all fail to allege facts sufficient or adequately certain to state all elements of this cause of action, because the court can determine the controversy alleged as a matter of law and they do not have proper standing to bring this claim. (Code Civ. Proc. §§ 430.10 (b), (e), (f), 1060.)

## DEMURRER TO SIXTEENTH AND EIGHTEENTH CAUSE OF ACTION BY PROPER MEDIA FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW – CAL. BUS. & PROF. CODE 17200, ET SEQ. AND DELCARATORY RELIEF

Plaintiff Proper Media is barred from asserting the 16th and 18th causes of action, under the UCL and for declaratory relief, respectively, based upon the doctrine of res judicata pursuant to this Court's 2/22/18 Judgment [ROA 264, 265], and thus they fail to allege facts sufficient or adequately certain to state this cause of action. (Code Civ. Proc. § 430.10 (e), (f); *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

## DEMURRER TO TWELFTH, THIRTEENTH, FOURTENNTH, SIXTEENTH, AND EIGHTEENTH CAUSES OF ACTION BY PROPER MEDIA AGAINST MR. MIKKELSON

The court lacks jurisdiction over the following causes of action asserted by Proper Media against Mr. Mikkelson because the case of "Proper Media v. David Mikkelson" has concluded by this Court's 2/22/18 Judgment [ROA 264, 265], is severable from the remainder of the case, and is not barred by the one final judgment rule, all of which the court can determine even over its previous ruling on plaintiffs' motion for leave to amend (which presents a different standard

NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

of proof than that presented by the present demurrer): 12th – Breach of Contract; 13th – Promissory Estoppel/Specific Performance; 14th – Defamation; 16th - Violation of Bus. & Prof. Code 17200; and 18th – Declaratory Relief.  (Code Civ. Proc. §§ 430.10(a), 577; *Aspeitia v. California Trust Co.* (1958) 158 Cal. App. 2d 150; *Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 29; *Howe v. Key System Transit Co.* (1926) 198 Cal. 525; *National Electric Supply Co. v. Mt. Diablo Unified School Dist.* (1960), 187 Cal. App. 2d 418; *Le Francios v. Goel* (2005) 35 Cal.4th 1094.

This demurrer will be based on this notice of demurrer and demurer, the corresponding memorandum of points and authorities, the Declaration of Kimberly D. Howatt, the judicially noticeable materials cited from the Register of Actions, and otherwise, and all pleadings and papers on file in this action, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing of this matter.

Dated:  May 7, 2019     GORDON REES SCULLY MANSUKHANI, LLP

          By: _____
             Richard P. Sybert
             Kimberly D. Howatt
             Holly L.K. Heffner
             Attorneys for Defendant, Cross-complainant, and Cross-defendant
             DAVID MIKKELSON

NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    RICHARD P. SYBERT (SBN: 080731)
     rsybert@gordonrees.com
2    KIMBERLY D. HOWATT (SBN: 196921)
     khowatt@gordonrees.com
3    HOLLY L. K. HEFFNER (SBN: 245384)
     hheffner@gordonrees.com
4    GORDON & REES LLP
     101 W. Broadway Suite 2000
5    San Diego, CA 92101
     Telephone: (619) 230-7461
6    Facsimile: (619) 696-7124

7    Attorneys for Defendant, Cross-complainant, and Cross-defendant
     DAVID MIKKELSON
8

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

05/07/2019 at 03:18:00 PM

Clerk of the Superior Court
By Adriana Ive Anzalone,Deputy Clerk

9              SUPERIOR COURT OF CALIFORNIA

10                COUNTY OF SAN DIEGO

11   PROPER MEDIA, LLC, a California limited    )   LEAD CASE NO. 37-2017-00016311-CU-
     liability company; CHRISTOPHER            )   BC-CTL
12   RICHMOND, an individual and DREW          )
     SCHOENTRUP, an individual,                )   CONSOLIDATED WITH CASE NO. 37-
13                                             )   2018-00004335-CU-MC-CTL
     Plaintiffs                                )
14                                             )   **DAVID MIKKELSON'S MEMORANDUM**
     v.                                        )   **OF POINTS AND AUTHORITIES IN**
15                                             )   **SUPPORT OF DEMURRER TO**
     BARDAV INC, a California corporation;     )   **PLAINTIFFS' THIRD AMENDED**
16   DAVID MIKKELSON, an individual;          )   **COMPLAINT**
     VINCENT GREEN, an individual; RYAN       )
17   MILLER, an individual; and TYLER DUNN,   )   Date:    August 30, 2019
     an individual,                            )   Time:    10:30 a.m.
18                                             )   Dept.:   C-68
     Defendants.                               )   Judge:   Hon. Richard Whitney
19                                             )
                                               )   **IMAGED FILE**
20   AND RELATED CROSS-ACTIONS.               )
                                               )   Interpleader Complaint Filed: January 25,
21                                             )   2018
                                               )   Trial Date: April 12, 2019
22                                             )

23

24           Defendant and cross-complainant DAVID MIKKELSON ("Mr. Mikkelson") hereby

25   submits the following memorandum of points and authorities in support of his general and

26   specific demurrer to the Third Amended Complaint ("TAC") filed by plaintiffs PROPER

27   MEDIA, DREW SCHOENTRUP, and CHRISTOPHER RICHMOND (collectively "Plaintiffs"),

28   as outlined in the Notice of Demurrer and Demurrer filed herewith.

# TABLE OF CONTENTS

**Page**

I.      AUTHORITY FOR DEMURRER ................................................................. 1

II.     SEVENTH COUNT FOR BREACH OF FIDUCIARY DUTY (AND FIFTH
        COUNT FOR CORPORATE WASTE) ..................................................... 1

III.    TWELFTH CAUSE OF ACTION FOR BREACH OF CONTRACT ............................. 4

IV.     THIRTEENTH CAUSE OF ACTION FOR PROMISSORY ESTOPPEL .................... 5

V.      FOURTEENTH CAUSE OF ACTION FOR DEFAMATION ............................... 6

VI.     FIFTEENTH CAUSE OF ACTION FOR UNFAIR COMPETITION ........................ 7

VII.    SIXTEENTH CAUSE OF ACTION FOR UNFAIR COMPETITION ....................... 12

VIII.   SEVENTEENTH CAUSE OF ACTION FOR RECISSION ............................... 14

IX.     EIGHTEENTH CAUSE OF ACTION FOR DECLARATORY RELIEF ..................... 14

X.      PROPER MEDIA CLAIMS (16TH AND 18TH) BARRED BY *RES JUDICATA* ............ 15

XI.     PROPER MEDIA CLAIMS FOR WHICH THE COURT LACKS
        JURISDICTION ............................................................................. 15

XII.    CONCLUSION ............................................................................. 16

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bader v. Anderson*
(2009) 179 Cal.App.4th 775 ............................................................ 3

*Bank of the West v. Superior Court*
(1992) 2 Cal.4th 1254 ..................................................................... 9

*Barquis* v. *Merchants Collection Assn.*
(1972) 7 Cal.3d 94 .................................................................... 11, 12

*Bernstein* v. *Piller*
(1950) 98 Cal.App.2d 441 ............................................................... 1

*Birdsong v. Apple, Inc.*
(9th Cir. 2009) 590 F.3d 955 ................................................... 8, 12, 13

*Biren v. Equality Emerg. Med. Group, Inc.*
(2002) 102 Cal.App.4th 125 ............................................................ 4

*Blakemore v. Superior Court*
(2005) 129 Cal.App.4th 36 .............................................................. 9

*Blank v. Kirwan*
(1985) 39 Cal.3d 311 .................................................................... 16

*Buckland v. Threshold Enters., Ltd.*
(2007) 155 Cal. App. 4th 798 ......................................................... 12

*Californians for Disability Rights v. Mervyn's, LLC*
(2006) 39 Cal.4th 223, *fn. 2.* ........................................................ 7

*Campanelli v. Regents of the Univ. of Cal.*
(1996) 44 Cal. App. 4th 572 ............................................................ 6

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*
(1999) 20 Cal.4th 163 ..................................................................... 9

*DKN Holdings LLC v. Faerber*
(2015) 61 Cal.4th 813 ................................................................... 15

*Dove Audio, Inc. v. Rosenfeld*
(1996) 47 Cal.App.4th 777 ............................................................ 10

*Farmers Ins. Exchange v. Superior Court*
(1992) 2 Cal.4th 377 ...................................................................... 9

*Finley v. Superior Court*
(2000) 80 Cal.App.4th 1152 ............................................................ 4

*First Commercial Mortgage Co. v. Reece*
(2001) 89 Cal.App.4th 731 ............................................................. 4

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Frank Pisano & Assoc. v. Taggart*
  (1972) 29 Cal.App.3d 1 ............................................................................ 10

*Gertz v. Robert Welch, Inc.*
  (1974) 418 U.S. 323 ................................................................................. 6

*Gill v. Hughes*
  (1991) 227 Cal. App. 3d 1299 ................................................................. 6

*Gomes v. Countrywide Home Loans, Inc.*
  (2011) 192 Cal.App.4th 1149) ........................................................... 1, 9

*Hagberg v. California Federal Bank*
  (2004) 32 Cal.4th 350) ........................................................................... 10

*Hall v. Time, Inc.*
  (2008) 158 Cal.App.4th 847 .................................................................... 8

*Heckmann v. Ahmanson*
  (1985) 168 Cal.App.3d 119 ..................................................................... 1

*Jackson v. Underwriters' Report, Inc.*
  (1937) 21 Cal.App.2d 591 ....................................................................... 1

*Jara v. Suprema Meats*
  (2004) 121 Cal.App.4th 1238 ................................................................ 15

*Jones v. Wachovia Bank*
  (2014) 230 Cal.App.4th 935. ................................................................... 5

*Kajima/Ray Wilson v. L.A. Met. Transp. Authority*
  (2000) 23 Cal.4th 305 ......................................................................... 5, 6

*Khoury v. Maly's of California*
  (1993) 14 Cal.App.4th 612 .................................................................... 12

*Ladas v. California State Automobile Assn.*
  (1993) 19 Cal.App.4th 761 ...................................................................... 5

*Lazar v. Super. Ct.*
  (1996) 12 Cal.4th 63) .............................................................................. 1

*Meyer v. Sprint Speum L.P.*
  (2009) 45 Cal.4th 634 ........................................................................... 14

*Morales v. Cooperative of American Physicians, Inc.*
  (9th Cir. 1999) 180 F.3d 1060 .............................................................. 10

*Nakash v. Superior Court*
  (1997) 196 Cal.App.3d 59 ...................................................................... 14

*Nelson v. Anderson*
  (1999) 72 Cal.App.4th 111 ...................................................................... 2

*Oakland Raiders v. Nat'l Football League*
(2001) 93 Cal.App.4th 572 ............................................................. 2, 3

*O'Connor v. McGraw-Hill*
(1984) 159 Cal.App.3d 478 ................................................................. 6

*O'Keefe v. Kompa*
(2000) 84 Cal.App.4th 130 ............................................................... 10

*People v. Casa Blanca Convalescent Homes*
(1984) 159 Cal.App.3d 509 ............................................................... 11

*Peterson v. Cellco Partnership*
(2008) 164 Cal.App.4th 1583 ............................................................. 7

*Philbrook* v. *Randall*
(1924) 195 Cal. 95 .............................................................................. 1

*Pierce v. Lyman*
(1991) 1 Cal.App.4th 1093 ................................................................. 3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*
(D.C. Cir. 2008) 534 F.3d 779 ........................................................... 2

*Rubin v. Green*
(1993) 4 Cal.4th 1187 ...................................................................... 10

*Schuster v. Gardner*
(2005) 127 Cal.App.4th 305 .......................................................... 3, 15

*Shields v. Singleton*
(1993) 15 Cal.App.4th 1611 ............................................................... 2

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
(1991) 2 Cal.App.4th 153 ................................................................. 13

*Taus v. Loftus*
(2007) 40 Cal.4th 683 ......................................................................... 6

*Underwager v. Channel 9 Austl.*
(9th Cir. 1995) 69 F.3d 361 ................................................................. 6

*Zarowitz v. Bank of America Corp.*
(9th Cir. 1988) 866 F.2d 1164 ............................................................. 1

**Statutes**

Business & Professions Code
Section 17204 ............................................................................... 7, 12

Civil Code
Section 47 .................................................................................. 10, 13

Civil Code
Section 1689 ................................................................................... 14

Code Civil Procedure
    Section 1060 ................................................................................................ 14

Code Civil Procedure
    Section 430.41 ............................................................................................. 16

Code of Civil Procedure
    Section 430.10 ........................................................................................... 1, 15

Corporate Code
    Section 307 ................................................................................................. 11

Corporate Code
    Section 310 ......................................................................................... 10, 11, 14

Corporate. Code
    Section 317 ............................................................................................. 10, 14

Corporations Code
    Section 800 ................................................................................................. 2, 7

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

I.    **AUTHORITY FOR DEMURRER**

A demurrer should be sustained where the complaint fails to allege facts sufficient to constitute a cause of action, or where the pleadings are "uncertain," that is, they are "ambiguous or unintelligible."  Code Civ. Proc. § 430.10  (e, f).  It is also proper where the either the plaintiff lacks standing, or the trial court lacks jurisdiction for the claims asserted.  Code Civ. Proc. § 430.10  (a), (b).  The question of a privilege apparent on the face of the pleadings may also be raised by demurrer.  *Jackson v. Underwriters' Report, Inc.* (1937) 21 Cal.App.2d 591 , 593. Important principles upon demurrer include:  i) conclusions of law are not treated as facts for the purposes of a demurrer (*Lazar v. Super. Ct.* (1996) 12 Cal.4th 631 , 645); ii) allegations of material facts which are unclear or left to surmise are subject to demurrer for uncertainty (*Bernstein* v. *Piller* (1950) 98 Cal.App.2d 441 , 443-444; *Philbrook* v. *Randall* (1924) 195 Cal. 95 , 103); and – significant to the TAC – iii) an allegation made "on information and belief" is insufficient where it does not identify the information that leads plaintiff to believe it to be true (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 , 1158-59).

II.   **SEVENTH COUNT FOR BREACH OF FIDUCIARY DUTY (AND FIFTH COUNT FOR CORPORATE WASTE)**

Plaintiffs Schoentrup and Richmond seek to assert a separate (and second) claim for breach of fiduciary duty, derivatively for SMG.  This new cause of action fails on multiple bases.

As to the threshold issue of standing, a plaintiff who is in litigation against a corporation has a direct conflict of interest that *disqualifies* him from bringing derivative claims on the same corporation's behalf.  *Zarowitz v. Bank of America Corp.* (9th Cir. 1988) 866 F.2d 1164, 1165-66. Indeed, "a plaintiff breaches the duty to fairly and adequately represent the other shareholders when he uses the derivative action as leverage to achieve his own personal objectives." *Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 131.  Here, thus, Schoentrup and Richmond have a direct conflict of interest that precludes them from serving as derivative plaintiffs for SMG, namely that they are both suing SMG in their individual capacities. (TAC 9th, 12th, 13th, and 18th counts.)  By the 12th and 13th causes of action, in particular, Schoentrup and Richmond seek to recover monetary damages for themselves and their own personal interests.

There are further grounds demonstrative of a conflict: Schoentrup and Richmond are individual *defendants* to the Second Amended Cross-complaint of SMG. Also, Schoentrup has recently made an appearance as "counsel of record" in this case, purporting to be the attorney representing each himself, Richmond, Proper Media, *and* PubLife LLC in both the prosecution of and defense against the various claims by/against SMG in this lawsuit. Furthermore, Richmond is on the SMG Board of Directors that, as discussed *infra*, he intentionally bypassed in bringing this derivative suit. Altogether, Schoentrup and Richmond are plainly in direct conflict with the corporation, and cannot establish standing as derivative plaintiffs in this case.

Moreover, in order to establish standing for a derivative claim, a plaintiff must comply with the statutory requirements, namely, the Corp. Code § 800(b) requirement that a derivative plaintiff both, 1) make a pre-litigation demand on the corporation prior to initiating the lawsuit, and 2) "allege[] in the complaint <u>with particularity</u> plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, <u>and</u> allege[] further that plaintiff has either <u>informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant</u> or <u>delivered to the corporation or the board a true copy of the complaint</u> which plaintiff proposes to file." Corp. Code § 800(b)(2) [emphasis added]. "'No action may be instituted or maintained' unless there has been compliance with the statute." *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 127 . "Failure to comply with the requirements of the statute deprives a litigant of standing." *Id*., citing *Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1618 . Plaintiffs admit that they did not comply with this demand requirement (TAC ¶ 240); further, they fail to establish basis to be excused from doing so.

For a plaintiff seeking to be excused from demand based upon futility, "the bar is high, the standards are stringent, and the situations where demand will be excused are rare." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines* (D.C. Cir. 2008) 534 F.3d 779, 782-83. The test for futility is whether the facts alleged show a reasonable doubt that, 1) the directors are disinterested and independent, and, 2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *Oakland Raiders v. Nat'l Football League* (2001) 93 Cal.App.4th 572, 587. General allegations that the directors were involved in or approved of the

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

1   wrongdoing, or that the directors face the threat of personal liability for approving the transaction,

2   are not sufficient.  *Bader v. Anderson* (2009) 179 Cal.App.4th 775, 790.

3       Here, Plaintiffs fail to meet this standard.  Of the three directors on the SMG Board,

4   Plaintiffs superficially allege that Mr. Mikkelson is interested in this case, pointing to nothing

5   more than their own allegations, which without more do not disqualify him.  Plaintiffs ignore the

6   possibility that Snopes could vote to pursue their proposed claims on behalf of the corporation in

7   the absence of Mikkelson's vote, as there remain two other votes on the board – including

8   Richmond himself.  They admit that Mr. Westbrook is a "disinterested and independent" SMG

9   director.  (TAC ¶ 240(f).)  Furthermore, contrary to their theory, there is no requirement under the

10  law or SMG's Bylaws that a quorum exist with only the alleged disinterested directors (*see* TAC,

11  Exhibit E (SMG Bylaws)); the inquiry is whether the potential votes on the requested corporate

12  action are disinterested and independent.  *Oakland Raiders*, *supra*, 93 Cal.App.4th at 587.

13      (Significantly, this same defect exists as to one of Plaintiffs' older claims, i.e., the Fifth

14  Cause of Action for Corporate Waste, which was allowed to stand in February 2018 *before*

15  Westbrook and Richmond joined the Board and *before* Schoentrup appeared as counsel of record.

16  Such cause of action is thus properly dismissed for the same lack of derivative standing.)

17      Further, Plaintiffs fail to plead proper facts to state the requisite elements of this claim[1] –

18  in particular, an actual breach of a duty or resultant damages *to SMG*.  This is significant, because

19  an action is derivative only if 'the gravamen of the complaint is injury to the corporation …'."

20  *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 313 [emphasis added] .  As purported support

21  for this count, Plaintiffs' theories of a breach of fiduciary duty are based upon assertions that

22  either identify injury t*o Proper Media*, or were previously rejected by Judge Hayes.  (*See*, ROA

23  99, as quoted *infra*.)  They allege that Mr. Mikkelson purportedly breached his duty to SMG by, i)

24  using his 2016 CEO compensation monies that Schoentrup and Richmond approved (TAC ¶¶ 63-

25  67, 234(1), (2)); *compare*, ROA 99, pp. 2-3[2]); ii) terminating the GSA with Proper Media and

26

27  ───────────────
    [1]  The elements of a breach of fiduciary duty claim are: 1) a relationship giving rise to a fiduciary duty, 2) its breach, and 3) damage proximately caused thereby. *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1011.

28  [2]  In denying Plaintiffs' motion, Judge Hayes noted:  "Schoentrup signed off on the compensation agreement under which Mikkelson was paid and only raised an issue with it once the GSA was terminated by Bardav."

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

interfering with *Proper Media's* performance (TAC ¶ 234(3), (4); *compare*, ROA 99, p. 3

("Bardav was within its rights to terminate the GSA")); iii) hiring Green and Miller *from Proper*

*Media* and working with them to the *benefit* of SMG (TAC ¶ 234(5)-(7)); iv) not honoring

Plaintiffs' inspection demand (TAC ¶ 234(8); *compare*, ROA 99, pp. 3-4[3]); v) not directing SMG

to pay corporate money *to Plaintiffs* under an alleged contract (TAC ¶ 234(9)); vi) voting in favor

of litigation fee advancement for authorized persons under the Corporations Code and SMG

Bylaws (TAC ¶ 234(10); Exh. E, Sec. 6.3); and, vii) collecting money *for SMG* through a

GoFundMe campaign that includes statements that are critical *of Proper Media* (TAC ¶ 234(11)).

These flawed allegations do not support a claim on behalf of SMG for a breach of fiduciary duty.

Further, Plaintiff's claim ignores the business judgment rule, which establishes a

presumption in favor of the propriety of Mr. Mikkelson's corporate decisions. Corp. Code § 309.

Under the business judgment rule, a director is <u>not liable</u> for a purported error in business

judgment that is made in good faith and in what the director believes is in the best interests of the

corporation, where no conflict of interest exists. *Finley v. Superior Court* (2000) 80 Cal.App.4th

1152, 1157; *Biren v. Equality Emerg. Med. Group, Inc.* (2002) 102 Cal.App.4th 125, 136-138.

Plaintiffs' self-interested and previously-rejected allegations do not overcome this presumption.

## III.    <u>TWELFTH CAUSE OF ACTION FOR BREACH OF CONTRACT</u>

Plaintiffs fail to state facts sufficient or adequately certain to state their cause of action for

breach of contract, which they all three assert against both SMG *and* Mr. Mikkelson.[4] That is,

they absurdly allege that there exists a contract amongst <u>*all*</u> of these <u>five</u> companies and

individuals. (TAC ¶ 280.) No such contract exists, and the TAC fails to intelligibly describe one.

In order to show the existence of a contract – the threshold element – a plaintiff must

plead facts to show that, "1. That the contract terms were clear enough that the parties could

understand what each was required to do; 2. That the parties agreed to give each other something

of value …; and 3. That the parties agreed to the terms of the contract." CACI No. 302.

---

[3]  This court also noted that Schoentrup, in particular, was not "disinterested" for the purposes of a corporate inspection demand, and thus was not entitled to such.

[4]  To state a claim for breach of contract, a complaint must allege facts to show "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages." *First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731 , 745.

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

"Whether a contract is sufficiently definite to be enforceable is a question of law for the court." *Ladas v. California State Automobile Assn.* (1993) 19 Cal.App.4th 761, 770 (held, contract was not definite enough to give rise to a contractual duty and therefore properly dismissed). As the *Ladas* court explained: "Under basic contract law 'an offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain'." *Id.*, citing 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 145, p. 169.

Here, Plaintiffs claim that the alleged contract is a written one, and is comprised of Exhibits C and D to the TAC. These exhibits, however, are non-sensical and do not constitute a written contract among the five parties alleged, much less by Mr. Mikkelson in his *individual* capacity. There is no offer, no acceptance, no "clear" terms understood by both parties (on the contrary, these exhibits show a distinct <u>lack</u> of clarity (*see e.g.*, Exh. C ("I don't follow"), Exh. D. ("I guess I misunderstood" and he "buyers" that are paying her "not Bardav. Bardav doesn't owe her anything")), no apparent consideration (particularly as to Mr. Mikkelson, given that the reimbursement is alleged being sought *from SMG*), and no final agreement to anything definite.

As further grounds for its dismissal, there is no reference to or allegation of any consideration or "something of value" relative to Mr. Mikkelson, *individually*. Plaintiffs' failure to allege these threshold elements is fatal to this count.

## IV.    THIRTEENTH CAUSE OF ACTION FOR PROMISSORY ESTOPPEL

Plaintiffs likewise fail to state facts sufficient or adequately certain to state all elements of their cause of action for promissory estoppel, as to Mr. Mikkelson, *individually*. "'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."'" *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945. The California Supreme Court, in *Kajima/Ray Wilson v. L.A. Met. Transp. Authority* (2000) 23 Cal.4th 305, 315, observed that, "'[u]nless there is unjust enrichment of the promisor, [promissory estoppel] damages should not put the promisee in a better position than performance of the promise would have put him.' [citation]."

As discussed above, Plaintiffs' TAC – including Exhibits C and D – reflects a distinct <u>lack</u>

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

of any clear promise, and not one made by Mr. Mikkelson in his individual capacity. On the contrary, Plaintiffs allege that expected to receive monies from SMG – *not* from Mr. Mikkelson. (TAC ¶¶ 109, 287, Exh. D.) Moreover, as discussed above, Exhibits C and D demonstrate the plain ambiguity in the alleged discussion that Plaintiffs allege give rise to this cause of action. Accordingly, Plaintiffs cannot state this first element of their claim against Mr. Mikkelson.

Finally, Plaintiffs evidently seek to obtain the full benefit of Barbara's claim-free share in SMG without having to fund *any* of the payments that they contracted to pay, thereby putting them in a "better position"; and, they have identified no unjust enrichment that would inure to Mr. Mikkelson. Accordingly, under the rule stated in *Kajima/Ray Wilson*, their claims are barred.

## V.  FOURTEENTH CAUSE OF ACTION FOR DEFAMATION

For its Defamation claim, Proper Media fails to properly allege any actionable statement – much less one by Mr. Mikkelson individually – or resultant damages. Moreover, it is barred by first amendment protections on opinions and the manifest truth of the statements alleged.

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage'." *Taus v. Loftus* (2007) 40 Cal.4th 683, 720. It is an essential element of a defamation claim that the publication be of a false statement of *fact* rather than opinion. *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 339-340. Statements of opinion are not actionable as defamation. *O'Connor v. McGraw-Hill* (1984) 159 Cal.App.3d 478, 483-485; *Underwager v. Channel 9 Austl.* (9th Cir. 1995) 69 F.3d 361, 366-367 (Although defamation is primarily governed by state law, the First Amendment safeguards for freedom of speech … limit state law"; held, statements not actionable because they were "professional points of view (opinion) rather than factual assertions").

Furthermore, "[t]ruth, of course, is an absolute defense to any libel action." *Campanelli v. Regents of the Univ. of Cal.* (1996) 44 Cal. App. 4th 572, 582; *see also*, *Gill* v. *Hughes* (1991) 227 Cal. App. 3d 1299, 1309 ("Truth is a complete defense to civil liability for defamation"). "In order to establish the defense, the defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." *Campanelli*, 44 Cal. App. 4th at 582 (demurrer sustained to defamation

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    claim where allegations showed the "essential accuracy" of defendant's alleged statements).

2    Under these principles, Plaintiffs' proffered defamation claim based on statements

3    allegedly made by Mr. Mikkelson (although, notably, not alleged to have been made in his

4    individual capacity) is not viable. The alleged statements were purportedly made about Proper

5    Media on the SMG GoFundMe webpage in July 2017. (TAC ¶ 297.) All of these statements

6    were either true when made in July 2017, and/or include opinion language. For example, SMG

7    did, in fact, terminate its contract with Proper Media in early 2017 (TAC ¶ 84), and Proper Media

8    did, as this Court found, hold SMG hostage – thus leading to this Court's issuance of its

9    preliminary injunction directing Proper Media to release SMG's monies and return control of its

10   website. (See, ROA 99; TAC ¶ 297(a), (b), (d).) In SMG's apparent opinion, cooperation and

11   courtesy would be need for this process, and a more favorable service provider was desired.

12   (TAC ¶ 297(b).) Also at this time, while Schoentrup was baselessly claiming to be a director of

13   Snopes, the truth was that he was not, as was later determined by this Court's judgment on Mr.

14   Mikkelson's Section 709 claim. (ROA 289; TAC ¶ 297(c).) The only one of the alleged

15   statements regarding the GoFundMe campaign that did not get published in July 2017 (and

16   instead in March 2018) is one purportedly referring back to what was stated in those then-current

17   July 2017 statements – not offering new or more current information. (TAC ¶ 297(e).)

18   **VI.  FIFTEENTH CAUSE OF ACTION FOR UNFAIR COMPETITION**

19   Plaintiffs' proposed derivative UCL claims fails on multiple bases. Initially, as discussed

20   above, the claims fails for lack of standing, because Schoentrup and Richmond are not proper

21   derivative plaintiffs and did not satisfy the pre-suit requirements under Corp. Code § 800.

22   Further, Plaintiffs have failed to establish the standing required under the UCL – that is,

23   that SMG "has suffered injury in fact and has lost money or property as a result of the unfair

24   competition." Bus. & Prof. Code § 17204 [emphasis added] ; Californians for Disability Rights v.

25   Mervyn's, LLC (2006) 39 Cal.4th 223 , 229, fn. 2. In order to plead the statutory requirement of

26   standing under the UCL, "plaintiff must make a twofold showing: he or she must demonstrate

27   injury in fact and a loss of money or property caused by unfair competition." Peterson v. Cellco

28   Partnership (2008) 164 Cal.App.4th 1583, 1590-92 ; Hall v. Time, Inc. (2008) 158 Cal.App.4th

847, 852 (second prong of the standing test for an unfair competition claim imposes a causation requirement; a showing of a causal connection is necessary.) .

Here, Plaintiffs allege two categories of conduct for their UCL claim:  1) statements made on SMG's GoFundMe webpage about this lawsuit and its request for public donations for the related litigation expenses (TAC ¶¶ 306-315, 321), and 2) SMG's advancement of litigation expenses to Mr. Mikkelson and other corporate officers in accord with its Bylaws and the Corporations Code (TAC ¶¶ 316-320, 322).[5]  As to the first category, Plaintiffs *cannot* establish any corresponding "injury in fact" or "lost money or property" to SMG, because money is actually being donated *to* SMG (not taken *from* it), and that money is coming from the public (not SMG).  (TAC ¶¶ 306, 314.)  Plaintiffs' allegations that such conduct may give rise to SMG's "imminent" liability exposure (TAC ¶ 321) does not constitute any extant or concrete "injury in fact" *or* "lost money or property", *both* of which must be pleaded for UCL standing.

As to the second category of alleged conduct, Plaintiffs have not alleged any actual injury or loss, but only SMG's *contingent* "advance[ment]" of litigation expenses (TAC ¶¶ 123-127, 316, 319) – in distinct contrast to paying full indemnification of the costs, as Plaintiffs themselves acknowledge (TAC ¶ 123) – and for which SMG holds a promissory agreement for <u>repayment</u> if it is legally determined that the payment of fees is unwarranted (*see*, TAC ¶¶ 124126, Exhs. F-H).  Otherwise stated, SMG has contingently advanced monies (as opposed to affirmatively paying it as indemnification), for which SMG holds the right to repayment if required as a matter of law.  This is neither an "in fact" injury, nor a loss of *anything*.  Similarly, the "immediate danger of insolvency and dissolution" alleged by Plaintiffs (TAC ¶ 322) is not an existing "injury in fact" or "lost money or property" – it is merely a hypothetical/conjectural projection without factual basis.  *See*, *Birdsong v. Apple, Inc.* (9th Cir. 2009) 590 F.3d 955, 960, discussed *infra*.

Even more, Plaintiffs have not sufficiently alleged any actionable conduct *by Mr. Mikkelson* under the UCL.  An "unlawful" business practice is one that is both undertaken pursuant to business activity and forbidden by law.  *Farmers Ins. Exchange v. Superior Court*

---

[5]  Significantly, of these allegations of UCL conduct, seven (7) of them are alleged on "information and belief" without any foundation therefor (TAC ¶¶ 306, 307, 308, 313, 314, 315, 319; *see also*, TAC ¶¶ 119-121, 123, 132), and at least three (3) of them are mere legal conclusions (TAC ¶¶ 317-318, 320).

1   (1992) 2 Cal.4th 377 .  Conduct is "unfair" if it threatens a violation of an anti-trust law or the

2   spirit of such a law.  *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th

3   163, 187 .  Proving a "fraudulent" business practice for the purposes of the UCL requires a

4   showing that members of the public are likely to be deceived.  *Blakemore v. Superior Court*

5   (2005) 129 Cal.App.4th 36 ; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 .

6        At the outset, Plaintiffs fail to allege facts sufficient or adequately certain to show that Mr.

7   Mikkelson, *individually*, is responsible for the challenged conduct – on the contrary, it is alleged

8   to be attributable to SMG (or, alleged to be either "on behalf of Snopes Media Group" (*see* TAC

9   ¶¶ 306, 311), or offered on mere "information and belief" (TAC ¶¶ 306-308, 313-316, 319) so as

10  to be too defective to implicate Mr. Mikkelson, individually).  Moreover, the conduct is neither

11  unlawful, nor unfair, nor fraudulent.  The statements on the GoFundMe page are either true or

12  matters of opinion, and thus not actionable, and Plaintiffs offer no competent allegations to the

13  contrary.  For example, the entirety of the alleged statements in TAC ¶ 306 are offered solely "on

14  information and belief" – and even more significantly, the allegations that these statements are

15  somehow untrue are *also* alleged on mere "information and belief" (TAC ¶ 307-308).  That is,

16  there is *no factual basis* for Plaintiffs' allegations that either the statements were made, *or* that

17  they are factually untrue, beyond Plaintiffs' amorphous "information and belief" (i.e., they are

18  *guessing*), which cannot support a claim against a demurrer.  *Gomes*,192 Cal.App.4th at 1158-59.

19        In addition, those alleged GoFundMe statements describing certain events in this case

20  (TAC ¶¶ 311(a)-(c)) are likewise *true*, i.e., this Court *did* enter judgment in favor of Mr.

21  Mikkelson and against Proper Media (ROA 264, 265); Proper Media did claim in this case that

22  the GSA was still active thus necessitating injunctive relief (ROA 1, ¶ 51[6]; ROA 99); and Proper

23  Media *did* refuse to acknowledge that the GSA was lawfully terminated, instead bringing its own

24  (unsuccessful) preliminary injunction motion seeking to force SMG back into the contract (ROA

25  1, ¶ 51; ROA 13, p. 2, 15 (seeking to "enjoin[] Bardav from terminating the [GSA]"); ROA 99).

26        Moreover, these GoFundMe statements – and SMG's corporate decision on its

27

28  ───────────────
    [6]   In their original complaint, par. 51, Plaintiffs allege: "Under the General Services Agreement, Proper Media was,
    *and still is*, responsive for operating this [Snopes] content-management system."  [emphasis in original].

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

advancement of litigation expenses for its officers, as well as Mr. Mikkelson's request for same – are protected from liability under the litigation privilege of Section 47 (b) of the Civil Code. Section 47(b) provides for an <u>absolute</u> privilege for statements made in any judicial or official proceeding, as well as "communications with 'some relation' to judicial proceedings." *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193. Section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in <u>preparation</u> for anticipated litigation or to <u>investigate</u> the feasibility of filing a lawsuit. *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361.) Further, Section 47(b) can apply to "noncommunicative conduct" even if it is fraudulent and/or occurred outside the courtroom. *O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134; *Dove Audio, Inc. v. Rosenfeld* (1996) 47 Cal.App.4th 777 , 784 (holding that letter to possible co-claimants <u>seeking support</u> for filing of suit was covered by the privilege); *Frank Pisano & Assoc. v. Taggart* (1972) 29 Cal.App.3d 1 (illustrating extension of privilege to litigation conduct in the case in which party is being sued). "California courts have given the privilege an <u>expansive reach</u>." *Rubin*, 4 Cal.4th at 1193-94 [emphasis added]. If the court has any doubt as to whether California's litigation privilege applies, such doubt is to be resolved <u>in favor of *applying* it</u>. *Morales v. Cooperative of American Physicians, Inc.* (9th Cir. 1999) 180 F.3d 1060 , 1062. It is thus properly applied here, to the statements on SMG's GoFundMe page, as well as SMG's decision to advance litigation fees to Mr. Mikkelson, his request for such advancement, and his involvement in the corporate decision thereon, all of which are related to this case, Mr. Mikkelson's defense, and the events thereof.

Further, there is nothing "unlawful" about SMG's advancement of litigation expenses.[7] Such advancement is expressly authorized, not only by Corp. Code § 317(f) ("Expenses incurred in defending any proceeding may be advanced … upon receipt of an undertaking by or on behalf of the agent to repay that amount if it shall be determined ultimately that the agent is not entitled to be indemnified"), but also, by SMG's Bylaws. (TAC, Exh. E, Sec. 6.3.) Moreover, Plaintiffs' theory that Mr. Mikkelson's involvement in the decision is prohibited by Corp. Code § 310 is

---

[7]  Mr. Mikkelson hereby incorporates by reference to points and authorities filed in support of his Opposition, and that of SMG, to Plaintiffs' abandoned motion for preliminary injunction (ROA 663, 666), as well as those filed in support of these parties' Oppositions to Plaintiffs' second motion for preliminary injunction, filed on May 9, 2019.

legally incorrect. As reflected in Corp. Code § 307(b), interested directors both count and vote in board meetings and corporate actions without meetings. Moreover, Section 310(c) establishes that an interested director may be counted in determining a quorum, specifically in the context of approving a contract or transaction. In turn, Section 310(a) provides that <u>no</u> contract or transaction between the corporation and its director is either void or voidable, as long as it falls within any of the three categories set forth in Section 310(a)(1), (2), and (3). That is, if it does not fall within subdivisions (a)(1) or (a)(2) – both of which would omit votes of the interested directors' shares – then subdivision (a)(3) is triggered, which both, i) *allows* for the inclusion of the votes of an interested director, and ii) requires that the director show the transaction to be "just and reasonable". *Nothing* in Section 310 provides for a finding that any contract or transaction is "void" or "unlawful"; on the contrary, Section 310(a) identifies the circumstances and conditions where a contract or transaction is <u>*not*</u> void or voidable (as opposed to the converse, i.e., a finding that one *is* void); moreover, it does not speak to "unlawful[ness]" at all. Thus, even assuming *arguendo* that Mr. Mikkelson falls within the meaning of an interested director based upon a material financial interest in SMG's decision to advance his litigation expenses, <u>his vote *still counts*</u> under Section 310(a)(3) where such transaction is just and reasonable – which is precisely the case here, where Mr. Mikkelson's *individual* litigation efforts have already, i) secured *two* judgments in his favor – the latter of which settling the corporation questions of the percentage-interests of the shareholders and the make-up of the Board, and the first of which defeating all of Proper Media's causes of action against him (ROA 265, 289); ii) obtained dismissal of Plaintiffs' abuse of control claim (ROA 246); and, iii) successfully resisted Proper Media's request for his removal from directorship (ROA 99).

Finally, Plaintiffs do not identify any actual "business practice" related to SMG's advancement of Mr. Mikkelson's litigation expenses so as to establish this threshold element of their UCL count. *People v. Casa Blanca Convalescent Homes* (1984) 159 Cal.App.3d 509, 526 (citing in *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94 for the definition of UCL "business practices" under the predecessor statute, wherein the court held – *contra* the TAC here –that defendant collection agency's practice of filing litigation "directly relates to the defendant

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

collection agency's conduct of its "business.") That is, SMG's business (and that of Mr. Mikkelson as its CEO) is the publication of fact-checking articles on its internet website for its consumers; its *internal* corporate activity that does not reach the consumer, such as its litigation expense advancement decisions *or* the receipt of advanced litigation fees, does not fall within this scope and thus is not actionable under the UCL.

## VII.   SIXTEENTH CAUSE OF ACTION FOR UNFAIR COMPETITION

Proper Media's individual claim under the UCL likewise fails for lack of standing, or any actionable conduct, or non-privileged conduct, similar to the 15th cause of action, *supra*.

At the outset, Proper Media lacks standing under Section 17204, because it has not alleged sufficient or adequately certain facts to show that it has sustained any "injury in fact" *or* "lost money or property". Bus. & Prof. Code § 17204. "'Thus, to plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct'." *Birdsong v. Apple, Inc.*, 590 F.3d at 960, citing *Buckland v. Threshold Enters., Ltd.* (2007) 155 Cal. App. 4th 798, 814 [emphasis added]. "The requisite injury must be 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'." *Ibid.* [emphasis added]. Importantly, as a general principle in pleading a UCL count, "[a] plaintiff alleging unfair business practices … must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California* (1993) 14 Cal.App.4th 612 , 619.

Once again, the GoFundMe monies that Plaintiffs call into question are derived from members of the public, *and not Proper Media*. (TAC ¶¶ 327, 331). Accordingly, these public donations cannot provide basis for Proper Media to bring a UCL claim. In addition, Proper Media's sole claim of loss related to these GoFundMe statements, i.e., its vague and non-specific allegation of harm to its "reputation and goodwill, as well as its current and prospective business relationships" (TAC ¶ 333), does not meet either the basic pleading standards for sufficiency or certainty, much less those pleading standards applicable to Section 17204 standing – namely, a "distinct and palpable injury" that is not only "concrete and particularized", but also, "not conjectural or hypothetical". *Birdsong*, 590 F.3d at 960. In fact, Proper Media's alleged loss of

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

"reputation and goodwill" that may happen in the future, and/or the anticipated harm to its "prospective business relationships" *is* absolutely "conjectural [and] hypothetical" and thus *cannot* support an assertion of UCL standing. Its claim that such harm has already occurred is not at all "concrete [or] particularized", much less a "distinct and palpable injury" – that is, there are no allegations of Proper Media's positive reputation or goodwill in the first instance. On the contrary, the TAC reveals that Proper Media was only formed a few years before the alleged 2017 statements, in June 2015 (TAC, Exh. A), and is oddly silent as to its reputation or other business contracts (*see e.g.*, TAC ¶¶ 7, 18, 29). Perhaps tellingly, Proper Media does not identify *any one contract* that was harmed or any goodwill that it has suffered as a result of someone having reviewed the GoFundMe statements. As such, this superficial and fact-devoid claim of injury cannot suffice to establish Proper Media's standing to sue under the UCL. *See e.g.*, *Birdsong*, 590 F.3d at 960-962 (finding insufficient under Section 17204 plaintiffs' claim that the iPod's inherent risk of hearing loss has reduced the value of their iPods).

In addition to its lack of standing, Proper Media's UCL claim fails because the statements at issue (i.e., the same as those that are the subject of Schotentrup/Richmond's purported derivative UCL claim, *supra* (TAC ¶ 306)) are either true or mere projections of future conduct, i.e., use of funds collected (TAC ¶ 327(a)), impending release and allocation of the funds (TAC ¶ 327(b)), and plans for the continued receipt of donated funds (TAC ¶ 327(c)). None of these statements are actionable as untrue statements; indeed, "[p]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153 , 158. Thus, *contra* TAC ¶¶ 332, the alleged statements are not false, and nothing about them is defamatory – in fact, on this latter point, the statements alleged say nothing *at all* about plaintiff Proper Media.

Even more, all of these statements regarding the funding of SMG's and its officers' defense in this lawsuit, in in furtherance of the campaign to obtain donations for same, are protected from liability under Section 47(b), as discussed *supra*, because they relate to this judicial proceeding, a description of the events thereof and giving rise thereto, and Mr. Mikkelson's ongoing and progressing defense against Plaintiffs' litigation activity.

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## VIII. SEVENTEENTH CAUSE OF ACTION FOR RECISSION

The proposed derivative claim by Schoentrup and Richmond for Rescission fails for lack of standing, as Messrs. Schoentrup and Richmond are not proper derivative plaintiffs, as thoroughly discussed above. In addition, Plaintiffs fail to state facts sufficient or adequately certain to state this cause of action, because <u>rescission is not an independent count</u>; it is only a remedy. *Nakash v. Superior Court* (1997) 196 Cal.App.3d 59, 70 ("Rescission is *not* a cause of action; it is a remedy"). In order to obtain rescission, Plaintiffs must identify, state with certainty, and sufficiently plead a proper basis therefor, e.g., "mistake, or … duress, menace, fraud, or undue influence". Civ. Code § 1689. Plaintiffs have not done so here, but only have pleaded a prayer for relief in the form of rescission. This cause of action is thus properly dismissed.

## IX. EIGHTEENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

Plaintiffs' declaratory relief claim fails because this Court can readily quash the proffered legal controversy alleged, relative to Corp. Code §§ 310, 317 and the Bylaws, as set forth *supra* in Section VII. But even before that, the count fails because Plaintiffs lack standing to assert this claim for a judicial declaration relative to a transaction in which <u>they have no individual interest</u>.

Declaratory judgment is proper where it serves some practical end in stabilizing an uncertain or disputed legal relationship *between the parties*. *Meyer v. Sprint Speum L.P.* (2009) 45 Cal.4th 634 , 647. Code Civ. Proc. § 1060 provides in relevant part: "Any person interested under a written instrument, … or under a contract, or who desires a declaration of his or her rights or duties with respect to another, … may … bring an original action … for a declaration of his or her rights and duties … ." Here, however, *none* of the three Plaintiffs are parties to the transaction of SMG's advancement of litigation expenses to its corporate officer, nor do they – as individual parties – have any legal rights relative to that transaction/contract. Proper Media is not a SMG shareholder, and has no interest at all. Similarly, Schoentrup and Richmond's individual status as a shareholder does not suffice. A claim for "[a]n injury to a corporation cannot be maintained in an action brought by an individual shareholder on his own behalf but must be asserted in a derivative action in which the shareholder is a 'mere nominal plaintiff' and the corporation is the real party in interest, and any judgment recovered inures to its benefit." *Jara v.*

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Suprema Meats* (2004) 121 Cal.App.4th 1238, 1253. "'[A] shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth).'" *Schuster v. Gardner*, 127 Cal.App.4th at 312. They thus are not authorized to seek a declaration on this issue.

## X.   PROPER MEDIA CLAIMS (16TH AND 18TH) BARRED BY *RES JUDICATA*

Proper Media's claims via the 16th and 18th causes of action are barred by the doctrine of *res judicata*. "The term 'res judicata' is often used as an umbrella term encompassing the principles of claim preclusion and issue preclusion, viewed as two separate aspects of a single doctrine." *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824. "Claim preclusion, the "'primary aspect'" of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the "'secondary aspect'" historically called collateral estoppel, describes the bar on re-litigating issues that were argued and decided in the first suit. [Citation.]" *Id.* at p. 824.

Here, the Court already ruled (and reduced to a Judgment (ROA 265)) that Proper Media does not have standing to assert claims based upon the internal corporate actions of SMG, because it is not an SMG shareholder.  (*See*, ROA 246, pp. 2-3.)  Still, Proper Media attempts to assert new claims based upon SMG's corporate actions – namely, its decision to advance litigation expenses to its corporate officers pursuant to its Bylaws and the Corporations Code.  As this Court has already found, it does not have standing to do so; Proper Media is bound by this ruling, and thus the 16th and 18th causes of action by Proper Media must be dismissed.

## XI.   PROPER MEDIA CLAIMS FOR WHICH THE COURT LACKS JURISDICTION

The court lacks jurisdiction over the 12th, 13th, 14th, 16th, and 18th causes of action asserted by Proper Media against Mr. Mikkelson because the case of "Proper Media v. David Mikkelson" terminated by judgment, is severable from the remainder of the case, and is not barred by the one final judgment rule, all of which this Court can determine even over its previous ruling on plaintiffs' motion for leave to amend (which presents a different standard of proof than the present demurrer).  Code Civ. Proc. §§ 430.10(a).  Mr. Mikkelson hereby incorporates by reference the points and authorities for in his motion to strike, filed and served herewith.

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

**XII.** <u>**CONCLUSION**</u>

Based on the foregoing points and authorities, Mr. Mikkelson respectfully requests that this Court sustain his demurrer, without leave to amend per Code Civ. Proc. §430.41 (e) and Plaintiffs' anticipated failure to meet their burden of proving their claims to be capable of cure. *Blank v. Kirwan* (1985) 39 Cal.3d 311 , 318.

Dated: May 7, 2019                    GORDON REES SCULLY MANSUKHANI, LLP

                                        By: _____
                                            Richard P. Sybert
                                            Kimberly D. Howatt
                                            Holly L.K. Heffner
                                            Attorneys for DAVID MIKKELSON

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

DAVID MIKKELSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

**MINUTE ORDER**

DATE: 05/22/2019          TIME: 11:02:00 AM          DEPT:  C-68

JUDICIAL OFFICER PRESIDING: Richard S. Whitney
CLERK:  Richard Cersosimo
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2017-00016311-CU-BC-CTL**  CASE INIT.DATE: 05/04/2017
CASE TITLE: **Proper Media LLC vs Bardav Inc [E-FILE]**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Breach of Contract/Warranty

---

**APPEARANCES**

---

**\*\*AMENDED MINUTE ORDER.  THE COURT NOTES AN ERROR ON THE 5/21/2019 MINUTE ORDER.  THIS IS THE CORRECTED MINUTE ORDER\*\***

The Court, having taken the above-entitled matter under submission on 05/17/2019 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

**Plaintiffs Drew Schoentrup and Christopher Richmond's Motion for Preliminary Injunction is DENIED.**

The Court is persuaded by the oppositions. Plaintiffs Drew Schoentrup and Christopher Richmond have not met their burden to show a preliminary injunction is appropriate.

_____
Judge Richard S. Whitney

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**06/05/2019** at 08:59:00 PM

Clerk of the Superior Court
By Richard Day,Deputy Clerk

Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
E-mail: paul.tyrell@procopio.com
       ryan.caplan@procopio.com
       jacob.kozaczuk@procopio.com

Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly known and
having appeared as BARDAV INC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, an individual, and DREW SCHOENTRUP, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BARDAV INC, a California corporation; and DAVID MIKKELSON, an individual, VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual, <br><br> Defendants, <br><br> ———————————————— <br><br> AND RELATED CROSS-ACTIONS | Case No. 37-2017-00016311-CU-BC-CTL <br> (consolidated with Case No. 37-2018-00004335-CU-MC-CTL) <br><br> **DEFENDANT/ CROSS-COMPLAINANT SNOPES MEDIA GROUP'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO CODE CIV. PROC. § 425.16** <br><br> Accompanying Papers: <br> 1. Memorandum of Points & Authorities <br> 2. Kozaczuk Declaration <br><br> Date: August 9, 2019 <br> Time: 10:30 a.m. <br> Dept.: C-68 <br> Judge: Hon. Richard S. Whitney <br><br> Complaint Filed: May 4, 2017 <br> Trial Date: October 4, 2019 <br><br> ***IMAGED FILE*** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 9, 2019 at 10:30 a.m., or as soon thereafter as the matter may be heard in Department C-68 of the above-entitled court, located at 330 West Broadway, California 92101, the Honorable Richard S. Whitney presiding, Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as BARDAV INC ("Snopes") will and hereby does, move this Court to strike portions of the Third Amended Complaint ("TAC") of Plaintiffs/Cross-Defendants PROPER MEDIA, LLC ("Proper Media"), DREW SCHOENTRUP ("Schoentrup") and CHRISTOPHER RICHMOND ("Richmond") (collectively, "Plaintiffs") pursuant to Code of Civil Procedure section 425.16, and award its attorneys' fees incurred in connection with the instant motion.

Specifically, Snopes moves this Court to strike the following from Plaintiffs' TAC on grounds that each allegation and/or claim arises from activity in furtherance of Snopes' right of petition and/or right of free speech in connection with a public issue and/or an issue of public interest and is protected by the United States and California Constitutions:

1. Paragraph 14, Lines 1 to 8
2. Paragraph 15
3. Paragraph 16
4. Page 23, Lines 7 and 8 (between Paragraphs 118 and 119)
5. Paragraph 119
6. Paragraphs 122 through 132
7. Paragraph 133, Lines 3 and 4
8. Paragraph 134, Line 6
9. Page 27, Lines 12-13 (between Paragraphs 134 and 135)
10. Paragraphs 143 through 162
11. Page 33, Lines 4 and 5 (between Paragraphs 162 and 163)
12. Paragraph 206
13. Paragraph 220, Lines 4 through 6 and Lines 16 through 20
14. Paragraph 234, Lines 2 through 4 and Lines 14 through 18

2

15.     Paragraph 254, Lines 25 through 1 (i.e., Page 45:25-46:1)

16.     Fourteenth Claim for Relief, Defamation, Paragraphs 296 through 301

17.     Fifteenth Claim for Relief, Violation of Business and Professions Code Section 17200, et seq., Paragraphs 302 through 325

18.     Sixteenth Claim for Relief, Violation of Business and Professions Code Section 17200, et seq., Paragraphs 326 through 335

19.     Seventeenth Claim for Relief, Rescission, Paragraphs 336 through 350

20.     Eighteenth Claim for Relief, Declaratory Relief, Paragraphs 351 through 360

21.     Prayer for Relief, Nos. 4 through 9.

This motion is based on this Notice and Special Motion to Strike, the accompanying Memorandum of Points and Authorities, the Declaration of Jacob Kozaczuk, and the pleadings and papers on file in the above entitled action, and upon such further evidence and argument as may be presented to the Court at the hearing on this matter.

The Court may issue a tentative ruling in this matter. The tentative ruling may be obtained through the court's website at http://www.sdcourt.ca.gov and clicking on the tentative ruling link listed under the civil tab, or by telephoning the independent calendar clerk for the assigned department. The tentative ruling may note any issues on which the Court wishes the parties to provide further argument at the hearing. Failure to file timely pleadings may constitute a waiver of the right to orally argue.

DATED: June 5, 2019                           PROCOPIO, CORY, HARGREAVES &
                                                             SAVITCH LLP


By: _____
        Paul A. Tyrell
        Ryan C. Caplan
        P. Jacob Kozaczuk
        Attorneys for Defendant/Cross-Complainant,
        SNOPES MEDIA GROUP, INC., formerly
        known and having appeared as BARDAV INC

Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone:    619.238.1900
Facsimile:    619.235.0398
E-mail:  paul.tyrell@procopio.com
         ryan.caplan@procopio.com
         jacob.kozaczuk@procopio.com

Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly known and
having appeared as Bardav Inc

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/05/2019** at 08:59:00 PM

Clerk of the Superior Court
By Richard Day,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, an individual, and DREW SCHOENTRUP, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>BARDAV INC, a California corporation; and DAVID MIKKELSON, an individual, VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual,<br><br>        Defendants,<br><br>AND RELATED CROSS-ACTIONS | Case No. 37-2017-00016311-CU-BC-CTL<br>(consolidated with Case No. 37-2018-00004335-CU-MC-CTL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT/CROSS-COMPLAINANT SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO CODE CIV. PROC. § 425.16**<br><br>Date:      August 9, 2019<br>Time:     10:30 a.m.<br>Dept.:    C-68<br>Judge:   Hon. Richard S. Whitney<br><br>Complaint Filed:  May 4, 2017<br>Trial Date:     October 4, 2019<br><br>***IMAGED FILE*** |

      Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as BARDAV INC ("Snopes"), respectfully submits this Memorandum of Points and Authorities in support of its Special Motion to Strike the Third Amended Complaint ("TAC") filed by Plaintiffs PROPER MEDIA, LLC ("Proper Media"), DREW SCHOENTRUP ("Schoentrup"), and CHRISTOPHER RICHMOND ("Richmond") (collectively, "Plaintiffs").

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. 3

I.    INTRODUCTION ..................................................................................... 6

II.   PERTINENT FACTUAL BACKGROUND ................................................. 7

      A.    Plaintiffs Have Repeatedly Blocked Snopes' Ability to Litigate the Action by
            Driving up Litigation Costs and Denying Snopes Access to its Own Revenues ...... 7

      B.    Plaintiffs Continue to Drive up Litigation Costs while Trying to Cut Off Legal
            Representation to Snopes and its Employees ................................................ 8

III.  LEGAL STANDARD ................................................................................ 9

      A.    Burden-Shifting Under the Anti-SLAPP Statute ...................................... 10

IV.   CLAIMS BASED ON PROTECTED ACTIVITY IN THE TAC ...................... 10

      A.    The Postings on the GoFundMe Campaign are Acts in Furtherance of Plaintiffs'
            Free Speech ............................................................................................... 10

V.    SNOPES' LITIGATION FUNDING DECISIONS CONSTITUTE PROTECTED
      ACTIVITY ............................................................................................. 12

VI.   PLAINTIFFS CAN'T MEET THEIR BURDEN TO ESTABLISH A PROBABILITY
      OF SUCCESS ON THE MERITS FOR THEIR DEFAMATION-BASED CLAIMS ...... 13

      A.    The Single Publication Rule Limits Plaintiffs GoFundMe Allegations to a
            Claim For Defamation ............................................................................. 14

      B.    Plaintiffs' Claims For Defamation Fail Because The Allegedly Defamatory
            Comments Are Substantially True And/Or Are Nonactionable Opinion ............ 14

      C.    The Allegedly Defamatory Statements are Barred By The Statute Of
            Limitations ............................................................................................... 17

VII.  PLAINTIFFS CAN'T MEET THEIR BURDEN TO ESTABLISH A PROBABILITY
      OF SUCCESS ON THE MERITS FOR THEIR LITIGATION FUNDING CLAIMS ..... 17

      A.    Plaintiffs Fail to Plead Facts Establishing the Requisite Board Demand or
            Futility for Their Litigation Funding Claims ............................................ 18

      B.    The Litigation Funding Claims also Fail under the Business Judgment Rule ........ 19

VIII. ADDITIONAL ALLEGATIONS IN THE CROSS-COMPLAINT MUST BE
      STRICKEN ............................................................................................. 20

IX.   CONCLUSION ....................................................................................... 20

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Makaeff v. Trump University, LLC* (9th Cir. 2013)
  715 F.3d 254 ............................................................................................................11

*Masson v. New Yorker Magazine* (1991)
  501 U.S. 496 ............................................................................................................15

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.* (S.D.Cal. 2007)
  2007 WL 935703 ......................................................................................................14

*Village of Schaumburg v. Citizens for a Better Environment* (1980)
  444 U.S. 620 ............................................................................................................11

**CALIFORNIA CASES**

*Anderson v. Geist* (2015)
  236 Cal.App.4th 79 ..................................................................................................10

*Balzaga v. Fox News Network, LLC* (2009)
  173 Cal.App.4th 1325 ..............................................................................................15

*Beach v. Harco Nat'l Ins. Co.* (2003)
  110 Cal. App. 4th 82 ..................................................................................................9

*Campanelli v. Regents of University of California* (1996)
  44 Cal.App.4th 572 ..................................................................................................15

*Chaker v. Mateo* (2012)
  209 Cal.App.4th 1138 ..............................................................................................11

*ComputerXpress, Inc. v. Jackson* (2001)
  93 Cal.App.4th 993 ..................................................................................................15

*Copenbarger v. Morris Cerullo World Evangelism* (2013)
  215 Cal.App.4th 1237 ..............................................................................................11

*Direct Shopping Network, LLC v. James* (2012)
  206 Cal.App.4th 1551 ..............................................................................................10

*Equilon Enters. v. Consumer Cause, Inc.* (2002)
  29 Cal.4th 53 ..............................................................................................................9

*Finton Constr., Inc. v. Bidna & Keys* (2015)
  238 Cal.App.4th 200 ................................................................................................11

*Gantry Const. Co. v. American Pipe & Const. Co.* (1975)
    49 Cal.App.3d 186.............................................................................15

*Gregory v. McDonnell Douglas Corp.* (1976)
    17 Cal.3d 596.................................................................................15

*Hebrew Academy of San Francisco v. Goldman* (2007)
    42 Cal.4th 883 .........................................................................14, 17

*Lee v. Interinsurance Exchange* (1996)
    50 Cal.App.4th 694....................................................................19, 20

*McGarry v. University of San Diego* (2007)
    154 Cal.App.4th 97.........................................................................14

*Midland Pacific Bldg. Corp. v. King* (2007)
    157 Cal.App.4th 264.......................................................................11

*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism*
    (2018)
    23 Cal.App.5th 28......................................................................9, 10

*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007)
    151 Cal.App.4th 688.......................................................................10

*Reed v. Norman* (1957)
    152 Cal.App.2d 892.........................................................................19

*Rusheen v. Cohen* (2006)
    37 Cal.4th 1048 (*Rusheen*) ...............................................................12

*Sheley v. Harrop* (2017)
    9 Cal. App. 5th 1147 (*Sheley*) .....................................................12, 20

*Shields v. Singleton* (1993)
    15 Cal.App.4th 1611........................................................................19

*Simmons v. Allstate Ins. Co.* (2001)
    92 Cal.App.4th 1068.........................................................................9

*Smith v. Dorn* (1892)
    96 Cal. 73...................................................................................19

*Summit Bank v. Rogers* (2012)
    206 Cal.App.4th 669........................................................................14

*Takhar v. People ex Rel. Feather River Air Quality Management Dist.* (2018)
    27 Cal.App.5th 15..........................................................................12

*Traditional Cat Ass'n, Inc. v. Gilbreath* (2004)
    118 Cal.App.4th 392 (*Traditional Cat*) ....................................................................14

*Tuszynska v. Cunningham* (2011)
    199 Cal.App.4th 257 ....................................................................................................12

*Wilcox v. Superior Court* (1994) 27 Cal. App.4th 809 (*Wilcox*)
    overruled in part on other grounds in *Equilon Enter's v. Consumer Cause, Inc.*
    (2002) 29 Cal.4th 53 ....................................................................................6, 12, 13

*Wong v. Jing* (2010)
    189 Cal.App.4th 1354 ..................................................................................................11

## CALIFORNIA STATUTES, REGULATIONS, AND RULES

Code of Civil Procedure
    § 340(c) ........................................................................................................................17
    § 425.16 ..................................................................................................................passim
    § 425.16(a) ....................................................................................................................7
    § 425.16(b)(l) ................................................................................................................9
    § 425.16(c) ....................................................................................................................9
    § 425.16(e) ....................................................................................................................9
    § 425.16(e)(3) ..............................................................................................................11
    § 425.16(e)(4) ..............................................................................................................11
    § 3425.3 ......................................................................................................................14

Corporations Code
    § 310 ............................................................................................................................17
    § 317(d) ......................................................................................................................18
    § 317(e) ......................................................................................................................17
    § 317(f) ..............................................................................................................8, 17, 18
    § 800(b) ......................................................................................................................19

Corporations Law (2018 Supp.) § 11.22(I) ............................................................................18

## I.    __INTRODUCTION__

As the Court knows, when this action was first filed, Proper Media and its owners were unlawfully holding the Snopes.com website hostage and had seized control of *all* of Snopes advertising revenues generated by its famous fact-checking website. By cutting off Snopes' primary source of revenue and stymying its ability to pay legal fees, Plaintiffs hoped they could bring Snopes to its knees.

Snopes and its management team did not succumb to the financial pressure improperly imposed by Plaintiffs. Instead, Snopes demonstrated backbone and resourcefulness and found help in two very different places: (1) this Court and (2) the vast Snopes.com readership. Both efforts were successful in helping Snopes survive and to continue fending off the never-ending tactics that Plaintiffs have employed throughout this dispute.

This honorable Court helped greatly when it entered a TRO and, thereafter, issued a preliminary injunction that ultimately caused the release of more than $1 million of stolen advertising revenue and led to Snopes regaining control of its website. While those early court battles were being fought, the Snopes.com readership and other members of the public who value Snopes as an important fact-checking resource also helped. In response to a GoFundMe campaign, which is ongoing, the public has donated hundreds of thousands of dollars to support Snopes. However, to avoid reaching the merits of Snopes' claims, Plaintiffs have continued their strategy of browbeating Snopes and its employees with baseless claims and scorched-earth litigation tactics.

Snopes should be applauded for its resiliency and resourcefulness. Unsurprisingly, Plaintiffs are not clapping. Instead, they have added claims and allegations that are designed to chill Snopes efforts to speak publicly about this case, stop Snopes from raising money to support itself and otherwise cut off funding for Snopes and its employees. Plaintiffs' claims are exactly what California's anti-SLAPP statute is designed to prevent.

This motion is proper because the challenged claims are a calculated effort by Plaintiffs to obtain an economic advantage over Snopes by expanding the scope of litigation, driving up legal costs, and chilling Snopes' fundraising efforts. (*See Wilcox v. Superior Court* (1994) 27 Cal. App.4th 809, 815-16 (*Wilcox*) [aim of SLAPP suit is to "drive up the cost of litigation to the point

where the plaintiff/cross-defendant will abandon its case or have less resources available to prosecute its action"], overruled in part on other grounds in *Equilon Enter's v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)

Plaintiffs' newly-filed TAC with eighteen causes of action asserts meritless claims based Snopes' litigation funding decisions and truthful public statements made in connection with its fundraising efforts. Snopes' litigation funding decisions and fundraising postings fall squarely within the ambit of activities protected under California's Anti-SLAPP law, which was passed to bring about the speedy termination of claims that seek to punish defendants for exercising their right to free speech. (Code Civ. Proc. 425.16(a).) Snopes therefore respectfully moves to strike the TAC pursuant to California Code of Civil Procedure section 425.16.

## II.  PERTINENT FACTUAL BACKGROUND

### A.  Plaintiffs Have Repeatedly Blocked Snopes' Ability to Litigate the Action by Driving up Litigation Costs and Denying Snopes Access to its Own Revenues

From August 2015 until early 2017, Plaintiff Proper Media (an entity controlled by Schoentrup and Richmond) provided certain Internet advertising services to Snopes pursuant to a General Service Agreement ("GSA"). (*Id.* at ¶¶ 42, 104.) After Snopes notified Proper Media it was exercising its right to terminate the GSA, Plaintiffs unlawfully held Snopes' website hostage and refused to relinquish control of its website or its email accounts. Worse, Plaintiffs also improperly withheld *all* advertising revenues from Snopes—effectively cutting off Snopes' primary source of income and inflicting severe financial distress on the company. (*Ibid.*) Plaintiffs also erroneously contended Proper Media was a beneficial owner of 50% of Snopes and that Schoentrup was a director of Snopes, despite never having been appointed to the position, in their unlawful efforts to exert control over Snopes and oust its founder, Defendant/Cross-Complainant DAVID MIKKELSON ("Mikkelson").

The case against Plaintiffs' unlawful action is clear. Accordingly, Plaintiffs primary litigation strategy has been to drive up the cost of litigation and undermine the ability of Snopes and its employees to litigate this case. At the outset, Plaintiffs tried to exert pressure on Snopes by cutting off Snopes' primary source of revenue and improperly withholding funds. Snopes was

7

forced to incur significant legal fees to obtain a TRO and a preliminary injunction against Plaintiffs to release funds and other property unlawfully withheld. (*See* ROA 45, 99, 123.) Even after obtaining an injunction against Plaintiffs, Snopes had to go back to Court to seek help enforcing the injunction, and this Court issued an order to show cause re contempt. (ROA 372.)

**B.** **Plaintiffs Continue to Drive up Litigation Costs while Trying to Cut Off Legal Representation to Snopes and its Employees**

From the start and continuing throughout this litigation, Plaintiffs have tried time and time again to interfere with Snopes corporate governance, create deadlocks, and to deny rights to its directors and shareholders. Snopes has persevered, but at no small cost, and Plaintiffs' deleterious conduct will not stop. Earlier this year, despite being the very cause of Snopes' financial harm, Plaintiffs requested an injunction to block Snopes' ability to advance attorney fees on the unfounded grounds that Snopes' would suffer imminent financial harm and the advancement of fees was improper. The Court properly denied the request, although Snopes was forced to incur more fees opposing yet another frivolous motion. Plaintiffs' TAC now asserts the same claims challenging Snopes' litigation funding decisions; namely, Snopes' decision to advance attorney fees for its own employees—the very employees Plaintiffs are suing in this action. It is well settled that Snopes' decision to advance attorney fees for this litigation is an activity protected under California's anti-Strategic Lawsuit Against Public Participation statute (the "anti-SLAPP statute" or "Section 425.16"). Moreover, Snopes' decision to advance fees was properly authorized and expressly permitted under Corporations Code section 317(f). For these and the other reasons set forth below, Plaintiffs' litigation funding claims and allegations must be stricken from the TAC.

In parallel to its efforts to obtain relief from the Court, Snopes sought help from the public via a GoFundMe campaign. The GoFundMe campaign helped raise money for the Snopes' general operations, including its legal expenses, which became necessary after Plaintiffs stole Snopes' entire revenue stream, held its revenue-producing assets hostage, and caused Snopes to incur significant fees obtaining relief to address that harm. Per Plaintiffs' own allegations, the GoFundMe campaign has raised more than $850,000 to date from nearly 30,000 donors, demonstrating the public value of the Snopes.com website as a truth-seeking resource. (*See* TAC,

8

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT
DOCS 125263-000001/3669546.3

Page 428 of 732

¶ 331.)  Now, in an effort to chill Snopes fundraising efforts and drive up litigation costs, Plaintiffs assert defamation-based claims against Snopes and its CEO based on truthful statements made on the GoFundMe page.  Like Snopes' litigation funding decisions, it is clear that these claims are based on a protected activity and there is no probability Plaintiffs will prevail.  Accordingly, the defamation-based claims and allegations must also be stricken from the TAC.

## III.  **LEGAL STANDARD**

California's anti-SLAPP statute provides that "cause[s] of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Section 425.16(b)(l).)  Acts in furtherance of free speech include "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Section 425.16(e).)

Anti-SLAPP protections "are to be construed broadly," and apply regardless of the cause of action asserted by the plaintiff.  (*Beach v. Harco Nat'l Ins. Co.* (2003) 110 Cal. App. 4th 82, 90, citing Code Civ. Proc. § 425.16(a); *Equilon Enters. v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 60.)  Anti-SLAPP motions are not limited attacks on entire claims, but may also "attack parts of a count, including specific allegations amounting to a claim." (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 43 (*Newport Harbor*), citing *Baral v. Schnitt* (2016) 1 Cal.5th 376, 382, 392-93 (*Baral*).)  When a court finds an anti-SLAPP motion meritorious, it must grant the motion without leave to amend.  (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073-74.)  Except as to specific statutory causes of action not asserted here, a prevailing defendant on a special motion to strike is entitled to recover attorneys' fees and costs.  (Code Civ. Proc. § 425.16(c).)

9

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT
DOCS 125263-000001/3669546.3
Page 429 of 732

**A.    Burden-Shifting Under the Anti-SLAPP Statute**

In ruling on a special motion to strike, courts engage in a two-part test.  "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16."  (*Newport Harbor* 23 Cal.App.5th at 42.)  "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.  We have described this second step as a 'summary-judgment-like procedure.'"  (*Id.*)

Showing a probability of prevailing is similar to a summary judgment in "reverse" because the plaintiff must produce prima facie <u>evidence</u> showing its ability to prove each element of its claim.  (*Direct Shopping Network, LLC v. James* (2012) 206 Cal.App.4th 1551, 1558, n.4.)  To meet this burden, a plaintiff opposing an anti-SLAPP motion cannot rely on allegations in the complaint, but must set forth <u>evidence</u> that would be admissible at trial.  (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699.)  The plaintiff's <u>evidence</u> must be sufficient to support a judgment in its favor if proved at trial.  (*Anderson v. Geist* (2015) 236 Cal.App.4th 79, 85.)

**IV.    CLAIMS BASED ON PROTECTED ACTIVITY IN THE TAC**

As set forth in the Notice and Motion, Snopes brings this special motion to strike as to:

1) The fourteenth count for defamation—and related claims and allegations—which are based on true fundraising campaign postings that were published on the Internet over a year ago.

2) The seventeenth and eighteenth counts for rescission and declaratory relief—and related claims and allegations—which are based on Snopes' litigation funding decisions.

**A.    The Postings on the GoFundMe Campaign are Acts in Furtherance of Plaintiffs' Free Speech**

Plaintiffs' fourteenth count for defamation (TAC, ¶¶ 296-301) and related claims against Snopes and Mr. Mikkelson are all premised upon true <u>fundraising campaign</u> postings published on the Internet between July 2017 and March 2018.  (TAC, ¶ 296(a)-(e) [referring to fundraising campaign webpages on gofundme.com and savesnopes.com, which links to gofundme.com; *see* gofundme.com/how-it-works ["GoFundMe is the best place to fundraise, whether you are an individual, group, or organization."].)  Websites accessible to the public are "public forums" for

10

purposes of the anti-SLAPP statute. (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366; *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1146.)

There can be no dispute that these fundraising campaign postings are acts in furtherance of free speech rights subject to protection under Section 425.16. (*See Village of Schaumburg v. Citizens for a Better Environment* (1980) 444 U.S. 620, 632 [finding that charitable appeals for funds are within the protection of the First Amendment].) The alleged fundraising activities are therefore "conduct in furtherance of the exercise of the constitutional right of . . . free speech." (Section 425.16(e)(4).)

The same postings are further protected as "written statement[s] made in . . . a public forum in connection with an issue of public interest." (Section 425.16(e)(3).) Rather than belabor this obvious point, Snopes need only point to Plaintiffs' own allegations, which repeatedly concede that the GoFundMe fundraising campaign "has raised over $850,000 from nearly 30,000 donors." (*See* TAC, ¶¶ 331, 137, 314, 321.)[1]

A cause of action "arises from" conduct that it is "based on." *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1244. Accordingly, a court must determine what activities form the basis for each cause of action and then determine whether those activities are "protected activity," bringing the cause of action within the scope of the anti-SLAPP statute. (*Finton Constr., Inc. v. Bidna & Keys* (2015) 238 Cal.App.4th 200, 209; *Midland Pacific Bldg. Corp. v. King* (2007) 157 Cal.App.4th 264, 272 ["the focus of the statute is not the form of plaintiff's cause of action, but the defendant's activity that gives rise to the asserted liability"].) The plain allegations of the TAC confirm Plaintiffs' defamation-related claims are based upon the contents of fundraising campaign postings made on the Internet.

Accordingly, the alleged defamatory statements easily fall within Section 425.16(e)(3) and Section 425.16(e)(4), and the burden is on Plaintiffs to demonstrate a probability of prevailing on the merits.

---

[1] In any event, the fundraising campaign postings regard Plaintiffs' fraudulent and deceptive business practices, yet another matter of public interest. (*Makaeff v. Trump University, LLC* (9th Cir. 2013) 715 F.3d 254, 262 ["Under California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers."].)

11

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT
DOCS 125263-000001/3669546.3
Page 431 of 732

## V. SNOPES' LITIGATION FUNDING DECISIONS CONSTITUTE PROTECTED ACTIVITY

It is well-settled that litigation funding decisions constitute protected speech activity. (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 271; *Sheley v. Harrop* (2017) 9 Cal. App. 5th 1147 (*Sheley*). "As our California Supreme Court has explained, because a cause of action arising from *any act* in furtherance of the right of petition is subject to the anti-SLAPP motion (S 425.16, subd. (b)(1), italics added), [a] cause of action 'arising from' [a] defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike. 'Any act' includes communicative conduct such as the filing, **funding**, and prosecution of a civil action." (*Takhar v. People ex Rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, citing *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*), internal citations and quotation marks omitted, emphasis added.)

Plaintiffs' claims challenge the authorization of Snopes' Board of Directors (the "Board") to advance attorneys' fees for its employees—employees Plaintiffs sued in this action. (TAC, ¶ 130.) This "act" falls squarely within the parameters of Snopes' litigation funding decisions. Moreover, the decision to advance legal fees is also protected as an act in furtherance of Snopes' prosecution of this civil action. (*See Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

Indeed, Plaintiffs' incentive for bringing these claims illustrate why the courts have so broadly protected litigation funding decisions. (*See Wilcox*, 27 Cal.App.4th at 826 ["If the defendants financing of a lawsuit is constitutionally protected it follows that speech exhorting others to do the same is also protected."].) As the Court in *Wilcox* explained:

> In *Pacific Gas & Electric Co.* v. *Bear Stearns & Co.,* [(1990) 50 Cal.3d 1118], our Supreme Court made clear the tort defense based on the right to petition applies not only to litigants but to those who **induce, encourage and support a lawsuit involving a "colorable claim."** (50 Cal.3d at p. 1136.) In *Pacific Gas & Electric,* plaintiff brought an action against defendant, an investment brokerage firm, for various business torts alleging the firm had encouraged and financed a local water agency's suit for declaratory relief as to whether the agency could terminate its contract with plaintiff. **In holding the petition privilege applicable to a defendant who finances litigation the court stated: "It is important to remember what PG&E is trying to achieve through this lawsuit. It seeks to enjoin Bear Stearns from further participation in the lawsuit in order to avert what it considers to be the irreparable harm of an adverse judgment. It is essentially seeking to abort**

12

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT
DOCS 125263-000001/3669546.3

Page 432 of 732

**the lawsuit by starving the litigant of funds.** In *Sierra Club* v. *Butz,* [*supra*], too, there were, doubtless, persons who induced the representatives of the club to bring the action, and who provided financial assistance in support of the lawsuit, but were not named parties. Yet it would defeat the purpose of assuring free access to the courts, and cause a flood of oppressive derivative litigation, to assess tort liability for their activities." (*Ibid.*)

(*Ibid.*, emphasis added.)

As detailed in these moving papers, Plaintiffs' chief strategy throughout this litigation has been to starve defendants of funds to litigate their claims against Plaintiffs. When this Court intervened, Plaintiffs began browbeating defendants with frivolous claims, motions, and discovery to drive up the cost of litigation. Then, after Plaintiffs' scorched-earth tactics failed—albiet at great cost to Snopes—Plaintiffs sought leave to file these SLAPP claims to chill Snopes' fundraising efforts and starve Snopes' employees of funds to litigate the case. In furtherance of this scheme, Plaintiffs contemporaneously requested a continuance of the already-continued trial date, which was previously scheduled for April 2019. Thus, Plaintiffs' claims in the TAC exemplify *why* Snopes' litigation funding decisions are so broadly protected under the anti-SLAPP statute. Thus, the burden is on Plaintiffs to demonstrate a probability of prevailing on the merits.

## VI. PLAINTIFFS CAN'T MEET THEIR BURDEN TO ESTABLISH A PROBABILITY OF SUCCESS ON THE MERITS FOR THEIR DEFAMATION-BASED CLAIMS

Under the single publication rule, Plaintiffs' defamation-based claims all merge into Plaintiffs' claim for defamation. Plaintiffs' claims for defamation cannot succeed because the comments on which they are based are substantially—if not entirely—true and/or are non-actionable opinion. In addition, defamation has a one-year statute of limitations, and it is evident from the face of the TAC that all of the allegedly defamatory statements were made more than a year before the TAC was filed, and more than a year before Plaintiffs even sought leave to file the TAC in 2019. For these reasons, Plaintiffs are unable to establish a probability of success on the merits of their claims.

**A.      The Single Publication Rule Limits Plaintiffs GoFundMe Allegations to a Claim For Defamation**

Each of Plaintiffs' defamation-based claims is premised on the same conduct—the purported publication of allegedly defamatory statements on the GoFundMe website.  Accordingly, the single publication rule limits Plaintiffs to a claim for defamation.

The single publication rule provides that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy *or any other tort* founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book . . . ."  Code of Civ. Proc. § 3425.3 (emphasis added); *see Hebrew Academy of San Francisco v. Goldman* (2007) 42 Cal.4th 883, 890  ("Under the 'single-publication rule,' for any single edition of a newspaper or book there is but a single potential action for a defamatory statement contained in the newspaper or book, no matter how many copies of the newspaper or book were distributed.") (quoting *Shively v. Bozanich*, 31 Cal.4th 1230, 1245 (2003)).  The rule applies to statements published on websites.  *Traditional Cat Ass'n, Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 404 (*Traditional Cat*); *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.* (S.D.Cal. 2007) 2007 WL 935703 at 7 [any argument that the single publication rule does not apply to statements made on the Internet "is foreclosed by *Traditional Cat*"].)

**B.      Plaintiffs' Claims For Defamation Fail Because The Allegedly Defamatory Comments Are Substantially True And/Or Are Nonactionable Opinion**

There is no probability that Plaintiffs will succeed on their defamation-based claims because the allegedly defamatory statements are substantially true and/or nonactionable opinion.  "Defamation consists of, among other things, a false and unprivileged publication, which has a tendency to injure a party in its occupation."  (*Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 695–96, citations omitted.)  Statements of opinion are protected and are non-actionable.  (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112.)  When determining whether a statement is based on fact or opinion, the court applies "a totality of the circumstances test" pursuant to which "both the language of the statement itself and the context in which it is made" is considered.  (*Summit Bank v. Rogers*, 206 Cal.App.4th at 696.)  Further, "where potentially

14

defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." (*Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 601.) "To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011.)

As the Court explains in *Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1338, "[d]efamation actions cannot be based on snippets taken out of context." Yet, this is precisely what Plaintiffs' attempt to do in their TAC. Plaintiffs cherry pick statements from postings in 2017 and early 2018—which were undisputedly true when published—and argue that these statements are no longer true. As Plaintiffs' are no doubt aware, a statement that is true when published is no less true—and no less historically accurate, for that matter—simply because new events may have transpired.

Thus, to the extent the allegedly defamatory comments are statements of fact rather than opinion, they are substantially true, and therefore will not support a claim for defamation. Truth is "an absolute defense to any libel action." (*Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 581.) To establish this defense, the defendant "need not prove the literal truth of all the allegedly libelous accusations, so long as the imputation is substantially true so as to justify the 'gist' or 'sting' of the remark." (*Id.* at 581-82; *see also Gantry Const. Co. v. American Pipe & Const. Co.* (1975) 49 Cal.App.3d 186, 194 ["The concept that it is the gist or sting of the alleged defamatory statements that must be false rather than the specific details of the charge is deeply rooted in our common law."]; *Masson v. New Yorker Magazine* (1991) 501 U.S. 496, 516-17 ["As in other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if she cannot justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details."].)

Here, not only is the gist of the postings substantially true, each and every detail is indisputably accurate.  Plaintiffs' TAC claims the postings on the GoFundMe page are false because 1) Proper Media is "no longer" withholding any of Snopes' advertising revenue, 2) Proper Media is "no longer" holding the Snopes.com site hostage, and 3) Plaintiff Chris Richmond has *subsequently* become a member of Snopes' board.  However, Plaintiffs allege these statements were posted around July 2017, when Proper Media <u>was</u> withholding hundreds of thousands of dollars of Snopes' advertising revenues, Proper Media <u>was</u> holding the Snopes.com website hostage, and Plaintiff Chris Richmond <u>was not</u> a director of Snopes.  The alleged postings are undisputed statements of facts on and around July 2017.  Although not at all required, the website postings are even <u>dated</u> to avoid confusion.  Plaintiffs know this full well, but are apparently willing to consume substantial court resources with frivolous claims, so long as it provides them a strategic advantage in this litigation.

Indeed, in their snippet from the March 2018 posting—the only alleged posting that arguably is not time-barred—Plaintiffs once again challenge a statement that refers to the July 2017 posting but deliberately omit the updates that follow in the same posting.  For instance, the March 2018 states—in bold font—that "**[o]n 18 October 2017,** we successfully migrated Snopes.com to a new hosting provider and regained control of our advertising revenue stream."  Thus, the March 2018 posting provides the very update about which Plaintiffs' complain in their TAC, even though it is clear that such an update is not even required.

There is no legal requirement to hide the above truthful statements simply because new events later transpire, and for good reason.  These postings provide true, undisputed facts when the posting was made in July 2017.  Indeed, although not required by law, the postings are even dated so as to prevent the confusion Plaintiffs now attempt to sow.  The history of this case is of import to the parties, the public, and this Court, and that history is accurately reflected in the protected fundraising campaign postings.  As shown by this very motion, Plaintiffs continue to mislead this Court with misinformation, which Snopes must correct time and time again.  Because all of the allegedly defamatory statements are substantially true or non-actionable opinion, Plaintiffs' defamation claims therefore will not succeed.

C. **The Allegedly Defamatory Statements are Barred By The Statute Of Limitations**

The statute of limitations for defamation is one year. (Code of Civ. Proc. § 340(c).) The statute begins to run when the allegedly defamatory statements are first "published" to the public. (*Hebrew Academy of San Francisco*, 42 Cal. 4th at 893 ["Under the single-publication rule, with respect to the statute of limitations for defamation, the publication of material contained in a newspaper or book generally occurs on the first general distribution of the publication to the public."], citation and internal quotation marks omitted.)

The TAC concedes four of the five purportedly "false" statements were published around July 2017 and were not "materially updated or otherwise changed." (TAC, ¶297(a)-(d).) Plaintiffs' did not even propose amending and filing a third amended complaint to add these baseless allegations and defamation-based claims until 2019—long after the statute of limitations had run. The March 2018 posting merely refers to—and actually provides and updates for—the statements at issue in the July 2017 posting. It is therefore not probable that Plaintiffs' defamation-based claims will succeed.

VII. **PLAINTIFFS CAN'T MEET THEIR BURDEN TO ESTABLISH A PROBABILITY OF SUCCESS ON THE MERITS FOR THEIR LITIGATION FUNDING CLAIMS**

Plaintiffs' convoluted claims regarding Snopes' decision to advance its employee's attorney fees are flawed and do not demonstrate any wrongdoing. As noted above and on the face of the TAC, the decision to advance fees was made pursuant to and in accordance with Section 317(f), *not 310*. Section 317(f) provides that "expenses incurred in defending *any proceeding may be advanced* by the corporation prior to the final disposition of the proceeding *upon receipt of an undertaking* by or on behalf of the agent to repay the amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section." (Empahsis added.)

Section 317(f) is notably different from, and more streamlined than, Section 317(e) (regarding indemnification) and wholly separate from Section 310. As explained at length by Marsh's California Corporation Law, the simplified process for approving advances pursuant to Section 317(f) is by design:

17

Such advancement of expenses [pursuant to Section 317(f)] may be made by the board and is not subject to the requirements of subdivision (e) of the section relating to the authority required to approve the final indemnification. **In other words, even though the board may not finally vote to authorize indemnification because there is not a quorum consisting of directors who are not parties to the proceeding**, and therefore any ultimate question of indemnification will have to be determined by the shareholders, independent counsel or the court, **the board may nevertheless approve the advancement of expenses upon receiving the undertaking required by this subdivision**. It will then be incumbent upon the defendant whose expenses are thus paid by the corporation to see that indemnification is not disapproved in accordance with the section or the defendant will be liable in an action by the corporation to reimburse it for all of his or her expenses thus advanced.

The theory of this subdivision [Section 317(f)] is that it is very easy to bring actions against corporations and their directors, frivolous or otherwise, and very easy to name all of the directors as defendants, whether or not the plaintiff at the time of the institution of the action has any basis for alleging that all of the directors were implicated. If the requirements for authorization of final indemnification of final were applied to the advancement of expenses, the board might be disqualified from voting on such advancement and, without this provision, it might be necessary to call a special shareholders meeting to make that authorization. However, expenses must be incurred immediately, And in some cases in very large amounts, which the individual defendants as a practical matter simply cannot afford.

(Marsh, et al., Marsh's Cal. Corp. Law (2018 Supp.) § 11.22(I) ["Advancement of Expenses"].)

The propriety of Snopes' advancement of fees with respect to Mr. Mikkelson is underscored by the fact that the Court has awarded judgment in favor of Mr. Mikkelson as to, among other things, Proper Media's claims against him. The entry of judgment in his favor requires indemnification by the company in accordance with Corporations Code section 317(d).[2]

Snopes' fee advancement complies with Section 317(f). Convoluted arguments about other inapplicable statutes cannot invalidate the Board's lawful exercise of discretion.

**A.**     <u>Plaintiffs Fail to Plead Facts Establishing the Requisite Board Demand or Futility for Their Litigation Funding Claims</u>

Another reason Plaintiffs' cannot show a probability of prevailing is that the litigation funding claims are derivative in nature. As a precondition for bringing any derivative suit on a corporation's behalf, a plaintiff <u>must</u> establish with particularly either that he made a demand on

---

[2] Corporations Code § 317(d): "To the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith."

18

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT
DOCS 125263-000001/3669546.3
Page 438 of 732

the board of directors to act on the corporation's behalf or that such a demand would have been futile. (Corp. Code § 800(b).) Failure to comply with this demand requirement deprives the plaintiff of standing to pursue his claims. (*Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1618.)

A demand on the board is futile only if a majority of the directors are implicated in the underlying alleged wrongful conduct. Under those circumstances, a demand would in effect be a request to the directors to sue themselves, and it is assumed under the law that such a request would be futile. (*See Reed v. Norman* (1957) 152 Cal.App.2d 892, 898.) Put another way, a demand on the board is excused as futile only if a majority of the directors are either interested or not independent (i.e., under the alleged wrongdoer's control). (*Smith v. Dorn* (1892) 96 Cal. 73.)

It is undisputed under the allegations of the TAC that neither Westbrook nor Richmond are alleged to have engaged in any of the conduct forming the basis of the derivative causes of action. (See TAC at ¶¶ 201-210, 226-239, 302-310, 336-349.) Preliminarily, Plaintiffs concede Westbrook is disinterested and independent. (*See* TAC at ¶ 240(f).) Plaintiffs nevertheless go on to allege Richmond is "not disinterested and independent" simply because "he is both a Plaintiff and Defendant in this lawsuit[.]" (See, e.g., TAC at ¶ 240(e).) This conclusory statement is unsupported by the appropriate assessment for determining demand futility. Richmond is not alleged to have engaged in the purported wrongdoing, nor is he alleged to be under Mikkelson's control. As Richmond and Westbrook constitute a majority of disinterested directors at Snopes, Plaintiffs cannot plead futility as a matter of law, and thus Plaintiffs cannot show a probability of prevailing on their litigation funding claims, which are derivative in nature.

## B. The Litigation Funding Claims also Fail under the Business Judgment Rule

Even if Plaintiffs were capable of asserting derivative claims, Plaintiffs still cannot show a probability of prevailing on their litigation funding claims because they cannot overcome the business judgment rule. The business judgment rule is "a judicial policy of deference to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions." (*Lee v. Interinsurance Exchange* (1996) 50 Cal.App.4th 694, 711 [internal quotes, citations omitted].) "The rule is based on the premise that those to whom the management of a business organization has been entrusted, and not the courts, are best able to judge whether a

particular act or transaction is helpful to the conduct of the organization's affairs or expedient for the attainment of its purposes." (*Ibid*.)  Here, each decision to advance fees for an individual Defendant was made by unanimous consent of the Snopes Board, including non-party independent director Mr. Westbrook.  Accordingly, the three challenged decisions (i.e., the separate decisions to advance fees and costs to each of the individual defendants) are afforded deference under the business judgment rule, which is yet another reason Plaintiffs cannot show a probability of prevailing on their litigation funding claims.

## VIII.  ADDITIONAL ALLEGATIONS IN THE CROSS-COMPLAINT MUST BE STRICKEN

"Allegations of protected activity supporting stricken claims are to be eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Sheley*, 9 Cal.App.5th at 1175, citing *Baral*, Cal.5th at 396.)  Thus, the Court must also strike "all other allegations of protected activity which support the claims struck" from the causes of action.  (*Ibid.*)

## IX.  CONCLUSION

For all of the foregoing reasons, Snopes' special motion to strike pursuant to California Code of Civil Procedure 425.16 should be granted.

DATED: June 5, 2019

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: _____

Paul A. Tyrell
Ryan C. Caplan
P. Jacob Kozaczuk
Attorneys for Defendant/Cross-Complainant, SNOPES MEDIA GROUP, INC., formerly known and having appeared as Bardav Inc

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**06/05/2019** at 11:54:00 PM

Clerk of the Superior Court
By Treva Cutts,Deputy Clerk

1  RICHARD P. SYBERT (SBN: 080731)
   rsybert@gordonrees.com
2  KIMBERLY D. HOWATT (SBN: 196921)
   khowatt@gordonrees.com
3  HOLLY L. K. HEFFNER (SBN: 245384)
   hheffner@gordonrees.com
4  GORDON & REES LLP
   101 W. Broadway Suite 2000
5  San Diego, CA 92101
   Telephone: (619) 230-7461
6  Facsimile: (619) 696-7124

7  Attorneys for Defendant, Cross-complainant, and Cross-defendant
   DAVID MIKKELSON

8

9                    SUPERIOR COURT OF CALIFORNIA

10                       COUNTY OF SAN DIEGO

11  PROPER MEDIA, LLC, a California limited      ) Case No. 37-2017-00016311-CU-BC-CTL
    liability company; CHRISTOPHER              ) (consolidated with Case No. 37-2018-
12  RICHMOND, an individual and DREW            ) 00004335-CU-MC-CTL)
    SCHOENTRUP, an individual,                  )
13                                              ) **DAVID MIKKELSON'S NOTICE OF**
                                                ) **SPECIAL MOTION AND SPECIAL**
    Plaintiffs                                  ) **MOTION TO STRIKE PLAINTIFFS'**
14                                              ) **THIRD AMENDED COMPLAINT [Civ.**
    v.                                          ) **Proc. Code § 425.16]**
15                                              )
    BARDAV INC, a California corporation;       )
16  DAVID MIKKELSON, an individual;             ) Date:     August 23, 2019
    VINCENT GREEN, an individual; RYAN          ) Time:     10:30 a.m.
17  MILLER, an individual; and TYLER DUNN,      ) Dept.:    C-68
    an individual,                              ) Judge:    Hon. Richard S. Whitney
18                                              )
    Defendants.                                 ) Complaint Filed:  May 4, 2017
19                                              ) Trial Date:       October 4, 2019
                                                )
20  AND RELATED CROSS-ACTIONS.                  ) *IMAGED FILE*
                                                )
21                                              )
                                                )
22                                              )
                                                )
23                                              )
                                                )
24                                              )
                                                )
25                                              )
                                                )
26                                              )

27

28

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on August 23, 2019 at 10:30 a.m., or as soon thereafter as the matter may be heard, in Department C-68 of the above-entitled court, located at 330 West Broadway, California 92101, the Honorable Richard S. Whitney presiding, Defendant/Cross-Complainant DAVID MIKKELSON ("Mr. Mikkelson") will and hereby does move this Court to strike portions of the Third Amended Complaint ("TAC") of Plaintiffs/Cross-Defendants PROPER MEDIA, LLC, DREW SCHOENTRUP, and CHRISTOPHER RICHMOND (collectively, "Plaintiffs"), pursuant to section 425.16 of the Code of Civil Procedure, and award his attorneys' fees incurred in connection with the instant motion.

Specifically, Mr. Mikkelson moves this Court to strike the following from Plaintiffs' TAC on grounds that each allegation and/or cause of action arises from activity in furtherance of Mr. Mikkelson's right of petition and/or right of free speech in connection with a public issue and/or an issue of public interest and, as such, is protected by the United States and California Constitutions:

1. Paragraph 14, Lines 1 to 8

2. Paragraph 15

3. Paragraph 16

4. Page 23, Lines 7 and 8 (between Paragraphs 118 and 119)

5. Paragraph 119

6. Paragraphs 122 through 132

7. Paragraph 133, Lines 3 and 4

8. Paragraph 134, Line 6

9. Page 27, Lines 12-13 (between Paragraphs 134 and 135)

10. Paragraphs 143 through 162

11. Page 33, Lines 4 and 5 (between Paragraphs 162 and 163)

12. Paragraph 206

13. Paragraph 220, Lines 4 through 6 and Lines 16 through 20

14. Paragraph 234, Lines 2 through 4 and Lines 14 through 18

**DAVID MIKKELSON'S NOTICE OF SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

15. Paragraph 254, Lines 25 through 1 (i.e., Page 45:25-46:1)

16. Fourteenth Claim for Relief, Defamation, Paragraphs 296 through 301

17. Fifteenth Claim for Relief, Violation of Business and Professions Code Section 17200, *et seq.*, Paragraphs 302 through 325

18. Sixteenth Claim for Relief, Violation of Business and Professions Code Section 17200, *et seq.*, Paragraphs 326 through 335

19. Seventeenth Claim for Relief, Rescission, Paragraphs 336 through 350

20. Eighteenth Claim for Relief, Declaratory Relief, Paragraphs 351 through 360

21. Prayer for Relief, Nos. 4 through 9

This motion is based on this Notice of Special Motion and Special Motion to Strike, the accompanying Memorandum of Points and Authorities, the Declaration of Holly L.K. Heffner and exhibit thereto, the pleadings and papers on file in the above-entitled action, and upon such further evidence and argument as may be presented to the Court at the hearing on this matter.

Dated: June 5, 2019                    GORDON REES SCULLY MANSUKHANI, LLP

                                       By: _____
                                           Kimberly D. Howatt
                                           Holly L.K. Heffner
                                           Attorneys for DAVID MIKKELSON

**DAVID MIKKELSON'S NOTICE OF SPECIAL MOTION TO STRIKE PLAINTIFFS'
THIRD AMENDED COMPLAINT**

RICHARD P. SYBERT (SBN: 080731)
rsybert@gordonrees.com
KIMBERLY D. HOWATT (SBN: 196921)
khowatt@gordonrees.com
HOLLY L. K. HEFFNER (SBN: 245384)
hheffner@gordonrees.com
GORDON & REES LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7461
Facsimile: (619) 696-7124

Attorneys for Defendant, Cross-complainant, and Cross-defendant
DAVID MIKKELSON

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

06/05/2019 at 11:54:00 PM

Clerk of the Superior Court
By Treva Cutts, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company; CHRISTOPHER RICHMOND, an individual and DREW SCHOENTRUP, an individual, <br><br> Plaintiffs <br><br> v. <br><br> BARDAV INC, a California corporation; DAVID MIKKELSON, an individual; VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual, <br><br> Defendants. <br><br> AND RELATED CROSS-ACTIONS. | Case No. 37-2017-00016311-CU-BC-CTL (consolidated with Case No. 37-2018-00004335-CU-MC-CTL) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT/CROSS-COMPLAINANT DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT [Civ. Proc. Code § 425.16]** <br><br> Date: August 23, 2019 <br> Time: 10:30 a.m. <br> Dept.: C-68 <br> Judge: Hon. Richard S. Whitney <br><br> Complaint Filed: May 4, 2017 <br> Trial Date: October 4, 2019 <br><br> ***IMAGED FILE*** |

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1    Defendant/Cross-Complainant DAVID MIKKELSON ("Mr. Mikkelson"), respectfully

2    submits this Memorandum of Points and Authorities in support of his Special Motion to Strike the

3    Third Amended Complaint ("TAC") filed by Plaintiffs PROPER MEDIA, LLC ("Proper Media"),

4    DREW SCHOENTRUP ("Mr. Schoentrup"), and CHRISTOPHER RICHMOND ("Mr.

5    Richmond") (collectively, "Plaintiffs").

6    **I.    INTRODUCTION**

7    Plaintiffs originally filed this lawsuit in an effort to extort Co-Defendant/Co-Cross-

8    Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as

9    BARDAV INC. ("Snopes") into reviving a vendor contract (the "GSA") with Proper Media – a

10   company founded by Messrs. Schoentrup and Richmond – which contract was terminated

11   (pursuant to its express terms) upon the decision of Mr. Mikkelson, Snopes' president and CEO.

12   When Snopes terminated the contract, Proper Media and Messrs. Schoentrup and

13   Richmond unlawfully held Snopes' website hostage and seized control of *all* of Snopes advertising

14   revenues.  Fortunately, this honorable Court entered a TRO and, thereafter, issued a preliminary

15   injunction that released hundreds of thousands of dollars of stolen advertising revenue from

16   Plaintiffs' clutches and led to Snopes regaining control of its website.  Yet, having failed at their

17   extortion efforts, Plaintiffs have since sought to manufacture a variety of claims against Snopes,

18   Mr. Mikkelson, and its officers/employees (formerly with Proper Media) – presumably to fund

19   their way out of their ill-conceived business decisions. After this Court appropriately streamlined

20   Plaintiffs' overreaching complaint by sustaining various parts of the demurrers of each Snopes and

21   Mr. Mikkelson (the latter without leave to amend) [ROA 101, 250, 264] – and even entered

22   Judgment against Proper Media's entire complaint as against Mr. Mikkelson [ROA 264, 265] –

23   Plaintiffs have now filed a fourth version of their complaint (the TAC) which more than doubles

24   the number of causes of action in their pleadings, asserts new claims by Proper Media despite the

25   termination of its case by judgment, and seeks to impose liability for acts in furtherance of free

26   speech and the right to petition.

27   Plaintiffs' newly-filed TAC, with eighteen causes of action, asserts meritless claims based

28   Snopes' and Mr. Mikkelson's litigation funding decisions and truthful public statements made in

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S
SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

connection with fundraising efforts. These litigation funding decisions and fundraising postings fall squarely within the ambit of activities protected under California's Anti-SLAPP law, which was passed to bring about the speedy termination of claims that, like the TAC, seek to punish defendants for exercising their Constitutional rights. Mr. Mikkelson therefore respectfully moves to strike the TAC pursuant to California Code of Civil Procedure § 425.16.

## II. PERTINENT FACTUAL BACKGROUND

### A. Plaintiffs Have Repeatedly Attempted to Block Snopes and Mr. Mikkelson's Ability to Litigate the Action by Driving up Litigation Costs and Denying Snopes Access to its Own Revenues

From August 2015 until early 2017, Proper Media provided certain Internet advertising services to Snopes pursuant to the GSA. (TAC ¶¶ 42, 104.) After Snopes notified Proper Media it was exercising its right to terminate the GSA, Plaintiffs unlawfully held Snopes' website hostage and refused to relinquish control of its website or its e-mail accounts. Worse, Plaintiffs also improperly withheld *all* advertising revenues from Snopes—effectively cutting off Snopes' primary source of income and inflicting severe financial distress on the company. (*Ibid*.) Plaintiffs also erroneously contended Proper Media was a beneficial owner of 50% of Snopes and that Mr. Schoentrup was a director of Snopes, despite never having been appointed to the position, in their unlawful efforts to exert control over Snopes and oust its founder, Defendant/Cross-Complainant Mr. Mikkelson.

The case against Plaintiffs' unlawful action is clear. Accordingly, Plaintiffs primary litigation strategy has been to drive up the cost of litigation and undermine the ability of Snopes and its employees to litigate this case. At the outset, Plaintiffs tried to exert pressure on Snopes by cutting off Snopes' primary source of revenue and improperly withholding funds. Snopes was forced to incur significant legal fees to obtain a TRO and a preliminary injunction against Plaintiffs to release funds and other property unlawfully withheld. (*See* ROA 45, 99, 123.) Even after obtaining an injunction against Plaintiffs, Snopes had to go back to Court to seek help enforcing the injunction, and this Court issued an order to show cause re contempt. (ROA 372.)

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.    **Plaintiffs Continue to Drive up Litigation Costs while Trying to Cut Off Legal Representation to Snopes and Mr. Mikkelson**

From the start and continuing throughout this litigation, Plaintiffs have tried time and time again to interfere with Snopes corporate governance, create deadlocks, and to deny rights to its directors and shareholders. Snopes has persevered, but at no small cost, and Plaintiffs' deleterious conduct will not stop. Earlier this year, despite being the very cause of Snopes' financial harm, Plaintiffs requested an injunction to block Snopes' ability to advance attorney fees on the unfounded grounds that Snopes' would suffer imminent financial harm and the advancement of fees was improper. The Court properly denied the request, although Snopes was forced to incur more fees opposing yet another frivolous motion. Plaintiffs' TAC now asserts the same claims challenging Snopes' litigation funding decisions; namely, Snopes' decision to advance attorney fees for its own employees—the very employees Plaintiffs are suing in this action. It is well settled that Snopes' decision to advance attorney fees for this litigation is an activity protected under California's anti-Strategic Lawsuit Against Public Participation statute (the "anti-SLAPP statute" or "Section 425.16"). Moreover, Snopes' decision to advance fees was properly authorized and expressly permitted under Corporations Code section 317(f). For these and the other reasons set forth below, Plaintiffs' litigation funding claims and allegations must be stricken from the TAC.

In parallel to its efforts to obtain relief from the Court, Snopes sought help from the public via a GoFundMe campaign. The GoFundMe campaign helped raise money for the Snopes' general operations, including its legal expenses, which became necessary after Plaintiffs stole Snopes' entire revenue stream, held its revenue-producing assets hostage, and caused Snopes to incur significant fees obtaining relief to address that harm. Per Plaintiffs' own allegations, the GoFundMe campaign has raised more than $850,000 to date from nearly 30,000 donors, demonstrating the public value of the Snopes.com website as a truth-seeking resource. (*See* TAC ¶ 331.) Now, in an effort to halt Snopes fundraising efforts and drive up litigation costs, Plaintiffs assert defamation-based claims against Snopes and Mr. Mikkelson based on truthful statements made on the GoFundMe page. Like Defendants' litigation funding decisions, it is clear that these claims are based on a protected activity and there is no probability Plaintiffs will prevail.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

1    Accordingly, the defamation-based claims and allegations must also be stricken from the TAC.

2    **III.    LEGAL STANDARD**

3          California's anti-SLAPP statute provides that "cause[s] of action against a person arising

4    from any act of that person in furtherance of the person's right of petition or free speech under the

5    United States or California Constitution in connection with a public issue shall be subject to a

6    special motion to strike, unless the court determines that the plaintiff has established that there is

7    a probability that the plaintiff will prevail on the claim." Civ. Proc. Code § 425.16(b)(l).  Acts in

8    furtherance of free speech include "(3) any written or oral statement or writing made in a place

9    open to the public or a public forum in connection with an issue of public interest, or (4) any other

10   conduct in furtherance of the exercise of the constitutional right of petition or the constitutional

11   right of free speech in connection with a public issue or an issue of public interest." *Id.*, at

12   subsection (e).

13         Anti-SLAPP protections "are to be construed broadly," and apply regardless of the cause

14   of action asserted by the plaintiff. *Beach v. Harco Nat'l Ins. Co.*, 110 Cal. App. 4th 82, 90 (2003)

15   (citing Civ. Proc. Code § 425.16(a)); *Equilon Enters. v. Consumer Cause, Inc.,* 29 Cal.4th 53, 60

16   (2002).  Anti-SLAPP motions are not limited attacks on entire claims, but may also "attack parts

17   of a count, including specific allegations amounting to a claim." *Newport Harbor Offices &*

18   *Marina, LLC v. Morris Cerullo World Evangelism*, 23 Cal.App.5th 28, 43 (2018) (citing *Baral v.*

19   *Schnitt* (2016) 1 Cal.5th 376, 382, 392-93).  When a court finds an anti-SLAPP motion meritorious,

20   it must grant the motion without leave to amend.  *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th

21   1068, 1073-74 (2001).   Except as to specific statutory causes of action not asserted here, a

22   prevailing defendant on a special motion to strike is entitled to recover attorneys' fees and costs.

23   Civ. Proc. Code § 425.16(c).

24         **A.    Burden-Shifting Under the Anti-SLAPP Statute**

25         In ruling on a special motion to strike, courts engage in a two-part test.  "First, the defendant

26   must establish that the challenged claim arises from activity protected by section 425.16."

27   *Newport Harbor*, 23 Cal.App.5th at 42.  "If the defendant makes the required showing, the burden

28

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S
SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT

shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a 'summary-judgment-like procedure.'" *Id.*

Showing a probability of prevailing is similar to a summary judgment in "reverse" because the plaintiff must produce prima facie <u>evidence</u> showing its ability to prove each element of its claim. *Direct Shopping Network, LLC v. James,* 206 Cal.App.4th 1551, 1558, n.4 (2012). To meet this burden, a plaintiff opposing an anti-SLAPP motion cannot rely on allegations in the complaint, but must set forth <u>evidence</u> that would be admissible at trial. (*Overstock.com, Inc. v. Gradient Analytics, Inc.,* 151 Cal.App.4th 688, 699 (2007). *Overstock.com, Inc. v. Gradient Analytics, Inc.,* 151 Cal.App.4th 688, 699 (2007). "[T]he plaintiff's evidence in support of its showing of a probability of prevailing must be sufficient to support a judgment in its favor if proved at trial." *Anderson v. Geist*, 236 Cal.App.4th 79, 85 (2015).

## IV.   CLAIMS BASED ON PROTECTED ACTIVITY IN THE TAC

As set forth more specifically in the Notice of Motion and Motion, Mr. Mikkelson brings this special motion to strike as to:

1)   Plaintiffs' Fourteenth count for Defamation, and Fifteenth and Sixteenth counts for Violation of California's Unfair Competition Law, Business and Professions Code § 17200 ("UCL") – and related allegations – which are based on <u>true</u> fundraising campaign postings published on the Internet.

2)   Plaintiffs' Seventeenth count for Rescission and Eighteenth count for Declaratory Relief – and related allegations – which are based on protected litigation funding decisions.

### A.   Postings on the GoFundMe Campaign are Protected Acts in Furtherance of Mr. Mikkelson's Free Speech

A cause of action "arises from" conduct that it is "based on." *Copenbarger v. Morris Cerullo World Evangelism,* 215 Cal.App.4th 1237, 1244 (2013). Accordingly, a court must determine what activities form the basis for each cause of action and then determine whether those activities are "protected activity," bringing the cause of action within the scope of the anti-SLAPP statute. *Finton Constr., Inc. v. Bidna & Keys,* 238 Cal.App.4th 200, 209 (2015); *Midland Pacific Bldg. Corp. v. King*, 157 Cal.App.4th 264, 272 (2007) ("the focus of the statute is not the form of

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

plaintiff's cause of action, but the defendant's activity that gives rise to the asserted liability"). Here, Plaintiffs' Fourteenth count for Defamation and Fifteenth and Sixteenth counts for Violation of the UCL (and related allegations, as identified in the Notice of Motion) against Mr. Mikkelson and Snopes are based upon *true* <u>fundraising campaign</u> postings published on the Internet between July 2017 and March 2018. (*See e.g.,* TAC ¶ 296(a)-(e) (referring to fundraising campaign webpages on gofundme.com and savesnopes.com, which links to gofundme.com); *see also* gofundme.com/how-it-works ("GoFundMe is the best place to fundraise, whether you are an individual, group, or organization.").)

Websites accessible to the public are "public forums" for purposes of the anti-SLAPP statute. *Wong v. Jing*, 189 Cal.App.4th 1354, 1366 (2010); *Chaker v. Mateo*, 209 Cal.App.4th 1138, 1146 (2012). Moreover, campaign postings are indisputably acts in furtherance of free speech rights subject to protection. Civ. Proc. Code § 425.16(e)(4) (protecting "conduct in furtherance of the exercise of the constitutional right of . . . free speech"); *see also Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980) (finding that charitable appeals for funds are within the protection of the First Amendment). The postings are further protected as "written statement[s] made in . . . a public forum in connection with an issue of public interest." Civ. Proc. Code § 425.16(e)(3). Rather than belabor the obvious, Mr. Mikkelson need only point to Plaintiffs' allegations which repeatedly concede that the GoFundMe fundraising campaign "has raised over $850,000 from nearly 30,000 donors." (*See* TAC ¶¶ 137, 314, 321, 331.)[1] This is a matter of public interest.

Indeed, Plaintiffs admit that Snopes "is one of the 1,000 most popular websites in the United States." (TAC ¶ 41.) Further, "in the aftermath of the reported Russian intelligence operation to influence the 2016 election with so- called 'fake news' spread through Facebook and other social media websites, Facebook entered into an agreement with Snopes and other media

---

[1] Even more, the fundraising campaign postings regarding Plaintiffs' fraudulent and deceptive business practices are yet another matter of public interest. *Makaeff v. Trump University, LLC*, 715 F.3d 254, 262 (9th Cir. 2013) ("Under California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers.").

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

organizations to integrate fact-checking services into Facebook." (*Ibid.*)

Accordingly, the alleged conduct falls squarely within § 425.16 subsections (e)(3) and (e)(4) such that the burden shifts to Plaintiffs to demonstrate a probability of prevailing on the merits. As discussed in Section V. *infra*, Plaintiffs cannot meet their burden.

## B. Mr. Mikkelson's Litigation Funding Activities Are Likewise Protected

It is well-settled that litigation funding decisions constitute protected activity. *Tuszynska v. Cunningham*, 199 Cal.App.4th 257, 271 (2011) (overruled on other grounds); *Sheley v. Harrop*, 9 Cal. App. 5th 1147 (2017). "Moreover, as our California Supreme Court has explained, because a cause of action 'arising from' *any act* … in furtherance of the … right of petition is subject to the anti-SLAPP motion, [a] cause of action 'arising from' [a] defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' 'Any act' includes communicative conduct such as the filing, ***funding***, and prosecution of a civil action.'" *Takhar v. People ex Rel. Feather River Air Quality Management Dist.*, 27 Cal.App.5th 15 (2018) (citing *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (2006); emphasis added and internal citations and quotation marks omitted).

Plaintiffs' Seventeenth and Eighteenth counts challenge the authorization of Snopes' Board of Directors to advance attorneys' fees for its employees—employees Plaintiffs have sued in this action. (TAC ¶ 130.) This "act" falls squarely within the parameters of Mr. Mikkelson and Snopes' litigation funding decisions and is also protected as an act in furtherance of Mr. Mikkelson's prosecution of this civil action. *See Rusheen*, 37 Cal.4th at 1056 ("'Any act' includes communicative conduct such as the … prosecution of a civil action").

Indeed, Plaintiffs' overt incentive for bringing these claims illustrate why courts have so broadly protected litigation funding decisions. *See Wilcox*, 27 Cal.App.4th at 826 ("If the defendants financing of a lawsuit is constitutionally protected it follows that speech exhorting others to do the same is also protected."). As the Court in *Wilcox* explained:

> In *Pacific Gas & Electric Co.* v. *Bear Stearns & Co.,* [50 Cal.3d 1118 (1990)], our Supreme Court made clear the tort defense based on the right to petition applies not only to litigants but to those who **induce, encourage and support a lawsuit involving a "colorable claim."** (50 Cal.3d at p. 1136.)
> In *Pacific Gas & Electric,* plaintiff brought an action against defendant, an

investment brokerage firm, for various business torts alleging the firm had encouraged and financed a local water agency's suit for declaratory relief as to whether the agency could terminate its contract with plaintiff. **In holding the petition privilege applicable to a defendant who finances litigation the court stated: "It is important to remember what PG&E is trying to achieve through this lawsuit. It seeks to enjoin Bear Stearns from further participation in the lawsuit in order to avert what it considers to be the irreparable harm of an adverse judgment. It is essentially seeking to abort the lawsuit by starving the litigant of funds.** In *Sierra Club* v. *Butz*, [*supra*], too, there were, doubtless, persons who induced the representatives of the club to bring the action, and who provided financial assistance in support of the lawsuit, but were not named parties. Yet it would defeat the purpose of assuring free access to the courts, and cause a flood of oppressive derivative litigation, to assess tort liability for their activities.

*Ibid.* (emphasis added).

As discussed above, Plaintiffs' chief strategy throughout this litigation has been to starve Defendants of funds to litigate their claims against Plaintiffs. When this Court intervened, Plaintiffs began browbeating Defendants with frivolous claims, motions, and discovery to drive up the cost of litigation. Then, after Plaintiffs' scorched-earth tactics failed—albeit at great cost to Snopes and Mr. Mikkelson—Plaintiffs sought leave to file these SLAPP claims to halt Snopes' fundraising efforts and starve Snopes' employees of funds to litigate the case. In furtherance of this scheme, Plaintiffs contemporaneously requested a continuance of the already-continued trial date, which was previously scheduled for April 2019. Plaintiffs' TAC exemplifies *why* Snopes and Mr. Mikkelson's litigation funding decisions are broadly protected under the anti-SLAPP statute.

The burden is properly shifted to Plaintiffs to demonstrate a probability of prevailing on the merits which, as discussed in Section VI *infra*, they cannot do.

## V.    **PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF SUCCESS ON THEIR DEFAMATION-BASED CLAIMS (Counts 14, 15, and 16)**

Under the single publication rule, Plaintiffs' defamation-based claims all merge into Plaintiffs' claim for defamation; and yet, Plaintiffs' claims for defamation cannot succeed because the statements on which they are based are substantially—if not entirely—true and/or are non-actionable opinion. In addition, defamation has a one-year statute of limitations, and it is evident from the face of the TAC that all of the allegedly defamatory statements were made more than a year before the TAC was filed, and more than a year before Plaintiffs sought leave to file the TAC

in 2019. For these reasons, and more discussed below, Plaintiffs are unable to establish a probability of success on the merits of their Fourteenth, Fifteenth, and Sixteenth counts.

### A. The Single Publication Rule Limits Plaintiffs' GoFundMe Allegations to a Claim for Defamation

Plaintiffs' Fourteenth, Fifteenth, and Sixteenth counts are premised on the same conduct—the publication of statements on the GoFundMe website. Accordingly, the single publication rule limits Plaintiffs to a claim for defamation.

The single publication rule provides that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy *or any other tort* founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book . . . ." Civ. Proc. Code § 3425.3 (emphasis added); *see Hebrew Academy of San Francisco v. Goldman*, 42 Cal.4th 883, 890 (2007) ("Under the 'single-publication rule,' for any single edition of a newspaper or book there is but a single potential action for a defamatory statement contained in the newspaper or book, no matter how many copies of the newspaper or book were distributed.") (quoting *Shively v. Bozanich*, 31 Cal.4th 1230, 1245 (2003)). The rule applies to statements published on websites. *Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal.App.4th 392, 404 (2004); *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 2007 WL 935703, *7 (S.D. Cal. 2007) (any argument that the single publication rule does not apply to statements made on the Internet 'is foreclosed by *Traditional Cat*').

### B. Plaintiffs' Claims for Defamation Fail Because the Allegedly Defamatory Comments Are Substantially True And/Or Are Nonactionable Opinion

There is no probability that Plaintiffs will succeed on their defamation-based claims because the statements are substantially true and/or nonactionable opinion. "Defamation consists of, among other things, a false and unprivileged publication, which has a tendency to injure a party in its occupation." *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 695–96 (2012) (citations omitted). Statements of opinion are protected and are non-actionable. *McGarry v. University of San Diego*, 154 Cal.App.4th 97, 112 (2007). When determining whether a statement is based on fact or opinion, the court applies "a totality of the circumstances test" pursuant to which "both the

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

language of the statement itself and the context in which it is made" is considered. *Summit Bank*, 206 Cal.App.4th at 696. Further, "where potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory v. McDonnell Douglas Corp*., 17 Cal.3d 596, 601 (1976). "To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context." *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1011 (2001).

"Defamation actions <u>cannot</u> be based on snippets taken out of context." *Balzaga v. Fox News Network*, *LLC*, 173 Cal.App.4th 1325, 1338 (2009) (emphasis added). Yet, this is precisely what Plaintiffs' attempt to do. Plaintiffs cherry pick statements from postings in 2017 and early 2018—which were true when published—and argue that these statements are no longer true. As Plaintiffs' are no doubt aware, a statement that is true when published is no less true—and no less historically accurate, for that matter—simply because new events may have transpired.

Thus, to the extent the allegedly defamatory comments are statements of fact rather than opinion, they are substantially true, and therefore will not support a claim for defamation. Truth is "an absolute defense to any libel action." *Campanelli v. Regents of University of California*, 44 Cal.App.4th 572, 581 (1996). To establish this defense, the defendant "need not prove the literal truth of all the allegedly libelous accusations, so long as the imputation is substantially true so as to justify the 'gist' or 'sting' of the remark." *Id.* at 581-82; *see also Gantry Const. Co. v. American Pipe & Const. Co*., 49 Cal.App.3d 186, 194 (1975) ("The concept that it is the gist or sting of the alleged defamatory statements that must be false rather than the specific details of the charge is deeply rooted in our common law."); *Masson v. New Yorker Magazine*, 501 U.S. 496, 516-17 (1991) ("As in other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if she cannot justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details.").

MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S
SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT

Here, not only is the gist of the subject postings substantially true, each and every detail is indisputably accurate. Plaintiffs' TAC claims the postings on the GoFundMe page are false because 1) Proper Media is "no longer" withholding any of Snopes' advertising revenue, 2) Proper Media is "no longer" holding the Snopes.com site hostage, and 3) Plaintiff Chris Richmond has *subsequently* become a member of Snopes' board. However, Plaintiffs allege these statements were posted around July 2017, when Proper Media <u>was</u> withholding hundreds of thousands of dollars of Snopes' advertising revenues, Proper Media <u>was</u> holding the Snopes.com website hostage, and Mr. Richmond <u>was not</u> a director of Snopes. (Heffner Decl.[2] ¶ 3, Exh. A (Court's August 22, 2017 Minute Order Granting Snopes' [formerly Bardav Inc.] Motion for Preliminary Injunction finding that "Proper Media has acknowledged that the advertisement revenue is Snope's only source of income, which it has cut off … [t]herefore, the Court grants the preliminary injunction as to the advertising revenue and themes, templates, and content… Proper is ordered to provide [Snopes with the] functional 'final theme and templates to be used on the live version of the Website.'"); *see also* TAC ¶ 15 ("Snopes Media Group's Board of Director's (which at the time consisted only of Mikkelson and Brad Westbrook)…").) Thus, the alleged postings <u>*are*</u> statements of fact on or around July 2017, and furthermore the website postings are dated so there can simply be no plausible confusion. Plaintiffs know this full well, but are apparently willing to consume substantial court and litigant resources with frivolous claims so long as it potentially provides them with a strategic advantage in this litigation.

Indeed, in their snippet from the March 2018 posting, Plaintiffs once again challenge a statement that refers to the July 2017 posting but deliberately omit the updates that follow in the same posting. For instance, the March 2018 states—in bold font—that "**[o]n 18 October 2017, we successfully migrated Snopes.com to a new hosting provider and regained control of our advertising revenue stream.**" Thus, the March 2018 posting provides the very update that Plaintiffs erroneously contend in their TAC to be missing, even though no such update is necessary.

California law does <u>not</u> require that authors de-publish truthful statements if/when new events transpire that render them no longer true, and for good reason. These postings provide a

[2] "Heffner Decl." refers to the Declaration of Holly L.K. Heffner filed concurrently herewith.

historical account of what was true on the date of publication. Indeed, although not required by law, the postings are even dated so as to prevent the confusion Plaintiffs now attempt to sow. The history of this case is of import to the parties, the public, and this Court, and that history is accurately reflected in the protected fundraising campaign postings. As shown by this motion, Plaintiffs continue to mislead this Court (and the public) with misinformation, which Snopes must correct time and time again. Because <u>all</u> of the subject statements are substantially true or non-actionable opinion, Plaintiffs' defamation and related claims will fail as a matter of law.

## C.   The Allegedly Defamatory Statements are Tim-Barred

The statute of limitations for defamation is one year. Civ. Proc. Code § 340(c). The statute begins to run when the allegedly defamatory statements are first "published" to the public. *Hebrew Academy of San Francisco*, 42 Cal. 4th at 893 ("Under the single-publication rule, with respect to the statute of limitations for defamation, the publication of material contained in a newspaper or book generally occurs on the first general distribution of the publication to the public."; citation and internal quotation marks omitted).

The TAC concedes four of the five purportedly "false" statements were published around July 2017 and were not "materially updated or otherwise changed." (TAC ¶ 297(a)-(d).) Plaintiffs' did not even propose amending and filing a third amended complaint to add these baseless allegations and defamation-based claims until 2019—long after the statute of limitations had run. The March 2018 posting merely refers to—and actually provides updates for—the statements at issue in the July 2017 posting. It is therefore not probable that Plaintiffs' defamation-based claims will succeed.

## VI.   PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF SUCCESS ON THEIR LITIGATION FUNDING CLAIMS (Counts 17 and 18)

Plaintiffs' convoluted claims regarding Snopes' decision to advance its employees' attorney fees are flawed and fail to demonstrate any wrongdoing. As noted above and on the face of the TAC, the decision to advance fees was made pursuant to and in accordance with § 317(f), *not 310*. Section 317(f) provides that "expenses incurred in defending *any proceeding may be advanced* by the corporation prior to the final disposition of the proceeding *upon receipt of an*

MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S
SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*undertaking* by or on behalf of the agent to repay the amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section." (Emphasis added.)

Section 317(f) (regarding advances) is notably different from, and more streamlined than, § 317(e) (regarding indemnification) and wholly separate from Section 310. As explained by Marsh's California Corporation Law, the simplified process for approving advances pursuant to § 317(f) is by design:

> Such advancement of expenses [pursuant to Section 317(f)] may be made by the board and is not subject to the requirements of subdivision (e) of the section relating to the authority required to approve the final indemnification. **In other words, even though the board may not finally vote to authorize indemnification because there is not a quorum consisting of directors who are not parties to the proceeding**, and therefore any ultimate question of indemnification will have to be determined by the shareholders, independent counsel or the court, **the board may nevertheless approve the advancement of expenses upon receiving the undertaking required by this subdivision**. It will then be incumbent upon the defendant whose expenses are thus paid by the corporation to see that indemnification is not disapproved in accordance with the section or the defendant will be liable in an action by the corporation to reimburse it for all of his or her expenses thus advanced.

> The theory of this subdivision [Section 317(f)] is that it is very easy to bring actions against corporations and their directors, frivolous or otherwise, and very easy to name all of the directors as defendants, whether or not the plaintiff at the time of the institution of the action has any basis for alleging that all of the directors were implicated. If the requirements for authorization of final indemnification of final were applied to the advancement of expenses, the board might be disqualified from voting on such advancement and, without this provision, it might be necessary to call a special shareholders meeting to make that authorization. However, expenses must be incurred immediately, And in some cases in very large amounts, which the individual defendants as a practical matter simply cannot afford.

Marsh, et al., Marsh's Cal. Corp. Law (2018 Supp.) § 11.22(I) ("Advancement of Expenses").

The propriety of Snopes' advancement of fees with respect to Mr. Mikkelson is underscored by the fact that the Court has awarded judgment in favor of Mr. Mikkelson as to, among other things, Proper Media's claims against him. The entry of judgment in his favor requires indemnification by the company in accordance with Corporations Code section 317(d).[3]

---

[3] Corporations Code § 317(d): "To the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any

GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Snopes' fee advancement complies with Section 317(f). Convoluted arguments about other inapplicable statutes cannot invalidate the Board's lawful exercise of discretion.

### A. Plaintiffs Fail to Plead Facts Establishing the Requisite Board Demand or Futility for Their Litigation Funding Claims

Another reason Plaintiffs' cannot show a probability of prevailing is that the litigation funding claims are derivative in nature. As a precondition for bringing any derivative suit on a corporation's behalf, a plaintiff *must* establish with particularly either that he made a demand on the board of directors to act on the corporation's behalf or that such a demand would have been futile. Corp. Code § 800(b). Failure to comply with this demand requirement deprives the plaintiff of standing to pursue his claims. *Shields v. Singleton*, 15 Cal.App.4th 1611, 1618 (1993).

A demand on the board is futile only if a majority of the directors are implicated in the underlying alleged wrongful conduct. Under those circumstances, a demand would in effect be a request to the directors to sue themselves, and it is assumed under the law that such a request would be futile. *See Reed v. Norman*, 152 Cal.App.2d 892, 898 (1957). Put another way, a demand on the board is excused as futile only if a majority of the directors are either interested or not independent (i.e., under the alleged wrongdoer's control). *Smith v. Dorn*, 96 Cal. 73.

It is undisputed under the allegations of the TAC that neither Mr. Westbrook nor Mr. Richmond are alleged to have engaged in any of the conduct forming the basis of the derivative causes of action. (See TAC at ¶¶ 201-210, 226-239, 302-310, 336-349.) Preliminarily, Plaintiffs concede Mr. Westbrook is disinterested and independent. (*See* TAC at ¶ 240(f).) Plaintiffs nevertheless go on to allege Mr. Richmond is "not disinterested and independent" simply because "he is both a Plaintiff and Defendant in this lawsuit[.]" (*See*, e.g., TAC at ¶ 240(e).) This conclusory statement is unsupported by the appropriate assessment for determining demand futility. Mr. Richmond is not alleged to have engaged in the purported wrongdoing, nor is he alleged to be under Mikkelson's control. As Messrs. Richmond and Westbrook constitute a majority of disinterested directors at Snopes, Plaintiffs cannot plead futility as a matter of law, and

claim, issue, or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith."

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

thus Plaintiffs cannot show a probability of prevailing on their litigation funding claims, which are

derivative in nature.

**B.** **The Litigation Funding Claims Also Fail under the Business Judgment Rule**

Even if Plaintiffs were capable of asserting derivative claims, Plaintiffs still cannot show a

probability of prevailing on their litigation funding claims because they cannot overcome the

business judgment rule. The business judgment rule is "a judicial policy of deference to the

business judgment of corporate directors in the exercise of their broad discretion in making

corporate decisions." *Lee v. Interinsurance Exchange*, 50 Cal.App.4th 694, 711 (1996) (internal

quotes, citations omitted). "The rule is based on the premise that those to whom the management

of a business organization has been entrusted, and not the courts, are best able to judge whether a

particular act or transaction is helpful to the conduct of the organization's affairs or expedient for

the attainment of its purposes." *Ibid*. Here, each decision to advance fees for an individual

Defendant was made by unanimous consent of the Snopes Board, including non-party independent

director Mr. Westbrook. Accordingly, the three challenged decisions (i.e., the separate decisions

to advance fees and costs to each of the individual defendants) are afforded deference under the

business judgment rule, which is yet another reason Plaintiffs cannot show a probability of

prevailing on their litigation funding claims.

**VII.** **ADDITIONAL ALLEGATIONS MUST BE STRICKEN**

"Allegations of protected activity supporting stricken claims are to be eliminated from the

complaint, unless they also support a distinct claim on which the plaintiff has shown a probability

of prevailing." *Sheley*, 9 Cal.App.5th at 1175 (citing *Baral*, Cal.5th at 396). Thus, the Court must

also strike "all other allegations of protected activity which support the claims struck" from the

causes of action. *Ibid.* Such additional allegations properly stricken are enumerated in the Notice

of Motion and Motion.

**VIII.** **CONCLUSION**

For all of the foregoing reasons, Mr. Mikkelson's special motion to strike pursuant to

California Code of Civil Procedure 425.16 is properly be granted.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S
SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

Respectfully submitted,

Dated:  June 5, 2019                    GORDON REES SCULLY MANSUKHANI, LLP

By: _____
            Kimberly D. Howatt
            Holly L.K. Heffner
            Attorneys for DAVID MIKKELSON

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DAVID MIKKELSON'S
SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT**

1    DREW W. SCHOENTRUP, Cal. Bar No. 279830
4150 Mission Blvd., Suite 220
2    San Diego, CA 92109
Telephone: 509.995.5654
3    Email: drew@proper.io

4    Attorney for Plaintiffs/Cross-Defendants/Cross-Complainants
PROPER MEDIA, LLC, CHRISTOPHER RICHMOND, DREW
5    SCHOENTRUP, and PUBLIFE, LLC

6

7

8    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9    COUNTY OF SAN DIEGO, CENTRAL

10

| 11 | PROPER MEDIA, LLC, a California limited liability company; CHRISTOPHER RICHMOND, an individual; and DREW SCHOENTRUP, an individual, | Lead Case No. 37-2017-00016311-CU-BC-CTL |
|---|---|---|
| | | (*Consolidated with* 37-2018-00004335-CU-MC-CTL) |

Plaintiffs,

vs.

BARDAV INC., a California corporation; DAVID MIKKELSON, an individual; VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual,

Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF PROPER MEDIA, LLC'S OPPOSITION TO SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE**

Date:   August 9, 2019
Time:   10:30 a.m.

Dept.:   C-68
Judge:   The Hon. Richard S. Whitney

Complaint Filed: May 4, 2017
Trial Date: October 4, 2019

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFF PROPER MEDIA, LLC'S OPPOSITION TO SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE

# **TABLE OF CONTENTS**

I.      INTRODUCTION                                                                                    4

II.     BACKGROUND                                                                                      5

III.    ARGUMENT                                                                                        7

   A.   Snopes Fails to Connect The Required "Public Issue" or "Public Interest."                       7

   B.   There is Ample Evidence To Support a Judgment in Plaintiff's Favor.                            11

      1.   The Single Publication Rule Does Not Apply to Multiple Defamation Theories
           Included in a Single Complaint.                                                             12

      2.   The Statute of Limitations Continues to Reset With Each Substantive Update and
           Broader Circulation of the GoFundMe Campaign.                                               13

      3.   The Defamatory Statements Were Published to the GoFundMe Campaign.                          14

      4.   The Defamatory Statements are Demonstrably False.                                           16

      5.   The False Statements Are Defamatory, Not Privileged, and Have a Natural Tendency
           to Injure and Cause Special Damage to the Plaintiff.                                        17

   C.   Snopes Motion is Frivolous; Accordingly, Plaintiff Requests Monetary Sanctions
        Against Snopes and its Counsel.                                                                17

IV.     CONCLUSION                                                                                     18

# **TABLE OF AUTHORITIES**

**CASES**

*Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325 (2009) ........................................ 17

*Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71 (2007).......................................... 16

*Doe v. Gangland Productions, Inc.*, 730 F.3d 946 (9th Cir. 2013).............................. 12, 13

*Dual Diagnosis Treatment Center, Inc. v. Buschel*, 6 Cal. App. 5th 1104 (2016) ............. 8, 10, 11

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002) ............................ 7

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127 (1999) ... 9, 10, 11

*Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596 (1976) .................................... 14

*Manzari v. Associated Newspapers Ltd.*, 830 F3d 881 (9th Cir. 2016) ........................ 14

*Moore v. Shaw* 116 Cal. App. 4th 182 (2004) ....................................................... 18

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008) ................................. 17

*Rivero v. American Federation of State, County and Municipal Employees, AFL–CIO*, 105 Cal. App. 4th 913 (2003) ................................................................... 8, 10, 11

*Sanders v. Walsh*, 219 Cal. App. 4th 855 (2013)................................................... 12

*Shively v. Bozanich*, 31 Cal. 4th 1230 (2003) ............................................. 12, 14

*Talega Maintenance Corp. v. Standard Pacific Corp.*, 225 Cal. App. 4th 722 (2014) ............. 8, 10

*Wilcox v. Superior Court*, 27 Cal. App. 4th 809 (1994) .................................. 10, 12, 16

*Yeager v. Bowlini,* 693 F. 3d 1076 (9th Cir. 2012) .......................................... 14

**STATUTES**

Civil Code § 3425.3 ........................................................................... 13

Civil Code § 44 ................................................................................ 12

Civil Code § 45 ............................................................................ 12, 14

Code of Civil Proc. § 128.5................................................................... 18

Code of Civil Proc. § 425.16................................................................. passim

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFF PROPER MEDIA, LLC'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE

# I.    <u>INTRODUCTION</u>

Plaintiff Proper Media, LLC ("Proper Media" or "Plaintiff") hereby opposes Snopes Media Group, Inc.'s ("Snopes") Special Motion to Strike the fourteenth claim for relief from Plaintiff's Third Amended Complaint.[1]

David Mikkelson ("Mikkelson"), Snopes' CEO, director, and a 50% shareholder, has abused his controlling position at Snopes by launching a fraudulent crowdfunding campaign on the GoFundMe.com website called "Save Snopes," wherein he has solicited and continues to solicit (purportedly on behalf of Snopes) donations from the public based on false and materially misleading information, as well as defamatory statements regarding Proper Media. Mikkelson continues to substantively update and republish this false and materially misleading information, as well as the defamatory statements regarding Proper Media, including most recently ***after*** Snopes filed the instant motion. Mikkelson solicited these donations on the false premise that the donations received through the campaign would be used to pay for Snopes' payroll, operating expenses, and Snopes's legal expenses incurred in connection with this lawsuit. But, instead, these funds have been used, in large part, to pay for Mikkelson's personal expenses, including, but not limited to, the legal expenses he has personally incurred in connection with this lawsuit. The "Save Snopes" (now "#FightForFacts") GoFundMe Campaign is merely the latest scheme in Mikkelson's playbook to continue to use Snopes as his personal piggy bank and intentionally inflict harm on Snopes' minority shareholders and Proper Media.

Because Snopes cannot defeat Plaintiff's fourteenth claim for relief on the merits or through sound legal argument, it resorts to unfounded attorney conjecture and legal conclusions to stitch together support for its motion. Not only is this practice unprofessional, it is sanctionable and this Court should appropriately award Plaintiff its costs and attorneys' fees in responding to Snopes' frivolous anti-SLAPP motion.

---

[1] In Snopes' Notice of Motion and Special Motion to Strike, it requests that the Court strike Plaintiff's sixteenth claim for relief, Violation of Business and Professions Code Section 17200 brought by Plaintiff against Snopes. However, Snopes provides no analysis supporting this request in its memorandum of points and authorities. Nonetheless, the arguments presented herein are applicable to the sixteenth claim for relief to the extent that the sixteenth claim for relief overlaps with the fourteenth claim for relief.

## II.    **BACKGROUND**

In July 2017, Mikkelson, purportedly on behalf of Snopes, launched a crowdfunding campaign called "Save Snopes," in which he sought donations from the public on the GoFundMe platform (the "GoFundMe Campaign"). (Richmond Decl., ¶¶ 4-6; Ex. 1, ¶¶ 135-137; Exs. 2-3.) Mikkelson claimed that the donations would be used to pay for Snopes' payroll and other operating expenses, as well as Snopes's legal fees incurred in connection with this litigation. (*Id.*) The GoFundMe Campaign, and information and updates about the campaign are located at savesnopes.com/faq, snopes.com, gofundme.com/savesnopes. (*Id.*) Mikkelson initially sought a total of $500,000 through the GoFundMe Campaign, but has since raised the fundraising goal to $2,000,000. (*Id.*)

Mikkelson and Snopes continue to raise funds through the GoFundMe Campaign, and are publishing substantive updates and adding to the campaign, as well as aggressively marketing each update to potential new donors. (Richmond Decl., ¶¶ 6-7; Exs. 2-10.) In fact, in June 2019, *after* filing the instant motion, Mikkelson and Snopes substantively updated and revitalized the GoFundMe Campaign on multiple occasions, even rebranding the campaign from "Save Snopes" to "#FightForFacts." (Richmond Decl., ¶ 7; Exs. 4-6.) Since revitalizing the GoFundMe Campaign and rebranding it as "#FightForFacts," Snopes and Mikkelson have aggressively sought to expand the audience of the campaign and solicit donations from new donors. (Richmond Decl., ¶ 8; Exs. 7-10.) Because of this effort, Mikkelson and Snopes currently receive thousands of dollars in donations each day from new donors. (*Id.*)

Mikkelson's representations about how the funds raised through the GoFundMe Campaign will be used are false. (Richmond Decl., ¶ 9; Ex. 1, ¶¶ 138-143.) Specifically, and contrary to Mikkelson's representations, the GoFundMe Campaign funds are not in fact being used only to cover Snopes's payroll, operating expenses, and legal expenses as represented. (*Id.*) To the contrary, Mikkelson is using these funds, in large part, to pay for his personal expenses, including but not limited to legal expenses that he, and his co-defendants Vincent Green ("Green") and Ryan Miller ("Miller"), have personally incurred in connection with this lawsuit, including in bringing their affirmative counterclaims and litigating the Interpleader Case. (*Id.*)

Mikkelson and Snopes also continue to represent—again falsely—to the public as well as the "Save Snopes" and "#FightForFacts" GoFundMe Campaign donors, that Proper Media is withholding Snopes's advertising revenue and holding the Snopes.com website hostage. (Richmond Decl., ¶ 10-12; Ex. 1, ¶ 144; Exs. 2-6.)

For example, Mikkelson published to www.gofundme.com/savesnopes: "We had previously contracted with an outside vendor to provide certain services for Snopes.com. That contractual relationship ended earlier this year, but the vendor will not acknowledge the change in contractual status and continues to essentially hold the Snopes.com web site hostage. Although we maintain editorial control (for now), the vendor will not relinquish the site's hosting to our control, so we cannot modify the site, develop it, or — most crucially — place advertising on it. The vendor continues to insert their own ads and has been withholding the advertising revenue from us." (Richmond Decl., ¶ 10; Ex. 1, ¶¶ 145, 297; Ex. 2.) Moreover, Mikkelson and Snopes published on www.savesnopes.com/faq: "You claim your site is essentially being 'held hostage.' What does that mean?" To which they published the following response, which reads in part: "After we terminated our contract with Proper Media, we sought to migrate our hosting to another service provider – and that provider is anxiously waiting to go (as are we). But migrations of sites like Snopes.com require some level of cooperation, coordination, and courtesy, which Proper Media has refused to provide. Without access to the servers, our site's code, or our databases, we cannot migrate our site to a more favorable service provider." (Richmond Decl., ¶ 11; Ex. 1, ¶¶ 145, 297; Ex. 3.)

These publications are false. (Richmond Decl., ¶ 12; Ex. 1, ¶ 146.) Snopes has, and always had, complete control over the snopes.com domain. (*Id.*) The content, code and other information necessary for Snopes to migrate its hosting to another service provider were always available to Mikkelson and Snopes, and Mikkelson and Snopes could have provided advertisements, as they had in the past, to be inserted into Snopes.com at any time prior to migrating to a different hosting provider, but they did not. (*Id.*) Moreover, Proper Media turned over proprietary code well beyond what was necessary for Snopes to migrate its hosting, even

though Snopes had no right to this code. (*Id.*) Moreover, Snopes in fact migrated its hosting to another service provider in October 2017. (*Id.*)

Mikkelson and Snopes published on www.savesnopes.com/faq: "Is one of Proper Media's owners a director of Bardav?" (Richmond Decl., ¶ 13; Ex. 1, ¶ 147; Ex. 3) To which they published the following response: "Absolutely not! No owner or shareholder of Proper Media has ever held a seat on Bardav's board of directors." (*Id.*) This publication is false. (*Id.*) Richmond, an owner of Proper Media, is in fact a Director of Snopes. (*Id.*)

Mikkelson and Snopes published the following statement on www.savesnopes.com/faq: "100 percent of our earnings have been withheld from us for months on end." (Richmond Decl., ¶ 14; Ex. 1, ¶ 149; Ex. 3) This publication is false. (*Id.*) Proper Media has paid Snopes all advertising revenue allegedly due to Snopes under both the General Services Agreement and in accordance with court orders in this lawsuit. (*Id.*) In fact, Proper Media has paid Snopes ***more*** than it was owed—including by paying to Snopes the entirety of payments submitted to Barbara Mikkelson in connection with a settlement with Barbara, at Mikkelson's direction, wherein Mikkelson had previously agreed to cover or reimburse Proper Media for making payments to Barbara. ("Barbara Mikkelson Settlement.") (*Id.*)

## III.    ARGUMENT

To invoke anti-SLAPP protections, Snopes must first point to a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech…*in connection with a public issue*," and only if it is able to do so, then the burden shifts to the Plaintiff to establish "that there is a probability that the plaintiff will prevail on the claim." Code of Civil Proc. § 425.16(b)(1) (emphasis added); *See also Equilon Enterprises v. Consumer Cause*, *Inc.*, 29 Cal. 4th 53, 67 (2002). Here, Plaintiff's fourteenth claim for relief does not arise from protected speech or petitioning activity "in connection with a public issue" as required by section 425.16, and Snopes has provided no legal analysis or support to the contrary. Moreover, Snopes has offered no admissible evidence or supporting affidavits, nor could it, countering the probability that Plaintiff will prevail on its fourteenth claim for relief.

### A.    Snopes Fails to Connect The Required "Public Issue" or "Public Interest."

7

Snopes' motion as to Plaintiff's fourteenth claim for relief relies solely on the protective activities enumerated in subsections (e)(3) and (e)(4) of section 425.16, which apply only to statements "made in a place open to the public or a public forum *in connection with an issue of public interest*" or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest*." Code of Civil Proc. § 425.16(e)(3) and (4) (emphasis added).

Not every statement to the public is an "issue of public interest," even when the issue involves a matter of potential interest to a large number of people. *See Dual Diagnosis Treatment Center, Inc. v. Buschel*, 6 Cal. App. 5th 1098, 1104 (2016) (eBulletin circulated to 22,000 readers and available on related website insufficient to establish "public interest.") Although the anti-SLAPP statute does not define "public issue" or "public interest," case law has developed guiding principles. "A prime example is activity that involves a large, powerful private organization which may impact the lives of many individuals." *Id*. citing *Talega Maintenance Corp. v. Standard Pacific Corp*., 225 Cal. App. 4th 722, 734 (2014). "Other examples include situations in which the subject of the statement or activity was a person or entity in the public eye, the statement or activity involved conduct that could affect large numbers of people beyond the direct participants, or the statement or activity involved a topic of 'widespread, public interest.'" *Id.* (quoting *Rivero v. American Federation of State, County and Municipal Employees, AFL–CIO*, 105 Cal. App. 4th 913, 924 (2003).) Moreover, critical to a "public interest" determination is "identification of the specific speech" that is the subject of the plaintiff's claim. *Id.*

In *Dual Diagnosis Treatment Center, Inc., v. Buschel*, the Court of Appeal, Fourth District, had before it a case wherein the defendant, *Buschel*, was the editor and publisher of a weekly electronic newsletter related to alcohol and drug treatment and recovery. *Dual Diagnosis Treatment Center, Inc. v. Buschel*, 6 Cal. App. at 1101. *Buschel's* eBulletin was distributed via e-mail to approximately 22,000 readers, including alcohol and drug treatment professionals and others interested in information concerning the industry and community. *Id.* It was also made available on a website where both new and archived editions of the eBulletin were maintained. *Id.* At issue in *Dual Diagnosis* was an edition of the eBulletin published by *Buschel* titled "Man

8

stripped of UK medical license runs local rehab." *Id*. The plaintiff in *Dual Diagnosis* filed suit

against *Buschel* for this eBulletin, alleging causes of action for libel, libel per se, false light and

negligence. *Id*. at 1102. In due course, *Buschel* and the other defendants moved to strike the

causes of action in an anti-SLAPP motion, asserting that the eBulletin's statements were made in

connection with matters of public interest. *Id*. After evaluating the relevant case law, the Court of

Appeal concluded that despite the eBulletin being circulated to 22,000 readers and being made

available on a related website, *Buschel* had not met his burden in demonstrating an "issue of

public interest" under section 425.16. *Id*. at 1102-1107. In particular, the court found that the

licensing status "of a single rehabilitation facility is not of 'widespread, public interest'" and there

was no showing that the plaintiff "impacts, or has the potential to impact, a broad segment of

society, or that the statements were part of some larger goal to provide consumer protection." *Id*.

at 1105.

Similarly, in the commercial context, the "issue of public interest" requirement under

section 426.16 necessarily excludes ordinary commercial disputes between competitors, and, by

extension, the more insidious problem of competitors masquerading as protectors of the public

interest. *In Globetrotter Software*, the court rejected a defendant's attempt to expand the

California anti-SLAPP statute to a dispute between competitors, explaining that if "statements of

one company regarding the conduct of a competitor company ... were construed as coming within

the statute's protection, any lawsuit alleging trade libel, false advertising or the like in the context

of commercial competition would be subject to attack as a SLAPP suit," and "[t]his clearly is not

the result intended by the Legislature when enacting the anti-SLAPP statute." *Globetrotter*

*Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1130 (1999). *Accord MCSI*,

*Inc. v. Woods*, 290 F. Supp. 2d 1030 (2003) (allegedly defamatory statements about competitor do

not meet the need for a threshold showing of issue of public interest).

Snopes' section 425.16 motion is defective from the start. Snopes provides no analysis or

legal support to establish the foundational "public interest" requirement under section 425.16(e)

or the critical "identification of the specific speech" that is allegedly protected by the anti-SLAPP

statute. Instead, Snopes simply concludes that because the defamatory statements were posted

1  online as part of the broader GoFundMe Campaign, they automatically qualify for anti-SLAPP

2  protection under section 425.16(e). (MPA. at 11.) Indeed, Snopes only mention of "public

3  interest" is a citation to Section 425.16(e)(3) and a fleeting footnote to a 9th Circuit case that is

4  factually different from the defamatory statements at issue here. (MPA. at 11.)

5       Rather than provide a substantive legal argument connecting the defamatory statements in

6  Plaintiff's fourteenth claim for relief with an issue of public interest, as required under section

7  425.16(e), Snopes' opted not to "belabor this obvious point" because it had already concluded

8  that "the alleged defamatory statements easily fall within Section 425.16(e)(3)." (MPA. at 11.)

9  Given the vast amount of case law and legal precedent concerning what constitutes protected

10  activity "in connection with an issue of public interest," the point is not "obvious" as Snopes

11  suggests. Indeed, following the guiding principles from the relevant case law, for example, from

12  *Rivero*, *Talega*, *Dual Diagnosis Treatment Center,* and *Globetrotter Software*, as discussed

13  above, there is no support in this case to connect Snopes' defamatory statements to a "public

14  interest." Proper Media is not a "large, powerful private organization which may impact the lives

15  of many individuals." *See Talega*, 225 Cal. App. at 734. Rather, it is a startup Internet media

16  company, occupying a single office space in San Diego, California, with less 20 employees.

17  (Richmond Decl., ¶ 3.) Proper Media's business, monetizing a limited number of websites, is not

18  of "widespread, public interest" and Snopes has not shown otherwise. *Id; See Dual Diagnosis*, 6

19  Cal. App. at 1105; *see also Rivero*, 105 Cal. App. 4th at 924. Moreover, Snopes has made no

20  showing, and indeed one does not exist, wherein Proper Media "impacts, or has the potential to

21  impact, a broad segment of society" or that the Snopes' defamatory statements "were part of

22  some larger goal to provide consumer protection." *Id*.

23       Snopes' failure to meet the basic pleading requirements under section 425.16(e)(3) is fatal

24  to its requested relief under section 425.16. Moreover, a special motion to strike must be

25  supported by "affidavits stating facts upon which [the defendant's] liability or defense is based."

26  Civ. Proc. Code § 425.16 (b)(2); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 821–822

27  (1994). Snopes has provided no such affidavits in support of its anti-SLAPP motion that would

28  lend credibility to its conclusive finding of a "public interest."

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFF PROPER MEDIA, LLC'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE

Equally as baseless and lacking in legal support is Snopes' reliance on section 425.16(e)(4) for anti-SLAPP protection from Plaintiff's fourteenth claim for relief. Again, keeping with the theme above, Snopes fails to identify the specific speech it believes is protected and provides no legal support connecting this speech with "a public issue or an issue of public interest." (MPA. at 11.) Rather, just as above, Snopes erroneously concludes that because the defamatory statements were posted online as part of the broader GoFundMe Campaign, they automatically qualify for anti-SLAPP protection under section 425.16(e)(4). (MPA. at 11.) The extent of Snopes legal analysis reads "[t]here can be no dispute that these fundraising campaign postings are acts in furtherance of free speech rights" and the "alleged fundraising activities are therefore 'conduct in furtherance of the exercise of the constitutional right of . . . free speech.'" (MPA. at 11.) Snopes legal conclusions under section 425.16(e)(4) are completely devoid of legal analysis connecting a "public issue" or "public interest" and thus defective for the same reasons discussed above with respect to section 425.16(e)(3). Accordingly, Snopes' failure to meet the basic pleading requirements under section 425.16(e)(4) further bars its requested relief under the anti-SLAPP statute.

Although required under section 425.16(e)(3) and (4) and the relevant case law, Snopes made no attempt to identify the specific speech it believes protected under Section 426.16(e)(3) or (e)(4) from Plaintiff's fourteenth claim for relief. Because it failed the most basic requirement of section 425.16, Snopes then made no attempt to connect the specific speech with a "public issue" or "public interest" as required and exemplified in *Rivero, Dual Diagnosis Treatment Center*, *Globetrotter Software*, and the vast other legal precedent on this exact issue. Accordingly, the Court should properly deny Snopes motion as to Plaintiff's fourteenth claim for relief and need not continue further in the anti-SLAPP analysis.

**B.    There is Ample Evidence To Support a Judgment in Plaintiff's Favor.**

Because Snopes has not met its initial burden, the Court need not consider the second step in the section 425.16 analysis. Should, however, the Court choose to address the second prong, Snopes' motion as to Plaintiff's fourteenth claim for relief must still be denied because there is a probability that Plaintiff will prevail on the merits of its fourteenth claim for relief, and Snopes

has offered no admissible evidence in support of its defense. A special motion to strike must be supported by "affidavits stating facts upon which [the defendant's] liability or defense is based. Civ. Proc. Code § 425.16 (b)(2); *Wilcox v. Superior Court*, 27 Cal. App. 4th at 821-822. Instead, in place of the required affidavit, Snopes finds support from unfounded attorney conjecture and misapplications of the relevant law.

In Plaintiff's fourteenth claim for relief, Proper Media alleges that Snopes and Mikkelson published or caused to be published a series of defamatory statements about Proper Media. (Ex. 1, ¶¶ 296-301.) Under the Code of Civil Procedure, defamation constitutes an injury to reputation by means of libel or slander. Civil Code § 44. In general, a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel. Civil Code § 45; Rest.2d Torts § 568(1); *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003). Thus, the elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or cause special damage. *Sanders v. Walsh*, 219 Cal. App. 4th 855, 862 (2013). Each of these elements is readily met here. Moreover, Snopes arguments regarding the single publication rule and the statute of limitations are inapplicable and will be addressed first.

### 1. The Single Publication Rule Does Not Apply to Multiple Defamation Theories Included in a Single Complaint.

Snopes' misunderstands, and therefore misapplies, the single publication rule. It does not, as suggested by Snopes, require that "defamation-based claims all merge into [a single] claim for defamation." (MPA. at 13.) Rather, "[t]he purpose of the [single publication] rule is to include in the single suit *all* damages resulting anywhere from the single aggregate publication." Restatement (Second) of Torts § 577A cmt. e (1977) (emphasis added); *Doe v. Gangland Productions, Inc.*, 730 F.3d 946, 963 (9th Cir. 2013). "The purpose of the rule would be undermined if a plaintiff is required to choose, at the time of filing his complaint, one single theory to recover all of his damages, without the benefit of any discovery." *Doe v. Gangland Productions, Inc.*, 730 F.3d at 963; *Cf. M.G.*, 89 Cal. App. 4th at 630, 637 (holding that the single publication rule permits plaintiffs to assert "one cause of action [for invasion of privacy],

expressing four different theories" and refusing to strike plaintiffs' emotional distress claims, even if they are cumulative).

In *Gangland Production*s, the defendants argued that under the single publication rule, the plaintiff's "overlapping and duplicative claims, all arising from the alleged disclosure of [the defendants'] identity in the [Gangland episode] ... should be stricken." *Id*. at 962. In that vein, the defendants argued that "the single-publication rule prevents multiplicity of claims" thus permitting the plaintiff to "assert only one theory of recovery arising from the Gangland broadcast." *Id*. In other words, just as Snopes is requesting here, the defendants in *Gangland* asked the court to find that the plaintiff "may plead a claim for fraud or public disclosure of private fact or intentional infliction of emotional distress." *Gangland Production*s at 962. The court was not persuaded. Rather, the Ninth Circuit reasoned that "under the single publication rule, [a plaintiff] may not file separate lawsuits across the country based on the Gangland episode, or assert a million claims for public disclosure of private fact based on each audience member who saw his identity." *Id.* The Ninth Circuit held that the single-publication rule "does not limit Plaintiff to one theory of recovery or one distinct cause of action or claim for relief." *Id*. at 963.

Accordingly, because Snopes misunderstands the single publication rule, and incorrectly seeks to apply the rule to the facts of this case, its arguments are properly disregarded.

> ## 2. The Statute of Limitations Continues to Reset With Each Substantive Update and Broader Circulation of the GoFundMe Campaign.

Snopes' application of the single publication rule would perhaps be more relevant in the context of a discussion on the statute of limitations for a defamation claim. But again, Snopes does not understand the law and therefore incorrectly analyzes the applicability of the statute of limitations in this case.

Under the single publication rule, only one lawsuit may be brought based on a single publication, exhibition or utterance. Therefore, each edition of a newspaper or other publication gives rise to only one claim, no matter how many copies are distributed or publications made, and regardless of when plaintiff became aware of the publication. Civil Code § 3425.3; 5 Witkin, Summary of California Law, Torts § 636; Rest.2d Torts § 577A. Under the rule, the statute of

limitations is "reset" when the challenged statement is republished—i.e., "when it is reprinted in something that is not part of the same 'single integrated publication.'" *Yeager v. Bowlini,* 693 F. 3d 1076, 1082 (9th Cir. 2012) (applying Calif. law) (statement in hardcover book is republished when repeated in later paperback edition of book). Although a statement on a website is not "republished" merely because a defendant continues to host the site, republication does arise if the statement itself is ***substantively altered or added to***, or the ***website directed to a new audience***. *Yeager v. Bowlin*, 693 F. 3d at 1082 (emphasis added.)

Here, Snopes continues to substantively alter, add to, and republish the GoFundMe Campaign. In fact, in June 2019, ***after*** filing the instant motion, Mikkelson and Snopes substantively updated and revitalized the GoFundMe Campaign on multiple occasions, even rebranding the campaign from "Save Snopes" to "#FightForFacts." (Richmond Decl., ¶ 7; Exs. 4-6.) Since revitalizing the GoFundMe Campaign and rebranding it as "#FightForFacts," Snopes and Mikkelson have aggressively sought to direct the campaign to new audiences and solicit donations from new donors. (Richmond Decl., ¶ 8; Exs. 7-10.) Because of this effort, Mikkelson and Snopes currently receive thousands of dollars in new donations each day. (*Id*.)

Following the rule set forth in *Yaeger*, Snopes and Mikkelson continue to "republish" the defamatory statements by substantively updating the GoFundMe Campaign and directing it to new audiences, all with the hope of soliciting donations from new donors. *See Yeager v. Bowlin*, 693 F. 3d at 1082. These new publications effectively "reset" any applicable statute of limitations, thereby rendering Snopes' statute of limitations defense moot.

### 3. The Defamatory Statements Were Published to the GoFundMe Campaign.

A "statement" is any form of communication or representation, including words, pictures and audible and visual representations. Civil Code §§ 45, 46; Rest.2d Torts § 568; see *Manzari v. Associated Newspapers Ltd*., 830 F3d 881, 883 (9th Cir. 2016). Ordinarily, the statement must be of fact, not opinion. *Gregory v. McDonnell Douglas Corp*., 17 Cal. 3d 596, 600 (1976). Moreover, the statement must be communicated to at least one person other than plaintiff who understands its defamatory meaning and that it refers to plaintiff. *Shively v. Bozanich*, 31 Cal. 4th

1230, 1242 (2003). Mikkelson and Snopes continue to represent—falsely—to the public as well as the "Save Snopes" and "#FightForFacts" GoFundMe Campaign donors, that Proper Media is withholding Snopes's advertising revenue and holding the Snopes.com website hostage. (Richmond Decl., ¶ 10-12; Ex. 1, ¶ 144; Exs. 2-6.)

For example, Mikkelson published to the GoFundMe Campaign, available at (www.gofundme.com/savesnopes): "We had previously contracted with an outside vendor to provide certain services for Snopes.com. That contractual relationship ended earlier this year, but the vendor will not acknowledge the change in contractual status and continues to essentially hold the Snopes.com web site hostage. Although we maintain editorial control (for now), the vendor will not relinquish the site's hosting to our control, so we cannot modify the site, develop it, or — most crucially — place advertising on it. The vendor continues to insert their own ads and has been withholding the advertising revenue from us." (Richmond Decl., ¶ 10; Ex. 1, ¶¶ 145, 297; Ex. 2.) Moreover, Mikkelson and Snopes published to the GoFundMe Campaign, available at (www.savesnopes.com/faq): "You claim your site is essentially being 'held hostage.' What does that mean?" To which they published the following response, which reads in part: "After we terminated our contract with Proper Media, we sought to migrate our hosting to another service provider – and that provider is anxiously waiting to go (as are we). But migrations of sites like Snopes.com require some level of cooperation, coordination, and courtesy, which Proper Media has refused to provide. Without access to the servers, our site's code, or our databases, we cannot migrate our site to a more favorable service provider." (Richmond Decl., ¶ 11; Ex. 1, ¶¶ 145, 297; Ex. 3.)

Moreover, Mikkelson and Snopes published to the GoFundMe Campaign, available at (www.savesnopes.com/faq): "Is one of Proper Media's owners a director of Bardav?" (Richmond Decl., ¶ 13; Ex. 1, ¶ 147; Ex. 3) To which they published the following response: "Absolutely not! No owner or shareholder of Proper Media has ever held a seat on Bardav's board of directors." Additionally, Mikkelson and Snopes published the following defamatory statement to the GoFundMe Campaign, available at (www.savesnopes.com/faq): "100 percent of our earnings have been withheld from us for months on end." (Richmond Decl., ¶ 14; Ex. 1, ¶ 149; Ex. 3)

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFF PROPER MEDIA, LLC'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE

### 4. The Defamatory Statements are Demonstrably False.

Plaintiff need only prove by a preponderance of evidence that the statement was false. *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 82 (2007). Every word of the statement need not be false, so long as the "gist" or "sting" of the statement is untrue. See Rest.2d Torts § 581A (addressing truth as affirmative defense). As an initial matter, a special motion to strike must be supported by "affidavits stating facts upon which [the defendant's] liability or defense is based. Civ. Proc. Code § 425.16 (b)(2); *Wilcox v. Superior Court*, 27 Cal. App. 4th at 821-822. Snopes has submitted no evidence to support a defense of truth. Instead, it relies on unfounded attorney conjecture to make this defense. This is inappropriate and appropriately disregarded.

The defamatory statements listed in Plaintiff's fourteenth claim for relief and identified above are demonstrably false. (Richmond Decl., ¶¶ 12-14; Ex. 1, ¶ 146.) Snopes has, and always had, complete control over the snopes.com domain. (*Id.*) The content, code and other information necessary for Snopes to migrate its hosting to another service provider were always available to Mikkelson and Snopes, and Mikkelson and Snopes could have provided advertisements, as they had in the past, to be inserted into Snopes.com at any time prior to migrating to a different hosting provider, but they did not. (*Id.*) Moreover, Proper Media turned over proprietary code well beyond what was necessary for Snopes to migrate its hosting, even though Snopes had no right to this code. (*Id.*) Finally, it is undisputed that Snopes migrated to a new hosting provider in October 2017. (*Id.*)

Proper Media has paid Snopes all advertising revenue allegedly due to Snopes under both the General Services Agreement and in accordance with court orders in this lawsuit. (Richmond Decl., ¶ 14; Ex. 1, ¶ 149) In fact, Proper Media has paid Snopes ***more*** than it was owed— including by repaying to Snopes the entirety of payments submitted to Barbara Mikkelson in connection with a settlement with Barbara, at Mikkelson's direction, wherein Mikkelson had previously agreed to cover or reimburse Proper Media for making payments to Barbara. ("Barbara Mikkelson Settlement.") (*Id.*) And finally, Richmond, an owner of Proper Media, is in fact a Director of Snopes. (Richmond Decl., ¶ 13; Ex. 1, ¶ 147.)

16

**5.** **The False Statements Are Defamatory, Not Privileged, and Have a Natural Tendency to Injure and Cause Special Damage to the Plaintiff.**

Material is defamatory if it lowers a defendant's esteem in the community or deters people from associating with the defendant. *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1047-1048 (2008). A single sentence can be defamatory even if buried in a long text. *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1338 (2009). In assessing whether material has a defamatory meaning, courts apply a "totality of the circumstances" test, reviewing the publication as a whole. *Id.* at 1337-1338 ("The defamatory character of language is measured according to the sense and meaning … which such language may fairly be presumed to have conveyed to those to whom it was published.")

Snopes defamatory statements, including those purportedly by Mikkelson on Snopes' behalf, were intended to defame Proper Media, Snopes' and Mikkelson's litigation adversary and alleged competitor, and harm Proper Media's current and prospective business. Indeed, the defamatory statements portray Proper Media as an untrustworthy monetization partner, a critical element to succeed in the digital advertising industry, and thus have a natural tendency to injure and cause special damage to Proper Media by deterring other companies from associating with it. (Richmond Decl., ¶ 15; Ex. 1, ¶¶ 152-153.) The defamatory statements about Proper Media, including how it allegedly held the Snopes.com website "hostage" and withheld all its advertising revenue, are false, yet are being perceived by potential customers as fact. (*Id.*) Contrary to Mikkelson's representations, Snopes has always had complete control over the Snopes.com domain and could have migrated its hosting environment away from Proper Media and inserted its own advertisements at any time. (*Id.*) Moreover, Proper Media has paid Snopes all of the revenue it was due, and more, and Richmond currently sits on Snopes's Board. (*Id.*) As a result of Snopes' defamatory statements and misrepresentations, Proper Media has suffered demonstrated harm to its goodwill, reputation, and current and prospective business relationships. (*Id.*)

**C.** **Snopes Motion is Frivolous; Accordingly, Plaintiff Requests Monetary Sanctions Against Snopes and its Counsel.**

Code of Civil Proc. § 425.16(c) provides that the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on an anti-SLAPP motion pursuant to Code of Civil Proc. § 128.5, if the motion is frivolous. Code of Civil Proc. § 425.16(c); Code of Civil Proc. § 128.5; *See also Moore v. Shaw* 116 Cal. App. 4th 182, 198-199 (2004). Attorney's fees under section 128.5 may be assessed against a party, the attorney, or both. *Id*. at 199. A determination of frivolousness requires a finding that the anti-SLAPPP motion is totally and completely without merit, such that any reasonable attorney would agree. *Id*. An anti-SLAPP motion is frivolous where the defendant fails to meet their threshold burden under section 425.16(e). *Id*. at 198-199. In *Moore*, the court held that because the defendant's conduct did not fall within any of the categories in section 425.16(e), any reasonable attorney would agree that an anti-SLAPP motion would not lie under the circumstances and the motion devoid of merit. *Id*. The *Moore* court remarked: "We cannot help but observe the increasing frequency with which anti-SLAPP motions are brought, imposing added burden on opposing parties .... such motions should only be brought when they fit within the parameters of section 425.16." *Id*. at 200, italics added.

For all the reasons set forth above, Snopes' motion should be denied and their motion is frivolous. The motion is frivolous because the law is abundantly clear that a special motion to strike is not allowed under the circumstances presented. Most importantly, Snopes has not met, or even attempted to meet, its threshold burden under section 425.16(e). Therefore, pursuant to Code of Civil Proc. sections 425.16(c) and 128.5, Plaintiff seeks monetary sanctions against Snopes and its counsel, Procopio, in the amount Plaintiff's fees incurred in connection with Snopes' motion.

## IV. <u>CONCLUSION</u>

For the above reasons, Plaintiff respectfully requests the court to deny Snopes' special motion to strike the fourteenth claim for relief in Plaintiff's Third Amended Complaint, and to grant Plaintiff monetary sanctions against Snopes and its counsel, Procopio.

Dated:  July 29, 2019

Respectfully submitted,


By: /s/ Drew W. Schoentrup
     Drew W. Schoentrup

     Attorney for Plaintiffs/Cross-Defendants/Cross-Complainants PROPER MEDIA, LLC,
     CHRISTOPHER RICHMOND, DREW
     SCHOENTRUP, and PUBLIFE, LLC

19
MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFF PROPER MEDIA, LLC'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE

Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone:   619.238.1900
Facsimile:   619.235.0398
E-mail:  paul.tyrell@procopio.com
         ryan.caplan@procopio.com
         jacob.kozaczuk@procopio.com

Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly known and
having appeared as Bardav Inc

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, an individual, and DREW SCHOENTRUP, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>BARDAV INC, a California corporation; and DAVID MIKKELSON, an individual, VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual,<br><br>        Defendants,<br><br> <br>AND RELATED CROSS-ACTIONS | Case No. 37-2017-00016311-CU-BC-CTL<br>(consolidated with Case No. 37-2018-00004335-CU-MC-CTL)<br><br>**REPLY IN SUPPORT OF DEFENDANT/CROSS-COMPLAINANT SNOPES MEDIA GROUP, INC.'S SPECIAL MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO CODE CIV. PROC. § 425.16**<br><br>Date:      August 9, 2019<br>Time:     10:30 a.m.<br>Dept.:     C-68<br>Judge:    Hon. Richard S. Whitney<br><br>Complaint Filed:   May 4, 2017<br>Trial Date:      October 4, 2019<br><br>***IMAGED FILE*** |

     Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as BARDAV INC ("Snopes"), respectfully submits this Reply to Plaintiffs PROPER MEDIA, LLC ("Proper Media"), DREW SCHOENTRUP ("Schoentrup"), and CHRISTOPHER RICHMOND ("Richmond") (collectively, "Plaintiffs") Oppositions to its Special Motion to Strike the Third Amended Complaint ("TAC").

As noted in the moving papers, Snopes' challenge is levied against litigation funding and defamation-based claims. The conduct at issue in both sets of claims arise from activity protected under the anti-SLAPP statute. Accordingly, the burden shifts to Plaintiffs to present competent <u>admissible</u> evidence showing a probability of success on each challenged claim. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*).)

Plaintiffs utterly failed to meet their burden under the anti-SLAPP statute. Instead, they improperly filed thirty pages of opposition memoranda asserting contrived theories to evade the straightforward application of Section 425.16.[1] For evidence, Plaintiffs offer only the declarations of Schoentrup and Richmond, and website screenshots. As discussed below, the Schoentrup and Richmond declarations consist almost entirely of inadmissible and factually devoid statements, and thus, Plaintiffs' Opposition is unsupported.[2]

Plaintiffs oppositions fail to overcome the obvious, namely:

- The fundraising statements were made in connection with public issues and issues of public interest;
- Snopes' litigation funding decisions are protected under Section 425.16; and
- Plaintiffs' "evidence" is insufficient to sustain a favorable judgment on their claims.

## I. THE FUNDRAISING STATEMENTS ARE MADE IN CONNECTION WITH PUBLIC ISSUES AND, ALTERNATIVELY, ISSUES OF PUBLIC INTEREST

The statements alleged in Plaintiffs' defamation-related claims are protected activities under *both* subsections (e)(3) and (e)(4) of the anti-SLAPP statute. Rightfully conceding the other elements of these provisions, Proper Media complains that Snopes has not exhausted the court with "substantive legal argument" on the obvious point that Snopes' reporting about its own lawsuit is made in connection with public issues or issues of public interest. (Opp. No. 1 at 10:5-8.) As stated in the moving papers, *Plaintiffs* allege that Snopes' fundraising campaign has raised

---

[1] Plaintiffs' counsel submitted two separate oppositions to Snopes' single Special Motion to Strike, purporting to file one opposition on behalf of Proper Media, LLC ("1st Opp.") and another on behalf of Schoentrup and Richmond ("2nd Opp."). Effectively, Plaintiffs submitted 30 pages in opposition briefing, in violation of Rule of Court 3.1113. Snopes urges this honorable court to refuse to consider the excess pages submitted by Plaintiffs. Otherwise, Snopes requests an opportunity to file additional briefing to more fully address the meritless arguments raised in the opposition papers.

[2] Demurrers to the TAC are currently pending, which, if granted, will further establish the unlikelihood that Plaintiffs can prevail on their claims.

hundreds of thousands of dollars from nearly 30,000 members of the public, demonstrating the overwhelming public interest in this litigation.  (*See* TAC, ¶¶ 331, 137, 314, 321.)  In fact, that number has gone up, and as Richmond points out, Snopes continues to receive donations from GoFundMe donors and the vast Snopes.com readership on a daily basis.  (Richmond Decl. at ¶8.)

It is lamentable that Proper Media now argues that the accurate reporting about this litigation from Snopes' fundraising campaign are not connected to any public issue or issue of public interest.  Plaintiffs filed this instant lawsuit and, <u>claiming that Schoentrup was Snopes' director</u>, filed a motion for preliminary injunction seeking: "(1) removal or suspension of Mikkelson as a director; (2) an order enjoining the purported termination of the General Services Agreement."  (ROA 13, p. 1:1-8; see also ROA 8 (the "FAC"), ¶¶66, 138 (alleging and seeking declaration judgment that "Schoentrup is a director of [Snopes]").)  After filing the lawsuit, Plaintiffs' counsel, Karl Kronenberger, contacted major news networks and spread false statements about Snopes and this litigation dispute to the press.  Mr. Kronenberger utilized the public interest in this litigation to garner as much attention as he could to promulgate Plaintiffs' false narrative and influence public opinion on the lawsuit.  Plaintiffs' counsel directly spoke and corresponded with The New York Times, The Washington Post, Business Insider, Poynter, The Atlantic, Vice News, Buzzfeed, Daily Dot, and The Wrap, tech-specific news reporters such as Arstechnica, and many others, all of whom published articles regarding this litigation and the very statements at issue here.  (Kozaczuk Decl. at ¶¶3-12, Ex. A-J.)  For example, on July 24, 2017, The New York Times published a widely disseminated article regarding its interview with Mr. Kronenberger:

> Karl Kronenberger, a lawyer for Proper Media, said in an interview on Monday that Mr. Mikkelson cannot cancel the contract without calling a board meeting — which, in Proper Media's view, would include Mr. Schoentrup.

(Ex. A.) In these press communications, Plaintiffs' counsel reiterated Plaintiffs false claims at issue in the lawsuit, including that Schoentrup was a director of Snopes, that Proper Media owned half of Snopes, and that Snopes had no right to terminate the very contract Plaintiffs were using to steal Snopes' funds.  The true statements posted on Snopes' fundraising campaign all relate to this same litigation dispute, which Plaintiffs' have long understood to be a matter of public interest.[3]

---

[3] The extensive background provided in the moving papers more fully address the host of public issues and issues of

Plaintiffs cite to *Dual Diagnosis Treatment Center, Inc. v. Buschel* (2016) 6 Cal. App. 5th 1098, 1105, wherein the court held that the licensing status of a *single rehabilitation facility* was not of "widespread" public interest. The *Buschel* court nevertheless stressed that "public interest" under the anti-SLAPP statue must be construed broadly. (*Id.* at 1104) As conceded by Plaintiffs throughout this litigation, Snopes is one of the 1000 most popular websites in the United States. (FAC ¶ 31.) In Judge Hayes' August 22, 2017 Minute Order, this honorable Court noted, "The shuttering of a business *with import to the public* is weightier than an undefined loss of goodwill and a bad mark on the creditworthiness of a company," and thus denied Plaintiffs' Motion for a Preliminary Injunction. (Kozaczuk Decl., Ex. M.) While not every website post involves a public issue, "consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern *that can affect many people* is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute." (*Wong v. Tai Jing* (2010) 189 Cal.App.4th 1354, 1366-67, emphasis added.) Indeed, the Snopes news site receives tens of millions of visitors every month from people in all 50 states and over 60 countries.

In determining whether a statement furthers the exercise of constitutional speech rights in connection with a matter of public interest, a court must consider the context as well the content of a statement. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal. 5th 133, 149.) The *FilmOn* Court explained, "First, we ask what "public issue or [ ] issue of public interest" the speech in question implicates—a question we answer by looking to the content of the speech. (§ 425.16, subd. (e)(4).) Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." (*Id.* at 149.) The *FilmOn* Court considered whether a defendant participated in, or furthered, the discourse that makes an issue one of public interest. It ultimately held that the defendant's reports did not further the public conversation on an issue of public interest, noting in part that the reports at issue were issued privately to paying clients. Contrarily, Snopes' allegedly defamatory statements were published on a public website, directed to an audience with an established interest in Snopes' survival. A review of the content and context of Snopes' statements on its GoFundMe

public interest implicated by Snopes' reporting on its fundraising campaign. (Motion at 6:1-9:5)

website demonstrate that it drew upon public support to avoid what was, at the time of its launch, a true risk of imminent irreparable harm. In other words, Snopes sought the public's involvement when it faced the possibility of no longer being able to operate a website that is of value to members of the public. Moreover, Snopes statements were in response to the very false statements Plaintiffs made to the press. In short, Snopes' statements in furtherance of its campaign are made in connection with public issues and issues of public interest—a fact which has been conceded by Plaintiffs throughout this litigation. For Plaintiffs to now state that Snopes' statements on its GoFundMe page are *not* an issue of public interest is nothing short of misleading. Fortunately, the record in this litigation speaks for itself.

## II. PLAINTIFFS HAVE NOT PROVIDED EVIDENCE SUFFICIENT TO SUSTAIN A FAVORABLE JUDGMENT ON THEIR DEFAMATION-BASED CLAIMS

In support of their claim that Snopes' defamatory statements are "demonstrably false," Plaintiffs only cite to the declaration of Richmond. The statements in Richmond's declaration are hearsay; lack foundation; contain improper expert opinions; and, when submitted to serve as evidence, is worthless. (Code Civ. Pro. § 437c(d) ["Supporting and opposing affidavits or declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations."].) Courts have excluded evidence which would be barred at trial by the hearsay rule, or because it is speculative, not based on personal knowledge or consists of impermissible opinion testimony. This type of evidence cannot be used by the plaintiff to establish a probability of success on the merits because it could never be introduced at trial. . . ." (*Sweetwater* 6 Cal.5th at 947 citing *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147-48.) Accordingly, Snopes objects to the declarations submitted in support of Plaintiffs' oppositions. (See Snopes' Objections to Plaintiffs' Evidence Submitted in Support of Opposition to Special Motion.)

Notwithstanding Plaintiffs' reliance on inadmissible evidence, Richmond's understanding of the history of this case is also clearly limited. For example, Snopes does not dispute that, as of March 20, 2018, the Snopes Board of Directors included David Mikkelson, Brad Westbrook, and

Richmond.  As Plaintiffs concede in the TAC, around July of 2017 (eight months earlier), Snopes published the following exchange on www.savesnopes.com/faq: "Is one of Proper Media's owners a director of Bardav?" "Absolutely not! No owner or shareholder of Proper Media has ever held a seat on Bardav's board of directors."  The simple fact is that at the time of publication in July of 2017, *Richmond did not sit on the Snopes' Board of Directors.*  Richmond even confirms this fact in his declaration, stating, "From July 14, 2017 through March 20, 2018, the Snopes' Board included Mikkelson and Westbrook, even though the Bylaws authorized three Board members. The third Board seat remained vacant between July 14, 2017 through March 20, 2018."  (See Richmond Decl. at ¶ 57.)  Plaintiffs thus confirm that *Richmond did not sit on the Snopes Board of Directors in July of 2017*, yet simultaneously claim Snopes falsely stated that no owner of Proper Media held a seat on the Board *as of July 2017.*  Plaintiffs also conveniently leave out the fact when this statement was published, Plaintiffs inaccurately informed the court and the press that Schoentrup sat on Snopes' Board.  (*See* Kozaczuk Decl.)  Plaintiffs either severely misunderstand how a defamation suit works, or are willing to consume court resources with frivolous claims.

Similarly, Plaintiffs have not provided any evidence sufficient to sustain a judgment based on its other allegations (that Snopes' fundraising campaign are false because Proper Media is "no longer" withholding any of Snopes' advertising revenue, and Proper Media is "no longer" holding the Snopes.com site hostage). As a result, Snopes need not provide further evidence to defeat these claims. (*See Monster Energy Co. v. Schechter*, (Cal. July 11, 2019) --- P.3d ---, 2019 WL 3022733, citing *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1.) Nevertheless, Snopes need only point this the Court's prior rulings to show that the statements at issue here are *admittedly true*. (*See, e.g.*, Kozaczuk Decl., Ex. M ("Proper Media has acknowledged that the advertisement revenue is Snope's only source of income, **which it has cut off**."), emphasis added.)

## A.    Plaintiffs are Limited Public Figures

For purposes of the defamation-based claims, Plaintiffs are limited public figures. As discussed above, Plaintiffs thrust themselves into the public eye and the forefront of this public controversy. *See Copp v. Paxton* (1996) 45 Cal. App. 4th 829, 864-65. They did so with the intent to influence public opinion on this litigation. Thus, for their defamation-based claims, Plaintiffs

6

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT
DOCS 125263-000001/3727506.2

Page 485 of 732

must establish a probability that they can produce clear and convincing evidence that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity. *Ampex Corp. v. Cargle* (2005) 128 Cal. App. 4th 1569, 1578-79. Plaintiffs cannot, and do not, establish this additional element.

**B.    In any Event, the Allegedly Defamatory Statements are Time-Barred**

Snopes agrees that the single publication rule is relevant in the context of a discussion on the statute of limitations for a defamation claim, and is instructive in establishing that the allegedly defamatory statements are barred by the statute of limitations.  Notably, Plaintiffs admit that four of the five purportedly false statements were published in or around July 2017, and were not "material updated or otherwise changed." (TAC, ¶297(a)-(d).) Plaintiffs did not propose amending and filing a third amended complaint to add their defamation-based claims until 2019—long after the statute of limitations had run.  Now, when confronted with Snopes' moving papers, Plaintiffs claim the statute of limitations was "reset" when Snopes purportedly republished the allegedly defamatory content on the GoFundMe page.

In support of their position, Plaintiffs cite to *Yeager v. Bowlin* (2012) 693 F. 3d 1076, which indicates that although a statement on a website is not "republished" merely because a defendant continues to host the site, republication does arise if the statement itself is *substantively* altered or added to, or the website directed to a new audience. Plaintiffs claim that Snopes sought to direct its campaign to new audiences, and has solicited "new" donors, thus receiving thousands of dollars in "new" donations each day. The very premise of Plaintiffs' allegation is preposterous.  By its own definition, the GoFundMe platform "giv[es] people the tools they need to capture and share their story far and wide," and has "built a community of more than 50 million donors and helped organizers raise over $5 billion." (See https://www.gofundme.com/c/about-us.)  Snopes' fundraising campaign has always been directed to GoFundMe donors and the vase Snopes.com readership. To the extent the GoFundMe campaign has been successful, and continues to generate donations, this speaks to the public's continued interest in supporting Snopes.com, not to the fact that Snopes has directed the campaign to some "new audience." In fact, since its inception, the GoFundMe page requested users who had already donated to share the campaign with their friends.

7

With respect to the March 2018 posting—the only alleged posting that is arguably not time-barred—it is nothing more than a repost of the prior July 2017 posting. As the Court in *Yeager* noted, courts have rejected republication claims where the challenged posting was posted to a different section of the same website. (*See Yeager* 693 F. 3d 1076, citing *Canatella v. Van De Kamp* (9th Cir. 2007) 486 F.3d 1128, holding that a defendant did not republish the plaintiff's disciplinary summary when he added a "verbatim copy" of the summary to a different URL within the same domain name.) Here, too, Snopes' March 2018 posting is nothing more than a copy of the summary posted in July 2017. By identifying the March 2018 posting as defamatory, Plaintiffs improperly seek a second bite at the apple.

## III. THE AUTHORIZATIONS TO ADVANCE LEGAL FEES ARE PROTECTED ACTS

Plaintiffs concede the well-settled law that protected acts include "communicative conducts such as the filing, funding, and prosecution of a civil action." (2nd Opp at 9:27-10:2.) Plaintiffs nevertheless argue that the Court should simply ignore the fact that the Board authorized the advancement of *legal fees for a pending civil litigation* and solely consider the fact that a "Board's authorizations, standing alone, does not constitute protected activity." (*Id.* at 11:2-5.) The *very purpose* of the board authorization was to approve the advancement of legal fees for a pending civil litigation, and is thus not in any way "merely 'incidental' or 'collateral'" to the Board's authorization, as Plaintiffs' assert without analysis. (*Id.* at 11:2-5.)

Plaintiffs cite to *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal. App. 4th 1264 in an attempt to highlight the purported distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim. In *Hylton*, the plaintiff filed a complaint against his former attorney, who in turn filed an anti-SLAPP motion. The trial court found the attorney did not establish his initial burden of showing the claims arose from protected petitioning activity because the gravamen of claims were that the attorney <u>engaged in non-petitioning activity</u>. The Court also noted that the attorney cited no pertinent authority suggesting a client's action against his attorney is subject to the anti-SLAPP statute merely because some of the allegations refer to the attorney's actions in court.

In contrast, here, Snopes has demonstrated that Plaintiffs' claims arose from conduct by

8

Snopes that constituted protected petitioning activity—specifically, that the Snopes' Board of Directors decided to advance attorneys' fees for its employees, which is a litigation funding decision. As explained in the moving papers, the California Supreme Court has held that communicative conduct, such as the funding of a civil action, constitutes protected activity.

## IV. PLAINTIFFS CANNOT SHOW A PROBABILITY OF PREVAILING ON THEIR LITIGATION FUNDING CLAIMS

### A. Plaintiffs Cannot Show Demand Futility, and Thus Lack Standing

The preliminary and dispositive issue regarding plaintiffs' derivative litigation funding claims is their failure to make a pursuit demand on Snopes' board of directors (the "Board"). Corporations Code section 800, subdivision (b), <u>requires</u> the plaintiff in a derivative action to first demand action from Snopes' board, because the "claim belongs to the corporation, not to the plaintiff." (*Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 248 (*Apple*), citation omitted.)

Yet no demand was made, even though one of the very plaintiffs asserting the derivative claims is Richmond, a member of Snopes' Board. Instead, Plaintiffs feign demand futility, the "<u>limited exception</u> to the rule that the corporation is the proper party plaintiff." *Apple*, 18 Cal.App.5th at 232. Plaintiffs have not—and cannot—show demand futility for the simple reason that *demand on the board was not futile*.

A presuit demand is excused if a <u>majority</u> of Snopes three directors are interested or not independent, such that demand on the Board would be futile. (*See Bader v. Anderson* (2009) 179 Cal.App.4th 775, 791.) Interestedness and lack of independence is determined on a "director-by-director basis" for each of Snopes' three board members: Richmond, Mikkelson, and Westbrook. (*See Apple*, 18 Cal.App.5th at 232.) Absent a director-by-director showing to the contrary, directors are presumed to be disinterested and independent. (*See Charter Township of Clinton Police and Fire Retirement System v. Martin* (2013) 219 Cal.App.4th 924, 940 (*Charter Township*.) Plaintiffs concede Brad Westbrook is disinterested and independent. (TAC, ¶¶ 204(f), 325(f), 350(f).) Thus, the only issue here is whether Plaintiff Richmond—the very person asserting these derivative claims—is interested or dependent such that he would not vote in favor of his own presuit demand.

In the demand futility context, Richmond is *exact opposite* of an interested or independent

9

director.  In fact, one could only assume Richmond would vote in favor of his own presuit demand, a point Plaintiffs do not dispute.  Plaintiffs make no showing of Richmond's interestedness (i.e., a personal detriment or benefit arising out of the challenged transaction that is not equally shared by all the stockholders), or lack of independence (i.e., that Richmond was under Mikkelson's influence or control).  Instead, Plaintiffs argue a demand on Richmond is futile because Richmond is a party to this lawsuit and thus cannot be expected to fairly evaluate the demand.  (2nd Opp at 18:12-14.)  None of the cases cited by Plaintiffs support its attempt to carve out a new exception to the presuit demand requirement, which would effectively allow a single board member to circumvent the presuit demand requirement.  In any event, Plaintiffs do not even explain how Richmond's posture in this litigation somehow renders his vote on his own demand futile

In addition, Plaintiffs have not shown this is the "rare case where a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists."  (*See Bader v. Anderson* (2009) 179 Cal.App.4th 775, 791.)  "If the first prong [of interestedness and dependence] is not satisfied, there is a presumption that the Board's actions were the product of a valid exercise of business judgment."  (*Charter Township* (2013) 219 Cal.App.4th at 940.)  Rather than rebut this presumption, plaintiffs assert the circular argument that this second prong is met because the business judgment rule does not apply.  (2nd Opp at 19:2-7.)  However, to satisfy the second prong, plaintiffs "must plead sufficient particularized facts to 'raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.' [Citations.]"  (*Ibid.*)  Plaintiffs do not address how they have pleaded these facts, effectively conceding the argument.

**B.  Plaintiffs have not Established a Probabilty Prevailing on its Claims**

As explained by Snopes in its moving papers, the decision to advance fees was made pursuant to and in accordance with Section 317(f) of the Corporations Code. The purpose of Section 317 is to allow a corporation the discretion to indemnify its agents and/or advance their fees, even before a final disposition of the case.  *See* Corp. Code § 317(b), (c), and (f).  Here, Snopes has advanced fees under Section 317(f) upon receipt of the defendants' undertaking.  Thus,

the provisions of Sections 317(b) and (c), which include the "by reason of the fact" requirement, are not applicable to Snopes' advancement of fees. Contrary to Plaintiffs' argument (see Pl. Opp. at p. 14), Section 317(f) does not include the "by reason of the fact" requirement relied upon by Plaintiffs, nor do Snopes' Bylaws. In fact, both Section 317(f) and the Bylaws allow for the advancement of defense expenses to an "agent", without further qualification or requirements as to the scope of the underlying suit. Therefore, there is no violation of Section 317(f), and thus no "unlawful" conduct under Section 17200.

Moreover, Plaintiffs misunderstand court's reasoning in *Allergia, Inc. v. Bouboulis* (S.D. Cal. 2017) 229 F.Supp.3d 1150. In *Allergia*, the Court held that the indemnification provision of Section 317(c) and the advancement statute in Section 317(f) were "conceptually and procedurally separate." (*Id.* at 1155.) Thus, while the Section 317(c) indemnification provision required certain showings, including that a director or officer seeking indemnity by subject to an action "by reason of the fact" that they were a corporate agent, for a claim for advancement under Section 317(f), all that is required is (1) authorization for advancement; and (2) 'an undertaking by or on behalf of the agent to repay that amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section'." (*Id.* at 1155, 1157.)

In evaluating whether there was corporate authorization for the advancement, the *Allergia* court looked to the Bylaws, which only afforded advancement rights to "a director or officer." (*Id.* at 1154.) Notably, the Snopes Bylaws do not contain any such limitation; instead, the advancement rights in Snopes Article 6.3 extend to any "agent" of the corporation, which in turn is broadly defined in Section 310(a). Thus, defendants need only be agents of SMG to be entitled to advancement of legal fees, and not acting as a director or officer as in *Allergia*. Therefore, there is no violation of Section 317(f), and thus no "unlawful" conduct under Section 17200.

## V.  **CONCLUSION**

For all of the reasons stated here and in Snopes' moving papers, the special motion to strike pursuant to California Code of Civil Procedure 425.16 should be granted.

DATED: August 2, 2019

PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP

By: _____
    Paul A. Tyrell
    Ryan C. Caplan
    P. Jacob Kozaczuk
    Attorneys for Defendant/Cross-Complainant,
    SNOPES MEDIA GROUP, INC., formerly
    known and having appeared as Bardav Inc

12

MEMORANDUM OF POINTS AND AUTHORITIES ISO SNOPES' SPECIAL MOTION TO STRIKE THIRD AMENDED COMPLAINT
DOCS 125263-000001/3727506.2

Page 491 of 732

DREW W. SCHOENTRUP, Cal. Bar No. 279830
4150 Mission Blvd., Suite 220
San Diego, CA 92109
Telephone: 509.995.5654
Email: drew@proper.io

Attorney for Plaintiffs/Cross-Defendants/Cross-Complainants
PROPER MEDIA, LLC, CHRISTOPHER RICHMOND, DREW
SCHOENTRUP, and PUBLIFE, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company; CHRISTOPHER RICHMOND, an individual; and DREW SCHOENTRUP, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BARDAV INC., a California corporation; DAVID MIKKELSON, an individual; VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual, <br><br> Defendants. | Lead Case No. 37-2017-00016311-CU-BC-CTL <br><br> (*Consolidated with* 37-2018-00004335-CU-MC-CTL) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS DREW SCHOENTRUP AND CHRISTOPHER RICHMOND'S OPPOSITION TO SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT** <br><br> Date: August 16, 2019 <br> Time: 10:30 a.m. <br><br> Dept.: C-68 <br> Judge: The Hon. Richard S. Whitney <br><br> Complaint Filed: May 4, 2017 <br> Trial Date: October 4, 2019 |

1

MEMO. OF POINTS AND AUTH. IN SUPPORT OF SCHOENTRUP AND RICHMOND'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 4

II.  STATEMENT OF FACTS.................................................................. 4

  A.   FACTUAL BACKGROUND.................................................................. 4

  B.   RELEVANT PROCEDURAL BACKGROUND ........................................ 6

    1.   *Plaintiffs' File Their Second Amended Complaint.* ........................... 6

    2.   *The Court Rules On Mikkelson's Demurrer To Plaintiffs' Second Amended Complaint.* .. 6

    3.   *Circumstances Change, New Facts Emerge And Defendants Engage In Additional Misconduct After Plaintiffs File Their Second Amended Complaint.*........................... 7

    4.   *The Court Grants Plaintiffs' Request For Leave to Amend Their Complaint Over The Same Arguments Now Presented By Snopes.* ........................................ 8

    5.   *Discovery is Ongoing* ........................................................... 9

III. ARGUMENT......................................................................................... 9

  A.   PLAINTIFFS CAN MAKE DERIVATIVE CLAIMS WITHOUT NOTICE TO THE BOARD. ................. 10

  B.   PLAINTIFFS HAVE ADEQUATELY ALLEGED DEMAND FUTILITY. ........................................ 10

    1.   *There Is No Majority Of "Disinterested And Independent" Directors.* ........................... 11

    2.   *The Business Judgment Rule Does Not Apply.* ................................................. 12

  C.   PLAINTIFFS' FIFTH CLAIM FOR RELIEF FOR CORPORATE WASTE DOES NOT FAIL. ................. 13

  D.   SCHOENTRUP AND RICHMOND CAN REPRESENT SNOPES' INTERESTS.................................... 14

  E.   A SINGLE DIRECTOR IS NOT A MAJORITY........................................................ 16

IV.  CONCLUSION .................................................................................. 16

MEMO. OF POINTS AND AUTH. IN SUPPORT OF SCHOENTRUP AND RICHMOND'S OPPOSITION TO SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3 *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217 (1995) .................................................... 9

4 *Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222 (2017) ............................................. 11, 13

5 *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ...................................................................... 11

6 *Aubry v. Tri-City Hosp. Dist.*, 2 Cal. 4th 962 (1992) ............................................................ 9

7 *Biren v. Equal. Emergency Med. Grp., Inc.*, 102 Cal. App. 4th 125 (2002) ....................... 13

8 *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968 (2004) ........................................... 9

9 *Goodman v. Kennedy*, 18 Cal. 3d 335 (1976) ...................................................................... 9

10 *Gottesfeld v. Richmaid Ice Cream Co.*, 115 Cal. App. 2d 854 (1953) ................................ 12

11 *In re RasterOps Corp. Sec. Litig.*, No. C 92-20115 RMW EAI, 1993 WL 476651 (N.D. Cal. 1993) ............ 14

12 *Koshaba v. Koshaba*, 56 Cal. App. 2d 302 (1942) ............................................................... 10

13 *Kruss v. Booth*, 185 Cal. App. 4th 699 (2010) .................................................................... 13

14 *Larson v. Dumke*, 900 F.2d 1363 (9th Cir. 1990) .......................................................... 14, 15

15 *Natomas Gardens Inv. Grp. LLC v. Sinadinos*, No. CIV.S-08-2308FCD/KJM, 2009 WL 1363382 (E.D. Cal.

16 2009) .............................................................................................................................. 14, 15

17 *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572 (2001) ........................... 12

18 *Richter v. CC-Palo Alto, Inc.*, No. 5:14-CV-00750-EJD, 2017 WL 4236992 (N.D. Cal. Sept. 25, 2017) ...... 14

19 *Shields v. Singleton*, 15 Cal. App. 4th 1611 (1993) ...................................................... 10, 12

20 *Smith v. Dorn*, 96 Cal. 73 (1892) ...................................................................................... 12

21 *Wickersham v. Crittenden*, 106 Cal. 329 (1895) ................................................................ 12

22 *Zarowitz v. Bank America Corp.*, 866 F.2d 1164 (9th Cir. 1988) ....................................... 14

23 **STATUTES**

24 Code of Civil Proc. § 422.10 ................................................................................................ 9

25 Code of Civil Proc. § 589 ..................................................................................................... 9

26 Corporations Code § 800(b)(2) ........................................................................................... 10

27

28

MEMO. OF POINTS AND AUTH. IN SUPPORT OF SCHOENTRUP AND RICHMOND'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

# I.    **INTRODUCTION**

Plaintiff-Shareholders Drew W. Schoentrup ("Schoentrup") and Christopher Richmond ("Richmond") (together the "Plaintiffs") hereby oppose Snopes Media Group, Inc.'s ("Snopes") Demurrer to Plaintiffs' Third Amended Complaint ("Demurrer"). At issue in Snopes' Demurrer are Plaintiffs' derivative causes of action, filed on behalf of and for the benefit of Snopes against Defendant David Mikkelson ("Mikkelson").

Snopes' Demurrer is a near verbatim copy of the arguments before this Court in Snopes' opposition to Plaintiffs' motion for leave to amend their complaint; arguments this Court previously found unpersuasive. Specifically, the Court has already declined to rule, as a matter of law, that Plaintiffs cannot allege demand futility; declined to rule, as a matter of law, that Plaintiffs Schoentrup and Richmond cannot serve as fair and adequate representatives of Snopes; and declined to rule, as a matter of law, that Plaintiffs' derivative claims were protected by the business judgment rule.

The fact of the matter is that Schoentrup and Richmond are the only shareholders who can and will challenge Snopes Board of Directors and Mikkelson's actions given that Snopes' three other shareholders approved and benefitted from the complained-of conduct. Furthermore, the futility of demand is beyond dispute; at all relevant times, the number of disinterested Snopes directors has been zero or one, too small to correct Mikkelson and the Boards' misconduct.

# II.    **STATEMENT OF FACTS**

## A.    **Factual Background**

From August 2015 through May 2017, Plaintiff Proper Media, LLC ("Proper Media") a San Diego-based Internet media company, and its two founding members, Schoentrup and Richmond, provided content and advertising management services to Snopes and its web property Snopes.com pursuant to a General Services Agreement ("GSA"). (Declaration of Drew W. Schoentrup ("Schoentrup Decl.") at ¶ 8, Ex. 3 (hereinafter "TAC") at ¶¶ 42-44.) Defendants Vincent Green ("Green") and Ryan Miller ("Miller") previously worked for and were members of Proper Media. (*Id*. at ¶¶ 31-32, 74-75.)

Mikkelson and his then-wife Barbara Mikkelson ("Barbara") founded Snopes in 2003 and each owned one share of the company's two shares of stock, creating two 50% ownership interests in the company. (TAC at ¶ 39.) In July 2016, nearly a year into Proper Media's work for Snopes under the General Services Agreement, and after Mikkelson and Barbara's contentious divorce, Barbara decided to sell her 50% share (the "Barbara Share") to Proper Media. (*Id.* at ¶¶ 45-47.) Because of the nature of Snopes' corporate organization, it was decided that the five original members of Proper Media—Plaintiffs Schoentrup and Richmond, Defendants Green and Miller, and nominal Defendant Tyler Dunn ("Dunn") (collectively, the "Proper Media Members")—would jointly acquire Barbara's single share of Snopes stock in proportion to each member's respective equity interest in Proper Media. (*Id.* at ¶ 47.) Specifically, the Barbara Share, which was supposed to be jointly held by the five original members of Proper Media for the benefit of Proper Media, was transferred to the five individual Proper Media members as follows: Schoentrup and Richmond each held 40% of the Barbara Share (or a 20% interest in Snopes). (*Id.* at ¶¶ 45-50.) Green and Miller each held 6.66% of the Barbara Share (or a 3.33% interest in Snopes). (*Id.*) And Dunn held 6.68% of the Barbara Share (or a 3.34% interest in Snopes). (*Id.*)

Starting in late 2016 and into early 2017, Mikkelson conspired with Green and Miller to deny Schoentrup and Richmond their rights as Snopes shareholders and, ultimately, to seize control of Snopes. Mikkelson, as the owner of 50% of Snopes' equity, lacked a controlling interest in the company. (*Id.* at ¶ 71.) With Green and Miller's allegiance, Mikkelson believed they could command 56.67% of Snopes, giving them a majority vote and, in their minds, free reign over the company. (*Id.* at ¶¶ 70-71.)

To accomplish this, Mikkelson induced both Green and Miller, as Proper Media employees and members, to pursue Mikkelson's personal interests at Snopes' and Proper Media's expense. (*Id.* at ¶¶ 70-93.) Moreover, in order to weaken Proper Media and marginalize Schoentrup and Richmond, Mikkelson terminated the GSA on March 10, 2017 and refused to communicate further with Schoentrup and Richmond. (*Id.* at ¶ 84.) More recently, Snopes has refused to respond to Schoentrup and Richmond's valid shareholder demands for inspection of Snopes' books and records, in clear violation of Schoentrup and Richmond's undisputed rights as shareholders. (*Id.* at

¶¶ 94-103.) These actions demonstrate an unmistakable goal: for Mikkelson, Green and Miller to drive Schoentrup and Richmond into financial ruin and run Snopes without oversight.

Mikkelson has harmed not only Proper Media and the Individual Plaintiffs, but Snopes itself. Since at least 2015 and continuing to the present day, Mikkelson has misused Snopes funds for personal purposes, including to pay himself an exorbitant salary and treating Snopes as a personal piggybank, using its funds for legal fees related to his divorce from Barbara, a honeymoon trip to Asia with his new wife (a current Snopes employee), and personal travel expenses. (*Id.* at ¶¶ 61-69.) Moreover, Mikkelson is now using Snopes' money to fund his, Green, and Miller's participation in the instant lawsuit, including their pursuit of affirmative counterclaims. (*Id.* at ¶¶ 119-134; *See* Schoentrup Decl., at ¶ 9, Exs. 4, 5, 6.)

**B.     Relevant Procedural Background**

**1.     Plaintiffs' File Their Second Amended Complaint.**

On May 4, 2017, Plaintiffs filed their original complaint against Defendants Snopes and Mikkelson. (*See* Register of Actions ("ROA"), #1.) Shortly thereafter, on May 16, 2017, Plaintiffs filed their First Amended Complaint against Snopes and Mikkelson. (*See Id.* at #8.) On August 22, 2017, the Court sustained Snopes' partial demurrer to Plaintiffs' First Amended Complaint with leave to amend. (*Id.* at # 99.) On September 6, 2017, Plaintiffs filed their Second Amended Complaint, asserting claims against Snopes, Mikkelson, Green, Miller, and (nominally) Dunn. (*Id.* at #126.)

**2.     The Court Rules On Mikkelson's Demurrer To Plaintiffs' Second Amended Complaint.**

On January 26, 2018, the Court granted in part, and denied in part, Defendant Mikkelson's Demurrer to Plaintiffs' Second Amended Complaint, sustaining the demurrer to Plaintiffs' claim for Abuse of Control on the ground that it was repetitive of and subsumed within Plaintiffs' properly pled claim for breach of fiduciary duty, and finding that Plaintiff Proper Media (but notably, not Plaintiffs Schoentrup and Richmond) lacked standing to pursue claims for Corporate Waste, Breach of Fiduciary Duty, and Removal of Director against Defendant Mikkelson. (*See generally* Schoentrup Decl., at ¶ 5, Ex. 1 at pp. 1-4.)

**3.** **Circumstances Change, New Facts Emerge And Defendants Engage In Additional Misconduct After Plaintiffs File Their Second Amended Complaint.**

After the SAC was filed, circumstances between the parties have changed, Plaintiffs have discovered new facts, and the Defendants have engaged in new misconduct that gave rise to additional claims in the TAC and required modification of preexisting ones. Each new claim arises from facts that postdate the SAC and could not have been asserted at the time the SAC was filed.

**a.** **Snopes Wrongfully Advances The Individual Defendants' Attorneys' Fees In This Litigation.**

In September, October, and November of 2017, Snopes' Board of Directors unlawfully authorized the advancement of attorneys' fees for Green, Mikkelson, and Miller, respectively. (*See* Schoentrup Decl., at ¶ 9, Exs. 4, 5, 6.) The Board of Directors' actions are voidable on the ground they are interested director transactions that violate the Corporations Code and Snopes' Bylaws. (TAC at ¶¶ 127-28.) Plaintiffs did not discover these advances until Snopes produced Exhibits 4, 5, and 6 in December of 2017, after the filing of the SAC. (Schoentrup Decl., at ¶ 9.)

**b.** **Snopes Breaches the Parties' September 2016 Settlement Agreement.**

After Plaintiffs filed their SAC, Snopes breached a separate, preexisting agreement between it and Proper Media. Snopes did not breach this agreement until November 2017, and Proper Media did not suffer damages until July to October of 2018. In or around Fall 2016, and after selling her share, Barbara demanded that Snopes pay her a percentage of Snopes' non-distributed net profit earned during the first six months of 2016. (TAC at ¶ 109.) Barbara leveraged her demand by threatening to expose "dirt" about Mikkelson if Snopes did not acquiesce. (*Id*. at ¶ 110.)

Concerned, Mikkelson instructed Proper Media to settle with Barbara for a six-figure amount and to make those settlement payments from the advertising revenues Proper Media collected on behalf of Snopes. (*Id*. at ¶ 111.) In other words, Mikkelson 1) instructed Proper Media to pay Barbara with monies that Proper Media collected on Snopes' behalf; and 2) promised that those payments would be deducted not from Proper Media's own earnings, but from Snopes'. (*Id*.)

Proper Media accepted, creating a binding "September 2016 Agreement" between the parties. (*Id*.) In reliance on the September 2016 Agreement, Proper Media, Schoentrup and Richmond settled with Barbara on or about October 21, 2016 via the "Barbara Settlement Agreement," making payments from Snopes' advertising revenues as Mikkelson had instructed. (*Id*. at ¶¶ 114-15.)

Despite proposing, and agreeing to, this arrangement, Mikkelson and Snopes now contend that Proper Media's act of paying the Barbara Settlement Agreement from Snopes' advertising revenues was improper, refuse to reimburse Proper Media for those payments, and have demanded that earlier reimbursements from Snopes to Proper Media be repaid. (TAC at ¶¶ 117-118.) Snopes did not breach the parties' agreement until November 2017, when it objected to Proper Media's withholding of the payments it had made to Barbara. (*Id*. at ¶ 116.)

### c. Snopes Launches A Defamatory and Misleading GoFundMe Campaign.

This litigation has only heightened Mikkelson and Snopes' animus toward Plaintiffs, as shown by a defamatory and misleading GoFundMe campaign established by Snopes which libels Proper Media and misleads potential donors (the "GoFundMe Campaign"). The GoFundMe Campaign, which has raised over $1,200,000 from 40,000 donors since its inception in July 2017, fraudulently represents that Snopes needs donations to satisfy payroll, operating expenses, and legal expenses of this lawsuit, when in fact Mikkelson is diverting this money to himself, Green and Miller to cover legal fees they are personally incurring in connection with this litigation. (TAC at ¶¶ 135-39.) The GoFundMe Campaign also libels Proper Media by representing that Snopes' website is "held hostage" by Proper Media, who has refused to offer "cooperation, coordination, and courtesy" in connection with the termination of the GSA, and by representing that Proper Media has withheld "100 percent of [Snopes'] earnings for months on end[,]" none of which is true. (*Id*. at ¶¶ 145-50.)

### 4. The Court Grants Plaintiffs' Request For Leave to Amend Their Complaint Over The Same Arguments Now Presented By Snopes.

Plaintiffs were required to file a motion for leave to amend on January 9, 2019 because Snopes and the other defendants would not stipulate to allow the Plaintiffs to amend, despite also

seeking leave to amend their own respective cross-complaints. On April 2, 2019, the Court, after considering near verbatim arguments presented by Snopes in its pending Demurrer, declined to rule, as a matter of law, that Plaintiffs cannot allege demand futility; declined to rule, as a matter of law, that Plaintiffs Schoentrup and Richmond cannot serve as fair and adequate representatives of Snopes; and declined to rule, as a matter of law, that Plaintiffs' derivative claims were protected by the business judgment rule. (*See* Schoentrup Decl. at ¶ 7, Ex. 2.)

### 5. Discovery is Ongoing

Discovery in this litigation is ongoing. The parties have served and responded to written discovery, including Requests for Production, Special and Form Interrogatories, and Requests for Admission, but the parties' respective document productions are not complete. (Schoentrup Decl., at ¶ 10.) Indeed, despite an order from this Court, Snopes has yet to produce the majority of its private channel Slack communications, the cloud-based instant-messaging platform that Mikkelson, Green, and Miller used to communicate with each other and former Proper Media employees regarding their scheme to take control of Snopes and breach their respective fiduciary duties, as set forth in Plaintiffs' motion to compel, filed on December 21, 2018. (*See* generally ROA # 580 (Plaintiffs' December 21, 2018 Motion To Compel Discovery.))

## III. __ARGUMENT__

A demurrer is a pleading used to test the legal sufficiency of other pleadings. That is, it raises issues of law, not fact, regarding the form or content of the opposing party's pleading. Code of Civil Proc. §§ 422.10, 589; *see Donabedian v. Mercury Ins. Co*., 116 Cal. App. 4th 968, 994 (2004). For the purpose of testing the sufficiency of a cause of action, the demurrer admits the truth of all material facts properly pleaded. *Aubry v. Tri-City Hosp. Dist*., 2 Cal. 4th 962, 966-967 (1992). Even if a demurrer is sustained, leave to amend the complaint is routinely granted. Courts are very liberal in permitting amendments, not only where a complaint is defective in form, but also where substantive defects are apparent: "Liberality in permitting amendment is the rule, if a fair opportunity to correct any defect has not been given." *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1227 (1995). Moreover, it is an abuse of discretion for the court to deny leave to amend

where there is any reasonable possibility that plaintiff can state a good cause of action. *Goodman v. Kennedy*, 18 Cal. 3d 335, 349 (1976).

When granting Plaintiffs' request for leave to file their Third Amended Complaint, and over opposition from Snopes nearly identical to the arguments presented in the instant Demurrer, this Court declined to rule, as a matter of law, that Plaintiffs cannot allege demand futility; declined to rule, as a matter of law, that Plaintiffs Schoentrup and Richmond cannot serve as fair and adequate representatives of Snopes; and declined to rule, as a matter of law, that Plaintiffs' derivative claims were protected by the business judgment rule. (Schoentrup Decl. ¶ 7, Ex. 2.) Rather than accept the Court's prior ruling, Snopes filed a Demurrer with near verbatim copies of the arguments that this Court already considered and found unpersuasive.

### A. Plaintiffs Can Make Derivative Claims Without Notice to The Board.

On February 5, 2018 and April 2, 2019, this Court upheld Schoentrup's and Richmond's right to assert derivative claims against Snopes' management. (Schoentrup Decl., at ¶¶ 5 and 7, Exs. 1 and 2.) On February 5, 2018, the Court further found that notice to the Snopes Board would have been futile, because the claims at issue concerned Mikkelson's alleged misconduct, and on April 2, 2019, the Court declined to rule, as a matter of law, that Plaintiffs' cannot allege demand futility. (*Id*.) Snopes fails to acknowledge these rulings and articulate why Schoentrup and Richmond are now ineligible to pursue derivative claims.

### B. Plaintiffs Have Adequately Alleged Demand Futility.

It is elementary that a shareholder can assert a derivative claim without making a demand on the Board if that demand would be futile. Corp. Code § 800(b)(2); *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1618 (1993) (plaintiff need not make a pre-suit demand on the Board if he demonstrates "such a demand on the board would have been futile"); *Koshaba v. Koshaba*, 56 Cal. App. 2d 302, 308 (1942) ("It is equally well settled, however, that such demand and refusal need not be alleged if the facts that are alleged demonstrate that such a demand would have been futile."). Based on a misunderstanding of the law and relevant facts, Snopes argues that Plaintiffs' derivative claims are defective because "demand on the board is futile only if a majority of the directors are implicated in the underlying alleged wrongful conduct." (MPA. at 14.) Snopes is wrong.

In deciding whether a plaintiff will be excused from making a demand on the board, the court evaluates "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Apple, Inc., v. Superior Court*, 18 Cal. App. 5th 222, 233 (2017) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)). "[F]utility is gauged by the circumstances existing at the commencement of a derivative suit." *Id*. "[T]he two-prong test . . . is disjunctive; accordingly, there is demand excusal if either prong is satisfied." *Id*. Although Plaintiffs need only show one of the two prongs to establish demand futility, here they can show both. Also, notably, Snopes presents no arguments in support of the second prong, effectively conceding that the activity underlying Plaintiffs' derivative claims was not the product of a valid exercise of business judgment. This alone is fatal to Snopes' demand futility argument.

### 1. There Is No Majority Of "Disinterested And Independent" Directors.

There is no majority of "disinterested and independent" directors who could have voted in favor of pursuing claims against Mikkelson. It is undisputed that at the time Plaintiffs filed their TAC in April 2019, Snopes' Board consisted of Mikkelson, Westbrook, and Richmond. (Richmond Decl., at ¶ 4.) However, on June 14, 2018, prior to the filing of the TAC, Mikkelson established a special litigation committee consisting only of Mikkelson and Westbrook (the "Litigation Committee"). (*Id.*, at ¶¶ 7-9.) Richmond is not a member of and in fact was expressly excluded from the Litigation Committee. (Richmond Decl., at ¶ 7-9; Ex. B at p. 7) The Litigation Committee "has the power to exercise all powers and authority of the Board with respect to" the instant litigation. (*Id.*) Accordingly, any pre-suit demand on the Board would have been controlled by the Litigation Committee—Mikkelson and Westbrook. Because Mikkelson is neither disinterested nor independent when it comes to a decision on whether to sue himself, there cannot possibly be a majority of disinterested directors on the two-member Litigation Committee who would have voted to pursue claims against Mikkelson.

But even if the relevant inquiry were to look at the full three-member Board in assessing demand futility, Plaintiffs would still prevail. Snopes erroneously asserts that a director is not "disinterested and independent" only if he is "implicated in the underlying alleged wrongful

conduct" and "received a personal financial benefit from the underlying conduct" or he is "beholden" to an interested director. (MPA. at 14-15.) Not so. Although these are two methods of establishing a reasonable doubt as to whether a director is "disinterested and independent," they are not the only methods. None of Snopes' cited case law suggests otherwise. *See Reed v. Norman*, 152 Cal. App. 2d 892 (1957) ("[N]o demand is necessary when conspiracy, fraud or criminal conduct of the defendants is charged . . . ."); *Gottesfeld v. Richmaid Ice Cream Co.*, 115 Cal. App. 2d 854 (1953) (complaint alleging "conspiracy among a majority of the directors" was sufficient to state demand futility); *Smith v. Dorn*, 96 Cal. 73, 78–79 (1892) (demand futility adequately pled where "complaint alleged that the board consisted of seven members, four of whom participated and assisted in the acts complained of"); *Wickersham v. Crittenden*, 106 Cal. 329, 331 (1895) (complaint stating "that the directors were all under control of [one director] and acting in conjunction with him" adequately pled demand futility). Rather, the relevant test is whether there are "facts specific to each director from which [the trier of fact] can [find a reasonable doubt] that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 587 (2001) (quoting *Shields*, 15 Cal. App. 4th at 1622). Here, both Richmond and Mikkelson are parties to this lawsuit with claims pending against each other. Neither can be expected to fairly evaluate whether to pursue claims against Mikkelson which will result in cutting off Mikkelson's (Richmond's) litigation adversary) access to corporate funds to pay for his personal litigation expenses and require Mikkelson to reimburse Snopes for his documented history of using the company for purely self-serving purposes.

### 2. The Business Judgment Rule Does Not Apply.

The second prong of the demand futility test is also met and is alone sufficient to establish demand futility. The challenged activities in Plaintiff's derivative claims for relief—Mikkelson's corporate waste, breaches of fiduciary duties, and the Board's written consents purporting to approve the advancement of legal fees to the Individual Defendants—are not subject to the business judgment rule. And Mikkelson and Westbrook, the Board members who purported to approve the unlawful written consents, are still members and constitute a majority of Snopes' current three-

member Board and the entirety of Snopes' Litigation Committee. "The business judgment rule is essentially a presumption that corporate directors act in good faith." *Kruss v. Booth*, 185 Cal. App. 4th 699, 728 (2010). Sensibly, that presumption does not apply "when circumstances inherently raise an inference of conflict of interest" between the voting directors and the corporation. *Id*. In other words, "the business judgment rule does not protect a director where there is a conflict of interest." *Biren v. Equal. Emergency Med. Grp., Inc*., 102 Cal. App. 4th 125, 138 (2002).

Here, Mikkelson has misused Snopes funds for personal purposes, including for legal fees related to his divorce from Barbara, a honeymoon trip to Asia with his new wife (a current Snopes employee), and personal travel expenses. (TAC. at ¶¶ 61-69.) Also, much of Mikkelson's unlawful conduct occurred when he purported to be the sole member of Snopes' Board, which renders any defense under the business judgment rule effectively moot.

Moreover, the challenged Board consents approving the advancement of attorneys' fees to Mikkelson, Green and Miller were authorized by two people: Westbrook and Mikkelson. (Schoentrup Decl., at ¶ 9, Exs. 4-6.) Westbrook's vote, standing alone, does not constitute a majority of directors required to transact corporate business under the Bylaws. (Richmond Decl., at ¶ 7, Ex. A, § 3.9.) Mikkelson cast the deciding vote. Mikkelson, in approving advancement of his own litigation expenses and those of his fellow defendants, elevated his personal interests above Snopes' interests. Moreover, Snopes already made, and this Court already rejected, the same "business judgment rule" argument in connection with Snopes' opposition to Plaintiffs' motion for leave to amend. (Schoentrup Decl., at ¶ 7, Ex. 2; ROA # 809.) Accordingly, the business judgment rule does not defeat Plaintiffs' derivative causes of action.

**C.    Plaintiffs' Fifth Claim for Relief For Corporate Waste Does Not Fail.**

Snopes' argues that Plaintiffs' fifth claim for relief for corporate waste is not properly plead because they did not include Westbrook in their futility allegations. (MPA. at 16.) Yet this claim was already alleged in Plaintiffs' Second Amended Complaint, this Court ruled that it was a derivate claim, and thus, it was "validly a part of the litigation." (Schoentrup Decl., at ¶ 5, Ex. 1 at 2); *see Apple Inc. v. Sup. Court*, 18 Cal. App. 5th 222, 246 (2017). While the TAC adds new misconduct to the Corporate Waste claim, the claim remains the same, i.e., Mikkelson has been

looting the company. At any rate, this is not a ground to sustain a demurrer because it can easily be cured by amendment, as this Court has already ruled. (Schoentrup Decl., at ¶ 5, Ex. 1 at 2.) For example, to the extent that the Court is inclined to determine that reference to Westbrook is necessary in paragraph 211 of the Third Amended Complaint, Plaintiffs can easily cure that by adding allegations similar to those set forth in paragraph 240.

**D.    Schoentrup and Richmond Can Represent Snopes' Interests.**

Snopes contends that Schoentrup and Richmond are not "fair and adequate representatives" given their direct claims against Snopes. (MPA. at 17-18.) That Schoentrup and Richmond simultaneously assert direct and derivative claims against Snopes does not render them inadequate representatives. Indeed, Snopes already made, and this Court already rejected, the same "fair and adequate representatives" argument in connection with Snopes' opposition to Plaintiffs' motion for leave to amend. (Schoentrup Decl., at ¶ 7, Ex. 2; ROA #809) ("It cannot be said, as a matter of law, Plaintiffs cannot fairly and adequately represent shareholders when there is no indication any other shareholders would pursue claims of alleged looting by Mikkelson. Most of the other shareholders are clearly aligned with Mikkelson.") Moreover, the "fact intensive analysis" of adequate representation of a plaintiff in a derivative suit is ill-suited for determination "at the pleading stage." *Richter v. CC-Palo Alto, Inc.*, No. 5:14-CV-00750-EJD, 2017 WL 4236992, at *8 (N.D. Cal. Sept. 25, 2017).

There is no per se rule prohibiting shareholders from simultaneously bringing both direct and derivative actions. *Larson v. Dumke*, 900 F.2d 1363, 1368 (9th Cir. 1990) (allowing direct and derivative claims to proceed); *Natomas Gardens Inv. Grp. LLC v. Sinadinos*, No. CIV.S-08-2308FCD/KJM, 2009 WL 1363382, at *15 (E.D. Cal. 2009); *In re RasterOps Corp. Sec. Litig.*, No. C 92-20115 RMW EAI, 1993 WL 476651, at *8 (N.D. Cal. 1993).[1] The case that Snopes cites, *Zarowitz v. Bank America Corp.*, 866 F.2d 1164 (9th Cir. 1988), does not hold otherwise. *Zarowitz* did not announce any bright line rule prohibiting a shareholder from bringing both direct and derivative causes of action. Again, Snopes made, and this Court already rejected, the same exact

---

[1] California courts have ruled that federal cases can be considered when making determinations under Corporations Code section 800. *Grosset v. Wenaas*, 42 Cal.4th 1100, 1115 n.10 (2008).

14

MEMO. OF POINTS AND AUTH. IN SUPPORT OF SCHOENTRUP AND RICHMOND'S OPPOSITION TO SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

1  argument. (Schoentrup Decl., at ¶ 7, Ex. 2; ROA #809) ("*Zarowitz* did not establish a per se rule

2  barring any shareholder who has a conflict of interest as serving as a representative.")

3       Perhaps more importantly, Schoentrup and Richmond are the only adequate representatives

4  of Snopes. Snopes contends it has six shareholders—Mikkelson, Green, Miller, Schoentrup,

5  Richmond, and Tyler Dunn. Of those six, three—Mikkelson, Green, and Miller—are actively

6  looting Snopes for their own personal gain. (TAC at ¶¶ 61-69, 119-134.) Indeed, Mikkelson, a

7  defendant who stands accused of embezzling Snopes' funds and breaching the fiduciary duties he

8  owes to the company and other shareholders, has gone so far as to place himself on the Litigation

9  Committee, charged with making decisions about this litigation—the very litigation in which

10  Mikkelson stands accused of putting his own interests above those of Snopes. (*Id.* at ¶¶ 240(g)-(j).)

11       Case law sensibly holds that, under these facts, the only fair and adequate representatives are

12  shareholders like Schoentrup and Richmond. *See Natomas Gardens*, 2009 WL 1363382, at *16

13  ("As the only shareholders who allegedly did not benefit from defendants' alleged unlawful

14  conduct, plaintiffs are not only uniquely situated to bring their derivative claim, but are also the

15  only shareholders willing to seek relief on behalf of the allegedly harmed companies.") (emphasis

16  added); accord *Larson*, 900 F.2d at 1368 (holding that the plaintiff was an adequate representative

17  despite simultaneously asserting direct claims against the corporation). If neither Schoentrup nor

18  Richmond can challenge Snopes' corporate actions, the foxes will guard the henhouse, using

19  Snopes' funds for any purpose whatsoever, without accountability. Snopes suggestion that Tyler

20  Dunn could bring derivative claims against Mikkelson was, just as above with Snopes other

21  arguments, already rejected by this Court. (Schoentrup Decl., at ¶ 7, Ex. 2; ROA # 809) ("There is

22  no indication [Tyler] Dunn would pursue the claims as such a small shareholder.")

23       Undeterred by this Court's previous findings, Snopes suggests in passing that Schoentrup's

24  role as counsel in this case precludes his ability to fairly and adequately represent Snopes. Snopes

25  cited authority does not stand for this legal conclusion. That Schoentrup is now counsel of record is

26  procedurally no different than the Plaintiffs' other counsel representing Plaintiffs for both their

27  direct and derivative causes of action.

28

MEMO. OF POINTS AND AUTH. IN SUPPORT OF SCHOENTRUP AND RICHMOND'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

**E.      A Single Director Is Not A Majority.**

Finally, in yet another recycled argument, Snopes suggests that Plaintiffs' use of "quorum" in their derivative causes of action somehow defeats the overwhelming support for demand futility established above. This is unavailing. As discussed above, any demand on the Board would have been futile. Westbrook is the only allegedly disinterested and independent Director, and, by himself, is unable to make corporate decisions on behalf of the Board because a single Director does not constitute a *majority* under the Bylaws. Moreover, without Mikkelson, Westbrook is the sole member of the Litigation Committee, and cannot, by himself, make corporate decisions on behalf of the Litigation Committee because a single Director does not constitute a *majority* under the Bylaws. At any rate, Plaintiff's use of "quorum" in their claims for relief is not a ground to sustain a demurrer because it can easily be cured by amendment. For example, to the extent that the Court is inclined to determine that "quorum" should be replaced by "majority," Plaintiffs can easily make those changes by amendment. Accordingly, the handful of references to "quorum" in Plaintiffs' seventh, fifteenth, and seventeenth claims for relief can easily be amended with "majority." Doing so would obviate Snopes' theory that "Plaintiffs attempt to sidestep" the demand futility analysis.

**IV.      CONCLUSION**

For the foregoing reasons, Plaintiffs Schoentrup and Richmond respectfully request that the Court deny Snopes' Demurrer to Plaintiffs' Third Amended Complaint.


Dated:  August 5, 2019                    Respectfully submitted,


                                          By: /s/ Drew W. Schoentrup
                                              Drew W. Schoentrup

                                          Attorney for Plaintiffs/Cross-Defendants/Cross-
                                          Complainants PROPER MEDIA, LLC,
                                          CHRISTOPHER RICHMOND, DREW
                                          SCHOENTRUP, and PUBLIFE, LLC

MEMO. OF POINTS AND AUTH. IN SUPPORT OF SCHOENTRUP AND RICHMOND'S OPPOSITION TO
SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

1 Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
2 P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
3    SAVITCH LLP
525 B Street, Suite 2200
4 San Diego, California 92101
Telephone:    619.238.1900
5 Facsimile:    619.235.0398
E-mail:    paul.tyrell@procopio.com
6         ryan.caplan@procopio.com
          jacob.kozaczuk@procopio.com
7
Attorneys for Defendant/Cross-Complainant,
8 SNOPES MEDIA GROUP, INC., formerly known and
having appeared as Bardav Inc

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10             COUNTY OF SAN DIEGO, CENTRAL DIVISION

11

| | |
|---|---|
| 12 PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, 13 an individual, and DREW SCHOENTRUP, an individual, | Case No. 37-2017-00016311-CU-BC-CTL (consolidated with Case No. 37-2018-00004335-CU-MC-CTL) |
| 14                    Plaintiffs, 15 v. 16 BARDAV INC, a California corporation; and 17 DAVID MIKKELSON, an individual, VINCENT GREEN, an individual; RYAN MILLER, an 18 individual; and TYLER DUNN, an individual, | **REPLY BRIEF IN SUPPORT OF DEFENDANT/CROSS-COMPLAINANT SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT** |
| 19                    Defendants, | Date:       August 16, 2019 Time:       10:30 a.m. Dept.:      C-68 Judge:      Hon. Richard S. Whitney |
| 20 21 AND RELATED CROSS-ACTIONS 22 | Complaint Filed:    May 4, 2017 Trial Date:        October 4, 2019 ***IMAGED FILE*** |

23

24

25

26

27

28

Defendant Snopes Media Group, Inc., formerly known and having appeared as Bardav Inc ("Snopes"), respectfully submits this Reply in support of its Demurrer to the Third Amended Complaint ("TAC") filed by Plaintiffs Proper Media, LLC ("Proper Media"), Drew Schoentrup ("Schoentrup"), and Christopher Richmond ("Richmond") (collectively, "Plaintiffs").

## I.   **INTRODUCTION**

Rather than address the allegations of the TAC (the appropriate focus on demurrer), Plaintiffs' opposition relies on rulings made under differing standards and cites to various allegations outside the pleading at issue. In so doing, Plaintiffs fail to overcome the irrefutable and dispositive reality of the TAC: that, based on the facts alleged therein, there is a majority of disinterested and independent directors at Snopes with respect to the purported derivative claims, rendering Plaintiffs' attempts to plead futility of a pre-lawsuit demand defective as a matter of law.

Plaintiffs' derivative claims fall under two categories: alleged breaches of fiduciary duty by defendant David Mikkelson and alleged misconduct by Snopes' board of directors. In an effort to blur the lines, Plaintiffs misrepresent the applicable tests for assessing futility in the context of these allegations. Namely, Plaintiffs seek to apply the *Aronson* test, which pertains to claims of board misconduct, to their allegations that defendant David Mikkelson independently breached his fiduciary duties, which would be analyzed under the *Rales* test. Notably, the *Rales* test does not separately evaluate whether the alleged misconduct involved the exercise of business judgment, and instead evaluates whether the board as it exists at the time of the derivative suit *could* exercise independent and disinterested business judgment in responding to a pre-litigation demand. (*Leyte-Vidal v. Semel* (2013) 220 Cal.App.4th 1001, 1010.) Under this standard, the court looks simply at the present makeup of the board. On the facts pleaded in the TAC, the current board is comprised of a majority of disinterested and independent directors with respect to the derivative claims.

With respect to Plaintiffs' claims concerning alleged board misconduct, Plaintiffs misapply the *Aronson* test. Preliminarily, the TAC pleads no facts that these board decisions were not taken in good faith or upon being adequately informed, as is required. Moreover, the alleged misconduct itself (the advancement of litigation expenses upon receipt of undertakings) is expressly authorized by the Corporations Code and has been similarly condoned by the courts in similar situations. As

such, it cannot rise to the level of being "so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests' and was 'essentially inexplicable on any ground other than bad faith.'" (*Lenois v. Lawal* (Del. Ch., Nov. 7, 2017) No. CV 11963-VCMR, 2017 WL 5289611, at *10.) As the TAC contains no facts satisfying the futility requirement, the derivative claims fail as a matter of law.

Finally, Plaintiffs cannot fairly and adequately serve as derivative plaintiffs for Snopes given their conflicts of interest. This has become all the more apparent following the Court's granting leave to amend, as Schoentrup has since assumed the role of sole counsel of record for all plaintiffs in their claims against Snopes, as well as attempting to serve as derivative plaintiff on Snopes' behalf. These competing fiduciary duties render Schoentrup (and his client, Richmond), incapable of fairly and adequately representing Snopes' interests in this lawsuit. For all these reasons, Snopes respectfully requests the Court sustain its demurrer without leave.

## II. THE COURT'S PREVIOUS ORDER GRANTING OF LEAVE TO AMEND IS NOT DISPOSITIVE ON DEMURRER, AND PLAINTIFFS' RELIANCE ON THAT RULING IS MISPLACED

Plaintiffs erroneously argue that the prior ruling on their motion for leave to amend is dispositive of Snopes' demurrer. This is contrary to controlling authority recognizing the preferred practice of disposing of proposed defective claims by sustaining a demurrer after granting leave to amend. "[E]ven if the proposed legal theory is a novel one, 'the preferable practice would be to permit the amendment and allow the parties to test its legal sufficiency by demurrer, motion for judgment on the pleadings or other appropriate proceedings.'" (*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1048 [quoting *California Casualty Gen. Ins. Co. v. Superior Court* (1985) 173 Cal.App.3d 274, 280].) "Should a general demurrer ultimately be sustained to the proposed defense, the appellate court would at least be apprised of the ground on which the proposed defense was rejected (see Code Civ. Proc., § 430.60) and thus be in a position to focus its attention on the appropriate considerations on review." (*California Casualty Gen. Ins. Co.*, *supra*, 173 Cal.App.3d 274, 281 disapproved of on other grounds by *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390; cf. *Weeks v. Roberts* (1968) 68 Cal.2d 802, 807.)

Regardless, the prior rulings did not "uphold" Plaintiffs' right to assert these new derivative claims against Snopes, as Plaintiffs contend. (*See* Opposition at p. 10:11-18.) Snopes is not bound by the Court's ruling on the demurrer brought by a separate defendant (Mikkelson), and Plaintiffs fail to rebut this authority. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.) Similarly, simply granting leave to amend does not address the pleading deficiencies in the derivative claims, which are appropriately disposed of by demurrer. (See *Kittredge Sports Co.*, *supra*, 213 Cal.App.3d at 1048; *California Casualty Gen. Ins. Co.*, *supra*, 173 Cal.App.3d at 280.) Where amended claims are defective, as is the case here, the court properly sustains a demurrer even after having granted leave to amend.

Indeed, courts routinely sustain demurrers to derivative claims where the plaintiff is unable to plead that a pre-lawsuit demand on the board of directors would be futile. (See, e.g., *Bader v. Anderson* (2009) 179 Cal.App.4th 775, 803 [appellate court affirmed judgment of dismissal following trial court sustaining demurrer as to derivative claims without leave to amend for inability to plead futility]; *Leyte-Vidal v. Semel* (2013) 220 Cal.App.4th at 1007 [accord]; *Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 258 (*Apple*) [demurrer sustained as to derivative action because plaintiff did not allege sufficient facts to prove that pre-suit demand was futile]; *Foss on Behalf of Quality Systems Inc. v. Barbarosh* (C.D. Cal., July 25, 2018,) No. SACV1400110CJCJPRX, 2018 WL 5276292, at *8 [motion to dismiss granted with prejudice where shareholder did not comply with the shareholder demand requirement and demand futility was not adequately pleaded, nor could the pleading be adequately amended].) Here, Plaintiffs have not, and cannot, plead futility as to their derivative claims.

## III. PLAINTIFFS' DERIVATIVE CAUSES OF ACTION FAIL BECAUSE PLAINTIFFS HAVE NOT, AND CANNOT, PLEAD FUTILITY[1]

Plaintiffs misrepresent the analyses for assessing the futility of a pre-litigation demand to pursue a derivative claim, conflating two distinct tests relating to two different types of derivative claims into a singular faulty analysis. Regardless, Plaintiffs fail to satisfy either test.

---

[1] Challenges to a plaintiff's standing or right to bring a derivative action are properly defenses of the corporation; in this case, Snopes. (See *Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 239; *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1006-07.)

**A.** **Plaintiffs Fail to Plead the Futility of a Pre-Litigation Demand on the Company**

Preliminarily, Plaintiffs completely ignore the criteria for ascertaining whether a director is "disinterested" or "independent" (*see* Demurrer Ps&As p. 15:1-22) and instead allege generally that these are not the only analyses. (Oppo., p. 12:2-4.) Plaintiffs go on to cite a string of cases that *support Snopes' position*, wherein a majority of the boards were <u>not</u> disinterested or independent. (Oppo., p. 12:4-12.) Plaintiffs then argue that Richmond, by virtue of his role as a litigation adversary, "could not be expected to fairly evaluate the claims of the shareholder plaintiff." (Oppo., p. 12:12-21) This admission simultaneously misstates the applicable test and significantly undermines the validity of the purported derivative claims Richmond himself seeks to bring. Plaintiffs' interpretation would render the "futility" analysis meaningless, as it necessarily requires facts demonstrating why an interested or non-independent director would vote <u>*not*</u> to pursue a proposed derivative claims. Here, the Court can safely presume Richmond would vote to pursue the claim, and thus a demand on him cannot be considered futile.

Plaintiffs attempt to bypass the appropriate analysis by contending that a litigation committee previously created to ensure attorney-client communications were not shared with a litigation adversary (Richmond) somehow means a majority of disinterested and independent directors is now per se impossible. This contention is a red herring. Plaintiffs are required to show they "made a presuit demand on the *board* to take the desired action." (*Apple*, *supra*, 18 Cal.App.5th at 232 [emphasis added].) Accordingly, demand is excused only where plaintiffs plead with particularity that efforts "to secure from the *board* such action" would have been futile. (Corp. Code § 800(b)(2); *Apple*, *supra*, 18 Cal.App.5th at 232.)

To the extent a proposed claim concerns a matter in which the majority of the entire board is not independent, the common practice is to appoint a "special litigation committee [SLC] of *independent* directors to investigate the challenged transaction." (*Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 184-85 [emphasis added], citing Corp. Code, § 204, subd. (a)(10)(iii) ["Although the business judgment rule protects a board's good faith decision to reject a derivative lawsuit, the board cannot avail itself of the protection of the rule if a majority of the board has a personal interest in the outcome."].) Snopes has not appointed an SLC for the obvious reason that

5

"there is no necessity to appoint a special litigation committee if the board itself is disinterested," as is the case here. (*See Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 575.) Plaintiffs nevertheless erroneously describe the litigation committee as a "special ligation committee consisting of only Mikkelson and Westbrook." (Opp. at 11:16-17.) However, even Plaintiffs concede the litigation committee is not composed of *independent* directors and thus could not be an SLC. (Opp. at 11:22-25.) Rather, Snopes' litigation committee is a completely different type of committee appointed for an entirely different purpose. Plaintiffs cannot simply *assume* and plead in conclusory fashion that Snopes' directors would improperly funnel a pre-litigation demand to an existing *non-independent* committee empaneled for pending claims.

### B. Plaintiffs Misstate the Applicable Tests for Assessing Futility in the Absence of a Pre-Litigation Demand on the Company

Plaintiffs erroneously argue the Court can consider "the business judgment rule" in the context of all their purported derivative claims, in stark contrast to the applicable tests. Where the alleged wrongdoing concerns actions undertaken by the corporate board, courts apply the *Aronson* test, which is the test cited by Plaintiffs. (Opposition at p. 11:5.) This test allows consideration of whether the case presents the extreme situation in which the board action cannot possibly be considered the valid exercise of business judgment. Notably, "[i]f the first prong [of interestedness and dependence] is not satisfied, there is a presumption that the Board's actions were the product of a valid exercise of business judgment." (*Charter Township of Clinton Police and Fire Retirement System v. Martin* (2013) 219 Cal.App.4th 924, 940.)

Alternatively, where the alleged wrongdoing does not concern actions undertaken by the board, the courts apply the *Rales* test, which does <u>not</u> consider the second prong of the analysis. (*See Leyte-Vidal v. Semel* (2013) 220 Cal.App.4th 1001, 1010.) When the *Rales* test applies, "<u>the second prong of *Aronson* is inapplicable</u>, and the plaintiff must plead particularized facts that there is a reasonable doubt that a board majority could exercise independent and disinterested business judgment in responding to a demand." (*In re Polycom, Inc. Deriv. Litig.* (N.D. Cal. 2015) 78 F. Supp. 3d 1006[emphasis added]; *see Oswald v. IDENTIV, INC.* (N.D. Cal. Oct. 27, 2017) No. 16-

cv-00241-CRB ("*Aronson*'s second prong . . . is not available as a path to establish demand futility under the *Rales* test.").)

Of the four derivative claims pleaded, only two causes of action concern alleged wrongful acts of Snopes' board of directors: the Fifteenth (partially) and Seventeenth (entirely). In contrast, the Fifth and Seventh causes of action are not based on allegations concerning board decisions, but rather allegations that defendant Mikkelson breached his fiduciary duties to the company. As such, the *Rales* test applies to those claims, and the only consideration is whether a majority of the board is independent and disinterested, as set forth above.

**1.    Plaintiffs Cannot Plead Futility as to the Fifteen and Seventeenth Causes of Action**

Plaintiffs seek to avoid demurrer by arguing generally that the business judgment rule cannot defeat their derivative claims. However, this is a misstatement of the second prong of *Aronson*. "A plaintiff seeking to establish demand futility under *Aronson's* second prong bears a 'heavy burden.'" (*Ryan v. Gurshaney* (Del. Ch. Apr. 28, 2015) CA No. 9992-VCP [citing *White v. Panic* (Del. 2001) 783 A.2d 543, 551].)[2]   To satisfy the second prong, plaintiffs "must plead sufficient particularized facts to 'raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.' [Citations.]" (*Charter Township of Clinton Police and Fire Retirement System*, *supra*, 219 Cal.App.4th 924, 940.)  "In order to raise a reason to doubt good faith, 'the plaintiff must overcome the general presumption of good faith by showing that the board's decision was <u>so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests' and was 'essentially inexplicable on any ground other than bad faith.</u>'" (*Lenois v. Lawal*, 2017 WL 5289611, at *8 [emphasis added] [citing *White v. Panic* (Del. 2001) 783 A.2d 543, 554 n.36 and *In re BJ's Wholesale Club, Inc. S'holder Litig.*, 2013 WL 396202 (Del. Ch. Jan. 31, 2013) at *7].)

---

[2] California courts can "'properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.'"  (*Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 244 fn. 9; *see Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1621.)

Here, the TAC provides no particularized facts showing a reason to doubt the alleged actions were not the product of a valid exercise of business judgment other than stating, in conclusory fashion, "Mikkelson's decisions were not valid exercises of business judgment." (TAC at ¶211(e), 241(d), 256(e), 325(d), 350(d).)  In their Opposition, Plaintiffs argue this second prong was pleaded with particularized facts simply because "the business judgment rule does not apply." (Opp at 12:22-13:21.)  However, whether the business judgment rule applies is not the second prong under *Aronson*.  "[N]either the presence of a controlling stockholder nor allegations of self-dealing by a controlling stockholder changes the director-based focus of the demand futility inquiry." (*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera* (Del. Ch. 2015) 119 A.3d 44, 68.)  Simply alleging self-interest does not satisfy the heavy burden of *Aronson*'s second prong. Rather, the *Aronson* test "focuses <u>exclusively</u> on whether there is a reasonable doubt that the directors <u>could</u> impartially respond to a demand." (*Ibid.* [emphasis added].)

Moreover, Plaintiffs do not satisfy the second prong of *Aronson* because the alleged misconduct here—the advancement of litigation expenses—is expressly permitted under the Corporations Code and condoned by courts, including the advancement of litigation fees used to prosecute counterclaims.  "In a litigation context the term 'defense' has a broad meaning" and therefore applies to counterclaims and affirmative defenses that are part of the same dispute and are advanced to defeat or offset the plaintiffs' claims. (*Citadel Holding Corp. v. Roven* (Del.1992) 603 A.2d 818, 824.)  Plaintiffs incorrectly allege that advanced fees cannot be used towards defendants' counterclaims. (Opp at 6:8-10; TAC, ¶26.)  However, neither the TAC nor the Opposition makes any effort to explain *why* that is or how advancing fees for defendants' compulsory counterclaims is somehow prohibited under the Corporations Code, Snopes' Bylaws, or the Board's authorizations.  Without such a particularized showing, the futility allegations in the TAC fail.

## 2. Plaintiffs Cannot Plead Futility as to the Fifth, Seventh, and Fifteenth Causes of Action

Neither the fifth nor seventh cause of action involves alleged wrongful decisions undertaken by the board.  The same is the case with much of the fifteenth cause of action.  As such, the applicable test for assessing futility of these claims is the *Rales* test, which does not contain the

8

second prong of the *Aronson* test. (*See Leyte-Vidal*, *supra*, 220 Cal.App.4th at 1010; *In re Polycom, Inc. Deriv. Litig.*, *supra*, 78 F. Supp. 3d 1006.) The sole analysis is whether a majority of the board composition at the time of commencing the derivative action is disinterested and independent. (*Ibid.*) As set forth above, the TAC does not allege facts showing Plaintiffs are unable to satisfy their burden, rendering these derivative claims defective as a matter of law.

## C. Plaintiffs Fifth Cause of Action Separately Fails for Failing to Assess Futility at the Time of the Amendment

Plaintiffs fail to acknowledge the non-preclusive effect of a prior order on a demurrer to which Snopes was not a party and which concerned a cause of action to which Snopes was not previously named. (Oppo., at pp. 13:22 – 14:5.) It is indisputable that Snopes was not a party to the fifth cause of action until the TAC. Nevertheless, the TAC does not plead futility with respect to the board composition at the time the TAC was filed, as required under controlling law. (See *Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 246, 248; *Braddock v. Zimmerman* (Del. 2006) 906 A.2d 776. 786.) By failing to do so, their fifth cause of action fails as a matter of law.

## IV. PLAINTIFFS' DERIVATIVE CAUSES OF ACTION FAIL BECAUSE PLAINTIFFS ARE IMPROPER DERIVATIVE PLAINTIFFS

Plaintiffs' efforts to invoke the Court's prior ruling on their motion for leave to amend is misplaced for multiple reasons. First, the standard under which a court assesses a request for leave to amend is different, as addressed above. More importantly, Plaintiffs ignore significant events that transpired *after* the Court granted their earlier motion for leave to amend—events that conclusively establish Plaintiffs' inability to prosecute the proposed derivative claims.

Following this Court granting leave to amend, Plaintiff Schoentrup associated in as counsel of record. Just this week, Plaintiffs' co-counsel of record—Sheppard Mullin—withdrew from their representation. (Caplan Decl., Exh. L; RJN.) As a result, Schoentrup is to sole counsel of record for all Plaintiffs at this time. The consequences of these events make clear that Plaintiffs cannot possibly serve as fair and adequate representatives of Snopes on a derivative claim. Through these maneuvers, Schoentrup seeks to simultaneously assume the roles of (a) a plaintiff suing Snopes directly; (b) the sole counsel of record for *all* plaintiffs suing Snopes directly; (c) a purported

9

derivative plaintiff suing on Snopes' behalf; and (d) the sole counsel of record to *all* derivative plaintiffs purportedly suing on Snopes' behalf.

This irreconcilable conflict of interest prevents Schoentrup from possibly acting in Snopes' interests on purported derivative claims. By assuming the role of Plaintiffs' <u>sole</u> counsel of record, Schoentrup assumes competing fiduciary duties—one to all plaintiffs (including Proper Media) on their direct claims *against Snopes*, and one *to Snopes* as the purported derivative plaintiff. Moreover, Schoentrup's role as Richmond's <u>only</u> attorney of record precludes Richmond from being able to fairly and adequately represent the interests of Snopes, as Schoentrup's conflicts permeate Richmond's representation.

Contrary to Plaintiffs' assertion, this situation is categorically different from "Plaintiffs' other counsel representing Plaintiffs for both their direct and derivative causes of action." (*See* Opposition, p. 15:23-27.) First, Plaintiffs no longer have "other" counsel now that Sheppard Mullin has withdrawn from this case. (Caplan Decl., Exh. L.) Rather, Schoentrup is attempting to serve both roles exclusively. More importantly, those situations where an attorney represents plaintiffs on both direct and derivative claims do not involve the attorney *also serving as the party to those claims*. With this hodgepodge of conflicting interests, Schoentrup can in no way fairly and adequately represent the interests of Snopes.

Finally, Plaintiffs similarly ignore the fact that, at the time of the earlier ruling in April 2019, defendant/cross-defendant Tyler Dunn had not made an appearance in this lawsuit. Since that time, as of May 29, 2019, Dunn has appeared in this action. (ROA#s 1033-34, 1099-1102.) Unlike on the motion for leave to amend, there is now no reason to assume Dunn—a current shareholder and party to this action—is unable to pursue a derivative claims if he so chose.

Plaintiffs' focus has never been what is in Snopes' best interests. Rather, they have long used this litigation to further their own interests at the expense of Snopes, including trying to force Snopes to continue contracting with their company, Proper Media, for their own financial benefit. This remains an express element of their purported derivative claims, which allege Mikkelson breached his fiduciary duty by terminating Snopes' contract with *Proper Media*, by allegedly interfering with *Proper Media's* ability to perform under that contract, and "poaching" defendants

10

Green and Miller from *Proper Media*. (*See* TAC at ¶ 234, p. 42:1-7.) Putting aside that this Court already found that Snopes was "within its rights to terminate the GSA" (NOL, Exhibit F, p. 3), these allegations make clear Plaintiffs are using this litigation to further their own interests over the interests of Snopes. As such, they have an irreconcilable conflict of interest that precludes them from serving in the capacity of derivative plaintiffs.

## V.  CONCLUSION

Two of the three members of Snopes' board of directors are disinterested and independent with respect to the derivative claims alleged in the TAC. On the facts pleaded, Plaintiffs are unable to plead the futility of a pre-litigation demand on the company, rendering their derivative claims fatally defective as a matter of law. Additionally, Plaintiffs cannot possibly serve as fair and adequate derivative plaintiffs given their track record of using this litigation to inflict financial harm on Snopes as well as Schoentrup's irreconcilable conflict of interests in attempting to serve as derivative plaintiff and sole counsel of record against Snopes. Accordingly, Snopes respectfully requests the Court sustain its demurrer to the Fifth, Seventh, Fifteenth, and Seventeenth causes of action without leave to amend.


DATED: August 9, 2019                    PROCOPIO, CORY, HARGREAVES &
                                                            SAVITCH LLP


                                         By: _____
                                                  Paul A. Tyrell
                                                  Ryan C. Caplan
                                                  P. Jacob Kozaczuk
                                                  Attorneys for Defendant/Cross-Complainant,
                                                  SNOPES MEDIA GROUP, INC., formerly
                                                  known and having appeared as Bardav Inc

DREW W. SCHOENTRUP, Cal. Bar No. 279830
4150 Mission Blvd., Suite 220
San Diego, CA 92109
Telephone: 509.995.5654
Email: drew@proper.io

Attorney for Plaintiffs/Cross-Defendants/Cross-Complainants
PROPER MEDIA, LLC, CHRISTOPHER RICHMOND, DREW
SCHOENTRUP, and PUBLIFE, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company; CHRISTOPHER RICHMOND, an individual; and DREW SCHOENTRUP, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BARDAV INC., a California corporation; DAVID MIKKELSON, an individual; VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual,<br><br>Defendants. | Lead Case No. 37-2017-00016311-CU-BC-CTL<br>(*Consolidated with* 37-2018-00004335-CU-MC-CTL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE**<br><br>Date:     August 23, 2019<br>Time:     10:30 a.m.<br><br>Dept.:    C-68<br>Judge:    The Hon. Richard S. Whitney<br><br>Complaint Filed: May 4, 2017<br>Trial Date: October 4, 2019 |

Plaintiffs Drew Schoentrup ("Schoentrup") and Christopher Richmond ("Richmond"), and their company Proper Media, LLC ("Proper Media") (together the "Plaintiffs") hereby oppose defendant David Mikkelson's ("Mikkelson") Special Motion to Strike select allegations from Plaintiffs' Third Amended Complaint ("TAC").

# TABLE OF CONTENTS

I.    **INTRODUCTION** ................................................................. **4**

II.   **ARGUMENT** ...................................................................... **4**

   A.   THE BOARD'S AUTHORIZATIONS ARE NOT PROTECTED ACTIVITY. ......................................... 5

   B.   THERE IS A PROBABILITY THAT PLAINTIFFS WILL PREVAIL UNDER BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ.* ..................................................... 6

      1.  *Schoentrup and Richmond's Fifteenth Claim for Relief is Viable.* .......................... 7

         a.   Mikkelson Falsely Represented How the GoFundMe Campaign Funds Would Be Used. ........................................................... 8

         b.   Mikkelson Materially Misrepresented The Grounds For This Litigation and The Status of the Claims. ............................................... 9

         c.   Mikkelson's Defamatory Statements Are Not Time-Barred. ........................... 11

         d.   The Board's Authorizations Are Unlawful ................................................ 11

         e.   A Pre-Lawsuit Demand on The Board Was Futile. ..................................... 15

      2.  *Proper Media's Sixteenth Claim for Relief is Viable.* ...................................... 17

III.  **CONCLUSION** ................................................................ **18**

2

## **TABLE OF AUTHORITIES**

**CASES**

*Allergia, Inc. v. Bouboulis*, 229 F. Supp. 3d 1150 (S.D. Cal. 2017) ................................ 13

*Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222 (2017).......................................... 16

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ..................................................... 16

*Baral v. Schnitt*, 1 Cal. 5th 376 (2016) .......................................................... 6

*Biren v. Equal. Emergency Med. Grp., Inc.*, 102 Cal. App. 4th 125 (2002) ...................... 17

*Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134 (2003) .......................... 6

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000)........................ 11

*Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377 (1992) .............................. 6

*Kruss v. Booth*, 185 Cal. App. 4th 699 (2010) ................................................ 17

*Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572 (2001) ...................... 16

*Park v. Board of Trustees of California State University*, 2 Cal. 5th 1057 (2017) ............ 5

*Plate v. Sun–Diamond Growers*, 225 Cal. App. 3d 1115 (1990) ................................ 13

*Sheley v. Harrop*, 9 Cal. App. 5th 1147 (2017)................................................ 5

*Shields v. Singleton*, 15 Cal. App. 4th 1611 (1993)......................................... 15, 16

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093 (1996) ............ 6

**STATUTES**

Business and Professions Code § 17200 .................................................... 4, 6, 8

Code of Civil Proc. § 425.16 ............................................................... 4

Corporations Code § 315(a) ................................................................ 13

Corporations Code § 317(d) ................................................................ 15

Corporations Code § 800(b)(2)............................................................. 15

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID
MIKKELSON'S SPECIAL MOTION TO STRIKE

# I.   **INTRODUCTION**

On August 9, 2019, the Court provided its tentative ruling on defendant Snopes Media Group, Inc.'s ("Snopes") Special Motion to Strike. (Declaration of Drew W. Schoentrup ("Schoentrup Decl."), at ¶ 5, Ex. 2) ("2019-08-09 Tentative Ruling"). The Court's 2019-08-09 Tentative Ruling, if confirmed, would (1) deny anti-SLAPP protection as to Plaintiffs' allegations concerning advancement of legal funds and (2) grant anti-SLAPP protection as to Proper Media's defamation allegations in the fourteenth claim for relief. (2019-08-09 Tentative Ruling at 4-5.) Although Plaintiffs' fifteenth and sixteenth claims for relief do not arise from the defamatory statements addressed by Snopes and Mikkelson in their respective anti-SLAPP moving papers, the defamatory statements nonetheless support, in part, each of Plaintiffs' fifteenth and sixteenth claims for relief, and, as discussed below, there is a probability that Plaintiffs will prevail on these distinct claims for relief under Business and Professions Code section 17200, *et seq.* Accordingly, to the extent that the Court is inclined to strike the defamatory statements from Plaintiffs' TAC, Plaintiffs respectfully request that any stricken paragraphs be solely limited to Proper Media's fourteenth claim for relief for defamation.

# II.   **ARGUMENT**

To invoke anti-SLAPP protection, the defendant must first point to a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech…in connection with a public issue," and only if he is able to do so, then the burden shifts to the plaintiffs to establish "that there is a probability that the plaintiff[s] will prevail on the claim." Code of Civil Proc. § 425.16(b)(1). Here, the fifteenth claim for relief—to the extent it arises from allegations concerning advancement of legal funds—and the seventeenth and eighteenth claims for relief do not "arise[] from" protected speech or petitioning activity in connection with a public issue as required by section 425.16. (*See* 2019-08-09 Tentative Ruling at 4-5.) Moreover, there is a probability that Plaintiffs will prevail on their fifteenth and sixteenth claims for relief, and Mikkelson has offered no admissible evidence or supporting affidavits countering the probability that Plaintiffs' will prevail on these claims. In fact, Mikkelson's analysis regarding the merits of the fifteenth and sixteenth claims for relief is directed to Proper Media's fourteenth claim for relief for

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE

defamation and Plaintiffs' seventeenth and eighteenth claims for relief in connection with the unlawful advancement of legal funds.

**A.  The Board's Authorizations Are Not Protected Activity.**

Although litigation funding constitutes protected petitioning activity, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." *Sheley v. Harrop*, 9 Cal. App. 5th 1147, 1166 (2017); *Park v. Board of Trustees of California State University*, 2 Cal. 5th 1057, 1062 (2017). In *Park*, the California Supreme Court recognized that a claim arising from a decision may not necessarily arise from the communications leading to that decision. *Id*. at 1017. Accordingly, although the act of funding may be communicative and a protected activity, it does not necessarily mean the act of funding is the basis for a cause of action. In *Park*, the California Supreme Court distinguished between a public entity's vote and the measure itself that resulted from the vote. *Park*, 2 Cal. 5th at 1064. "Failing to distinguish between the challenged decisions and the speech that leads to them or thereafter expresses them 'would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power.'" *Id*. at 1067.

Here, the thrust of Plaintiffs' seventeenth and eighteenth claims for relief, as well as portions of Plaintiffs' fifteenth claim for relief, are that the result of Snopes' consideration of whether to advance litigation expenses to Mikkelson, Green, and Miller—the Board authorizations and written consents—are improper. (2019-08-09 Tentative Ruling at 4-5.) This challenge should be distinguished from the act of funding litigation, which is a communicative petitioning activity that occurred after the authorization decision was made. (*Id*.) Although Plaintiffs include allegations that the advancements are unlawful, the gravamen of the claims are that Snopes' Board improperly authorized the advancements. (*Id*.) If no distinction were made, any claim challenging an improper authorization by a board of directors involving advancement of legal funds would automatically qualify for anti-SLAPP protection if the decision resulted in the advancement of legal funds. (*Id*.) This would have the result of chilling legitimate challenges to improper board authorizations. (*Id*.) The protected activity in this case is the act of funding litigation, not the board authorizations themselves. (*Id*.) The protected activity of funding litigation expresses the board authorizations, but Mikkelson, who mirrored the arguments presented by Snopes in its anti-SLAPP motion, has not

demonstrated that the allegedly wrongful board authorizations in and of themselves constitute petitioning activity. (*Id*.)

> **B.** **There is a Probability that Plaintiffs Will Prevail Under Business and Professions Code Section 17200, *et seq*.**

If the court determines relief is sought based on allegations arising from activity protected by the anti-SLAPP statute, the burden then shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. *Baral v, Schnitt*, 1 Cal. 5th 376, 396 (2016). The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. *Id*. Allegations of protected activity that support a distinct claim on which the plaintiff has shown a probability of prevailing are not stricken under the anti-SLAPP statute. *Id*.

Schoentrup and Richmond have asserted the fifteenth claim for relief, derivatively on behalf of Snopes, against Mikkelson for violations of Business and Professions Code section 17200, *et seq*. (Ex. 1, ¶¶ 302-325.) Similarly, Proper Media has asserted the sixteenth claim for relief against Mikkelson and Snopes for violations of Business and Professions Code section 17200, *et seq.* (Ex. 1, ¶¶ 326-335.) As detailed below, there is a probability that Plaintiffs will prevail on each of their respective UCL claims for relief.

"Section 17200 is violated if a business practice is unlawful or unfair or deceptive." *Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147 (2003); see also Bus. & Prof. Code § 17200. A business practice is "unlawful" if it violates some law. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Accordingly, the UCL essentially "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." *Farmers Ins. Exchange*, 2 Cal. 4th at 383. "Virtually any law-federal, state or local-can serve as a predicate for a section 17200 action." *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1102-03 (1996) (internal citation omitted). Additionally, "[t]o show that a business practice is deceptive, the plaintiff must show that members of the public are likely to be deceived." *Byars*, 109 Cal. App. 4th at 1147. "The deceptive business practices prong of section

1  17200 does not require establishing that anyone was actually deceived, relied on the fraudulent

2  practice or sustained any damage." *Id*.

3      1.    **Schoentrup and Richmond's Fifteenth Claim for Relief is Viable.**

4      Schoentrup and Richmond assert the fifteenth claim for relief, derivatively on behalf of

5  Snopes, against defendant Mikkelson for conduct that was and is unlawful, unfair and fraudulent,

6  constituting unfair competition and unlawful business practices under Business and Professions

7  Code section 17200, *et seq*. (TAC. at ¶¶ 302-325.) More specifically, Plaintiffs' fifteenth claim for

8  relief includes allegations that (1) Mikkelson falsely represented how funds raised through the

9  GoFundMe Campaign would be used in order to induce and encourage donations from the public;

10 (2) Mikkelson solicited and is soliciting donations through the GoFundMe Campaign based on

11 materially misleading statements about the grounds for this litigation and the status of the claims in

12 this litigation; (3) Mikkelson solicited and is soliciting donations through the GoFundMe Campaign

13 based on false and defamatory statements about Proper Media; and (4) Mikkelson directed or

14 otherwise caused Snopes to improperly advance attorneys' fees to himself, and to his co-

15 conspirators, Green and Miller, in violation of Corporations Code sections 310(a) and 317(f) and

16 Snopes' Bylaws. (TAC. at ¶¶ 302-325; TAC. at ¶¶ 119-162.)

17     Mikkelson's conduct, as outlined in Plaintiffs' TAC and fifteenth claim for relief, has and

18 will cause substantial harm to Snopes' reputation and goodwill as a leading fact checking and fake

19 new-debunking resource. (TAC. at ¶¶ 302-325; TAC. at ¶¶ 119-162; Richmond Decl., at ¶ 75.)

20 Indeed, Snopes holds itself out as "the Internet's definitive fact-checking resource" for when

21 "misinformation obscures the truth and readers don't know what to trust, Snopes.com's fact

22 checking and original, investigative reporting lights the way to evidence-based contextualized

23 analysis." (*Id*.) Context certainly does matter, particularly in this litigation. Yet contrary to Snopes

24 stated mission as the oldest and largest fact-checking website and wide regard "by journalists,

25 folklorists, and readers as an invaluable research companion," Mikkelson, purportedly on behalf of

26 Snopes, has leaned heavily on false and materially misleading statements in order to induce and

27 encourage donations from the public through the GoFundMe Campaign. (*Id*.) Mikkelson's

28 unlawful, unfair and fraudulent conduct in connection with the GoFundMe Campaign has subjected

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID
MIKKELSON'S SPECIAL MOTION TO STRIKE

Snopes to imminent and substantial liability, both from the Plaintiffs and from the 40,0000 individuals and entities who have donated to the GoFundMe Campaign on the basis of Mikkelson's false and materially misleading statements. (*Id*.) Moreover, Mikkelson's conduct in connection with misappropriating Snopes' funds for his personal use and benefit, including but not limited to by advancing attorneys' fees in connection with this litigation to himself, Green, and Miller in violation of the Corporations Code and Snopes' Bylaws, has and will cause substantial harm to Snopes, including by draining its already dwindling profits, and thus putting it in immediate danger of insolvency and forced dissolution. (*Id*.)

> ### a. Mikkelson Falsely Represented How the GoFundMe Campaign Funds Would Be Used.

In order to solicit donations from the public to the GoFundMe Campaign, Mikkelson made and continues to make false representations about how the funds raised through the GoFundMe Campaign would be used. (TAC. at ¶ 306; Richmond Decl., at ¶¶ 45-52.) Including, for example, by stating that "[i]n order to continue our fact-checking efforts, we need to be able to pay our staff (which comprises 16 people), accommodate millions of monthly visitors, and cover other basic operating expenses, in addition to our legal expenses." (TAC. at ¶ 306(a); Richmond Decl., at ¶ 48.) That "[t]he GoFundMe team is in the process of releasing the donations directly to the company, where our controller will ensure the funds are allocated appropriately and our commitment to our donors is maintained." (TAC. at ¶ 306(b); Richmond Decl., at ¶ 49.) And that Snopes has used "all previously available funds" raised through the GoFundMe Campaign to "sustain our ongoing operations, cover our legal fees, and help us expand to stem the rising tide of misinformation." (TAC. at ¶ 306(c); Richmond Decl., at ¶ 50.) Mikkelson made and continues to make these representations, among others, about how the funds raised through the GoFundMe Campaign will purportedly be used in order to induce and encourage donations from the public. (TAC. at ¶ 307; Richmond Decl., at ¶ 51.)

Mikkelson's representations about how the funds raised through the GoFundMe Campaign have been and will be used are false, and members of the public were likely deceived, in violation of section 17200, *et seq*., into contributing to the GoFundMe Campaign based on Mikkelson's false

representations. (Richmond Decl., at ¶¶ 51-52.) Specifically, and contrary to Mikkelson's representations, the GoFundMe Campaign funds are not in fact only being used to cover Snopes's payroll, operating expenses, and legal expenses as members of the public were lead to believe. (*Id.*) Rather, Mikkelson is using these funds to pay for his **personal** expenses, including but not limited to legal expenses that he, Green, and Miller have **personally** incurred in connection with this lawsuit. (TAC. at ¶¶ 308; Richmond Decl., at ¶¶ 51-52.)

In stark contrast to Mikkelson's representation on the GoFundMe Campaign, Snopes did not and does not in fact have a "controller" that would "ensure the funds are allocated appropriately and [Snopes] commitment to [its] donors maintained." (NOL. at Ex. A, p. 87, lns. 3-7.) Although Snopes contracted with a third-party bookkeeper, neither Mikkelson nor anyone else at Snopes provided the bookkeeper with directions about how she should disburse the GoFundMe Campaign donations. (NOL. at Ex. A, p. 88, ln. 23 – p. 89, ln. 6.) Indeed, neither Mikkelson nor Snopes has any documents to show how the GoFundMe Campaign donations have been disbursed, and thus cannot show that the funds were "allocated appropriately." (NOL. at Ex. A, p. 84, ln. 11 – p. 86, ln. 12.) Unsurprisingly, because Snopes did not have a controller to ensure proper disbursement of the GoFundMe Campaign donations, the funds, contrary to the representations posted to the GoFundMe Campaign, were largely, if not entirely, used to pay for the Individual Defendants personal legal fees, including effort that was devoted to their affirmative counterclaims and the Interpleader action, with no questions asked. (NOL. at Ex. B, p. 21, lns. 13-24; p. 29, ln. 16 – p. 30, ln. 6.)

b.    **Mikkelson Materially Misrepresented The Grounds For This Litigation and The Status of the Claims.**

Mikkelson has made and is soliciting donations through the GoFundMe Campaign based on materially misleading statements about the grounds for this litigation and the status of the claims in this litigation. (TAC. at ¶¶ 310-314; 135-162; Richmond Decl., at ¶¶ 53-58.)) For example, Mikkelson, purportedly on behalf of Snopes, published the following statements in order to solicit donations from the public to the GoFundMe Campaign: (a) "On 22 February 2018, the Superior Court entered a judgment in favor of David Mikkelson dismissing all causes of action brought against him by Proper Media;" (b) Snopes is engaged in litigation with an "outside vendor" (Proper

Media) arising from the vendor's alleged refusal to "acknowledge the change in contractual status" and its alleged holding the Snopes.com website "hostage;" and (c) Snopes is involved in litigation with a "vendor (Proper Media) who had been contracted to provide certain services for Snopes.com but would not acknowledge the unlawful termination of that contract by us." (TAC. at ¶ 311(a)-(c); Richmond Decl., at ¶¶ 54-58.)

The above-mentioned statements about this litigation, for which the GoFundMe Campaign donations are purportedly being solicited, are materially misleading. (TAC. at ¶ 312; Richmond Decl., at ¶¶ 55, 58.) They fail to mention that the Court ***denied*** Mikkelson's request to dismiss the claims brought by Schoentrup and Richmond, as Snopes shareholders, against Mikkelson, and that those claims are ongoing. (*Id*.) And Mikkelson omits that this litigation was brought by Schoentrup and Richmond, Proper Media principals and Snopes shareholders, against Mikkelson (a co-founder, CEO, Director, and 50% shareholder of Snopes) on the grounds that he, in conspiracy with former minority members of Proper Media Green and Miller, sought to diminish the value of Schoentrup and Richmond's interest in Snopes and persistently abused, wasted, and embezzled Snopes funds in breach of his fiduciary duties. (*Id*.) In other words, this is not simply a litigation about Snopes' contractual dispute with its "outside vendor" (Proper Media).

Mikkelson's material misrepresentations are by design. (NOL. at Ex. A, p. 125, ln. 21 – p. 127, ln. 5; NOL. at Ex. C) ("And we have to be careful to frame this as us against outsiders, not a squabble between two internal Snopes factions.") Mikkelson acknowledged as much, confirming that in the March 2018 updates to the GoFundMe Campaign, Mikkelson still did not provide any insight about the claims that had been brought against him by Schoentrup and Richmond, or the claims that had been asserted by Proper Media, Schoentrup and Richmond against Green and Miller. (NOL. at Ex. A, p. 94, ln. 15 – p. 95, ln. 3.) Mikkelson made and continues to make these misleading representations, among others, about this litigation in order to induce and encourage donations from the public. (TAC. at ¶ 313; Richmond Decl., at ¶ 53.) Without question, the GoFundMe Campaign donors have made donations to the GoFundMe Campaign based on these representations. (TAC. at ¶ 313.) Indeed, at the time Plaintiffs filed their Third Amended

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID
MIKKELSON'S SPECIAL MOTION TO STRIKE

Complaint, Mikkelson had raised over $850,000 from nearly 30,000 donors through the GoFundMe Campaign. (TAC. at ¶ 314; Richmond Decl., at ¶ 46.)

### c.   Mikkelson's Defamatory Statements Are Not Time-Barred.

Mikkelson has also made and is soliciting donations through the GoFundMe Campaign based on false and defamatory statements about Proper Media, including that Proper Media is allegedly holding the Snopes.com website "hostage" and is withholding all of its advertising revenue. (TAC. at ¶ 309; Richmond Decl., at ¶¶ 59-65.) As this Court noted in its 2019-08-09 Tentative Ruling, which Snopes did not dispute at oral argument, "[i]f the trier of fact were to accept Plaintiff Richmond's declaration as true, then it could find that Snopes falsely stated Proper Media is holding the Snopes.com website hostage and that Proper Media refused to give Snopes control." (2019-08-09 Tentative Ruling at p. 3.) The Court further found that Snopes did not demonstrate "how Richmond is not qualified to opine regarding Snopes' advertising capabilities and control of the website" and that the "statements about controlling and holding the website hostage" were a viable claim but for a bar by the one year statute of limitations to bring a defamation cause of action. *Id*. Although Mikkelson's arguments track those of Snopes, the statute of limitations for a UCL claim is four years and a timely UCL claim will revive a claim that would be time-barred under the predicate law. *Cortez v. Purolator Air Filtration Products Co*., 23 Cal. 4th 163, 178-179 (2000); Cal. Bus. & Prof. Code § 17208. Accordingly, Mikkelson's defamatory statements support fifteenth claim for relief and are not barred by the one-year statute of limitations for a defamation cause of action when brought pursuant to section 17200.

### d.   The Board's Authorizations Are Unlawful.

**First**, the Board, consisting only of Mikkelson and Westbrook, voted to authorize Snopes to advance the Individual Defendants' legal expenses in this lawsuit. (Richmond Decl., ¶¶ 66-73; Exs. 8-10.) These purported authorizations violate Corporations Code section 310(a), which prohibits "interested director" transactions except if certain conditions are met. Corp. Code § 310(a). Under section 310(a), a corporate transaction in which a director has a material financial interest is *unlawful* and *void* if the Board, in authorizing the transaction, counts the vote of that "interested director." An "interested director" is a director who has a "material financial interest" in approving

the transaction. *See Id.* Here, Mikkelson is an "interested director" under Corporations Code section 310(a) with respect to the Board's decision to advance the legal fees that he, Green, and Miller are personally incurring in connection with this litigation. Without question Mikkelson has a "material financial interest" in the advancement of legal fees to himself and to his co-defendants in this case to ensure that the Individual Defendants: (1) would not have to shoulder their own legal bills during the pendency of this litigation; and (2) with the corporate funds, could aggressively pursue their personal interests. Mikkelson, as an "interested director," was not permitted to vote on the advancement of attorneys' fees to himself and to his co-conspirators, Green and Miller. Nevertheless, Mikkelson did in fact vote, notably as one of only two directors, in favor of the advancement of attorneys' fees to the Individual Defendants. Without counting Mikkelson's "interested director" vote, the Board's authorizations were not valid corporate transactions, because, under the Bylaws, a "majority" of Snopes directors are required to transact corporate business, and Westbrook by himself does not constitute a majority. (Richmond Decl., ¶ 68, Ex. 7, § 3.9.)

The Board's authorizations are not permissible under the "just and reasonable" exception to the "interested director" rule under section 310(a). The Board's authorizations were not "just and reasonable" to Snopes because: (i) Mikkelson, Green, and Miller are not entitled to advanced attorneys' fees in this litigation, as a matter of law, under Corporations Code section 317(f) because they are not being sued "by reason of the fact" that they are "agents" of Snopes; and (ii) the unlawful advancements directly lead to Snopes' current insolvency.

Mikkelson does not dispute that the Board, consisting of only Mikkelson and Westbrook, approved the advancement of attorneys' fees, that Mikkelson is an "interested director" when it comes to authorizing the advancement of attorneys' fees to himself and his co-conspirators, or that without counting Mikkelson's vote, the Board could not have approved the written consents under Corporation Code section 310(a) or section 3.9 of the Bylaws. Instead, Mikkelson argues that the "interested director" rule under section 310(a) somehow does not apply to the advancement of attorneys' fees under section 317(f). (MPA. at 17-18.) Mikkelson cites only a treatise in support of this sweeping proposition. (*See id.* (citing treatise).) But even Mikkelson's sole-cited treatise does not state that the "interested director" transaction rule under section 310(a) does not apply to the

12

advancement of legal fees. (*Id*.) To the contrary, this non-binding treatise suggests only that the indemnification procedures set forth in section 317(e) ought not apply to the advancement of attorneys' fees under section 317(f). *See* Marsh, et al., Marsh's Cal. Corp. Law (2018) § 11.22(I). If the Legislature intended to exclude the advancement of attorneys' fees from the "interested director" rule in section 310(a), it could have done so in the plain language of the statute. Indeed, section 317(f) specifically provides that Corporations Code section 315(a) **does not apply** to the advancement of attorneys' fees.

**Second**, The Board's authorizations are unlawful because they violate both Corporations Code section 317(f) and Snopes' Bylaws. In order to be eligible for indemnification under section 317, the person seeking indemnification must have been sued "by reason of the fact" that he was performing his corporate duties (as a director, officer, employee, or other agent). "In other words, the conduct of the agent which gives rise to the claim against him must have been performed in connection with his corporate functions and not with respect to purely personal matters." *Plate v. Sun–Diamond Growers*, 225 Cal. App. 3d 1115, 1123 (1990) (citation omitted). The "by reason of the fact" prerequisite is not met "[w]here **personal motives**, not the corporate good, are predominant in a transaction giving rise to an action." *Id*. (emphasis added).

The Southern District of California, applying California law, recently evaluated the "by reason of the fact" standard in connection with the advancement of legal fees under section 317(f). In *Allergia, Inc. v. Bouboulis*, 229 F. Supp. 3d 1150 (S.D. Cal. 2017), the plaintiff-corporation brought an action against its president asserting claims for breaches of fiduciary duty and implied contract. The defendant president requested advancement of legal fees. The plaintiff-corporation's bylaws provided for fee advancement to a director or officer incurred in defending himself in any proceeding to the fullest extent authorized by section 317. *Allergia* at 1157. The Court reasoned that, whether a corporate officer or director "is entitled to advancement of his fees depends in part on whether he was sued 'by reason of the fact that' he was an agent, officer, or director of [the company]." *Id*. The Court then found that the president "was not sued 'by reason of the fact' that he was an agent and/or officer of Plaintiff" (and therefore was not entitled to advanced legal fees) because "all of Plaintiff's claims against Defendant appear to implicate actions that predominantly

benefit Defendant, but do not appear to be in furtherance of the corporate good or performed in connection with Defendant's corporate functions." *Id.* at 1159. Applying the "by reason of the fact" standard, the court found that the president was not entitled to advancement of his legal fees in connection with his defense of the breach of fiduciary duties or implied contract claims because "these claims for relief largely—if not entirely—implicate Defendant's personal motives." *Id.*

Here, like the bylaws at issue in *Allergia*, section 6.3 of Snopes' Bylaws provide for advancement of legal fees incurred by an "agent" of the corporation in "defending" a legal proceeding to the extent authorized by section 317. (Richmond Decl., at ¶ 68, Ex. 7, § 6.3.) The Individual Defendants are not entitled to advancement of legal fees incurred in defending themselves in this litigation, because they are not being sued "by reason of the fact" that they are "agents." Rather, in this litigation, Plaintiffs allege that Mikkelson acted in his own personal interests to the detriment of Snopes, by, among other acts, misappropriating corporate funds to pay for his personal expenses, and conspiring with Green and Miller to improperly obtain a majority interest in Snopes to facilitate control over Snopes for their own benefit and to the detriment of Snopes remaining shareholders. (Richmond Decl., ¶¶ 15-19, 26-44; TAC. at ¶¶ 61-93.) Because Mikkelson is being sued for actions he took in pursuit of his own personal interests, and in breach of the fiduciary duties he owed to Snopes and its other shareholders, he is not entitled to the advancement of attorneys' fees under either Corporations Code section 317 or the Bylaws. Similarly, Green and Miller are not being sued in their capacities as Snopes' agents, and therefore could not possibly meet the "by reason of the fact" criteria required to receive advanced attorneys' fees. To the contrary, Green and Miller are being sued for actions they took that (1) violated the fiduciary duties they owed to Proper Media, while still employed by and members of Proper Media, and (2) ***predated*** their employment with Snopes. (Richmond Decl., ¶¶ 15-19, 26-44; TAC. at ¶¶ 70-93, 179-84, 193-200, 241-48, 257-68.)

With no support, Mikkelson declares that the advancement of fees "complies" with section 317(f) (MPA. at 19). Mikkelson does not address any of Plaintiffs arguments to the contrary— namely, that the Individual Defendants are not entitled to advanced attorneys' fees under section 317(f) because they were not sued "by reason of the fact" they were performing their corporate

functions. Mikkelson also argues that he is entitled to indemnification under section 317(d) because the Court sustained, in part, his demurrer to the Second Amended Complaint. (MPA. at 18.) As an initial matter, the indemnification provision under Corporations Code section 317(d) has no bearing on the question before this Court: whether the Board's authorizations under section 317(f) are unlawful. Moreover, section 317(d) only requires indemnification of a person who is sued "by reason of the fact that the person is or was an agent of the corporation." *See* Corp. Code § 317(b), (c), (d). Mikkelson was not sued "by reason of the fact" that he was an "agent" of Snopes for the reasons set forth above and he has not actually prevailed on the merits of his defense apart from a technicality that limited the specific plaintiffs.

**Third**, The Individual Defendants are not entitled to advancement of fees associated with pursuing their ***affirmative counterclaims*** against Plaintiffs. Both Corporations Code section 317(f) and section 6.3 of the Bylaws provide for advancement of legal fees incurred in "***defending*** any proceeding." (Richmond Decl., at ¶ 68, Ex. 7, § 6.3.) They do not authorize the advancement of legal fees incurred in bringing affirmative claims or litigating the Interpleader Action. Moreover, even the Board's unlawful authorizations pertain only to fees associated with the Individual Defendants' ***defense*** in the Lead Case. (Richmond Decl., at ¶¶ 70-72, Exs. 8-10.)

### e. A Pre-Lawsuit Demand on The Board Was Futile.

It is elementary that a shareholder can assert a derivative claim without making a demand on the Board if that demand would be futile. Corp. Code § 800(b)(2); *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1618 (1993) (plaintiff need not make a pre-suit demand on the Board if he demonstrates "such a demand on the board would have been futile"). Based on a misunderstanding of the law and relevant facts, Mikkelson argues that Schoentrup and Richmond's derivative claims are defective because Schoentrup and Richmond "did not first make a demand on Snopes' Board and they cannot establish that such a demand would have been futile." (MPA. at 19-20.) Mikkelson is wrong.

In deciding whether a plaintiff will be excused from making a demand on the board, the court evaluates "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Apple, Inc., v. Superior Court*, 18 Cal. App.

5th 222, 233 (2017) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)). "[F]utility is gauged by the circumstances existing at the commencement of a derivative suit." *Id*. "[T]he two-prong test . . . is disjunctive; accordingly, there is demand excusal if either prong is satisfied." *Id*. Although Plaintiffs need only show one of the two prongs to establish futility, here they can show both.

**First**, there is no majority of "disinterested and independent" directors who could have voted in favor of pursuing a claim against Mikkelson for the unlawful advancement of attorneys' fees. It is undisputed that at the time Plaintiffs filed their TAC in April 2019, Snopes' Board consisted of Mikkelson, Westbrook, and Richmond. (Richmond Decl., at ¶ 77.) However, on June 14, 2018, prior to the filing of the TAC, Mikkelson established a special litigation committee consisting only of Mikkelson and Westbrook (the "Litigation Committee"). (*Id.*, at ¶¶ 80-82, Ex. 11) Richmond is not a member of and in fact was expressly excluded from the Litigation Committee. (*Id.*) The Litigation Committee "has the power to exercise all powers and authority of the Board with respect to" the instant litigation. (*Id.*) Accordingly, any pre-suit demand on the Board would have been controlled by the Litigation Committee—Mikkelson and Westbrook. Because Mikkelson is neither disinterested nor independent when it comes to a decision on whether to sue himself, there cannot possibly be a majority of disinterested directors on the two-member Litigation Committee who would have voted to pursue claims against Mikkelson.

But even if the relevant inquiry were to look at the full three-member Board in assessing demand futility, Plaintiffs would still prevail. Mikkelson erroneously asserts that a director is "neither disinterested nor independent" only if he is "implicated in" or "personally benefitted from" the underlying alleged wrongful conduct. (MPA. at 19.) Although that is one method of establishing a reasonable doubt as to whether a director is "disinterested and independent," it is not the only method. None of Mikkelson's cited case law suggests otherwise. Rather, the relevant test is whether there are "facts specific to each director from which [the trier of fact] can [find a reasonable doubt] that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 587 (2001) (quoting *Shields*, 15 Cal. App. 4th at 1622). Here, both Richmond and Mikkelson are parties to this lawsuit with claims pending against each other. Neither can be expected to fairly evaluate whether

to pursue claims against Mikkelson which will result in cutting off Mikkelson's (Richmond's litigation adversary) access to corporate funds to pay for his personal litigation expenses.

**Second**, the challenged transactions—the Board's authorizations—are not subject to the business judgment rule and Mikkelson and Westbrook, the Board members who purported to approve these challenged transactions, are still members and constitute a majority of Snopes' current three-member Board. Mikkelson argues that the Board's decision to authorize the advancement of legal fees to the Individual Defendants falls under the business judgment rule because the board action was "made by unanimous consent of the Board, including non-party independent director Mr. Westbrook." (MPA. at 14.) This argument misuses the business judgment rule. "The business judgment rule is essentially a presumption that corporate directors act in good faith." *Kruss v. Booth*, 185 Cal. App. 4th 699, 728 (2010). Sensibly, that presumption does not apply "when circumstances inherently raise an inference of conflict of interest" between the voting directors and the corporation. *Id*. In other words, "the business judgment rule does not protect a director where there is a conflict of interest." *Biren v. Equal. Emergency Med. Grp., Inc*., 102 Cal. App. 4th 125, 138 (2002).

Here, the challenged Board actions were authorized by two people: Westbrook and Mikkelson. (Richmond Decl., ¶¶ 70-73, Exs. 8-10.) Westbrook's vote, standing alone, does not constitute a majority of directors required to transact corporate business under the Bylaws. (Richmond Decl., ¶ 68, Ex. 7, § 3.9.) Mikkelson cast the deciding vote. Mikkelson, in approving advancement of his own litigation expenses and those of his fellow defendants, elevated his personal interests above Snopes' interests. Moreover, Snopes already made, and this Court already rejected, the same "business judgment rule" argument in connection with Snopes' opposition to Plaintiffs' motion for leave to amend. (ROA # 809.) Accordingly, the business judgment rule does not defeat Plaintiffs' fifteenth claim for relief.

### 2. Proper Media's Sixteenth Claim for Relief is Viable.

Plaintiff Proper Media asserts the sixteenth claim for relief against defendants Mikkelson and Snopes for conduct that was and is unlawful, unfair and fraudulent, constituting unfair competition and unlawful business practices under Business and Professions Code section 17200, *et*

*seq.* (TAC. at ¶¶ 326-335.) More specifically, similar to the fifteenth claim for relief, the sixteenth claim for relief includes allegations that (1) Mikkelson, purportedly on behalf of Snopes, falsely represented how funds raised through the GoFundMe Campaign would be used in order to induce and encourage donations from the public; (2) Mikkelson solicited and is soliciting donations through the GoFundMe Campaign based on materially misleading statements about the grounds for this litigation and the status of the claims in this litigation; and (3) Mikkelson solicited and is soliciting donations through the GoFundMe Campaign based on false and defamatory statements about Proper Media (TAC. at ¶¶ 326-335.)

Mikkelson's conduct, as alleged in Proper Media's sixteenth claim for relief and discussed in detail above in connection with Schoentrup and Richmond's fifteenth claim for relief, has and will cause substantial harm to Proper Media's reputation and goodwill, as well as to its current and prospective business relationships. (TAC. at ¶¶ 321; Richmond Decl., at ¶ 65.) Contrary to Snopes stated mission as the oldest and largest face-checking website and wide regard "by journalists, folklorists, and readers as an invaluable research companion," Mikkelson, purportedly on behalf of Snopes, has leaned heavily on false and materially misleading statements in order to induce and encourage donations from the public through the GoFundMe Campaign. Mikkelson's unlawful, unfair and fraudulent conduct in connection with the GoFundMe Campaign has unjustly enriched Mikkelson and Snopes with over a million dollars in GoFundMe contributions at Proper Media's expense. (*Id*.) Indeed, Mikkelson and Snopes' conduct has subjected Proper Media to public ridicule, portraying Proper Media as an untrustworthy monetization partner—a critical element to succeed in the digital advertising industry, and undoubtedly deterred other companies from associating with Proper Media for fear of suffering a similar materially misrepresented fate. (*Id*.)

## III.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Mikkelson's Special Motion to Strike as to Plaintiffs' allegations concerning advancement of legal funds, and to the extent that the Court is inclined to strike the defamatory statements from Plaintiffs' TAC, Plaintiffs respectfully request that any stricken paragraphs be solely limited to Proper Media's fourteenth claim for relief for defamation.

Dated:  August 12, 2019

Respectfully submitted,


By: /s/ Drew W. Schoentrup
    Drew W. Schoentrup

    Attorney for Plaintiffs/Cross-Defendants/Cross-
    Complainants PROPER MEDIA, LLC,
    CHRISTOPHER RICHMOND, DREW
    SCHOENTRUP, and PUBLIFE, LLC

19

<table>
<tr><td>1</td><td>Richard P. Sybert, Bar No. 080731<br>rsybert@gordonrees.com</td><td rowspan="7"></td></tr>
</table>

1 | Richard P. Sybert, Bar No. 080731
rsybert@gordonrees.com
2 | Kimberly D. Howatt, Bar No. 196921
khowatt@gordonrees.com
3 | Holly L.K. Heffner, Bar No. 245384
hheffner@gordonrees.com
4 | GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
5 | San Diego, CA 92101
Telephone: (619) 230-7461
6 | Facsimile: (619) 696-7124

7 | Attorneys for Defendant and Cross-Complainant
DAVID MIKKELSON

8

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**08/19/2019** at 08:00:00 AM
Clerk of the Superior Court
By Lee McAlister,Deputy Clerk

9 | SUPERIOR COURT OF CALIFORNIA

10 | COUNTY OF SAN DIEGO

11 | PROPER MEDIA, LLC, a California limited
liability company; CHRISTOPHER
12 | RICHMOND, an individual; and DREW
SCHOENTRUP, an individual,
13
Plaintiffs,
14
v.
15
BARDAV INC, a California corporation, and
16 | DAVID MIKKELSON, an individual,
17
Defendants,
18
19
20 | AND RELATED CROSS-ACTIONS
21

LEAD CASE NO. 37-2017-00016311-CU-BC-CTL
(consolidated with Case No. 37-2018-00004335-CU-MC-CTL)

**REPLY IN SUPPORT OF DEFENDANT/CROSS-COMPLAINANT DAVID MIKKELSON'S SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT [Civ. Proc. Code § 425.16]**

Date: August 23, 2019
Time: 10:30 a.m.
Dept.: C-68
Judge: Hon. Richard S. Whitney

Complaint Filed: May 4, 2017
Trial Date: October 4, 2019

*(Left margin, vertical text:)* Gordon Rees Scully Mansukhani, LLP — 101 W. Broadway — Suite 2000 — San Diego, CA 92101

22 | **I. PLAINTIFFS CONCEDE THE FOURTEENTH COUNT IS PROPERLY STRICKEN**

23 | Plaintiffs do not oppose Mikkelson's motion as to the Fourteenth Count. Rather,

24 | Plaintiffs cite the Court's August 9th tentative ruling on Snopes's anti-SLAPP motion and note

25 | that "if confirmed, [the Court] would … grant anti-SLAPP protection as to Proper Media's

26 | defamation allegations in the fourteenth claim for relief." (Opp. 4:2-7.) The Court did so confirm

27 | its tentative on August 13th, striking this count in its entirety. (Heffner Decl., Exh. A.) For the

28 | reasons stated in the MPA, and the August 13th Order, the motion remains properly granted as to

-1-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA  92101

this cause of action.

## II. THE MOTION REMAINS PROPERLY GRANTED AS TO THE FIFTEENTH, SEVENTEENTH, AND EIGHTEENTH COUNTS

### A. Campaign Statements About How the Funds Would be Used Are Not Misleading

Plaintiffs do not dispute that these statements are subject to the anti-SLAPP statute.[1] They oppose the motion solely on grounds that there is probability they will prevail on the merits. (Opp.6:3-9:19.) Plaintiffs' opposition ("Opp.") fails for numerous reasons.

***First***, Schoentrup/Richmond purport to bring this derivative claim on behalf of Snopes, yet lack standing and are disqualified from doing so – as a matter of law – for several reasons as set forth in detail in Snopes's demurrer to the TAC (ROA #942) and Mikkelson's demurrer to the TAC (ROA #936), which are hereby incorporated by reference as though set forth in full herein. (Heffner Decl., Exh. B and C.) One such ground, for example, is that: "It is patently obvious that any individual who seeks personal recovery as well as derivative recovery on behalf of an entity has a conflict of interest. He has a fiduciary obligation to the entity, yet is simultaneously prosecuting claims for his own benefit. Courts have held that this is, as a matter of law, a disqualifying conflict of interest." *Contractors Access Program of Cal. v. Majestic Capital* (2012) Cal. Super. LEXIS 6766, *22 (citing *Zarowitz v. Bank America Corp.* (9th Cir. 1989) 866 F.2d 1164, 1166). Schoentrup/Richmond assert numerous direct claims against Snopes while purportedly seeking to assume a fiduciary role on Snopes' behalf.  (*See* TAC at pp. 45-46, 49-54, 61-64, 67-68.) Further, Schoentrup is now the sole counsel of record for Plaintiffs (ROA #1127), which provides a further conflict of interest precluding his ability to fairly and adequately represent Snopes. (*See e.g., Davis v. Corned, Inc.* (6th Cir. 1980) 619 F.2d 588, 593-594.) Although Plaintiffs discuss at length their erroneous analysis as to alleged futility of the requisite pre-lawsuit demand (Opp. 15:17-17:24), which fails for the reasons stated in the MPA and the

---

[1] They are, for the same reasons the defamation-based claims are subject to protection (*see* MPA 5:23-7:4; NOL, Exh. A), i.e., they are fundraising campaign postings published on the Internet in the context of this litigation which, as this Court recently held, concerns an issue of public interest. (NOL, Exh. A.)

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway
Suite 2000
San Diego, CA 92101

cited demurrers, they ignore this likewise fatal defect. For this independent reason, applicable to every asserted ground under the Fifteenth Count, Plaintiffs fail to show a probability of success.

***Second***, Plaintiffs likewise fail to establish standing under the UCL, requiring that Snopes "has suffered injury in fact AND has lost money or property as a result of the unfair competition." Bus. & Prof. Code § 17204 (emphasis added); *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 , 229, fn. 2. To this point, Plaintiffs submit the Richmond Decl., which does no more than prophesize that the protected activity: "has and will cause substantial harm to Snopes' reputation and goodwill … [and] has subjected Snopes to imminent and substantial liability, both from the Plaintiffs and from the 40,000 individuals and entities who have donated to the GoFundMe Campaign…." (Richmond Decl. ¶ 75; Opp. 7:17-8:3.) Even if true – and Plaintiffs offer no substantiating evidence – it is insufficient. *See Kwikset Corp. v. Super. Ct. v. Super. Ct.*, 51 Cal. 4th 310, 323-25 (to satisfy the injury in fact requirement, a plaintiff must show a "personal, individualized loss of money or property in any nontrivial amount.").

***Third***, the Campaign statements are neither false nor misleading:

**1. "As for how we plan to use those donations, it's quite simple. In order to continue our factchecking efforts, we need to be able to pay our staff (which comprises 16 people), accommodate millions of month visitors, and cover other basic operating expenses, in addition to our legal expenses." (Opp. 8:14-16; Richmond Decl. ¶ 48, Exh. 6.)**

Plaintiffs offer no evidence that the forging is false or misleading. **First**, the statement is qualified with how "we *plan* to use th[e] donations" and what "we *need* to be able to" do, and does purport to state how the funds were actually used. **Second**, Plaintiffs' argue that "the GoFundMe Campaign funds are not in fact *only* being used to cover Snopes' payroll, operating expenses, and legal expenses" (Opp. 9:1-3 (emphasis added); Richmond Decl. ¶¶ 51-52); yet, the website does not say "only" or "solely" —those are Plaintiffs' words. **Third**, the evidence shows that the funds went into an account for all purposes, which necessarily includes payroll and expenses. (Plt.'s Heffner Decl., Exh. A.) **Fourth**, Plaintiffs baselessly read "our legal expenses"

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

to exclude Mikkelson, Green, and Miller's legal expenses "personally incurred" (Opp. 94-6); yet, "our" is not defined. It is reasonable that readers understood "our" to include Snopes' executives, especially given the website **links to the docket** and provides updates as to the executive litigation activity in this lawsuit.  (Richmond Decl., Exh. 6.)

**2. "The GoFundMe team is in the process of releasing the donations directly to the company, where our controller will ensure the funds are allocated appropriately and our commitment to our donors is maintained."**

Plaintiffs identify no inappropriate allocation or failure to maintain a commitment, or any false or misleading statement. (Plt.'s NOL, Exh. A, 90:8-21 ("the wording of the GoFundMe does not, as I recall or see, establish a commitment other than keeping the company from having to shutter its operations.").) Further, Snopes _did_ have a controller "in the sense of a bookkeeper" (_id._, at 86:20-87:15) and the funds were appropriately allocated (_id._, at 88:24-89:4 ("the funds were used for the benefit of the company and were not, say, disbursed to shareholders as profit distributions.")). Plaintiffs take issue with the fact that Mikkelson did not personally "provide[] any written instructions to the bookkeeper" (_id._, at 89:25-90:6); yet, there is no indication that the funds were unfairly allocated, especially given the controller was a third-party.[2]  (Opp. 9:9-12.)

**3. Plaintiffs' allege that Mikkelson falsely states: "… Snopes has used 'all previously available funds' raised through the GoFundMe Campaign to 'sustain our ongoing operations, cover our legal fees, and help us expand to stern the rising tide of misinformation.'"**

Plaintiffs' evidence shows they fabricate this statement by splicing sentences.[3] The only thing misleading here is Plaintiffs' Opp. As Mikkelson explained, "in general… the amount of money the corporation has expended on legal fees in this action has exceeded the amount of

---

[2] Indeed, had Mikkelson testified that he gave direction, Plaintiffs would surely argue that such was inappropriate, given their contention that, on the issue of litigation funding, Mikkelson is in their terms an interested director.
[3] In reality, the website states:
> As our efforts continue, so does our need for funding to **sustain our ongoing operations, cover our legal fees, and help us expand to stem the rising tide of misinformation**. …
> Our need for support has not abated (**particularly as our legal fees have exhausted all previously raised funds**), so we are raising the cap on this campaign and keeping it active as our case proceeds through the legal system. (Richmond Decl., Exh. 5, p. 7 (emphasis indicates the spliced sentences).)

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

money we have collected through GoFundMe." (*Id.*, at 85:23-86:2.) The evidence Plaintiffs cite to support their statement that "the funds, contrary to the representations posted to the GoFundMe Campaign, were largely, if not entirely, used to pay for the Individual Defendants personal legal fees" simply does not support it. To the contrary, the cited evidence shows that the statements on the GoFundMe websites are all true and there has been no deception to support a UCL claim. For instance, while Plaintiffs suggest donors were deceived because funds went to "affirmative counterclaims and the Interpleader action," the GoFundMe website proudly links to "our latest cross-complaint against Proper Media, Publife, Drew Schoentrup, Chris Richmond, and Tyler Dunn," and updates on the interpleader action. (*See* Richmond, Exhibit 5, pp. 2, 3.)

### B. Campaign Statements About the Lawsuit's Grounds and Status Are Not Misleading

The cited statements are all true, i.e., the Court *did* enter judgment in Mikkelson's favor, as described; and Snopes *is* engaged in litigation with Proper Media, an outside vendor, for the reasons stated. And they are not made misleading, contrary to Plaintiffs' claim (Opp. 10:6-16), by "fail[ing] to mention" a demurrer denial or "omit[ing]" the adversary's pleading allegations. Again, the website links to the docket for those who "would like to keep up with the case." (Richmond Decl., Exh. 6.)

### C. The Allegedly Defamatory Statements Remain Time-Barred

Campaign statements that Proper Media held Snopes.com hostage and withheld revenue are protected and properly stricken, as set forth in the MPA and this Court's August 13th Order. Plaintiff cites *Cortez v. Purolator Air* (2000) 23 Cal.4th 163 for the proposition that a timely UCL claim will revive a claim that would be time-barred under the predicate law. (Opp. 11:15-17.) *Cortez*, however, did not involve the Uniform Single Publication Act (USPA), like this case. *Id.* at 178-79. It is well settled that, under the USPA, "any tort" means exactly that and Plaintiffs may not circumvent the statutory limitation by proceeding on a theory other than defamation. *Long v. Walt Disney Co.* (2004) 116 Cal.App.4th 868, 873 ("The USPA was intended to protect

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

defamation-like claims, implicating First Amendment values and arising from mass communications, from ungovernable piecemeal liability and potentially endless tolling of the statute of limitations."). Court's apply the USPA to bar claims under the UCL § 17200. *See, e.g., Baugh v. CBS, Inc.* (N.D. Cal. 1993) 838 F.Supp.745, 756. In accord, these allegations, are likewise properly stricken.

### D. The Litigation Funding Authorizations Are Constitutionally Protected and Lawful

Plaintiffs' Opp. wrongly concludes: "The protected activity in this case is the act of funding litigation, not the board authorizations themselves. The protected activity of funding litigation expresses the board authorizations, but Snopes has not demonstrated that the allegedly wrongful board authorizations in and of themselves constitute petitioning activity." This conclusion errors because the allegedly wrongful board authorizations **_are_** protected activity, just as the actual funding is itself protected. That is, the authorizations *in and of themselves* constitute "conduct in furtherance of the exercise of the constitutional right of petition." CCP § 425.16(e)(4) ("As used in this section, 'act in furtherance of a person's right of right of petition… includes: … (4) any other conduct in furtherance of the exercise of the constitutional right of petition….").

"A defendant meets his or her burden on the first step of the anti-SLAPP analysis by demonstrating the acts underlying the plaintiff's case of action fall within one of the four categories spelled out in section 425.16, subdivision (e)." *Collier v. Harris* (2015) 240 Cal.App.4th 41, 50-51 (holding trial court erred in denying defendant's anti-SLAPP motion; the acts on which plaintiff based her claims constituted protected activity because the registration of domain names *assisted defendant in the exercise of his free speech rights*). "These categories define the scope of the anti-SLAPP statute by listing acts which constitute an 'an act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'" *Id.* (citing § 425.16(e)). "The fourth category is

a 'catch-all' that makes the anti-SLAPP statute applicable to claims based on 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" *Id.* "Accordingly, **this category <u>extends</u> the protections of the anti-SLAPP statute beyond actual instances of free speech [or the right of petition] to 'all conduct *in furtherance* of'" such rights**. *Collier*, 240 Cal.App.4th at 51 (italics in original; bold added). **An act is in furtherance of protected rights "if the act helps to advance that right or assists in the exercise of that righ**t." *Id.* (emphasis added). "In 1997, the Legislature added this category to section 425.16, along with the directive that '**this section shall be construed broadly**,' to overcome earlier appellate decisions that narrowly construed the statute's scope." *Id.* (emphasis added; citing § 425.16(a) and *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1039-1040).

In *Collier*, the plaintiff's claims were based on the registration of domain names and the use of those domain names to redirect Internet users which, typically (like board decisions), would not qualify as a protected activity. *Collier*, 240 Cal.App. at 53 ("the gravamen of Collier's claims is that [the defendant] registered Collier's and Parents Advocate League's names as domain names, and then used those domain names to redirect Internet users seeking information about Collier or Parents Advocate League to Web sites endorsing and discussing candidates that Collier and Parents Advocate League did not support."). Yet it <u>was</u> protected "because the registration of domain names *assisted* [the defendant] in the exercise of his free speech rights." *Id.* The court rightly held: To qualify for anti-SLAPP protection, "**[t]he acts need not constitute speech [or petitioning activity]; <u>they merely need to help advance or facilitate the exercise of free speech rights [or petitioning activity]</u>**." *Id.* (emphasis added).

Similarly, in *Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, the Court of Appeal found that the plaintiff's age and gender discrimination claims against a local television station were based on protected activity, reversing the trial court's decision that the anti-SLAPP

**Gordon Rees Scully Mansukhani, LLP**
**101 W. Broadway**
**Suite 2000**
**San Diego, CA 92101**

<br>

statute did not apply. Although the station's decisions to hire younger, less qualified females as weather anchors were not *in and of themselves* the exercise of free speech, they were protected acts in furtherance of the station's free speech rights. The *Hunter* court explained: "Our courts have previously recognized that '[r]eporting the news' and 'creat[ing] … a television show' both qualify as 'exercise[s] of free speech.' [The station's] selections of its … weather anchors, which were essentially casting decisions regarding who was to report the news on a local television newscast, '**helped advance or assist**' both forms of First Amendment expression. The conduct therefore qualifies as a form of protected activity." *Hunter*, 221 Cal.App.4th at 1521 (emphasis added).[4]

Perhaps most instructive is *San Diegans v. SDSU Research Found.*, 13 Cal.App.5th 76 (2017), currently up for review, also cited with approval in *Wilson* on other grounds (*see Wilson*, 2019 Cal. LEXIS 5226, at *7, fn. 3). There, a journalism organization, inewsource, entered into contracts with KPBS, a department of SDSU and the local radio and TV station, to produce news stories with and for KPBS in exchange for the right to use KPBS offices, equipment, and facilities. After inewsource published more than a dozen stories critical of attorney Cory Briggs, San Diegans for Open Government (SDOG), sued inewsource and SDSU alleging the contracts between KPBS and inewsource violated statutory prohibitions on self-dealing involving public funds because Ms. Hearn, inewsource's executive director, was also an SDSU faculty member. The trial court granted the defendants' anti-SLAPP motion.

The appellate court affirmed, stating: "Reporting news is protected speech. News stories addressing issues of public interest do not arise out of thin air. They often require newsgathering using offices, Internet access, studios, and production services. Providing office space and

---

[4] *Hunter* was not overturned by *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, the case Plaintiffs misapply to the instant action. *See Rall v. Tribune* 365 LLC (2019) 31 Cal.App.5th 479, 501-502 ("*Park* did not 'express an opinion concerning whether [*Hunter*] itself was correctly decided.' Unless and until it does, we see no reason to disagree with *Hunter*.") Indeed, the California Supreme Court recently cited *Hunter* with approval in *Wilson v. Cable News Network, Inc.* (July 22, 2019, No. S239686) 2019 Cal. LEXIS 5226, at *30, noting *Hunter's* "holding that choice of on-air employee to speak on behalf of news organization furthers organization's exercise of speech rights."). The present matter is similar to Hunter; whereas Park is distinguishable.

related newsgathering facilities in exchange for investigative news stories furthers protected speech. SDOG's lawsuit is therefore **squarely within the anti-SLAPP statute, which protects _not only speech_, but also 'conduct in furtherance of the exercise of the constitutional right of … free speech in connection with a public issue or an issue of public interest.'"** *San Diegans*, 13 Cal.App.5th at 83-84 (emphasis added; citations omitted). The court "reject[ed] SDOG's assertion that the anti-SLAPP statute does not apply because its lawsuit target[ed] unlawful self-dealing, not protected speech." *San Diegans*, 13 Cal.App.5th at 84. The court instructed: "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Id.*, at 102. "SDOG's claim under Government Code section 1090 require[d] it to show that [a state employee] was financially interested in a contract made by her in her official capacity as a state employee." *Id.*, at 102. The court reasoned: "These contracts that SDOG challenges are *not* merely evidence of liability, nor are they merely a step leading to some different act for which liability is asserted. [quoting *Park*, 2 Cal.5th at 1060.] Rather, SDOG's complaint alleges these agreements are 'illegal[]' and, therefore, asks the court to enter judgment declaring each of them to be 'void.' SDOG could not have omitted from its complaint allegations regarding the [contracts] and still state the same claims." *Id.*, 103-104.

SDOG, like the Plaintiffs in this case, argued that, under *Park*, 2 Cal. 5th at 1060, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complaint of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *San Diegans*, 13 Cal.App.5th at 105. "SDOG contend[ed the court] must, therefore, 'segregate the negotiating and entering into the Agreements from the subject of the Agreements.'" *Id.* "SDOG argue[d] the anti-SLAPP analysis would be the same regardless of the content of the challenge contracts[, asserting] '[a]s an example, the Agreements at issue here would be equally outside the scope of the anti-SLAPP statue if Ms. Hearn were a licensed

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

building contractor and had used her faculty position at SDSU to procure a long-term

construction contract between SDSU and her construction company.'" *Id.* The court of appeals

disagreed: "SDOB's argument fails because in determining whether the challenged contracts are

protected under section 425.16, subdivision (e)(4), **the fact that these contracts are for**

**gathering and delivering news stories and not some other purpose <u>matters</u>**." *San Diegans*,

13 Cal.App.5th at 105 (emphasis added). "The analysis might well be different if SDOG sought

to void the hypothetical construction contract it posits, or any number of other hypothetical

contracts that do not involve newsgathering and reporting." *Id.*, at 106.

Here, Plaintiffs admit "the thrust of [their] seventeenth and eighteenth claims for relief, as

well as portions of Plaintiffs' fifteenth claim for relief, are that the result of Snopes'

consideration of whether to advance litigation expenses to Mikkelson, Green, and Miller—the

Board authorizations and written consents—are improper." (Opp. 5:15-18, 5:21-22 ("the

gravamen of the claims are [*sic*] that Snopes' Board improperly authorized the advancement.").)

Like the plaintiff in *San Diegans* asked the trial court to separate the contracts from their

purpose, Plaintiffs wrongly ask this Court to distinguish the authorization for litigation funding

from the actual litigation funding.

Yet, just as news stories do not arise out of thin air, neither did Snopes' litigation

funding, which Plaintiffs concede is protected petitioning activity. Whereas news stories require

"newsgathering offices, Internet access," etc., Snopes' litigation funding requires board

authorization. Indeed, there could be no funding without the allegedly wrongful board

authorization. It was a necessary step, i.e., an act that not only "help[ed to] advance [and]

facilitate the exercise" of the right to petition, but was <u>essential</u> to it. Moreover, Plaintiffs are not

seeking to rescind the board's authorization to, for example, revise its editorial process. They

seek to rescind the board's authorization to fund ongoing litigation—this litigation. That

protected purpose brings this case within § 425.16(e)(4). *San Diegans*, 13 Cal.App.5th at 105-

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

106 ("SDOG is not seeking to void a contract to make widgets or to construct a building. It is seeking to void contracts that directly affect the content of news stories the public receives"). In *San Diegans,* "SDOG's argument fail[ed] because in determining whether the challenged contracts are protected under section 425.16, subdivision (e)(4), the fact that the[] contracts [were] for gathering and delivering news stories and not some other purpose **matters**." *Id.*, at 53 (emphasis added). Here too, the fact that the board authorizations and consents were to fund the instant litigation, and not some other purpose, **matters**. Just as registering a domain name, hiring weather anchors, and contracting for office space are protected when done in furtherance of protected rights, here, board authorizations necessary for litigation funding are protected.

Plaintiffs contend: "If no distinction were made, any claim challenging an improper authorization by a board of directors involving advancement of legal funds would automatically qualify for anti-SLAPP protection if the decision resulted in the advancement of legal funds." (Opp. 5:22-24.) Not so. First, pursuant to 425.16(e)(4), the constitutional right of petition at issue must be "in connection with a public issue or an issue of public interest," like Snopes' litigation funding. Run of the mill board decisions will not qualify. Second, "[t]he anti-SLAPP statute 'poses no obstacle to suits that possess minimal merit.'" *San Diegans*, 13 Cal.App.5th at 100 ("Contrary to SDOG's assertions, determining section 425.17, subdivision (d)(1) applies does not grant defendants any immunity whatsoever.").[5]

## III. THE MOTION REMAINS PROPERLY GRANTED AS TO THE SIXTEENTH COUNT

Here again, Plaintiffs do not dispute that the conduct at issue is subject to the anti-SLAPP statute; rather, Plaintiffs oppose the motion solely on the merits. (Opp.17:25-18:22.) Plaintiffs' Opp. fails as to this Sixteenth Count for the same reasons discussed above relative to the

---

[5] It is important to remember that the Legislature specifically added to the anti-SLAPP statute that it "shall be construed broadly." CCP § 425.16(a). "The broad application of section 425.16 means that meritorious suits will be subject to a special motion to strike; the section reflects the balance struck by the Legislature between the concern for the viability of meritorious lawsuits and the concern of encouraging participation in matters of public significance." *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 893 (citing *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123).

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

1  Fifteenth Count (save the derivative issues) and the grounds set forth in Mikkelson's demurrer to

2  the TAC (ROA #936), incorporated above and herein again by reference as though set forth in

3  full. (Heffner Decl., Exh. C.)

4                                              Respectfully submitted,

5

6  Dated:  August 16, 2019                     GORDON REES SCULLY
                                               MANSUKHANI, LLP
7

8                                      by:  _____
                                           Richard P. Sybert
9                                          Kimberly D. Howatt
                                           Holly L.K. Heffner
10                                         Attorneys for Defendant
                                           DAVID MIKKELSON
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD
AMENDED COMPLAINT**

DREW W. SCHOENTRUP, Cal. Bar No. 279830
4150 Mission Blvd., Suite 220
San Diego, CA 92109
Telephone: 509.995.5654
Email: drew@proper.io

Attorney for Plaintiffs/Cross-Defendants/Cross-Complainants
PROPER MEDIA, LLC, CHRISTOPHER RICHMOND, DREW
SCHOENTRUP, and PUBLIFE, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company; CHRISTOPHER RICHMOND, an individual; and DREW SCHOENTRUP, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BARDAV INC., a California corporation; DAVID MIKKELSON, an individual; VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual, <br><br> Defendants. | Lead Case No. 37-2017-00016311-CU-BC-CTL <br> (*Consolidated with* 37-2018-00004335-CU-MC-CTL) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID MIKKELSON'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT** <br><br> Date: August 30, 2019 <br> Time: 10:30 a.m. <br><br> Dept.: C-68 <br> Judge: The Hon. Richard S. Whitney <br><br> Complaint Filed: May 4, 2017 <br> Trial Date: October 4, 2019 |

Plaintiffs Drew W. Schoentrup ("Schoentrup") and Christopher Richmond ("Richmond"), individually and as shareholders of Snopes Media Group, Inc. ("Snopes"), and their company Proper Media, LLC ("Proper Media") (together the "Plaintiffs") hereby oppose Defendant David Mikkelson's ("Mikkelson") Demurrer to Plaintiffs' Third Amended Complaint ("TAC").

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID
MIKKELSON'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

I.    **ARGUMENT** ........................................................................................ **5**

   A.   SCHOENTRUP AND RICHMOND CAN ASSERT DERIVATIVE CLAIMS AGAINST MIKKELSON. ...... 5

   B.   SCHOENTRUP AND RICHMOND CAN REPRESENT SNOPES' INTERESTS. ..................................... 5

   C.   SCHOENTRUP AND RICHMOND HAVE ADEQUATELY ALLEGED DEMAND FUTILITY. ................. 6

   D.   FIFTH CLAIM FOR RELIEF FOR CORPORATE WASTE. ............................................................ 8

   E.   SEVENTH CLAIM FOR RELIEF FOR BREACH OF FIDUCIARY DUTY. ......................................... 8

   F.   TWELFTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT. .................................................. 10

   G.   THIRTEENTH CLAIM FOR RELIEF FOR PROMISSORY ESTOPPEL. ............................................ 11

   H.   FIFTEENTH CLAIM FOR RELIEF FOR UNFAIR COMPETITION. ............................................... 11

       1.   *Schoentrup And Richmond Have Alleged Actual Injury To Snopes.* ............................. 12

       2.   *Mikkelson Individually Participated In The Unlawful Conduct.* ................................... 13

       3.   *The Litigation Privilege Does Not Apply.* ..................................................................... 14

       4.   *The Board's Authorizations Are Unlawful.* ................................................................... 14

       5.   *Corporate Board Activity Is A Business Practice Under The UCL.* ................................ 17

   I.   SIXTEENTH CLAIM FOR RELIEF FOR UNFAIR COMPETITION. ................................................ 17

   J.   SEVENTEENTH CLAIM FOR RELIEF FOR RESCISSION. ........................................................... 18

   K.   EIGHTEENTH CLAIM FOR RELIEF FOR DECLARATORY RELIEF. ........................................... 19

   L.   RES JUDICATA DOES NOT PRECLUDE PROPER MEDIA'S 16TH AND 18TH CLAIMS. ................. 19

   M.   THE COURT HAS JURISDICTION OVER PROPER MEDIA'S DIRECT CLAIMS. ........................... 19

II.    **CONCLUSION** ............................................................................................ **20**

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID MIKKELSON'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

**<u>Cases</u>**

*Allergia, Inc. v. Bouboulis*, 229 F. Supp. 3d 1150 (S.D. Cal. 2017) ................................. 15

*Angie M. v. Superior Court*, 37 Cal. App. 4th 1217 (1995) .................................. 10

*Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222 (2017)...................................... 6

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) .......................................... 6

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004).......... 7

*Biren v. Equal. Emergency Med. Grp., Inc.*, 102 Cal. App. 4th 125 (2002) ...................... 7

*Continental Baking Co. v. Katz*, 68 Cal. 2d 512 (1968) ............................ 9

*Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377 (1992) ...................... 17

*Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2011) ................... 13

*Gutierrez v. Girardi*, 194 Cal. App. 4th 925 (2011)........................................ 8

*In re RasterOps Corp. Sec. Litig.*, 1993 WL 476651 (N.D. Cal. 1993) .................... 5

*Kruss v. Booth*, 185 Cal. App. 4th 699 (2010) ..................................... 7

*Kwikset Corp. v. Sup.Ct.*, 51 Cal. 4th 310 (2011)........................................ 12

*Ladas v. California State Auto. Ass'n.*, 19 Cal. App. 4th 761 (1993)....................... 10

*Larson v. Dumke*, 900 F.2d 1363 (9th Cir. 1990) ................................ 5

*Nakash v. Superior Court*, 196 Cal. App. 3d 59 (1987) ........................ 18

*Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572 (2001) .................... 7

*Plate v. Sun–Diamond Growers*, 225 Cal. App. 3d 1115 (1990) ..................... 15

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ................................ 6

*Richter v. CC-Palo Alto, Inc.*, 2017 WL 4236992 (N.D. Cal. Sept. 25, 2017) ................ 5

*Rothman v. Jackson*, 49 Cal. App. 4th 1134 (1996)................................... 14

*Shields v. Singleton*, 15 Cal. App. 4th 1611 (1993)................................. 6, 7

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093 (1996) ............ 17

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009)........................... 12

*US Ecology, Inc. v. State of Calif.*, 129 Cal. App. 4th 887 (2005) ...................... 10

*Yee v. American National Ins. Co.*, 235 Cal. App. 4th 453 (2015) ...................... 9

1 | *Zarowitz v. Bank America Corp.*, 866 F.2d 1164 (9th Cir. 1988) ........................................... 5

2 | **Statutes**

3 | Chancery Court Rule 23.1 ................................................................................. 7

4 | Corporations Code § 310(a) ................................................................. 14, 16, 17, 19

5 | Corporations Code § 317(f) ................................................................. 14, 15, 16, 17

6 | Corporations Code § 800(b)(2) ................................................................. 6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID
MIKKELSON'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

# I.   ARGUMENT

## A.   Schoentrup and Richmond Can Assert Derivative Claims Against Mikkelson.

The Court previously upheld Schoentrup and Richmond's right to assert derivative claims against Mikkelson without notice to Snopes' Board. (Schoentrup Decl., at ¶¶ 4 & 6, Exs. 1 & 2.) Specifically, on January 26, 2018, the Court found that notice to Snopes' Board would have been futile, because the claims at issue concerned Mikkelson's alleged misconduct. (*Id.*, at ¶ 4, Ex. 1.) And on April 2, 2019, the Court declined to rule, as a matter of law, that Schoentrup and Richmond could not allege demand futility and represent Snopes' interests. (*Id.*, at ¶ 6, Ex. 2.)

## B.   Schoentrup And Richmond Can Represent Snopes' Interests.

The Court already rejected the same "fair and adequate representatives" argument in connection with Plaintiffs' motion for leave to amend. (*Id.*, at ¶ 6, Ex. 2) ("It cannot be said, as a matter of law, Plaintiffs cannot fairly and adequately represent shareholders when there is no indication any other shareholders would pursue claims of alleged looting by Mikkelson. Most of the other shareholders are clearly aligned with Mikkelson.") There is no per se rule prohibiting shareholders from simultaneously bringing both direct and derivative actions. *Larson v. Dumke*, 900 F.2d 1363, 1368 (9th Cir. 1990) (allowing direct and derivative claims to proceed). The case that Mikkelson cites, *Zarowitz v. Bank America Corp.*, 866 F.2d 1164 (9th Cir. 1988), does not hold otherwise. As the Court found, "*Zarowitz* did not establish a per se rule barring any shareholder who has a conflict of interest as serving as a representative." (Schoentrup Decl., at ¶ 6, Ex. 2.) Moreover, the "fact intensive analysis" of adequate representation in a derivative suit is ill-suited for determination "at the pleading stage." *Richter v. CC-Palo Alto, Inc.*, 2017 WL 4236992 at *8 (N.D. Cal. 2017). Any suggestion that Tyler Dunn could bring derivative claims against Mikkelson was, just as above with Mikkelson's other arguments, already rejected by the Court. (Schoentrup Decl., at ¶ 6, Ex. 2) ("There is no indication [Tyler] Dunn would pursue the claims as such a small shareholder.") That Tyler Dunn has now made an appearance in this case, simply to file a demurrer to Snopes' new direct claims against him, does not suggest that Dunn would now pursue claims against Mikkelson. Regarding Schoentrup's role as counsel, Mikkelson cites no authority for his conclusion. Schoentrup's appearance in this case is no different than Schoentrup and Richmond's

prior counsel. If the Court is inclined to disqualify Schoentrup as a fair and adequate representative of Snopes, Schoentrup and Richmond respectfully request an opportunity to retain new counsel, which they are doing, or leave to amend to remove Schoentrup as a derivative plaintiff.

### C. Schoentrup And Richmond Have Adequately Alleged Demand Futility.

It is elementary that a shareholder can assert a derivative claim without making a demand on the board if that demand would be futile. Corp. Code § 800(b)(2); *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1618 (1993). In deciding whether a plaintiff will be excused from making a demand on the board, the court evaluates "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Apple, Inc., v. Superior Court*, 18 Cal. App. 5th 222, 233 (2017) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)). "[F]utility is gauged by the circumstances existing at the commencement of a derivative suit." *Id.* "[T]he two-prong test . . . is disjunctive; accordingly, there is demand excusal if either prong is satisfied." *Id*. Where the board that would be considering the demand did not make a business decision that is being challenged, the second prong of the *Aronson* test for demand futility is generally not applied. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). "Instead, it is appropriate in these situations to examine whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations." *Id*.

**First**, there is no majority of "disinterested and independent" Snopes' directors who could "impartially consider" the merits of pursuing derivative claims against Mikkelson. It is undisputed that at the time Plaintiffs filed their TAC in April 2019, Snopes' Board consisted of Mikkelson, Brad Westbrook ("Westbrook"), and Richmond. However, on June 14, 2018, prior to the filing of the TAC, Mikkelson established a special litigation committee consisting only of Mikkelson and Westbook (the "Special Litigation Committee"). (TAC at ¶¶ 15, 240(g)-(j); 325(g)-(j); 350(g)-(j); Richmond Decl., at ¶¶ 8-10, Ex. A.) Richmond is not a member of and in fact was expressly excluded from the Special Litigation Committee. (*Id.*) The Special Litigation Committee "has the power to exercise all powers and authority of the Board with respect to" the instant litigation. (*Id.*) Any pre-suit demand on the Board would have been controlled by the Special Litigation

Committee. (*Id.*) Because Mikkelson is neither disinterested nor independent when it comes to a decision on suing himself, there cannot be a majority of disinterested and independent directors on the Special Litigation Committee who could impartially consider the claims against Mikkelson.

But even if the relevant inquiry were to look at the full three-member Board in assessing demand futility, Schoentrup and Richmond would still prevail. The relevant test for demand futility is whether there are "facts specific to each director from which [the trier of fact] can [find a reasonable doubt] that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 587 (2001) (quoting *Shields*, 15 Cal. App. 4th at 1622). "A director will be considered unable to act objectively with respect to a presuit demand if he or she is interested in the outcome of the litigation or is otherwise not independent." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004); *See* Chancery Court Rule 23.1. Here, Richmond and Mikkelson are parties to this lawsuit with direct claims pending against each other. As litigation adversaries, neither can be expected to impartially consider whether to pursue derivative claims against Mikkelson, considering that the claims would (a) result in financial liability for Mikkelson and (b) cut off Mikkelson's access to corporate funds to pursue his direct claims against Richmond.

**Second**, the challenged Board authorizations (TAC at Exs. F-H) are not subject to the business judgment rule and Mikkelson and Westbrook, the Board members who purported to approve these written consents, are still members of and constitute a majority of Snopes' current three-member Board. (TAC at ¶¶ 119-134.) Mikkelson argues, with no support, that the business judgment rule somehow saves Mikkelson from liability for his "corporate decisions." This argument misuses the business judgment rule. "The business judgment rule is essentially a presumption that corporate directors act in good faith." *Kruss v. Booth*, 185 Cal. App. 4th 699, 728 (2010). Sensibly, that presumption does not apply "when circumstances inherently raise an inference of conflict of interest" between the voting directors and the corporation. *Id*. In other words, "the business judgment rule does not protect a director where there is a conflict of interest." *Biren v. Equal. Emergency Med. Grp., Inc*., 102 Cal. App. 4th 125, 138 (2002). Here, the challenged Board authorizations were authorized by two people: Westbrook and Mikkelson. (TAC at ¶¶ 119-134.)

Westbrook's vote, standing alone, does not constitute a majority of directors required to transact corporate business under the Bylaws. (TAC, Ex. E, § 3.9.) Mikkelson cast the deciding vote. Mikkelson, in approving advancement of his own litigation expenses and those of his fellow defendants, elevated his personal interests above Snopes' interests. Moreover, the Court already rejected the same "business judgment rule" argument in connection with Plaintiffs' motion for leave to amend. (Schoentrup Decl., at ¶ 6, Ex. 2.)

**Third**, the use of "quorum" in the derivative claims does not defeat the demand futility established above. Westbrook is the only allegedly disinterested and independent director, and, by himself, is unable to make corporate decisions on behalf of the Board because a single Director does not constitute a *majority* under the Bylaws. (TAC, Ex. E, § 3.9.) Moreover, without Mikkelson, Westbrook is the sole member of the Special Litigation Committee, and cannot, by himself, make corporate decisions on behalf of the Special Litigation Committee because a single Director does not constitute a *majority* under the Bylaws. (*Id*.) If the Court is inclined to hold that "quorum" should be replaced by "majority," Plaintiffs can easily make those changes by amendment.

### D. Fifth Claim For Relief For Corporate Waste.

Mikkelson's argument here is directed to derivative standing. (MPA. at p. 3.) As discussed above, the Court has previously upheld Schoentrup and Richmond's right to assert derivative claims, on behalf of Snopes, against Mikkelson, including Schoentrup and Richmond's derivative claim for corporate waste. (Schoentrup Decl., at ¶ 4, Ex. 1.) Moreover, Schoentrup and Richmond can represent Snopes' interests and have adequately alleged demand futility.

### E. Seventh Claim For Relief For Breach of Fiduciary Duty.

The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011). Mikkelson does not dispute that he owed fiduciary duties to Snopes. Rather, Mikkelson alleges that the seventh claim for relief does not state "resultant damages to [Snopes]." (MPA. at p. 3, lns. 17-18.). To arrive at this conclusion, Mikkelson ignores the actual language and thrust of the seventh claim and supporting allegations (TAC at ¶¶ 61-162), including, for example, that Mikkelson misappropriated and embezzled Snopes' funds for

8

personal expenses, lied about those expenses, and defrauded other shareholders into agreeing to his misappropriation of those funds. (TAC at ¶¶ 61-69, 234(1)-(2).) That Mikkelson terminated a material contract of Snopes, on his own accord and for his own benefit, to the detriment of Snopes and its other shareholders. (TAC at ¶¶ 70-93, 234(3).) That by interfering with Proper Media's ability to perform under the General Service Agreement, conspiring to have Green and Miller violate their fiduciary and contractual duties to Plaintiffs, and conspiring with Green to convert Proper Media's equipment to his own or Snopes' uses, Mikkelson exposed Snopes to liability. (TAC at ¶¶ 70-93, 234(4)-(7).) That by promising and entering into an agreement with Plaintiffs to reimburse them, or have Snopes reimburse them, for payments made under the Barbara Settlement Agreement, reneging on the promise and breaching that agreement, thus subjecting Snopes to liability under the agreement all so that Mikkelson could keep Barbara from exposing "dirt" on him. (TAC at ¶¶ 109-118, 234(9).) Directing or otherwise causing Snopes to improperly advance personal legal expenses to himself, Green and Miller in connection with this lawsuit in violation of the Corporations Code and Snopes' Bylaws, causing Snopes to suffer substantial economic loss and placing the company in critical financial condition. (TAC at ¶¶ 119-134, 234(10).) And inducing and collecting donations from the GoFundMe Campaign, purportedly on behalf of Snopes, in order to finance his personal legal fees in this litigation, based on false, materially misleading, and defamatory statements, thus further exposing Snopes to liability, both from the Plaintiffs and the contributors of the GoFundMe Campaign. (TAC at ¶¶ 135-162, 234(11).)

Mikkelson's reliance on a prior preliminary injunction ruling in this case (ROA 99) as findings of fact for a rejection of Plaintiffs' allegations is misplaced, particularly on demurrer. It is well settled that the "granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy." *Continental Baking Co. v. Katz*, 68 Cal. 2d 512, 528 (1968). "Were the law otherwise, it would provide a handy guide for how to succeed in a lawsuit without really trying – i.e., how to obtain permanent relief preliminarily." *Yee v. American National Ins. Co*., 235 Cal. App. 4th 453, 458 (2015). If there is any confusion as to the gravamen of the seventh claim for relief, such could be cured by amendment to further clarify how each of Mikkelson's enumerated breaches has caused Snopes to suffer economic loss, exposed Snopes to

liability, and placed Snopes in critical financial condition and imminent danger of insolvency. (TAC at ¶¶ 61-162, 237.) "Liberality in permitting amendment is the rule, if a fair opportunity to correct any defect has not been given." *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1227 (1995).

### F. Twelfth Claim For Relief For Breach of Contract.

Mikkelson disputes the existence of a contract underlying Plaintiffs' twelfth claim for relief. (MPA at 4.) For a contract to exist, the offer must be specific enough that its acceptance creates a complete contract. *Ladas v. California State Auto. Ass'n.*, 19 Cal. App. 4th 761, 770-771 (1993). And when a party makes a promise on which another person justifiably relies, the promisor may be bound to perform it, despite a lack of consideration. *US Ecology, Inc. v. State of Calif.*, 129 Cal. App. 4th 887, 901-902 (2005). As alleged in the TAC, to stop Barbara from exposing "dirt" on Mikkelson and resolve Barbara's demand for her share of Snopes' non-distributed net profit from January 1, 2016 to June 30, 2016, a time period ***before*** the Proper Media members acquired the Barbara share on July 1, 2016, Mikkelson instructed Plaintiffs to settle with Barbara for a six-figure amount and to make all settlement payments from advertising revenue Proper Media collected on behalf of Snopes, before paying Snopes. (TAC at ¶¶ 109-118, 276-284, Exs. C and D.)

The entirety of Mikkelson's argument disputing the existence of an agreement between the parties comprises a few cherry-picked words from the discussion that lead to the binding "September 2016 Agreement" between the parties and the October 21, 2016 "Barbara Settlement Agreement." (MPA at 5.) A cursory review of the allegations in the TAC from ¶¶ 109-118 and Exhibits C and D establish that Mikkelson explicitly instructed the Plaintiffs to settle with Barbara. (TAC at ¶¶ 109-118, Exs. C & D.) For example, on or about September 14, 2016, Mikkelson wrote to Schoentrup on Proper Media's Slack messenger account regarding his desire to settle with Barbara and his proposed settlement terms: "If you can sell her on that, I will cover by kicking back the extra payment amount to Proper Media each month." (*Id.*) Schoentrup (on behalf of Plaintiffs) accepted Mikkelson's offer, stating "Okay I will run those terms by her." (*Id.*) On or about September 29, 2016, Mikkelson again agreed (on behalf of himself and Snopes) to reimburse Plaintiffs for the payments they made under the settlement agreement with Barbara, stating: "What I was thinking was that you're making the settlement, and if it means that you end up paying her an

additional $X per month on the promissory note payments, then we'll increase the amount of [Snopes] revenue that Proper keeps by $X per month." (*Id.*) Based on this promise, representation, and agreement, the Plaintiffs entered into the Barbara Settlement Agreement. (*Id.*)

Despite proposing and agreeing to the September 2016 Agreement, Mikkelson now contends that no agreement existed and Plaintiffs' act of paying the Barbara Settlement Agreement from Snopes' advertising revenues was improper. (TAC at ¶¶ 115-18.) Moreover, Mikkelson has refused to reimburse Plaintiffs' for the very payments he instructed Plaintiffs to make and has further demanded that earlier reimbursements, which were made without objection from Mikkelson, be repaid to Snopes, which Plaintiffs did repay while reserving their right to seek relief from the Court in the form of their twelfth claim for relief. (*Id.*)

## G. Thirteenth Claim For Relief For Promissory Estoppel.

Like Plaintiffs' twelfth claim for relief, Mikkelson contends that there is no promise that would give rise to Plaintiffs' thirteenth claim for relief. (MPA at 5-6.) Again, a review of Plaintiffs' allegations, including the statements from Mikkelson highlighted above, reveals a clear and unambiguous promise that the Plaintiffs' relied upon to their detriment. (TAC at ¶¶ 109-118, 285-295, Exs. C and D.) Mikkelson's effort to now walk back his explicit written promise, although not surprising, does not absolve him of liability. Mikkelson further states, without support, that "Plaintiffs evidently seek to obtain the full benefit of Barbara's claim-free share in [Snopes] without having to fund *any* of the payments that they contracted to pay, thereby putting them in a 'better position.'" (MPA. at 6.) This is patently untrue. It is undisputed that Plaintiffs' paid the entirety of the multi-million-dollar purchase price to acquire Barbara's share, including interest and other fees associated with the acquisition. The dispute at issue in Plaintiffs' thirteenth claim for relief is related only to the September 2016 Agreement, which Plaintiffs' detrimentally relied upon based on Mikkelson's unambiguous promises. (TAC at ¶¶ 109-118, 285-295, Exs. C and D.) To suggest that Plaintiffs seek the benefit of Barbara's share for free, because they are asking Mikkelson to make good on a separate promise, is disingenuous.

## H. Fifteenth Claim For Relief For Unfair Competition.

The threshold question of standing is addressed above. The remainder of Mikkelson's

arguments related to the fifteenth claim for relief are discussed below.

### 1.    Schoentrup And Richmond Have Alleged Actual Injury To Snopes.

Mikkelson conclusively states there are no allegations showing Snopes "has suffered injury in fact and has lost money or property as a result of the unfair competition." (MPA at 7.) This is not true and ignores the allegations in Plaintiffs' TAC. (*See, e.g.,* TAC at ¶¶ 119-162, 302-325.) "Injury in fact" under section 17204 incorporates the established federal law meaning: "an invasion of legally protected interest which is (a) concrete and particularized…; and (b) actual or imminent, not conjectural or hypothetical." *Kwikset Corp. v. Sup.Ct.*, 51 Cal. 4th 310, 322 (2011). The "lost money or property" requirement means plaintiff "must demonstrate some form of economic injury." *Id*. at 323. There is no set formula to demonstrate economic injury, and a plaintiff may establish such injury in numerous ways, including by having a present or future economic interest diminished. *See Id.* Moreover, economic injury is itself a form of "injury in fact," and where the alleged harm is economic, injury in fact and lost money or property are "one and the same." *Troyk v. Farmers Group, Inc*., 171 Cal. App. 4th 1305, 1348 (2009).

The allegations in the TAC, when accepted as true, establish that Snopes is advancing substantial amounts of corporate funds to Mikkelson, Green and Miller for their personal legal fees. (TAC at ¶¶ 119-134, 315-319.) As a result of these transfers for the Individual Defendants' personal use, Snopes is in critical financial condition. (TAC at ¶¶ 134, 322-323.) Snopes impending demise and substantial loss of corporate funds has already caused actual harm to Snopes and threatens even more imminent irreparable harm. (*Id*.) Mikkelson's argument that Snopes "has contingently advanced monies…for which [Snopes] holds the right of repayment if required" is absurd, as Green and Miller have testified that they cannot repay the fees that have been advanced to them thus far, and Mikkelson has testified that he is unlikely to be able to repay the fees advanced to him. (Schoentrup Decl. at Ex. 4, ¶ 9; Ex. 5, ¶¶ 22-23; Ex. 6, ¶¶ 16-17.) The economic injury to Snopes is palpable and constitutes "injury in fact" and "lost money or property" under section 17200.

Mikkelson's conclusory statements that Schoentrup and Richmond "cannot establish any corresponding 'injury in fact' or 'lost money or property' to Snopes, because money is actually being donated to Snopes" is circular and begs the relevant question. In addition to the allegations

above regarding Snopes' unlawful advancement of substantial sums of money to the Individual Defendants to pursue their personal interests, Schoentrup and Richmond further allege that "Mikkelson's conduct in connection with the GoFundMe Campaign **has** and will cause substantial economic harm to [Snopes] and its web property Snopes.com's reputation and goodwill as a leading fact checking and fake news-debunking resource." (TAC at ¶¶ 135-162, 321.) Moreover, Schoentrup and Richmond allege that Mikkelson's conduct has also "subjected [Snopes] to imminent and substantial liability both from Plaintiffs and from the nearly 30,000 individuals and entities (and counting) who have donated to the GoFundMe Campaign on the basis of Mikkelson's false, defamatory, and misleading statements." (*Id*.) When taken as true for the purpose of demurrer, and considering that Snopes' business depends on its reputation as an impartial fact-checker and source of truth, Schoentrup and Richmond's allegations clearly establish an invasion of a "legally protected interest which is (a) concrete and particularized…; and (b) actual or imminent."

### 2. Mikkelson Individually Participated In The Unlawful Conduct.

Mikkelson argues that Schoentrup and Richmond "have not sufficiently alleged any actionable conduct" by Mikkelson under the UCL. (MPA at 8-9.) This is not true. For example, Schoentrup and Richmond allege that the "GoFundMe Campaign, and information and updates about the campaign published by or at the direction of Mikkelson..." (TAC at 135.) Mikkelson's further reliance on Schoentrup and Richmond's "information and belief" allegations as a per se bar to recovery is also misplaced. A "'[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true.'" *Gomes v. Countrywide Home Loans, Inc*., 192 Cal. App. 4th 1149, 1159 (2011) (citation omitted). Here, there is nothing to suggest Schoentrup and Richmond do not have information leading them to believe the allegations against Mikkelson are true. To the contrary, a review of the GoFundMe Campaign shows that it was created by David Mikkelson on July 24, 2017. Schoentrup and Richmond then allege that (1) Mikkelson falsely represented how funds raised through the GoFundMe Campaign would be used in order to induce and encourage donations from the public; (2) Mikkelson solicited donations through the GoFundMe Campaign based on materially misleading statements about the grounds for this litigation and the status of the claims in

1 this litigation; (3) Mikkelson solicited donations through the GoFundMe Campaign based on false

2 and defamatory statements about Proper Media; and (4) Mikkelson directed Snopes to improperly

3 advance attorneys' fees to himself and Green and Miller in violation of Corporations Code sections

4 310(a) ; and 317(f) ; and Snopes' Bylaws. (TAC at ¶¶ 119-162, 302-325.) Given Schoentrup and

5 Richmond's status as Snopes' shareholders, Richmond's position on Snopes' Board, and that

6 Schoentrup and Richmond are largely the subjects of Mikkelson's false and misleading statements

7 published to the GoFundMe Campaign, Mikkelson cannot credibly suggest that Schoentrup and

8 Richmond lack "information leading [them] to believe that the allegations are true."

9 ### 3.      The Litigation Privilege Does Not Apply.

10 Proclaiming false, misleading and defamatory statements to the public on the Internet

11 regarding ongoing litigation is not protected by the litigation privilege. *See Rothman v. Jackson*, 49

12 Cal. App. 4th 1134, 1141 (1996). Equally nonsensical is Mikkelson's position that the Board's

13 authorizations, and his involvement therein, are immune from liability under the litigation privilege

14 no matter how unlawful the actions may be. Such a sweeping proposition is not supported by

15 section 47(b) of the Civil Code or Mikkelson's cited case law. If it were, any challenge by

16 shareholders to a corporations' advancement of legal fees would automatically be barred by the

17 litigation privilege in section 47(b) thereby obviating the purpose of sections 317 and 310 and

18 corporate bylaws in the first place. Indeed, the Court recently found that Snopes' corporate board

19 activity is not protected petitioning activity under section 425.16. (Schoentrup Decl., at 11, Ex. 7.)

20 ### 4.      The Board's Authorizations Are Unlawful.

21 **First**, with no support, Mikkelson declares that the Board's authorizations are authorized by

22 Corporations Code § 317(f) and Snopes' Bylaws. (MPA at 10.) Mikkelson's conclusion is

23 misplaced. The Board's authorizations are in fact unlawful because they violate both Corporations

24 Code section 317(f) and Snopes' Bylaws. In order to be eligible for indemnification under section

25 317, the person seeking indemnification must have been sued "by reason of the fact" that he was

26 performing his corporate duties (as a director, officer, employee, or other agent). "In other words,

27 the conduct of the agent which gives rise to the claim against him must have been performed in

28 connection with his corporate functions and not with respect to purely personal matters." *Plate v.*

1 | *Sun–Diamond Growers*, 225 Cal. App. 3d 1115, 1123 (1990) (citation omitted). The "by reason of
2 | the fact" prerequisite is not met "[w]here **personal motives**, not the corporate good, are predominant
3 | in a transaction giving rise to an action." *Id.* (emphasis added).

4 | The Southern District of California, applying California law, recently evaluated the "by
5 | reason of the fact" standard in connection with the advancement of legal fees under section 317(f).
6 | In *Allergia, Inc. v. Bouboulis*, 229 F. Supp. 3d 1150 (S.D. Cal. 2017), the Court reasoned that,
7 | whether a corporate officer or director "is entitled to advancement of his fees depends in part on
8 | whether he was sued 'by reason of the fact that' he was an agent, officer, or director of [the
9 | company]." *Id.* Applying the "by reason of the fact" standard, the court found that the president was
10 | not entitled to advancement of his legal fees in connection with his defense of the breach of
11 | fiduciary duties or implied contract claims because "these claims for relief largely—if not
12 | entirely—implicate Defendant's personal motives." *Id.*

13 | Here, like the bylaws at issue in *Allergia*, section 6.3 of Snopes' Bylaws provide for
14 | advancement of legal fees incurred by an "agent" of the corporation in "defending" a legal
15 | proceeding to the extent authorized by section 317. (TAC, Ex. E, § 6.3.) The Individual Defendants
16 | are not entitled to advancement of legal fees incurred in defending themselves in this litigation,
17 | because, as alleged in the TAC, they are not being sued "by reason of the fact" that they are
18 | "agents." Rather, in this litigation, Plaintiffs allege that Mikkelson acted in his own personal
19 | interests to the detriment of Snopes, by, among other acts, misappropriating corporate funds to pay
20 | for his personal expenses, and conspiring with Green and Miller to improperly obtain a majority
21 | interest in Snopes to facilitate control over Snopes for their own benefit and to the detriment of
22 | Snopes remaining shareholders. (TAC at ¶¶ 61-93.) Because Mikkelson is being sued for actions he
23 | took in pursuit of his own personal interests, and in breach of the fiduciary duties he owed to
24 | Snopes and its other shareholders, he is not entitled to the advancement of attorneys' fees under
25 | either Corporations Code section 317 or the Bylaws. Similarly, Green and Miller are not being sued
26 | in their capacities as Snopes' agents, and therefore could not possibly meet the "by reason of the
27 | fact" criteria required to receive advanced attorneys' fees. To the contrary, Green and Miller are
28 | being sued for actions they took that (1) violated the fiduciary duties they owed to Proper Media,

while still employed by and members of Proper Media, and (2) **predated** their employment with Snopes. (TAC at ¶¶ 70-93, 179-84, 193-200, 241-48, 257-68.)

**Second,** the Board, consisting only of Mikkelson and Westbrook, voted to authorize Snopes to advance the Individual Defendants' legal expenses in this lawsuit. (TAC at 119-134.) These purported authorizations violate Corporations Code section 310(a), which prohibits "interested director" transactions except if certain conditions are met. Corp. Code § 310(a). Under section 310(a), a corporate transaction in which a director has a material financial interest is **unlawful** and **void** if the Board, in authorizing the transaction, counts the vote of that "interested director." An "interested director" is a director who has a "material financial interest" in approving the transaction. *See Id.* Here, Mikkelson is an "interested director" under Corporations Code section 310(a) with respect to the Board's decision to advance the legal fees that he, Green, and Miller are personally incurring in connection with this litigation. Without question Mikkelson has a "material financial interest" in the advancement of legal fees to himself and to his co-defendants in this case to ensure that the Individual Defendants: (1) would not have to shoulder their own legal bills during the pendency of this litigation; and (2) with the corporate funds, could aggressively pursue their personal interests. Mikkelson, as an "interested director," was not permitted to vote on the advancement of attorneys' fees to himself and to his co-conspirators, Green and Miller. Nevertheless, Mikkelson did in fact vote, notably as one of only two directors, in favor of the advancement of attorneys' fees to the Individual Defendants. Without counting Mikkelson's "interested director" vote, the Board's authorizations were not valid corporate transactions, because, under the Bylaws, a "majority" of Snopes directors are required to transact corporate business, and Westbrook by himself does not constitute a majority. (TAC, Ex. E, See § 3.9.)

The Board's authorizations are not permissible under the "just and reasonable" exception to the "interested director" rule under section 310(a). The Board's authorizations were not "just and reasonable" to Snopes because: (i) Mikkelson, Green, and Miller are not entitled to advanced attorneys' fees in this litigation, as a matter of law, under Corporations Code section 317(f) because they are not being sued "by reason of the fact" that they are "agents" of Snopes; and (ii) the unlawful advancements are putting Snopes in immediate danger of insolvency, if not already

16

Page 565 of 732

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID MIKKELSON'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

insolent. (TAC at ¶ 134.) Mikkelson's theory of "just and reasonable" based on his "*individual litigation efforts*" is a red hearing. (MPA at 11.) By his own admission, the purported beneficiary of these efforts is Mikkelson, not Snopes or its other shareholders. Indeed, Mikkelson's efforts have only resulted in more damage to Snopes and continued litigation, and thus cannot possibly be considered "just and reasonable" to Snopes. Moreover, Mikkelson has not actually prevailed on the merits of his defense apart from a technicality that limited the specific plaintiffs and consolidated claims against him. (Schoentrup Decl., at ¶ 4, Ex. 1.)

### 5. Corporate Board Activity Is A Business Practice Under The UCL.

Finally, Mikkelson suggests that Snopes' "*internal* corporate activity" is not a "business practice" within the scope of the section 17200. (MPA at 11-2.) Mikkelson's cited case law does not support this conclusion. It defies logic to suggest that activity allegedly pursuant to the Corporations Code and corporate bylaws would not constitute business activity. The UCL essentially "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). "Virtually any law-federal, state or local-can serve as a predicate for a section 17200 action." *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1102-03 (1996) (internal citation omitted). As discussed in detail above, Snopes' advancement of legal fees to the Individual Defendants constitutes "unlawful" business activity under the UCL for two independent reasons: (1) Snopes' advancement of legal fees violates both Corporations Code section 317(f) and the Bylaws because the Individual Defendants are not being sued in their respective capacities as "agents" of Snopes; and, (2) the Board's authorizations of the advancement of legal fees are void because they violate the "interested director" rule under section 310(a). (TAC at ¶¶ 119-134.)

### I. Sixteenth Claim For Relief For Unfair Competition.

Mikkelson contends that Proper Media has not alleged "injury in fact" or "lost money or property" to support its sixteenth claim for relief. (MPA at 12.) However, Mikkelson again ignores the allegations in the TAC, which clearly establish how the unlawful conduct enumerated in the sixteenth claim for relief has caused and will continue to cause substantial harm to Proper Media's

reputation and goodwill, as well as to its current and prospective business relationships. (TAC at ¶¶ 135-162, 321.) Contrary to Snopes stated mission as the oldest and largest face-checking website and wide regard "by journalists, folklorists, and readers as an invaluable research companion," Mikkelson has leaned heavily on false and materially misleading statements in order to induce and encourage donations from the public through the GoFundMe Campaign. Mikkelson's unlawful, unfair and fraudulent conduct in connection with the GoFundMe Campaign has unjustly enriched Mikkelson and Snopes with over a million dollars in GoFundMe contributions at Proper Media's expense. (*Id*.) If there is any doubt as to the "injury in fact" suffered by Proper Media in the sixteenth claim for relief, this could be cured by amendment, including the attachment of specific examples, to further show how Mikkelson has unlawfully abused Snopes' position as a trusted source of truth to subject Proper Media to public ridicule, portraying Proper Media as an untrustworthy monetization partner—a critical element to succeed in the advertising industry— which Proper Media has documented evidence to prove deterred other companies from associating with it for fear of suffering a similar materially misrepresented fate. (*Id*.) (TAC at ¶¶ 61-162, 237.)

### J. Seventeenth Claim For Relief For Rescission.

As discussed above, Schoentrup and Richmond are the only derivative plaintiffs that would challenge Mikkelson's actions, and any demand on the Board prior to bringing their claims would have been futile. Mikkelson asserts that the seventeenth claim for relief for rescission fails because "rescission is not an independent count; it is only a remedy. (MPA at 14.) This is wrong and misrepresents the law. When the Court of Appeal in *Nakash* stated that "[r]escission is not a cause of action; it is a remedy," this was in the context of upholding the Trial Court's refusal to recognize res judicata, thus permitting a later claim for rescission. *Nakash v. Superior Court*, 196 Cal. App. 3d 59, 70 (1987). Indeed, as the *Nakash* court said immediately following, "[j]ust as an agreement may produce more than one primary right, or produce more than one transactional nucleus of facts, the conduct of parties to the agreement may provide the evidentiary basis for obtaining rescission on more than one ground, on more than one occasion.") In fact, the Court of Appeal in *Nakash* upheld the Trial Court's ruling that "[a]s a matter of law, the [plaintiffs'] claims for rescission set forth in their first, second and third causes of action of [their complaint] in this action are not barred by

claim preclusion [res judicata] as a result of the dismissal with prejudice of the federal complaint" and "[a]s a matter of law, the [plaintiffs] have stated valid causes of action for rescission based upon fraudulent representations." *Id*. Mikkelson next asserts that Plaintiffs "have only pleaded a prayer for relief in the form of rescission." (MPA at 14.) Not so. Ignoring the fact that Mikkelson provided no analysis beyond this unsupported conclusion, the seventeenth claim for relief provides detailed allegations necessitating rescission. For example, that "Corporations Code section 310(a) provides…that a corporate transaction in which a director has a material financial interest is either void or voidable if the Board, in authorizing the transactions, counts the vote of an 'interested direct,' or a director who has a 'material financial interest' in the transaction." (TAC at 343.)

### K. Eighteenth Claim For Relief For Declaratory Relief.

Mikkelson does not dispute the merits of the eighteenth claim for relief, instead he argues that Plaintiffs lack standing. (MPA at 14.) Without conceding the validity of Mikkelson's position, Schoentrup and Richmond respectfully request that the Court permit leave to amend the eighteenth claim for relief so that Schoentrup and Richmond can assert the claim derivatively, on behalf of Snopes, against Mikkelson, Miller and Green. Doing so will obviate Mikkelson's position and permit the eighteenth claim for relief to move forward.

### L. Res Judicata Does Not Preclude Proper Media's 16TH And 18TH Claims.

Mikkelson erroneously asserts that Proper Media "attempts to assert new claims based on upon [Snopes] corporate actions – namely, its [unlawful] decision to advance litigation expenses" to Mikkelson, Green and Miller. (MPA at 15.) On the contrary, Proper Media's sixteenth claim for relief does not arise from the Board's unlawful authorizations. And, as discussed immediately above, the eighteenth claim can be amended to remove Proper Media as a plaintiff.

### M. The Court Has Jurisdiction Over Proper Media's Direct Claims.

The Court previously found it continues to have jurisdiction over the parties because Mikkelson continues to maintain causes of action against Plaintiffs in this action. (Schoentrup Decl., at ¶ 6, Ex. 2.) Mikkelson points to his concurrently filed motion to strike for his arguments on this topic. Accordingly, Proper Media addresses the lack of merit in these arguments in opposition to Mikkelson's motion to strike.

## II.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Mikkelson's Demurrer to Plaintiffs' Third Amended Complaint. Or to the extent that the Court is inclined to sustain Mikkelson's demurrer, that leave to amend be granted.

Dated:  August 19, 2019                     Respectfully submitted,


                                            By: /s/ Drew W. Schoentrup
                                                Drew W. Schoentrup

                                                Attorney for Plaintiffs/Cross-Defendants/Cross-
                                                Complainants PROPER MEDIA, LLC,
                                                CHRISTOPHER RICHMOND, DREW
                                                SCHOENTRUP, and PUBLIFE, LLC

MEMO. OF POINTS AND AUTH. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID
MIKKELSON'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

DATE: 08/22/2019        TIME: 11:42:00 AM        DEPT: C-68

JUDICIAL OFFICER PRESIDING: Browder A. Willis, III
CLERK: Richard Cersosimo
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2017-00016311-CU-BC-CTL** CASE INIT.DATE: 05/04/2017
CASE TITLE: **Proper Media LLC vs Bardav Inc [E-FILE]**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Breach of Contract/Warranty

---

**APPEARANCES**

---

**AMENDED SUBMITTED RULING: Defendant/Cross-Complainant Snopes Media Group, Inc.'s Special Motion to Strike Plaintiffs' Third Amended Complaint Pursuant to Code Civ. Proc. § 425.16 is GRANTED.**

The Court has the "inherent authority to change its decision at any time prior to the entry of judgment." (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156.) In light of additional briefing and argument provided in Mikkelson's anti-SLAPP motion, the Court issues this amended ruling.

Ruling on an anti-SLAPP motion is a two-step process: "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.... If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 703 [Citation omitted].) The California Supreme Court explained the anti-SLAPP procedure as follows:

At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.

(*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

"The moving SLAPP defendant may meet this burden by showing the act which forms the basis for the plaintiff's cause of action was an act that falls within one of the four categories of conduct described in subdivision (e) of section 425.16." (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417.) CCP

---

DATE: 08/22/2019
DEPT: C-68

MINUTE ORDER

Page 1

Calendar No.

Page 570 of 732

section 425.16(e) provides, in part, an

"act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: ... (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest...

(Code Civ. Proc., § 425.16(e).) "[I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) "The focus of the statute is not the form of plaintiff's cause of action, but the defendant's activity that gives rise to the asserted liability." (*Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272.)

Snopes seeks to strike the fourteenth count for defamation and the related claims and allegations. The allegations are aimed at publications on the following websites: savesnopes.com/faq, snopes.com, gofundme.com/savesnopes. Plaintiffs do not dispute that the statements were made in furtherance of free speech rights, but dispute that they were in connection with a public issue. While not every website post involves a public issue, "consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366.) Examples includes where "the statement or activity was a person or entity in the public eye, the statement or activity involved conduct that could affect large numbers of people beyond the direct participants, or the statement or activity involved a topic of 'widespread, public interest.'" (*Dual Diagnosis Treatment Center, Inc. v. Buschel* (2016) 6 Cal.App.5th 1098, 1104 [Citation omitted].) Plaintiffs cite *Buschel* for support that the statements were not in connection with a public issue. In *Buschel*, an eBulletin was distributed to approximately 22,000 addiction treatment professionals, but the statements made concerned only one rehabilitation facility, which was not of widespread, public interest.

Here, as Plaintiffs have acknowledged in this litigation, Snopes is one of the 1000 most popular websites in the United States. (FAC ¶ 31.) As is illustrated by the donation of hundreds of thousands of dollars from nearly 30,000 members of the public as a result of the GoFundMe campaign, the health of Snopes is of widespread concern. Further, this Court has already acknowledged, in ruling on Plaintiff's motion for preliminary injunction that "[t]he shuttering of a business with import to the public is weightier than an undefined loss of goodwill and a bad mark on the creditworthiness of a company." (Kozaczuk Decl., Ex. M.)

While Plaintiffs cite authority (*Globetrotter Software, Inc. v. Elan Computer Group, Inc.* (1999) 63 F. Supp. 2d 1127) that statements made in commercial competition do not fall under the anti-SLAPP statute, Plaintiffs do not provide any showing that any of the Plaintiffs are competitors of Snopes or that the statements at issue were made in the context of commercial competition. The statements were made in the context of litigation. The litigation, as illustrated by Plaintiff's latest motion for preliminary injunction, directly impacts Snopes' ability to continue as a fact-checking website. Thus, statements regarding the litigation concern an issue of public interest – the health of Snopes and its ability to continue its website.

In short, Plaintiffs' allegations of defamation in the context of litigation are subject to the anti-SLAPP statute. Plaintiffs have the burden to demonstrate the claims are legally sufficient and factually

DATE: 08/22/2019                    MINUTE ORDER                    Page 2
DEPT: C-68                                                         Calendar No.

Page 571 of 732

substantiated.

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 862 [Citation omitted].) "[U]nder California's single-publication rule, once a defendant publishes a statement on a website, the defendant does not republish the statement by simply continuing to host the website." (*Yeager v. Bowlin* (9th Cir. 2012) 693 F.3d 1076, 1082.) However, a statement is considered republished if "the statement itself is substantively altered or added to, or the website is directed to a new audience." (*Id.* at 1082.) "[T]he statute of limitations is reset when a statement is republished." (*Id.*)

Truth is "an absolute defense to any libel action." (*Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 581.) "In order to establish the defense, the defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." (*Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 581–582.) "To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011.)

Plaintiffs assert the allegedly defamatory statements include statements regarding Proper Media withholding advertising revenue and earnings from Snopes and refusing to relinquish the site's hosting to Snopes' control. Plaintiff Richmond declares that the representations are false. While the Court must not resolve evidentiary conflicts, the evidence in support of the claims must be legally sufficient and admissible. Plaintiff Richmond's declaration states the statements are false; however, the attached exhibits show that the gist of the statement as to the release of advertising revenue is not false when viewed in context. Plaintiff Richmond cites Exhibit 2, a print out of gofundme.com/savesnopes, stating it is false that Proper Media **is** withholding Snopes's advertising revenue, but the post was made at a time when that was true and later updates to the website state Proper Media released advertising revenue to Snopes. (See Plaintiffs' Exhibit 2.) The same argument applies to Exhibit 3 where it is stated "100 percent of our earnings have been withheld from us for months on end." The post is dated July 2017 and was true at the time it was made. Proper Media subsequently released funds to Snopes, such that the statement became false after the funds were released. (Decl. Richmond, ¶ 14.) However, as Plaintiffs acknowledge, Snopes updated the GoFundMe campaign, specifically in Exhibit 2, to show, *inter alia*, that Snopes "regained control of [its] advertising revenue stream." (Plaintiffs' Exhibit 2.) Thus, the statements in the context of the updates were not and are not now false. A reasonable reader viewing the GoFundMe campaign would see the updates and put the old posts in context.

Some of the same argument above apply to Richmond's assertion that Snopes' July 2017 dated post on www.savesnopes.com/faq that no owner or shareholder of Proper Media has ever held a seat on Bardav's board of directors is false. The statement was true in July 2017. Richmond declares he was elected a director of Snopes on March 20, 2018. (Decl. Richmond, ¶ 13.) The fact Richmond was later elected does not make the statement false at the time it was made. However, the statement became false after March 20, 2018. Snopes does not dispute that the statement continued to appear on the website after March 20, 2018. Without an update to clarify that the statement was no longer true, the statement was false. Unlike the updates as to the stream of revenue, the updates do not clarify that Richmond was later elected as a director of Snopes. A reasonable reader viewing the GoFundMe campaign would believe that it continued to be the case that no owner of Proper Media is a director of Snopes.

DATE: 08/22/2019                    MINUTE ORDER                    Page 3
DEPT: C-68                                                          Calendar No.

Page 572 of 732

As to control of the Snopes website, Plaintiff Richmond declares "Mikkelson and Snopes have, and always had, complete control over the Snopes.com domain." (Decl. Richmond, ¶ 12.) Plaintiff Richmond specifies that:

The content, code and other information necessary for Snopes to migrate its hosting from Proper Media to another service provider were always available to Mikkelson and Snopes, and Mikkelson and Snopes could have provided advertisements, as they had in the past, to be inserted into Snopes.com at any time prior to migrating to a different hosting provider, but they did not.

(Decl. Richmond, ¶ 12.) If the trier of fact were to accept Plaintiff Richmond's declaration as true, then it could find that the Snopes falsely stated Proper Media is holding the Snopes.com website hostage and that Proper Media refused to give Snopes control. Snopes objects to Plaintiff Richmond's declaration based on an asserted lack of foundation and personal knowledge, as well as it being an improper opinion. Plaintiff Richmond explicitly states the declaration was based on personal knowledge and that he is a co-founder of Proper Media. Snopes does not demonstrate how Richmond is not qualified to opine regarding Snopes' advertising capabilities and control of the website.

Notwithstanding the above misrepresentation in the absence of an update as to board of directors, Plaintiffs have not met their burden to show how the statement is defamatory to any of the Plaintiffs or would have a natural tendency to injure or cause special damages. The statement does not assert that any of the Plaintiffs lied about being elected as a director. It is unclear how this statement would be defamatory or cause injury to any of the Plaintiffs and Plaintiffs have not presented any evidence to establish such elements. Richmond declares that the "defamatory statements above portray Proper Media as an untrustworthy monetization partner, a critical element to succeed in the digital advertising industry, and have undoubtedly deterred other companies from associating with Proper Media," but it is clear this statement refers to the statements about holding the website hostage and withholding advertising revenue. (Decl. Richmond, ¶ 15.)

Finally, Snopes asserts the defamation claims are barred by the one-year statute of limitations (Code of Civ. Proc. § 340(c).) As discussed above, the only viable claim is as to the statements about controlling and holding the website hostage. Plaintiffs assert the statute of limitations does not bar the claims because Snopes continues to substantively alter, add to, and republish the GoFundMe campaign by rebranding the campaign from "Save Snopes" to "#FightForFacts." (Decl. Richmond, ¶ 7.) Exhibits 4, 5, and 6 reveal changes to the GoFundMe campaign. As to the issue of control, Exhibit 4 includes an update that "[o]n 18 October 2017, we successfully migrated Snopes.com to a new hosting provider..." (Plaintiffs' Exhibit 4.) This is not a substantive alteration or addition to the previous statements regarding control. The statement implies Snopes did not have control before, but it is not a substantive change or addition to the representations about Proper Media controlling the website. As such, the update did not reset the statute of limitations. The one-year statute of limitations began to run in July of 2017, at the time of publication and Plaintiffs did not attempt to amend the complaint until 2019, after the statute of limitations ran.

In short, Plaintiffs have not provided legally sufficient evidence that it could prevail on the defamation claim as the statements are either true or the claim is barred by the statute of limitations. As such, Plaintiffs have failed to demonstrate that any of the allegedly defamatory statements support a legally viable claim. Consequently, the claims based on the allegedly defamatory statements discussed above, such as the UCL claims, are not supported by such alleged defamatory statements and must be stricken. Plaintiffs have not provided evidence to support their UCL claims. As the statements at issue

are protected activity, the allegations regarding them must be stricken unless they support an otherwise viable claim. Plaintiffs have not shown that the UCL claims are viable. As such, the allegations must be stricken. The motion is granted as to the allegations regarding allegedly defamatory statements.

Snopes also seeks to strike allegations as to litigation funding and the claims based thereon. While litigation funding constitutes protected petitioning activity, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1166; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) In *Park*, the California Supreme Court recognized that a claim arising from a decision may not necessarily arise from the communications leading to that decision. (*Id.* at 1017.) Funding of litigation is communicative conduct that constitutes a protected petitioning activity. (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 28.) The act of funding may be communicative and a protected activity, but it does not necessarily mean the act of funding is the basis for a cause of action.

Here, the board's authorizations were "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16(e).) The board authorizations were conduct that furthered the exercise of the constitutional right of petition – litigation funding. The litigation funding would not have occurred without the board's authorization.

Further, *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 11 Cal.App.5th 477 supports Snopes' position. In *San Diegans* the plaintiff challenged contracts between an independent, nonprofit journalism organization (inewsource) and KPBS to provide news stories in exchange for the right to use KPBS offices, media equipment, and related news facilities. The plaintiff asserted the contracts between KPBS and inewsource violate statutory prohibitions on self-dealing involving public funds. The court found the fact the purpose of the challenged contracts was for gathering and delivering news stories, a protected activity, mattered. The court distinguished the case from a hypothetical involving a licensed building contractor using her faculty position at SDSU to procure a long-term construction contract between SDSU and her construction company since it involved protected newsgathering and reporting, not construction. "It is in the news reporting business, and the contracts [plaintiff] challenges shape the way inewsource and KPBS gather, produce, and report the news." (*Id.* at 106.) "[Plaintiff] is not seeking to void a contract to make widgets or to construct a building. It is seeking to void contracts that directly affect the content of news stories the public receives." (*Id.*)

The Court declines to segregate the board authorizations from the litigation funding because the board authorizations were a necessary step to facilitate the protected activity. The board authorizations shaped the litigation funding as the purpose of the board authorizations was to provide litigation funding. Plaintiffs seek to rescind the board's authorization to fund ongoing litigation, which would directly affect the protected activity – litigation funding. While the Court was previously concerned about "chilling legitimate challenges to improper board authorizations," the "anti-SLAPP statute 'poses no obstacle to suits that possess minimal merit.'" (*San Diegans for Open Government, supra,* 11 Cal.App.5th at 100.) Here, Plaintiffs have failed to establish they have standing as to Plaintiffs' UCL claims – they have not shown an injury in fact of "lost money or property." (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228; Bus. & Prof. Code, § 17204.) Plaintiffs have not shown minimal merit.

The motion is granted in its entirety.

DATE: 08/22/2019                     MINUTE ORDER                     Page 5
DEPT: C-68                                                            Calendar No.

Page 574 of 732

Richard P. Sybert, Bar No. 080731
rsybert@gordonrees.com
Kimberly D. Howatt, Bar No. 196921
khowatt@gordonrees.com
Holly L.K. Heffner, Bar No. 245384
hheffner@gordonrees.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7461
Facsimile: (619) 696-7124

Attorneys for Defendant and Cross-Complainant
DAVID MIKKELSON

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO

| PROPER MEDIA, LLC, a California limited liability company; CHRISTOPHER RICHMOND, an individual; and DREW SCHOENTRUP, an individual, | LEAD CASE NO. 37-2017-00016311-CU-BC-CTL (consolidated with Case No. 37-2018-00004335-CU-MC-CTL) |
|---|---|
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANT/CROSS-COMPLAINANT DAVID MIKKELSON'S DEMURRER TO THIRD AMENDED COMPLAINT** |
| v. | |
| BARDAV INC, a California corporation, and DAVID MIKKELSON, an individual, | Date: August 30, 2019<br>Time: 10:30 a.m.<br>Dept.: C-68<br>Judge: Hon. Richard S. Whitney |
| Defendants, | |
| AND RELATED CROSS-ACTIONS | Complaint Filed: May 4, 2017<br>Trial Date: October 4, 2019 |

## I. PLAINTIFFS' NEWLY ASSERTED DERIVATIVE CLAIMS FAIL AS A MATTER OF LAW [Counts Seven, Fifteen, and Seventeen]

### A. Plaintiffs Fail to Plead the Futility of a Pre-Litigation Demand on Snopes

Plaintiffs wrongly conclude they "can assert derivative claims against Mikkelson," based on an inapplicable prior ruling. (Opp. 5:2-8.) Specifically, Plaintiffs cite the January 26, 2018 Minute Order overruling Mikkelson's demurrer to Plaintiffs' Fifth Cause of Action for Corporate Waste asserted in their second amended complaint ("SAC"), which at the time was the only

1

**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway
Suite 2000
San Diego, CA 92101

derivative claim arguably[1] plead, to support their position in opposition to the instant demurrer to

the third amended complaint ("TAC") that: "notice to Snopes' Board would have been futile,

because the claims at issue concerned Mikkelson's alleged misconduct." (Opp. 5:5-6.) Yet, in

making this argument, Plaintiffs' omit that the Court made its ruling as to the Fifth Cause of

Action because, at the time the SAC was filed, Mikkelson was the only board member. Yet,

Plaintiffs concede that, at the time the TAC was filed, and the Seventh[2], Fifteenth, and

Seventeenth derivative Counts were plead *for the first time*, things had changed.

That is, "[i]t is undisputed that[,] at the time Plaintiffs filed their TAC in April 2019,

Snopes' Board consisted of Mikkelson, Brad Westbrook ("Westbrook"), and [Plaintiff]

Richmond." (Opp. 6:20-22.) Contrary to Plaintiffs' Opp., this new board constitutes a majority

of disinterested and independent directors at Snopes with respect to the purported derivative

claims asserted for the first time in the TAC, rendering Plaintiffs' attempt to plead demand

futility with respect to those claims defective as a matter of law. *Apple*, 18 Cal.App.5th at 246

("… when an amended complaint asserts derivative claims that are not already validly in

litigation, the demand requirement pertains to the board of directors in place at that time.").

---

[1] That is, as the Court noted, "the SAC is not very clear on whether the claim is intended to be a direct claim or a derivative action." (Schoentrup Decl., Exh. 1 (1/26/18 Order, pp. 2-3).)

[2] Plaintiffs' Seventh Count in the SAC for Breach of Fiduciary Duty was not plead derivatively, but was stated on behalf of Schoentrup and Richmond directly. That Seventh Count for Breach of Fiduciary Duty in the SAC became the Sixth Count for Breach of Fiduciary Duty in the TAC, because the numbering changed when the Fifth Count for Abuse of Control was dismissed on Mikkelson's demurrer to the SAC. With the TAC, Plaintiffs add, in addition to their previously stated Breach of Fiduciary Duty claim on behalf of Schoentrup and Richmond directly, another cause of action for Breach of Fiduciary Duty derivatively on behalf of Snopes that is now the Seventh Count in the TAC. Thus, although the Seventh Count in the SAC was a claim for Breach of Fiduciary Duty and the Seventh Count in the TAC is also a claim for Breach of Fiduciary Duty, the former (which is now the Sixth Count in the TAC) was not derivative, whereas the latter (the Seventh Count in the TAC) is, and was asserted for the first time in this action in the TAC.

2
**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

Thus, for this reason, Plaintiffs cannot rely on the January 26th Order and were **required**, prior to filing the TAC, to first demand action from Snopes' board, which they did not do.

Conceding that Westbrook is disinterested and independent, Plaintiffs attempt to avoid dismissal of their purported derivative claims by advancing two untenable arguments.

**First**, Plaintiffs contend that a litigation committee previously created to ensure attorney-client communications were not shared with litigation adversary Richmond somehow means a majority of disinterested and independent directors is now *per se* impossible. This contention is a red herring. Plaintiffs are required to show they "made a presuit demand on ***the board*** to take the desired action," and not on a committee of the board simply because it has the word "litigation" in its title. *Apple*, 18 Cal.App.5th at 232 (emphasis added). Accordingly, demand is excused only where plaintiffs plead with particularity that efforts "to secure from ***the board*** such action" would have been futile. Corp. Code § 800(b)(2) (emphasis added); *Apple*, 18 Cal.App.5th at 232.

Plaintiffs wrongly refer to Snopes' "litigation committee" as a "*special* litigation committee," the latter of which is a term of art inapplicable here, but misleadingly used by Plaintiffs in attempt to excuse their failure to make the requisite demand. As background, to the extent a proposed claim concerns a matter in which the majority of the entire board is not independent, the common practice is to appoint a "***special*** litigation committee [SLC] of independent directors to investigate the challenged transaction." *Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 184-85 (emphasis added) (citing Corp. Code § 204(a)(10)(iii) ("Although the business judgment rule protects a board's good faith decision to reject a derivative lawsuit, the board cannot avail itself of the protection of the rule if a majority of the board has a personal interest in the outcome."). Snopes has ***not*** appointed an SLC for the obvious reason that "there is no necessity to appoint a special litigation committee if the board

3
REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway
Suite 2000
San Diego, CA 92101

1  itself is disinterested," as is the case here.  *See Oakland Raiders v. National Football League*

2  (2001) 93 Cal.App.4th 572, 575.  Plaintiffs nevertheless erroneously call the litigation committee

3  as a "*special* ligation committee consisting of only Mikkelson and Westbrook."  (Opp. 6:22-7:3

4  (emphasis added).)  However, even Plaintiffs concede the litigation committee is not composed

5  of independent directors and, thus, <u>*cannot be an SLC*</u>.  Rather, Snopes' litigation committee is a

6  completely different type of committee appointed for an entirely different purpose.  Plaintiffs

7  cannot simply assume without basis and conclude that Snopes' directors would improperly

8  funnel a pre-litigation demand to an existing non-independent committee empaneled for *already*

9  pending claims solely to preserve the attorney-client privilege.

10  **Second**, Plaintiffs argue that demand on Richmond was futile because: "Richmond and

11  Mikkelson are parties to this lawsuit with direct claims pending against each other. As litigation

12  adversaries, neither can be expected to impartially consider whether to pursue derivative claims

13  against Mikkelson...."  (Opp. 7:4-16.)  Yet, the question is not whether Richmond is "impartial."

14  The question is whether demand on him is futile.  As the person making the demand, Richmond

15  was a *guaranteed* supporter of his own claims.

16  Plaintiffs have not and cannot plead demand futility as to their derivative claims.

17  **B.  Plaintiffs' Derivative Causes of Action Also Fail Because Schoentrup and
     Richmond Are Improper Derivative Plaintiffs**

18  Following this Court granting leave to amend, Plaintiff Schoentrup associated in as

19  counsel of record.   Recently, Plaintiffs' co-counsel of record—Sheppard Mullin—withdrew

20  from their representation.  As a result, Schoentrup is the sole counsel of record for all Plaintiffs

21  at this time.  The consequences of these events make clear that Plaintiffs cannot possibly serve as

22  fair and adequate representatives of Snopes on a derivative claim.  Through these maneuvers,

23  Schoentrup seeks to simultaneously assume the roles of (a) a plaintiff suing Snopes directly; (b)

24  the sole counsel of record for all plaintiffs suing Snopes directly; (c) a purported derivative

-4-

**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

plaintiff suing on Snopes' behalf; and (d) the sole counsel of record to all derivative plaintiffs purportedly suing on Snopes' behalf.  This irreconcilable conflict of interest prevents Schoentrup from possibly acting in Snopes' interests on the purported derivative claims.  By assuming the role of Plaintiffs' sole counsel of record, Schoentrup assumes competing fiduciary duties—one to all plaintiffs (including Proper Media) on their direct claims against Snopes, and one to Snopes as the purported derivative plaintiff.  Moreover, Schoentrup's role as Richmond's only attorney of record precludes Richmond from being able to fairly and adequately represent the interests of Snopes, as Schoentrup's conflicts permeate Richmond's representation.

Contrary to Plaintiffs' assertion, this situation is categorically different from "Plaintiffs' other counsel representing Plaintiffs for both their direct and derivative causes of action."  First, Plaintiffs no longer have "other" counsel now that Sheppard Mullin has withdrawn.  Rather, Schoentrup is attempting to serve both roles exclusively.  More importantly, those situations where an attorney represents plaintiffs on both direct and derivative claims do not involve the attorney also serving as the party to those claims.  With this hodgepodge of conflicting interests, neither Schoentrup nor Richmond can fairly and adequately represent Snopes' interests.  Finally, Plaintiffs ignore the fact that, at the time of the earlier ruling in April 2019, defendant/cross-defendant Tyler Dunn had not made an appearance in this lawsuit.  Since that time, as of May 29, 2019, Dunn has appeared in this action.  Unlike on the motion for leave to amend, there is now no reason to assume Dunn—a current shareholder and party to this action—is unable to pursue derivative claims if he so choses.

Plaintiffs' focus has never been what is in Snopes' best interests.  Rather, they have long used this litigation to further their own interests at the expense of Snopes, including trying to force Snopes to continue contracting with their company, Proper Media, for their own financial benefit.  This remains an express element of their purported derivative claims, which allege

-5-

**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway
Suite 2000
San Diego, CA 92101

Mikkelson breached his fiduciary duty by terminating Snopes' contract with Proper Media, by allegedly interfering with Proper Media's ability to perform under that contract, and "poaching" defendants Green and Miller from Proper Media. (*See* TAC at ¶ 234, p. 42:1-7.) Putting aside that this Court already found that Snopes was "within its rights to terminate the GSA," these allegations make clear Plaintiffs are using this litigation to further their own interests over the interests of Snopes. As such, they have an irreconcilable conflict of interest that precludes them from serving in the capacity of derivative plaintiffs.

## II.  PLAINTIFFS' TWELFTH CAUSE OF ACTION FAILS AS A MATTER OF LAW

Plaintiffs do not distinguish *Ladas v. California State Automobile Assn*. (1993) 19 Cal.App.4th 761, 770, or dispute that "… an offer must be **sufficiently definite**, or must call for such **definite terms** in the acceptance that the performance promised is **reasonably certain**." (MPA 4:16 (emphasis added).) Rather, Plaintiffs attempt to fall back on a justifiable reliance argument, citing a case regarding promissory estoppel.[3] (Opp. 10:8-10.) Here, there was no "sufficiently definite" offer or terms, nor was performance reasonably certain.

As alleged, Mikkelson merely expressed what he was thinking. (TAC ¶ 113 and Exhibit D ("*What I was thinking was* …").) Moreover, the "performance [allegedly] promised," i.e., increasing Proper Media's monthly revenue under the GSA, is uncertain because it is dependent on continuation of the GSA which, as Judge Hayes correctly ruled, Snopes "was within its rights to terminate." (*See* ROA No. 99, 08/22/2017 Minute Order, p. 3 ("… the GSA was to remain in effect for one year at which point it would be renewed each month unless terminated by either party…").)

---

[3] Promissory estoppel is addressed in the next section regarding that cause of action, i.e., the Thirteenth Count.

**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

1    Critically, Plaintiffs fail to address, much less counter, the fact that there was no

2  exchange of consideration with respect to Mikkelson *in his individual capacity*. (MPA 5:8-14.)

3  Mikkelson was clearly speaking on behalf of Snopes, not himself, because Mikkelson was not

4  making monthly payments to Proper Media, Snopes was. (TAC, Exhibit C ("If you can sell her

5  on that, I will cover by kicking back the extra payment amount to Proper Media each month.").)

6  Contrary to Plaintiffs' argument in Opp., as shown by Exhibits C and D (which Plaintiffs allege

7  set forth the offer and the acceptance), Mikkelson did not enter into the purported agreement (on

8  behalf of Snopes or otherwise) to "stop Barbra from exposing 'dirt' on Mikkelson." (*compare*

9  Opp. 10:10-15 *with* TAC, Exhibit C ("She is also threatening to go public with dirt on you ***and

10  the business***, of which I know nothing about.").) To the contrary, as Schoentrup specifically

11  concludes, Snopes agreed to pay Barbara the requested "salary and director's fee, [not because of

12  the purported 'dirt' but rather] because that is a legitimate claim ***on the company*** and the longer

13  we hold out the more it looks like bad faith on our part." (TAC, Exhibit D (emphasis added).)

14    Even assuming, for sake of argument only, that the alleged purchase of Barbara's silence

15  could be characterized as consideration to Mikkelson (it cannot), the question then is what

16  consideration did Mikkelson, in his individual capacity, exchange in return? None is alleged.

17  There is no contract with Mikkelson, as a matter of law.

18    Furthermore assuming, again for the sake of argument only, that there was a contract with

19  Mikkelson individually (there was not), no breach is alleged. The alleged promised performance

20  was "kicking back the extra payment amount to Proper Media each month" (TAC, Exhibit C) by

21  "increase[ing] the amount of [Snopes] revenue that Proper [Media] keeps by $X per month."

22  (*Id.*, at Exhibit D.) As alleged, that is exactly what occurred until Proper Media was no longer

23  entitled to keep revenue. (TAC ¶ 116.) Thus, to the extent a contract is properly alleged,

24  Plaintiffs fail to allege breach by Snopes, much less by Mikkelson.

7

**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

### III. PLAINTIFFS' THIRTEENTH CAUSE OF ACTION FAILS AS A MATTER OF LAW

This claim similarly fails for lack of a promise that is "clear and unambiguous in its terms," which Plaintiffs do not dispute is required to state this claim, for the same reasons stated above with respect to Plaintiffs' breach of contract claim. (MPA 5:20-25.) Moreover, Plaintiffs misunderstand Mikkelson's demurrer to this Count. Mikkelson does not contend that Plaintiffs failed to pay for Barbara's 50% share in the company. (*Compare* MPA 6:6-9 *with* Opp. 11:17-22.) The argument is that Barbara made demand of *Snopes* for payment of her claimed share of non-distributed profit; yet, via this cause of action, Plaintiffs seek to hold Mikkelson personally and solely responsible for this corporate obligation, notwithstanding that they too are shareholders of Snopes and likewise benefited from settlement of Barbara's claim. To the extent a promise was made, which Mikkelson disputes, it was on behalf of Snopes and not made by Mikkelson in his individual capacity.

### IV. PLAINTIFFS' FOURTEENTH, FIFTEENTH, SIXTEENTH, SEVENTEENTH, AND EIGHTEENTH CAUSES OF ACTION FAIL AS A MATTER OF LAW

The Court has ruled that Plaintiffs' Fourteenth Count for Defamation, Fifteenth and Sixteenth Counts for Unfair Competition, Seventeenth Count for Rescission, and Eighteenth Count for Declaratory Relief are without merit. For the reasons stated in the Court's August 22nd Order on Snopes' anti-SLAPP motion (ROA No. 1174), and August 22nd tentative ruling on Mikkelson's anti-SLAPP motion (ROA No. 1173), both of which are incorporated herein by reference, these causes of action fail as a matter of law and, if not struck in their entirety on Mikkelson's anti-SLAPP motion (ROA No. 1036), are properly dismissed on this demurrer without leave to amend for the reasons stated in the MPA including *inter alia* those next discussed.

8

REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT

The board authorizations and consents to advance attorneys' fees to the individual defendants, including Mikkelson, were lawful. Plaintiffs' arguments to the contrary fail for three reasons. **First**, there was a quorum when the board authorized the advancements. As Plaintiffs allege, Snopes' bylaws require a "majority" of Snopes directors to transact business. At the time, Snopes had two directors: Westbrook and Mikkelson. Plaintiffs argue that Mikkelson's vote did not count because he was "interested" and thus, they claim, Westbrook alone does not constitute a "majority" of Snopes. Yet, Plaintiffs' argument fails because, Corp. Code 310(c) provides that: Interested directors are counted in determining the presence of a quorum at a board meeting that authorizes a transaction.

**Second**, Plaintiffs argue that Mikkelson was not sued "by reason of the fact" that he was an agent of Snopes, and thus it was unlawful for Snopes to advance his fees. Plaintiffs are mistaken on the law. The plain language of Corp. Code 317(f) does not impose the "by reason of the fact" requirement; instead, § 317(f) requires an undertaking from the agent, which Plaintiffs admit each individual defendant, including Mikkelson, executed. Plaintiffs' reliance on *Allergia, Inc. v. Bouboulis*, 229 F. Supp. 3d 1150 (S.D. Cal. 2017), is similarly misplaced. In that case, the court analyzed section 317 and concluded that subsection (f) does <u>not</u> require that the agent be sued "by reason of the fact" that he is an agent of the corporation in order to advance fees; rather in that case – unlike the instant matter– the bylaws imposed the "by reason of the fact requirement" on advancement. Snopes' bylaws impose no such requirement. Thus, the advancements were lawful.

**Third**, Plaintiffs argue that the board authorizations are not permissible under the "just and reasonable" exception to the "interested director" rule under Corp. Code § 310(a)(3) because, again, they claim: (i) the advancements were not permissible under Corp. Code § 317(f) because Mikkelson was not being sued "by reason of the fact" that he is an agent of Snopes; and

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

1   (ii) the advancements are putting Snopes in danger of insolvency.  (Opp. 16:23-17:1.)  Yet, the

2   advancements are "just" because they *do* comply with § 317(f), as discussed *supra*; and they are

3   "reasonable" because Mikkelson (and Green and Miller) executed undertakings, such that

4   Snopes will lose no monies unless the individual defendants are either indemnified or their

5   undertakings fail, neither of which is alleged in the TAC.  Moreover, as alleged, "Mikkelson has

6   raised over $850,000 from nearly 30,000 donors through the GoFundMe Campaign" to assist

7   Snopes financially; "Mikkelson continues to raise funds through the GoFundMe Campaign, and

8   receives donations on a daily or near-daily basis;" and, "Mikkelson has raised the fundraising

9   goal to $2,000,000."  (TAC ¶ 137.)  Thus, the advancements are all the more reasonable in light

10  of the continued success of the GoFundMe Campaign.

11          Plaintiffs' Seventeenth Count for Rescission fails for the addition reason that rescission is

12  not an independent count, but is a remedy; and, Plaintiffs fail to distinguish *Nakash v. Super. Ct*.,

13  196 Cal.App.3d 70 (1997).  Indeed, to obtain rescission, Plaintiffs do not dispute that they

14  must—but failed to—identify, state with certainty, and sufficiently plead a proper basis for

15  rescission.  The basis for rescission are outlined in Civil Code 1689, and include conduct such as

16  fraud, duress, menace, and undue influence.  Plaintiffs, however, have made no showing to

17  support such claims.

18  **V.      CONCLUSION**

19          For the forgoing reasons, and the reasons stated in the MPA, Mikkelson respectfully requests

20  that this Court sustain his demurrer, without leave to amend.

21          ///

**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: August 26, 2019

GORDON REES SCULLY
MANSUKHANI, LLP

by: _____

Richard P. Sybert
Kimberly D. Howatt
Holly L.K. Heffner
Attorneys for Defendant
DAVID MIKKELSON

1138048/47061251v.1

-11-

**REPLY IN SUPPORT OF DEMURRER TO THIRD AMENDED COMPLAINT**

DATE: 08/28/2019          TIME: 11:25:00 AM          DEPT: C-68
JUDICIAL OFFICER PRESIDING: Richard S. Whitney
CLERK: Kim Mulligan
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2017-00016311-CU-BC-CTL** CASE INIT.DATE: 05/04/2017
CASE TITLE: **Proper Media LLC vs Bardav Inc [E-FILE]**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Breach of Contract/Warranty

---

**EVENT TYPE**: Discovery Hearing

---

  **APPEARANCES**

---

The Court, having taken the above-entitled matter under submission on 08/23/19 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Re: Motion to Compel (see below)


The Court, having taken the above-entitled matter under submission on 08/23/19 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Re:  Special Motion to Strike (see below)


Having taken (1) Plaintiff Drew W. Schoentrup's UNOPPOSED Motion to Compel Supplemental Privilege Logs and Production from Defendant Snopes Media Group, Inc. (2) Defendant/Cross-Complainant David Mikkelson's Special Motion to Strike Plaintiffs' Third Amended Complaint under submission, and having given due consideration to the parties' arguments, evidence and authority, the court rules as follows:

**(1) Plaintiff Drew W. Schoentrup's Motion to Compel Supplemental Privilege Logs and**

---

Production from Defendant Snopes Media Group, Inc. is off calendar.

Snopes' anti-SLAPP motion was pending at the time of Plaintiff's motion. Under CCP section 425.16(g), discovery was stayed. Snopes was under no obligation to participate in discovery until after the "notice of entry of the order ruling on the motion." (Code Civ. Proc., § 425.16(g).) The motion hearing should have been vacated or continued at the time of the filing of Snopes' anti-SLAPP motion.

**(2) Defendant/Cross-Complainant David Mikkelson's Special Motion to Strike Plaintiffs' Third Amended Complaint is GRANTED.**

Ruling on an anti-SLAPP motion is a two-step process: "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.... If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 703 [Citation omitted].) The California Supreme Court explained the anti-SLAPP procedure as follows:

At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.

(*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

"The moving SLAPP defendant may meet this burden by showing the act which forms the basis for the plaintiff's cause of action was an act that falls within one of the four categories of conduct described in subdivision (e) of section 425.16." (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417.) CCP section 425.16(e) provides, in part, an

"act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: ... (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(Code Civ. Proc., § 425.16(e).) "[I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) "The focus of the statute is not the form of plaintiff's cause of action, but the defendant's activity that gives rise to the asserted liability." (*Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272.)

This Court already struck the fourteenth cause of action, and related allegations, against Snopes.

DATE: 08/28/2019                    MINUTE ORDER                    Page 2
DEPT: C-68                                                          Calendar No.

Page 587 of 732

Mikkelson's motion as to the fourteenth cause of action, and related allegations, is based on essentially identical arguments. Plaintiffs have impliedly conceded this Court would rule in the same manner on this motion as to the fourteenth cause of action, for good reason. This Court finds the same analysis as to the fourteenth cause of action applies to this motion. (See ROA #1141.) The Court finds Mikkelson has met his burden to show the fourteenth cause of action, and related allegations, are based on protected activity. The burden has shifted to Plaintiffs to show the allegations support viable claims to avoid having them stricken.

Plaintiffs Schoentrup and Richmond's fifteenth cause of action, brought derivatively on behalf of Snopes, is supported by allegations of misrepresentations published via the GoFundMe campaign and allegations of improper board authorizations to advance litigation funds to Mikkelson, Green, and Miller. To have standing in a UCL claim, Snopes must have "suffered injury in fact and [] lost money or property as a result of unfair competition." (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228; Bus. & Prof. Code, § 17204.) Richmond declares the purported wrongdoings have "and will cause substantial harm to Snopes' reputation and goodwill as a leading fact checking and fake new-debunking resource." (Decl. Richmond, ¶ 75.) Plaintiffs may not rely on potential future harm. Richmond does not cite to any facts supporting an actual injury. Richmond does not cite any facts to support his conclusory statement that "Mikkelson's conduct, as outlined above, has and will cause substantial harm to Snopes' reputation and goodwill...." (Decl. Richmond, ¶ 75.) Richmond states Mikkelson's actions have "subjected Snopes to imminent and substantial liability," but Richmond does not cite any actual incurred liability. Richmond's declaration is insufficient to show any suffered injury in fact and "lost money or property."

Richmond declares the representations about how the funds raised through the GoFundMe campaign would be used are false because "Mikkelson is using these funds, in large part, to pay for his **personal** expenses, including but not limited to legal expenses that he, Green, and Miller have **personally** incurred in connection with this lawsuit." (Decl. Richmond, ¶ 52.) However, the statements do not specify whether the funds would be used to fund the defenses of individual employees of Snopes. Also, the statements do not preclude that Snopes could use the funds for "our legal expenses," which could include the defenses of individual employees of Snopes. Plaintiffs also assert the statement Snopes "controller will ensure the funds are allocated appropriately and our commitment to our donors is maintained" is false, but Plaintiffs do not cite any harm such as an inappropriate allocation by the bookkeeper. Even if Plaintiffs had shown all of the representations are false, Plaintiffs have failed to show they have standing as to the alleged misrepresentations.

As to the allegations regarding advancement of litigation funds, Plaintiffs allege Mikkelson, Miller, and Green each "executed an undertaking to repay the amount of any attorneys' fees and costs advanced or reimbursed to him by Snopes Media Group in the event that it is determined he is not entitled to indemnification in connection with this litigation" as a condition precedent to the advancement of attorneys' fees. (TAC, ¶¶ 124-126.) Richmond declares the advancements have and "will cause substantial harm to Snopes, including by draining its already dwindling profits, and thus putting it in immediate danger of insolvency." (Decl. Richmond, ¶ 75.) Again, Richmond does not cite any facts to support actual injury has already occurred. Mikkelson, Miller, and Green have executed undertakings, such that Snopes will not "lose" any money unless Mikkelson, Miller, and Green are indemnified or Mikkelson, Miller, and Green's undertakings fail. Plaintiffs do not assert Mikkelson, Miller, and Green have been indemnified nor that their undertakings have failed. While the loss of funds towards advancements could potentially put Snopes closer to insolvency, Plaintiffs do not cite any actual "lost money or property." Plaintiffs do not cite any facts to support an assertion that Snopes has been unable to operate normally as a result of the danger of insolvency or that it has lost any revenue or reputation

DATE: 08/28/2019                    MINUTE ORDER                    Page 3
DEPT: C-68                                                          Calendar No.

Page 588 of 732

as the result of the purported danger of insolvency. Richmond's declaration is insufficient to show any suffered injury in fact and "lost money or property."

While this Court already ruled on the issue of advancement of litigation funds as to Snopes' anti-SLAPP motion, the Court did not have the benefit of Mikkelson's briefing, which the Court finds persuasive. While litigation funding constitutes protected petitioning activity, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1166; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) In *Park*, the California Supreme Court recognized that a claim arising from a decision may not necessarily arise from the communications leading to that decision. (*Id.* at 1017.) Funding of litigation is communicative conduct that constitutes a protected petitioning activity. (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 28.) The act of funding may be communicative and a protected activity, but it does not necessarily mean the act of funding is the basis for a cause of action.

Here, the board's authorizations were "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16(e).) The board authorizations were conduct that furthered the exercise of the constitutional right of petition – litigation funding. The litigation funding would not have occurred without the board's authorization.

Mikkelson cites *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 11 Cal.App.5th 477 for support. In *San Diegans* the plaintiff challenged contracts between an independent, nonprofit journalism organization (inewsource) and KPBS to provide news stories in exchange for the right to use KPBS offices, media equipment, and related news facilities. The plaintiff asserted the contracts between KPBS and inewsource violated statutory prohibitions on self-dealing involving public funds. The court found that the fact the purpose of the challenged contracts was for gathering and delivering news stories, a protected activity, mattered. The court distinguished the case from a hypothetical involving a licensed building contractor using her faculty position at SDSU to procure a long-term construction contract between SDSU and her construction company since it involved protected newsgathering and reporting, not construction. "It is in the news reporting business, and the contracts [plaintiff] challenges shape the way inewsource and KPBS gather, produce, and report the news." (*Id.* at 106.) "[Plaintiff] is not seeking to void a contract to make widgets or to construct a building. It is seeking to void contracts that directly affect the content of news stories the public receives." (*Id.*)

The Court agrees the board authorizations should not be segregated from the litigation funding because the board authorizations were a necessary step to facilitate the protected activity. Plaintiffs seek to rescind the board's authorization to fund ongoing litigation, which would directly affect the protected activity – litigation funding. The board authorizations shaped the litigation funding as the purpose of the board authorizations was to provide litigation funding. While the Court was previously concerned about "chilling legitimate challenges to improper board authorizations," the "anti-SLAPP statute 'poses no obstacle to suits that possess minimal merit.'" (*San Diegans for Open Government, supra,* 11 Cal.App.5th at 100.) Here, as discussed above, Plaintiffs have failed to establish they have standing – they have not shown an injury in fact of "lost money or property." The board authorizations and litigation funding is protected activity and Plaintiffs have not shown their fifteenth or sixteenth causes of action have minimal merit.

Mikkelson's notice of motion put Plaintiffs on notice that Mikkelson moved to strike the seventeenth and eighteenth claims for rescission and declaratory relief. Plaintiffs' seventeenth and eighteenth claims

DATE: 08/28/2019                                    Page 4
DEPT: C-68              MINUTE ORDER              Calendar No.

Page 589 of 732

pertain to the advancement of litigation funding. As discussed above, Mikkelson has demonstrated the board's authorizations for the advancement of litigation funding were protected activity. Thus, Plaintiffs have the burden to demonstrate the seventeenth and eighteenth claims have minimal merit. Plaintiffs have failed to do so.

The motion is granted in its entirety.

IT IS SO ORDERED.

_____
  Judge Richard S. Whitney

DATE: 08/28/2019                    MINUTE ORDER                         Page 5
DEPT: C-68                                                            Calendar No.

Page 590 of 732

Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
P. Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone:    619.238.1900
Facsimile:    619.235.0398
E-mail:    paul.tyrell@procopio.com
            ryan.caplan@procopio.com
            jacob.kozaczuk@procopio.com

Attorneys for Defendant/Cross-Complainant,
SNOPES MEDIA GROUP, INC., formerly known and having
appeared as BARDAV INC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| PROPER MEDIA, LLC, a California limited liability company, CHRISTOPHER RICHMOND, an individual, and DREW SCHOENTRUP, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>BARDAV INC., a California corporation, DAVID MIKKELSON, an individual; VINCENT GREEN, an individual; RYAN MILLER, an individual; and TYLER DUNN, an individual,<br><br>        Defendants,<br><br>_____<br><br>AND RELATED CROSS-ACTIONS | Case No. 37-2017-00016311-CU-BC-CTL (consolidated with Case No. 37-2018-00004335-CU-MC-CTL)<br><br>**NOTICE OF RULING ON SNOPES MEDIA GROUP, INC.'S DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Date:     August 30, 2019<br>Time:     10:30 a.m.<br>Dept.:    C-68<br>Judge:   Hon. Richard S. Whitney<br><br>Complaint Filed:   May 4, 2017<br>Trial Date:       October 4, 2019<br><br>***IMAGED FILE*** |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 30, 2019, at 10:30 a.m. in Department C-68 of the above-captioned Court, the demurrer of Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as Bardav Inc ("Snopes") to the Third Amended Complaint brought by Plaintiffs/Cross-Defendants PROPER MEDIA, LLC, DREW SCHOENTRUP, and CHRISTOPHER RICHMOND (collectively, "Plaintiffs"), came on for hearing before the Honorable Richard S. Whitney.

Ryan C. Caplan, Esq. of Procopio, Cory, Hargreaves & Savitch LLP appeared on behalf of Snopes. Drew Schoentrup, Esq. appeared on behalf of Plaintiffs. Holly Heffner, Esq. of Gordon Rees Scully Mansukhani, LLP appeared on behalf of Defendant/Cross-Complainant DAVID MIKKELSON.

Upon review of the papers and oral argument, the Court confirmed the tentative ruling in its entirety, ruling as follows:

1. Snopes' Demurrer as to the Fifteenth and Seventeenth Causes of Action in Plaintiffs' Third Amended Complaint is **moot** in light of the Court's earlier ruling granting Snopes' anti-SLAPP motion to strike those causes of action; and

2. Snopes' Demurrer as to the Fifth and Seventh Causes of Action in Plaintiffs' Third Amended Complaint is **SUSTAINED without leave to amend**.

A true and correct copy of the Court's tentative ruling, which reflects the above rulings and which became the final ruling of the court, is attached as Exhibit "A" hereto and incorporated by reference herein.

DATED: August 30, 2019

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: _____
Paul A. Tyrell
Ryan C. Caplan
P. Jacob Kozaczuk
Attorneys for Defendant/Cross-Complainant, SNOPES MEDIA GROUP, INC., formerly known and having appeared as Bardav Inc

NOTICE OF RULING RE: SNOPES' DEMURRER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

EXHIBIT "A"

# SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SAN DIEGO
HALL OF JUSTICE
TENTATIVE RULINGS - August 29, 2019

EVENT DATE: 08/30/2019          EVENT TIME: 10:30:00 AM          DEPT.: C-68

JUDICIAL OFFICER:Richard S. Whitney


CASE NO.:      37-2017-00016311-CU-BC-CTL

CASE TITLE:  PROPER MEDIA LLC VS BARDAV INC [E-FILE]


CASE CATEGORY:  Civil - Unlimited          CASE TYPE:  Breach of Contract/Warranty


EVENT TYPE:  Demurrer / Motion to Strike
CAUSAL DOCUMENT/DATE FILED:

---

**TENTATIVE RULING:**

**(1) Defendant/Cross-Complainant Snopes Media Group, Inc.'s Demurrer to Plaintiffs' Third Amended Complaint is SUSTAINED.**

The demurrer is moot as to the fifteenth and seventeenth causes of action because this Court's amended submitted ruling on Snopes' anti-SLAPP motion strikes such causes of action. Snopes also demurrers as to the fifth and seventh causes of action for corporate waste and breach of fiduciary duty brought derivatively by Plaintiffs Schoentrup and Richmond.

Plaintiffs acknowledge they have not made a demand on Snopes' board. Plaintiffs allege demand futility. "The test for proving demand futility is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." (*Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 587.) "[I]n order to evaluate the demand futility claim, the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." (*Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1622.) "A director will be deemed not to be disinterested if the facts alleged 'demonstrate[ ] a potential personal benefit or detriment to the director as a result of the decision.'" (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 792 [Citation omitted].) It is undisputed that at the relevant time of filing the third amended complaint ("TAC"), Snopes' board consisted of Westbrook, who is disinterested and independent, Mikkelson, and Richmond. Plaintiffs also concede that determining demand futility is based on a majority of the board, not a quorum.

It is clear from the TAC that Mikkelson is interested as he is directly being accused of wrongdoing, including that he used corporate assets "to pay for personal expenses." (TAC, ¶ 206.) Plaintiffs have alleged facts supporting the conclusion there is a reasonable doubt that Richmond is a disinterested and independent director given that he is "both a Plaintiff and Defendant in this lawsuit and has asserted both derivative and direct claims against Mikkelson." (TAC, ¶ 240.) While Richmond would likely vote to allow the lawsuit, it is reasonable to conclude that Richmond would not reach that decision based solely on a fair, evenhanded consideration of the demand. As both Richmond and Mikkelson are apparently not disinterested or independent, there could be no majority to approve the demand.

While Snopes points out that the above allegations are not included in the fifth cause of action, the Court considers the complaint as a whole in determining whether a cause of action has been properly stated.

---

Plaintiffs have sufficiently alleged demand futility.

Notwithstanding the above, the claims fail. Snopes asserts Schoentrup and Richmond are disqualified from bringing derivative claims because they are overtly hostile to Snopes. This Court acknowledged, in ruling on Plaintiffs' motion for leave to amend, that *Zarowitz v. BankAmerica Corp.* (9th Cir. 1989) 866 F.2d 1164 did not establish a per se rule barring any shareholder who has a conflict of interest as serving as a representative. However, the Court finds that Schoentrup and Richmond have hostile interests that disqualify them as adequate representatives of Snopes. While Schoentrup and Richmond assert there is no other shareholder who could bring the claims, Plaintiffs have not demonstrated Tyler Dunn will not pursue the claims. While this Court stated "[t]here is no indication [Mr.] Dunn would pursue the claims as such a small shareholder," the Court did so in light of the extremely low threshold in determining whether leave to amend could be granted. Plaintiffs have not alleged Tyler Dunn could not pursue the claims when judicially noticeable information before the Court demonstrates Schoentrup and Richmond have conflicting interests with Snopes. Finally, the Court finds Schoentrup's representation of Plaintiffs exacerbates the conflicts of interest. Schoentrup and Richmond are not qualified to represent Snopes.

The demurrer is sustained as to the fifth and seventh causes of action. "Unless the complaint shows on its face that it is incapable of amendment, denial of leave to amend constitutes an abuse of discretion [...] Liberality in permitting amendment is the rule...." (*McDonald v. Superior Court* (1986) 180 Cal.App.3d 297, 303-04.) However, Plaintiffs have the burden of proving a reasonable possibility of amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Plaintiffs have not demonstrated they could amend to show they are proper representatives for Snopes.

Snopes' requests for judicial notice are granted.

**(2) Defendant and Cross-Complainant David Mikkelson's Demurrer to Plaintiffs' Third Amended Complaint is SUSTAINED.**

The demurrer is moot as to the fourteenth through eighteenth causes of action because this Court's ruling on Mikkelson's anti-SLAPP motion strikes such causes of action. Mikkelson also demurrers to the fifth, seventh, twelfth, and thirteenth causes of action.

For the same reasons discussed above as to Snopes' demurrer, the demurrer is sustained as to the fifth and seventh causes of action as Schoentrup and Richmond are not qualified to represent Snopes.

Plaintiffs' twelfth cause of action is for breach of contract. Mikkelson asserts the terms of the purported contract are too uncertain and that no agreement existed among all Plaintiffs, Mikkelson and Snopes. "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 770.)

Plaintiffs allege:

Mikkelson (on behalf of himself and Snopes Media Group) offered that if Plaintiffs would enter into a settlement agreement with Barbara in their own names, and exclude Mikkelson and Snopes Media Group from the settlement agreement, that Snopes Media Group would thereafter reimburse Plaintiffs for all payments made pursuant to the settlement agreement by allowing them to deduct all settlement payment amounts directly from the advertising revenue that Proper Media was collecting on behalf of Snopes Media Group. Plaintiffs accepted Mikkelson's and Snopes Media Group's offer, and, on the basis of that agreement, subsequently entered into the Barbara Settlement Agreement on or about October 21, 2016.

(TAC, ¶ 278.) Exhibits C and D to the TAC are communications between Mikkelson and Schoentrup wherein Mikkelson states conditions on which he is willing to have a settlement with Barbara Mikkelson,

who had threatened to "go public with dirt on [Mikkelson] and the business" in relation to a salary/director fee dispute. Mikkelson tells Schoentrup "I will cover you by kicking back the extra payment amount to Proper Media each month." Later, Mikkelson discussed making edits to a draft settlement agreement. Mikkelson states "[w]hat I was thinking was that you're making the settlement, and if it means that you end up paying her an additional $X per month on the promissory note payments, then we'll increase the amount of Bardav revenue that Proper keeps by $X per month."

While not clearly spelled out in these conversations, it appears Schoentrup recognized Barbara Mikkelson had a legitimate claim to money from Snopes. As the TAC alleges, Proper Media purchased Barbara Mikkelson's share by July 1, 2016. (TAC, ¶ 49.) Exhibits C and D show the conversations between Schoentrup and Mikkelson occurred on September 14, 2016, and September 29, 2016, after Proper Media purchased Barbara Mikkelson's share. It appears both Schoentrup and Mikkelson were discussing how to handle a threat to Snopes, and to Mikkelson personally – disclosure of unknown "dirt." Although it appears Mikkelson personally benefitted from the settlement, which was to include a non-disclosure agreement, the discussion does not definitely define Mikkelson as having a personal obligation to make the payments. The parties agreed the money would come generally from Snopes' revenue.

The demurrer is sustained as to the twelfth cause of action for breach of contract.

Plaintiffs' thirteenth cause of action is for promissory estoppel/specific performance. "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'" (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 944 [Citation omitted].) Plaintiffs' allegations suffer from the same problem discussed above – there is no clear promise by Mikkelson to personally pay for Proper Media's settlement with Barbara Mikkelson. It appears the settlement primarily benefitted Snopes. If Plaintiffs received payment from Mikkelson personally, then their share of the benefit of resolving the dispute with Barbara Mikkelson would have come at no cost to them.

The demurrer is sustained as to the thirteenth cause of action for promissory estoppel/specific performance.

**(3) Defendant and Cross-Complainant David Mikkelson's Motion to Strike Portions of Plaintiffs' Third Amended Complaint is GRANTED, in part.**

Pursuant to CCP section 436, the court has discretion at any time to strike portions of pleadings, including irrelevant, immaterial, and improper allegations. (Code Civ. Proc., § 436.) A claim for punitive damages must be specifically pled and show facts that, if proved, demonstrates the requisite degree of culpability necessary for imposing exemplary damages under Civil Code Section 3294. (*Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 166-167.) Plaintiffs' allegations are sufficient if the complaint alleges despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of others. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 713.) Jury Instructions for punitive damages define "Despicable conduct" as "conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people." (CACI 3940.)

Mikkelson seeks to eliminate punitive damages from the TAC. Plaintiffs allege, "[o]n information and belief," that "Mikkelson has engaged in a pattern and practice of padding his salary through the submission of astronomical personal expenses for reimbursement by Snopes." (TAC, ¶ 61.) Plaintiffs may not rely on allegation based "on information and belief" without alleging the facts that lead to the belief the allegations are true. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1158–1159.) Plaintiffs allege various wrongs by Mikkelson based "on information and belief," such as Mikkelson expensing personal legal fees to Snopes and expensing personal travel expenses (honeymoon) to Snopes. Plaintiffs do not explain why they believe these alleged facts. (See TAC, ¶¶ 61-65.) However, Plaintiffs do provide facts to believe that "Mikkelson never intended to honor his promise to Plaintiffs that he would enter into a reasonable agreement governing compensation for all

shareholders in 2017." (TAC, ¶ 70.) Mikkelson was unhappy with his $260,000 salary. (TAC, ¶ 63.) Mikkelson did not sign the 2016 Compensation Agreement after promising that he "would enter into a compensation agreement for 2017 that would (1) keep his salary and business expenses moderate and predictable, and (2) allow for compensation and/or distributions to all shareholders." (TAC, ¶¶ 67-69.) Plaintiffs also allege Mikkelson believed "his salary should be on par with that of other founders." (TAC, ¶ 63.)

Plaintiffs go on to allege a conspiracy among Mikkelson, Green, and Miller to obtain control of Snopes. (TAC, ¶¶ 70-93.) While Plaintiffs repeatedly allege facts based "[o]n information and belief" to support the alleged conspiracy, there are alleged facts that would lead Plaintiffs to believe they are true. Mikkelson and Schoentrup and Richmond were not happy with each other. Mikkelson had a motive to obtain control of Snopes. Mikkelson could do so by convincing minority shareholders Green and Miller to work for Snopes directly on the website, rather than for Proper Media which performed work for the website under a General Services Agreement. Both Green and Miller went to work for Mikkelson. If Green and Miller aligned with Mikkelson, Mikkelson could control Snopes. Plaintiffs allege Mikkelson directed Green to remove data from Proper Media, which prevented Proper Media from fulfilling its obligations under the General Services Agreement, and terminated the General Services Agreement as part of the conspiracy. Conspiring to prevent performance of a contract and to interfere with employment relationships as part of an intentional scheme to gain control of a corporation, to the detriment of minority shareholders, is despicable, intentional conduct, especially in light of the fact Mikkelson owed a fiduciary duty to Schoentrup and Richmond.

The Court denies the motion as to punitive damages.

Mikkelson also moves to strike Plaintiffs' requested relief for attorney's fees based on the lack of any contractual terms or statute that provides for the recovery of attorney's fees. In opposition, Plaintiffs point to Corporations Code section 800. Corporations Code section 800 applies to derivative actions. As the anti-SLAPP motions and demurrers have eliminated the derivative causes of action, Corporations Code section 800 is inapplicable. Plaintiffs do not cite any other statute or contractual provision that would permit the recovery of attorney's fees. As such, the request for attorney's fees is stricken.

Finally, Mikkelson seeks to strike out allegations of disgorgement. As Plaintiffs acknowledge, their disgorgement request stems from the fifteenth and sixteenth claims for relief, which have been eliminated. Thus, the issue is moot. In any event, the California Supreme Court in *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134 found "nonrestitutionary disgorgement" is not recoverable under the UCL. Plaintiffs have not explained how they could properly allege restitutionary disgorgement.

1

## PROOF OF SERVICE

2   I am a resident of the State of California, over the age of eighteen years, and not a party to

3 the within action. My business address is PROCOPIO, CORY, HARGREAVES & SAVITCH

4 LLP, 525 B Street, Suite 2200, San Diego, CA 92101. On August 30, 2019, I served the within

5 document(s):

6 **NOTICE OF RULING ON SNOPES MEDIA GROUP, INC.'S DEMURRER TO
PLAINTIFFS' THIRD AMENDED COMPLAINT**

7

8 ☐ **BY U.S. MAIL** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set

9 forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal

10 Service on the same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal

11 cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

12 ☐ **BY OVERNIGHT DELIVERY** by placing the document(s) listed above in a sealed overnight envelope and depositing it for overnight delivery at San Diego, California, addressed as set

13 forth below. I am readily familiar with the practice of this firm for collection and processing of correspondence for processing by overnight mail. Pursuant to this practice, correspondence

14 would be deposited in the overnight box located at 530 "B" Street, San Diego, California 92101 in the ordinary course of business on the date of this declaration.

15

☐ **BY PERSONAL SERVICE** by causing the documents listed above to be personally

16 delivered Via Messenger Service to the person(s) at the address(es) set forth below.

17 ☑ **BY E-MAIL OR ELECTRONIC SERVICE** (**via One Legal Online Court Services**): I served upon the designated recipients via electronic transmission through the One Legal system

18 on August 30, 2019. Upon completion of said transmission of said documents, a certified receipt is issued to filing party acknowledging receipt by One Legal's system. Once One Legal

19 has served all designated recipients, proof of electronic service is returned to the filing party.

20 **SEE ATTACHED SERVICE LIST**

21

22 ☒ *(State)* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

23

24 Executed on August 30, 2019, at San Diego, California.

25 _Melissa A. Turpin_
Melissa Avitia Turpin

26

27

28

1

## SERVICE LIST

2

3    Drew Schoentrup                              Kimberly Howatt
     Proper Media, LLC                           Richard Sybert
4    4150 Mission Blvd., Suite 220               Gordon & Rees LLP
     San Diego, CA 92109                         101 W. Broadway, Suite 2000
5    509-995-5654                                San Diego, CA 92101
     drew@proper.io                              khowatt@gordonrees.com
6                                                rsybert@grsm.com

7

8    John S. Kyle                                Erin M. Hickey
     Jeffrey B. Harris                           Law Office of Erin M. Hickey
9    Laura Gantney                               888 Prospect Street, Suite 200
     Kyle Harris LLP                             La Jolla, CA 92037
10   450 B Street, Suite 1410                    858-263-2872
     San Diego, CA 92101                         erin@hickey.law
11   619-600-0086
     619-600-5144 fax
12   jharris@klhipbiz.com
     jkyle@klhipbiz.com
13   lgantney@klhipbiz.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Paul A. Tyrell (Bar No. 193798)
   Ryan C. Caplan (Bar No. 253037)
2  P. Jacob Kozaczuk (Bar No. 294734)
   PROCOPIO, CORY, HARGREAVES &
3      SAVITCH LLP
   525 B Street, Suite 2200
4  San Diego, California 92101
   Telephone:    619.238.1900
5  Facsimile:    619.235.0398
   E-mail:  paul.tyrell@procopio.com
6           ryan.caplan@procopio.com
            jacob.kozaczuk@procopio.com
7
   Attorneys for Defendant/Cross-Complainant,
8  SNOPES MEDIA GROUP, INC., formerly known and
   having appeared as BARDAV INC

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

10/10/2019 at 05:51:00 PM

Clerk of the Superior Court
By Regina Chanez,Deputy Clerk

9
10
      SUPERIOR COURT OF THE STATE OF CALIFORNIA

      COUNTY OF SAN DIEGO, CENTRAL DIVISION

11
12  PROPER MEDIA, LLC, a California limited
    liability company; CHRISTOPHER RICHMOND,
13  an individual; and DREW SCHOENTRUP, an
    individual,
14
                  Plaintiffs,
15
    v.
16
    BARDAV INC, a California corporation, and
    DAVID MIKKELSON, an individual,
17
                  Defendants,
18
19  SNOPES MEDIA GROUP, INC., formerly known
    and having appeared as BARDAV INC a
20  California corporation,

21                Cross-Complainant,

22  v.

23  PROPER MEDIA, LLC, a California limited
    liability company; DREW SCHOENTRUP, an
24  individual; CHRIS RICHMOND, an individual;
    PUBLIFE LLC, a Puerto Rico limited liability
25  company; TYLER DUNN, an individual, and
    ROES 1 through 50, inclusive,
26
                  Cross-Defendants.
27
28

Case No. 37-2017-00016311-CU-BC-CTL
(consolidated with Case No. 37-2018-00004335-CU-MC-CTL)

**THIRD AMENDED AND
SUPPLEMENTAL CROSS-COMPLAINT
for:**
**(1)  BREACH OF CONTRACT;**
**(2)  BREACH OF THE IMPLIED
       COVENANT OF GOOD FAITH AND
       FAIR DEALING;**
**(3)  ACCOUNTING;**
**(4)  VIOLATION OF THE CALIFORNIA
       COMPREHENSIVE COMPUTER
       DATA ACCESS AND FRAUD ACT;**
**(5)  INTENTIONAL INTERFERENCE
       WITH PROSPECTIVE ECONOMIC
       ADVANTAGE;**
**(6)  CONVERSION;**
**(7)  VIOLATION OF PENAL CODE § 496;**
**(8)  BREACH OF FIDUCIARY DUTY;**
**(9)  AIDING AND ABETTING;**
**(10) FRAUDULENT CONVEYANCE**
**(11) VIOLATIONS OF CALIFORNIA
       BUSINESS & PROFESSIONS CODE
       SECTIONS 17200 *et seq.*; and**
**(12) DECLARATORY RELIEF**

Complaint Filed:    May 4, 2017
Trial Date:         June 5, 2020

***IMAGED FILE***

**DEMAND FOR JURY TRIAL**

Defendant/Cross-Complainant SNOPES MEDIA GROUP, INC., formerly known and having appeared as BARDAV INC, alleges as follows:

## SUMMARY OF CROSS-ACTION

1. Snopes Media Group, Inc., formerly known as Bardav Inc ("Snopes Media Group" or "Cross-Complainant") owns and operates the popular Snopes.com website, which it uses to support and advance the quality, authenticity, and accuracy of news media. Snopes Media Group and PROPER MEDIA, LLC ("Proper Media") were parties to a written contract under which Proper Media agreed to provide certain services to Snopes Media Group for the Snopes.com website, subject to Snopes Media Group's ultimate discretion. Proper Media failed to perform its contractual and legal obligations and Snopes Media Group eventually terminated the contract in accordance with its terms.

2. Both before and after the contractual relationship between Proper Media and Snopes Media Group was terminated, Proper Media withheld and continues to withhold money owed to Snopes Media Group. Further, Proper Media effectively held the Snopes.com website hostage by blocking Snopes Media Group from moving the website, advertising and other back-end functions to another service provider. DREW SCHOENTRUP ("Schoentrup"), CHRISTOPHER RICHMOND ("Richmond"), and TYLER DUNN ("Dunn") are principals of Proper Media and helped orchestrate Proper Media's breaches and withholding of Snopes Media Group's money and other property. Schoentrup and Richmond used a shell limited liability company in Puerto Rico, PUBLIFE LLC ("Publife"), in furtherance of these schemes.

3. Schoentrup, Richmond, Dunn, Proper Media, and Publife received, concealed, embezzled and used the money owed and belonging to Snopes Media Group.

4. At the same time that Proper Media was and is inflicting external harm upon Snopes Media Group, Proper Media's principals, Schoentrup and Richmond, acted to paralyze Snopes Media Group internally in an apparent effort to force Snopes Media Group to continue or reestablish its business relationship with Proper Media. Among other things, Schoentrup purported to hold a director position within Snopes Media Group in an effort to give the appearance that Snopes Media Group had a deadlocked board. Similarly, Schoentrup and Richmond tried to claim

2

to control (via Proper Media) a 50% ownership stake in Snopes Media Group, despite the fact that Proper Media held no interest and that Schoentrup and Richmond held, at most, a 20% shareholder interest each—an interest they purchased using Snopes Media Group's own funds. After the resignation of Barbara Mikkelson, and although he was not an employee of the company, Schoentrup also assumed the role of de facto bookkeeper for Snopes Media Group, a role he used to conceal the withholding and embezzlement of millions of dollars of Snopes Media Group's advertising revenue for the benefit of himself, Richmond, Dunn, Proper Media, Publife, and their businesses.

## <u>THE PARTIES</u>

5.     Defendant/Cross-Complainant Snopes Media Group is, and at all times mentioned in this Third Amended and Supplemental Cross-Complaint (the "<u>Cross-Complaint</u>") was, a corporation duly organized and existing under and by virtue of the laws of the State of California, and doing business within the State of California.

6.     Cross-Complainant is informed and believes, and on that basis alleges, that Plaintiff/Cross-Defendant Proper Media is, and at all times mentioned in this Cross-Complaint was, a California limited liability company with its principal place of business in San Diego, California.

7.     Cross-Complainant is informed and believes, and on that basis alleges, that Plaintiff/Cross-Defendant Schoentrup is an individual who presently resides in Puerto Rico.

8.     Cross-Complainant is informed and believes, and on that basis alleges, that Plaintiff/Cross-Defendant Richmond is an individual who presently resides in Puerto Rico.

9.     Cross-Complainant is informed and believes, and on that basis alleges, that Cross-Defendant Publife is, and at all times mentioned in this Cross-Complaint was, a Puerto Rico limited liability company with a principal place of business in San Juan, Puerto Rico.

10.     Cross-Complainant is informed and believes, and on that basis alleges, that Plaintiff/Cross-Defendant Dunn is an individual who presently resides in the state of California.

11.     The true names and capacities, whether individual, corporate, or otherwise of the cross-defendants named in this Cross-Complaint as Roes 1 through 50, inclusive, are unknown to Cross-Complainant. Cross-Complainant is informed and believes, and on that basis alleges, that

3

each of said fictitiously named cross-defendants is liable to Cross-Complainant on the causes of action herein alleged and/or asserts some interest, legal or equitable, in the subject matter of this action, and therefore Cross-Complainant sues said cross-defendants by said fictitious names. Cross-Complainant will move to amend this Cross-Complaint when the true names and capacities of said fictitiously named cross-defendants have been ascertained.

12. Proper Media, Richmond, Schoentrup, Dunn, Publife, and Roes 1 through 50 are collectively referred to as the "Cross-Defendants" herein.

13. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint the Cross-Defendants, and each of them, were the agents, servants, employees, and/or alter egos of each of the other co-Cross-Defendants, and in doing the things alleged in this Cross-Complaint were acting within the scope of their authority as such agent, servant, employee, and/or alter ego, and with the permission and consent of their co-Cross-Defendants.

## ALTER EGO ALLEGATIONS

14. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint some of the corporations, limited liability companies, and entities named as cross-defendants herein, including without limitation, Proper Media, Publife, Schoentrup, Richmond, and ROES 1 through 50 (collectively, the "Alter Egos"), and each of them, were at all times relevant the alter egos of the other co-Cross-Defendants, including without limitation, Cross-Defendants Richmond and Schoentrup, Proper Media, Publife and ROES 1 through 50.

15. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint each of the Cross-Defendants dominated, influenced and controlled each of the Alter Egos and the officers thereof as well as the business, property, and affairs of each of said Alter Egos.

16. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint there existed and now exists a unity of interest and

ownership between the Cross-Defendants and each of the Alter Egos; the individuality and separateness of the Cross-Defendants and each of the Alter Egos have ceased.

17. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint, and at all times since the incorporation or inception of each Alter Ego, each Alter Ego has been and now is a mere shell and naked framework which the co-Cross-Defendants used and continue to use as a conduit for the conduct of their personal business, property and affairs.

18. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint, each of the Alter Egos was created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by each of the other Cross-Defendants, whereby the income, revenue and profits of each of the Alter Egos were diverted by each of the other Cross-Defendants to themselves.

19. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint, each of the Alter Egos was organized by each of the co-Cross-Defendants as a device to avoid individual liability and for the purpose of substituting financially irresponsible entities in the place and stead of the co-Cross-Defendants, and accordingly, each Alter Ego was formed with capitalization totally inadequate for the business in which said entity was engaged.

20. Cross-Complainant is informed and believes, and on that basis alleges, that each of the Alter Egos is undercapitalized and insolvent. Cross-Complainant is informed and believes, and on that basis alleges, that the revenues and monies held by each of the Alter Egos have been drained from the Alter Ego by the co-Cross-Defendants.

21. By virtue of the foregoing, adherence to the fiction of the existence of each of the Alter Egos as separate entities would, under the circumstances, sanction a fraud and promote injustice in that Cross-Complainant would be unable to realize upon any judgment in its favor, among other reasons.

22. Cross-Complainant is informed and believes, and on that basis alleges, that at all times mentioned in this Cross-Complaint, the Alter Egos and each of the other Cross-Defendants

acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

## JURISDICTION AND VENUE

23.    This Court has jurisdiction over all causes of action asserted in this Cross-Complaint pursuant to California Constitution, Article VI, section10 and California Code of Civil Procedure section 410.10 because the acts and omissions alleged herein were committed in the State of California, because this is a civil action wherein the matter in controversy, exclusive of interest, exceeds $25,000, and because this case is a cause not given by statute to other trial courts.

24.    Venue is proper in this Court pursuant to California Code of Civil Procedure section 395, because these claims are asserted in a cross-complaint to the above-captioned action filed in this venue, Cross-Defendants reside and/or transact business within the County of San Diego, and the unlawful conduct alleged herein was carried out, and had effects, in the County of San Diego. Venue is proper in this district pursuant to Rule 1.2.2 of the San Diego Superior Court Rules.

## GENERAL ALLEGATIONS

25.    This action concerns the operation and control of the Snopes.com website, which is owned by Snopes Media Group. Snopes Media Group is a California corporation founded in 2003 by then-husband and wife, David and Barbara Mikkelson. Since its formation Snopes Media Group has been the ownership entity for the Snopes.com website, which Mr. Mikkelson first began as a personal project in as early as 1994. Mr. and Mrs. Mikkelson were each directors of Snopes Media Group until Mrs. Mikkelson sold her ownership interest in 2016, after which Mr. Mikkelson became the sole member on the Snopes Media Group board of directors. Today, in addition to his position as director, Mr. Mikkelson is the President, CEO and 50% shareholder of Snopes Media Group.

26.    Proper Media is a member-managed "internet media" company founded in 2015 by Dunn, Schoentrup, and Richmond, among others. Proper Media advertises itself as owning, operating, and representing web properties, working with website "publishers" and "advertising partners." At all relevant times, Dunn, Schoentrup, and Richmond were members of Proper Media.

6

**The General Service Agreement**

27. On or about August 11, 2015, Snopes Media Group, under its former name, Bardav Inc, and Proper Media entered into a written one-year contract entitled the General Service Agreement ("GSA"). Under the GSA, Proper Media agreed to provide certain services to Snopes Media Group for the Snopes.com website during the term of the agreement. A true and correct copy of the GSA is attached as Exhibit "A" hereto and is incorporated by reference herein.

28. The GSA was premised on the following recitals:

**Publisher:** Bardav, Inc., (Snopes)

\* \* \*

**Agent:** Proper Media, LLC

\* \* \*

WHEREAS, The Publisher is the owner and/or operator of Snopes.com (the "Website"); and

WHEREAS, the Publisher wishes to retain the Agent to provide content and website development services as well as advertising sales and trafficking, as set forth in this Agreement (the "Agreement")

(Exhibit A, p. 1.)

29. The GSA had an initial term of 1 year commencing on August 11, 2015, and thereafter reverted to renewable monthly terms until such time it is terminated by either party:

Effective Date: August 11, 2015

"Term" means the period commencing upon the effective date and ending upon the termination of this agreement in accordance with Section 7.

(Exhibit A, p. 1.)

**7. Term & Renewal**

7.1. Term: This Agreement shall remain in effect for a period of one (1) year from the date hereon (the "Initial Term"). Either party may terminate this Agreement by providing the other party with sixty (60) days written notice, with or without cause, prior to the expiration of the Initial Term. Unless previously terminated by notice as provided above, at the end of the Initial Term this Agreement shall renew for additional one (1) month terms (each a "Renewal Term") unless and until either party provides the other

7

party with written notice of termination, with or without cause, at least sixty (60) days prior to renewal.

(Exhibit A, § 7.1, p. 4.)

30.    The GSA also provided for immediate termination for cause upon Proper Media breaching and failing to cure within ten days:

> 7.2. Termination by Publisher:  Publisher may terminate this Agreement by written notice to Agent if any of the following events occur:
>
> (i) Agent fails to pay any amount due to Publisher within ten (10) days after Publisher gives Agent written notice of such nonpayment; or
>
> (ii) Agent is in material breach of any term, condition, or provision of this Agreement and such breach is not cured within ten (10) days after Publisher gives Agent notice of such breach.

(Exhibit A, § 7.2, p. 4.)

31.    Under the GSA, Snopes Media Group retained ultimate decision making on issues regarding staffing, content, and editorial guidelines.  (*See* Exhibit A, § 1, p. 2.)

32.    Among other tasks, Proper Media contracted to represent Snopes Media Group with respect to advertisement procurement, placement, and management, subject to Snopes Media Group's ultimate discretion.  (*See* Exhibit A, § 3, p. 2.)  In connection therewith, Proper Media agreed to provide Snopes Media Group with advertisement trafficking and reporting.  (Exhibit A, § 3.1, p. 2.)  Proper Media also agreed to use its best efforts to ensure that the information in its tracking system was accurate.  (Exhibit A, § 3.2, p. 2.)

33.    The GSA further provided that Proper Media would compensate Snopes Media Group based on advertising invoicing on a monthly basis:

> 3.5. Agent Commission Rate:  The Agent shall pay to Publisher all amounts invoiced or to be invoiced by the Agent to advertisers for advertising placed on the Website up to $85,000 per month (the "Baseline") and fifty (50) percent of all amounts above the Baseline, calculated on a monthly basis ("Net Revenue").

(Exhibit A, § 3.5, p. 3.)

34.     The remaining advertising revenue constituted the entirety of Proper Media's compensation (exclusive of authorized expense reimbursements) under the GSA: "Other than the commissions in this Section, and the expense reimbursements in Section 5, Agent shall not be entitled to any fixed compensation for its services." (Exhibit A, § 3.7, p. 3.)

35.     Proper Media was obligated to pay Snopes Media Group sums owed under the GSA within forty-five (45) days of the end of each month, regardless of whether Proper Media had received payment from the advertisers:

> 4.3. Payment to Publisher:  Regardless of whether the Agent has been paid by all Advertisers, the Agent shall pay Publisher the Net Revenue for each month no later than forty-five (45) days from the end of the month for which advertising was run on the Website provided that that the 45th day falls on a weekday and, if it falls on a weekend, the next business day.  Publisher is responsible for all sales taxes, use taxes and any other similar taxes imposed by any federal, state or local governmental entity on the transactions contemplated by this Agreement, excluding taxes based upon Agent's net income.

(Exhibit A, § 4.3, p. 3.)

36.     Proper Media was contractually obligated to invoice and collect all advertising revenue for the Snopes.com website:  "Agent's Obligations: Agent shall invoice and collect all advertising revenue from Advertisers for content sold by Agent for placement on the Website." (Exhibit A, § 4.1, p. 3.)  Moreover, Schoentrup assured Snopes Media Group's bookkeeper, Barbara Mikkelson, that he would do his best to have invoices ready within two weeks after the end of a calendar month.

37.     Notably, the GSA did not require or enable Proper Media to host the Snopes.com website or to control its hosting.  Rather, the GSA provides that "[Proper Media] shall consolidate [Snopes Media Group's] existing server configuration to use load-balanced Linux servers paired with a MySQL database server and a content delivery network[,]" without granting Proper Media ownership or control over those servers.  At all relevant times, the decision of how and where to host the Snopes.com website remained within Snopes Media Group's sole ultimate discretion.

**The Stock Purchase Agreement**

38.     In 2015, David and Barbara Mikkelson divorced, after which each retained an independent fifty percent (50%) ownership interest in Snopes Media Group.

9

39.    In April 2016, Schoentrup and Richmond offered to buy Barbara Mikkelson's ownership interest in Snopes Media Group at a price Schoentrup described as "generous" given that "[they] would be buying a non-controlling stake in the company."  Schoentrup informed Barbara Mikkelson that three other owners of Proper Media would be "cut in for a small percentage" of the purchase of Barbara Mikkelson's ownership interest.

40.    On or about July 1, 2016, pursuant to a written Stock Purchase Agreement (the "SPA"), Barbara Mikkelson sold her 50% ownership interest in Snopes Media Group to Schoentrup, Richmond, Dunn, and Defendants Vincent Green, and Ryan Miller, in the following percentages:[1]

| Name | Purchase Percentage | Overall Ownership in Snopes Media Group |
|------|---------------------|------------------------------------------|
| Drew Schoentrup: | 40% | 20% |
| Christopher Richmond: | 40% | 20% |
| Tyler Dunn: | 6.68% | 3.34% |
| Vincent Green: | 6.66% | 3.33% |
| Ryan Miller: | 6.66% | 3.33% |

41.    Under the SPA, the shares were sold to, and held by, the above-identified persons in their individual capacity.  The SPA makes no mention of any of these parties holding their shares for the "benefit" of Proper Media.

42.    Likewise, the SPA does not provide that any of these acquiring individuals, including Schoentrup, would obtain a position on Snopes Media Group's board of directors.  The SPA was not accompanied by any corporate resolution appointing Schoentrup or any of the other purchasers to Snopes Media Group's board of directors.

43.    Importantly, the SPA contains an express integration provision, confirming that it represents the entirety of the agreement reached with respect to the acquisition and ownership of these shares.

44.    As a result of Snopes Media Group's S-Corp status, its shares cannot be held by companies but must instead be held by individuals.  Consistent therewith, the Snopes Media Group ownership interest sold by Ms. Mikkelson was purchased by, and continues to be held by, Messrs.

---

[1] The SPA contains a confidentiality provision and therefore Bardav is not attaching a copy to this public document.

Schoentrup, Richmond, Dunn, Green, and Miller in their individual capacity, and not for the benefit of Proper Media.

**Cross-Defendants Embezzled Snopes Media Group's own Revenues to Pay for Barbara Mikkelson's Ownership Interest in Snopes Media Group**

45.     In April 2016, David Mikkelson instructed Proper Media to temporarily hold off on disbursing funds into Snopes Media Group's bank account due to a concern regarding unauthorized withdrawals from that account by its bookkeeper, Barbara Mikkelson.

46.     On June 2, 2016, Barbara Mikkelson informed Schoentrup that Snopes Media Group needed a new bookkeeper to replace her after her ownership interest was sold. Schoentrup touted his experience with handling all of Proper Media's books and stated he "would love to take over" as Snopes Media Group's bookkeeper. On June 8, 2016, Schoentrup informed Barbara Mikkelson that he "received the go ahead" from David Mikkelson and asked for Snopes Media Group's journals.

47.     However, after Schoentrup took over as Snopes Media Group's bookkeeper, Proper Media failed to return the advertising revenues temporarily withheld from Snopes Media Group since April 2016. On information and belief, Schoentrup and Richmond were unable to obtain financing to pay the $1,850,000 due at closing to purchase Barbara Mikkelson's ownership interest in Snopes Media Group. The SPA was amended to allow for delivery of the down payment within 60 days after closing and, on information and belief, Cross-Defendants used Snopes Media Group's revenues to pay thousands of dollars in interest to Barbara Mikkelson while they scrambled to secure a loan.

48.     On July 20, 2016, weeks after Barbara Mikkelson tendered her resignation, Proper Media returned Snopes Media Group's advertising revenues for the months of February and March 2016 *only*. However, the GSA required Proper Media to pay Snopes Media Group its share of advertising revenues within 45 days of months end, and thus payments for April and May 2016 were overdue. Yet, Proper Media did not pay Snopes Media Group its advertising revenues for April and May 2016 until 129 and 128 days after months' end, respectively.

49.     On information and belief, the reason Proper Media did not timely pay Snopes Media Group its April and May 2016 advertising revenue is because the hundreds of thousands of dollars were already diverted from Proper Media's bank account and used in connection with the purchase of Snopes Media Group's shares, and to further benefit Cross-Defendants and their businesses at the expense of Snopes Media Group.

50.     When Barbara Mikkelson learned that the purchase of her ownership interest would be financed through a lender, Barbara Mikkelson reminded Schoentrup that Snopes Media Group's revenue share must not be used to secure the loan.  However, on information and belief, Cross-Defendants went a step further and actually used that very advertising revenue to purchase Barbara Mikkelson's ownership interest—revenue that already belonged to Snopes Media Group.

51.     Under the SPA, the second half of the purchase price was due in monthly installments pursuant to a promissory note attached as an exhibit to the SPA (the "Promissory Note").  On information and belief, Cross-Defendants continued to withhold and embezzle Snopes Media Group's advertising revenue in order to make these payments under the Promissory Note—a scheme that continued through 2017.

52.     In fact, after Schoentrup took over as Snopes Media Group's bookkeeper, Proper Media *never once* paid Snopes Media Group its monthly share of advertising revenues within 45 days as required under the GSA.  Rather, Proper Media withheld Snopes Media Group's revenue share for *months* at a time, returning the funds *hundreds* of days later, as follows:

| | |
|---|---|
| April 2016: | 129 days after months' end |
| May 2016: | 128 days after months' end |
| June 2016: | 127 days after months' end |
| July 2016: | 151 days after months' end |
| August 2016: | 120 days after months' end |
| September 2016: | 147 days after months' end |
| October 2016: | 126 days after months' end |
| November 2016: | 103 days after months' end |

| | |
|---|---|
| December 2016: | 72 days after months' end[2] |
| January 2017: | 72 days after months' end |
| February 2017: | 51 days after months' end |
| March 2017: | 108 days after months' end |
| April 2017: | 138 days after months' end |
| May 2017: | 107 days after months' end |

53. Cross-Defendants actively concealed their use of Snopes Media Group's advertising revenue from Snopes Media Group.

54. As early as January 2016, and long before Schoentrup assumed the role of Snopes Media Group's bookkeeper, Schoentrup agreed to send an accounting breakdown to David Mikkelson whenever Proper Media deposited advertising revenue in Snopes Media Group's bank account.

55. Moreover, while Barbara Mikkelson was still bookkeeper, she informed Schoentrup that a three-week delay in providing the accounting breakdowns was not acceptable, and that monthly invoices should be sent "as soon as they are prepared." Schoentrup responded that he would "do [his] best to have invoices ready within two weeks after the end of a calendar month."

56. However, once Schoentrup assumed the role of bookkeeper for Snopes Media Group and Barbara Mikkelson resigned, Schoentrup stopped providing invoices altogether, which further concealed Cross-Defendants' deleterious conduct.

**Proper Media Fails to Perform under the GSA, is Terminated, and Then Holds the Snopes.com Website and Other Assets Hostage**

57. During the one-year term of the GSA, Proper Media repeatedly failed to remit timely payments that were owed to Snopes Media Group. Further, over time, Proper Media stopped performing certain functions under the GSA and generally failed to perform at a

---

[2] On or about March 9, 2017, Snopes Media Group gave notice to Proper Media that the GSA was being terminated under the terms of the agreement. Shortly thereafter, Proper Media paid Snopes Media Group its overdue revenue share for November and December 2016 in an effort to salvage the relationship and continue Cross-Defendants fraudulent scheme, hence the slight decline in payment delay from December through February (which were still significantly late). However, when Snopes Media Group refused to enter into a new agreement, Proper Media withheld all advertising revenues for all months until the Court intervened.

13

sufficiently high level. Snopes Media Group concluded that it no longer made sense to allow Proper Media to siphon off large sums of advertising revenue from Snopes.com when Proper Media was not providing value commensurate with its compensation, and when Snopes Media Group could obtain the services it needed from other vendors at significantly lower cost. Further, Proper Media began to withhold advertising revenue from Snopes Media Group not permitted under the GSA.

58. As noted above, the GSA's express language granted Snopes Media Group the right to terminate the GSA at any time, with or without cause, on sixty (60) days' notice. On or about March 9, 2017, Snopes Media Group gave Proper Media written notification that it was terminating the GSA pursuant to the Term & Renewal Section of the GSA, such that the GSA would terminate in sixty (60) days (i.e., on May 7, 2017), unless otherwise terminated earlier for cause. The notice was sent by Snopes Media Group's director and President, Mr. Mikkelson.

59. Despite holding no ownership interest in Snopes Media Group, Proper Media held itself out as "the beneficial owner of 50% of the shares in [Snopes Media Group]." Presumably based on this false assertion, Proper Media improperly attempted to exercise rights of a Snopes Media Group shareholder, including attempting to call a special meeting, attempting to appoint directors, and attempting to inspect corporate records.

60. Despite no corporate resolution appointing him to Snopes Media Group's board of directors, Schoentrup held himself out as a Snopes Media Group board member. Presumably based on this false assertion, Schoentrup improperly attempted to exercise rights of a Snopes Media Group director, including attempting to call a special meeting, attempting to appoint directors, attempting to manage business decisions, and attempting to inspect corporate records.

61. On or about May 19, 2017, Snopes Media Group made a written demand upon Proper Media for certain information and data relating to Snopes Media Group and the Snopes.com website, of which Snopes Media Group is the legal owner, but was in Proper Media's possession, custody, or control. Snopes Media Group emphasized the time-sensitive nature of this demand and requested compliance by the close of business on May 22, 2017.

62.     Cross-Defendants failed and refused to comply with Snopes Media Group's written demand, and instead held hostage the requested information and data belonging to Snopes Media Group.

63.     Cross-Defendants also continued to withhold advertising revenue procured from the Snopes.com website and belonging to Snopes Media Group, and used that revenue for their own purposes, including to make payments to Schoentrup, Richmond, Barbara Mikkelson, and/or Publife.

64.     On information and belief, on or around August 2017, Schoentrup approached Barbara Mikkelson to consider an early settlement of the Promissory Note so he could refinance debt, and proposed an arrangement with Barbara Mikkelson to lower payment for the next 12 months. Barbara Mikkelson rejected the proposal and insisted that the entirety of the debt owed to her be retired or that the Promissory Note be left unchanged.

65.     Shortly thereafter, Cross-Defendants devised a new scheme to withhold and divert *even more* of Snopes' advertising revenue. In or around October 2017, Cross-Defendants entered into a secret agreement to settle the entirety of the debt owed to Barbara Mikkelson—including the purchase of the Promissory Note from Barbara Mikkelson—using exclusively advertising revenue unlawfully withheld from Snopes Media Group.

66.     In connection with and in consideration for that agreement, Dunn, Schoentrup, Richmond, and Proper Media each signed an undisclosed release (the "Release"), releasing them from their obligations under their settlement agreement with Barbara Mikkelson in exchange for making an early payment to Barbara Mikkelson in the amount of $159,008.60. A true and correct copy of the Release is attached as Exhibit "B" hereto and is incorporated by reference herein.

67.     The $159,008.60 payment was for the entire outstanding principal debt owed by Dunn, Schoentrup, Richmond, and Proper Media to Barbara Mikkelson pursuant to the underlying settlement agreement. Cross-Defendants' early and *full* payment of the Release was a requirement for paying off the remainder of the Promissory Note *at a discount.*

68.     Although Dunn, Schoentrup, Richmond, and Proper Media each agreed to pay the entire principal amount owed under their settlement agreement with Barbara Mikkelson *years in*

15

*advance and without receiving any discount*, Dunn, Schoentrup, Richmond, and Proper Media did not pay a cent. Instead Dunn, Schoentrup, Richmond, and Proper Media used 100% of Snopes' advertising revenues to pay their new obligation under the Release. Despite using Snopes' advertising revenue to pay the Release, the Release was not disclosed to Snopes.

69. Upon information and belief, Dunn was an active participant in this scheme to withhold and divert Snopes' advertising revenues, which harmed Snopes' business as well as its business relationships with third party businesses, including advertisers. Dunn is a party and signatory to the Release and personally avoided liability to Barbara Mikkelson through the use of Snopes' revenues. (Exhibit B, pp. 1, 3.) By actively participating in this scheme, Dunn also rendered substantial assistance to the other Cross-Defendants, interfered with Snopes' economic relationships with its advertisers and other businesses, converted and embezzled Snopes' revenues, and aided and abetted Proper Media's breach of its fiduciary duties.

70. Cross-Defendants concealed this transaction from Snopes Media Group. After significant delay, on or about January 31, 2018, Proper Media provided "invoices" for advertising revenues withheld in August, September, and October 2017. The October 2017 invoice included a $159,008.60 withholding for "Barbara Mikkelson Settlement Payment."

## FIRST CAUSE OF ACTION

### (Breach of Contract against Proper Media and Roes 1 through 50)

71. Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

72. On or about August 11, 2015, Snopes Media Group and Proper Media, and Roes 1 through 50 entered into a written General Service Agreement (the GSA), under which Proper Media and Roes 1 through 50 agreed to provide certain content and website development and maintenance services to Snopes Media Group for the Snopes.com website, during the term of the agreement. (*See* Exhibit A.)

73. Snopes Media Group fully performed all conditions, covenants, and promises required on its part to be performed in accordance with the GSA, except as prevented and/or excused by Cross-Defendants.

16

74.     By entering into the GSA, Proper Media and Roes 1 through 50 expressly agreed to abide by the terms of those agreements with Snopes Media Group.  Proper Media and Roes 1 through 50 have materially breached the GSA by, among other things:

        a.     failing to make payments of revenues owed to Snopes Media Group under the GSA;

        b.     failing to provide trafficking and reporting to Snopes Media Group; and

        c.     failing to perform in other ways that may be revealed in the course of discovery.

75.     As a direct and proximate result of these breaches of the GSA by Proper Media and Roes 1 through 50, Snopes Media Group has suffered damage, plus interest thereon, according to proof at trial.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing
### against Proper Media and Roes 1 through 50)

76.     Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

77.     On or about August 11, 2015, Snopes Media Group, Proper Media, and Roes 1 through 50 entered into a written General Service Agreement (the GSA), under which Proper Media and Roes 1 through 50 agreed to provide certain content and website development and maintenance services to Snopes Media Group for the Snopes.com website, during the term of the agreement.  (*See* Exhibit A.)

78.     Snopes Media Group has fully performed all conditions, covenants, and promises required on its part to be performed in accordance with the GSA, except as prevented and/or excused by Cross-Defendants.

79.     During the course of the term of the GSA, Proper Media with the assistance of other Cross-Defendants unfairly interfered with Snopes Media Group's right to receive the benefits of the GSA by, among other things:

d.     failing and refusing to provide Snopes Media Group with information concerning the Snopes.com website and infrastructure, of which Snopes Media Group is the legal owner as recognized under the GSA;

e.     failing and refusing to provide Snopes Media Group with a copy of the codebase for the Snopes.com website, of which Snopes Media Group is the legal owner as recognized under the GSA;

f.     failing and refusing to provide Snopes Media Group with access to the repositories for the Snopes.com website, of which Snopes Media Group is the legal owner as recognized under the GSA;

g.     failing and refusing to provide Snopes Media Group with access to all Snopes Media Group's electronic communications as well as data for the Snopes.com website, of which Snopes Media Group is the legal owner as recognized under the GSA;

h.     failing and refusing to cooperate with the transition of the Snopes.com website and other backend functions to another service provider;

i.     failing and refusing to provide Snopes Media Group with data and property developed by outside developers for Snopes Media Group and/or the Snopes.com website;

j.     failing and refusing to provide a timely and accurate accounting of Snopes Media Group's revenue share for advertising procured from the snopes.com website;

k.     diverting and using Snopes Media Group's share of advertising revenue without Snopes Media Group's knowledge or permission; and

l.     concealing the withholding, diversion, and use of Snopes Media Group's share of advertising revenue.

80.     The acts alleged herein constitute a breach of the GSA's implied covenant of good faith and fair dealing in that they interfered with Snopes Media Group's right to receive the benefits of the GSA.

81.     As a direct and proximate result of Proper Media's and Roes 1 through 50's breaches of the implied covenant of good faith and fair dealing in the GSA, Snopes Media Group has suffered damage, plus interest thereon, according to proof at trial.

18

## THIRD CAUSE OF ACTION

### (Accounting against Proper Media and Roes 1 through 50)

82.     Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

83.     On or about August 11, 2015, Snopes Media Group, Proper Media, and Roes 1 through 50 entered into a written General Service Agreement (the GSA), under which Proper Media and Roes 1 through 50 agreed to provide certain content and website development and maintenance services to Snopes Media Group for the Snopes.com website, during the term of the agreement.  (*See* Exhibit A.)

84.     Proper Media's and Roes 1 through 50's obligations under the GSA include paying Net Revenues to Snopes Media Group generated by advertisement revenue invoiced, or to be invoiced, by Proper Media and Roes 1 through 50 for the Snopes.com website during the term of the GSA.

85.     Under the GSA, Proper Media and Roes 1 through 50 are obligated to provide trafficking and reporting to Snopes Media Group regarding all advertising placed on the Snopes.com website.

86.     Under the GSA, Proper Media and Roes 1 through 50 are obligated to invoice and collect all advertising revenue from advertisers for content sold by Proper Media for placement on the Snopes.com website.

87.     Proper Media and Roes 1 through 50 have failed to pay Snopes Media Group net revenues owed to it for advertisements invoiced, or to be invoiced, for placement on the Snopes.com website.

88.     The amount of money due from Proper Media and Roes 1 through 50 to Snopes Media Group for net revenues is unknown to Snopes Media Group and cannot be ascertained without an accounting of Proper Media's and Roes 1 through 50's books, records, contracts, and financials.

89.     Proper Media and Roes 1 through 50 have failed to tender an appropriate accounting of the aforementioned monies invoiced or to be invoiced, thereby entitling Snopes Media Group to equitable relief in the form of an accounting of all amounts owing under the GSA.

## **FOURTH CAUSE OF ACTION**

**(Violation of Comprehensive Computer Data Access and Fraud Act**

**against Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50)**

90.     Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

91.     The California Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), California Penal Code sections 502 *et seq*., regulates "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems" and Penal Code section 502(e) provides a civil cause of action for compensatory damages, injunctive relief, or other equitable relief, to "the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation" of the CCDAFA.

92.     Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 violated the CCDAFA by knowingly accessing, using, and/or interfering with data belonging to Snopes Media Group: (1) in and from the State of California; (2) in the state and/or territory of the principal place of business of Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50; (3) upon information and belief, in the state in which servers that hosted and/or provided other services to the Snopes.com website are located; and (4) in a state in which some of Snopes Media Group's employees are located.

93.     Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 intentionally and without permission accessed, used, and/or interfered with Snopes Media Group's property and computer data in order to wrongfully control or obtain money in violation of California Penal Code sections 502(c)(1), (c)(2), (c)(3), (c)(4), (c)(5), (c)(7).

94.     In each of the above-mentioned violations, Schoentrup, Richmond, Proper Media, and Roes 1 through 50 held hostage the Snopes.com website owned by Snopes Media Group,

20

including without limitation, the source code and databases needed to control and operate the website.

95. Snopes Media Group is the sole owner of the Snopes.com website, and the underlying source code and databases are unique for Snopes Media Group's business. Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 blocked access to and use of the underlying source code and databases necessary to control and operate the Snopes.com website, as well as other property belonging to Snopes Media Group. Snopes Media Group needed access to the website's source code and databases in order to operate and maintain the website following the termination of the GSA.

96. Without authorization, Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 maintained control and refused to turn over Snopes Media Group's email accounts which Snopes Media Group uses to operate the Snopes business. As a result, Snopes Media Group was unable to control access to and security of Snopes.com email accounts.

97. In each of the violations mentioned above, Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 accessed, used, and/or interfered with the Snopes.com website, the website's source code, databases, and email accounts and other property without authorization and under false pretenses and deception. Snopes Media Group owns the above-mentioned data and is entitled to control and oversight of the data, including access to the data. Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 actively locked out Snopes Media Group from Snopes Media Group's data, against the will of Snopes Media Group, and despite its demands for access and return of the property.

98. The actions of Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 prevented Snopes Media Group from protecting its information.

99. Schoentrup, Richmond, Proper Media, Publife, and Roes 1 through 50 used their unlawful control over the source code, databases, email accounts and other property to continue receiving and withholding Snopes Media Group's advertising revenue and as leverage over Snopes Media Group.

21

1   100.   By refusing to return Snopes Media Group's data and other property, Schoentrup,

2   Richmond, Proper Media, Publife, and Roes 1 through 50 improperly prevented Snopes Media

3   Group from operating its own website and otherwise conducting its business.

4   101.   As a direct and proximate result of the violations by Schoentrup, Richmond, Proper

5   Media, Publife, and Roes 1 through 50, Snopes Media Group suffered lost revenue, lost goodwill

6   with members of the public, lost business opportunities, and consequential damages, in an amount

7   to be proved at trial.  Costs include the time and expense of recovering the property and other data,

8   and determining the damage caused by Schoentrup, Richmond, Proper Media, Publife, and Roes 1

9   through 50.

10  102.   In engaging in the acts and conduct alleged above and below, Schoentrup,

11  Richmond, Proper Media, Publife, and Roes 1 through 50 willfully violated the CCDAFA in

12  disregard and derogation of Snopes Media Group's rights, and the actions of Schoentrup,

13  Richmond, Proper Media, Publife, and Roes 1 through 50 as alleged above and below were carried

14  out with oppression, fraud, and malice.

15  103.   Snopes Media Group is entitled to injunctive relief, compensatory damages,

16  punitive or exemplary damages, attorney fees, costs, and other equitable relief pursuant to

17  California Penal Code section 502(e).

18  **FIFTH CAUSE OF ACTION**

19  **(Intentional Interference with Prospective Economic Advantage**

20  **against all Cross-Defendants)**

21  104.   Cross-Complainant incorporates by reference each and every allegation contained in

22  each paragraph above and below as though the same were set forth in full herein.

23  105.   Snopes Media Group entered into and maintained a lawful economic relationship

24  with advertisers and other businesses providing services to Snopes Media Group, including without

25  limitation, the Snopes.com website.  The economic relationship contained the probability of future

26  economic benefit to Snopes Media Group in the form of commerce with advertisers, vendors, and

27  businesses providing services to the Snopes.com website and Snopes Media Group, including

28

without limitation, web hosting service providers, advertising vendors, developers, and other service providers.

106.    Cross-Defendants were aware of the benefits of Snopes Media Group's relationship with advertisers, the businesses providing services to the Snopes.com website and Snopes Media Group, and the future business relationship between Snopes Media Group and advertisers, vendors, and businesses providing services to the Snopes.com website and Snopes Media Group, including without limitation, web hosting service providers, advertising vendors, developers, and other service providers.

107.    Proper Media and Snopes Media Group also entered into and maintained a lawful economic relationship that contained benefits for both Proper Media and Snopes Media Group. The economic relationship contained the probability of future economic benefit to Snopes Media Group in the form of commerce with advertisers, vendors, and businesses providing services to the Snopes.com website and Snopes Media Group, including without limitation, web hosting service providers, advertising vendors, developers, and other service providers.

108.    Cross-Defendants were aware of the benefits of Proper Media's relationship with Snopes Media Group and the continuing and future business relationship between Snopes Media Group and advertisers, vendors, and businesses providing services to the Snopes.com website and Snopes Media Group, including without limitation, web hosting service providers, advertising vendors, developers, and other service providers.

109.    Cross-Defendants were aware that Snopes Media Group relied significantly on its relationship with advertisers, vendors, and businesses providing services to the Snopes.com website and Snopes Media Group to conduct its commerce.

110.    Cross-Defendants actually, willfully, and unlawfully disrupted Snopes Media Group's business relationship with advertisers, advertising vendors, developers, and businesses providing services to the Snopes.com website and Snopes Media Group, among others, by unlawfully holding hostage Snopes Media Group's property, including without limitation, the source code, databases, and email accounts.

111.     Cross-Defendants' disrupting conduct was otherwise unlawful as described in this Cross-Complaint.

112.     In engaging in the acts and conduct alleged above and below, Cross-Defendants acted willfully to injure Snopes Media Group and its property.

113.     Cross-Defendants' acts and conduct as alleged above and below was unconscionable and violated public policy.

114.     As a direct and proximate result of Cross-Defendants' acts and conduct as alleged above and below, Snopes Media Group has suffered and will continue to suffer damages, plus interest thereon, according to proof at trial.  Because Cross-Defendants' acts and conduct as alleged above and below was malicious, Snopes Media Group should be awarded punitive damages in a sum according to proof.

## SIXTH CAUSE OF ACTION

### (Conversion against all Cross-Defendants)

115.     Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

116.     Snopes Media Group owns and had the right to possess its property, including without limitation, the Snopes.com website's source code, databases, and email accounts.  This property is the sole and exclusive property of Snopes Media Group, which is valuable to Snopes Media Group and vital to its continued business operations.  Cross-Defendants wrongfully exercised control over Snopes Media Group's property.

117.     Cross-Defendants intentionally and substantially interfered with Snopes Media Group's property by preventing Snopes Media Group from having access to its property, including without limitation, the Snopes.com website's source code and databases, without Snopes Media Group's consent.

118.     Further, Cross-Defendants intentionally and substantially interfered with Snopes Media Group's property by refusing to return its property, including without limitation, the Snopes.com website's source code, databases, and email accounts, without Snopes Media Group's consent.

24

119.    As a direct and proximate result of Cross-Defendants' acts and conduct as alleged above and below, Snopes Media Group has suffered and will continue to suffer damages, in an amount to be proved at trial.

120.    Cross-Defendants' acts and conduct as alleged above and below was done with the intention of depriving Snopes Media Group of its property, including without limitation, the Snopes.com website's source code, databases, and email accounts, and was despicable conduct that subjected Snopes Media Group to cruel and unjust hardship in conscious disregard of Snopes Media Group's rights, so as to justify an award of exemplary and punitive damages.

### SEVENTH CAUSE OF ACTION

**(Violation of Penal Code § 496 against all Cross-Defendants)**

121.    Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

122.    Cross-Defendants misappropriated, embezzled, and stole money from Snopes Media Group, including without limitation, advertising revenues associated with the Snopes.com website, and transferred the money to Cross-Defendants.  The money was stolen or obtained in a manner constituting theft or extortion.

123.    Cross-Defendants knew the money was misappropriated, embezzled, stolen, or otherwise obtained in a manner constituting theft or extortion, but nonetheless received, concealed, and withheld the money from Snopes Media Group, and aided in obtaining, concealing, and withholding the money in violation of California Penal Code section 496.

124.    Further, Snopes Media Group's property, including without limitation, the source code, databases, and email accounts, was stolen or obtained in a manner constituting theft or extortion.

125.    Cross-Defendants knew Snopes Media Group's property was stolen or obtained in a manner constituting theft or extortion, but nonetheless received, concealed, withheld, and blocked Cross-Defendants from the property, and aided in obtaining, concealing, and withholding the property in violation of California Penal Code section 496.

126.    As a result of Cross-Defendants' acts and conduct as alleged above and below, Snopes Media Group suffered and will continue to suffer damages, in an amount to be proved at trial.

127.    Pursuant to California Penal Code section 496(c), which provides that any person who has been injured by a violation of Penal Code section 496(a) "may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees", Snopes Media Group is entitled to three times the amount of its actual damages, costs of suit, and attorneys' fees, in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duty against Proper Media and Roes 1 through 50)

128.    Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

129.    At all relevant times, an agency relationship existed between Snopes Media Group on the one hand, and Proper Media and Roes 1 through 50 on the other hand.  The GSA further discloses an agency relationship between Snopes Media Group and Proper Media, where Proper Media is the agent.

130.    At all relevant times, Proper Media and Roes 1 through 50 owed fiduciary duties to Snopes Media Group both by virtue of the agency relationship and as a result of the statements and actions of Proper Media, Roes 1 through 50, and their agents which resulted in the formation of a relationship of trust and confidence and imposed fiduciary duties, including without limitation, a duty to act in good faith and in Snopes Media Group's best interests, to exercise independent professional judgment and undivided loyalty, to refrain from pursuing interests adverse to Snopes Media Group, and to make full disclosure of all known information that was important and material to Snopes Media Group's interests and generally.

131.    As a result of those fiduciary duties, Proper Media and Roes 1 through 50 were obligated to use reasonable care, diligence and skill in its work on behalf of Snopes Media Group including, without limitation, handling of revenues received from advertisements procured through the Snopes.com website.

132.     Proper Media and Roes 1 through 50 also had a duty not to withhold and secretly divert Snopes Media Group's share of advertising revenue procured from the Snopes.com website, and a duty not to conceal the receipt and movement of this revenue.

133.     Proper Media and Roes 1 through 50 breached their duties of care, loyalty, and disclosure to Snopes Media Group by engaging in, participating in, aiding and abetting, and facilitating unlawful actions, or omissions, including the specific acts/omissions alleged in above.

134.     At times relevant herein prior to termination of the GSA, Snopes Media Group relied upon and trusted Proper Media and Roes 1 through 50 to provide the services it agreed to perform under the established agency relationship.

135.     At times relevant herein prior to termination of the GSA, Proper Media and Roes 1 through 50 failed to act in good faith, in the best interests of Snopes Media Group, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

136.     On information and belief, Proper Media and Roes 1 through 50 breached their fiduciary obligations to Snopes Media Group by, among other things:

    a.     Ignoring the various provisions of the GSA regarding payment to Snopes Media Group, including the requirement that Snopes Media Group receive payment of its share of advertising revenue from Proper Media in a timely manner;

    b.     Providing inaccurate and noncompliant "invoices" to Snopes Media Group regarding the advertising revenues procured on the Snopes.com website;

    c.     Withholding advertising revenue owed and belonging to Snopes Media Group;

    d.     Double-booking improper expenses and withholding advertising revenue owed to Snopes Media Group under the GSA for the double-booked expenses;

    e.     Wrongfully diverting funds owed and belonging to Snopes Media Group for personal use or self-serving purposes, or for the benefit of other Cross-Defendants;

    f.     Making payments under and in connection with the SPA and the Promissory Note using monies owed and belonging to Snopes Media Group;

g.      Making payments to other clients of Proper Media using monies owed and belonging to Snopes Media Group;

h.      Unilaterally attempting to change payment terms without Snopes Media Group's knowledge and consent;

i.      Embezzling and converting advertising revenue owed to Snopes Media Group;

j.      Refusing to release control of the Snopes.com website;

k.      Withholding advertising revenue owed to Snopes.com in order to coerce favorable modifications, agreements, and/or continued business for Cross-Defendants;

l.      Disclosing Snopes Media Group's confidential and proprietary information to other parties;

m.      Failing to disclose and suppressing material information regarding the use of Snopes Media Group's share of advertising revenue;

n.      Conspiring with other Cross-Defendants and third parties to harm the interests of Snopes Media Group;

o.      Conversion of Snopes Media Group's property; and

p.      Failing to exercise the duties of care and loyalty required of agents.

137.      As a direct and proximate cause of Proper Media and Roes 1 through 50's breach of their fiduciary duties, Snopes Media Group suffered and will continue to suffer damages, including lost profits and other consequential damages in an amount to be proved at trial.

138.      By virtue of the breach of fiduciary duty, Snopes Media Group has been deprived of the use of its money and property and the inclusion of interest in any award arising from the breach of fiduciary duty is necessary to make Snopes Media Group whole.

139.      Snopes Media Group is informed and believes and thereon alleges that in committing the aforesaid breaches of fiduciary duty, Proper Media and Roes 1-50 acted fraudulently, maliciously and oppressively and that their conduct was despicable by community standards in that Proper Media and Roes 1-50 put their interests ahead of Snopes Media Groups' interests, used and/or misappropriated Snopes Media Group's monies and concealed their wrongful

28

conduct from Snopes Media Group, justifying an award of punitive and exemplary damages pursuant to California Civil Code section 3294 in an amount necessary to punish Proper Media and Roes 1-50.

140.    Snopes Media Group is entitled to disgorgement of all gains, profits, advantages, and unjust enrichment derived by Proper Media and Roes 1 through 50 for their breach of fiduciary duties.

## NINTH CAUSE OF ACTION

### (Aiding and Abetting in the Breach of a Fiduciary Duty against all Cross-Defendants)

141.    Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

142.    On information and belief, Cross-Defendants each aided and abetted, encouraged, and rendered substantial assistance to one another in order to accomplish the wrongful acts complained of herein, including Proper Media's breach of its fiduciary duties to Snopes Media Group.   On information and belief, in aiding and abetting and substantially assisting the commission of the acts complained of, Cross-Defendants acted with an awareness of their wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct and scheme alleged herein.   In performing these acts, Cross-Defendants either acted as agents of the other Cross-Defendants, or the other Cross-Defendants ratified such acts, or both, and benefited financially from their scheme.

143.    As a direct and proximate cause of conduct alleged herein including Cross-Defendants' aiding and abetting, encouraging, and rendering substantial assistance to the receipt of funds belonging to Snopes Media Group, Snopes Media Group suffered and will continue to suffer damages, including lost profits and other consequential damages in an amount to be proved at trial.

144.    In addition, the wrongful acts of Cross-Defendants were done maliciously, oppressively, and with the intent to mislead and defraud, and Snopes Media Group is entitled to punitive and exemplary damages to be ascertained according to proof, which is appropriate to punish and set an example of Cross-Defendants.

145.     Snopes Media Group is entitled to disgorgement of all gains, profits, advantages, and unjust enrichment derived by Cross-Defendants for aiding and abetting the breach of fiduciary duty.

## TENTH CAUSE OF ACTION

### (Fraudulent Conveyances against all Cross-Defendants)

146.     Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

147.     Snopes Media Group is a creditor of Cross-Defendants, and each of them, and Cross-Defendants, and each of them, is a debtor of Snopes Media Group within the meaning of Civil Code section 3439.01, *et seq*.

148.     Snopes Media Group is informed and believes, and on that basis alleges, that Cross-Defendants' transfers of funds, and each of them, as alleged hereinabove, constitute transfers of property within the meaning of Civil Code sections 3439.01, *et seq.*; that reasonably equivalent value was not received for those transfers, or any of them—including transfers of funds to Barbara Mikkelson—or that other relevant circumstances as set forth in Civil Code section 3439.04, apply; that the transfers, and each of them, were made with the intent to hinder, delay, or defraud Cross-Complainant within the meaning of Civil Code section 3439.04; and that the transfers were made at a time when Cross-Defendants, and each of them, were insolvent, or that Cross-Defendants, and each of them, became insolvent as a result of the transfers within the meaning of Civil Code section 3439.05.

149.     Snopes Media Group seeks to set aside and cancel Cross-Defendants' referenced fraudulent transfers of funds, and each of them.

150.     As a proximate result of the wrongful acts of Cross-Defendants, and each of them, Snopes Media Group has suffered damages in amounts according to proof at trial.

151.     Snopes Media Group is informed and believes, and on that basis alleges, that Cross-Defendants, and each of them, made the referenced transfers maliciously and in an effort to defraud and oppress Snopes Media Group, as creditor.  Snopes Media Group is therefore entitled to the recovery of punitive damages in an amount subject to proof at time of trial.

30

**ELEVENTH CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200 *et seq*.**

**against all Cross-Defendants)**

152.     Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

153.     Cross-Defendants' conduct was and is unlawful, unfair, and fraudulent, constituting unfair competition and unfair business practices under California Business and Professions Code sections 17200 *et seq*.  Cross-Defendants' acts include, without limitation, refusing to remit revenues intended for Snopes Media Group in their possession; refusing to use commercially reasonable efforts to obtain payments from advertisers that are owed to Snopes Media Group; holding hostage the Snopes.com website, infrastructure information and files for which Snopes Media Group is the legal owner; falsely publicizing that Snopes Media Group was a client of Proper Media after termination of the GSA to sell advertising; falsely publicizing that Proper Media was an owner of Snopes Media Group; and other acts and omissions as set forth herein. This unlawful, unfair, and fraudulent conduct constitutes unfair competition and unlawful business practices relative to Snopes Media Group as well as others in the industry.  Among other things, the acts alleged herein have effectively prevented Snopes Media Group from doing business with competitors of Proper Media, and the efforts of Cross-Defendants to try to paralyze Snopes Media Group appear designed to prevent Snopes Media Group from doing business with Proper Media's competitors and to discourage those competitors from doing business with Snopes Media Group.

154.     As a result of their conduct, Cross-Defendants have been unjustly enriched in an amount subject to proof at trial, and Snopes Media Group is entitled to restitution and disgorgement remedies.

155.     Snopes Media Group is entitled to injunctive relief and other equitable remedies. Snopes Media Group has suffered irreparable harm as a result of Cross-Defendants' activities and will continue to suffer irreparable injury that cannot be adequately remedied at law unless and until enjoined and restrained by this Court.

## **TWELFTH CAUSE OF ACTION**

### **(Declaratory Relief against all Cross-Defendants)**

156.     Cross-Complainant incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

157.     A dispute has arisen between the parties with respect to Cross-Defendants' alleged ownership interests in Snopes Media Group and the Snopes.com website, and rights attendant thereto.

158.     Snopes Media Group desires a judicial determination of the parties' rights and duties concerning Snopes Media Group and the Snopes.com website, including a declaration that:

a.     Proper Media is not entitled to withhold infrastructure information regarding the Snopes.com website from Snopes Media Group;

b.     Proper Media is not entitled to withhold the codebase for the Snopes.com website from Snopes Media Group;

c.     Proper Media is not entitled to withhold access to the Snopes.com website domain and repositories from Snopes Media Group;

d.     Proper Media is not entitled to withhold access to Snopes Media Group's email, Slack communications, and Asana project management data messages from Snopes Media Group;

e.     Proper Media is not entitled to withhold access to property owned by Snopes Media Group;

f.     The GSA was terminated effective of May 7, 2017;

g.     Proper Media does not possess an ownership interest in Snopes Media Group;

h.     Schoentrup obtained a twenty percent (20%) interest in Snopes Media Group from Barbara Mikkelson in his individual capacity, and not for the benefit of Proper Media;

i.     Richmond obtained a twenty percent (20%) interest in Snopes Media Group from Barbara Mikkelson in his individual capacity, and not for the benefit of Proper Media;

1    j.    Dunn obtained a three and 34/100 percent (3.34%) interest in Snopes Media

2 Group from Barbara Mikkelson in his individual capacity, and not for the benefit of Proper Media.

3    k.    Schoentrup does not hold a position on Snopes Media Group's board of

4 directors; and

5    l.    The decision of how and where to host the Snopes.com website is within

6 Snopes Media Group's sole discretion.

## PRAYER FOR RELIEF

8    WHEREFORE, Cross-Complainant prays for judgment as follows:

9    1.    For actual damages according to proof;

10    2.    For special damages according to proof;

11    3.    For consequential damages according to proof;

12    4.    For treble damages according to proof;

13    5.    For an accounting to determine, *inter alia*, advertising revenues invoiced or to be

14 invoiced to advertisers during the term of the GSA and revenues owed to Snopes Media Group

15 under the GSA;

16    6.    For restitution and/or disgorgement of ill-gotten gains;

17    7.    For injunctive relief enjoining Cross-Defendants from engaging in acts of unfair

18 competition and unlawful business practices;

19    8.    Imposition of a constructive trust on Cross-Defendants, as constructive trustees, for

20 the benefit of Snopes Media Group, with respect to any assets or property acquired with funds

21 withheld, owed, and/or belonging to Snopes Media Group, including, without limitation, the shares

22 purchased from Barbara Mikkelson by Schoentrup, Richmond, and Dunn, and the Promissory

23 Note;

24    9.    That the Court impose an equitable lien on Cross-Defendants, and each of them, to

25 prevent Cross-Defendants from retaining and enjoying the benefits of any assets or property

26 acquired with funds withheld, owed, and/or belonging to Snopes Media Group, including, without

27 limitation, the shares purchased from Barbara Mikkelson by Schoentrup, Richmond, and Dunn, and

28 the Promissory Note;

10. For a judicial declaration that:

    a.    Proper Media is not entitled to withhold infrastructure information regarding the Snopes.com website from Snopes Media Group;

    b.    Proper Media is not entitled to withhold the codebase for the Snopes.com website from Snopes Media Group;

    c.    Proper Media is not entitled to withhold access to the Snopes.com website domain and repositories from Snopes Media Group;

    d.    Proper Media is not entitled to withhold access to Snopes Media Group's email, Slack communications, and Asana project management data messages from Snopes Media Group;

    e.    Proper Media is not entitled to withhold access to property owned by Snopes Media Group;

    f.    The GSA was terminated effective of May 7, 2017;

    g.    Proper Media does not possess an ownership interest in Snopes Media Group;

    h.    Schoentrup obtained a twenty percent (20%) interest in Snopes Media Group from Barbara Mikkelson in his individual capacity, and not for the benefit of Proper Media;

    i.    Richmond obtained a twenty percent (20%) interest in Snopes Media Group from Barbara Mikkelson in his individual capacity, and not for the benefit of Proper Media;

    j.    Dunn obtained a three and 34/100 percent (3.34%) interest in Snopes Media Group from Barbara Mikkelson in his individual capacity, and not for the benefit of Proper Media;

    k.    Schoentrup does not hold a position on Snopes Media Group's board of directors; and

    l.    The decision of how and where to host the Snopes.com website is within Snopes Media Group's sole discretion.

34

1  11.  For interest at the maximum legally permissible rate from the date of the initial

2 breach(es);

3  12.  For punitive and exemplary damages in an amount sufficient to punish Cross-

4 Defendants for their wrongful conduct;

5  13.  For attorney fees;

6  14.  For costs of suit incurred herein; and

7  15.  For such other and further relief as the Court deems just and proper.

8

9 DATED:  October 10, 2019    PROCOPIO, CORY, HARGREAVES &
               SAVITCH LLP

10

11

12           By: _____
             Paul A. Tyrell

13             Ryan C. Caplan
             P. Jacob Kozaczuk

14             Attorneys for Defendant/Cross-Complainant,
             SNOPES MEDIA GROUP, INC., formerly

15             known as and having appeared as Bardav Inc

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED AND SUPPLEMENTAL CROSS-COMPLAINT

EXHIBIT "A"



## GENERAL SERVICES AGREEMENT

| Publisher: Bardav, Inc., (Snopes) | Jurisdiction of Organization: | |
|---|---|---|
| URL of Publisher: www.snopes.com | | |
| Address: | City: | State: |
| Country: | Zip: | Phone: | |
| Contact Person: David Mikkelson | | |
| Phone: | | |
| E-mail: | | |

| Agent: Proper Media, LLC | Jurisdiction of Organization: California | |
|---|---|---|
| Address:<br>4155 Mission Blvd. | City:<br>San Diego | State:<br>CA |
| Country: USA | Zip: 92109 | Phone: (509) 995-5654 | |
| Contact Person: Drew Schoentrup | | |
| Phone: (509) 995-5654 | | |
| E-mail: drew@proper.io | | |

WHEREAS, The Publisher is the owner and/or operator of Snopes.com (the "Website"); and

WHEREAS, The Publisher wishes to retain the Agent to provide content and website development services as well as advertising sales and trafficking, as set forth in this Agreement (the "Agreement").

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Agent and the Publisher (each a "Party" and, collectively, the "Parties"), intending to be legally bound, do hereby agree as follows:

| Effective Date:<br><br>August 11, 2015 | "Term" means the period commencing upon the effective date and ending upon the termination of this agreement in accordance with Section 7. |
|---|---|



In consideration of the terms and conditions set forth herein, the Parties hereby agree as follows:

## 1. Website Content

1.1. Staff: At Publisher's discretion, Agent shall recruit, train and manage a staff of writers, researchers, and editors (collectively the "Staff"), all of whom shall be employees or independent contractors of Agent, not of Publisher, for the purpose of generating high quality, relevant articles ("Content") and publishing such Content to the Website. It is anticipated that the Content will include news related to current events as well as research and fact checks related to rumors and myths, both viral and historical.

1.2. Editorial Guidelines: Publisher and Agent shall work together to establish editorial guidelines for the Content. Agent will be responsible to enforce these guidelines through the Content Management System described in Section 2.1 and management of the Staff.

1.3. Disputes: In the event a dispute arises between Publisher and Agent regarding the Staff, Content or Editorial Guidelines, Publisher will retain sole discretion on how to resolve such a dispute.

## 2. Infrastructure

2.1. Content Management: Agent shall extend Publisher's existing WordPress Content Management System, incorporating plugins and tools as necessary, to support and enhance the Staff's ability to develop and publish Content.

2.2. Design: The Website's current design spans a number of page templates and themes. Agent shall design a mobile-first, responsive, unified theme and redevelop the various templates to conform to this theme. Publisher will retain control over the final theme and templates to be used on the live version of the Website.

2.3. Servers: Agent shall consolidate Publisher's existing server configuration to use load-balanced Linux servers paired with a MySQL database server and a content delivery network. It is envisioned that the consolidation will increase the speed, redundancy, and efficiency of the Website, while at the same time lowering the corresponding server related expenses. Further, Agent shall be responsible to maintain the servers described herein and to make all reasonable efforts to maximize up-time, speed and efficiency for the Website.

2.4. Domains: The Website currently spans multiple domains, including snopes.com, m.snopes.com and new.snopes.com. Utilizing practices that will preserve existing Search Engine Optimization and link structures, Agent shall merge all domains associated with the Website to snopes.com. Additionally, Agent shall migrate hard-coded content currently associated with these domains to the Content Management System described in Section 2.1.

## 3. Advertisements

3.1. Representation: Agent shall represent Publisher with respect to the placement of advertisements on the Publisher's Website, including without limitation, banner and video advertisements, "native" and in-content ads, the solicitation of Website advertising purchases directly from Advertisers (including Exchanges, Agencies, Demand Side Partners, Brands, etc.) for placement on the Website, and the reporting of the results therefrom to Advertisers and the Publisher. In connection with the foregoing, Agent shall provide trafficking and reporting to Publisher.

3.2 Online Tracking System: Agent shall maintain an online tracking system, which, among other things, identifies the revenue earned, impressions served, and average CPM on a daily basis. Agent shall use its best efforts to ensure that the information in its online tracking system is accurate.

3.3 License Grant: Publisher hereby grants Agent the primary exclusive right to sell and market all advertisements on the Website during the term of this agreement. Publisher maintains the right to refuse to run any ad type or placement.

3.4. Placement and Management: Agent shall place and manage all advertisements through its ad-server and will be responsible for all aspects of ensuring advertisements are served properly, on time, and appropriately targeted.

CONFIDENTIAL

3.5. Agent Commission Rate: The Agent shall pay to Publisher all amounts invoiced or to be invoiced by the Agent to advertisers for advertising placed on the Website up to $85,000 per month (the "Baseline") and fifty (50) percent of all amounts above the Baseline, calculated on a monthly basis ("Net Revenue").

3.6. ComScore Assignment: Publisher shall sign the Traffic Assignment Request for ComScore Inc. Reporting which is attached hereto as Exhibit "A."

3.7. Other than the commissions in this Section, and the expense reimbursements in Section 5, Agent shall not be entitled to any fixed compensation for its services.

## 4. Billing & Payment

4.1. Agent's Obligations: Agent shall invoice and collect all advertising revenue from Advertisers for content sold by Agent for placement on the Website.

4.2. Collections: Agent will use commercially reasonable efforts to collect any monies owed to Agent by Advertisers.

4.3. Payment to Publisher: Regardless of whether the Agent has been paid by all Advertisers, the Agent shall pay Publisher the Net Revenue for each month no later than forty-five (45) days from the end of the month for which advertising was run on the Website provided that that the 45th day falls on a weekday and, if it falls on a weekend, the next business day. Publisher is responsible for all sales taxes, use taxes and any other similar taxes imposed by any federal, state or local governmental entity on the transactions contemplated by this Agreement, excluding taxes based upon Agent's net income.

4.4. Revenue Derived by Fraud: Agent shall not be liable for any payment based on (a) any fraudulent impressions generated by any person, bot, automated program or similar device or for fraudulent clicks similarly generated on any ad, as reasonably determined by Agent; (b) ads delivered to end users whose browsers have the ads disabled; (c) or impressions co-mingled with a significant number of fraudulent impressions or fraudulent clicks described in (a) above, or as a result of other breach of this Agreement by Publisher for any applicable pay period. Agent reserves the right to withhold in the event of any breach of this Agreement.

## 5. Additional Expenses

Publisher's Expenses:

5.1. Staff: Expenses paid directly to the Staff described in Section 1.1. Agent shall be responsible for making such payments to the Staff and deducting this amount from the Net Revenue.

5.2. Infrastructure: A $2,500 monthly fee for the Infrastructure described in Section 2.

5.3. Budget: Agent shall provide to Publisher a monthly budget of all expenses for Publisher's prior approval and shall not exceed this budget by more than 10% without express written approval of Publisher.

Agent's Expenses:

5.4 Agent shall be responsible to pay for all expenses incurred from the Infrastructure described in Section 2 in excess of Publisher's fee set forth in Section 5.2, including expenses for Servers and expenses incurred as a result of hiring third-party independent contractors for website related development.

## 6. Marketing/Public Relations

6.1. Agent may refer to the Publisher and the Website in Agent's corporate web site, press releases and marketing collateral.

CONFIDENTIAL

## 7. Term & Renewal

7.1. Term: This Agreement shall remain in effect for a period of one (1) year from the date hereof (the "Initial Term"). Either party may terminate this Agreement by providing the other party with sixty (60) days written notice, with or without cause, prior to the expiration of the Initial Term. Unless previously terminated by notice as provided above, at the end of the Initial Term this Agreement shall renew for additional one (1) month terms (each a "Renewal Term") unless and until either party provides the other party with written notice of termination, with or without cause, at least sixty (60) days prior to renewal.

7.2. Termination by Publisher: Publisher may terminate this Agreement by written notice to Agent if any of the follow events occur:

(i) Agent fails to pay any amount due to Publisher within ten (10) days after Publisher gives Agent written notice of such nonpayment; or

(ii) Agent is in material breach of any term, condition, or provision of this Agreement and such breach is not cured within ten (10) days after Publisher gives Agent notice of such breach.

7.3. Termination by Agent: Agent may terminate this Agreement by written notice to Publisher if any of the follow events occur:

(i) Publisher is in material breach of any term, condition, or provision of this Agreement and such breach is not cured within ten (10) days after Agent gives Publisher notice of such breach.

## 8. Right of First Refusal

8.1. Agent is hereby granted a right of first refusal to purchase all or a portion of the Website for the same price and on the same terms and conditions as Publisher is prepared to accept from a third party buyer at any time during the during the Initial Term or a Renewal Term of this Agreement. Publisher shall notify Agent of the receipt of an offer to purchase the Website that Publisher is prepared to accept, prior to accepting the same, and Agent shall have thirty (30) days after receipt thereof to notify Publisher that Agent elects to exercise its right of first refusal and purchase the Website on such terms and conditions.

## 9. Representations, Warranties and Covenants

9.1. The Publisher hereby represents, warrants and covenants that: (i) all of the information provided by Publisher to enter into this Agreement is correct and current; (ii) Publisher is the owner of the Website or legally authorized to act on behalf of the owner of such Website for the purposes of this Agreement; (iii) use of the Website by Agent or any of Agent's Advertisers will not infringe upon any third party intellectual property rights, including, without limitation, United States or foreign trademarks, patents, copyrights, rights of publicity, moral rights, music performance or other music-related rights, or any other third-party right; (iv) the Website does not and will not contain any content which violates any applicable law or regulation, and (v) Publisher has all necessary rights and authority to enter into this Agreement and place advertising, and authorize the placement of advertising on the Website.

## 10. Indemnification

10.1. Each Party and its successors and assigns shall indemnify, defend, and hold harmless the other Party, its affiliated companies, and their successors and assigns from and against any and all: demands, judgments, losses, costs, expenses (including, but not limited to, the cost of obtaining an opinion of counsel in response to a notice of potential infringement of the rights of any other person or organization), obligations, liabilities, damages, fines, recoveries and deficiencies, including without limitation interest, penalties, reasonable attorneys' fees and costs (collectively, "Losses") in connection with a claim, action, suit or proceeding made, brought or commenced by a third party other than an affiliated company of the indemnified Party (each, a "Claim"), that any such party may incur or suffer, which arise, result from, or relate to the breach by the Indemnifying Party of any of its representations, warranties or covenants set forth in this Agreement.

CONFIDENTIAL

# PROPER

## 11. Liability

11.1. No Liability. AGENT IS NOT AND SHALL NOT BE LIABLE FOR THE CONTENT OF THE ADVERTISING SUPPLIED BY ADVERTISERS. AGENT MAKES NO WARRANTY OF ANY KIND WITH RESPECT TO THE SERVICES PROVIDED UNDER THIS AGREEMENT, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT.

## 12. General

12.1. Waiver: Failure by either Party to enforce any provision of this Agreement shall not be deemed a waiver of future enforcement of that or any other provision. Any waiver, amendment or other modification of any provision of this Agreement shall be effective only if in writing and signed by the Parties. Failure by either Party to enforce any provision of this Agreement shall be effective only if in writing and signed by both Parties.

12.2. Severability: If any provision of this Agreement is held by final judgment of a court of competent jurisdiction to be invalid, illegal or unenforceable, such invalid, illegal or unenforceable provision shall be severed from the remainder of this Agreement, and the remainder of this Agreement shall be enforced unless the severance of the unenforceable provision renders the agreement commercially unreasonable for either party.

12.3. Binding Effect. This agreement inures to the benefit of and is binding upon the parties, their respective successors in interest and their assigns by way of merger, sale, acquisition, transfer of substantially all of the transferring party's assets, stock or business, including the Website.

12.4. Choice of Law: This Agreement is governed by the laws of the State of California.

12.5. Entire Agreement: This is the entire agreement of the parties relating to this subject and it supersedes all other commitments, negotiations and understandings.

CONFIDENTIAL

Bardav, Inc.                    Print Name and Title:        Date:

By:

Proper Media, LLC:              Print Name and Title:        Date:

By: _____          Drew - chostup    A  - ll
                                                           2015
                               Member

CONFIDENTIAL

### Exhibit A

Traffic Assignment Request for comScore, Inc., Reporting

I, David Mikkelson, Owner of Bardav, Inc. ("Bardav"), certify that Bardav is the majority owner of www.snopes.com and enjoys a legitimate business relationship with Proper Media, LLC, justifying the aggregation of this traffic, and requests assignment of the traffic to these URLs from Bardav to Proper Media, LLC in the comScore Inc. syndicated audience measurement reports.

In requesting this assignment, I understand that Bardav will not receive credit for traffic to these URLs in the syndicated audience reports for those entities where Proper Media, LLC elects to include these URLs. These URLs may not be assigned to any other company during the term of the Agreement between Bardav and Proper Media, LLC. In the event that comScore Inc. receives multiple requests for assignment of the same URL, comScore Inc. will review and honor the request most recently received.

I understand that this request is subject to review by comScore Inc. to determine that the assignment of traffic is consistent with comScore Inc. reporting rules. comScore Inc. retains the right in its sole discretion to refuse the requested assignment if such assignment would in fact be inconsistent with comScore Inc. reporting rules. If necessary, comScore Inc. may require additional documentation to verify ownership of the URLs before granting this request. For example, if Bardav is not the named registrant of the URLs listed below, Bardav must provide documentation demonstrating that the registrant of those URLs is (1) owned or (2) employed by Bardav.

I understand that acceptance of this letter by comScore Inc. imposes no legal liability whatsoever on comScore Inc. for damages, whether actual, incidental or consequential, relating to the maintenance or reporting of the attached URLs. I understand that Bardav is fully responsible for timely notification to comScore Inc. of any updates to the list below, including, but not limited to, changes in ownership of any of those URLs.

URLs

www.snopes.com

_____          _____
Signature                         Name


_____          _____
Title                             Company


_____
Date

CONFIDENTIAL

# EXHIBIT "B"

DocuSign Envelope ID: FB33DA4B-2C05-4EDA-AC2F-17270597444B

# SATISFACTION, TERMINATION AND RELEASE AGREEMENT

This Satisfaction, Termination and Release Agreement (the "**Agreement**") is entered into October 4, 2017 (the "**Effective Date**") by and between Barbara Mikkelson ("**Creditor**") and Proper Media, LLC, Drew Schoentrup, Christopher Richmond, and Tyler Dunn (each a "**Debtor**" and collectively the "**Debtors**"). Creditor and Debtors are each referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

WHEREAS, Creditor and Debtors were previously involved in a dispute regarding distribution of Bardav, Inc.'s ("**Bardav**") net income to Creditor after July 1, 2016, for the period between January 1, 2016, and June 30, 2016 (the "**2016 Dispute**");

WHEREAS, Creditor and Debtors entered into a Settlement Agreement and Release on October 21, 2016, (the "**Settlement Agreement and Release**") resolving the 2016 Dispute;

WHEREAS, the Parties agree and concede that, as of the Effective Date, the current outstanding principal debt remaining under the Settlement Agreement and Release is $159,008.60 (the "**Debt**");

WHEREAS, the Parties have agreed and consented to early payment, by close of business on the Effective Date, of the Debt in full satisfaction of Debtors' obligations to Creditor under Section 1 of the Settlement Agreement and Release; and

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by the Parties), the Parties hereby agree as follows:

1. Satisfaction, Termination and Release.

   a. Creditor consents to early payment of the Debt in full by Debtors.

   b. Creditor acknowledges and agrees that payment of the Debt in full satisfies Debtors' obligations under Section 1 of the Settlement Agreement and Release, including, without limitation, Debtor' obligations to pay the interest Creditor would have received had the Debt not been paid early, as well as all other amounts owed to Creditor under Section 1 of the Settlement Agreement and Release. As such, Creditor shall have no further rights with respect to Section 1 of the Settlement Agreement and Release and shall have no further rights to collect or otherwise enforce the Debt, and Debtors shall have no further obligations with respect to Section 1 of the Settlement Agreement and Release.

   c. Creditor hereby releases Debtors of all obligations to Creditor under Section 1 of the Settlement Agreement and Release.

BM003783

DocuSign Envelope ID: FB33DA4B-2C05-4EDA-AC2F-17270597444B

d. Upon receipt and subsequent clearance of the agreed upon payment, each Party releases all other Parties from any further claim or liability under Section 1 of the Settlement and Release Agreement.

2. Representations and Warranties.

   a. Each Party represents and warrants that the representing Party has authority to enter into this Agreement on behalf of him/her/itself or his/her/its respective organization.

   b. Creditor represents and warrants that she has not assigned any portion of the claims released under this Agreement to any third party.

   c. Each Party warrants and represents that, in executing this Agreement, the Party has had the reasonable opportunity to rely on legal advice from an attorney of the Party's choice, so that the terms of this Agreement and its consequences has been or could have been completely read and explained to the Party by an attorney, and that the Party has either done so, or freely chosen not to do so, and the Party fully understands the terms of this Agreement.

3. Assumption of Risk. The Parties fully understand that if any fact with respect to any matter covered by this Agreement is found hereafter to be other than, or different from, the facts now believed by any of the Parties to be true, each of the Parties expressly accepts and assumes the risk of such possible differences in fact and agrees that the Release remains effective notwithstanding any such difference in fact.

4. Successors; Assignment. This Agreement shall be binding upon and shall inure to the benefit of each Party and its respective successors, assigns, executors and administrators. Except as expressly provided for herein, this Agreement and the rights and obligations hereunder shall not be assignable without the prior written consent of the other Parties hereto.

5. Counterparts. This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

6. Choice of Law, Jurisdiction and Venue. This Agreement is to be governed by and construed pursuant to the laws of the State of Nevada, and the Parties mutually agree that no other jurisdiction has a greater interest in determining any issue arising out of the Agreement. Jurisdiction and venue for all claims related to this Agreement shall be in Clark County, State of Nevada, and each Party submits to personal jurisdiction within the same. By this Agreement, the Parties, and each of them, waive any right or argument that venue within Clark County is improper or inconvenient.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date as set forth below.

BM003784

DocuSign Envelope ID: FB33DA4B-2C05-4EDA-AC2F-17270597444B

DocuSigned by:

*Barbara Mikkelson*

Barbara Mikkelson

DocuSigned by:

*Drew Schoentrup*

Proper Media, LLC
Drew Schoentrup, President

DocuSigned by:

*Drew Schoentrup*

Drew Schoentrup

DocuSigned by:

*Christopher Richmond*

Christopher Richmond

DocuSigned by:

*Tyler Dunn*

Tyler Dunn

BM003785

1

## PROOF OF SERVICE

2      I am a resident of the State of California, over the age of eighteen years, and not a party to

3   the within action.  My business address is PROCOPIO, CORY, HARGREAVES & SAVITCH

4   LLP, 525 B Street, Suite 2200, San Diego, CA 92101.  On October 10, 2019, I served the within

5   document(s):

6   **THIRD AMENDED AND SUPPLEMENTAL CROSS-COMPLAINT for: (1) BREACH OF**
    **CONTRACT; (2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND**
7   **FAIR DEALING; (3) ACCOUNTING; (4) VIOLATION OF THE CALIFORNIA**
    **COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT;**
8   **(5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**
    **ADVANTAGE; (6)   CONVERSION; (7)  VIOLATION OF PENAL CODE § 496;**
9   **(8) BREACH OF FIDUCIARY DUTY; (9) AIDING AND ABETTING;**
    **(10) FRAUDULENT CONVEYANCE (11) VIOLATIONS OF CALIFORNIA BUSINESS &**
10  **PROFESSIONS CODE SECTIONS 17200 et seq.; and (12) DECLARATORY RELIEF**

11

12  ☑   **BY E-MAIL OR ELECTRONIC SERVICE (via One Legal Online Court Services):** I
        served upon the designated recipients via electronic transmission through the One Legal system
13      on October 10, 2019.  Upon completion of said transmission of said documents, a certified
        receipt is issued to filing party acknowledging receipt by One Legal's system.  Once One Legal
14      has served all designated recipients, proof of electronic service is returned to the filing party.

15                          ## SEE ATTACHED SERVICE LIST

16

17  ☒   *(State)* I declare under penalty of perjury under the laws of the State of California that the
        foregoing is true and correct.

18  Executed on October 10, 2019, at San Diego, California.

19

20                                        _____
                                          Barbara Young

21

22

23

24

25

26

27

28

1

2

## SERVICE LIST

3

4
Matthew J. Hrutkay
Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101
(858) 868-0018
(917) 628-5625
matt.hrutkay@hrutkaylaw.com

5

6

7

8

9

Kimberly Howatt
Richard Sybert
Holly Heffner
Gordon & Rees LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
(619) 696-6700
khowatt@gordonrees.com
rsybert@grsm.com
hheffner@grsm.com

10
John S. Kyle
Jeffrey B. Harris
Laura Gantney
Kyle Harris LLP
450 B Street, Suite 1410
San Diego, CA 92101
619-600-0086
619-600-5144 fax
jharris@klhipbiz.com
jkyle@klhipbiz.com
lgantney@klhipbiz.com

11

12

13

14

15

Erin M. Hickey
Law Office of Erin M. Hickey
888 Prospect Street, Suite 200
La Jolla, CA  92037
858-263-2872
erin@hickey.law

16

17

18

19

20

21

22

23

24

25

26

27

28

2
PROOF OF SERVICE

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

Court of Appeal
Fourth Appellate District

**FILED ELECTRONICALLY**

*01/22/2020*

Kevin J. Lane, Clerk
By: Rita Rodriguez

CHRISTOPHER RICHMOND et al.,
Plaintiffs, Cross-Defendants and Appellants,
v.
DAVID MIKKELSON,
Defendant, Cross-Complainant and Respondent.
**D076375**
**San Diego County Super. Ct. No. 37-2017-00016311-CU-BC-CTL**

THE COURT:

Upon written request filed by appellants, the appeal filed on October 22, 2019, is DISMISSED and the remittitur is ordered to issue immediately. (Cal. Rules of Court, rule 8.244(c)(2).)

McConnell

_____

Presiding Justice

cc: Clerk of the San Diego Superior Court
All Parties

KEVIN J. LANE, Clerk of the Court of Appeal, Fourth Appellate District, State of California, does hereby Certify that the preceding is a true and correct copy of the Original of this document/order/opinion filed in this Court, as shown by the records of my office.

WITNESS, my hand and the Seal of this Court.

**01/22/2020**

KEVIN J. LANE, CLERK

By _____
Deputy Clerk

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

San Diego County Superior Court  -  Main
P.O. Box 120128
San Diego, CA 92112


RE:   CHRISTOPHER RICHMOND et al.,
      Plaintiffs, Cross-Defendants and Appellants,
      v.
      DAVID MIKKELSON,
      Defendant, Cross-Complainant and Respondent.
      **D076375**
      **San Diego County Super. Ct. No. 37-2017-00016311-CU-BC-CTL**

## * * * REMITTITUR * * *

I, Kevin J. Lane, Clerk of the Court of Appeal of the State of California, for the Fourth Appellate District, certify the attached is a true and correct copy of the original opinion or decision entered in the above-entitled case on January 22, 2020, and that this opinion or decision has now become final only as to the appeal filed on October 22, 2019.

_____ Appellant   ✔ Respondent to recover costs.
_____ Each party to bear own costs.
_____ Other (See Below)


Witness my hand and the seal of the Court affixed this January 22, 2020

KEVIN J. LANE, Clerk

By:   Rita Rodriguez, Deputy Clerk

cc:  All Parties (Copy of remittitur only, Cal. Rules of Court, rule 8.272(d).)



Court of Appeal No. D076375

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT, DIVISION ONE

CHRISTOPHER RICHMOND and
DREW SCHOENTRUP

Plaintiffs / Cross-Defendants /
Cross-Complainants / Appellants

v.

DAVID MIKKELSON

Defendant / Cross-Complainant /
Cross-Defendant / Respondent

Appeals from a Judgment and an Order of the
Superior Court of the State of California for San Diego County in
Case No. 37-2017-00016311-CU-BC-CTL
(and Consolidated Interpleader Case No. 37-2018-00004335-CU-MC-CTL)

The Honorable Richard S. Whitney

**APPELLANTS' OPENING BRIEF**

Matthew Hrutkay, Bar No. 297485
matt.hrutkay@hrutkaylaw.com
HRUTKAY LAW PC
600 West Broadway, Suite 700
San Diego, CA 92101
Phone: (858) 868-0018

Attorneys for Plaintiffs / Cross-
Defendants / Cross-Complainants /
Appellants
CHRISTOPHER RICHMOND and
DREW SCHOENTRUP

Document received by the CA 4th District Court of Appeal Division 1.

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

This is a certificate of interested entities or persons submitted on behalf of Appellants CHRISTOPHER RICHMOND and DREW SCHOENTRUP in the case number listed above.

The undersigned certifies that there are no interested entities or persons that must be listed in this Certificate under California Rules of Court, rule 8.208(e)(1) or (2).

Dated: February 25, 2020

_____
Matthew J. Hrutkay

Document received by the CA 4th District Court of Appeal Division 1.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED ENTITIES OR PERSONS ......... 2

TABLE OF CONTENTS .................................................... 3

TABLE OF AUTHORITIES ............................................... 6

APPELLANTS' OPENING BRIEF ....................................... 9

  I.   STATEMENT OF THE CASE ..................................... 9

  II.  STATEMENT OF APPEALABILITY ................................. 15

       A.   Interpleader Judgment ......................................... 15

       B.   Anti-SLAPP Order ............................................. 15

  III. STATEMENT OF FACTS ........................................... 16

       A.   Pre-Litigation Factual Background ..................... 16

           1.   Formation of Snopes and Proper .............. 16

           2.   Mikkelson Divorce Affects Snopes .......... 17

           3.   Members of Proper Purchase Barbara's
               Share ......................................................... 20

           4.   Respondent and Barbara Seek
               Intervention of the Dissolution Court
               Regarding a Dispute About Snopes .......... 22

           5.   Respondent Conspires Against
               Appellants to Harm Proper and Push
               Them Out of Snopes.................................. 23

       B.   Suit Against Respondent and Snopes Creates
           Chain Reaction of Follow-On Litigation and
           Cross-Claims........................................................ 24

           1.   Richmond, Schoentrup, and Proper's
               Lead Case Complaint and Initial
               Pleadings ................................................... 24

           2.   Mikkelson's Lead Case Cross-Complaint. 24

           3.   Green and Miller Lead Case Cross-
               Claims Against Proper and Appellants ..... 25

           4.   Snopes and Mikkelson Publicize the Case
               to Solicit Donations from the Public for
               Its Legal Fees Through GoFundMe .......... 26

           5.   Mikkelson Uses Control Over Snopes to
               Fill Vacant Board Seat and Fund
               Defendants' Legal Fees and Expenses...... 26

           6.   Respondent's Motion Pursuant to
               Corporate Code § 709 .............................. 29

Document received by the CA 4th District Court of Appeal Division 1.

7. Appellants' Third Amended Complaint and Respondent's Anti-SLAPP Motion .... 30
   a) Snopes Anti-SLAPP Motion ........... 33
   b) Mikkelson Anti-SLAPP Motion ..... 34
8. Trial Court's Order and Amended Order on Snopes Anti-SLAPP Special Motion to Strike ...................................... 35
9. Trial Court's Decision on Mikkelson Anti-SLAPP Special Motion to Strike ...... 38

C. Snopes Interpleader ............................. 41
   1. Pleadings and Cross-Complaints .............. 41
   2. Trial Court's Decision on Respondent's Interpleader MSJ ....................... 43

IV. ARGUMENT ........ ................................... 45

A. Anti-SLAPP Appeal ........................... 45
   1. Standard of Review and Legal Standard on Special Motion to Strike Pursuant to CCP § 425.16 ........................... 45
   2. The Trial Court Erred in Granting the Mikkelson Anti-SLAPP Motion .............. 45
   3. The Advancement Allegations Are Not Protected by CCP § 425.16 ...................... 47
      a) Respondent's Approvals of the Advancements Is Not in Furtherance of Speech or Petitioning on a Public Issue ........... 49
      b) Advancement Allegations Are Not Protected by CCP § 425.16 Because They Do Not Form the Basis of Any Remaining Claim ...... 53
   4. Appellants Can Show a Probability of Prevailing on the Merits ........................... 58

B. Interpleader Appeal ........................... 63
   1. Standard of Review .................................. 63
   2. The Trial Court Erred in Granting Respondent's Motion for Summary Judgment .................................. 63
   3. Multiple Material Issues of Fact Preclude Summary Judgment .................. 65

Document received by the CA 4th District Court of Appeal Division 1.

a)     Issue of Fact: Whether the MSA Is Enforceable Against Appellants . 67

b)     Issue of Fact: Whether the MSA Provides Respondent with a Right of First Refusal Over Sale of the Note ................................................ 69

c)     Issue of Fact: Whether the MSA Provides Respondent with the Right to Block the Sale of the Note 72

d)     Issue of Fact: Whether the Assignment of the Note Deprived Respondent of Authority ................ 74

4.     Even If the Note Security Interest Is "Part Of" the Share, It Can Be Severed from Other Elements of the Assignment Contract ..................................................... 75

V. CONCLUSION….. .................................................... 78

CERTIFICATE OF COMPLIANCE ................................................ 79

PROOF OF SERVICE VIA TRUEFILING ON THE PARTIES AND SUPREME COURT ................................................ 80

PROOF OF SERVICE VIA U.S. MAIL ON THE SUPERIOR COURT…… ................................................ 81

PROOF OF SERVICE – ELECTRONIC COURTESY COPY ON PARTIES IN THE UNDERLYING ACTION ................................ 82

Document received by the CA 4th District Court of Appeal Division 1.

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilar v. Atl. Richfield Co.* (2001)
  25 Cal.4th 826.................................................................63, 65, 66

*Alexander v. Codemasters Group Ltd.* (2002)
  104 Cal.App.4th 129.................................................................70

*Allergia, Inc. v. Bouboulis* (S.D. Cal. 2017)
  229 F.Supp.3d 1150 ...............................................................60, 61

*APSB Bancorp v. Grant* (1994)
  26 Cal.App.4th 926.....................................................................59

*Blackburn v. Brady* (2004)
  116 Cal.App.4th 670....................................................................45

*Braco v. Kearney Moto Park* (1995)
  37 Cal.App.4th 184.....................................................................65

*California Traditions, Inc. v. Claremont Liability Ins. Co.*
  (2011) 197 Cal.App.4th 410.......................................................66

*City of San Diego v. Haas* (2019)
  207 Cal.App.4th 472.............................................................63, 65

*Cole v. Town of Los Gatos* (2012)
  205 Cal.App.4th 749....................................................................66

*Davis v. Kiewit Pacific Co.* (2013)
  220 Cal.App.4th 358....................................................................65

*FilmOn.com Inc. v. DoubleVerify Inc.* (2019)
  7 Cal.5th 133 ....................................................................50, 51, 52

*Gaynor v. Bulen* (2018)
  19 Cal.App.5th 864..............................................................*passim*

Document received by the CA 4th District Court of Appeal Division 1.

**Page(s)**

**Cases**

*Greco v. Greco* (2016)
2 Cal.App.5th 810 ...................................................................48, 50, 58

*Hepp v. Lockheed-California Co.* (1978)
86 Cal.App.3d 714 .................................................................65, 72

*Jackson v. County of Los Angeles* (1997)
60 Cal.App.4th 171 .................................................................68

*Jeppson v. Ley* (2020)
44 Cal.App.5th 845 .................................................................52

*Koenig v. Warner Unified School Dist.* (2019)
41 Cal.App.5th 43 ..................................................................77

*Krieger v. Dennie* (1932)
123 Cal.App.Supp. 777 ...........................................................66

*MKB Management, Inc. v. Melikian* (2010)
184 Cal.App.4th 796 ...............................................................77

*Palm Springs Villas II Homeowners Association, Inc. v.
Perth* (2016)
248 Cal.App.4th 268 ...............................................................65

*Park v. Bd. of Trustees of Cal. State Univ.* (2017)
2 Cal.5th 1057.................................................................47, 48, 57

*Plate v. Sun-Diamond Growers* (1990)
225 Cal.App.3d 1115 .............................................................59, 60

*Rand Resources, LLC v. City of Carson* (2019)
6 Cal.5th 610 .........................................................................51

*Ryan v. Real Estate of the Pacific, Inc.* (2019)
32 Cal.App.5th 637 ................................................................63

*Shopoff & Cavallo LLP v. Hyon* (2008)
167 Cal.App.4th 1489 .............................................................77

Document received by the CA 4th District Court of Appeal Division 1.

**Page(s)**

**Cases**

*Sprengle v. Zbylut* (2015)
  241 Cal.App.4th 140 ............................................................55, 56

*Swahn Group v. Segal* (2010)
  183 Cal.App.4th 831 ....................................................................68

*Tully v. World Savings & Loan Association* (1997)
  56 Cal.App.4th 654 ......................................................................66

*Weiss v. Chevron U.S.A., Inc.* (1988)
  204 Cal.App.3d 1094 ...................................................................65

*Wilcox v. Superior Court* (1994)
  27 Cal.App.4th 809 ......................................................................48

**Statutes**

Business & Professions Code § 17200 ...........................................31

Civil Code § 1599 ..........................................................................76

Civil Code § 1636 ..........................................................................69

Code of Civil Procedure § 425.16 .............................................*passim*

Code of Civil Procedure § 437c(c) ...............................................66

Code of Civil Procedure § 904.1 ...................................................15

Commercial Code § 3104 ...............................................................75

Commercial Code § 8302 ...............................................................71

Corporations Code § 309 ...............................................................57

Corporations Code § 310(a) ...........................................................62

Corporations Code § 317 ....................................................28, 59, 62

Corporations Code § 709 ....................................................22, 25, 29

Document received by the CA 4th District Court of Appeal Division 1.

## APPELLANTS' OPENING BRIEF

## I.   STATEMENT OF THE CASE

This is a consolidated appeal of: (i) an August 28, 2019 order granting in whole Respondent David Mikkelson's ("Respondent" or "Mikkelson") special Anti-SLAPP motion to strike in the lead case; and (ii) a May 29, 2019 judgment disposing of Respondent's cross-claim against Appellants Christopher Richmond ("Richmond") and Drew Schoentrup ("Schoentrup"; collectively, "Appellants") in a related interpleader case, also effectively deciding in Respondent's favor Appellants' sole remaining Interpleader cross-claim.[1]

This case concerns Respondent's conspiracy with Appellants' former minority business partners to seize control over Snopes Media Group, Inc. ("Snopes" or the "Company"),[2] and use that control to marginalize Snopes' shareholders and their rightful input into the Company's management, effectively harming shareholder interests.

---

[1] The primary action ("Lead Case") in the trial court is captioned: *Proper Media, LLC, et al. v. Snopes Media Group, Inc.*, Case No. 37-2017-00016311-CU-BC-CTL. The related interpleader action ("Interpleader Case"), which has been consolidated, was initially captioned: *Bardav, Inc. v. Schoentrup, et al.*, Case No. 37-2018-00004335-CU-MC-CTL.

[2] Snopes was formerly known, and previously appeared in these actions as Bardav, Inc. ("Bardav"), but will be referred to as Snopes throughout.

Document received by the CA 4th District Court of Appeal Division 1.

Respondent should be held to account for his corporate misconduct that began in the wake of his divorce from Barbara Mikkelson ("Barbara").

After Proper Media, LLC ("Proper") began performing services for Snopes.com in 2015, the members of Proper, including Richmond, Schoentrup, Tyler Dunn ("Dunn"), Vincent Green ("Green") and Ryan Miller ("Miller"; collectively the "Proper Buyers"), jointly purchased Barbara's Snopes share (the "Share") in July 2016 (after her divorce from Respondent), financed in part by a promissory note in Barbara's favor from Proper (the "Note"), which was in turn secured by personal guarantees from each of Proper's members (each a "Personal Guarantee").[3] Under the terms of the Personal Guarantees, an uncured default by Proper meant that the holder of the note could foreclose on the Share. At the time, Respondent chose not to exercise a right of first refusal when Barbara sold the Share to the Proper Buyers.

In the months after Barbara sold the Share to the Proper Buyers, Respondent conspired with Green, and later Miller to undermine Appellants' ownership interests in Snopes, marginalize Appellants' efforts to participate as shareholders and have meaningful input into

---

[3] At the time, only two Snopes shares had been issued: one to Respondent and the other to Barbara, with each holding a 50% interest.

Document received by the CA 4th District Court of Appeal Division 1.

Company decisions, and ultimately push them out by making it impossible for Appellants to derive any value from their investment and protect the Company from the harm Respondent is causing.

After Green and Miller breached their duties to Richmond and Schoentrup by conspiring with Mikkelson, they joined Snopes as officers within a few days of leaving Proper in early 2017. With Green and Miller at his side, and counting their fractionalized votes before they had even been declared, Mikkelson enacted a number of corporate changes by purported majority shareholder written consent, including: adopting Snopes Bylaws increasing the number of board seats from two to three; unilaterally appointing an "independent" director of his own personal selection. He also refused Appellants' inspection demand for Snopes' books and records, and breached his fiduciary duties by (among others) improperly using Company assets and funds for his personal benefit.

Mikkelson also used this control to direct Snopes to advance to himself, Green, and Miller legal fees necessary to continue to prosecute the underling litigation against Appellants—their fiduciaries and co-owners of Snopes. Conveniently, the written consents approving of these personal legal fee advancements ("Advancements") blatantly

Document received by the CA 4th District Court of Appeal Division 1.

ignore that the claims against Mikkelson, Green, and Miller all relate to *personal disputes*, and have nothing to do with their status as officers or "agents" of Snopes. To the contrary, the Advancements are funding affirmative claims against Appellants, rather than simply defending claims, as envisioned by the Corporations Code and Snopes Bylaws.

Appellants later tried to secure their interest in Snopes by purchasing the Note from Barbara, which provided them with a security interest in the Share. Following a default and foreclosure on the security interest, Snopes filed the Interpleader Case to settle ownership of the Share (which, on Respondent's motion, had been fractionalized by the trial court). In the Interpleader Case, Mikkelson ignored that he had raised no objection to the original sale of the Share to the Proper Buyers, claimed that he had been entitled to and denied his right of first refusal when Barbara sold the Note, and that the purchase of the Note by Appellants would be antithetical to the Snopes.com site and its purpose, merely because of the parties' business disputes.

Although there were multiple issues of material fact— particularly conflicting testimony on whether the security interest was covered by the right of first refusal—the trial court erred in holding that Appellants' purchase of the Note was void and unlawful because

Document received by the CA 4th District Court of Appeal Division 1.

Barbara was required by her divorce decree to provide Respondent with a right of first refusal before selling the Note. This decision effectively terminated all Interpleader claims between Respondent and Appellants. Appellants timely filed a Notice of Appeal of the trial court's judgment on July 29, 2019.

In the Lead Case, after Richmond, Schoentrup, and Proper ("Plaintiffs") filed their Third Amended Complaint ("TAC"), Snopes and Mikkelson filed special motions to strike pursuant to Code of Civil Procedure § 425.16 (each an "Anti-SLAPP Motion") seeking to strike multiple causes of action and allegations within TAC's general allegations relating to the Advancements.[4] On August 28, 2019, the trial court granted the Mikkelson Anti-SLAPP Motion, finding that the approvals themselves were protected because they were in furtherance of *another statement* protected by Code of Civil Procedure ("CCP") Section 425.16—litigation funding.

The trial court's order ("Mikkelson Anti-SLAPP Order") disregarded that the Advancements at issue here actually only furthered

---

[4] As discussed in greater detail below, the Anti-SLAPP Motions also addressed claims relating to statements concerning Snopes' GoFundMe Campaign, which are not at issue on this appeal. (*See infra* at Section III.B.7.a))

Document received by the CA 4th District Court of Appeal Division 1.

speech concerning Mikkelson's, Green's, and Miller's personal and private business disputes with Appellants, falling well-outside of the scope of CCP § 425.16(e)(4)'s protection, because they did not further public discourse on any "public issue or issue of public interest."

The trial court provided no analysis of the allegations within the body that Mikkelson claimed "related" to the stricken causes of action. If it had, it would have understood that those allegations should not be stricken because: (i) they do not concern protected conduct; and (ii) they provide context and evidence of Appellants' claims against Respondent for breach of fiduciary duty and removal of director, and thus are not properly subject to CCP § 425.16(e)(4). Appellants timely filed a Notice of Appeal of the Mikkelson's Anti-SLAPP Order on October 28, 2019.

In these consolidated appeals, Appellants urge this Court to reverse the trial court's Interpleader Judgment in whole, and reverse the August 28, 2019 Mikkelson Anti-SLAPP Order as to the allegations related to the Advancements within the TAC's general allegations and within Appellants' Sixth and Ninth Causes of Action against Respondent for breach of fiduciary duty and removal of director.

Document received by the CA 4th District Court of Appeal Division 1.

## II.  STATEMENT OF APPEALABILITY

### A.  Interpleader Judgment

The Interpleader Judgment adjudicates all of Respondent's cross-claims in the Interpleader Case, and finally adjudicates in Respondent's favor all issues of fact and law relevant to Appellants' sole remaining Interpleader cross-claim. As such, and for the reasons set forth in Appellants' February 11, 2020 Opposition to Respondent's Motion to Dismiss Appeal, the Interpleader Judgment is appealable as a final judgment pursuant to CCP § 904.1.[5] (5AA:1161-1164 (Interpleader Judgment); 5AA:1157-1160 (May 8, 2019 Order Granting Respondent's Interpleader MSJ ("Interpleader Order")).)

### B.  Anti-SLAPP Order

The August 28, 2019 Order is appealable pursuant to CCP §§ 425.16(i) and 904.1(a)(13).  (8AA:1710.)

---

[5] On January 27, 2020, Respondent moved to dismiss the Interpleader Appeal on the grounds that the May 29, 2019 Judgment is not final pursuant to CCP § 904.1, despite the fact that this Court already ordered the Parties to address appealability alongside the merits. Because of this, Appellants were forced to file an opposition to Respondent's motion on February 11, 2020, highlighting relevant facts and law demonstrating why this Interpleader Judgment is final and why this Court has jurisdiction over the Interpleader Appeal. That opposition is incorporated herein by reference, and for the reasons set forth therein, this Court has jurisdiction over the Interpleader Judgment. On February 24, 2020, the Court of Appeal ordered that Respondent's Motion to Dismiss the Appeal will be considered with the merits.

Document received by the CA 4th District Court of Appeal Division 1.

### III. STATEMENT OF FACTS

#### A. Pre-Litigation Factual Background

#### 1. Formation of Snopes and Proper

Snopes owns and operates the "Snopes.com" website, which claims to be one of the oldest and largest fact-checking websites, and which became somewhat prominent following the publicization of "fake news" in the run up to the 2016 presidential election. (3AA:637 (Plaintiffs' Lead Case Second Amended Complaint ("SAC"), ¶ 5); 1AA:247 (Respondent's Interpleader Cross-Complaint, ¶ 2).) Snopes was initially formed in 2003 by Respondent and Barbara while they were still married. (1AA:247 (Respondent's Interpleader Cross-Complaint, ¶¶ 1-5).) They continued to jointly own Snopes up through June 2016. (1AA:39 (Respondent's Interpleader Cross-Complaint, ¶ 8).)

Proper was initially formed in 2015 by Richmond, Schoentrup, Green, Miller, and Dunn. (1AA:39 (Respondent's Lead Case Cross-Complaint, ¶ 9).) Proper provides website-management services, working with website publishers, such as Snopes, to run day-to-day operations and increase profitability, primarily by selling advertising

Document received by the CA 4th District Court of Appeal Division 1.

space on the sites that it manages and represents. (3AA:637 (SAC, ¶ 5).)

Snopes entered into a General Service Agreement ("GSA") with Proper on August 11, 2015. (1AA:39 (Respondent's Lead Case Cross-Complaint, ¶ 9).) The GSA made Proper responsible for "provid[ing] content and website development services as well as advertising sales and trafficking" for Snopes in exchange for a certain percentage of Snopes revenue. (3AA:695 (GSA).)

### 2. Mikkelson Divorce Affects Snopes

In 2015, Mikkelson and Barbara divorced in Department 59 of the Superior Court for the County of Los Angeles ("Dissolution Court") and entered into a Marital Settlement Agreement ("MSA") that provided for a division of marital community property (including real property, bank accounts, and other assets), separate property, addressed spousal support, attorney fees, the parties' respective continuing obligations, and many other issues relating to the parties' divorce. (4AA:714 (Respondent's Declaration in Support of Interpleader Motion for Summary Judgment ("Resp. MSJ Decl."), ¶¶ 4-5); 3AA:589-592 (MSA, ¶ 8).)

Document received by the CA 4th District Court of Appeal Division 1.

The MSA provided guidance on the continued operation, management, and ownership of Snopes after the divorce, providing that: (i) Mikkelson and Barbara would each be a member of the Company's Board of Directors and would hold an officer position; (ii) that they "shall select an arbiter to break deadlocks";[6] (iii) Mikkelson would "run the [C]ompany's day-to-day operations and set its course with regard to plans for its future"; (iv) Mikkelson was obligated to inform Barbara of "any significant occurrences or future plans for the business"; (v) Barbara could challenge Mikkelson's decisions "that would materially affect the [C]ompany's value" by going to the designated arbiter; (vi) both parties would decide matters of salary; (vii) neither Mikkelson nor Barbara could "take any actions to diminish the other('s) ( ) authority" (*e.g.*, including holding an unapproved shareholder meeting, adding a position to the Board of

---

[6] The MSA provided that the arbiter would be appointed to a one-year term, subject to annual renewal by agreement of the parties, and expressly reserved jurisdiction in the Los Angeles County Superior Court to select one "(i)f the parties cannot agree on an arbiter/special arbiter . . . ." (3AA:589 (MSA, ¶ 8).) Although no arbiter was *formally* appointed, Barbara testified that she and Respondent had agreed that Richard Rogers would be appointed as an arbiter, but that Respondent had withheld his signature from the arbiter's engagement letter so that there would be no dispute resolution channel in place. (5AA:1042-1048 (Declaration of Barbara Mikkelson ("Barbara Declaration")).)

Document received by the CA 4th District Court of Appeal Division 1.

Directors, and engaging in any self-dealing transactions without approval from the other); and (viii) the parties could buy-out the other's interest in the event of death. (3AA:589-592 (MSA, ¶ 8).)

The MSA also provided a ten-day right of first refusal, "if either [Mikkelson or Barbara] seeks to sell ***all or part of his or her share(s)***." (3AA:590 (MSA, ¶ 8) (emphasis added).)

Finally, the MSA also gave the parties the ability to:

> block the sale of ***all or part of the sale of the company's shares***, or substantially all of its assets, if it can be reasonably concluded by ***the arbiter*** that the prospective buyer is antithetical to the health of ***the site*** or to its purpose (e.g. intends to dismantle the site, turn the site into a platform for trumpeting an untruthful point of view, alter the site into one that supports a particular political viewpoint, etc.).[7]

(3AA:590-91 (MSA, ¶ 8) (emphases added).)

Respondent and Barbara disputed the amount of his salary from Snopes and the propriety of many of his claimed business expenses that appeared to lack any legitimate business purpose, both before and after their divorce. (5AA:1036-1037 (Mikkelson Reply Statement of Facts

---

[7] In providing these examples of acts which would be antithetical to the site, the parties made clear that the buyer's intent for the ***site*** was of key importance. The MSA does not say that a sale of the Share could be blocked simply because the other shareholder had a business dispute with the potential buyer.

Document received by the CA 4th District Court of Appeal Division 1.

in Dissolution ("Mikkelson Dissolution Reply"); 5AA:1045-1046 (Barbara Decl., ¶¶ 15-16.) Many of these disputes were boiling over in June 2016, when Barbara decided to sell her Share of Snopes to the Proper Buyers. (5AA:1036-37 (Mikkelson Dissolution Reply).)

### 3.   Members of Proper Purchase Barbara's Share

Knowing that Barbara was considering selling her Share, Respondent introduced her to the Proper Buyers in January 2016 to further that very purpose, understanding that they intended to make a serious offer within a few months. (5AA:1046 (Barbara Declaration, ¶ 19).) In mid-2016, Barbara negotiated to sell her Share to the Proper members. (5AA:963-964 (Stock Purchase Agreement ("SPA").)

Prior to the sale, in response to a request from Mikkelson, Schoentrup provided him with the terms of the sale in the form of the contemplated SPA. (5AA:1127; 5AA:1143-1150.) The SPA informed Respondent that: (i) Barbara was selling her "entire share and interest in [Snopes]" for $3.6 Million; (ii) the Proper Buyers would pay $1.85 Million of that price to her in cash; (iii) Proper Media, LLC (not the individual Proper Buyers) would finance the remaining $1.75 Million through a promissory note ("Note") in favor of Barbara;

Document received by the CA 4th District Court of Appeal Division 1.

and (iv) the Note would be backed by Personal Guarantees from each of the Proper Buyers. (5AA:1143-1150 (Stock Purchase Agreement).)

In the Personal Guarantees, each proper Buyer agreed to be jointly and severally liable should Proper default on the Note, and granted Barbara "a continuing first priority security interest in the Shares." (5AA:1128; 3AA:523 (Personal Guarantee, ¶ 2).) Each Proper Buyer also promised that Snopes would "remain intact and retain sole ownership of its assets and receive all income its assets generate under its [then-current] business relationship with Proper," satisfying any concerns that the sale would be antithetical to the Snopes.com site or its purposes. (5AA:1128; 3AA:523 (Personal Guarantees, ¶ 2) (granting Barbara "a continuing first priority security interest in the Shares").)

Having full knowledge of these terms and the nature of the sale, Respondent chose not to exercise his right of first refusal. (5AA:1125; 5AA:1127.)

The Proper Buyers obtained the $1.85 Million cash for the purchase with proceeds of a loan from Diamond Creek Capital, LLC

Document received by the CA 4th District Court of Appeal Division 1.

(the "DCC Loan"), and closed the sale on July 1, 2016, intending to buy the Share for the benefit of Proper.[8] (4AA:950-951.)

### 4. Respondent and Barbara Seek Intervention of the Dissolution Court Regarding a Dispute About Snopes

In early 2017, Respondent asked the Dissolution Court to prohibit Barbara from invoking the MSA to assert rights to certain Snopes profits from part of 2016. He asked the court for an affirmation "that Paragraph 8 of our Judgment ceased to be applicable as of July 1, 2016, when [Barbara] sold her entire interest in [Snopes]." (5AA:1040 (Mikkelson Dissolution Reply, Declaration, ¶ 17).) This came in the midst of a dispute concerning his compensation for 2016, during part of which Barbara was a Snopes shareholder and co-director with

---

[8] Appellants alleged that the Share was originally purchased for the benefit of Proper to be held jointly as a single share to accomplish that purpose. In February 2018, on Mikkelson's motion, the trial court granted his claim for relief under Corp. Code § 709, declaring that the sale to the Proper Buyers acted as a fractionalization of the Share, and that each Proper Buyer took the same percentage of the Share as they held in Proper Media (Richmond and Schoentrup each held 0.4 shares of Snopes; Green and Miller each held 0.066 shares of Snopes; and Dunn held 0.068 shares of Snopes). (1AA:36-55 (Respondent's Lead Case Cross-Complaint); 3AA:631-634 (Feb. 21, 2018 Notice of Ruling on 709 Motion).) Appellants' intend to appeal that judgment when a final judgment is entered between them and Respondent in the Lead Action.

Document received by the CA 4th District Court of Appeal Division 1.

Respondent. (5AA:1036 (Mikkelson Dissolution Reply, Declaration, ¶ 8).)

In making that request, he sought a declaration from the Dissolution Court that because Barbara sold her Share, she no longer had any right to have any input to management decisions because Paragraph 8 of the MSA was no longer applicable when she no longer owned the share. (5AA:1028-1029 (Mikkelson Dissolution Reply).)

### 5. Respondent Conspires Against Appellants to Harm Proper and Push Them Out of Snopes

After the Proper Buyers' purchase, Respondent began colluding and conspiring with Green, and later Miller, understanding that if he could create a controlling majority voting bloc in Snopes, he would be able to marginalize Appellants, and manipulate the Company for their own personal benefit with impunity. (4AA:733-736 (TAC, ¶¶ 70-93).)

During a heated meeting between Green, Schoentrup, and Richmond in February 2017, Richmond and Schoentrup told Green that they believed he had been prioritizing his own personal interests above Proper's, which Green essentially confirmed. (4AA:734 (TAC, ¶ 77); 6AA:1323-1324 (Richmond Decl. in Support of Opposition to Respondent's Anti-SLAPP Motion ("Richmond Anti-SLAPP Decl."),

¶¶ 30-35.) Nearly immediately thereafter, Green appeared on the Snopes.com website identified as a Snopes officer, making plain that his transition to becoming a Snopes officer had been planned in advance and implemented only after Green left Proper following this February 2017 meeting. (4AA:734-735 (TAC ¶ 80).) Shortly after that meeting, Snopes provided Proper with 60-days' notice that the GSA would terminate on May 8, 2017. (4AA:738 (TAC, ¶ 104).)

### B. Suit Against Respondent and Snopes Creates Chain Reaction of Follow-On Litigation and Cross-Claims

#### 1. Richmond, Schoentrup, and Proper's Lead Case Complaint and Initial Pleadings

Plaintiffs filed a complaint in the Lead Case on May 4, 2017. (8AA:1783 (Lead Case Register of Actions ("Lead Case ROA") No. 1).) Plaintiffs' currently operative pleading is the Third Amended Complaint, discussed in greater detail below.

A volley of cross-complaints against Appellants and Proper were filed in the wake of the initial complaint.

#### 2. Mikkelson's Lead Case Cross-Complaint

Respondent filed his cross-complaint against Proper, Richmond, and Schoentrup on October 31, 2017. (8AA:1789 (Lead Case ROA,

ROA No. 147).) It remains Respondent's operative complaint in the Lead Case, and asserts claims: (1) for equitable relief pursuant to Corporations Code § 709; (2) Fraud; (3) Negligent Misrepresentation; and (4) Intentional and Negligent Interference with Prospective Economic Relations. (1AA:56-66 (Mikkelson Lead Case Cross-Complaint).) None of these claims was asserted in his role as director of Snopes, or on Snopes' behalf.

### 3. Green and Miller Lead Case Cross-Claims Against Proper and Appellants

Having been brought into the litigation by the Second Amended Complaint, Green and Miller filed a cross-complaint on October 31, 2017 against Appellants and Proper. Green and Miller amended their pleadings three times, with their operative pleading, the third amended cross-complaint ("Green and Miller TACC"), being filed on June 21, 2019. (8AA:1826 (Lead Case ROA, ROA No. 1059).) The Green and Miller TACC asserts 15 causes of action against Richmond, Schoentrup, Proper, and Publife LLC (another company owned by Richmond and Schoentrup), all of which related to their membership in and employment with Proper, and none of which had to do with any acts performed as officers or employees of Snopes.

Document received by the CA 4th District Court of Appeal Division 1.

### 4. Snopes and Mikkelson Publicize the Case to Solicit Donations from the Public for Its Legal Fees Through GoFundMe

In July 2017, Mikkelson and Snopes launched a crowdfunding campaign on GoFundMe ("GoFundMe Campaign") seeking donations from the public, purportedly to be used to pay Snopes' legal fees, and which, as of April 4, 2019 had raised more than $850,000. (6AA:1326 (Richmond Anti-SLAPP Decl., ¶ 46).) Among other false statements, the GoFundMe Campaign told donors and that the contributions would be used to pay for Snopes' legal fees, and Snopes' payroll and operating expenses, never informing contributors that those funds would also be used to fund the Advancements for personal legal expenses of Respondent, Green, and Miller. (6AA:1326-1327 (Richmond Anti-SLAPP Decl., ¶¶ 48-52).)

### 5. Mikkelson Uses Control Over Snopes to Fill Vacant Board Seat and Fund Defendants' Legal Fees and Expenses

When Barbara sold her Share to the Proper Buyers in mid-2016, she resigned her position as one of two directors on Snopes' board, leaving a vacancy. (1AA:38 (Respondent's Lead Case Cross-Complaint, ¶ 2).) Respondent took advantage by appointing a self-

Document received by the CA 4th District Court of Appeal Division 1.

selected "independent" director to fill the vacancy (1AA:53), and subsequently using written shareholder consents from Green and Miller (before any formal determination that Green and Miller had independent voting rights) to approve of the adoption of new bylaws increasing the number of directors to three, and conveniently providing for the Advancements. (1AA:43-44 (Mikkelson Lead Case Cross-Complaint, ¶¶ 26-32); 1AA:103 (Snopes Bylaws, § 6.3).) The newly adopted Snopes Bylaws also provided for an extensive 60-day right of first refusal to the Company for any potential sale of any Snopes shares, not on the same terms as the potential sale, but instead at "fair market value of the shares at such time as determined in good faith by the directors." (1AA:110-113 (Snopes Bylaws at p. 22, Article XI).)

On October 27, 2017, the board of directors, which at that time consisted of Mikkelson and Mr. Westbrook, executed a written director consent adopting a full set of bylaws for Snopes, claiming to be retroactive to July 14, 2017 ("Bylaws"). (1AA:46 (Mikkelson Lead Case Cross-Complaint, ¶ 40).) Four days later, Mikkelson, Green, and Miller each executed written shareholder consents purporting to approve the adoption of the Bylaws. (1AA:79-83 (Mikkelson Lead Case Cross-Complaint, Ex. F).) Appellants were not provided a copy

Document received by the CA 4th District Court of Appeal Division 1.

of the Bylaws prior to their purported implementation, and were not notified that the Snopes board or shareholders were considering the adoption of the Bylaws—thus were not able to vote on their adoption. (1AA:148 (Schoentrup Declaration in Support of Opposition to Respondent's 709 Motion ("Schoentrup 709 Opp. Decl."), ¶¶ 29-31).)

Pertinent to these appeals, the Bylaws permitted Snopes to advance or reimburse legal fees incurred by an agent "in defending any proceeding . . . , or any particular claims within such proceeding (as determined by the Board)" prior to the final disposition of the proceeding, as long as it was approved by the board (which the Bylaws said could include the vote of a self-interested director such as Mikkelson), and as long as the agent provided an undertaking to pay back advancements "if it shall be determined that such agent is not entitled to be indemnified as authorized by Section 317 of the Corporations Code and these Bylaws." (1AA:103 (Snopes Bylaws, § 6.3).)

Respondent subsequently used this provision to approve Snopes' funding of the advancements to Green on September 29, 2017 ("Green Advancement"), Mikkelson on October 13, 2017 ("Mikkelson Advancement"), and Miller on November 20, 2017 ("Miller

Advancement"). (6AA:1413-1436) Interestingly, the fact that the Bylaws were not actually approved until October 31, 2017, means that the Green and Mikkelson Advancements (September 29, 2017 and October 13, 2017, respectively) were approved before there were technically Bylaws in place to support those corporate actions.[9]

Notably, all of these significant corporate acts were performed: (i) without any prior notice to Appellants; and (ii) prior to any official determination that the Proper Buyers held individual interests in the Share and could vote those interests independently. (1AA:148 (Schoentrup 709 Opp. Decl., ¶¶ 29-31); 3AA:631-634 (Feb. 15, 2018 Order).)

### 6. Respondent's Motion Pursuant to Corporate Code § 709

On November 7, 2017, Respondent filed an *ex parte* application for a hearing pursuant to Corporations Code § 709 ("709 Motion"). This motion sought court affirmation that the Share had been fractionalized

---

[9] Tellingly, the actions Respondent took in the summer and fall of 2017, in appointing Mr. Westbrook as a director, adding a seat to the board of directors, and approving the Company's funding of his own personal legal fees, are precisely those acts discussed in his MSA with Barbara that were specifically identified as actions which would undermine a shareholder's authority. (3AA:590 (MSA, ¶ 8(a)-(c)).)

at the time it was initially sold, and that each of the Proper Buyers had the right to independently vote his respective interest in Snopes as a shareholder (rather than the vote only being permitted for the whole Share), that those voting rights were retroactive to the original sale of the Share, and that those individual votes had provided Respondent with the majority necessary to elect Brad Westbrook as a director of Snopes in July 2017 (1AA:53-54 (Mikkelson Lead Case Cross-Complaint, Prayer for Relief).)

The trial court granted the 709 Motion in full on February 15, 2018, effectively providing Respondent with a guaranteed majority vote that now included the fractionalized Share interests held by Green and Miller, and with which he could continue to marginalize Appellants and harm their interests in Snopes. (3AA:624-626 (Judgment on 709 Claim); 3AA:631-634 (Feb. 15, 2018 Order on 709 Motion.)

### 7. Appellants' Third Amended Complaint and Respondent's Anti-SLAPP Motion

After a series of demurrers and amendments, as well as a motion for leave to amend, Plaintiffs filed their Third Amended Complaint on April 4, 2019. (4AA:719-884 (TAC).)

Document received by the CA 4th District Court of Appeal Division 1.

The TAC added allegations concerning Snopes' Advancements of personal legal expenses and Respondent's self-interested approval of those Advancements, at significant cost to the Company, the Advancement Allegations: TAC, ¶¶14-16 (4AA:723-724); ¶ 119 (4AA:741); ¶¶ 122-134 (4AA:742-745); ¶ 220(1), (2), and (10) (4AA:758); ¶ 254 (1)-(3) (4AA:763-764); and a section heading at TAC, p. 23 (4AA:741) (lines 7-8). The TAC also added claims for Defamation (and related claims under Bus. & Prof. Code § 17200, *et seq.* ("unfair competition claims") based on statements made about Proper by Snopes and Respondent in the course of the GoFundMe Campaign. (4AA:770-786 (TAC, ¶¶ 296-335).)

Shortly thereafter, Mikkelson filed a demurrer and motion to strike the TAC, seeking dismissal of Appellants' derivative claims for corporate waste and breach of fiduciary duty (Fifth and Seventh Causes of Action), and Appellants' direct claims for breach of contract and promissory estoppel (Twelfth and Thirteenth Causes of Action).[10] (8AA:1719-1723.)

---

[10] The trial court issued an order on August 30, 2019 sustaining Mikkelson's demurrer in entirety, and found the demurrer moot as to the causes of action stricken by virtue of the August 28, 2019 Order on The Mikkelson Anti-SLAPP Motion. (*See* 8AA:1719-1723.)

Document received by the CA 4th District Court of Appeal Division 1.

On June 5, 2019, Respondent and Snopes each filed a special motion to strike the TAC pursuant to CCP § 425.16, seeking to strike Appellants' claims for: (i) defamation and unfair competition (TAC's Fourteenth through Sixteenth Causes of Action) concerning the GoFundMe Campaign; and (ii) rescission and declaratory judgment (Seventeenth and Eighteenth Causes of Action) concerning the Advancements for personal legal fees. (5AA:1175 (Mikkelson Anti-SLAPP Memo) (identifying claims based on protected activity)); 5AA:1210 (Snopes Anti-SLAPP Memo) (same).) Both special motions to strike also sought to eliminate allegations within the body of the TAC relating to the propriety of the legal fee Advancements, and allegations *within* Appellants' direct claim against Mikkelson for breach of fiduciary duty (the "Advancement Allegations").[11] (5AA:1175;

---

[11] The Advancement Allegations, which Mikkelson argued should be stricken because they were related to the stricken causes of action, fall within two broad categories: (i) allegations related to undisputed facts, transactions, and documents relevant to the parties' claims (*see* TAC, ¶ 119, (4AA:741); ¶¶ 122-127 (4AA:742-743)); and (ii) allegations characterizing Respondent's actions related to the Advancements as wrongful (as evidence of Respondent's breach of fiduciary duty and basis for being removed as a director of Snopes) (*see* TAC, ¶¶ 14-16 (4AA:723-724); ¶¶ 128-134 (4AA:743-745); ¶ 220(1), (2), and (10) (4AA:758); and ¶ 254 (1)-(3) (4AA:763-764).) Although Mikkelson also asked the court to strike allegations within Appellants' ***derivative claims*** for breach of fiduciary duty and corporate waste, the trial court sustained Mikkelson's demurrer as to those claims. (Unfortunately, Appellants cannot challenge the trial court's determination on Mikkelson's demurrer to the TAC until the trial court has

Document received by the CA 4th District Court of Appeal Division 1.

5AA:1210 (seeking to strike Fourteenth through Eighteenth Causes of Action "and related allegations").)

### a) Snopes Anti-SLAPP Motion

Snopes argued that the causes of action should be stricken because the Company's actions in the GoFundMe Campaign, and in funding Mikkelson's, Green's, and Miller's personal litigation expenses were statements and acts in furtherance of their right to petition on an issue of public interest (5AA:1211 (425.16(e)(3) and (4) apply to GoFundMe allegations); 5AA:1212 (failing to identify a specific ground for anti-SLAPP protection); CCP § 425.16(e)(3) and (4).)

In discussing whether the funding related to "other conduct in furtherance of" free speech and petitioning rights on a public issue or an issue of public interest (see CCP § 425.16(e)(4)), Snopes argued that its litigation funding activities must have furthered an issue of public concern simply because Snopes was a somewhat well-known website, and Snopes had received significant contributions to its GoFundMe Campaign. (5AA:1208.)

---

finally determined all causes of action between Respondent and Appellants in the Lead Case.

Document received by the CA 4th District Court of Appeal Division 1.

Appellants' opposition argued that Snopes' funding of the Advancements for Mikkelson's, Green's, and Miller's personal litigations was not a protected act because, among other reasons, the speech did not concern an issue of public interest (*see* CCP § 425.16(e)(4)), and that if it was, Appellants had demonstrated a likelihood of prevailing on the merits. (6AA:1302-1315.) The trial court took the matter under submission at the motion hearing, eventually entering: (i) an order on August 9, 2019 denying in part the Snopes Anti-SLAPP Motion; and (ii) an August 22, 2019 amended order granting Snopes Anti-SLAPP Motion in entirety, as discussed in greater detail below. (8AA:1829 (Lead Case ROA; ROA No. 1139); 8AA:1831 (Lead Case ROA; ROA No. 1174).)

b)      *Mikkelson Anti-SLAPP Motion*

Respondent's Anti-SLAPP Motion sought to strike the same allegations as those addressed in the Snopes Anti-SLAPP Motion, concerning his statements on the GoFundMe page, and his approval of Snopes Advancements of personal legal fees to himself, Green, and Miller (the "Advancement Allegations") arguing that his approvals were also protected, because they were in furtherance of Snopes

Document received by the CA 4th District Court of Appeal Division 1.

litigation funding.[12] (5AA:1177-1178; 7AA:1632-37; CCP § 425.16(e)(4).) Respondent also argued that there was no distinction between the communicative conduct of litigation funding and the act of approving such funding, without discussing any of the substance of the actual speech at issue in the litigation (*i.e.*, private disputes among shareholders in a closely held corporation).

Appellants again argued in opposition that Respondent's acts in approving the Snopes' Advancements to himself, Green, and Miller was not an act in furtherance of speech on an issue of public interest (CCP § 425.16(e)(4)), and that even if the claims were based on protected conduct, Appellants had a probability of success on the merits.

### 8. Trial Court's Order and Amended Order on Snopes Anti-SLAPP Special Motion to Strike

On August 9, 2019, the trial court issued a minute order granting Snopes Anti-SLAPP Motion in part and denying it in part. To the extent it addressed whether the speech was in furtherance of a public issue, the

---

[12] This appeal challenges only the Advancement Allegations to the extent they support Appellants' claims for breach of fiduciary duty and removal of director. Thus, the other aspects of the Mikkelson Anti-SLAPP Motion relating to statements made on the GoFundMe campaign site are ultimately irrelevant to the appellate review here.

Document received by the CA 4th District Court of Appeal Division 1.

trial court noted merely that "Snopes is one of the 1000 most popular websites in the United States," its GoFundMe campaign had successfully raised money for the litigation, "the health of Snopes is of widespread concern," and Snopes was a "business with import to the public . . . ." (6AA:1293.)

After striking the Fourteenth through Sixteenth Causes of Action (based on defamation and unfair competition), the trial court denied the motion on the Seventeenth and Eighteenth Causes of Action related to the Advancements. It noted the distinction between the protected communicative nature of funding litigation, and the communications and acts necessary to obtain the litigation funding: "the thrust of Plaintiffs' claims are that the result of Snopes' consideration of whether to fund the defense of Mikkelson, Miller, and Green – the Board authorizations and written consents – are improper." (6AA:1296.)

The trial court properly noted that: "[although] Plaintiffs include allegations that the advancements are unlawful, the gravamen of the claims are that *Snopes' board improperly authorized the advancements*." (6AA:1296 (emphasis added).) Appropriately understanding this distinction, the trial court noted that if any approval of litigation funding was automatically provided with the same

Document received by the CA 4th District Court of Appeal Division 1.

protection as the funding itself, any claims that the funding violated the directors' duties "would automatically qualify for anti-SLAPP protection if the decision resulted in the advancement of legal funds," which would "have the result of chilling legitimate challenges to improper board authorizations." (6AA:1296.)

On August 22, 2019, the trial court amended its ruling on the Snopes Anti-SLAPP Motion, striking the Seventeenth and Eighteenth Causes of Action (for rescission of the board approvals and a declaratory judgment that such approvals were wrong), "[i]n light of additional briefing and argument provided in Mikkelson Anti-SLAPP motion."[13] (8AA:1705.) Leaving its August 9, 2019 Order otherwise unchanged, the trial court found that Snopes' approval of the Advancements was "in furtherance of the . . . right of petition or . . . free speech in connection with a public issue or an issue of public interest." (8AA:1709.) The trial court refused "to segregate the board authorizations from the litigation funding because the board

---

[13] Appellants initially filed a notice of appeal concerning the August 22, 2019 Amended Order on Snopes Anti-SLAPP Motion. Although Appellants dismissed that appeal (the Advancement Allegations do not meaningfully impact allegations against Snopes), the trial court's decision-making process is relevant to the court's Mikkelson Anti-SLAPP Order, which is the subject of this appeal.

Document received by the CA 4th District Court of Appeal Division 1.

authorizations were a necessary step to facilitate that activity". (8AA:1709.)

Finally, sweeping its merits analysis on the Seventeenth and Eighteenth Causes of Action and related Advancement Allegations into two sentences, the court found that Appellants "have failed to establish they have standing as to [their] UCL claims – they have not shown an injury in fact of 'lost money or property,'" and "have not shown minimal merit." (8AA:1709.)

### 9. Trial Court's Decision on Mikkelson Anti-SLAPP Special Motion to Strike

On August 28, 2019, the trial court granted the Mikkelson Anti-SLAPP Motion in entirety, following its reversal on the Snopes Anti-SLAPP Motion, and striking Appellants' Fourteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth Causes of Action (which Appellants do not challenge on this appeal), and the Advancement Allegations within the body of the TAC and within their breach of fiduciary duty and removal of director claims. (8AA:1711-1715.)

The trial court performed no analysis of the specific Advancement Allegations subject to the motion, or the impact that striking those allegations would have on Appellants' breach of

Document received by the CA 4th District Court of Appeal Division 1.

fiduciary duty and removal of director claims (which Respondent had not sought to strike).

The trial court gave no credit to Richmond's declaration affirming that Snopes had suffered financial harm and a risk of insolvency, or to undisputed allegations that the Company's legal expenditures had required it to resort to GoFundMe for contributions. (8AA:1713-1714.) Instead, the Court found no claim of injury because "[w]hile the loss of funds towards advancements could potentially put Snopes closer to insolvency, Plaintiffs do not cite any actual 'lost money or property.'" (8AA:1713.)

Using an identical analysis to that cited above for the August 22, 2019 Amended Order, the trial court found that because Mikkelson's approvals of the Advancements were in furtherance of another protected act under CCP § 425.16—litigation funding—the approvals themselves were protected. (8AA:1714.) The trial court's Aug. 28, 2019 Order made no express discussion of what specific public interest the litigation funding furthered.

To the extent the trial court addressed the Seventeenth and Eighteenth Causes of Action, it found that that Mikkelson had established that his approval of the Advancements was "conduct that

Document received by the CA 4th District Court of Appeal Division 1.

furthered the exercise of the constitutional right of petition – litigation funding" (8AA:1714), and noted that Respondent's approval of the Advancements "should not be segregated from the litigation funding because the board authorizations were a necessary step to facilitate the protected activity." (8AA:1714). Incorporating its analysis of the issue from its amended order on the Snopes Anti-SLAPP Motion, the trial court noted that "[f]unding of litigation is communicative conduct that constitutes a protected petitioning activity." (8AA:1714.)

Following the trial court's orders on Defendants' demurrers and Anti-SLAPP Motions, the TAC currently includes claims against:

- Mikkelson—for Intentional Interference with Contract (4AA:754 (TAC, ¶¶ 185-192)), Breach of Fiduciary Duty (4AA:757-759 (TAC, ¶¶ 212-225)), and Removal of Director (4AA:763-764 (TAC, ¶¶ 249-256));

- Green and Miller—for Breach of Contract (Proper Operating Agreement (4AA:753 (TAC, ¶¶ 179-184)), Breach of Fiduciary Duty (4AA:762-763 (TAC, ¶¶ 241-248)), and Constructive Trust (4AA:764-766 (TAC, ¶¶ 257-268)); and

Document received by the CA 4th District Court of Appeal Division 1.

- Snopes—Breach of Contract (4AA:752-753 (TAC, ¶¶ 174-178) and 4AA:767-768 (TAC, ¶¶ 276-284)), Removal of Director (4AA:763-64 (TAC, ¶¶ 249-256)); Quantum Meruit (4AA:766-767 (TAC, ¶¶ 269-275)); and Promissory Estoppel (4AA:768-770 (TAC, ¶¶ 285-295)).

## C. Snopes Interpleader

### 1. Pleadings and Cross-Complaints

After Mikkelson, Green, and Miller alleged that the Proper Buyers **did not** buy the Share for Proper's benefit and that they intended to have individual ownership interests, it was obvious that Respondent was actively undermining Appellants' interests and trying to harm Proper.

Concerned that Proper was liable on the Note for the debt related to the Share, and that it would face an uphill battle showing that it held a beneficial interest in the asset underlying that debt, Richmond and Schoentrup bought the Note from Barbara to remove the debt burden from Proper. (3AA:499 (Appellants' First Amended Interpleader Cross-Complaint ("FAICC"), ¶ 48).) Barbara assigned the Note (along with the Personal Guarantees) to Richmond and Schoentrup pursuant to an assignment contract ("Assignment Contract"). (3AA:499

Document received by the CA 4th District Court of Appeal Division 1.

(FAICC, ¶ 48); 3AA:700 (Assignment Contract).) Shortly thereafter, Proper defaulted, and Appellants sent Green and Miller notices demanding a cure. (3AA:501 (FAICC, ¶ 59).) When the default was not cured, they foreclosed on the Share. (3AA:502 (FAICC, ¶ 63).)

After Respondent understood the impact that this could have on his efforts to control the Snopes shareholder vote, he cried foul, claiming that the Assignment Contract was void and unlawful because he was entitled to a right of first refusal over the security interests pursuant to his MSA with Barbara, and argued that he had been stripped of his ability to seek to block the sale as antithetical to the site. (2AA:333 (Mikkelson Interpleader Cross-Complaint, ¶¶ 13-18).)

Snopes filed the Interpleader Case asking the court to order the parties to litigate their claims to ownership of the fractionalized Snopes shares. (1AA:213-218 (Snopes Interpleader Complaint.)

Appellants' and Respondent's respective Interpleader cross-complaints sought mutually exclusive relief. Whereas Appellants sought a declaration validating their foreclosure, and confirming "that Schoentrup and Richmond are each the owner of all right, title, and interest in the Share" (3AA:515-516 (FAICC, Prayer for Relief).) Mikkelson sought a declaration that the Assignment Contract was

Document received by the CA 4th District Court of Appeal Division 1.

"void, unenforceable, and invalid, or alternatively, voidable," nullifying any rights Appellants may have had in Green and Miller's fractionalized shares. (2AA:254 (Mikkelson Interpleader Cross-Complaint).)

On December 21, 2018, Respondent filed a motion for summary judgment on his Interpleader cross-claim for declaratory relief ("MSJ"), arguing that Barbara's sale of the Note was void and unlawful because he had a right of first refusal over the security interest. (8AA:1806 (ROA Nos. 572-579); 5AA:1158 (Interpleader Order).)

## 2. Trial Court's Decision on Respondent's Interpleader MSJ

After briefing, the trial court entered an order on May 8, 2019 granting the MSJ in whole. (5AA:1158-1160 (Interpleader Order).)

The trial court found as a matter of law that the Personal Guarantees' security interest "constitutes a 'part of' Barbara's shares *in this context*." (5AA:1159 (Interpleader Order) (emphasis added).) Because it found that the security interest was "part of" the Share, it voided the Assignment Contract, without deciding whether the Assignment Contract could be severed to eliminate any illegality.

Document received by the CA 4th District Court of Appeal Division 1.

The trial court made this finding even after identifying multiple facts that created competing inferences, specifically that: (i) "(t)he Dissolution Judgment does not explicitly state that Barbara and David Mikkelson could not retain a security interest and subsequently assign that interest to someone without notice", (ii) Barbara conveyed her *"entire share and interest in [Snopes]"* to the Proper Buyers on July 1, 2016; and (iii) Respondent had submitted sworn statements to the trial court and to the Dissolution Court that Barbara "sold her entire share" of Snopes to the Proper Buyers. (5AA:1159 (Interpleader Order).) As to Mikkelson's inconsistent sworn statements on whether the July 2016 sale disposed of all of the Share, the trial court dismissed them because "Mr. Mikkelson is not an attorney" and may not have understood the impact of those statements. (5AA:1159.)

The trial court provided no meaningful analysis of whether these inconsistencies created an issue of material fact.

Document received by the CA 4th District Court of Appeal Division 1.

## IV.  ARGUMENT

### A.  Anti-SLAPP Appeal

#### 1.  Standard of Review and Legal Standard on Special Motion to Strike Pursuant to CCP § 425.16

The appellate court "independently review[s] a trial court's ruling on a SLAPP motion under a de novo standard of review." (*Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 676 (citing *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999).) This includes the question of "whether section 425.16 applies to a particular complaint." (*Id.* (citation omitted).)

#### 2.  The Trial Court Erred in Granting the Mikkelson Anti-SLAPP Motion

As explained, the trial court granted the Mikkelson Anti-SLAPP Motion in its entirety, including the Advancement Allegations.

Notably absent from the Mikkelson Anti-SLAPP Order was any meaningful analysis of the specific issues at the heart of the "speech" and "communications" at stake, whether those were public issues within the meaning of the law, or what specific public issue(s) was furthered by Respondent's self-interested approval of Advancements for his own legal fees and the legal fees of Green and Miller to pursue

their personal business disputes with Appellants. This is the critical first step to any meaningful analysis of whether particular speech is or is not protected by CCP § 425.16, or whether the act at issue relates to a public issue or issue of public interest.

The trial court erred by:

1. Finding as a matter of law that the Advancement Allegations were protected as acts in furtherance of a public issue or issue of public interest;

2. Finding as a matter of law that the Advancement Allegations should be stricken in the context of Appellants' breach of fiduciary duty and removal of director claims; and

3. Failing to assess the Advancement Allegations to the extent they provide evidence and examples of Respondent's breach of fiduciary duty and removal of director.

This Court should reverse the Mikkelson Anti-SLAPP Order to the extent it strikes the following Advancement Allegations: TAC, ¶¶ 14-16; ¶ 119; ¶¶ 122-134; ¶ 220(1), (2), and (10); and ¶ 254(1)-(3); and section heading at TAC p. 23:7-8.

Document received by the CA 4th District Court of Appeal Division 1.

### 3. The Advancement Allegations Are Not Protected by CCP § 425.16

The party bringing a special motion to strike pursuant to CCP § 425.16 bears the burden of showing that the allegations at issue relate to and arise from constitutionally protected activity. (*See* CCP § 425.16(b)(1); *see also Park v. Bd. of Trustees of Cal. State Univ.* (2017) 2 Cal.5th 1057, 1061 ("*Park*").) In order to succeed on his motion, Respondent is required to show: "(1) the complaint alleges *protected speech or conduct*, and (2) the 'relief is sought based on allegations *arising from*' the protected activity." (*Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 877 ("*Gaynor*") (emphasis in original) (citation omitted).) As to the Advancement Allegations in the context of Respondent's breaches of fiduciary duty and grounds for removal of director, no such showing can be made. (*Id.* (litigation funding for trustee's funding of litigation against beneficiaries not protected where allegations provide context, evidence and examples of trustee's breach of fiduciary duty).)

Only two of the four categories of speech protected by CCP § 425.16 are relevant here: statement(s) made in a public place relating to an issue of public interest; and other conduct in furtherance of the

Document received by the CA 4th District Court of Appeal Division 1.

exercise of the right to petition or speech in connection with a public issue or an issue of public interest. (CCP § 425.16(e)(3)-(4).)

"'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to'" CCP § 425.16 (*Greco v. Greco*, (2016) 2 Cal.App.5th 810, 819 (quoting *Navillier v. Sletten* (2002) 29 Cal.4th 82, 89) (emphasis in original); *see also Park,* 2 Cal.5th at p. 1061 (claims must have "minimal merit").)

Respondent's approvals are not entitled to protection under CCP § 425.16(e)(3) or (4), because the litigation funding furthered by the approvals related only to Mikkelson's, Green's, and Miller's personal business disputes with shareholders of two privately held companies, not speech or discourse concerning a public issue. This is not the type of conduct that the statute was intended to shield from liability at the pleading stage. (*See Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 816 (SLAPPs are "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so").)

Document received by the CA 4th District Court of Appeal Division 1.

Moreover, because the Advancement Allegations merely provide examples of and context for Respondent's fiduciary breaches when viewed without the Seventeenth and Eighteenth Causes of Action, they fall outside of the scope of CCP § 425.16. The Advancement Allegations no longer provide the basis for any cause of action and are merely incidental to Appellants' breach and removal claims.

Because the Advancement Allegations only further speech concerning a private dispute between shareholders of two closely held companies, and because they do not form the basis for any cause of action, the trial court erred in granting the Anti-SLAPP Motion as to the Advancement Allegations, and the August 28, 2019 Order should be reversed to keep the Advancement Allegations in the body of the TAC and within Appellants' Sixth and Ninth Causes of Action (for breach of fiduciary duty and removal of director respectively).

a)    *Respondent's Approvals of the Advancements Is Not in Furtherance of Speech or Petitioning on a Public Issue*

In order to succeed on a special motion to strike pursuant to CCP § 425.16, a defendant must show that its "'act underlying the plaintiff's cause of action was itself' a protected act.'" (*Gaynor, supra,*

Document received by the CA 4th District Court of Appeal Division 1.

19 Cal.App.5th at p 877 (citation omitted).) The first analysis identifies the activity that gives rise to the asserted liability, and whether that activity constitutes protected speech or petitioning. (See *id.*; *see also Greco*, 2 Cal.App.5th at p. 819.)

Respondent erroneously relies on CCP § 425.16 to disguise his self-interested approval of the Advancements as an act in furtherance of his speech and petitioning rights concerning an issue of *public interest*, simply by arguing that Snopes is popular and well-supported in *its* GoFundMe Campaign. (See CCP § 425.16(e)(4).) But the Advancement of fees for himself, Green, and Miller have nothing to do with speech for or about Snopes. This is a shareholder dispute. The speech which the Advancements purport to be furthering are the litigation conduct among individual shareholders in two private corporations, hardly the hallmark of a public issue.

The first analysis is whether Respondent's approvals of the Advancements constitute "other conduct in furtherance of the exercise of the [ ] right of petition or . . . free speech in connection with a public issue or an issue of public interest." (*Id.*)

The California Supreme Court in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 ("*FilmOn*") established a two-

part test: first asking what "'public issue or [ ] issue of public interests the speech in question implicates . . . by looking to the content of the speech," then asking "what functional relationship exists between the speech and the public conversation about some matter of public interest." (*Id.* at pp.149-150.)

The heart of this inquiry is "whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at p. 151.) In another case, the California Supreme Court provided the following guiding principles:

> We share the consensus view that 'a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest,' and that '[a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a larger number of people.'

(*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 (citation omitted).)

Short-changing what should be a considered inquiry, the trial court made no express findings as to how Respondent's approvals furthered speech on a public issue, implying that its finding from the Snopes' Anti-SLAPP Motion applied here as well. (8AA:1713

Document received by the CA 4th District Court of Appeal Division 1.

(Mikkelson Anti-SLAPP Order).) The trial court's findings on this point ignore the California Supreme Court's adept observation that in seeking anti-SLAPP protection "Defendants cannot merely offer a 'synecdoche theory' of public interest, defining their narrow dispute by its slight reference to the broader public issue." (*FilmOn, supra*, 7 Cal.5th at p. 152 (citation omitted); *see also Jeppson v. Ley* (Jan. 30, 2020, B292166) 44 Cal.App.5th 845 [2020 WL 486970, at *6]).)

Respondent has never explained the public issues or issues of public interest that are furthered by the speech at the heart of the Advancements. This is understandable, given that the Advancements provide prime examples of Mikkelson's breaches of fiduciary duties and grounds for removal as a Snopes director, and as such, merely furthered his own self-interest and that of Green and Miller in this litigation, a far cry from an issue of public concern, and far from what the legislature intended to protect by enacting CCP § 425.16. (*See FilmOn, supra*, 7 Cal.5th at p. 143 ("anti-SLAPP law was enacted to protect nonprofit corporations and common citizens from large corporate entities and trade associations' in petitioning government").)

Document received by the CA 4th District Court of Appeal Division 1.

Even beyond the fact that Respondent's approvals of the Advancements furthered no issue of public importance, the Advancement Allegations fall outside of the scope of CCP § 425.16's protections because—particularly without the Seventeenth and Eighteenth Causes of Action—they merely provide context and evidence of Respondent's breaches of fiduciary duty and grounds for his removal as director, and are inarguably relevant to those claims. The trial court's August 9, 2019 Order recognized this when it noted that "the gravamen of the claims are that Snopes' board improperly authorized the advancements" (6AA:1296), but the court erred by reversing itself on this point in the August 22, 2019 Order as concerns the Advancement Allegations, since those allegations are unprotected in the context of Appellants' breach of fiduciary duty and removal of director claims. (8AA:1705-1709 (Snopes Anti-SLAPP Order).)

Any arguable protection for the Advancement Allegations dissolves when viewing those allegations without the stricken Seventeenth and Eighteenth Causes of Action, and framed in the context of Appellants' claim for breach of fiduciary duty. It then

Document received by the CA 4th District Court of Appeal Division 1.

becomes clear that Respondent's over-reaching requests to strike weakened other unprotected claims against him, an error which this Court must correct.

For example, Respondent sought to strike from within Appellants' breach of fiduciary duty claim examples of his breaches: "misappropriating and embezzling Snopes . . . funds for personal expenses" (4AA:758 (TAC, ¶ 220(1)), defrauding other shareholders into agreeing to his misappropriation of those funds (4AA:758, ¶ 220(2)), and "directing . . . Snopes . . . to improperly advance personal legal expenses to [himself], Green and Miller" violating Corporations Code and Snopes Bylaws (4AA:758 (TAC, ¶ 220(10)). These are not allegations of conduct in furtherance of speech on a public issue, and fall well-outside the scope of the Anti-SLAPP statute.

Specifically, the Advancement Allegations are but one example of Respondent's course of conduct of using Company resources for his personal benefit unrelated to his work at Snopes, in the course of breaching his fiduciary duties to the Company and to Appellants. As other examples, the TAC lists: failing to discuss the termination of material contracts with significant shareholders, interfering with shareholders' ability to comply with obligations, inducing Green and

Document received by the CA 4th District Court of Appeal Division 1.

Miller to breach their contract and shareholder obligations to Appellants and to Proper, conspiring with Green to convert Proper property, failing to comply with shareholder books and records inspection requests, and failing to comply with the terms of his agreement with other shareholders to settle potential liabilities to Barbara. (4AA:758 (TAC, ¶ 220(3)-(9)).)

In this context, the Advancement Allegations themselves plainly do not constitute a separate cause of action, but are examples of Respondent's breaching pattern of conduct, and should not have been stricken from the TAC.

The Court of Appeal in *Gaynor, supra*, addressed a similar situation, where junior beneficiaries of a family trust brought claims against the trustees for breaching their fiduciary duties by "distributing Trust funds only to themselves and other senior beneficiaries" and by attempting to modify the terms of the trust "to create new trustee succession rules ensuring the cotrustees' . . . continued control over the Trust distributions." (*Gaynor, supra*, 19 Cal.App.5th at p. 869 (trustee's litigation funding from trust not protected where it formed part of his breaching conduct); *see also Sprengle v. Zbylut* (2015) 241 Cal.App.4th 140, 155-157 ("*Sprengle*") (no anti-SLAPP protection

for claims that attorney used client's funds to represent client's conflicted business partners).) The junior beneficiaries included within these allegations that the trustees "wrongfully withdrew Trust assets and then used these assets to file and defend probate petitions in attempting to persuade the probate court to adopt their plan." (*Gaynor*, *supra*, 91 Cal.App.5th at p. 869).)

As is the case here, in *Gaynor*, "[t]he allegations asserted as grounds for relief against [the trustee] were predicated on his taking actions to favor himself to the detriment of the [other] beneficiaries." (*Id.* at p. 879.) The court in *Gaynor* poignantly noted that there was nothing to suggest that allegations in a complaint should be "so narrowly pars[ed] . . . to trigger anti-SLAPP protection based solely on *illustrations* of alleged disloyal conduct by a fiduciary." (*Id.* at pp. 879-880 (emphasis added); *see also* *Sprengle*, *supra*, 241 Cal.App.4th at p. 155 (no protection for acts forming the basis of claims for breach of professional duties).)

Because the trustee's decision to fund the litigation represented a taking from the trust that furthered his breaches of duties to the junior beneficiaries, "the activity giving rise to the [ ] beneficiaries' alleged harm was the breach of loyalty in formulating and pursuing this plan

Document received by the CA 4th District Court of Appeal Division 1.

and the improper use of Trust assets to wrongfully benefit [the trustees]." (*Gaynor, supra,* at p. 880.) Here, as with *Gaynor,* "the wrongful conduct that produced [ ] injury was not the litigation itself; instead [it] was the result of [Respondent]'s formulation and advocacy of the plan to maintain control of [Snopes] to the detriment of other [shareholders]" and the use of Snopes' funds to do so. (*Id.* at p. 881.)

"If a fiduciary could strike breach of duty claims at the pleading stage before discovery and subject the beneficiaries to attorney fee awards, this would substantially burden a *beneficiary's* constitutional petition rights and undermine . . . protections for beneficiaries, thereby reducing the [ ] court's ability to monitor [fiduciary] activities." (*Id.* at p. 887 (emphasis added); Corp. Code § 309.)

Other courts have recognized this distinction as well. Caselaw "reflect[s] what we have described elsewhere, in a non-SLAPP context, as 'a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon a underlying course of conduct evidenced by the communication." (*Park, supra,* 2 Cal.5th at p. 1064 (citation omitted).)

At the heart of the Advancement Allegations lies the notion that Mikkelson's actions, in improperly approving the Advancements, was

Document received by the CA 4th District Court of Appeal Division 1.

a taking from Snopes and its shareholders for personal benefit—namely Mikkelson's, Green's, and Miller's defense and prosecution of personal claims against Appellants. It is this taking that forms at least in part Appellants' allegations of breach of fiduciary duty and provides the basis for their claim for removal of director, and it is this taking that is the "wrongful conduct at issue" with respect to those claims, not the approval itself, and that taking is not protected by CCP § 425.16(e)(4).

"The taking, whether or not it is actually wrongful and why, does not fall within any of the conduct described in [CCP § 425.16(e)]." (*See Greco, supra*, 2 Cal.App.5th at p. 824.) Here, as in *Greco*, the gravamen of Appellants' causes of action for breach of fiduciary duty and removal of director "for purposes of section 425.16 is the taking itself . . . ." (*Id.*) As such, it is not protected by the Anti-SLAPP statute, and the trial court erred in granting The Mikkelson Anti-SLAPP Motion as to the Advancement Allegations.

### 4. Appellants Can Show a Probability of Prevailing on the Merits

In any event, Appellants can demonstrate a probability of successfully showing that Respondent's approvals were unlawful under California Corporations Code and the Snopes' Bylaws. Specifically,

Document received by the CA 4th District Court of Appeal Division 1.

Appellants can show that Mikkelson, Green, and Miller were not made party to any proceeding by reason of the fact that they were agents of Snopes, and thus do not qualify for advancements pursuant to Corporations Code § 317 or the Snopes Bylaws.

Corporations Code § 317 only provides for indemnification and advancement of legal fees when a party to be indemnified or advanced legal fees is being sued "by reason of the fact" that he was a corporate agent. "The conduct of the agent which gives rise to the claim against him must have been performed *in connection with his corporate functions* and not with respect to purely personal matters." (*Plate v. Sun-Diamond Growers* (1990) 225 Cal.App.3d 1115, 1123 ("*Plate*") (emphasis added) (citation omitted); *see also APSB Bancorp v. Grant* (1994) 26 Cal.App.4th 926, 930-932.) Accordingly, this statute provides no protection when "personal motives, not the corporate good, are predominant in a transaction giving rise to the action." (*Plate, supra*, 225 Cal.App.3d at p. 1123.)

In this context, the thrust of Appellants' claims against Mikkelson, Green, and Miller plainly relate to actions taken by them to benefit their individual positions, not anything they did in their capacities as employees, officers, or directors of Snopes.

Document received by the CA 4th District Court of Appeal Division 1.

For example, with respect to Green and Miller, Appellants' claims relate solely to their wrongful actions in their individual capacities *as members of Proper*, before they were even employees or officers of Snopes. Advancements are improper where the claims to be defended bear no connection to their role as an employee or officer of Snopes. (*See, e.g.*, *Allergia, Inc. v. Bouboulis* (S.D. Cal. 2017) 229 F.Supp.3d 1150, 1157 ("*Allergia*") ("whether Defendant is entitled to advancement of his fees depends in part on whether he was sued 'by reason of the fact that' he was an agent, officer, or director of [company]"); *Plate, supra*, 225 Cal.App.3d 1115, 1123 (defendants not entitled to indemnification where actions were taken for their own personal benefit and not in role as employee or director of company from which indemnification was sought).)

Here, it is obvious that Mikkelson, Green, and Miller are not litigating claims incurred by virtue of the fact that they are agents of Snopes. In fact, with respect to Green and Miller, Appellants' claims are: breach of the Proper Operating Agreement (Second Cause of Action) (TAC, ¶¶ 179-184 (4AA:753)); breach of their fiduciary duties to Proper and its members (Eighth Cause of Action) (TAC, ¶¶ 241-258 (4AA:762-763)) and constructive trust over their fractionalized

Document received by the CA 4th District Court of Appeal Division 1.

portions of the Share (Tenth Cause of Action) (TAC, ¶¶ 257-268 (4AA:764-766)).

Appellants' claims against Respondent include: intentional interference with the Proper Operating Agreement (Third Cause of Action) (TAC, ¶¶ 185-192 (4AA:754)); breach of fiduciary duty (Sixth Cause of Action) (TAC, ¶¶ 212-225 (4AA:757-759)); and removal of director (Ninth Cause of Action) (TAC, ¶¶ 249-256 (4AA:763-764).)

*Allergia* is instructive. There, the U.S. District Court for the Southern District of California denied a motion for advancement of legal fees in a dispute among shareholders of a closely-held company. (*See Allergia, supra,* 229 F.Supp.3d at p. 1160.) The court found that defendant's efforts to defend against claims of breach of fiduciary duty, fraud, and declaratory judgment were simply the result of acts that "demonstrate[d] a motive to retain sole ownership [of a company asset]" and there was no discernable proof of "how any of these alleged actions benefit [the company] in any way or were performed by Defendant in furtherance of his corporate functions." (*Id.*)

The same is true here. Snopes' Bylaws allow for advancement of legal fees to the Company's agents sued "by reason of the fact" that he was an agent of Snopes. However, no sound argument can suggest that

Document received by the CA 4th District Court of Appeal Division 1.

the claims against Mikkelson, Green, and Miller relate to their acts in furtherance of Snopes' interests, rather than their own personal interests, and thus Appellants are likely to prove on the merits that the Advancements were improper corporate transactions. This is particularly true in light of the undisputedly precarious financial situation Snopes' legal spending has placed the Company since it started funding Mikkelson's, Green's, and Miller's personal legal fees, and given that the fees advanced have also advanced their affirmative counter-claims against Appellants. (*See* Corp. Code § 317(f) (permitting advancements of expenses "defending" proceedings).)

Similarly concerning is that Mikkelson, who was undisputedly interested in the outcome of the vote to approve the Advancements, was one of only two Snopes directors to vote on them, and should have been excluded from that vote by virtue of his personal interest in receiving the Advancements. (*See id* § 310(a).) At a minimum, as an interested director and whose facially self-interested approval of the Advancements is challenged in the Lead Case, Mikkelson must show that "the . . . transaction was just and reasonable to the corporation at the time it [was] authorized, approved or ratified." (*Id.*, § 310(a)(3).)

Document received by the CA 4th District Court of Appeal Division 1.

## B. Interpleader Appeal

### 1. Standard of Review

"The standard of review for an order granting a motion for summary judgment is de novo." (*Ryan v. Real Estate of the Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642 (reversing trial court order granting summary judgment) (citing *Aguilar v. Atl. Richfield Co.* (2001) 25 Cal.4th 826, 860 ("*Aguilar*")).) "In practical effect, [the appellate court] assume[s] the role of a trial court and appl[ies] the same rules and standards governing a trial court's determination of a motion for summary judgment." (*City of San Diego v. Haas* (2019) 207 Cal.App.4th 472 ("*Haas*") (citation omitted).)

### 2. The Trial Court Erred in Granting Respondent's Motion for Summary Judgment

As explained, the trial court granted Respondent's motion for summary judgment on his Interpleader cross-complaint on May 8, 2019 and subsequently issued judgment on that cross-complaint on May 29, 2019.

The court noted that Respondent "may not unilaterally decide how the [MSA] is interpreted and its effect on other parties." (5AA:1159 (Interpleader Order).) Yet, that is precisely what it allowed

Document received by the CA 4th District Court of Appeal Division 1.

Respondent to do by failing to evaluate Appellants' arguments in light of the most favorable factual inferences.

In granting summary judgment to Respondent, the trial court erred by:

1. Failing to credit reasonable competing inferences from relevant evidence and sworn testimony submitted by Appellants in opposition to the MSJ;

2. Finding as a matter of fact and law that the MSA governed Barbara's sale of the Note;

3. Finding as a matter of fact and law that the security interest in the Share referenced in the Personal Guarantees is a "part of" the share as Mikkelson and Barbara intended that phrase to mean when they entered into the MSA;

4. Finding as a matter of fact that Respondent would succeed in blocking Appellants' ownership over the Note and security interest as antithetical to the Snopes website and its purpose; and

5. Failing to deem valid the lawful elements and objects of the Assignment Contract and to sever such lawful elements from unlawful elements.

Document received by the CA 4th District Court of Appeal Division 1.

### 3. Multiple Material Issues of Fact Preclude Summary Judgment

Because summary judgment is a drastic remedy, and eliminates a party's right to trial, a moving party's papers should be strictly construed, and the opposing party's papers should be liberally construed, with any doubts about judgment resolved in favor of the opposing party. (*See Hepp v. Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 717 ("*Hepp*"); *Braco v. Kearney Moto Park* (1995) 37 Cal.App.4th 184, 189; *Haas, supra* 207 Cal.App.4th at pp. 486-487); *Weiss v. Chevron U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1097-1098.)

In moving for summary judgment, Respondent bears the burden to establish through the submission of evidence that there are no disputed issues of material fact, and that he is entitled to judgment as a matter of law. (*See Aguilar, supra*, 25 Cal.4th at p. 850 ("*Aguilar*"); *see also Palm Springs Villas II Homeowners Association, Inc. v. Perth* (2016) 248 Cal.App.4th 268, 278; *Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 363-364.) A defendant facing a summary judgment motion does not need to "conclusively negate an element of the plaintiff's cause of action." (*Aguilar, supra*, 25 Cal.4th at p. 853.)

Document received by the CA 4th District Court of Appeal Division 1.

The ultimate question is whether "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion." (*Id* at p. 845.)

The motion must be denied if "there is some evidence that, if believed, would support judgment in favor of the nonmoving party." (*California Traditions, Inc. v. Claremont Liability Ins. Co.* (2011) 197 Cal.App.4th 410, 416 (citation omitted); *see also* CCP § 437c(c) (summary judgment cannot be granted where there are competing inferences to be drawn from the evidence).) Respondent has hardly met his burden to show that he is entitled to judgment as a matter of law such that "the evidence available to the parties, and placed before the court in support of and opposition of the motion, raises no material issue that a trier of fact could resolve in favor of the party opposing the motion." (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.)

Courts have long recognized that, when presented with conflicting testimony, summary judgment is inappropriate. (*See Krieger v. Dennie* (1932) 123 Cal.App.Supp. 777, 781; *see Tully v. World Savings & Loan Association* (1997) 56 Cal.App.4th 654, 661 (reversing summary judgment where competing factual contentions "simply reduce[ ] the matter to a credibility contest").) Multiple issues

Document received by the CA 4th District Court of Appeal Division 1.

of material fact in Respondent's Interpleader cross-claim for declaratory relief rightfully preclude summary judgment. Appellants merely ask this Court to credit reasonable competing factual inferences and remedy the trial court's error.

a)    *Issue of Fact:  Whether the MSA Is Enforceable Against Appellants*

Respondent argues that the denial of his right of first refusal over Barbara's sale of the Note voided the Assignment Agreement because it violated the MSA. But Respondent presents no evidence that the MSA was ever intended to be interpreted against third parties in the first place, much less apply to conveyances of security interests. The fact that Respondent previously asked the Dissolution Court to deem the entire MSA provision relating to Snopes inapplicable shows that his current request to enforce the MSA against Appellants is a contrived effort at damage control, and that he is willing to ignore his previous well-considered divorce arguments to suit his needs here. Respondent should not be able to abuse the judicial process to suit his whim.

"Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose:

Document received by the CA 4th District Court of Appeal Division 1.

to protect the integrity of the judicial process." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 (internal quotation marks removed) (citation omitted); *see also Swahn Group v. Segal* (2010) 183 Cal.App.4th 831 (preclusion of inconsistent positions intended to keep litigants from playing "fast and loose with the courts").) "It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite." (*Id.*) Appellants are not asking for a literal application of judicial estoppel here, to prevent Mikkelson from even arguing his position, they merely raise this inconsistency to show a significant issue of fact concerning *Respondent's interpretation of the MSA*, and whether it applied to Barbara after she sold the Share to the Proper Buyers on July 1, 2016. The fact that Mikkelson's own positions about Paragraph 8 of the MSA are not consistent shows that this cannot be determined as a matter of law.

Respondent cannot credibly argue to the Dissolution Court on the one hand that the MSA provision related to Snopes "ceased to be applicable as of July 1, 2016, when [Barbara] sold her entire interest in [Snopes]" (5AA:1040), as he did in January 2017 to the Dissolution Court, while today asking this Court to interpret that very same

Document received by the CA 4th District Court of Appeal Division 1.

provision to Appellants' detriment. Respondent's previous sworn statements and judicial applications arguing that Paragraph 8 of the MSA should be deemed inapplicable after July 1, 2016 create an issue of fact as to whether that provision governs Barbara's sale of the Note to Appellants in October 2017, and how Respondent truly interprets that provision.

Respondent has already acknowledged in sworn testimony that Paragraph 8 of the MSA is inapplicable after July 1, 2016, and he should not be allowed to seek its protection at whim only when it benefits him. At a minimum, his previous legal arguments show that there is an issue of fact about whether the MSA even applies after July 1, 2016.

> b) *Issue of Fact: Whether the MSA Provides Respondent with a Right of First Refusal Over Sale of the Note*

As discussed above, the MSA provided a ten-day right of first refusal if Respondent or Barbara sought "to sell all or part of" their respective share in Snopes, and it is the parties' intent *at that time that governs*. (3AA:590 (MSA, ¶ 8); *see also* Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intentions of the parties as it existed at the time of contracting so far as the same is

ascertainable and lawful").) Respondent's Interpleader cross-claim against Appellants is entirely dependent on a finding of fact and law that a security interest – conveyed to the Proper Buyers' lender after Barbara sold them her entire Share – represents "part of" a Snopes share, as that term was understood when Respondent and Barbara entered into the MSA. This is plainly a disputed issue of material fact.

The trial court acknowledged that Respondent's declaratory judgment claim is a question of interpreting the MSA, but claimed that it needed to perform that interpretation "in the context of this case" and not within the context of what Respondent and Barbara originally intended. (5AA:1159 (Interpleader Order).) "Generally, if the terms of a contract are ambiguous, determining the contract's terms is a question of fact for the trier of fact, based on all credible evidence concerning the parties' intentions." (*Alexander v. Codemasters Group Ltd.* (2002) 104 Cal.App.4th 129, 147.)

Inconsistencies in Respondent's own sworn testimony and other disputed facts concerning the interpretation of the MSA, and whether it provides Respondent a right of first refusal over Barbara's "first priority security interest" in the Share, should be resolved by the jury, making summary judgment inappropriate.

Document received by the CA 4th District Court of Appeal Division 1.

As discussed above, in association with her sale of the Share, Barbara sold to the Proper Buyers "all of [her] right, title and interest in and to the Shares," and delivered the share certificate to the buyers. (5AA:963-964 (SPA, ¶¶ 1, 4(a)(ii)).) Under Commercial Code § 8302 the Proper Buyers acquired "all rights in the security that the transferor had or had the power to transfer" when Barbara delivered her share to them. (5AA:964 (SPA, ¶ 4(a)(ii).) Barbara could not have retained a "part of" her share when she delivered the certificated security to the Proper Buyers pursuant to Commercial Code § 8302.

After buying "all right, title and interest to the Share [ ]," the individual Proper Buyers then granted Barbara "a continuing first priority security interest in the Shares." (3AA:523 (Personal Guarantee, ¶ 2).)

Respondent recognized as much when he asked the Dissolution Court in January 2017 to deem the MSA inapplicable after July 1, 2016 as to its provisions relating to Snopes, so that he could keep Barbara from having any input into Snopes after July 1, 2016 (5AA:1035-1039 (Mikkelson Dissolution Reply).) At the time, Respondent argued that Paragraph 8 of the MSA (the foundation of his Interpleader cross-claim) was inapplicable, and should not apply after "July 1, 2016, the

Document received by the CA 4th District Court of Appeal Division 1.

date on which [Barbara] entirely divested herself of all interest in [Snopes] by selling her shareholding to" the Proper Buyers. (5AA:1028 (Mikkelson Dissolution Reply).)

Appellants only ask this Court to recognize these inconsistencies, which preclude summary judgment and should be resolved by the trier of fact. The mere presence of these competing inferences illustrates a genuine dispute of those facts. (*See Hepp, supra*, 86 Cal.App.3d at pp. 717-18.)

> c) *Issue of Fact: Whether the MSA Provides Respondent with the Right to Block the Sale of the Note*

Respondent also argues that he was denied his right to block the sale of the Note to Appellants on the basis that their ownership would be antithetical to the Snopes.com site. The MSA is clear that the ability to block a sale relates solely to the Buyer's intent for the site and its purpose, and does not contemplate legitimate business disputes such as those present here. There is no language to infer that any such provision was intended to apply to Snopes as a Company, or to any of the individual defendants. The MSA provides three specific examples of what would be "antithetical" to the site: (i) intending to dismantle the

Document received by the CA 4th District Court of Appeal Division 1.

site; (ii) using the site to trumpet untruthful points of view; or (iii) changing the site to a partisan website. (3AA:590-591 (MSA, ¶ 8).)

There are triable facts concerning whether Appellants' ownership is antithetical to the Site. The trial court made no examination of Appellants' objective. A quick analysis confirms that there is great uncertainty about Respondent's ability to block the sale of the Note as antithetical under the MSA. His present claim that Appellants would harm the Company is simply unsupported when placed under any scrutiny, particularly considering that he had previously made no effort to block the July 2016 sale, and in fact introduced the Proper Buyers to Barbara to encourage the sale. (5AA:1046 (Barbara Decl., ¶ 19).)

The trial court glossed over this disputed material fact. Appellants' disputes with Respondent and Snopes have never been about the site, and in fact, Appellants promised in their Personal Guarantees that Snopes could remain intact and retain sole ownership of its assets. (3AA:523 (Personal Guarantee, ¶ 2).) Appellants have given no indication that they intend to dismantle Snopes.com, use it to trumpet lies, or make Snopes politically partisan.

Document received by the CA 4th District Court of Appeal Division 1.

Most critically, the Proper Buyers already owned a 50% interest in the Company that they had originally purchased from Barbara, which Mikkelson approved. Accordingly, Mikkelson failed to execute his right of first refusal on the first sale, and made no claims that the sale was either antithetical to the site, or that the sale would have diminished his authority. Given that Respondent had previously approved what he claims to have understood as a sale of all of Barbara's Share to the very same buyers, he faces an uphill battle in showing that Appellants would harm Snopes.com or its purpose, when the only thing that has changed in the interim is the legitimate business dispute underlying this litigation. As Snopes shareholders, Appellants have no interests in undermining the Snopes.com website or its purpose.

> d)    *Issue of Fact:  Whether the Assignment of the Note Deprived Respondent of Authority*

Mikkelson's argument that the assignment of the Personal Guarantees deprived him of authority is a red-herring. This is merely a misguided attempt to create an additional secondary obligation that is the same as both the right of first refusal and the ability to block a sale.

Put simply, Respondent provides no independent basis to find his authority was undermined if: Paragraph 8 of the MSA no longer applies

Document received by the CA 4th District Court of Appeal Division 1.

after July 1, 2016; the MSA does not clearly provide for a right of first refusal over the Note; or it could be reasonably concluded that Appellants' purchase of the Note would not be antithetical to the Snopes.com site or its purpose. Respondent argues no independent basis for finding that the Assignment Contract deprived him of any authority.

### 4. Even If the Note Security Interest Is "Part Of" the Share, It Can Be Severed from Other Elements of the Assignment Contract

Even if this Court finds that the security interest is void and unlawful, it should at least correct the trial court's failure to sever the problematic elements of the contracts from the lawful aspects.

Although the court below properly noted that the Assignment Contract, in assigning the security interests to Appellants, allowed them to gain ownership over the Share if Proper defaulted on the Note, it also ignored other valuable assets that were assigned to Appellants which are not arguably problematic under the MSA. For example, the Note itself evidences a debt and as such is a negotiable instrument. (*See* Comm. Code § 3104.) Similarly, the Personal Guarantees, separate and aside from the security interest in the Share, are individual guarantees of the Note, on which Appellants could collect, even if this Court finds

that the transfer of the security interest was unlawful. Specifically, the Note can be lawfully transferred, as can the Personal Guarantee—it is merely the security interest and the ability to foreclose that Respondent now argues violate the terms of the MSA.

Civil Code § 1599 provides that where "a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." (*Id.*) To void the entire Assignment Contract on the basis that the security interest was void would be to deprive Appellants of any value from the asset—which still represents a valid debt and personal guarantees of that debt, even if not secured by any collateral.

Although the Interpleader MSJ conflates the Note and the security interest in the Personal Guarantees, and the trial court's May Interpleader Judgment does the same, there is no reason why the security interests—the only part of the Assignment Contract that the trial court found problematic—are not severable from the Note and the Personal Guarantees.

"Two reasons to sever illegal terms rather than void the entire contract are (1) to 'conserve a contractual relationship [without] condoning an illegal scheme,' and (2) 'prevent parties from gaining

Document received by the CA 4th District Court of Appeal Division 1.

undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly where there has been full or partial performance of the contract." (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1523-24; *see also MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 803 (same) (overarching inquiry is whether interests of justice would be furthered by severance).) Both reasons are present here. The contractual relations among the parties can be maintained without including the security interest within the scope of the Assignment, and the failure to sever essentially strips Appellants of any value from these assets.

"'California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered.'" (*Koenig v. Warner Unified School Dist.* (2019) 41 Cal.App.5th 43, 56 (quoting *Adair v. Stockton Unified School Dist.* (2008) 162 Cal.App.4th 1436, 1450.)

Should this Court find assignment of the security interest unlawful, the relevant contractual relationships can be reasonably preserved by simply voiding the assignment of the security interest while affirming the validity of the sale of the Note and Personal

Document received by the CA 4th District Court of Appeal Division 1.

Guarantees (without valid security interests). Severing under those circumstances would also preserve some of the value for which Appellants paid when they bought the Note from Barbara, while the only part of the Assignment Contract that Mikkelson takes issue with is the assignment of the security interest in the Snopes Share.

## V.   **CONCLUSION**

For the reasons set forth above, the Court should reverse the Interpleader Judgment in its entirety, and the Anti-SLAPP Order as to the Advancement Allegations in the context of the breach of fiduciary duty and removal of director claims only.

Dated: February 25, 2020     HRUTKAY LAW PC

Matthew Hrutkay
Attorneys for Defendants/Cross-
Defendants/ Cross-Complainants/
Appellants
CHRISTOPHER RICHMOND and
DREW SCHOENTRUP

Document received by the CA 4th District Court of Appeal Division 1.

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief is set using 14-pt Times New Roman. According to Microsoft Word, the computer program used to prepare this brief, this brief contains 13,539 words, excluding the cover, certificate of interested parties, tables, signature block, and this certificate.

The undersigned certifies that this brief complies with the form requirements set by California Rules of Court, rule 8.204(b) and contains fewer words than permitted by rule 8.204(c), 8.360(b), 8.412(a) or by Order of this Court.

Dated: February 25, 2020

Matthew. J. Hrutkay

Document received by the CA 4th District Court of Appeal Division 1.

## PROOF OF SERVICE VIA TRUEFILING
## ON THE PARTIES AND SUPREME COURT

I am a resident of the State of California, over the age of eighteen years. My business address is Hrutkay Law PC, 600 W. Broadway, Suite 700, San Diego, California 92101. My electronic service address is jennifer.wolber@hrutkaylaw.com.

On February 25, 2020, I caused **Appellant's Opening Brief and Appendix Volumes 1-8** to be electronically filed in PDF format via TrueFiling and served on the parties below pursuant to Cal. Rule of Court 8.78(2)(B). The transmission was complete and confirmed.

| | |
|---|---|
| Richard P. Sybert<br>Kimberly D. Howatt<br>Holly L.K. Heffner<br>GORDON REES SCULLY<br>MANSUKHANI, LLP<br>101 W. Broadway, Suite 2000<br>San Diego, CA 92101 | Attorneys for Defendant / Cross-Complainant / Cross-Defendant / Respondent DAVID MIKKELSON<br><br>Tel: (619) 230-7461<br>Email: rsybert@gordonrees.com<br>khowatt@gordonrees.com<br>hheffner@gordonrees.com |
| Paul A. Tyrell<br>Ryan C. Caplan<br>Jacob Kozaczuk<br>PROCOPIO, CORY,<br>HARGREAVES & SAVITCH<br>LLP<br>525 B Street, Suite 2200<br>San Diego, CA 92101 | Attorneys for Lead Case Defendant / Cross-Complainant / Respondent SNOPES MEDIA GROUP, INC.<br><br>Tel: (619) 238-1900<br>Email: paul.tyrell@procopio.com<br>ryan.caplan@procopio.com<br>Jacob.kozaczuk@procopio.com |
| Supreme Court of California<br>350 McAllister Street<br>San Francisco, CA 94102-4797 | *efiling satisfies the requirements for service on the Supreme Court under Cal. Rule of Court 8.212(c)(2).* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Jennifer Wolber

Document received by the CA 4th District Court of Appeal Division 1.

<u>**PROOF OF SERVICE VIA U.S. MAIL**</u>
<u>**ON THE SUPERIOR COURT**</u>

I am a resident of the State of California, over the age of eighteen

years and not a party to this action. My business address is Hrutkay

Law PC, 600 W. Broadway, Suite 700, San Diego, California 92101.

On February 25, 2020, I caused **Appellant's Opening Brief** to

be served on the parties below, by placing the document(s) listed above

in a sealed envelope, addressed as set forth below. I am readily familiar

with this business's practice of collection and processing

correspondence for mailing. Under that practice, correspondence would

be deposited in the ordinary course of business with the U.S. Postal

Service on that same day with postage thereon fully prepaid.

| San Diego County Superior Court Appeals Department Attn: Hon. Richard S. Whitney Central Courthouse, 2nd Floor 1100 Union Street San Diego, CA 92101 | (*Appendix intentionally omitted pursuant to instruction by the Court of Appeal*) |
|---|---|

I declare under penalty of perjury under the laws of the State of

California that the foregoing is true and correct.

Jennifer Wolber

Document received by the CA 4th District Court of Appeal Division 1.

## PROOF OF SERVICE – ELECTRONIC COURTESY COPY
## ON PARTIES IN THE UNDERLYING ACTION

I am a resident of the State of California, over the age of eighteen years. My business address is Hrutkay Law PC, 600 W. Broadway, Suite 700, San Diego, California 92101. My electronic service address is jennifer.wolber@hrutkaylaw.com.

On February 25, 2020, I caused electronic notification of *Appellant's Opening Brief and Appendix Volumes 1-8* to be delivered to the parties below. No error was received on the transmission. "Electronic notification" means the notification of the party or other person that a document is served by sending an electronic message to the electronic address at or through which the party or other person has authorized electronic service (Dropbox), specifying the exact name of the document(s) served, and providing a hyperlink at which the served document may be viewed and downloaded.

| | |
|---|---|
| John. S. Kyle, Esq.<br>Jeffrey B. Harris, Esq.<br>KYLE HARRIS LLP<br>450 B. Street, Suite 1410<br>San Diego, CA 92101 | Attorneys for Lead Case Defendants / Cross-Complainants / Interpleader Defendants VINCENT GREEN AND RYAN MILLER<br><br>Tel: (619) 600-0086<br>Email: jharris@klhipbiz.com<br>jkyle@klhipbiz.com |
| Erin M. Hickey:<br>Law Office of Erin M. Hickey, Esq.<br>888 Prospect Street, Suite 200<br>La Jolla, CA 92037 | Tel: (858) 208-3742<br>Email: erin@hickey.law |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Jennifer Wolber

Document received by the CA 4th District Court of Appeal Division 1.