HRUTKAY LAW PC
MATTHEW HRUTKAY, Bar No. 297485
matt.hrutkay@hrutkaylaw.com
600 W. Broadway, Suite 700
San Diego, CA. 92101
Tel: (858) 868-0018

TENCER SHERMAN LLP
PHILIP C. TENCER, ESQ., Bar No. 173818
Phil@TencerSherman.com
12520 High Bluff Drive, Suite 230
San Diego, CA 92130
T: 858.408.6900
F:858.754.1260

*Attorneys for Plaintiff*
*CHRISTOPHER RICHMOND*

UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RICHMOND, an individual; <br><br> Plaintiff, <br><br> v. <br><br> DAVID MIKKELSON, an individual; BRAD WESTBROOK, an individual; and DOE DEFENDANTS 1-10, inclusive <br><br> Defendants, <br><br> and <br><br> SNOPES MEDIA GROUP, INC. <br><br> Nominal Defendant. | Case No: 3:20-cv-01925-W-KSC <br><br> **PLAINTIFF'S OMNIBUS OPPOSITION TO MOTIONS TO DISMISS THE VERIFIED FIRST AMENDED COMPLAINT BROUGHT BY NOMINAL DEFENDANT SNOPES MEDIA GROUP, INC. AND DEFENDANTS DAVID MIKKELSON AND BRAD WESTBROOK** <br><br> **Date:**      **January 25, 2021** <br> **Dept:**      **3C** <br> **Judge:**      **Hon. Thomas J. Whelan** |

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY .....................2

III.   LEGAL STANDARD ............................................................................5
       A.  Rule 12(b)(6) Pleading.................................................................5
       B.  Rule 9(b) Pleading.......................................................................6

IV.    ARGUMENT.........................................................................................7
       A.  Richmond Is an Appropriate Representative Shareholder to Bring
           Derivative Claims........................................................................7
           1.  Richmond is Adequate to Represent Similar Shareholders.................9
               a)  The First Seven *Lawson* Factors...........................................9
               b)  The Eighth *Larson* Factor Shows that Plaintiff is Free From
                   Economic Interests that Are Antagonistic to the Interests of Similarly
                   Situated Shareholders.....................................................10
                   (1) Richmond's State Action Show No Antagonism.....................11
                   (2) Richmond Is Not a Competitor of Snopes............................12
                   (3) The Interpleader Action Is Not a Personal Dispute...............12
           2.  Snopes' Adequacy Argument Ignores the Practical Reality.............13
       B.  Plaintiff Has Adequately Pleaded Demand Futility................................13
           1.  Rule 23.1 Demand Futility.........................................................13
               a)  Mikkelson Obtained a Personal Benefit and Faces Substantial
                   Personal Liability. .......................................................14
               b)  Westbrook Is Interested Because He Faces Substantial Personal
                   Liability ....................................................................15
       C.  The Derivative Claims Satisfy Rule 12(b)(6) Pleading Standards .........15
           1.  The Derivative Claim for Fraud Against Mikkelson is Proper...........15
               a)  Mikkelson Faces Substantial Personal Liability.....................17
           2.  The Negligent Misrepresentation Claim is Properly Pled ...............18
           3.  The Unjust Enrichment Claim is Properly Pled............................18
           4.  The Aiding and Abetting Fraud Claims are Properly Pled...............19
       D.  The Breach of Fiduciary Duty Claim is Properly Pled .......................20
       E.  Res Judicata Is Inapplicable and Does Not Bar Derivative Claims.........21
           1.  Affirmative Defense of Res Judicata ......................................21
           2.  Richmond's Claims Here Assert Different Primary Rights ...............22

V.     THERE IS NO BASIS FOR JURISDICTIONAL DISCOVERY .................23

VI.    LEAVE TO AMEND SHOULD BE GRANTED .................................24

VII.   CONCLUSION.................................................................................25

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

i

# TABLE OF AUTHORITIES

**Cases**

*Agarwal v. Johnson,*
    25 Cal. 3d 932 (1979)..................................................................22

*Albino v. Baca,*
    747 F.3d 1162 (9th Cir. 2014)......................................................5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................6

*In re BofI Holding, Inc. Shareholder Litig.,*
    2017 WL 3394344 (S.D. Cal. Aug. 8, 2017) ..............................13

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008)....................................................24

*Brightwell v. McMillan Law Firm,*
    2017 WL 1653427 (S.D. Cal. May 2, 2017)..........................3, 12

*Charnay v. Cobert,*
    145 Cal. App. 4th 170 (2006)....................................................18

*Concordia v. Bendekovic,*
    693 F.2d 1073 (11th Cir. 1982)..................................................23

*Copper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997)........................................................6

*County of San Bernardino v. Walsh,*
    158 Cal.App.4th 533 (2007)......................................................18

*Di Fernano v. Intrexon Corp.,*
    2017 WL 3641879 (S.D. Cal. Aug. 24, 2017) .............................6

*ESG Capital Partners, LP v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016)............................................5, 6, 16

*Fiol v. Doellstedt,*
    50 Cal. App. 4th 1318 (1996)....................................................19

*Foss on behalf of Quality Systems Inc. v. Barbarosh*
    2018 WL 5276292 (C. D. Cal. July 25, 2018) ..........................14

*Garden City, Inc. v. San Jose,*
    2013 WL 4766748 (N.D. Cal. Sept. 5, 2013) .......................22, 23

*In re GlenFed, Inc. Securities Litig.,*
    42 F.3d 1541 (9th Cir. 1994)..................................................7, 16

*Jones v. H.F. Ahmanson & Co.,*
    1 Cal. 3d 93 (1969)....................................................................21

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

ii

*Laduca v. Swirsky*,
   2003 WL 22078372 (N.D. Ill. Sept. 5, 2003) ...................................................7

*Larson v. Dumke*,
   900 F.2d at 1367 (9th Cir. 1990)............................................................*passim*

*Lazar v. Superior Court*,
   12 Cal. 4th 631 (1996)......................................................................................15

*Lee v. Verimatrix, Inc.*,
   2020 WL 4747751 (S.D. Cal. Aug. 17, 2019) ..................................................6

*Loomis v. Slendertone Distribution, Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) .......................................................7, 11

*Maldonado v. Harris*,
   370 F.3d 945 (9th Cir. 2004).........................................................................22

*McCoy v. Kazi*,
   2010 WL 11465064 (C.D. Cal. Aug. 2, 2010) ..................................................8

*McElrath v. Kalanick*,
   224 A.2d 982 (Del. 2019).............................................................................13

*Morris v. Blank*,
   94 Cal. App. 4th 823 (2001)...........................................................................21

*Natomas Gardens Investment Grp. LLC v. Sinadinos*,
   2009 WL 1363382 (E.D. Cal. May 12, 2009)................................................11

*Ontiveros v. Constable*,
   245 Cal. App. 4th 686 (2016).........................................................................4

*Palm Springs Villas II Homeowners Assn, Inc. v. Parth*,
   248 Cal. App. 4th 268 (2016).......................................................................20

*Patrick v. Alacer Corp.*,
   167 Cal. App. 4th 995 (2008).....................................................................5, 14

*People ex rel. Harris v. Rizzo*,
   214 Cal. App. 4th 921 (2013).......................................................................20

*Puri v. Khalsa*,
   674 Fed. Appx. 679 (9th Cir. 2017) ..............................................................11

