Paul A. Tyrell (Bar No. 193798)
Ryan C. Caplan (Bar No. 253037)
Jacob Kozaczuk (Bar No. 294734)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California 92101
Telephone:  619.238.1900
Facsimile:   619.235.0398
E-mail:      paul.tyrell@procopio.com
             ryan.caplan@procopio.com
             jacob.kozaczuk@procopio.com

Attorneys for Nominal Defendant,
SNOPES MEDIA GROUP, INC.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RICHMOND, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID MIKKELSON, an individual; BRAD WESTBROOK, an individual; and DOE DEFENDANTS 1-10, inclusive,<br><br>    Defendants,<br><br>and<br><br>SNOPES MEDIA GROUP, INC.<br><br>Nominal Defendant. | Case No. 3:20-CV-1925-W-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOMINAL DEFENDANT SNOPES MEDIA GROUP, INC.'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>Date:     March 1, 2021<br>Crtm:    3C Third Floor<br>Judge:   Hon. Thomas J. Whelan |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ..................................................................................... 2

III.  LEGAL STANDARD ............................................................................. 5

IV.  ARGUMENT .......................................................................................... 7

    A.   Richmond's Complaint Has No Basis in Law ................................ 7

        1.   The Anti-SLAPP Orders Are Final Judgments on the Merits ... 9

        2.   The Same Claims Were Litigated in the State Court Action ... 10

            a.   The Alleged Misrepresentations Were Expressly Raised in the State Action ................................ 13

            b.   Any Issues Ostensibly Raised for the First Time Could Have Been Raised in the State Action ............................. 15

        3.   Preclusion Is Asserted by the Same Parties or Parties in Privity ................................ 16

        4.   The Anti-SLAPP Order Also Has an Issue Preclusive Effect ..... 16

    B.   Richmond's Complaint Was Filed for an Improper Purpose ............... 17

        1.   Mr. Hrutkay Filed This Claim to Harass Snopes and Its Board .. 17

        2.   The FAC Was Filed to Increase the Cost of Litigation ............... 18

        3.   The FAC Was Improperly Filed to Gain a Tactical Advantage in the State Action ........................................ 19

    C.   Snopes' Request for Sanctions Is Appropriate ...................................... 19

V.   CONCLUSION ......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Adam Bros. Farming, Inc. v. Cnty. of Santa Barbara*
  604 F.3d 1142 (9th Cir. 2010) ........................................................................ 9, 14

*Altmann v. Rushmore Loan Mgmt. Servs., Inc.*
  2015 WL 8483111 (E.D. Cal. Dec. 10, 2015) ..................................................... 8

*Amy Liu v. Levinson*
  No. 17-CV-05384-JSW, 2018 WL 10604346 (N.D. Cal. May 11,
  2018) ............................................................................................................ 10, 14

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................................... 6

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*
  498 U.S. 533 (1991) ........................................................................................... 5

*Buster v. Greisen*
  104 F.3d 1186 (9th Cir. 1997) ........................................................................ 8, 18

*Cannon v. Loyola Univ. of Chicago*
  784 F.2d 777 (7th Cir. 1986) ............................................................................. 8

*Christian v. Mattel, Inc.*
  286 F.3d 1118 (9th Cir. 2002) ........................................................................... 6

*Cochoit v. Schiff Nutrition Int'l, Inc.*
  227 F. Supp. 3d 1119 (C.D. Cal. 2017) .............................................................. 9

*Cooter & Gell v. Hartmarx Corp.*
  496 U.S. 384 (1990) ........................................................................................... 5

*Corrigan v. Pflanz*
  422 F. App'x 612 (9th Cir. 2011) ..................................................................... 18

*Damiani v. Adams*
  657 F. Supp. 1409 (S.D. Cal. 1987) ................................................................... 8

*ex rel Crawford v. Cnty. of Solano*
  2010 WL 5478294 (E.D. Cal. Dec. 30, 2010)..................................................9, 16

*Finander v. Eskanos & Adler*
  255 F. App'x 192 (9th Cir. 2007)..........................................................................9

*Fink v. Gomez*
  239 F.3d 989 (9th Cir. 2001) ..............................................................................17

*G.C. & K.B. Invs., Inc. v. Wilson*
  326 F.3d 1096 (9th Cir.2003) .............................................................................17

*Haynes v. Hanson*
  No. 11-CV-05021-JST, 2013 WL 1390387 (N.D. Cal. Apr. 4, 2013),
  *aff'd*, 695 F. App'x 317 (9th Cir. 2017) ...........................................................16

*Kaufman v. Int'l Long Shore & Warehouse Union*
  2017 WL 3335760 (N.D. Cal. Aug. 4, 2017)......................................................18

*King v. Hoover Grp., Inc.*
  958 F.2d 219 (8th Cir. 1992) ................................................................................8

*Manufactured Home Cmtys. Inc. v. City of San Jose*
  420 F.3d 1022 (9th Cir. 2005) ..............................................................................9

*McMahon v. Pier 39 Ltd. P'ship*
  2003 WL 22939233 (N.D. Cal. Dec. 5, 2003) ...............................................8, 18

*Mitchel v. City of Santa Rosa*
  601 F. App'x 466 (9th Cir. 2015).........................................................................8

*Rivera v. E. Bay Mun. Util. Dist.*
  2015 WL 6954988 (N.D. Cal. Nov. 10, 2015).....................................................7

*Rodriguez v. City of San Jose*
  930 F.3d 1123 (9th Cir. 2019).............................................................................16

