HRUTKAY LAW PC
MATTHEW HRUTKAY, Bar No. 297485
matt.hrutkay@hrutkaylaw.com
600 W. Broadway, Suite 700
San Diego, CA. 92101
Tel: (858) 868-0018

TENCERSHERMAN LLP
PHILIP C. TENCER, Bar No. 173818
Phil@TencerSherman.com
12520 High Bluff Drive, Suite 230
San Diego, CA 92130
T: 858.408.6900
F:858.754.1260

*Attorneys for Plaintiff*
*CHRISTOPHER RICHMOND*

# UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RICHMOND, an individual; | Case No:   3:20-cv-01925-W-KSC |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO MOTION FOR SANCTIONS BROUGHT BY SNOPES MEDIA GROUP, INC.** |
| v. | |
| DAVID MIKKELSON, an individual; BRAD WESTBROOK, an individual; and DOE DEFENDANTS 1-10, inclusive | |
| Defendants, | **Hearing Date:** **April 1, 2021** |
| and | **Dept:** **3C** |
| SNOPES MEDIA GROUP, INC. | **Judge:** **Hon. Thomas J. Whelan** |
| Nominal Defendant. | **Magistrate Judge:** **Hon. Karen S. Crawford** |

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     RELEVANT FACTUAL HISTORY ..................................................... 2

III.    RELEVANT PROCEDURAL HISTORY ............................................. 4

        A.    State Action ............................................................................... 4

        B.    Federal Action ........................................................................... 7

IV.    LEGAL STANDARD ............................................................................ 9

V.     ARGUMENT ....................................................................................... 11

        A.    Snopes Sanctions Motion is Meritless ..................................... 11

        B.    Plaintiff's Claims Were Brought Only After Good-Faith Inquiry ............ 12

              1.  The Derivative Claims Are Not Barred by Res Judicata ..................... 13

        C.    The Claims Were Brought For Snopes' Benefit, Not to Harass ............... 18

        D.    Even if Claims Are Dismissed, There Is No Basis for Sanctions ............ 21

        E.    Sanctions Against Defendants is Warranted for Filing a Frivolous Rule 11
              Motion ..................................................................................... 23

VI.    CONCLUSION ................................................................................... 24

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

TABLE OF AUTHORITIES

## Cases

*B.P West Coast*, 2013 WL 12377979 ...................................................................... 9, 22

*Bernhardt v. Tradition North America*, 676 F. Supp. 2d 301 .................................. 10

*Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777 ................................................. 16

*Cardionet, LLC v. Mednet Healthcare Technologies*, 146 F. Supp. 3d 671 ............ 10

*Conn v. Borjorquez*, 967 F.2d 1418 ........................................................................ 11

*Damiani v. Adams,* 958 F. Supp. 1409 .................................................................... 16

*DKN Holdings, LLC v. Faerber*, 61 Cal. 4th 813 ............................................... 16, 22

*Encore, supra*, 2017 WL 6523443 ........................................................................... 22

*Garden City, Inc. v. San Jose*, No. CV 13-0577 PSG, 2013 WL 4766748 ............. 15

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 .......................... 10

*Greenberg v. Sala*, 822 F.2d 882 .............................................................................. 9

*Hutter v. Countrywide Bank, N.A.*, 41 F. Supp. 3d 363 .......................................... 10

*In re Dairy Farmers of America, Inc.*, 80 F. Supp. 3d 838 ..................................... 10

*Jones v. Encore Credit Corp.*,
    No. EDCV 16-2673 JGB (KKx), 2017 WL 6523443 ...................................... 9

*Joseph v. Kaye*, No. CV 16-01245 SJO (GJSx), 2016 WL 3677142 .................. 9, 22

*Maldonado v. Harris*, 370 F.3d 945 .................................................................. 15, 16

*McMahon v. Pier 39 Ltd. P'ship*, 2003 WL 22939233 ........................................... 17

*Morris v. Blank*, 94 Cal. App. 4th 823 ................................................................... 15

*Natural-Immunogenics Corp. v. Newport Trial Group*,
    No. SACV 15-02034JVS(JCGx), 2020 WL 7263540 .................................... 11

*Operating Eng'rs Pension Tr. v. A–C Co.*, 859 F.2d 1336 ...................................... 9

*Patelco Credit Union v. Sahni*, 262 F.3d 897 ......................................................... 24

*Patrick v. Alacer Corp.*, 167 Cal. App. 4th 995 ..................................................... 12

*Pilot Inc. v. TYC Brother Indust. Co., Ltd.*,
    No. 2:20-cv-02978-ODW (RAOx), 2021 WL 135785 ................................. 9, 23

*Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644 .................. 22

*Rodgers v. Sargent Controls & Aerospace*, 136 Cal. App. 4th 82 .......................... 17

*Stevenson v. Nabisco Brands, Inc.*, 757 F. Supp. 1026 ............................................22

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306 ....................................10

*Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.*, 834 F.2d 833................9

*Walker v. Blackground Records, LLC*,
   No. CV 16-4833 FMO (FFMx), 2017 WL 8186040 ....................................24

*Whatsapp Inc. v. NSO Group Techs. Ltd.*, No. 19-cv-01723-PJH ............................9

*Whitacre v. Sensu, Inc.*, No. CV 19-9277-PLA, 2020 WL 7051341 ......................10

*Zaldivar v. City of Los Angeles,* 780 F.2d 823 ....................................................9, 11

**Rules**

Business and Professions Code § 17200 ....................................................................4

Federal Rule of Civil Procedure 11 ..................................................................passim

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Plaintiff Christopher Richmond ("Plaintiff" or "Richmond"), his attorney Matthew Hrutkay, and Hrutkay Law PC ("Plaintiff's Counsel" or "Richmond's Counsel"), respectfully submit this opposition to Nominal Defendant Snopes Media Group, Inc.'s ("Snopes") motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Snopes Sanctions Motion"), filed on January 26, 2021 in this action.[1] (*See* ECF No. 25.)

## I.   **INTRODUCTION**

Snopes' and the individual defendants' motions for sanctions are thinly veiled efforts to intimidate Plaintiff from holding controlling officers and directors accountable for defrauding Snopes. Instead of allowing Plaintiff to litigate his claims on behalf of Snopes and for its benefit against David Mikkelson ("Mikkelson") and Brad Westbrook ("Westbrook"; together "Individual Defendants"), Snopes has made clear its alignment with Mikkelson and its animosity to Plaintiff, trying to help Mikkelson and Westbrook avoid Richmond's efforts to recover for the company.