*Qingdao Tang-Buy Int'l Import & Export Co., Ltd. v.
   Preferred Secured Agents, Inc.*,
   2015 WL 7776331 (N.D. Cal. Dec. 3, 2015)....................................................6

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993)...............................................................................14

*RePet, Inc. v. Zhao*,
   2016 WL 11518482 (C.D. Cal. June 28, 2016) ......................................7, 8, 10

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

iii

*Richter v. CC-Palo Alto, Inc.*,
    2017 WL 4236992 (N.D.Cal. Sept. 25, 2017) ......................................8, 11, 12

*Rosenbloom v. Pyott*,
    765 F.3d 1137 (9th Cir. 2014).......................................................................13

*Schaffer Family Investors, LLC v. Sonnier*,
    120 F. Supp. 3d 1028 (9th Cir. 2015) ...........................................................24

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009)...........................................................................6

*U.S. v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016).........................................................................6

*Vasquez v. Los Angeles County*,
    487 F.3d 1246 (9th Cir. 2007)......................................................................5, 6

*Wyatt v. Terhune*,
    315 F.3d 1108 (9th Cir. 2003).........................................................................5

*Zimmerman v. City of Oakland*,
    255 F.3d 734 (9th Cir. 2001)...........................................................................6

**Rules**

California Corporations Code § 317..........................................................1, 16, 17, 19

Fed. R. Civ. P. 23.1(a) ...............................................................................7, 8, 9, 13

Fed. R. Civ. P. 9(b).........................................................................................6, 7, 16

Fed. R. Civ. P. 12(b)(6) ...........................................................................................9

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

iv

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Plaintiff Christopher Richmond ("Richmond") respectfully submits this Omnibus Opposition to Motions to Dismiss the Verified First Amended Complaint ("VFAC") Brought by Nominal Defendant Snopes Media Group, Inc. and Defendants David Mikkelson and Brad Westbrook.

On December 16, 2020, Nominal Defendant Snopes Media Group, Inc. ("Snopes") filed a Motion to Dismiss the VFAC (the "Snopes Motion"). That same day, defendants David Mikkelson ("Mikkelson") and Brad Westbrook ("Westbrook"; together with Mikkelson, "Individual Defendants") filed a Motion to Dismiss the VFAC (the "Individuals' Motion"; together with the Snopes Motion, the "Motions"). This Opposition constitutes an omnibus response to both the Snopes Motion and the Individuals' Motion. For the reasons set forth below herein, the Motions should be denied in entirety.

## I.   **INTRODUCTION**

Since Richmond and his business partners bought a single share of Snopes stock (representing a 50% interest in the company) in July 2016,[1] Mikkelson, holder of the other share, who is also Snopes' President, CEO, a Director, and Chair of the Board, has used his control (and the company's resources) to engage in a series of corporate actions that have harmed Snopes. Westbrook, Snopes' CFO and a Director, aided and abetted in Mikkelson's and other Snopes officers' efforts to fraudulently obtain legal fee advancements from Snopes for their personal claims in an action that is still pending in California Superior Court in San Diego County (the "State Action").[2] These advances are treated as loans pursuant to California Corporations Code § 317, with repayment required if indemnification is improper.

Making the situation worse, the Individual Defendants deducted the legal fee advancements from Snopes' income on its 2017 and 2018 tax returns (and possibly

---

[1] At the time they bought the Snopes share, the company was known as Bardav, Inc.
[2] *Proper Media, et al. v. Snopes Media Group, Inc.*, Superior Court of the State of California, County of San Diego, Case No. 2017-37-00016311-CU-BC-CTL.

1

2019 as well), even though a final decision on indemnification has not been made. As such, the legal fees *cannot* represent current Snopes business expenses because repayment from Mikkelson, and the other defendants in the State Action, Vincent Green ("Green") and Ryan Miller ("Miller") remains a real possibility.[3]

Defendants' Motions cobble together thousands of pages of exhibits to distract from the troubling allegations of self-dealing by Mikkelson and others, with Westbrook's assistance. The selectively cite to disputed facts in the State Action pleadings to paint Richmond as trying to seize "control" over Snopes by asserting shareholder rights. In stark contrast to Mikkelson, Green, and Miller, Plaintiff has received no personal benefit from his interest in Snopes. He and the other minority shareholders have been given the short end of the stick, and Defendants, including Nominal Defendant Snopes (who is actually supposed to be *adverse* to Defendant Mikkelson) have made every effort to keep the Individual Defendants from being held accountable.

Because the VFAC more than adequately states derivative claims and direct claims against Mikkelson and Westbrook, the Court should deny the Motions.

## II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

In July 2016, the five members of Proper Media, LLC ("Proper Media") (Richmond, Schoentrup, Dunn, Green and Miller), jointly purchased the Snopes' Share previously owned by Barbara Mikkelson, Defendant Mikkelson's ex-wife, representing a 50% interest in Snopes. (VFAC, ¶¶ 19, 20.) Between July 1, 2016 and May 4, 2017, and while still members of Proper Media, Green and Miller conspired with Mikkelson to intentionally frustrate the working relationship between Snopes and Proper Media. (*Id.*, ¶¶ 21-22.) This conspiracy was predicated on an agreement

---

[3] Green and Miller, along with Richmond and two others, Drew Schoentrup ("Schoentrup") and Tyler Dunn ("Dunn") were all members of Proper Media until Spring 2017. They purchased the Snopes share (the "Share") from Mikkelson's ex-wife, Barbara Mikkelson in July 2016.

2

HEULKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

wherein Green and Miller would support Mikkelson in his efforts to use his 50% interest in Snopes to obtain control over the Company, and then to leverage that control to use Snopes' business operations and funds to personally benefit himself, Green, and Miller. (*Id.*, ¶ 22.) To effectuate this scheme, Green and Miller agreed to support Mikkelson's efforts to fractionalize the Share, and to vote their newly created fractional equity interests in Snopes as directed by Mikkelson. (*Id.*, ¶¶ 22, 23.)

These events gave rise to claims in the State Action against Mikkelson, Green, and Miller, which primarily focused on his intentional assistance to Green and Miller to breach their fiduciary duties to Proper, his acts taken to advance his personal interests to the detriment of Snopes and its minority shareholders, and the invalidity of Mikkelson's controlling corporate acts. Mikkelson, Green, and Miller brought numerous cross-claims against Richmond and others, all in their individual capacities, and unrelated to their roles as employees, officers, and/or agents of Snopes (*Id.*, ¶¶ 29-30), including claims by Green and Miller related solely to employment at Proper Media, alleging they were improperly terminated from Proper. (*See* Plaintiff's Request for Judicial Notice ("Plaintiff's RJN"), Ex. A (Green and Miller Second Amended Cross-Complaint in the State Action), ¶¶ 119-213).