*Shack v. NBC Universal Media, LLC*
  467 F. Supp. 3d 885 (C.D. Cal. 2020)................................................................10

*Simpson v. Lear Astronics Corp.*
  77 F.3d 1170 (9th Cir. 1996) ................................................................................6

*Sommer v. Unum Life Ins. Co. of Am.*
  35 F. App'x 489 (9th Cir. 2002)............................................................9

*Townsend v. Holman Consulting Corp.*
  929 F.2d 1358 (9th Cir. 1990) ............................................................6

*White v. City of Pasadena*
  671 F.3d 918 (9th Cir. 2012) ............................................................17

*Zaldivar v. City of Los Angeles*
  780 F.2d 823 (9th Cir. 1986) ...................................................5, 7, 18

**California Cases**

*Beyerbach v. Juno Oil Co.*
  42 Cal. 2d 11 (1954) ..........................................................................5

*Cal Sierra Development, Inc. v. George Reed, Inc.*
  14 Cal. App. 5th 663 (2017) .............................................................10

*Choi v. Sagemark Consulting*
  18 Cal. App. 5th 308 (2017) .............................................................10

*Cole v. Patricia A. Meyer & Associates, APC*
  206 Cal. App. 4th 1095 (2012) .........................................................16

*Kemper v. County of San Diego*
  242 Cal. App. 4th 1075 (2015) .........................................................17

*Mycogen Corp. v. Monsanto Co.*
  28 Cal. 4th 888 (2002) ......................................................................16

*Roche v. Hyde*
  51 Cal. App. 5th 757 (2020) .......................................................10, 13

*Silverado Modjeska Recreation and Park Dist. v. County of Orange*
  197 Cal. App. 4th 282 (2011) ...........................................................11

*Villacres v. ABM Industries Inc.*
  189 Cal. App. 4th 562 (2010) .....................................................11, 15

**<u>Federal Constitution</u>**

U.S. Const. Article IV
§ 1 ............................................................................................................... 9

**<u>Federal Statutes</u>**

28 U.S.C.
§ 1738 ......................................................................................................... 9

Fed. R. Civ. P.
Rule 11 .............................................................................................. 5, 6, 17
Rule 11(b) ................................................................................................... 6
Rule 11(b)(2) ............................................................................................... 7
Rule 11(c)(1) ............................................................................................. 20
Rule 11(c)(4) ................................................................................ 2, 6, 7, 20

**<u>State Statutes</u>**

Cal. Code. Civ. P.
§ 425.16 ...................................................................................................... 4

Nominal Defendant Snopes Media Group, Inc. ("Snopes") respectfully submits the following Memorandum of Points and Authorities in support of its Motion for Sanctions under Federal Rule of Civil Procedure 11 against Plaintiff Christopher Richmond ("Richmond") and his counsel of record, Matthew Hrutkay and Hrutkay Law PC.

## I.    INTRODUCTION

Since 2019, Mr. Hrutkay has been counsel of record for Richmond in a pending California state court action (the "State Action") in which he and Richmond litigated nearly identical derivative claims that were ultimately stricken by a final, non-appealable order pursuant to the California anti-SLAPP statute (the "anti-SLAPP order"). In the anti-SLAPP order, the state court found that Snopes' advancement of legal fees to its agents was a protected activity and that Richmond failed to show his claims possessed minimal merit. Having obtained a final judgment disposing of these claims in the State Action, Snopes now faces Richmond's (through Mr. Hrutkay) demand that it litigate these same claims all over again, further wasting this Court's and Snopes' time and resources.

Mr. Hrutkay's refiling of claims already subject to an adverse judgment in the State Action is a clear violation of Rule 11.[1] The derivative claims in First Amended Complaint ("FAC") are devoid of any legal basis, and therefore violate Rule 11(b)(2), because they are barred in their entirety by the anti-SLAPP order under textbook res judicata principles. Mr. Hrutkay filed the notice of appeal of the anti-SLAPP order in the State Action and subsequently dismissed that appeal, waiving any right Richmond may have had to challenge the State Action ruling on the derivative litigation funding claims. The elementary principals of claim and issue preclusion bar the present attempt to relitigate the First through Fourth Causes of Action in the FAC, which Richmond personally verified.

---

[1] All "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise stated.

Richmond and Mr. Hrutkay also violated Rule 11(b)(1) because the First through Fourth Causes of Action were filed for multiple, improper purposes—namely, to harass Snopes and the members of its board of directors, to drive up litigation costs, and to provide Richmond a tactical advantage in his personal litigation against Snopes' agents. These are all independent reasons that warrant sanctions to "deter repetition of [Richmond and Mr. Hrutkay's] conduct." Fed. R. Civ. P. 11(c)(4).