This alignment of the Individual Defendants with Snopes—only a *nominal* defendant in this action—should come as no surprise, even though it ignores their obvious conflict of interest. Snopes, as a nominal defendant is not supposed to be adverse to a derivative plaintiff such as Richmond, and should actually be adverse to the *actual* defendants, Mikkelson and Westbrook. Nonetheless, it is obvious that Mikkelson, as Snopes' CEO, its largest shareholder, and the chair of Snopes' board, has no meaningful limit to his authority, and has directed the filing of Snopes Sanctions Motion for his own benefit in this litigation. The fact that Snopes and the Individual Defendants have separate counsel (in theory), ignores the practical reality that Mikkelson and Westbrook control and direct Snopes' litigation strategy, and

---

[1] The Declaration of Matthew Hrutkay in Opposition to Snopes' Motion for Sanctions ("Hrutkay Decl."), the Declaration of Christopher Richmond in Opposition to Snopes' Motion for Sanctions ("Richmond Decl."), and the Declaration of Philip C. Tencer in Opposition to Snopes' Motion for Sanctions ("Tencer Decl.") are filed concurrently herewith.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

1

have coordinated that litigation strategy with their own strategy in this Action, in a desperate effort to magnify the impact of their own personal response.

Instead of waiting for the Court to decide the motions to dismiss filed in mid-December 2020, or for Plaintiff to file his opposition to those motions on January 11, 2021, Snopes sent Plaintiff's counsel a Rule 11 safe harbor email on New Year's Day. The Individual Defendants did the same on January 4, 2021. Happy New Year indeed. The timing of these motions was not by chance—it was intended to alarm and intimidate Plaintiff in the midst of drafting his opposition to the motions to dismiss. And it served as a threat of potential financial retribution if Richmond did not withdraw the VFAC. Simply put, without having even heard Richmond's opposition or understanding his legal arguments, Snopes coordinated with Mikkelson and Westbrook to extort, under threat of sanctions, a dismissal of the VFAC.

As discussed below, the claims in this Action are not barred by res judicata, because the previous state court action had no occasion to address the injury or factual issues. But even if they are, sanctions are unwarranted. Snopes and the Individual Defendants argue that dismissal pursuant to res judicata conststiues a *de facto* Rule 11 violation. This ignores the nuanced and differing application of principles of res judicata that many courts have repeatedly recognized as difficult to understand and complex. Finally, beyond mere conjecture, neither Snopes nor the Individual Defendants present any actual evidence of harassment or improper purpose. Instead, they ignore Mikkelson's outright hostility to Richmond, and his knowing exclusion of Richmond from relevant information needed to serve as a Director.

Snopes Sanctions Motion is itself meritless and a violation of Rule 11, and it should be denied in entirety.

## II.     RELEVANT FACTUAL HISTORY

Plaintiff initially began working with Mikkelson in 2015 when Snopes contracted with Proper Media, LLC ("Proper") to manage and operate the Snopes.com website. (VFAC, ¶ 20.) At that time, Proper consisted of five members:

2

HELTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

Richmond, Drew Schoentrup ("Schoentrup"); Vincent Green ("Green"); Ryan Miller ("Miller"); and Tyler Dunn ("Dunn"). (VFAC, ¶ 19, n.1.)

In July 2016, Proper's then five members jointly purchased a single share of Snopes, representing a 50% interest in Snopes, from Barbara Mikkelson (Mikkelson's ex-wife). (VFAC, ¶ 19.) In early 2017, Green and Miller left Proper and joined forces with Mikkelson to secure control over Snopes. (VFAC, ¶¶ 21-28.) Shortly thereafter, Proper, Schoentrup, and Richmond filed an action in the San Diego Superior Court ("State Action") that eventually included claims against Snopes, Mikkelson, Green, and Miller. (VFAC, ¶ 29.) The claims against Mikkelson, Green, and Miller were all brought in their individual capacities, and not because they were Snopes' agents. (VFAC, ¶¶ 29, 33.) For example, the claims against Green and Miller were breach of duty to Proper and its other members during their time as employees and members of Proper. (Hrutkay Decl., Ex. A, (State Action Plaintiffs' Third Amended Complaint ("TAC"), ¶¶ 179-184 (Breach of Proper Operating Agreement), ¶¶ 241-248 (Breach of Fiduciary Duties to Proper Media), and ¶¶ 257-268 (Quantum Meruit).)

While the State Action was pending, Mikkelson, Green and Miller seized control over Snopes, and implemented a series of board and shareholder actions (claiming a majority vote counting Green and Miller's interests) that effectively marginalized Richmond, Schoentrup, and Dunn. (VFAC, ¶ 30; Richmond Decl., ¶¶ 16-17.) Falsely representing to Snopes that the claims against them in the State Action arose from their acts on Snopes' behalf or as its agents, Mikkelson, Green, and Miller each requested and obtained indemnification of their personal legal fees from Snopes. (VFAC, ¶ 31-35.) When Snopes' counsel responded that indemnification was premature, but agreed to advance legal fees, Mikkelson, Green, and Miller executed undertakings ("Mikkelson Undertaking", "Green Undertaking", and "Miller Undertaking", respectively; collectively, the "Undertakings"), falsely stating that the claims for which they sought advances arose from their roles as

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Snopes' "agents." (VFAC, ¶ 34.) The Undertakings also failed to disclose that the advancements would be used to prosecute personal and individual cross-claims (*i.e.*, not claims that benefit Snopes) against Proper, Richmond, Schoentrup, Dunn, as well as Publife LLC, a separate business owned by Richmond and Schoentrup that had no relationship with Snopes—this was a material omission. (VFAC, ¶ 35.)

Mikkelson and Westbrook (Snopes' only board members at the time) approved the advancements, based on the materially false and misleading Undertakings. (VFAC, ¶ 37.) Compounding the damage to Snopes and its minority shareholders, Mikkelson and Westbrook (Snopes CEO and CFO at that time), caused Snopes to deduct those "advancements" as then-current business expenses, even though Snopes' counsel in 2017 had deemed a determination on indemnification premature. (VFAC, ¶¶ 31-33.) These improper deductions ignored that the advancements were loans, subject to forgiveness only upon certain conditions (*i.e.*, an ultimate determination that indemnification is merited per Corporations Code and Bylaws).