On April 4, 2019, Richmond and the other plaintiffs in the State Action filed the Third Amended Complaint ("TAC"), which included derivative causes of action on Snopes' behalf for violations of Bus. & Prof. Code § 17200, *et seq.* ("Unfair Competition Law") and rescission (among others). (ECF No. 11-4 (Individual Defendants' Request for Judicial Notice ("Individuals' RJN"), Ex. 2 (TAC), ¶¶ 302-325, 336-350.)[4] These derivative claims were subsequently stricken on August 22, 2019, and August 28, 2019. (*See generally* ECF No. 11-13 (Individuals' RJN, Ex. 11

---

[4] "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" (*Brightwell v. McMillan Law Firm*, No. 16-CV-1696 W (NLS), 2017 WL 1653427, at *2 (S.D. Cal. May 2, 2017).) Plaintiff's objections to Defendants' respective requests for judicial notice are filed concurrently herewith.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

3

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101

(State Action order dated Aug. 22, 2019 ("Snopes' Anti-SLAPP Order")); ECF No. 11-14 (Individuals' RJN, Ex. 12 (State Action order dated Aug. 28, 2019 ("Mikkelson Anti-SLAPP Order").) In striking these causes of action, the California Superior Court found only that plaintiffs lacked *standing* to bring claims because they "have not shown an injury in fact of 'lost money or property'" to support an Unfair Competition Law claim because plaintiffs did not "assert Mikkelson, Miller, and Green have been indemnified nor that their undertakings have failed." (ECF No. 11-13 (Snopes Anti-SLAPP Order) at 5; ECF No. 11-14 (Mikkelson Anti-SLAPP Order) at 4.)

After seeing a few limited financial documents, and attending a March 26, 2020 Snopes Board meeting, Richmond first received Snopes' 2017 and 2018 tax returns, which showed the deduction of the legal fee advancements as corporate business expenses and the substantiality of the legal fees advanced. (VFAC, ¶¶ 56-58.). Richmond raised these concerns with Snopes' counsel, but Snopes took no identifiable action in response. (*Id.*, ¶¶ 55-56.) On September 25, 2020, Richmond brought this action (the "Action").

On December 2, 2020, Plaintiff filed the VFAC, the operative pleading, which was served on Defendants the same day. Defendants filed their Motions on December 16, 2020.[5] For the reasons set forth below, the claims asserted either derivatively or

---

[5] Snopes and the Individual Defendants have served Plaintiff and his counsel with motions for sanctions under FRCP 11, likely to improperly "intimidate an adversary into withdrawing contentions that are fairly debatable", "create a conflict of interest between attorney and client", or "to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine." (FRCP 11 (Comments to 1993 Amendment); *see also* Declaration of Matthew Hrutkay in Support of Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss), ¶¶ 2, 3, Exs. 1, 2. of M. Hrutkay in support of omnibus opposition to motions to dismiss).) This provides a strong inference that Snopes is plainly acting as an adversary to Richmond, who is bringing these derivative claims for Snopes' ultimate benefit, despite the fact that Mikkelson's and Snopes' respective interests in this Action are adversarial. (*See Ontiveros v. Constable*, 245 Cal. App. 4th 686, 696 (nominal defendant corporation

4

1 directly by Richmond in this Action are proper and the Motions should be denied in
2 entirety.

3 **III.   LEGAL STANDARD**

4      Mikkelson and Westbrook move to dismiss on multiple grounds, including: (i)
5 res judicata; (ii) Richmond lacks standing; (iii) Richmond is an inadequate
6 representative; (iv) failure to state derivative claims under FRCP 12(b)(6); and (v)
7 the direct claims fail as a matter of law.  Snopes also seeks to dismiss the derivative
8 claims on similar grounds: (i) failure to plead demand futility; (ii) claims are barred
9 by res judicata; and (iii) Richmond is an inadequate representative. For the reasons
10 below, the motions to dismiss should be denied.

11      Because the claims are being brought on Snopes' behalf, however, and because
12 Snopes is a nominal party, it cannot challenge the merits. (*See Patrick v. Alacer
13 Corp.*, 167 Cal. App. 4th 995, 1005 (2008) (California, like other jurisdictions "have
14 explicitly constrained a corporation's ability to challenge the merits of a derivative
15 action") (citations omitted).) Doing so "would allow the [individual defendant] to
16 shift the cost of his defense of the derivative suit to the corporations against which
17 he has allegedly committed tortious conduct." (*Id.* at 1007.)

18 **A.   Rule 12(b)(6) Pleading**

19      In deciding a 12(b)(6) motion, the Court accepts as true all material allegations,
20 "and construe[s] the complaint in a light most favorable to the non-moving party."[6]
21 (*Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).) Dismissal is
22 inappropriate where a complaint alleges "facts that 'state a claim to relief that is
23 plausible on its face.'" (*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031

24 _____

25 has interests that are adverse to derivative individual defendant directors and
officers); *see also supra*, at 7, n.4.)

26 [6] The use of materials from the State Action is limited. "[T]aking judicial notice of
27 findings of fact from another case exceeds the limits of Rule 201." (*Wyatt v. Terhune*,
315 F.3d 1108, 1114 (9th Cir. 2003) (overruled on other grounds by *Albino v. Baca*,
28 747 F.3d 1162 (9th Cir. 2014)).)

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

5

1   (9th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678) (.) "Dismissal for failure

2   to state a claim is appropriate only 'if it appears beyond doubt that the [non-moving

3   party] can prove no set of facts in support of his claim which would entitle him to

4   relief.'" (*Vasquez*, at 1249 (citing *Zimmerman v. City of Oakland*, 255 F.3d 734, 737

5   (9th Cir. 2001)).) Claims that are not founded in fraud are only subject to the minimal

6   notice pleading requirements of Rule 8(a)(2), making a short and plain statement

7   sufficient to survive a motion to dismiss. (*ESG*, *supra*, at 1032.)

8       **B.      Rule 9(b) Pleading**

9       Plaintiff's fraud claims are subject to the heightened pleading requirement of

10  Rule 9(b), which requires pleading "with particularity the circumstances constituting

11  fraud or mistake." (FRCP 9(b).) This standard is met by allegations about "the 'who,

12  what, when, where, and how' that would *suggest* fraud, rather than a business mistake

13  viewed with the benefit of hindsight." (*Copper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

14  1997); *see also Di Fernano v. Intrexon Corp.*, No. 16-CV-1826 W (JMA), 2017 WL

15  3641879, at *2 (S.D. Cal. Aug. 24, 2017) (emphasis added).) Although fraud claims

16  must also allege intent, these allegations "may be alleged generally." (FRCP 9(b).)

17      Critically, the heightened pleading requirement "does not 'reflect a

18  subscription to fact pleading' and requires only 'simple concise, and direct'

19  allegations of the 'circumstances constituting fraud,' which after *Twombly* must

20  make relief plausible. . . when taken as true." (*U.S. ex rel. Grubbs v. Kanneganti*, 565

21  F.3d 180, 186 (5th Cir. 2009); *see also Qingdao Tang-Buy Int'l Import & Export Co.,*

22  *Ltd. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2015 WL 7776331, at

23  *7 (N.D.Cal. Dec. 3, 2015)

24      What matters is that the allegations "give defendants notice of the particular

25  misconduct which is alleged to constitute the fraud charged so that they can defend

26  against the charge and not just deny that they have done anything wrong." (*See, e.g.,*

27  *Lee v. Verimatrix, Inc.*, No. 19-cv-2054-W (BLM), 2020 WL 4747751, at *4 (S.D.

28  Cal. Aug. 17, 2020) (citing *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180

HEITKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

6

(9th Cir. 2016); *see also Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1072 (S.D. Cal. 2019).) Scienter need not be alleged on particularized facts: "Rule 9(b)'s pleading requirement for scienter is satisfied by 'aver[ring] scienter generally, just as the rule states—that is simply by saying that scienter existed.'" (*In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541 (9th Cir. 1994); *see also Loomis,* 420 F. Supp. 3d at 1072-1073.)