## II.    BACKGROUND

Although Richmond presents himself as a shareholder and director of Snopes in this action, his relationship to Snopes is more complex, and certainly more hostile. Richmond is also the CEO and a controlling member of Proper Media, a company that provided certain services to Snopes from 2015 until the relationship was terminated by Snopes in 2017. Following the termination, Richmond and Proper Media unlawfully held Snopes' website hostage and refused to relinquish control of the website or its email accounts. *See* Request for Judicial Notice, Exhs. 2, 36 at ¶¶3-4, 110, 153. Worse, Richmond and his co-conspirators improperly withheld *all* advertising revenues from Snopes, effectively cutting off Snopes' primary source of income and inflicting severe financial distress on the company. *See* Exhs. 2, 36 at ¶52, fn. 2.[2]

In addition to applying external pressure on Snopes by withholding its revenue, Richmond initiated the State Action to try to usurp control of Snopes from its board of directors and majority shareholders. *See* Exh. 1. Snopes promptly cross-complained and obtained a preliminary injunction resulting in Snopes regaining control of its website and a portion of the advertising revenue Richmond and his company diverted. *See* Exh. 2. Nevertheless, Richmond continued litigating against Snopes and its shareholders in the State Action to further his own interests, including by trying to force Snopes to continue contracting with Proper Media for Richmond's own financial

---

[2] All "Exhibits" refer to the accompanying Request for Judicial Notice unless otherwise stated.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS
CASE NO. 20-CV-1925-W-KSC

benefit. *See* Exh. 8 [Richmond's Third Amended Complaint or "TAC"] at ¶220. Richmond also asserted numerous causes of action against Snopes' agents: David Mikkelson ("Mikkelson"), Vincent Green ("Green"), and Ryan Miller ("Miller"). TAC, ¶¶179-92, 212-25, 241-301, 351-360 (asserting claims two, three, six, eight, nine, ten, twelve, thirteen, fourteen, and eighteen against Mikkelson, Green, and/or Ryan).

After years of costly litigation against Snopes' and its agents, Richmond amended his complaint a third time to assert derivative claims ostensibly on Snopes' behalf, including claims challenging Snopes' lawful advancement of legal fees and costs to the very agents he was suing in his individual capacity. TAC, ¶¶316-320, 340-349; *see* Exh. 10 at p. 7:2-3. He then brought multiple motions seeking a mandatory injunction to order Mikkelson, Green, and Miller to "disgorge, restore, and repay to [] Snopes any and all funds or monies that Snopes has previously advanced, reimbursed, transferred, or otherwise paid to them, or to their agents, to pay for their respective legal expenses incurred in connection with either defending themselves or pursuing any of their affirmative counterclaims in this litigation." Exhs. 9 at p. 2:21-27, 6 at pp. 3:13-4:22. He further sought a prohibitory injunction to enjoin Snopes from advancing any additional funds for Mikkelson, Green, or Miller's legal expenses. Exh. 9 at p. 2:14-20.

In seeking this relief, Richmond argued that Snopes' advancement of any legal expenses incurred to defend against Richmond's claims were altogether unlawful because Mikkelson, Green, and Miller were "not being sued in their capacities as 'agents' of Snopes." Exhs. 9 at p. 14:9, 7 at pp. 13:24-14:1. Richmond also argued that the some of the advancements were unlawful for the additional reason that they were made in connection with affirmative counterclaims against Richmond. Exh. 10 at p. 6-12.

Richmond repeatedly claimed this draconian, self-serving relief was necessary because Snopes was "in imminent danger of insolvency" and "may not survive"

(Exhs. 10 at p. 7:5-8, 7 at p. 19:10-14), and suggested Snopes' agents could simply hire new counsel willing to defend Richmond's claims on a contingency basis. Exh. 10 at p. 20:23-24. Snopes did survive, and the Court denied Richmond's request for injunctive relief in its entirety. Exh. 16. Yet, even after the state court flatly denied Richmond's request to enjoin the advancements *a second time*, Richmond continued to harass the company with a motion for reconsideration of the trial court's order, and fallaciously informed the trial court that "Snopes will almost certainly become bankrupt" if it continued to advance legal fees to defend against Richmond's claims. Exh. 22 at p. 2:21-25. Fortunately, these incessant motions became moot once the state court definitively struck the derivative litigation funding claims from the State Action.

Shortly after Richmond filed his Third Amended Complaint in the State Action, Snopes and Mikkelson moved to strike all of the claims and allegations relating to Snopes' advancement of legal fees pursuant to the California anti-SLAPP statute. Cal. Code. Civ. P. § 425.16. The state court found that Snopes' litigation funding constituted a protected activity under the anti-SLAPP statute, and determined that the board's authorizations of the fee advancements were "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Exh. 31 at p. 5. The court further determined that Richmond failed to show his advancement-related claims possessed minimal merit. As a result, the court granted Snopes and Mikkelson's motions to strike all of Richmond's derivative advancement claims from the State Action with prejudice. *Id.* Richmond waived his right to appeal these orders, which are now final, non-appealable judgments. *See* Exhs. 39-41.

After striking Richmond's derivative claims challenging Snopes' advancement of legal expenses, the state court further determined that Richmond's interests were hostile to Snopes and that he was therefore not qualified to represent Snopes as a derivative plaintiff. Exh. 34. Accordingly, the state court dismissed Richmond's remaining derivative claims without leave to amend.

Mr. Hrutkay filed notices to appeal these rulings before the California Court of Appeal, Fourth Appellate District, Division One, Case No. D076375. Exh. 37. However, on January 21, 2020, Mr. Hrutkay filed a request to dismiss the appeal of the anti-SLAPP ruling granting Snopes' special motion to strike. Exh. 38. In response, the Court of Appeal promptly dismissed the appeal of Snopes' anti-SLAPP ruling and issued a remittitur. *See* Exhs. 39-40.[3]

Mr. Hrutkay also declined to challenge the state court's dismissal of the derivative claims in his appeal of Mikkelson's anti-SLAPP ruling. *See* Exh. 41 at pp. 35 fn. 12, 78. Thus, Richmond and Mr. Hrutkay twice waived any right Richmond may have had to appeal the orders dismissing the derivative litigation funding claims.