## III.   RELEVANT PROCEDURAL HISTORY

### A.   State Action

Proper, Richmond, and Schoentrup ("State Action Plaintiffs") filed the State Action in May 2017 against Snopes and Mikkelson. (Richmond Decl., ¶ 3.)[2]

The State Action Plaintiffs amended their complaint several times, adding Green and Miller as Defendants, and adding direct claims against Mikkelson for violation of Business and Professions Code § 17200, *et seq.* ("Direct Competition Claim") and for declaratory relief against all defendants. (Hrutkay Decl., Ex A (TAC), ¶¶ 302-325.)[3]

---

[2] The procedural history of the State Action is extremely complex. The only relevant issue here is whether the derivative claims in this Action are barred by the dismissal of the State Action claims for violation of Business and Professions Code § 17200, *et seq.*, rescission, and declaratory judgment.

[3] Plaintiffs also brought several other claims in the TAC that are not relevant to the issues here.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

The State Action Direct Competition Claim sought relief based on Snopes solicitations, and false statements therein.  It was unrelated to Snopes' legal fee advancements or the falsity of the undertakings by Mikkelson, Green, or Miller related thereto. (Hrutkay Decl., Ex. A (TAC), ¶¶ 326-335.) The declaratory relief claim ("Declaratory Relief Claim") sought an order declaring that: (i) the board of director consents approving of the advancements were "invalid corporate transactions, and [ ] therefore null and void"; and (ii) that the advancements to Mikkelson, Green, and Miller violate[ ] the Corporations Code and the [Snopes] Bylaws and is thus improper and unlawful." (Hrutkay Decl., Ex. A (TAC), ¶¶ 351-360.) The State Action claim for rescission ("Rescission Claim") similarly concerned the propriety of Snopes' approval of the advancements. (Hrutkay Decl., Ex. A (TAC), ¶¶ 336-350.) These claims were not predicated on any fraudulent statement in the undertakings, as are the present claims. Instead, they were premised on Snopes' right to be free from self-interested decisions by directors.

The TAC also included derivative claims on behalf of Snopes for violation of Business and Professions Code § 17200, *et seq.* ("Derivative Competition Claim") (Hrutkay Decl., Ex. A (TAC), ¶¶ 302-325.) Similarly, these claims did not involve the veracity of the statement in any of the Undertakings or Westbrook's approval of payment by Snopes of Mikkelson's, Green's, and Miller's legal fee invoices, in his role as CFO, after the board approval. Instead, it was premised on Snopes' right to be free from competitive harm and self-interested board decisions.

On June 5, 2019, Snopes and Mikkelson each filed nearly-identical motions to strike these claims pursuant to California's Anti-SLAPP statute (Code Civ. P. § 425.16). (Richmond Decl., ¶ 4.) After briefing, the Trial Court granted both motions, dismissing the TAC's claims for defamation (not implicating the advancements), rescission, and declaratory judgment, as well as the Direct Competition Claim, and the Derivative Competition Claim. (Hrutkay Decl., Ex. B(Mikkelson Anti-SLAPP

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Order), Ex. C (Snopes Anti-SLAPP Order).)[4]

In granting Mikkelson's Anti-SLAPP motion to strike, the State Court found no evidence that Snopes had "suffered injury in fact and 'lost money or property'". (Hrutkay Decl., Ex. B (Mikkelson Anti-SLAPP Order), at 3-4, Ex. C (Snopes' Anti-SLAPP Order) at 5.) It was not until 2020 that Richmond was finally able to obtain such evidence.

Eventually, Richmond and Schoentrup appealed both orders granting the Anti-SLAPP Motions, but dismissed the appeal as to Snopes. (Hrutkay Decl., ¶ 5.) The State Action is stayed pending a decision on two consolidated appeals, including an appeal of the Mikkelson Anti-SLAPP decision. (*id*.)

Richmnond was elected to the Snopes board of directors on March 20, 2018. (Richmond Decl., ¶ 5.) While the State Action was stayed in the State Court, Richmond continued in his role as a Director. (*Id*.) In preparation for an annual board meeting last year, Richmond received Snopes' preliminary financial results for 2019. (*Id*.) Those financial reports, and prior year tax returns requested by Richmond after the board meeting, disclosed to Richmond, for the first time, Snopes' financial damage arising from the advancements. (Richmond, ¶ 11, Exs. J, K, L.) Not only had Snopes paid out millions in legal fee advances pursuant to the materially false and misleading Undertakings, Mikkelson and Westbrook also caused Snopes to improperly deduct those advancements as business expenses for tax years, 2017, 2018, and 2019,[5] even though the advancements are merely loans to Mikkelson, Green, and Miller, subject to forgiveness only upon certain future conditions (not current expenses). (Richmond Decl., ¶¶ 11-12.)

---

[4] The Mikkelson Anti-SLAPP Order and the Snopes Anti-SLAPP Order are referred to collectively herein as the Anti-SLAPP Orders.

[5] At the time Richmond received Snopes 2017 and 2018 income tax returns, the 2019 return had not yet been filed. He received the 2019 returns only after multiple reminders and requests, and after significant additional harassment from Mikkelson, Green and Miller.

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101

6

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

After Richmond in 2020 finally saw Snopes' 2019 financial report and income tax returns for 2017-18, he had evidence reflecting Snopes' extensive advancement of legal fees based on the fraudulent Undertakings, and the impact to Snopes' shareholders from Snopes' improper tax deductions of those advancements, evidence unavailable to him when the State Court issued the Anti-SLAPP Orders.

After finally receiving Snopes tax returns and 2019 Management Report, Richmond reached out to Mikkelson and Westbrook through counsel, raising his concerns, but his inquiries were largely rebuffed. (Richmond Decl., ¶¶ 8, 13; Hrutkay Decl., Exs. D and E.) And despite being told at Snopes' March 2020 board meeting that Snopes' accountant would provide an explanation for the deduction, no such explanation ever came. (Richmond Decl., ¶ 8.) Richmond repeatedly raised the concerns throughout 2020, which fell on deaf ears. (Richmond Decl., ¶ 8.)

Richmond's legitimate concerns having been ignored or brushed aside by Mikkelson, Westbrook, and Snopes' counsel, he understood that his only recourse was to pursue these new claims, unaddressed by the State Court, in this Action. Before filing this Action, Plaintiffs' Counsel engaged in a detailed analysis of the facts and law underlying these claims, including an assessment of the applicability of res judicata. In the course of that analysis, it was determined that res judicata was inapplicable to the claims in this Action because: 1) the State Court claims seek redress for an entirely separate injury (*i.e.*, a distinct primary right); 2) the claims herein raise issues that were not assessed, alleged, or determined in the State Action; and 3) this lawsuit was brought only after Richmond obtained documentation of Snopes' damages in 2020, which was well after the Anti-SLAPP Order.