## IV.   <u>ARGUMENT</u>

### A.   **Richmond Is an Appropriate Representative Shareholder to Bring Derivative Claims**

A shareholder can bring derivative claims under FRCP 23.1 to enforce rights that the corporation "may properly assert but has failed to enforce," as long as the plaintiff "fairly and adequately represent[s] the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." (FRCP Rule 23.1(a).) A derivative plaintiff thus represents only those shareholders who are *similarly situated*, not necessarily *all* shareholders.

"Defendants bear the burden of proof to show Plaintiff is not an adequate representative under Rule 23.1"[7] (*RePet, Inc. v. Zhao*, Case No. EDCV 15-2315-VAP (SPx), 2016 WL 11518482, at *5 (C.D. Cal. June 28, 2016) (finding plaintiff an adequate representative despite pending litigation with the company).)

*Larson v. Dumke* laid out the factors to determine if a plaintiff has "the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to [similarly situated shareholders]." (900 F.2d 1363, 1367 (9th Cir. 1990).) The *"Larson* Factors" include:

(1) indications that the plaintiff is not the true party in

---

[7] Mikkelson and Westbrook have no grounds to raise an adequacy challenge, since they have no legally identifiably interest in assuring that the representative bringing claims against them is "adequate." (*Laduca v. Swirsky*, No. 02 C 8597, 2003 WL 22078372, at *3 (N.D. Ill. Sept. 5, 2003) (denying motion to disqualify).) Their adequacy argument should be ignored outright.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

7

1
2
3
4
5

> interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by attorneys over the litigation; (4) the degree of support received from other shareholders; . . . (5) the lack of any personal commitment to the action on the part of the representative plaintiff[ ]; . . . (6) the remedy sought by plaintiff in the derivative action; (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and (8) plaintiff's vindictiveness toward the defendants.

6
7

(*RePet*, 2016 WL 11518482, at *5 (quoting *Larson*, 900 F.2d at 1367) (internal

8

quotation marks omitted).)[8] Because this is such a fact-intensive analysis, arguments

9

as to adequacy of a shareholder representative are "difficult [ ] to sustain on a motion

10

to dismiss." (*Richter v. CC-Palo Alto, Inc.*, No. 5:14-cv-00750-EJD, 2017 WL

4236992, at *8 (N.D. Cal. Sept. 25, 2017).)[9]

11
12
13
14
15
16
17
18

    In this action, Plaintiff is similarly situated with only two other Snopes shareholders: Schoentrup and Dunn. Collectively, they are the only minority shareholders and they have been pushed out and marginalized by Mikkelson's power-hungry control of Snopes. (VFAC, ¶¶ 22, 24.) It defies logic to argue that Mikkelson, Green, and Miller, would or could adequately represent Richmond, Schoentrup, or Dunn's minority interests here, particularly given they have used their majority voting block to perform abusive acts and have done as they wished with Snopes to personally benefit themselves, as alleged in the VFAC. (*Id.*, ¶¶ 22, 24, 30-40.)

19

///

20

///

21

///

22

23
24
25
26
27
28

---

[8] Citing to *Kenneth v. Yeung Chi Shing Holding (Delaware), Inc.*, Snopes argues that the inquiry into antagonistic interests is separate from *Larson* Factors. *See* (ECF No. 12-1 (Snopes' Motion) at 21:6-8.) *Larson* makes clear that the factors are important in determining "the adequacy of representation by a derivative plaintiff."(900 F.2d at 1367; *see also McCoy v. Kazi*, 2010 WL 11465064, at *2 (C.D. Cal. Aug. 2, 2010) (*Larson* Factors are "instructive" as to adequacy of derivative plaintiff).)

[9] *Richter* also noted the lack of authority "advocat[ing] for a Rule 23.1 dismissal for lack of adequacy at the pleading stage." (*Richter*, 2017 WL 4236992, at *8.)

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

8

1. <u>Richmond is Adequate to Represent Similar Shareholders</u>

    a)    The First Seven *Lawson* Factors

The first *Lawson* Factor is any indication that plaintiff "is not the true party in interest." (*Larson*, 900 F.2d at 1367.) Here, there is no such indication, and Defendants make no such argument. Thus, the first factor supports a finding that Richmond is an adequate representative. [10]

Defendants make no argument that Plaintiff Richmond is either unfamiliar with the litigation or unwilling to learn about this Action. (*See Larson*, 900 F.2d at 1367.) Instead, Richmond's participation in this and the State Action evidence that he is familiar with the litigation and knows the facts and circumstances of his derivative claims well. Thus the second factor supports a finding that Richmond is an adequate representative of similarly situated shareholders under Rule 23.1.

Third, the Court considers "the degree of control exercised by the attorneys over the litigation." (*Id.*) Here, there is no evidence that Richmond's attorneys have exercised *any* degree of control over his claims or this Action generally, and Defendants have not advanced any argument to that effect. The third factor thus also supports a finding that Richmond is an adequate representative.

As to the fourth factor, it is reasonable to infer from the allegations in the VFAC that all *similarly situated* shareholders, namely Schoentrup and Dunn, support the derivative claims. Thus, this fourth factor favors Richmond's status as derivative plaintiff. (*Id.*)

Snopes argues that the fifth *Larson* factor shows inadequacy, namely that Richmond has a "lack of personal commitment to the action," because this action seeks to compensate Snopes for the personal legal fee advancements and/or indemnification fraudulently obtained by Mikkelson, as well as Green and Miller. (*Id.*; *see also* ECF No. 12-1 (Snopes Motion) at 24:12-20.) Not only would

---

[10] Defendants perform no analysis of the first four *Larson* factors.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

1  Defendants' argument require this Court to presume a devious intent from filing this

2  action, this argument is unrelated to whether Richmond is committed to *this* Action.[11]

3      The sixth factor, the remedy sought in the derivative action, also supports a

4  finding that Richmond is an adequate representative. *See Larson*, 900 F.2d at 1367.

5  Specifically, in this Action, Richmond seeks on Snopes' behalf damages incurred

6  from the fraudulent Undertakings. Richmond is not seeking personal compensation

7  by the derivative claims. Defendants also argue that the sixth factor shows

8  Richmond's inadequacy because the derivative claims seek damages from *other*

9  directors but not himself. (ECF No. 12-1 (Snopes Motion) at 24:21-25:3). Given that

10 Richmond played no role in approving the legal fee advancements at issue, Snopes'

11 point here fails. (*RePet*, 2016 WL 11518482, at *6 (Plaintiff adequate representative

12 in derivative action where he "was not a [ ] board member when Defendants

13 committed the alleged fraud").) Richmond's request for damages, interest, and

14 attorney fees against the directors involved in the fraudulent undertakings, does not

15 disqualify him as an adequate representative for Snopes.

16     In assessing the seventh factor, courts "assess[ ] the relative value of the claims

17 involved to determine whether the plaintiff was an adequate representative." (*Id.* at

18 *5 (quoting *Larson*, 900 F.2d at 1367).) Where there is no meaningful information

19 showing that "the value of his derivative claims was 'dwarfed by his interest'" in the

20 individual direct claims in the State action, there is no reason to find inadequacy

21 based on the seventh factor. (*Id.*)

22         b)   The Eighth *Larson* Factor Shows that Plaintiff is Free From
              Economic Interests that Are Antagonistic to the Interests of
23            Similarly Situated Shareholders

24     Richmond's remaining direct claims in the State Action, and his previous

25 efforts to assert his rights as a Snopes shareholder show no hostility. Although there

26 may be situations where personal litigation evidences antagonism, there is no conflict

27 ────────────────
   [11] If anything, Plaintiff has shown his personal commitment to this action by his

28 steadfast resistance to Defendants' control over Snopes.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:20-CV-01925-W-KSC

here, particularly given that Richmond and his personal litigation are supported by all "similarly situated shareholders" (namely Schoentrup and Dunn).