Although Mr. Hrutkay's voluntary dismissal of Richmond's derivative litigation funding claims resulted in a final judgment for purposes of res judicata, Mr. Hrutkay repackaged these same claims "on Snopes behalf" in the instant federal lawsuit, which Richmond personally verified. After Mr. Hrutkay filed an amended complaint to comply with the verification requirements of Rule 23.1, Snopes, Mikkelson, and Westbrook all timely moved to dismiss the derivative claims. *See* ECF Nos. 11, 12.

## III.    LEGAL STANDARD

The central purpose of Rule 11 is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986) (intent of Rule 11 is to address "the problem of frivolous filings" and "the problem of misusing judicial procedures as a weapon for personal or economic harassment."). Rule 11 "imposes on *any party* who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic*

---

[3] Snopes' dismissal from the appeal precluded any further litigation of the derivative claims (*see Beyerbach v. Juno Oil Co.*, 42 Cal. 2d 11, 27-28 (1954)).

*Communications Enterprises, Inc.*, 498 U.S. 533, 551 (1991) (emphasis added) (holding that Rule 11 applies to a represented party who signs a pleading, motion, or other papers, as well as to attorneys) (cited with approval in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Under Rule 11, when the party or attorney presents a document to the Court, they certify to the best of their knowledge and after "an inquiry reasonable under the circumstances" that:

> (1) [the document] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b). Rule 11(c)(4) further provides that a sanction imposed under the Rule may include payment of the opposing party's attorneys' fees resulting from the violation, reference to the State Bar for the affected attorney, or other monetary or nonmonetary relief deemed appropriate by the Court, all geared toward "what suffices to deter repetition of the conduct."

Under Rule 11, a court may impose sanctions for filing papers that are frivolous, legally unreasonable, or baseless, or that are interposed for an improper purpose, such as harassment. *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996). "Frivolous filings" are those that are "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). "Where, as here, a complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)

(citing *Buster v. Greisen*, 104 F.3d 1186, 1990 (9th Cir. 1997). The standard is "reasonableness": the Court must judge the conduct against "a competent attorney admitted to practice before the district court." *Zaldivar*, 780 F.2d at 830. Rule 11 sanctions may be accessed "even though the paper was not filed in subjective bad faith." *Id.* at 830-31.

When a court determines that a Rule 11 violation has occurred, it "has broad discretion with regard to the type and amount of sanctions to be imposed." *Rivera v. E. Bay Mun. Util. Dist.*, 2015 WL 6954988, at *9 (N.D. Cal. Nov. 10, 2015) (citing *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986)); *see also* Fed. R. Civ. P. 11(c)(4). Sanctions may be monetary or nonmonetary, but should be designed to "deter repetition of the conduct or comparable conduct by others similarly situated." *Id.*

## IV.    ARGUMENT

The FAC, filed by Mr. Hrutkay and verified by Richmond, violates Rule 11 in multiple respects—not the least of which is that it lacks any basis in law because it is barred in its entirety by a final judgment in the State Action. The FAC is also patently frivolous and was filed for the purpose of harassing Snopes and its agents, increasing litigation costs, and providing Richmond a tactical advantage in his personal claims against Snopes' agents. As such, Snopes respectfully requests that this Court award sanctions against Richmond and his counsel, Mr. Hrutkay and Hrutkay Law PC, including by awarding Snopes its reasonable attorneys' fees in defending this action and by directing such other measures as the Court may deem appropriate under the circumstances.

## A.    Richmond's Complaint Has No Basis in Law

At the time Richmond verified and Mr. Hrutkay filed the FAC, they knew, or should have known, that it was not "warranted by existing law." Fed. R. Civ. P. 11(b)(2). An attorney who litigated *and dismissed* the appeal of the anti-SLAPP order involving nearly identical derivative litigation funding claims should have known that

the FAC is barred by that judgment under the doctrine of res judicata. Courts routinely impose Rule 11 sanctions when a reasonable investigation would show that a claim is barred by res judicata or collateral estoppel. *See, e.g., Buster*, 104 F.3d at 1190 (affirming sanctions award where action was barred by res judicata and collateral estoppel); *Mitchel v. City of Santa Rosa*, 601 F. App'x 466, 468 (9th Cir. 2015) (affirming sanctions for "attempt[ing] to re-litigate, without modification, contentions previously dismissed by the district court as lacking legal merit"); *Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777, 782 (7th Cir. 1986) (affirming sanctions where claim was "barred by well-established principles of *res judicata*"); *King v. Hoover Grp., Inc.*, 958 F.2d 219, 223 (8th Cir. 1992) (finding that district court erred denying sanctions where counsel should have realized that the action was barred by res judicata "because of the identity of the facts and the issues"); *Damiani v. Adams*, 657 F. Supp. 1409, 1418 (S.D. Cal. 1987) (imposing sanctions based on legal arguments that were "frivolous on their face" because the arguments were "already aired, and rejected, in numerous other lawsuits"); *McMahon v. Pier 39 Ltd. P'ship*, 2003 WL 22939233, at *6 (N.D. Cal. Dec. 5, 2003) (imposing sanctions where "plaintiff has been merely restating the same underlying claims in several subsequent lawsuits").