## B.    Federal Action

Plaintiff filed this Action on September 25, 2020 and filed the Verified First Amended Complaint on December 2, 2020. (ECF Nos. 1, 9.) The VFAC alleges five causes of action, four of which are derivative, and brought for the benefit of Snopes: (i) fraud and negligent misrepresentation—against Mikkelson for submitting false

7

Undertakings to his personal benefit; (ii) aiding and abetting fraud—against Mikkelson and Westbrook, for their assistance in defrauding Snopes; and (iii) unjust enrichment—against Mikkelson for his receipt of advancements stemming from his own wrongful acts against the company. (VFAC, ¶¶ 58-86.) Defendants Mikkelson and Westbrook filed a motion to dismiss the FAC ("Individuals MTD") on December 16, 2020 (ECF No. 11); Snopes filed a motion to dismiss ("Snopes MTD") the same day (ECF No. 12).

On January 1, 2021 (*i.e.*, after the motions to dismiss had been filed, but prior to Plaintiff's opposition), Snopes' counsel emailed Plaintiff's Counsel, attaching a draft motion for sanctions pursuant to Rule 11 ("Snopes Sanctions Motion"), pursuant to the 21-day statutory safe-harbor. (Hrutkay Decl., Ex. H (Snopes Jan. 1, 2021 safe-harbor email).) On January 4, 2021, counsel for the Individual Defendants did the same, emailing a draft of their motion for sanctions on identical grounds ("Individuals Sanctions Motion"). (Hrutkay Decl., Ex. I (Mikkelson and Westbrook Jan. 4, 2021 safe-harbor email).)

Plaintiff filed an omnibus opposition to the Motions to Dismiss on January 12, 2021.[6] (ECF Nos. 17-20.) Snopes and the Individual Defendants filed reply briefs on January 19, 2021. (ECF Nos. 23, 24.)

On January 24, 2021, Snopes filed its Snopes Sanctions Motion, seeking legal fees and costs incurred in seeking to dismiss the VFAC and in making Snopes Sanctions Motion itself. (*See* ECF No. 25.) On January 26, 2021, Mikkelson and Westbrook filed the Individuals Sanctions Motion. (ECF No. 26.) The Snopes Sanctions Motion argues that the claims in the FAC "are not warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law" and are intended to "harass, needlessly increase the cost of litigation, and to gain tactical advantage in another pending lawsuit." (*Id.*)

---

[6] Due to technical issues preventing a filing on January 11, 2021, Plaintiff's filing was deemed timely. (*See* ECF No. 22.)

8

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA  92101

1   As explained below, Plaintiff and his counsel have an objectively good faith
2   basis for bringing these claims against the Individual Defendants, making sanctions
3   improper. Further, the timing of the Snopes Sanctions Motion and the coordination
4   between Snopes and the Individual Defendants create strong inferences that both
5   sanctions motions are being used for an improper purpose, violating Rule 11
6   themselves.

## IV.   **LEGAL STANDARD**

8   The party seeking sanctions bears the burden of demonstrating by clear and
9   convincing evidence that sanctions are justified. (*See In re Zilog, Inc.*, 450 F.3d 996,
10   1007 (9th Cir. 2006); *see also Tom Growney Equip., Inc. v. Shelley Irrigation Dev.,
11   Inc.*, 834 F.2d 833, 837 (9th Cir. 1987); *see also Whatsapp Inc. v. NSO Group Techs.
12   Ltd.*, No. 19-cv-01723-PJH, 2020 WL 1849707 at *2 (N.D. Cal. Apr. 13, 2020)
13   ("*Whatsapp*").) Rule 11 sanctions are "an extraordinary remedy, one to be exercised
14   with extreme caution." (*Operating Eng'rs Pension Tr. v. A–C Co.*, 859 F.2d 1336,
15   1345 (9th Cir. 1988) ("*Operating Eng'rs*"); *see also Pilot Inc. v. TYC Brother Indust.
16   Co., Ltd.*, No. 2:20-cv-02978-ODW (RAOx), 2021 WL 135785, at *2 (C.D. Cal. Jan.
17   14, 2021) ("*Pilot*") (same); *Joseph v. Kaye*, No. CV 16-01245 SJO (GJSx), 2016 WL
18   3677142 at *1 (C.D. Cal. July 7, 2016) ("*Joseph*") (same).)

19   Sanctions are reserved for "the rare and exceptional case where the action is
20   clearly frivolous." (*Operating Eng'rs*, *supra*, at 1344; *see also B.P West Coast*,
21   *supra*, 2013 WL 12377979 at *11 (S.D. Cal. Dec. 3, 2013) ((same).) To find that
22   sanctions are warranted, the Court must conclude that Plaintiff lacked a good faith
23   argument for her view of what the law is, or should be. (*Zaldivar v. City of Los
24   Angeles,* 780 F.2d 823, 830-31 (9th Cir. 1986) ("*Zaldivar*"); *Jones v. Encore Credit
25   Corp.*, No. EDCV 16-2673 JGB (KKx), 2017 WL 6523443 at *3 (C.D. Cal. June 8,
26   2017) ("*Encore*").) That standard is met when attorneys file "a pleading or other
27   paper which no competent attorney could believe was well grounded in fact." 
28   (*Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).)

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

9

To win a Rule 11 sanctions motion, movant must satisfy the high burden of showing that they are warranted. (*See In re Dairy Farmers of America, Inc.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015).) Sanctionable conduct must be shown by clear and convincing evidence. (*See Cardionet, LLC v. Mednet Healthcare Technologies*, 146 F. Supp. 3d 671 (E.D. Pa. 2015); *see also Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306 (Fed. Cir. 2013).) Nonetheless, "[i]f, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed." (*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986); *see also Whitacre v. Sensu, Inc.*, No. CV 19-9277-PLA, 2020 WL 7051341 (C.D. Cal. Oct. 16, 2020).)

Rule 11 sanctions are an extreme remedy, such that when divining the point at which an argument turns from merely losing to losing and sanctionable, district courts should resolve all doubts in favor of the signer. (*See Bernhardt v. Tradition North America*, 676 F. Supp. 2d 301 (S.D.N.Y. 2014).) To determine whether a violation has occurred in a pleading, thereby subjecting counsel to Rule 11 sanctions, a court must avoid hindsight and should resolve doubts in favor of the attorney. (*See Hutter v. Countrywide Bank, N.A.*, 41 F. Supp. 3d 363 (S.D.N.Y. 2014).)