### (1)   Richmond's State Action Show No Antagonism

"'[T]here is no *per se* rule prohibiting shareholders from simultaneously bringing both direct and derivative actions,' and that the better reasoned and predominant rule is to look behind the surface duality of the two types of actions and allow them to proceed [ ] unless an actual conflict emerges." (*Natomas Gardens Investment Grp. LLC v. Sinadinos*, 2009 WL 1363382, at \*15 (E.D. Cal. May 12, 2009).)[12] Participation in a direct action or other litigation with the company or its directors does not alone create a disqualifying conflict. These "unpersuasive" arguments "rel[y] on a superficial view of both facts and law, and place entirely too much emphasis on direct claims." (*Richter*, 2017 WL 4236992, at \*8.)[13]

Defendants' false image of Plaintiff endeavoring to control Snopes are belied by the facts. Mikkelson holds a 50% interest in Snopes and he is an officer and chair of its board of directors. (VFAC, ¶ 10.) Any argument that Richmond's litigation in the State Action evidences a personal vendetta against Defendants, and an effort to "control" the company, is without merit. Richmond could never control Snopes, and does not want to.

Richmond's efforts in the State Action show his dedication to ensuring that Snopes is properly and independently managed, and not simply used as a personal

---

[12] In *Zarowitz v. BankAmerica Corp.*, the derivative plaintiff was disqualified because his personal litigation strategy of settling on behalf of his fellow shareholders created an inherent conflict of interest. (866 F.2d 1164, 1166 (9th Cir. 1989).)

[13] *Kenneth v. Yeung Chi Sheng Holding (Delaware), Inc.*, is easily distinguishable. (2020 WL 409010 (N.D. Cal. Jan. 24, 2020).) There, the derivative plaintiff had filed no less than five separate lawsuits addressing the same fundamental facts within 18 months, showing a pattern and practice not found here. (*Id*. at \*5.) The plaintiff in *Puri v. Khasla* similarly had "*frequently* been adverse . . . in other litigation *across multiple jurisdictions*" and sought relief that "would leave them in complete control of the organizations whose interests they purport to represent." (674 Fed. Appx. 679, 683 (9th Cir. 2017).)

11

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

1  ATM to pay for Mikkelson's personal legal disputes.[14] In fact, Richmond's efforts to

2  protect Snopes from the Individual Defendants' mismanagement is evidence that he

3  has no vendetta against Snopes or its shareholders who are similarly situated to him.

4  In any event, the State Action does not create any conflict for Richmond as a

5  derivative plaintiff, because he "will not be forced to choose between [his] personal

6  interests and those of [similarly situated shareholders] because those interests

7  coincide." (*Richter*, 2017 WL 4236992, at * 8.)

8                               (2)     Richmond Is Not a Competitor of Snopes.

9         Citing to self-serving briefs it filed in the State Action, Snopes argues that

10  Richmond should be disqualified because he is a competitor of Snopes.[15] (ECF No.

11  12-1 (Snopes Motion) at 23:20-21 ("Richmond and his companies are competitors of

12  Snopes").   Leaving out any detail, Snopes proffers that because Richmond is a

13  member of Proper Media (which obtains revenue from online advertising), it is a

14  competitor, which conflicts Richmond. (*Id.* at 23:20-21). These unsupported

15  arguments rely on disputed facts that cannot be resolved here, and for that reason,

16  should be ignored.

17                               (3)     The Interpleader Action Is Not a Personal Dispute.

18         Snopes also argues that the existence of a personal action brought by Snopes

19  against all shareholders in interpleader ("Interpleader Action") constitutes a

20  disqualifying personal dispute with Mikkelson. This argument takes the Interpleader

21  Action out of context. The Interpleader Action was brought by Snopes purportedly

22  to resolve ownership over the single share in Snopes that was originally jointly

23  purchased by the then-members of Proper Media, including Richmond, Schoentrup

24  _____

25  [14] Defendants cite no evidence of Plaintiff's intent because there is no evidence of a
vendetta. In any event, it is a disputed factual issue not to be resolved here.

26  [15] Snopes' citation to its own argumentative State Action brief provides the only

27  support for their claim that Richmond is Snopes' competitor, but it cannot be
judicially noticed for the truth of the matter asserted therein, and accordingly, this

28  argument should be stricken entirely. (*Brightwell*, 2017 WL 1653427, at *2.)

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

12

and Dunn (all of whom are still members of Proper Media), and Green and Miller (both of whom later joined Mikkelson to form a majority Snopes voting block). The only relevant dispute here is what is contained in the VFAC, namely, Mikkelson's submission of fraudulent undertakings to defend personal claims.

2.  Snopes' Adequacy Argument Ignores the Practical Reality

Regardless of the weight given to the *Larson* factors, the fact that there are only six total shareholders, three on each side of all disputes, bears consideration. Taken to its logical conclusion, any shareholder other than Green, Mikkelson, or Miller would be ineligible to represent minority shareholder interests. Logically, Richmond is one of the only shareholders who would file this Action, and is doing so on behalf of Snopes, because he has concerns, about the harm being caused under Defendants' control. Richmond is more than adequate to represent the interests of the minority shareholders who are similarly situated. (*See Puri v. Khalsa*, 674 Fed. Appx. 679, 682 (9th Cir. 2017) ("issue is whether [representative's] interest are antagonistic to *those plaintiff is seeking to represent*.") (emphasis added); FRCP 23.1(a).)

**B.  Plaintiff Has Adequately Pleaded Demand Futility**

1.  Rule 23.1 Demand Futility

"[W]hen assessing a motion to dismiss for failure to comply with the requirements of Federal Rule 23.1 . . . , a court should credit the shareholders with 'all reasonable factual inferences that logically flow from the particularized facts alleged." (*In re BofI Holding, Inc. Shareholder Litig.*, No. 3:15-cv-2722-GPC-KSC, 2017 WL 3394344, at *4 (S.D. Cal. Aug. 8, 2017).) Plaintiff Richmond has sufficiently alleged the reasons that such a demand would have been futile, satisfying the requirements of Rule 23.[16]

Demand is futile "[w]hen [a] board is disabled . . . because of interestedness *or* lacking independence from those who are interested . . . ." (*McElrath v. Kalanick*,

---

[16] Demand futility is governed by the state of incorporation, here California. (*See, e.g., Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014).)