Mr. Hrutkay, as Richmond's counsel in the State Action and the appeal of the State Action, should have been aware of this res judicata bar to Richmond's repackaged claims here. He has appeared as counsel of record for Richmond and Richmond's company, Proper Media, throughout all of the referenced actions. In fact, it was Mr. Hrutkay who dismissed Richmond's appeal of the anti-SLAPP order and waived any further challenge to the dispositive anti-SLAPP ruling in the State Action. *See* Exhs. 38, 41. Thus, Mr. Hrutkay's submission of the same derivative claims here is a sufficient ground, standing alone, for Rule 11 sanctions. *See Altmann v. Rushmore Loan Mgmt. Servs., Inc.*, 2015 WL 8483111, at *6 (E.D. Cal. Dec. 10, 2015) (imposing sanctions upon finding that "the overwhelming majority of the FAC was copied and pasted from [a complaint in a previous action], which was dismissed with

prejudice"); *Sommer v. Unum Life Ins. Co. of Am.*, 35 F. App'x 489, 491 (9th Cir. 2002) (affirming sanctions award when counsel "should have known, after [the previous actions], that the claim . . . was barred by the doctrine of res judicata.")

Under well-settled principles of res judicata, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Because state court proceedings "have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State" (28 U.S.C. § 1738; *see also* U.S. Const. art. IV, § 1), federal courts accord the same preclusive effect to a state court's judgment as that state's courts would apply (see *Adam Bros. Farming, Inc. v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010)). Established principles of res judicata and collateral estoppel recognized by the California courts clearly bar Richmond's attempt to relitigate his claims in federal court.

"Under California law, the elements of res judicata are '(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.'" *Cochoit v. Schiff Nutrition Int'l, Inc.*, 227 F. Supp. 3d 1119, 1122 (C.D. Cal. 2017) (citing *Boeken*, 48 Cal. 4th at 797). All three requirements for claim preclusion are met here.

### 1. The Anti-SLAPP Orders Are Final Judgments on the Merits

The orders granting Snopes and Mikkelson's anti-SLAPP motions are final judgments on the merits of Richmond's derivative fee advancement claims. *See ex rel Crawford v. Cnty. of Solano,* No. 2:10-CV-02091 JAW-EFB, 2010 WL 5478294, at *4 (E.D. Cal. Dec. 30, 2010) (order granting anti-SLAPP motion was a final judgment on the merits); *accord Finander v. Eskanos & Adler*, 255 F. App'x 192, 192-

9

93 (9th Cir. 2007) (unpublished). Once Richmond dismissed his appeal of Snopes' anti-SLAPP ruling and declined to appeal Mikkelson's anti-SLAPP ruling as to any of the stricken derivative claims, the judgments became final for res judicata purposes. *See* Exhs. 39-41; *Amy Liu v. Levinson*, No. 17-CV-05384-JSW, 2018 WL 10604346, at *5 (N.D. Cal. May 11, 2018) (citing *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th 1168, 1174 (2000)).

### 2.    The Same Claims Were Litigated in the State Court Action

The derivative claims here are plainly based on the same derivative litigation funding claims asserted in the State Action. "'To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the 'primary rights' theory.'" *Shack v. NBC Universal Media, LLC*, 467 F. Supp. 3d 885 (C.D. Cal. 2020) (quoting *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975)). "[T]he primary right theory has a fairly narrow field of application most commonly invoked when a plaintiff attempts to divide a primary right and enforce it in two suits." *Choi v. Sagemark Consulting*, 18 Cal. App. 5th 308, 336 (2017) (internal citation and quotation marks omitted).

"'When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.'" *Shack*, 467 F. Supp. 3d 885 (quoting *Slater*, 15 Cal. 3d at 795). "Moreover, 'a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief.'" *Id.*; *see Roche v. Hyde*, 51 Cal. App. 5th 757, 823 (2020) ("They all seek recovery for the same damage, which is the determining factor under California's primary rights approach to defining a single cause of action.")

Because Richmond's claims are ostensibly brought on Snopes' behalf, the primary right at issue is Snopes' "right to be free of a particular injury." *See Cal Sierra Development, Inc. v. George Reed, Inc.*, 14 Cal. App. 5th 663, 675-76 (2017). Here, Richmond alleges that Snopes suffered damages as a result of advancing legal

10

expenses to Mikkelson, Green, and Miller. Accordingly, Snopes' primary right at issue is the right to be free from the improper advancement of litigation funding. *See Silverado Modjeska Recreation and Park Dist. v. County of Orange* 197 Cal. App. 4th 282, 297-98 (2011) ("'An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose.'") (citation omitted).

Richmond sought recovery for these same damages in the State Action:

> 119. On information and belief, Mikkelson has continued to direct or otherwise cause Snopes [] to pay for his personal expenses as well as the personal expenses of Green and Miller, including without limitation by improperly directing Snopes [] to advance ***the attorneys' fees Mikkelson, Green, and Miller have personally incurred in connection with defending and pursuing their respective affirmative claims*** both in this lawsuit and the consolidated interpleader lawsuit . . . .
> . . .
>
> 316.  . . . Mikkelson has knowingly directed or otherwise caused Snopes [] to improperly advance attorneys' fees himself, and to his co-conspirators, Green and Miller, in violation of Corporations Code sections 310(a) and 317(f), and the Bylaws.
> . . .
>
> 319.  On information and belief, Mikkelson directed or otherwise caused Snopes Media Group to advance large sums of ***personal*** legal expenses to himself, Green, and Miller, all in violation of the Corporations Code and Bylaws, even though he knew, or reasonably should have known, that Snopes Media Group was in dire financial straits, and on the verge of insolvency.
>
> 320.  Mikkelson's conduct, as set forth above, was and is unlawful, unfair, ***and fraudulent*** . . . .

TAC, emphasis added.