The Advisory Committee Notes to Rule 11 recognize that motions for sanctions can be improperly used as a litigation tactic:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

In the rare instance when sanctions are imposed under Rule 11, they should be limited to what is sufficient to deter "repetition of such conduct or comparable

10

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

conduct by others similarly situated." (FRCP 11(c)(2); *Natural-Immunogenics Corp. v. Newport Trial Group*, No. SACV 15-02034JVS(JCGx), 2020 WL 7263540 at *12 (C.D. Cal. Oct. 28, 2020) ("*Immunogenics*").) "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. Such sanctions can have an unintended detrimental impact on an attorney's career and personal well-being." (*Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992).) Snopes Sanctions Motion must be denied. There is no such clear and convincing evidence here—certainly not enough evidence to justify such an extraordinary sanction in the presence of valid disputes concerning the applicability of res judicata.

## V.   **ARGUMENT**

### A.   **Snopes Sanctions Motion is Meritless**

Snopes fails to show that the VFAC is frivolous, or improper at all, doing nothing to satisfy the high burden of proof on a Rule 11 motion, which requires clear and convincing evidence that plaintiff lacked a good faith argument for his view of what the law is, or should be. (*See Zaldivar*, *supra*, 780 F.2d at 830-31.) The conclusory arguments in the Snopes Sanctions Motion ignore the reasons why res judicata does not bar this Action (as set forth in Plaintiff's MTD Opposition and below), and do nothing to satisfy this standard. In fact, Snopes' ignorance of Plaintiff's valid arguments against dismissal, shows precisely why the Snopes Sanctions Motion is itself improper and a violation of Rule 11—there is simply no objectively reasonable basis to seek sanctions based on Plaintiff's VFAC.

Snopes argues that the VFAC is frivolous, and thus subject to Rule 11 because res judicata bars the Derivative Claims brought here, the same argument for dismissal advanced in its Motion to Dismiss. It provides no evidence to support a finding that Plaintiff's claims are objectively unreasonable, and its motion falls short of the clear and convincing evidence standard applicable here. Instead, Snopes simply reiterates arguments for dismissal.

There are numerous reasons why the Derivative Claims are not barred by res

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101

11

judicata (discussed below), and why the VFAC is neither frivolous nor used for any improper purpose, as Plaintiff identified in his opposition to the Motions to Dismiss. (ECF No. 17). But Snopes ignores these reasons, abusing Rule 11 to test the pleadings by unnecessarily multiplying proceedings, and to intimidate Plaintiff and his attorney in the midst of two pending motions to dismiss. (*See, e.g.,* Rule 11, 1993 Advisory Committee Notes (sanctions motion should not be used to test sufficiency of pleadings, to emphasize merits of a position, intimidate, create a conflict of interest between attorney and client).)

Snopes concludes, without providing any actual evidence (and in the face of valid arguments about res judicata) that the derivative claims were brought without reasonable inquiry. Absent these conclusory arguments, Snopes provides no evidence showing a lack of objective reasonableness of the claims in the VFAC.

Finally, Snopes' hostility to Plaintiff Richmond is apparent, despite the fact that the VFAC's Derivative Claims were "filed on the corporation's behalf; not against it." (*Patrick v. Alacer Corp.*, 167 Cal. App. 4th 995, 1004 (2008).) Snopes' identifies no viable interest in opposing the Derivative Claims alleged in the VFAC, or in seeking sanctions against a shareholder bringing an action for its own benefit, making clear its alignment with Mikkelson and Westbrook and its truly adversarial posture apparent. Under these circumstances, Snopes has grossly overstepped the bounds of its opposition to the VFAC, by actively disputing the merits of Plaintiff's allegations in the Snopes MTD, and by asking the Court to impose punishment on a shareholder bringing derivative fraud claims that are brought for the company's own benefit. Mikkelson, was responsible for the company's decision to file the Snopes Sanctions Motion—once again using Snopes' money to fight his personal battles and intimidate minority shareholders.

### B.   Plaintiff's Claims Were Brought Only After Good-Faith Inquiry

Plaintiff filed this Action only after a well-considered factual and legal inquiry that included an assessment of res judicata and discussions among co-counsel for

12

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Plaintiff, Mr. Hrutkay and Mr. Tencer. (Hrutkay Decl., ¶ 10; Tencer Decl., ¶ 2.) Following that reasonable inquiry, Plaintiff and his counsel had an objectively good-faith basis to bring the Derivative and Direct Claims alleged here, in light of the fact that these claims addressed factual and legal issues distinct and separate from those considered by the State Court in ruling on the Anti-SLAPP Motions. Plaintiffs do not dispute that the Anti-SLAPP Orders are final judgments on the merits. But, as explained below, the claims and issues brought here are not barred because they concern: (i) distinct claims and issues that were not and could not be assessed in the State Action; and (ii) separate primary rights in the form of distinct harm caused by Mikkelson's fraud and unjust enrichment, and his and Westbrook's aiding of that fraud. Similarly, there is no evidence that Westbrook was in privity with Mikkelson or Snopes in the State Action to make res judicata applicable to claims against him.

### 1. *The Derivative Claims Are Not Barred by Res Judicata*

There are only four claims in the State Action that arguably bar the Derivative Claims here: 1) a Direct Competition Claim; 2) a Declaratory Judgment claim; a Derivative Competition Claim; and 4) a Derivative Rescission claim. Plaintiff's claims in this Action present issues that were never presented to or considered by the State Court, and address a distinct primary right from that asserted in the State Action.

The VFAC's derivative claims in this Action against Mikkelson and Westbrook are the only claims that concern the advances themselves, alleging that Mikkelson defrauded Snopes by knowingly submitting a false and misleading undertaking, that he and Westbrook aided Green and Miller in submitting their false undertakings and paying for unmerited advancements, and that Mikkelson was personally unjustly enriched to Snopes' serious detriment. These allegations bear no relation to the claims or issues considered by the State Court in the State Action, all of which concerned the propriety of the approvals of the advancements by the board (prior to Richmond's election as a board member).

The Direct Competition Claim does not relate to the advancements, since it is

based on false statements on GoFundMe, and the advantage those statements gave Mikkelson, Green and Miller because the public was unknowingly paying their legal fees via GoFundMe. (Hrutkay Decl., Ex. A (TAC), ¶¶ 326-35.).

Although the Derivative Competition Claim concerns approval of the advancements, it does not implicate res judicata to bar the derivative claims brought in *this* action. Instead, that State Action claim concerned the board's approval of the advancements, which the State Action Plaintiffs alleged were invalid because Mikkelson was conflicted (and thus not permitted to vote), and because "Mikkelson, Green, and Miller are not entitled to the advancement of attorneys' fees in connection with this lawsuit under both Corporations Code section 317(f) and the Bylaws." (Hrutkay Decl., Ex. A (TAC), ¶ 320.) This bears no relation to the issues necessary to determine the derivative fraud, aiding-and-abetting fraud, and unjust enrichment claims raised here.