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

224 A.2d 982, 987 (Del. 2019).) The test established by the Supreme Court of Delaware in *Rales v. Blasband*, is applicable here and assesses "'whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations.'" (*Id.* at 991 (quoting *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993)).) Demand is futile where there is "a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to the demand." *Id.*[17]

"A director is interested if . . . she would face a substantial likelihood of personal liability for the conduct alleged in the complaint." (*Id.*) When a director is indemnified, a substantial likelihood of liability exists where a plaintiff pleads "with particularity that the directors acted with scienter, meaning 'they had actual or constructive knowledge that their conduct was legally improper.'" (*Id.*) "In other words, directors are liable for 'subjective bad faith' when their conduct is motivated 'by an actual intent to do harm,' or when there is an 'intentional dereliction of duty, a conscious disregard for one's responsibilities.'" (*Id.* at 991-92.)[18] Given that Mikkelson and Westbrook together comprise two-thirds of the Snopes board, and are personally interested in this Action, any demand that they initiate litigation against themselves on Snopes' behalf would be futile.

a)      Mikkelson Obtained a Personal Benefit and Faces Substantial Personal Liability.

Presuming the allegations and reasonable inferences as true, Mikkelson and Westbrook each have a personal interest making demand futile. Snopes paid Mikkelson's legal fees in the State Action that he otherwise would have paid,

---

[17] Snopes defies the principle that a nominal corporate defendant should not be adverse to the shareholder plaintiff. (*Patrick*, 167 Cal. App. 4th at 1005.)

[18] The derivative claims in *Gordon v. Bindra*, were dismissed without allegations of "any facts showing any involvement" by the directors. (2014 WL 2533798, at * 5 (C.D. Cal. June 5, 2014)). Similarly, *Foss on behalf of Quality Systems Inc. v. Barbarosh*, lacked allegations that the director was involved in drafting or preparing the misleading documents. (2018 WL 5276292, at *7 (C.D. Cal. July 25, 2018)).

14

1  providing him with a personal benefit that simply cannot be denied. (VFAC, ¶¶ 30-

2  40.)  Mikkelson also stood to benefit from aiding and abetting Green and Miller's

3  fraudulent Undertakings, given that they are co-defendants in the State Action and

4  given allegations that they collectively conspired to harm Proper Media.  (VFAC,

5  ¶¶ 21-29.) Finally, Richmond has stated valid claims against Mikkelson that subject

6  him to a substantial likelihood of personal liability. The potential for substantial

7  liability further evidences his personal interest in the avoidance of initiating

8  litigation, making demand futile.

9             b)    Westbrook Is Interested Because He Faces Substantial
                    Personal Liability
10

11      Richmond does not allege that Westbrook derived any benefit from the

12  fraudulent Undertakings or advancement of personal legal fees. Regardless, as

13  discussed below in response to the Rule 12(b)(6) arguments, Richmond states valid

14  claims against Westbrook that subject him to a substantial likelihood of personal

15  liability. This makes Westbrook an interested director, making any demand that

16  Westbrook approve the filing of this Action futile.

17  **C.    The Derivative Claims Satisfy Rule 12(b)(6) Pleading Standards**

18      1.    The Derivative Claim for Fraud Against Mikkelson is Proper

19      Fraud claims must allege: "(a) misrepresentation (false representation,

20  concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

21  defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."

22  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).)

23      Richmond alleges that Mikkelson's Undertaking "state[s] falsely and

24  misleadingly that the claims for which [he] sought advances were brought as and

25  against 'agents' of Snopes" and failed to disclose that Mikkelson, Green, and Miller

26  also intended to use, and used, those funds to file affirmative claims in their

27  individual capacities.[19] (VFAC, ¶¶ 34, 35.) These are material misrepresentations.

28  [19] *Wood v. Baum* provides no support for Defendants' position. While directors may

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Richmond also alleges why the Undertakings representations were misleading: "claims were brought against Mikkelson, Green, and Miller in their individual capacities . . . . [and] Mikkelson, Green, and Miller brought numerous cross-claims against Richmond and others, all in their individual capacities, and unrelated to their roles as employees, officers, and/or agents of Snopes." (*Id.* at ¶ 29.) Presuming these allegations and reasonable inferences true, falsity has been pled.

Richmond also properly alleges scienter. Rule 9(b) requires only general allegations of scienter, "simply [ ] saying that scienter existed." (*In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541 (9th Cir. 1994) (overruled by statute on other grounds). Here, Richmond creates a strong inference that Mikkelson understood the false and misleading nature of the statements in the Mikkelson Undertaking, which subject him to substantial personal liability. Specifically, the allegations in the VFAC, and reasonable inferenced drawn therefrom, show that Mikkelson, as an individual party to the claims and cross-claims in the State Action, understood that the claims against him were in his personal capacity, and that he could be personally liable for any damages stemming from those State Action claims.[20] (VFAC, ¶¶ 29, 34, 35, 38, 59, 60); *see also ESG*, 828 F.3d at 1031 (claim need only be plausible on its face).)

---

rely on information provided by management, here, management and directors are one in the same. (953 A.2d 136, 142 (Del. 2008) (approval of a transaction *without more* is insufficient basis to infer bad faith).)

[20] The Individual Defendants argue that the determination of whether Mikkelson was an "agent" of Snopes with respect to the claims in the State Action is a matter of law. (ECF No. 11-1 (Individuals' Motion) at 19:21-22.) California's Corporations Code says otherwise. Indemnification is properly authorized only "upon a determination that indemnification of the agent is proper in the circumstances . . . ." (Cal. Corp. Code § 317(e).) Although cross-claims may be permissible, here, the fact that Mikkelson's cross-claims were brought in his personal capacity and clearly to provide a benefit to him is the problem. He sought a finding that Green and Miller have individual voting interests in the Share, and thus could vote in alignment with him to affirm his controlling actions. ECF No. 11-30 (Defendant Mikkelson's cross-complaint in the State Action), ¶¶ 34-45.)

16

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Richmond also alleges intent to induce reliance: Mikkelson, Green, and Miller "[e]ach intended that Snopes' Board rely on the[ false and misleading] statements in considering and approving advances of personal legal fees." (VFAC, ¶ 35.) Indeed, if Snopes' reliance was unreasonable, Snopes would have no security for the advancements.

Finally, Richmond has alleged that Snopes was injured because its funds have been used to further the personal litigation interests of Mikkelson with no identifiable benefit to Snopes or its shareholders, and because Mikkelson is unable to, and would be unable to, satisfy his repayment obligations pursuant to the Undertakings. (*Id.*, ¶63.)[21] Thus, the false and misleading statements in the Undertakings also made funds unavailable for operational purposes, and Snopes has no security interest protecting against loss should indemnification be deemed improper. (*Id.*)

a)     Mikkelson Faces Substantial Personal Liability

Even though Snopes' articles of incorporation allows for director indemnification, corporate indemnification is unavailable to Mikkelson because Richmond has alleged numerous facts supporting a strong inference that Mikkelson would face a substantial likelihood of personal liability. As alleged, his Undertaking was false and misleading, creating a reasonable inference that, in submitting the fraudulent Undertaking, Mikkelson was not acting "in good faith and in a manner [he] reasonably believed to be in the best interests of the corporation." (Cal. Corp. Code § 317(b) (stating limitations on indemnification for claims brought "by reason of the fact that the person is or was an agent of the corporation.)[22] Because these

---

[21] Richmond alleges damages and why he was unable bring claims earlier, given he first saw the financials reflecting Snopes' advancements after the March 13, 2020 board meeting. (VFAC, ¶¶ 50-57.) Snopes implicitly acknowledges that Mikkelson, Green and Miller would be unable to repay the advanced fees by arguing that without the advances they would be unable to pay for their defense. (ECF No. 12-1 (Snopes Motion) at 23:4-16 (if the advances are illegitimate, Mikkelson, Green and Miller will be unable to obtain the legal funds needed).