Thus, the primary rights analysis is straightforward here because the same matters were already raised as an issue in Richmond's prior derivative advancement claims. *Villacres v. ABM Industries Inc.*, 189 Cal. App. 4th 562, 569 (2010) ("Obviously, if [the matter] is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment.").

In fact, in the State Action, Richmond extensively alleged that Mikkelson improperly caused and thereafter continued to cause Snopes to advance legal fees to himself, Green, and Miller for "personal legal expenses" including their affirmative claims in the State Action. *See* Exh. 41 at p. 31 ("The TAC added allegations concerning Snopes' Advancements of personal legal expenses and [Mikkelson]'s self-interested approval of those Advancements, at significant cost to the Company . . . .").

Not only did Richmond litigate these issues, he even sought prohibitory and mandatory "injunctive relief as shareholders on behalf of Snopes", claiming he was likely to succeed on his derivative UCL claim—which was subsequently stricken by the anti-SLAPP order. Exh. 10 at pp. 12:28-13:2. Even in opposing Snopes' anti-SLAPP motion, Richmond cited the abovementioned allegations from his complaint and argued that Mikkelson harmed Snopes by "using Snopes' to fund his, Green, and Miller's participation in the [State Action], including their pursuit of affirmative counterclaims." Exh. 26 at p. 6:8-10, citing TAC, ¶¶119-34.

Richmond is now reasserting the same shareholder derivative claims in the FAC. The Third Cause of Action for unjust enrichment claims Mikkelson was personally enriched by the fee advancements and the fee advancement deprived Snopes of funds without providing a meaningful benefit. FAC, ¶71. Richmond repeatedly alleged and raised this exact issue in connection with his prior derivative UCL claim. In fact, claiming the advancements were improperly made for Mikkelsen's personal benefit, Richmond's derivative UCL claim sought disgorgement of the Advances as unjust enrichment. *E.g.,* TAC, ¶324 ("Richmond, on behalf of Snopes [], [is] entitled to disgorgement of all gains, profits, advantages, and *unjust enrichment* derived by Mikkelson . . . ."), emphasis added; TAC, p. 68:28 (seeking "[r]estitution and/or disgorgement of ill-gotten gains").

The First and Second Causes of Action allege the same damages as the unjust enrichment claim: namely, the misappropriation of Snopes' funds to further the personal litigation interests of Mikkelson. FAC, ¶¶63, 69.

12

The Fourth Cause of Action similarly alleges Snopes was harmed by the misappropriation of Snopes' funds "to further the personal litigation interests of Green and Miller." *Id.* at ¶80. These are the same damages alleged in Richmond's UCL derivative claim. And because seeking recovery for the same damage "is the determining factor under California's primary rights approach to defining a single cause of action", *Roche*, 51 Cal. App. 5th at 823 (2020), Richmond's claims were incontrovertibly raised in the State Action.

### a.   The Alleged Misrepresentations Were Expressly Raised in the State Action

The derivative claims challenging Snopes' advances are all predicated on two purported misrepresentations in Mikkelson, Green, and Miller's undertakings:

1)   that "the Advances would be used for legal fees relating to claims as an 'agent' of Snopes" (FAC, ¶¶59, 65, 76), and

2)   that the Advances would be used for legal fees incurred in "defending against" claims (*id.*, ¶¶60, 66, 77).

Richmond expressly raised both of these issues in the State Action. In fact, both misrepresentations are repeatedly pleaded as issues in the very derivative claims stricken by the anti-SLAPP Order in the State Action. In the TAC, Richmond alleged:

> 14.   Mikkelson has also abused his controlling position by directing and causing Snopes Media Group to improperly advance legal expenses that Mikkelson, Green, and Miller have personally incurred in connection with not only defending themselves against the claims asserted by Plaintiffs against them, but also their affirmative counterclaims against Plaintiffs. . . .

> 131.   Moreover, Mikkelson, Green, and Miller are certainly not entitled to the advancement of their attorneys' fees incurred in pursing their *affirmative* counterclaims in this litigation.

> 348.   Mikkelson, Green, and Miller are not entitled to advanced attorneys' fees in this litigation because they are not being sued "by reason of the fact" that they are "agents" of Snopes [] . . . .

13

TAC, emphasis in original; see also TAC, ¶¶302, 326 (realleging and incorporating by reference all preceding paragraphs into the derivative UCL and rescission claims).

In addition, Richmond actively and repeatedly litigated these issues in connection with the stricken derivative claims. In seeking a temporary restraining order against Snopes, Mikkelson, Green, and Miller, Richmond argued he was likely to prevail on his derivative UCL claim by showing the legal fee advancements were unlawful because "[Mikkelson, Green, and Miller were] not being sued in their respective capacities as 'agents' of Snopes." *See* Exh. 7 at p. 14:1. Richmond further argued he was likely to prevail on his derivative UCL claim because Mikkelson, Green, and Miller were "not entitled to advancement of fees associated with pursuing their affirmative counterclaims." *Id.* at p. 18:4-5. After the trial court denied Richmond's request for a TRO, Richmond filed another motion requesting a preliminary injunction against Snopes and Mikkelson based on his derivative UCL claim and re-raised and re-argued both issues in support of his request. Exh. 10 at pp. 6:23-7:3, 16:1-18:12. After extensive briefing, the state court again denied Richmond's request. Exh. 16. Months later, the derivative advancement claims were stricken pursuant to the anti-SLAPP statute.