To the extent there was a decision on the merits, it could not have concerned whether the statements in the Undertakings were fraudulent, (*i.e.*, misleading by affirmative false statement or by omitting material information), since the Trial Court was only looking at competition, rescission, and declaratory judgment claims challenging the Snopes board's conflicted approval of the advancements. Indeed, the State Court based its decision on the lack of evidence of damages to Snopes, distinguishing it from this Action. The mere fact that the board's approval of the advancements was not disturbed by the Anti-SLAPP Orders says nothing about Mikkelson's knowing submission of false and misleading statements to secure a personal benefit, the primary issue under consideration here. Nor did the stricken claims or Anti-SLAPP Orders address Westbrook's aid to Green and Miller by approving legal fee invoices exceeding the scope of the Undertakings, as alleged here.

Similarly, it had no occasion to determine if Mikkelson or Westbrook had assisted Green and Miller, or if Mikkelson had been unjustly enriched. Instead, it

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

only concerned whether Mikkelson was an interested director so as to disqualify him from voting on the advancements, or whether he, Green, and Miller were "entitled" to advancement of attorneys' fees under California law and Snopes' Bylaws. (Hrutkay Decl., Ex. A (TAC), ¶ 318.)

As to the Derivative Rescission Claim in the State Action, it too is unrelated to the false and misleading Undertakings alleged here, and could not have been, since the State Court's review of that claim was limited to an assessment of the conflicted nature of Mikkelson's approval of the advancements, and whether those conflicts required reversal of the board's decision to approve the advancements. (Hrutkay Decl., Ex. A (TAC), ¶¶ 336-350.) And even with this limitation, the State Court only made findings concerning a lack of injury—it did not substantively assess the allegations of Mikkelson's conflicted board approval. (*See* Hrutkay Decl., Ex. C (Snopes Anti-SLAPP Order), at 5.)

The same holds true for the Declaratory Judgment Claim in the State Action. The veracity of the statements made in the Undertakings is not part of that claim. Instead, it dealt only with whether or not Mikkelson's conflicted status invalidated his approval of the advancements, and whether the advancements were permitted pursuant to California's Corporations Code and Snopes' Bylaws.

Res judicata does not bar any claims in this Action because none of the State Action claims concerned the dispositive issue here – the false and misleading nature of the statements in the Undertakings – and because those State Action claims sought relief for the competitive harm stemming from the advancement and for other *equitable* relief. Res Judicata "does not apply to issues not raised by the complaint and not actually litigated and necessarily decided in the prior litigation." (*Morris v. Blank*, 94 Cal. App. 4th 823, 832 (2001); *see also Garden City, Inc. v. San Jose*, No. CV 13-0577 PSG, 2013 WL 4766748, at *6 (N.D. Cal. Sept. 5, 2013).) "Even though two suits involve the same nucleus of facts, they do not necessarily raise the same cause of action under California law." (*Maldonado v. Harris*, 370 F.3d 945, 953 (9th

Hrutkay Law PC
600 W. Broadway, Suite 700
San Diego, CA 92101

Cir. 2004).)

California's res judicata analysis is guided by the primary rights doctrine. On examination, Plaintiff's claims in the VFAC are not barred, because they seek remedy distinct from the competitive and equitable injury alleged in the State Action. Here, Plaintiff brings claims not to pursue a loss of Snopes' competitive advantage, or the improper approval of advancements, but instead Mikkelson's knowing submission of false statements to his personal benefit, and his and Westbrook's aid to Green and Miller. These issues were not reached by the State Court, and are not barred by res judicata. "Because the primary rights . . . are different, the causes of action are also different, and the judgment . . . in the [state] action therefore does not bar any of [Plaintiff's] federal claims." (*Maldonado*, *supra*, 370 F.3d at 952.)

The State Action's adjudication of Snopes' board's approvals of the advancements (after finding no injury) provided it with no opportunity to address the false and misleading Undertakings at the heart of the derivative claims here

Moreover, Snopes does nothing to show that the principles of res judicata are so obviously applicable to the claims in the VFAC as to prove clear and convincing evidence that an objectively reasonable investigation would show the VFAC's claims to be barred. (*See, e.g.*, *DKN Holdings, LLC v. Faerber*, 61 Cal. 4th 813, 818 (2015) ("*DKN*") (acknowledging California Supreme Court "terminology in discussing the preclusive effect of judgments has been inconsistent and may have caused confusion.").) Instead, it cites to cases presenting drastically different situations than those presented here, including several where sanctions were only granted after parties had filed dozens of actions litigating identical claims against identical parties based on identical issues, information and facts—clearly distinguished from this Action. In *Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777, 778 (7th Cir. 1986) the case at issue was the plaintiff's thirteenth attempt to litigate several law schools' denial of admission to law school. *Damiani v. Adams,* 958 F. Supp. 1409, 1418 (S.D. Cal. 1987) similarly involved sanctions against a plaintiff that had litigated at least 15

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

16

previous actions involving the same parties. (awarding sanctions where "legal arguments [had] already been aired, and rejected in *numerous* other lawsuits") (emphasis added); *see also McMahon v. Pier 39 Ltd. P'ship*, 2003 WL 22939233, at *1-3 (N.D. Cal. Dec. 5, 2003) (issuing sanctions after dismissal of thirteenth action concerning same claims).

Snopes also ignores that Richmond had no documented evidence of injury to Snopes from the fraudulent Undertakings until 2020, and that the absence of injury was a primary reason the State Court struck the derivative claims. (*See* Hrutkay Decl., Ex. C (Snopes Anti-SLAPP Order), at 5.)

For example, only after obtaining Snopes' 2017 and 2018 tax returns in 2020 did Richmond understand that, by claiming the advancements as current business expenses, Snopes had effectively written off the legal fee debts of Mikkelson, Green, and Miller which were secured by the Undertakings at issue here. (Richmond Decl., ¶ 12, Exs. J, K, L.) Snopes' implicit acknowledgment that the advancements will never be repaid is an additional significant fact unavailable to the State Court, addressing an issue that the State Action has never addressed.

Finally, without anaylsis, Snopes presumes that the claims here are brought against the same parties as the State Action, ignoring any meaningful analysis of whether Westbrook was indeed in privity with Mikkelson so as to benefit from the Anti-SLAPP Orders *if* they are actually preclusive (they are not). For purposes of res judicata, privity means "such an identification in interest of one person with another as to represent the same legal rights." *Rodgers v. Sargent Controls & Aerospace*, 136 Cal. App. 4th 82, 90 (2006). Based on the only information available, namely that both Mikkelson and Westbrook are both directors, there is no evidence (much less the clear and convincing evidence required to implement sanctions) that they had such an identification of interests or that Snopes or Mikkelson were representing Westbrook's legal rights in the State Action.