[22] Richmond's allegations preclude indemnification under Cal. Corp. Code

17

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

allegations would fall outside of the scope of Snopes' permissible indemnification, Mikkelson faces substantial personal liability.

### 2.   The Negligent Misrepresentation Claim is Properly Pled

"The elements of negligent misrepresentation are similar to intentional fraud except for the requirement for scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." (*Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006).)

Richmond alleges that Mikkelson, in his Undertaking, made false and misleading statements, that he intended for Snopes to rely on the statements, and that Snopes suffered as a result. Based on the scienter allegations above, it is reasonable to infer that even if Mikkelson did not ***know*** that his statements in the Undertaking were false and misleading, he lacked any reasonable ground for believing the statement to be true. Richmond states a claim for negligent misrepresentation.

### 3.   The Unjust Enrichment Claim is Properly Pled

"Unjust enrichment is an equitable doctrine that underlies 'various legal doctrines and remedies.' It is based on the idea that no one should not be permitted to unjustly enrich themself at the expense of another, but should be required to make restitution as to the property or benefits received, retained, or appropriated, where it is just and equitable for such restitution to be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." (*County of San Bernardino v. Walsh*, 158 Cal.App.4th 533, 542 (2007).)

---

§204(a)(10). Given the overlapping roles that Mikkelson and Westbrook play at Snopes, § 204(a)(10)(C) prohibits indemnification "of an officer for any act or omission as an officer, notwithstanding that the officer is also a director or that his or her actions, if *negligent* or improper, have been ratified by the directors." This applies with equal force to each of the other derivative causes of action alleged against Mikkelson, including claims for unjust enrichment and aiding and abetting fraud.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

1  Even if Richmond fails to prove fraud, if Mikkelson used Snopes funds for his

2  own personal claims in the State Action, and if that provided him an unjust benefit at

3  Snopes expense, a claim for unjust enrichment has been stated.

4          4.     The Aiding and Abetting Fraud Claims are Properly Pled

5       Aiding-and-abetting liability is established where a defendant "(a) knows the

6  other's conduct constitutes a breach of duty and gives substantial assistance or

7  encouragement to the other to so act or (b) gives substantial assistance to the other in

8  accomplishing a tortious result and the person's own conduct, separately considered,

9  constitutes a breach of duty to the third person." (*Fiol v. Doellstedt*, 50 Cal. App. 4th

10  1318, 1325-1326 (1996).)

11       Mikkelson aided and abetted Green and Miller's submission of fraudulent

12  Undertakings, by approving them knowing that they were premised on false and

13  misleading statements and material omissions. (VFAC, ¶¶ 34, 35, 38). These

14  undertakings were legally required (*see* Corp. Code § 317(f)), they formed the basis

15  (and security) for Snopes' personal legal fee advancements, and without these

16  undertakings, Snopes could not have provided the advancements. (VFAC, ¶¶ 34, 35,

17  75-82, 86). These allegations support a finding that: (i) Green and Miller's

18  Undertakings were false and misleading, or omitted material facts necessary to make

19  them *not* misleading (*i.e.*, they accomplished a tortious result) (*id.*, ¶¶ 34, 35); and (i)

20  Mikkelson gave substantial assistance to Green and Miller in the accomplishment of

21  that tortious result, in breach of his duty to Snopes (*id.*, ¶ 38.)

22       Richmond also alleges that Westbrook breached his duty to Snopes by

23  approving Snopes' payment of invoices submitted by Mikkelson, Green, and Miller

24  that exceeded the scope of the permissible advancements pursuant to the

25  Undertakings. (VFAC, ¶ 39). Approving invoices for personal legal fees constitutes

26  a breach of his duties as Snopes' CFO and substantially assisted Mikkelson's,

27  Green's, and Miller's fraudulent acts that damaged Snopes. Even if Westbrook was

28

HEUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:20-CV-01925-W-KSC

negligent in approving the submitted invoices, that breach of his duties as CFO substantially assisted the fraudulent acts that caused tortious results to Snopes.

### D.     The Breach of Fiduciary Duty Claim is Properly Pled

Richmond states a direct claim against Mikkelson and Westbrook for breach of fiduciary duty. "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 950 (2013).) It is undisputed that as directors and senior officers of Snopes, Mikkelson and Westbrook owed fiduciary duties to Snopes and its shareholders, including the duties of loyalty and care. (VFAC, ¶¶ 88-90).

Richmond alleges that Mikkelson and Westbrook were substantially involved in Snopes' day-to-day operations as officers and directors (in fact they stated that they both worked at Snopes 100% of the time) (*id.*, ¶¶ 42, 46), that the 2017 and 2018 Snopes income tax returns included as a deductible expense advances of legal fees to Mikkelson, Green, and Miller despite the fact that those amounts were still owed to Snopes (*i.e.*, they had not been discharged following a finding that indemnification was proper) (*id.*), and that Mikkelson directed the filing of these inaccurate income tax returns despite his knowledge that they did not truly reflect Snopes' business expenses (*id.*, ¶¶ 44, 48). Further, Defendant Westbrook, as Snopes' CFO, caused Snopes to file these inaccurate income tax returns knowing that they did not accurately reflect Snopes' income. (*Id.*, ¶¶ 45, 49).

The business judgment rule provides no basis for dismissal under FRCP 12(b)(6) at this stage of the pleadings, because it is inherently fact based as to whether a director or officer "'acted as an ordinarily prudent person under similar circumstances' and 'made a reasonable inquiry as indicated by the circumstances.'" (*Palm Springs Villas II Homeowners Assn, Inc. v. Parth*, 248 Cal. App. 4th 268, 281 (2016) (noting that these decisions are generally left to a trier of fact).)

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Richmond was personally injured by Snopes' submission of income tax returns that inaccurately underreported Snopes' taxable income, because Snopes' improper deductions of the legal fee advancements to Mikkelson, Green, and Miller "caused an improper calculation of the taxes to be paid by each individual shareholder, [and] also resulted in an overall underpayment of income taxes with respect to Snopes' 2017 [and 2018] income and the related penalties." (*Id.*, ¶¶ 43, 47.) These allegations, presumed true at this stage of the Action, state a claim for breach of fiduciary duty against both Mikkelson and Westbrook, and need not be brought derivatively.

It is ultimately irrelevant if other Snopes shareholder suffered similar injuries to Plaintiff – that does not mean that this is a cause of action that properly belongs to Snopes as a corporation. "The individual wrong necessary to support a suit by a shareholder need not be unique to that Plaintiff. The same injury may affect a substantial number of shareholders. If the injury is not incidental to an injury to the corporation, an individual cause of action exists." (*Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 107 (1969).)

**E.    Res Judicata Is Inapplicable and Does Not Bar Derivative Claims**

1.    <u>Affirmative Defense of Res Judicata</u>

Defendants argue that because the court in the State Action granted Snopes' Anti-SLAPP Motion, Richmond is precluded from bringing the derivative claims spelled out in the VFAC under the doctrine of res judicata. "In order for res judicata to apply, the cause of action in the subsequent litigation must be identical to that in the first." (*Morris v. Blank*, 94 Cal. App. 4th 823, 831 (2001).) It "does not apply to issues not raised by the complaint and not actually litigated and necessarily decided in the prior litigation." (*Id.* at 832.)