The derivative claims Richmond verified and Mr. Hrutkay filed here are identical to the claims litigated in the State Action. For res judicata purposes, "[i]t does not matter that Plaintiff includes additional allegations in this action . . . or that Plaintiff asserts new theories of relief" if the allegations in both actions "are fundamentally the same." *Amy Liu*, 2018 WL 10604346, at *5 (finding irrelevant that the plaintiff included new allegations of a conspiracy between the defendant and other attorneys, the judge, and the court's staff); *Adam Bros.*, 604 F.3d at 1149 ("For purposes of res judicata, it is irrelevant that [Plaintiff] attempts to recover under different legal theories."). Richmond's derivative claims rest upon the same factual and legal assertions as the prior derivative claims dismissed with prejudice by the anti-SLAPP order. Any strained distinction Mr. Hrutkay might try to make between the

stricken derivative claims and this federal derivative suit are simply "different theories of relief based upon the same factual background", and squarely fall within the "re-imagined" claims res judicata is intended to bar. *See Villacres*, 189 Cal. App. 4th at 569 (2010).

### b. Any Issues Ostensibly Raised for the First Time Could Have Been Raised in the State Action

"Res judicata bars not only issues that were raised in the prior suit but related issues that could have been raised." *Villacres*, 189 Cal. App. 4th at 569. As the court explained in *Villacres*:

> If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it. . . . The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. [¶] The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, "litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background. . . . [A]n issue may not be thus split into pieces.

*Id.* at 569. This is precisely what Mr. Hrutkay attempts to accomplish here. The derivative suit is nothing more than a thinly-veiled attempt to split Richmond's already-litigated issues into additional claims in a new forum.

While the derivative claims in the FAC are nearly indistinguishable from the State Action pleadings, Richmond does allege that in 2020, he learned some legal fee advancements were "not properly characterized" on Snopes' financial statements. FAC, ¶¶51-54. Even if this allegation is relevant to Richmond's direct claim against Mikkelson and Westbrook, it has no bearing on the derivative causes of action asserted in the FAC. Thus, the court need not even consider whether any new issues ostensibly raised in the FAC could have been raised in State Action.

### 3. Preclusion Is Asserted by the Same Parties or Parties in Privity

Res judicata protects parties who obtained a favorable judgment as well as those in privity with those parties. *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). In both actions, Richmond asserted derivative claims against Snopes' directors with Snopes named as the nominal defendant. Because Snopes is the same party that obtained a favorable judgment in the State Action, this requirement is met.

### 4. The Anti-SLAPP Order Also Has an Issue Preclusive Effect

In addition to claim preclusion, the anti-SLAPP order has an issue preclusive effect on the derivative claims as well. *See ex rel Crawford v. Cnty. of Solano,* 2010 WL 5478294, at \*4 (E.D. Cal. Dec. 30, 2010) (finding the anti-SLAPP order had a claim preclusive effect on the entire case, but noting that the alternative issue preclusion argument was meritorious as well).

Because a cause of action "needs to have only minimal merit to survive an anti-SLAPP motion," *Cole v. Patricia A. Meyer & Associates, APC*, 206 Cal. App. 4th 1095, 1104-05 (2012), "where a court grants an anti-SLAPP motion because plaintiff cannot meet this threshold, the court is concluding that plaintiff's claim lacks even minimal merit." *Haynes v. Hanson*, No. 11-CV-05021-JST, 2013 WL 1390387, at \*4 (N.D. Cal. Apr. 4, 2013), *aff'd*, 695 F. App'x 317 (9th Cir. 2017). Thus, in granting the anti-SLAPP motions, the court found that both of these alleged misrepresentations lacked even minimal merit, and all six criteria required to apply issue preclusion to the purported misrepresentations are met. *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1131-32 (9th Cir. 2019) (discussing six "*Lucido* factors"). The alleged misrepresentations (1) are identical to the misrepresentations decided in the State Action, (2) were litigated in the State Action, and (3) were necessarily decided by the anti-SLAPP rulings. Additionally, (4) the anti-SLAPP orders are final judgments on the merits, (5) Snopes was a party to the derivative advancement claims in the State Action, and (6) applying issue preclusion to these issues is consistent with the public

policies identified by the California courts because "it prevents relitigation of issues already decided." *See White v. City of Pasadena*, 671 F.3d 918, 929 (9th Cir. 2012).

Because issue preclusion bars Richmond from re-litigating the disputed misrepresentations—which are an indispensable elements of his claims—the prior judgment is fatal to Richmond's derivative claims. *See Kemper v. County of San Diego*, 242 Cal. App. 4th 1075, 1079 (2015).

**B.    Richmond's Complaint Was Filed for an Improper Purpose**

Richmond's verification and Mr. Hrutkay's filing of the FAC also violates Rule 11(b)(1) because the FAC was filed for multiple, improper purposes. Rule 11 indicates that improper purposes that justify sanctions include harassment and "needlessly increase[ing] the cost of litigation," among others. Fed. R. Civ. Proc. 11. The Ninth Circuit has also found that an improper purpose warranting sanctions is "the attempt to gain tactical advantage in another case." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (citing *In re Itel Securities Litigation*, 791 F.2d at 675). All three of these improper purposes are evident here.

"The standard governing both the 'improper purpose' and 'frivolous' inquiries is objective. The subjective intent of the . . . movant to file a meritorious document is of no moment." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir.2003) (citation and quotation marks omitted). An objective review of the FAC in light of Richmond's previous filings reveals that Mr. Hrutkay filed nearly identical derivative claims in federal court in order to harass Snopes and its board of directors, needlessly increase the cost of litigation, and to gain leverage in Richmond's personal litigation against Snopes' agents.