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

### C.    The Claims Were Brought For Snopes' Benefit, Not to Harass

Snopes proffer that this Action was brought for an improper purpose is misleading and disregards documented facts showing that: (i) there are valid concerns about Mikkelson and Westbrook's management of Snopes; (ii) Richmond raised these concerns with Mikkelson, Westbrook, and Snopes' corporate counsel; (iii) Richmond's requests and issues were ignored for months, or completely; and (iv) in response to Richmond's requests and concerns, Mikkelson berated Richmond and aggressively mischaracterized this Action and the State Action to his own benefit. (*See* Richmond Decl., ¶¶ 7, 8, 11-17, Exs. J, K, L, M, N, O; Hrutkay Decl., Exs. D, E, F.)

First, there are valid concerns about Mikkelson's management of Snopes, of which the allegations in this Action form only a part. For example, in early December 2020, a former employee of Snopes filed a complaint alleging wrongful termination and a slew of other allegations, including that Mikkelson and Green "engaged in a boy's club culture," that they requested that the employee focus on stories from Spanish-speaking countries based on his status as Snopes' only Latino employee, and Mikkelson's use of racial slurs and circulation of racially offensive emails. (Hrutkay Decl., Ex. F.) Richmond has repeatedly asked Mikkelson, Westbrook and Snopes' corporate counsel about Snopes' response to the allegations in the employee's complaint (allegations which appear to present a significant risk of liability to Snopes, based on Mikkelson's conduct), but has heard no response. (Richmond Decl., ¶ 15, Ex. M.)

Mikkelson's refusal to provide basic financial data until several months after Plaintiff's request shows that Plaintiff is the party being unfairly treated by the controlling shareholder, CEO, and Chair of Snopes's board, not the other way around, as Snopes and the Individual Defendants would have this Court believe. For example, despite requests dating back to October 2020, Richmond was not provided with Q3 2020 financial statements to review until late February 2021. (Richmond

18

Decl., ¶ 16.) Richmond also requested a copy of Snopes' 2019 tax returns beginning in July 2020, yet was only provided with them in January 2021, having to remind Mikkelson and Snopes' counsel multiple times. (Richmond Decl., ¶ 16, Ex. N.)

Richmond has been apparent about his desire to work productively with Mikkelson and Westbrook to further Snopes' interests, notwithstanding legal claims he has brought against Mikkelson in the State Action. And Mikkelson's blatant hostility to Richmond is obvious: In response to concerns that Snopes' board could not properly function under these circumstances, Mikkelson said

> How about you resign, and then the board can appoint someone to fill your seat who isn't trying to run the company into the ground, isn't so litigious as to cost the company tens of thousands of dollars every time it tries to hold a board meeting, and is actually motivated to contribute useful and helpful ideas for the benefit of the company (rather than embezzle from it).

(Richmond Decl., ¶ 17, Ex. O.) Despite Snopes' desperate attempt to portray itself as Richmond's victim, it is obvious that Mikkelson has used, and continues to use, his position of control over Snopes' for his own personal benefit and to harass and belittle Richmond and other minority Snopes shareholders.[7]

Without providing any evidence, and ignoring Mikkelson's plainly hostile attitude when Richmond had previously raised these concerns prior to filing this Action, Snopes argues that Plaintiff filed the Derivative Claims to harass Snopes and its board, to increase the cost of litigation, and for tactical advantage in the State Action. As described above, there are myriad reasons why Plaintiff brought this Action, but at the heart of Plaintiff's claims is Plaintiff's discovery in 2020 of the actual amounts that Mikkelson, Green, and Miller had obtained from Snopes pursuant to their false and misleading statements in the Undertakings, as well as his own

---

[7] Mikkelson baselessly claims that Richmond and Schoentrup are seeking to gain control, despite the fact that they cannot obtain a majority interest in Snopes unless they were to purchase a portion of Mikkelson's interest. The most they could ever own is 50% of Snopes. (VFAC, ¶ 10 (Mikkelson owns 50% of outstanding Snopes shares).)

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

19

interest in the impact of Snopes' improper income tax deductions on his personal income tax return.

Snopes' argument regarding harassment is simply that the Derivative Claims are "a thinly veiled effort to relitigate these same rejected claims." (Snopes Sanctions Motion at p. 18.)

Again ignoring Mikkelson's refusal to respond to Richmond's good-faith concerns about the impact of the advancements and related improper income tax deductions, Snopes argues without support that this Action was brought with the intent to increase the costs of litigation. This argument presumes that the matter will be dismissed, and that "Snopes will also need to reimburse Mikkelson and Westbrook when they prevail against the baseless claims." (Snopes Sanctions Motion at pp. 18-19.) But this approach puts the cart before the horse, and presumes the propriety of a reimbursement of legal fees to Mikkelson and Westbrook long before any such decision has been made. Further, to the extent Snopes' legal fees have been increased, they have been increased solely as a result of Snopes' improper adversarial efforts to thwart the Derivative Claims brought on its own behalf, including the filing of the Snopes MTD and Snopes Sanctions Motion, each attaching thousands of pages of exhibits. Put simply, the mere fact that Snopes and the Individual Defendants may have spent significant amounts in pursuing unnecessarily aggressive litigation tactics provides no evidence that Richmond or Plaintiff's Counsel intended to increase the cost of litigation by filing this Action. In fact, by filing the sanctions motions, Snopes and the Individual Defendants have drastically multiplied the proceedings and increased the cost of litigation.

Notably, Snopes argues that this Action is an attempt to gain a tactical advantage in the State Action by "depriv[ing] SMG's agents of the funding necessary to defend against Richmond's personal claims in the [State Action]," (Snopes Sanctions Motion at 9:5-13.) Such posturing ignores that Plaintiff does not seek any declaratory relief or prohibition on future advancements that would deprive

20

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

Mikkelson, Green, and Miller of the ability to pay legal fees in the State Action. Instead, Plaintiff seeks money damages for: (i) the harm caused to Snopes by Mikkelson's fraudulent statement in his Undertaking, and Mikkelson's efforts to facilitate the fraudulent statements in the Green and Miller Undertakings (VFAC, ¶¶ 56-82); and (ii) the harm caused by Westbrook's approval as CFO to pay all of the legal fee invoices for Mikkelson, Green, and Miller, which included personal legal expenses that provided no meaningful benefit to Snopes (VFAC, ¶¶ 83-86.)