For res judicata to apply, "(1) a 'claim or issue raised in the present action' must be 'identical to a claim or issue litigated in a prior proceeding.' (2) the prior proceeding must have 'resulted in a final judgment on the merits,' and (3) 'the party against whom the doctrine is being asserted must have been in privity with a party to

21

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

1   the prior proceeding.'" (*Garden City, Inc. v. San Jose*, No. CV 13-0577 PSG, 2013

2   WL 4766748, at *6 (N.D.Cal. Sept. 5, 2013).)

3        2.   Richmond's Claims Here Assert Different Primary Rights

4        "Under the 'primary rights' theory . . . there is only a single cause of action for

5   the invasion of one primary right. But the significant factor is the harm suffered; that

6   the same facts are involved in both suits is not conclusive." (*Agarwal v. Johnson*, 25

7   Cal. 3d 932, 954 (1979).) Here, it is apparent that this Action seeks redress for a

8   separate and distinct primary right of Snopes from those at issue in the State Action.

9        At issue in the State Action's derivative rescission claim was Snopes' right to

10  be free of self-interested decisions made by conflicted directors such as Defendant

11  Mikkelson that were in violation of California law, and to rescission of any improper

12  acts by the board of directors. The harm or injury was Snopes' improper and void

13  board decision. The State Action's derivative Unfair Competition Law claim

14  redressed Snopes' loss of a *competitive* advantage, including Snopes' "web property

15  Snopes.com's reputation and goodwill as a leading fact checking and news

16  debunking resource." (ECF No. 11-4 (State Complaint), ¶ 321.)

17       "[E]ven though two suits involve the same nucleus of facts, they do not

18  necessarily raise the same cause of action under California law." (*Maldonado v.

19  Harris*, 370 F.3d 945, 953 (9th Cir. 2004).) The primary rights here concern the

20  damage to Snopes from: (i) Defendant Mikkelson's submission of a fraudulent

21  undertaking to secure his own personal advancement from Snopes; (ii) his execution

22  of the Green and Miller Consents knowing that they were based on fraudulent

23  statements; and (iii) Westbrook's approval of invoices that he knew "exceeded the

24  scope of the Undertakings and approvals granted by Snopes' Board." (ECF No. 9

25  (VFAC), ¶¶ 58-63, 75-86.) "Because the primary rights . . . are different, the causes

26  of action are also different, and the judgment . . . in the [state] action therefore does

27  not bar any of [Plaintiff's] federal claims." (*Maldonado*, 370 F.3d at 952.)

28

1  Snopes argues that its "primary right at issue is the right to be free from the
2  improper advancement of litigation funding," and that Plaintiff "sought recovery for
3  these same damages in the State Action." (ECF No. 12-1 (Snopes Motion) at 15:1-6)
4  But this paints with too broad a brush, and ignores the injuries each cause of action
5  sought to redress: lost competitive advantage and unauthorized board transactions.
6  (*Garden City*, 2013 WL 4766748, at *7 (prior complaint alleging constitutional
7  violations no bar to subsequent action bringing constitutional claims).)

8  The issue here is whether the current claims are identical – they are not.[23] New
9  information unavailable to Richmond prior to 2020 makes clear that these claims
10  could not have been previously brought in the State Action—the damage to Snopes
11  from the Individual Defendants fraudulent actions was not ascertainable until
12  Richmond was finally provided with Snopes' financial records and income tax
13  returns in early 2020. (ECF No. 9, ¶¶ 50-56.) Accordingly, Defendants fail to prove
14  their res judicata affirmative defense. (*Concordia v. Bendekovic*, 693 F.2d 1073,
15  1075 (11th Cir. 1982) ("Res judicata, . . . is not a defense under 12(b); it is an
16  affirmative defense that should be raised under Rule 8(c)").)

17  ## V.  <u>THERE IS NO BASIS FOR JURISDICTIONAL DISCOVERY</u>

18  Defendants Mikkelson and Westbrook seek jurisdictional discovery because
19  Richmond once lived in and owned real properties in San Diego. They merely dispute
20  the jurisdictional allegations of the VFAC, based on their unsupported statement that
21  "Richmond does not own any properties in Puerto Rico and has no registered vehicle
22  in Puerto Rico." (Individuals' Motion at 26:22-24.).

23  They acknowledge Richmond's formation of and membership in a Puerto Rico
24  LLC. But they only speculate that jurisdictional discovery will "reveal" something

25  ───────────────
26  [23] Individual Defendants' argument that the Snopes Anti-SLAPP Order found that
27  Mikkelson's and Westbrook's *approvals* of the advancements was within the scope
   of anti-SLAPP protections (ECF No. 11-1 (Individuals' Motion) at 10:26, 14:20,
28  16:25-26, 17:3), underscores the clear distinction between the State Action claims
   and the claims here.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

wholly irrelevant and unsubstantiated. (*Id.* at 26:27-27:3.) They fail to explain the relevance of discovery into Publife.

Mere belief that "jurisdictional discovery *may* reveal" relevant facts, without anything more, is insufficient to justify intrusive inquiries into Richmond's personal life, and is regularly derided by courts. (*See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (jurisdictional discovery improper where discovery "was based on little more than a hunch that it might yield jurisdictionally relevant facts").)

## VI.   **LEAVE TO AMEND SHOULD BE GRANTED**

To the extent any argument advanced by Defendants gives rise to a dismissal, Richmond should be permitted to amend to correct any pleading deficiencies. As such, Richmond hereby moves to amend the VFAC to address any such deficiencies requiring the Court to grant Defendants' Motions.

"If a court dismisses the complaint, it will freely grant leave to amend." *Schaffer Family Investors, LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1038 (9th Cir. 2015) (allowing amendment following dismissal). "In deciding whether to dismiss with prejudice, courts consider the following factors . . . undue delay, bad faith or dilatory move on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment, etc." *Id.* at 1038.

If Richmond's demand futility allegations are deemed insufficient, he should be granted leave to amend, so that he can allege with greater particularity the specific personal interests that Mikkelson and Westbrook have in this litigation that render demand futile, and to allege that Mikkelson is not independent of Westbrook.

Should the Court dismiss any claims, Richmond should also be granted leave to add allegations that: (i) Snopes has also been separately harmed by Defendants' filing of Snopes' inaccurate 2017 and 2018 income tax returns (a derivative breach of fiduciary duty claim); (ii) challenging the advances as unauthorized constructive indemnification of Mikkelson's, Green's, and Miller's legal fees in the State Action

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101

24

1   (derivative breach of fiduciary duty claim); (iii) challenging the advances as improper

2   and preferential distributions pursuant to Corporations Code § 316.

3   **VII.   CONCLUSION**

4      For the reasons herein, Richmond respectfully requests the Motions be denied.

5

6   Dated:  January 11, 2021    Respectfully submitted,

7              HRUTKAY LAW PC

8

9              By:   *s/ Matthew Hrutkay*

10                 Matthew Hrutkay

11              600 W. Broadway, Suite 700

12              San Diego, CA  92101
           matt.hrutkay@hrutkaylaw.com

13              and

14              TENCER SHERMAN LLP

15              Philip C. Tencer, Esq., Bar No. 173818
           12520 High Bluff Drive, Suite 230

16              San Diego, CA  92130
           phil@tencersherman.com

17

18              *Attorneys for Plaintiff CHRISTOPHER RICHMOND*

19

20

21

22

23

24

25

26

27

28

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:20-CV-01925-W-KSC