**1.    Mr. Hrutkay Filed This Claim to Harass Snopes and Its Board**

Snopes has patiently litigated Richmond's meritless claims against the company since 2017. Snopes has endured and prevailed against numerous preliminary injunction requests by Richmond, including multiple requests to enjoin Snopes from advancing legal expenses to Mikkelson and other Snopes' agents. Although Snopes

17

has prevailed at every turn, it has come at great cost as a result of Richmond's duplicative litigation tactics. For instance, even when the trial court flatly rejected Richmond's most recent request to enjoin Snopes from advancing legal fees, Richmond filed a motion to reconsider his baseless request. Exhs. 21-23. As discussed above, the derivative claims in the FAC is a thinly veiled effort to relitigate these same rejected claims, and is therefore a deliberate effort to further harass Snopes and its board of directors.

The Ninth Circuit has made clear that the filing of "successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986); *see also Buster*, 104 F.3d at 1190 (plaintiffs' efforts to relitigate prior case support a finding of harassment); *Corrigan v. Pflanz*, 422 F. App'x 612, 613 (9th Cir. 2011) (affirming Rule 11 sanctions where plaintiff's filing of successive complaints based on previously-rejected propositions of law constituted harassment); *Kaufman v. Int'l Long Shore & Warehouse Union*, 2017 WL 3335760, at *5 (N.D. Cal. Aug. 4, 2017) (imposing sanctions on finding that filing nearly identical lawsuits against defendant constitutes harassment in violation of Rule 11); *McMahon v. Pier 39 Ltd. P'ship*, 2003 WL 22939233, at *6 (N.D. Cal. Dec. 5, 2003) (awarding sanctions where "plaintiff's duplicative filings against the same defendant" "constitute harassment"). In light of these holdings, Richmond's verification and Mr. Hrutkay's refiling of derivative claims already dismissed by a final, non-appealable order in this State Action is textbook example harassment under Rule 11.

### 2.     The FAC Was Filed to Increase the Cost of Litigation

As explained above, Mr. Hrutkay knows, or should know, that the claims have no basis in law: res judicata bars the derivative claims and the state court previously found the same essential claims lacked minimal merit in its anti-SLAPP orders. The new FAC alleges the same substantive allegations, requiring Snopes to spend more time, money, and resources to relitigate claims and arguments that have been found to

be without merit. In addition, Snopes will also need to reimburse Mikkelson and Westbrook when they prevail against the baseless claims. The obvious purpose for forcing Snopes and its agents to defend against the same claims is that, regardless of the outcome, Snopes will incur significant, additional legal expenses.

The unfortunate irony is that Mr. Hrutkay's duplicative filing is itself the true cause of Snopes' purported "damages." For two years, Snopes has advanced legal fees to defend against Richmond's claims challenging those advancements, and the company must now incur more expenses to object to four "new" claims based on the same advancement of legal fees. *See* Exhs. 6-7. Adding insult to injury, the FAC now pleads that the advancements "should have gone . . . to Richmond, as distributions" (FAC, ¶81), the very individual who embezzled hundreds of thousands of dollars of Snopes' advertising revenue, and would conceivably use such distributions to continue harassing Snopes and its agents in endless litigation. *See also* FAC, ¶63, 69, 80.

### 3. The FAC Was Improperly Filed to Gain a Tactical Advantage in the State Action

Richmond has repeatedly tried to cut off Snopes' agents access to funding to defend against Richmond's personal claims in the State Action. Snopes' advancement of legal expenses to Mikkelson, Green, and Miller once again underlies each of Richmond's derivative claims in this federal action. The relief Richmond seeks in connection with these claims would effectively nullify Snopes' ability to advance legal funding by requiring Mikkelson and/or Westbrook to pay back the legal fee advancements as purported damages. Thus, the clear intent of these derivative claims is to prevent Mikkelson, Green, and Miller from having access to the funding necessary to defend against Richmond's relentless litigation tactics, giving Richmond a tactical advantage against Snopes' agents.

### C. Snopes' Request for Sanctions Is Appropriate

Under Rule 11(c), if the Court finds that Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated

the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The purpose of such sanctions is to "deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4). Sanctions may include nonmonetary directives as well as "payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation." *Id.*

Snopes respectfully requests that the sanctions include an award to Snopes of its reasonable expenses and attorneys' fees incurred in defending the FAC and in filing this motion. Such sanctions are appropriate because Snopes already has litigated essentially the same claims and allegations to judgment in state court and it is clear that Richmond and Mr. Hrutkay refiled this lawsuit for the purpose of harassing Snopes. Sanctions are necessary to deter the repetition of Richmond and Mr. Hrutkay's abusive conduct.

## V.    CONCLUSION

For the foregoing multitude of reasons, Snopes respectfully requests that this Court issue Rule 11 sanctions against Richmond and his counsel, Mr. Hrutkay and Hrutkay Law PC. Snopes stands ready, at an appropriate time, to submit a declaration setting forth the fees and costs incurred as a result of Mr. Hrutkay's conduct, including those incurred in preparing the present motion and Snopes' motion to dismiss.

Respectfully submitted,

DATED: January 23, 2021          PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By:  */s/Jacob Kozaczuk*
Paul A. Tyrell
Ryan C. Caplan
Jacob Kozaczuk
Attorneys for Nominal Defendant
SNOPES MEDIA GROUP, INC.