Snopes points to no other tactical advantage or unfair advantage that the State Action Plaintiffs would obtain in the State Action because they cannot—this action was brought by Richmond to assert Snopes' rights in the face of Mikkelson's fraud upon, and improper control over, Snopes, and his failure to respond to Richmond's valid concerns, as alleged in detail in the VFAC.

In fact, quite ironically, Mikkelson and Snopes' have actually sought to gain a tactical advantage through this Action, providing regular updates and solicitations for donations on Snopes' GoFundMe Page that mischaracterize Richmond's claims here and in the State Action, to fuel their litigation against Richmond here, and against all Plaintiffs in the State Action. (Hrutkay Decl., Ex. G.) To date, Mikkelson has raised over $1.6 million based on misrepresentations of Richmond's claims in this litigation and the claims in the State Action. (*Id*.)

### D.    Even if Claims Are Dismissed, There Is No Basis for Sanctions

Even if Plaintiff's claims are dismissed in part or in whole, sanctions are unwarranted because the VFAC was filed on an objectively good faith basis, particularly in light of Mikkelson's open hostility to Richmond as a Snopes' Director, which has been broadcast publicly on GoFundMe, and privately in shareholder communications. In filing this Action, Plaintiff sought to establish Snopes' right to pursue fraud perpetrated on it by its CEO and Chair, something that was not raised in the Trial Court.

Federal courts have denied sanctions requests even where a federal action was

21

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

1    barred by a judgment in a former action. (*See Joseph*, , *supra*, 2016 WL 3677142 at

2    \*10("Although Plaintiff's claims here relitigate claims disposed of in the Florida

3    Action, the Court exercises its discretion not to impose sanctions"); *Stevenson v.*

4    *Nabisco Brands, Inc.*, 757 F. Supp. 1026, 1030 (E.D. Mo. 1991) (denying request for

5    sanctions even where claims subject to dismissal on basis of res judicata); *B.P West*

6    *Coast*, *supra*, 2013 WL 12377979, at \*10-11 ("Although the Court is troubled by

7    Schiller and Ryan's pattern of filing inadequate pleadings, including the TAC, the

8    Court remains unconvinced that sanctionable conduct has occurred").) It has

9    regularly been recognized that understanding the primary rights doctrine is difficult

10   and confusing. (*See DKN*, *supra*, 61 Cal. 4th at 823; *see also Encore*, *supra*, 2017

11   WL 6523443 at \*3 ("California's 'primary rights' approach is not a model of

12   clarity").) Clearly, the application of res judicata alone does not make a party's claims

13   "baseless" or made without reasonable inquiry, creating a *de facto* violation of Rule

14   11, despite Snopes' efforts to argue otherwise.

15   Here, even if the Court finds the Derivative Claims barred by res judicata,

16   sanctions would be unwarranted. Not only was this Action filed based on a reasonable

17   interpretation of California's res judicata law, but it was also premised specifically

18   on issues outside of the State Action – whether the statements in the Undertakings

19   were false and misleading. Given the severity of Rule 11 sanctions, Plaintiff and

20   Plaintiff's Counsel respectfully submit that this Action was brought in a good faith

21   effort to protect Richmond and Snopes from Mikkelson's and Westbrook's harmful

22   mismanagement and, as such, sanctions are not warranted. (*See, e.g., Primus*

23   *Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 650 (9th Cir. 1997)

24   ("Sanctions not only may have a severe effect on the individual attorney sanctioned

25   but also may deter future parties from pursuing colorable claims").)

26   ///

27   ///

28   ///

22

### E.   Sanctions Against Defendants are Warranted for Filing a Frivolous Rule 11 Motion

"The filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." (Rule 11, 1993 Advisory Committee Notes; *see also Walker v. Blackground Records, LLC*, No. CV 16-4833 FMO (FFMx), 2017 WL 8186040, at \*9 (C.D. Cal. Aug. 7, 2017) ("*Walker*").) As such, the Court is empowered to award reasonable expenses in opposing a Rule 11 motion, including attorney's fees. (*Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001).)

On January 12, 2021, Plaintiff filed his MTD Opposition, which included substantial legal support for his claims, and the specific grounds why dismissal was inappropriate under any of Snopes or the Individual Defendants' arguments. The MTD Opposition set forth: 1) why res judicata does not bar these claims; 2) how Plaintiff satisfied demand futility and shareholder representative requirements; and 3) why the direct claim is not derivative in nature. Nonetheless, Snopes and the Individual Defendants each filed a motion for sanctions just two weeks later, ignoring the MTD Opposition. Snopes' failure in its sanctions motion to address the arguments in Plaintiff's MTD Opposition strongly suggests that the current motion is in bad-faith. (*See, e.g., Walker*, 2017 WL 8186040, at \*9 (issuing sanctions for party filing Rule 11 motion where motion ignored viable legal theory validating the good-faith nature of pleading).)

Snopes should not be punished by having to pay fee sanctions for the improvident decisions of Mikkelson, in directing Snopes' attorneys. But Snopes' counsel, knowing that its arguments are meritless, should be ordered to pay Plaintiff's attorneys' fees for filing Snopes Sanctions Motion. Not only does the Snopes Sanctions Motion lack evidence of Rule 11 violations, it ignores that Plaintiff's claims are well founded in fact and law, and objectively reasonable. (*Pilot* 2021 WL 135785 (C.D. Cal. Jan. 14, 2021) ("It is evident that there is animosity between [the parties]. Nevertheless, Defendants may not drag the Court into [their] foolish and

HRUTKAY LAW PC
600 W. BROADWAY, SUITE 700
SAN DIEGO, CA 92101

1  spiteful antics by filing a frivolous motion for sanctions, thereby wasting valuable

2  judicial resources.").

3  **VI.   <u>CONCLUSION</u>**

4      For the reasons herein, Plaintiff respectfully requests the Snopes Sanctions

5  Motion be denied.

6   Dated:  March 18, 2021                Respectfully submitted,

7                                          HRUTKAY LAW PC

8

9                                          By:   ___*s/ Matthew Hrutkay*___
                                                 Matthew Hrutkay
10

11                                         600 W. Broadway, Suite 700
                                           San Diego, CA  92101
12                                         matt.hrutkay@hrutkaylaw.com

13                                         and

14                                         TENCER SHERMAN LLP

15                                         Philip C. Tencer, Esq., Bar No. 173818
                                           12520 High Bluff Drive, Suite 230
16                                         San Diego, CA  92130
                                           phil@tencersherman.com
17

18                                         *Attorneys for Plaintiff CHRISTOPHER*
                                           *RICHMOND*

19

20

21

22

23

24

25

26

27

28