1   Paul A. Tyrell (Bar No. 193798)
    E-mail:      paul.tyrell@procopio.com
2   Ryan C. Caplan (Bar No. 253037)
    E-mail:      ryan.caplan@procopio.com
3   Jacob Kozaczuk (Bar No. 294734)
    E-mail:      jacob.kozaczuk@procopio.com
4
    PROCOPIO, CORY, HARGREAVES &
5      SAVITCH LLP
    525 B Street, Suite 2200
6   San Diego, CA 92101
    Telephone: 619.238.1900
7   Facsimile: 619.235.0398
8
    Attorneys for Nominal Defendant Snopes Media
9   Group, Inc.

10                UNITED STATES DISTRICT COURT

11        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12  CHRISTOPHER RICHMOND, an          Case No. 3:20-CV-1925-W-KSC
    individual,
13                                     REPLY IN SUPPORT OF
                                       NOMINAL DEFENDANT
14              Plaintiff,             SNOPES MEDIA GROUP, INC.'S
                                       MOTION FOR SANCTIONS
15  v.                                 UNDER FEDERAL RULE OF
                                       CIVIL PROCEDURE 11
16  DAVID MIKKELSON, an individual;
    BRAD WESTBROOK, an individual; and
17  DOE DEFENDANTS 1-10, inclusive,    Date:     April 1, 2021
                                       Dept:     3C Third Floor
18              Defendants,            Judge:    Hon. Thomas J. Whelan
19  and
20
    SNOPES MEDIA GROUP, INC.
21
    Nominal Defendant.
22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2
**Page**

3
I. INTRODUCTION ..................................................................................................... 1

4
II. THE DERIVATIVE CLAIMS INVOLVE THE SAME PRIMARY RIGHT
AS RICHMOND'S DERIVATIVE CLAIMS IN THE STATE ACTION .................. 2

5

6
III. ANY RELATED ISSUES COULD HAVE BEEN RAISED IN THE STATE
ACTION .................................................................................................................... 3

7
IV. IT IS APPROPRIATE FOR SNOPES TO CHALLENGE RICHMOND'S
STANDING TO ASSERT CLAIMS ON THE COMPANY'S BEHALF ................. 6

8

9
V. THE FAC IS OBJECTIVELY FRIVOLOUS AND WAS FILED FOR AN
IMPROPER PURPOSE .............................................................................................. 7

10
VI. SNOPES' RULE 11 MOTION IS TIMELY ........................................................ 9

11
VII. CONCLUSION .................................................................................................... 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Nominal Defendant Snopes Media Group, Inc. ("Snopes") respectfully

2  submits the following Reply in support of its Motion for Sanctions under Federal

3  Rule of Civil Procedure 11 against Plaintiff Christopher Richmond ("Richmond")

4  and his counsel of record, Matthew Hrutkay and Hrutkay Law PC.

5                          **I.  INTRODUCTION**

6    Richmond asserted numerous derivative claims "on Snopes' behalf" in the

7  pending California state court action (the "State Action"), including claims seeking to

8  cut off litigation funding to Snopes' agents.  These claims were dismissed with

9  prejudice in a non-appealable order pursuant to California's anti-SLAPP statute.

10  Richmond does not dispute that this anti-SLAPP order is now a final judgment on the

11  merits against him and in favor of Snopes.  Yet, Richmond has now repackaged the

12  same fee advancement claims into his verified First Amended Complaint ("FAC") in

13  a brazen attempt to relitigate the same claims in a new forum where he hopes to obtain

14  a different outcome.

15    Res judicata plainly bars Richmond efforts to assert the same, adjudicated

16  claims in this federal action.  Although he argues that these claims are brought in good

17  faith, Richmond's derivative claims do nothing but present a new theory for

18  challenging the same fee advancements.  Snopes served Richmond and his counsel,

19  Mr. Hrutkay, with its Rule 11 motion more than three weeks before the motion was

20  filed.  The moving papers explain in detail why sanctions are warranted under

21  multiple, independent grounds for the frivolous filing of Richmond's duplicative

22  claims.  However, Mr. Hrutkay refused to withdraw Counts One through Four of the

23  FAC.  Sanctions are therefore warranted against Mr. Hrutkay for refusing to withdraw

24  these legally unreasonable claims.

25    Sanctions are further warranted against both Mr. Hrutkay and Richmond

26  because the baseless derivative claims were filed in order to harass Snopes and its

27  board of directors, needlessly increase the cost of litigation, and to gain leverage in

28  Richmond's personal litigation against Snopes' agents.  Rather than rebut these Rule

1   11 violations, the Opposition only further confirms that Richmond filed these claims

2   for improper reasons, including in retaliation for David Mikkelson ("Mikkelson") and

3   David Westbrook ("Westbrook")'s purported failure to respond to the Richmond's

4   inquiries about an employment dispute, Mikkelson's delay in providing financial

5   statements, and Mikkelson's perceived attitude towards Richmond.

6           Contrary to Richmond's argument, it is entirely appropriate for Snopes to bring

7   this motion, just as it was appropriate for Snopes to seek dismissal of Richmond's

8   claims.  It is well established under California law that a corporation may challenge

9   the standing and appropriateness of a plaintiff who purports to sue on the company's

10  behalf.  When the same ill-motivated plaintiff re-files improper derivative claims that

11  another court has already rejected, there is no reason that the corporation should not

12  be able to seek sanctions as a recourse.

13  **II.  THE DERIVATIVE CLAIMS INVOLVE THE SAME PRIMARY RIGHT**

14  **AS RICHMOND'S DERIVATIVE CLAIMS IN THE STATE ACTION**

15          Richmond concedes that he and Snopes are both parties in the State Action,[1]

16  and that the order granting Snopes' anti-SLAPP motion is a final, non-appealable

17  judgment against Richmond on the merits.  *See* Opposition at pp. 6:7-8, 13:5-6;

18  Hrutkay Decl., ¶ 5.  The only element of res judicata that Richmond disputes is whether

19  the derivative claims in the FAC are the same claims asserted in the State Action.

20          The derivative claims here are plainly the same claims dismissed by the anti-

21  SLAPP ruling in the State Action.  It is well settled that "the determining factor under

22  California's primary rights approach to defining a single cause of action" is whether

23  the claims "seek recovery for the same damage."  *See Roche v. Hyde*, 51 Cal. App. 5th

24  757, 823 (2020).  Here, the primary right is Snopes' right to be free from the improper

25  advancement of litigation funding—the same harm asserted by Richmond and litigated

26  to finality in State Action.  Richmond agrees that the "[verified] FAC's derivative

27  _____

[1] Richmond contends that director Westbrook is not in privity for purposes of res

28  judicata.  However, this is Snopes'—not Westbrook's—motion, and privity is not at
    issue here.

1    claims in this Action . . . concern the advances themselves" (Opposition at p. 13:19-

2    20), which are the only claims at issue here.  (Snopes is not a party to the direct cause

3    of action against its directors.)   However, Richmond erroneously contends that

4    "Plaintiff's claims in the [verified] FAC are not barred, because they seek remedy [sic]

5    distinct from the competitive and equitable injury alleged in the State Action."  *Id* at

6    p. 16:3-4.  Not so.

7         The primary rights analysis is decidedly not predicated on the *remedy* sought in

8    the two actions.  For purposes of the primary rights analysis, "the cause of action is

9    the right to obtain redress for a harm suffered, regardless of the specific remedy sought

10   or the legal theory (common law or statutory) advanced."  *Boeken v. Philip Morris*

11   *USA, Inc.* 48 Cal. 4th 788, 798 (2010).  "The primary right must . . . be distinguished

12   from the remedy sought: 'The violation of one primary right constitutes a single cause

13   of action, though it may entitle the injured party to many forms of relief, and the relief

14   is not to be confounded with the cause of action, one not being determinative of the

15   other.'"  *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002) (citation

16   omitted).  Thus, Richmond cannot circumvent the res judicata bar by seeking new

17   remedies for the same harm.  It is nevertheless worth noting that Richmond does, in

18   fact, seek the same remedies in both actions, which are addressed in the moving papers.

19   *E.g.,* Motion at p. 12:20-25 (comparing the requests for disgorgement of fee

20   advancements in both actions).  The Opposition flatly ignores these references to the

21   identical remedies sought in Richmond's state court pleadings.  By pointing out that

22   Richmond also sought (and failed to obtain) additional remedies in the State Action,

23   the Opposition only underscores the extent to which Richmond already litigated the

24   same claims.

25   **III.  ANY RELATED ISSUES COULD HAVE BEEN RAISED IN THE STATE**

26                                          **ACTION**

27        The derivative claims in this federal action all pertain to the same harm and

28   damages alleged in the State Action: the misappropriation of Snopes' funds to further

                                             3

1    the personal litigation interests of Snopes' agents.  FAC, ¶¶ 63, 69, 71, 80.  As

2    discussed in the moving papers, the purported misrepresentations in the FAC were

3    expressly raised in Richmond's complaint in the State Action.  *Compare* FAC, ¶¶ 59,

4    60, 65, 66, 76, 77 *with* TAC, ¶¶ 14, 131, 302, 326, 348.  Moreover, Richmond

5    aggressively litigated this claim in state court.  *E.g.*, Exh. 7 at pp. 14:1, 18:4-5; Exh. 10

6    at  pp. 6:23-7:3,  16:1-18:12.[2]    Thus,  any  purported  issues  relating  to  Snopes'

7    advancement of legal expenses could easily have been raised in the State Action.

8    *Villacres v. ABM Industries Inc.*, 189 Cal. App. 4th 562, 569 (2010).  ("Res judicata

9    bars not only issues that were raised in the prior suit but related issues that could have

10   been raised.");  *DKN Holdings LLC v. Faerber*, 61 Cal.4th 813, 818 n. 1 (2015)

11   ("Although different grounds for legal relief may be asserted under different theories,

12   conduct that violates a single primary right gives rise to only one cause of action.").

13        Yet, in addition to his "new remedies" argument, Richmond contends that the

14   repackaged derivative claims are not barred because he raises a new issue in

15   connection with the undertakings for Snopes' legal fee advancements.  *See* Opposition

16   at p. 15:19-23 ("Res judicata does not bar any claims in this Action because none of

17   the State Action claims concerned the dispositive issue here – the false and misleading

18   nature of the statements in the Undertakings – and because those State Action claims

19   sought relief for the competitive harm stemming from the advancement and for other

20   *equitable* relief.")   However, this purportedly "false and misleading nature of the

21   undertakings" is precisely the sort of issue Richmond was required to raise in the State

22   Action.

23        Res judicata "'rests upon the ground that the party . . . has litigated, *or had an*

24   *opportunity to litigate* the same matter in a former action in a court of competent

25   jurisdiction, and should not be permitted to litigate it again to the harassment and

26   vexation of his opponent. Public policy and the interest of litigants alike require that

27

28   [2] All "Exhibits" refer to Snopes' Request for Judicial Notice in support of this
     Motion.

1   there be an end to litigation.'" *Robinson v. Southern Counties Oil Company*, 53 Cal.

2   App. 5th 476, 482 (2020) (emphasis added) (*citing Villacres*, 189 Cal. App. 4th at

3   575). "[C]laim preclusion applies not just to what was litigated, but more broadly to

4   what could have been litigated." *Guerrero v. Department of Corrections &*

5   *Rehabilitation*, 28 Cal. App. 5th 1091 (2018); *Mattson v. City of Costa Mesa*, 106

6   Cal. App. 3d 441, 446 (1980) ("prior final judgment on the merits not only settles

7   issues that were actually litigated but also *every issue that might have been raised and*

8   *litigated in the first action*") (emphasis added).

9       It is undisputed that Richmond *could have* raised this undertakings issue in the

10  State Action because he actually *did* raise the issue, repeatedly. (*E.g.*, TAC, ¶¶ 14,

11  131, 302, 326, 348, Exh. 7 at pp. 14:1, 18:4-5; Exh. 10 at pp. 6:23-7:3, 16:1-18:12.)

12  However, without citing any relevant authority, Richmond appears to invoke the

13  delayed discovery rule under *Allied Fire Protection v. Diede Construction, Inc.*, 127

14  Cal. App. 4th 150, 156 (2005), which permits avoidance of res judicata where the

15  successive suit is based on newly discovered facts that diligence could not have

16  uncovered sooner. *See Ratliff v. Mortg. Store Fin., Inc.*, No. 17-CV-02155-EMC,

17  2017 WL 5890090, at *8 (N.D. Cal. Nov. 29, 2017). However, as the court explained

18  in *Allied Fire Protection*, the delayed discovery rule does not apply where "the issue

19  of the misrepresentation was actually litigated in the [prior] action." 127 Cal. App.

20  4th at 156 (discussing *Gamble v. General Foods Corp.* 229 Cal. App. 3d 893, 902

21  (1991)).

22      Richmond conflates the delayed discovery of new claims with his discovery of

23  supplemental evidence to support claims already adjudicated in the State Action. The

24  latter is not an exception to the res judicata bar, and Richmond cites no authority to

25  suggest otherwise. Moreover, aside from being immaterial, Richmond's assertion that

26  he "had no documented evidence of injury to Snopes from the [purportedly] fraudulent

27  Undertakings until 2020" is demonstrably untrue. *See* Opposition at p. 17:6-9.

28  Richmond introduced "evidence" of purported damages from Snopes' legal fee

5

1    advancements on multiple occasions in the State Action.  For instance, after the court

2    denied Richmond's motion to enjoin the legal fee advancements, he filed a motion for

3    reconsideration in June 2019 based on newly-discovered evidence and claimed that

4    "[Snopes] is now insolvent, leav[ing] Snopes in a financial death spiral."  Exh. 22 at

5    p. 7:13-14.  In support of the motion, Richmond claimed that "Mikkelson provided

6    updated financial records to Snopes' Board directly contradicting Mikkelson's sworn

7    testimony, showing that the company is in fact insolvent . . . ."  *Id.* at p. 7:25-27.

8    Richmond then argued that "Snopes, by Mikkelson's own admission, may go out of

9    business as a direct result of unlawfully advancing legal expenses for the Individual

10   Defendants."  *Id.* at p. 8:11-12.  Thus, Richmond not only received financial

11   statements supporting his fee advancement claims, he filed those records and other

12   "evidence" in the State Action in support of those claims.  Needless to say, Snopes is

13   still very much alive and the Court never granted Richmond's motion for

14   reconsideration.  However, it is simply inaccurate that Richmond acquired no such

15   documentation until 2020, as plainly evidenced by the record in the State Action.

16   **IV.  IT IS APPROPRIATE FOR SNOPES TO CHALLENGE RICHMOND'S**

17   **STANDING TO ASSERT CLAIMS ON THE COMPANY'S BEHALF**

18       Snopes is certainly entitled to oppose Richmond's standing to bring these

19   derivative claims.  California courts have repeatedly upheld a corporation's right to

20   challenge a derivative claim before excessive costs and attorney fees are incurred.  *See*

21   *Patrick v. Alacer Corp.*, 167 Cal. App. 4th 995, 1011 n. 2 (2008) (noting that the

22   expected indemnity expense might render it unwise for the corporation to "sit idly

23   by").  Richmond's assertions that Snopes "is not supposed to be adverse to a derivative

24   plaintiff such as Richmond" is contrary to well-settled law (Opposition at p. 7:17-19),

25   and a thinly veiled attempt to avoid the merits of this Motion.  As the Nevada Supreme

26   Court recently explained:

27          We determine California's precedent is persuasive, and
            we conclude a corporation should be able to defend itself
28          from an erroneously brought derivative action.  If a

6

> corporation may have to later indemnify directors who defend against the derivative action, the corporation should have the ability to stop an unlawfully brought action before excessive costs and attorney fees are incurred.

*Cotter on behalf of Reading Int'l, Inc. v. Kane*, 136 Nev. Adv. Op. 63, 473 P.3d 451, 455 (2020). Snopes' anti-SLAPP motion aptly illustrates the purpose for allowing corporations to stop unlawful actions at the outset. By striking Richmond's baseless derivative claims against Snopes' CEO at the pleading stage, Snopes avoided having to reimburse its CEO for further defending against the merits of Richmond's claims in subsequent stages of litigation.[3]

## V.   THE FAC IS OBJECTIVELY FRIVOLOUS AND WAS FILED FOR AN IMPROPER PURPOSE

An objective review of the FAC in light of Richmond's previous filings reveals that Mr. Hrutkay filed nearly identical derivative claims in federal court in order to 1) harass Snopes and its board of directors, 2) needlessly increase the cost of litigation, and 3) gain leverage in Richmond's personal litigation against Snopes' agents—each of which are independent grounds warranting sanctions under Rule 11.

Rather than address the legal authorities and analysis in Snopes' moving papers that show that the FAC is frivolous and was filed for an improper purpose, Richmond identifies unrelated gripes with Mikkelson and Westbrook that have nothing to do with the substance of his derivative claims. Apparently, "the reasons why Plaintiff brought this Action" include Mikkelson's management stemming from an unrelated wrongful termination case and Mikkelson and Westbrook's purported failure to respond to the

---

[3] Richmond attempts to convince this Court that he is benevolently reasserting these claims for *Snopes'* benefit. To the contrary, Richmond's interests are overtly hostile to the company, a determination already made by the court in the State Action. The heavily redacted "history" in Richmond's Opposition conveniently omits that Richmond embezzled over a million dollars of Snopes' revenue in addition to numerous other unlawful acts set forth in Snopes' cross-complaint in the State Action. Richmond also failed to disclose that he even brought a claim to involuntarily dissolve the entire Snopes company. The notion that Richmond is bringing these claims for the benefit of Snopes—a company he embezzled from and tried to forcibly dissolve—is belied by the actual history between the parties.

7

1  Richmond's inquiries about the employment dispute (Opposition at p. 18:11-22),[4]

2  Mikkelson's delay in providing financial data (Opposition at pp. 18:23-19:3), and

3  Mikkelson's perceived hostility towards Richmond (Opposition at p. 19:4-16).

4  Snopes appreciates Richmond's frankness regarding the improper reasons he filed this

5  action, which further demonstrate that the FAC is, in fact, frivolous and was filed to

6  harass Snopes' directors.

7      Richmond attempts to downplay the resulting expense of relitigating his

8  derivative claims by suggesting that Snopes' directors might not ultimately prevail in

9  this action.  Opposition at p. 20:6-23.  However, the issue here is not whether Snopes'

10  agents are guaranteed to receive reimbursement in connection with action.  Rather, the

11  salient inquiry is whether, from an objective perspective, the FAC was filed to

12  needlessly increase the costs of litigation.  By forcing Snopes and its agents to defend

13  against Richmond's claims a second time, the implication is that regardless of the

14  anticipated outcome, Snopes will incur significant, additional legal expenses.

15      Richmond similarly misconstrues the analysis regarding whether a party is

16  "attempt[ing] to gain tactical advantage in another case."  *Fink v. Gomez*, 239 F.3d

17  989, 992 (9th Cir. 2001).  That Richmond is not seeking declaratory relief or

18  attempting to prohibit *future* legal fee advancements does not change the fact that the

19  claims seek to nullify Snopes' ability to advance legal funding by requiring Mikkelson

20  and/or Westbrook to pay back the legal fee advancements as purported damages.  *See*

21  Opposition at pp. 20:24-21:7.  The clear intent of these derivative claims is to prevent

22  Mikkelson, Green, and Miller from having access to the funding necessary to defend

23  against Richmond's relentless litigation tactics, giving Richmond a tactical advantage

24  against Snopes' agents.

25

26

---

27  [4] Either Richmond is simply seeking to tarnish this Court's view of Mikkelson by
referencing an unrelated employment dispute, or Richmond is admitting that the

28  derivative claims were filed in retaliation for Mikkelson and Westbrooks purported
failure to respond to the Richmond's inquiries of the employment dispute.

8

## VI.  SNOPES' RULE 11 MOTION IS TIMELY

Snopes was required to file its Rule 11 motion *before* the court ruled on its motion to dismiss. *Barbra v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) ("The purpose of the safe harbor . . . is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading and thereby escape sanctions. A motion served after the complaint had been dismissed did not give Carlsen that opportunity."); *Islamic Shura Council of Southern California v. FBI*, 757 F.3d 870, 873 (9th Cir. 2014).  Mr. Hrutkay complains that Snopes did not "wait[] for the Court to decide the motions to dismiss . . . or for Plaintiff to file his opposition to those motions before sending a Rule 11 safe harbor email."  Opposition at p. 2:3-6.  He claims this timing "create[s] strong inferences" that Snopes' motion is "being used for an improper purpose in violation Rule 11."  Opposition at p. 9:3-6.  Mr. Hrutkay fails to grasp that the very purpose of the safe harbor provision is to provide Richmond and Mr. Hrutkay an opportunity to withdraw the meritless claims *before* the Court rules on Snopes' motion to dismiss.  Thus, the Opposition simply confirms that Snopes' Rule 11 motion was timely served, and that Richmond and his counsel had ample opportunity to withdraw the derivative claims and avoid sanctions.

## VII.  CONCLUSION

For the reasons stated here and in the moving papers, Snopes respectfully requests that this Court issue Rule 11 sanctions against Richmond and his counsel, Mr. Hrutkay and Hrutkay Law PC.

DATED: March 25, 2021

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/Jacob Kozaczuk*
Paul A. Tyrell
Ryan C. Caplan
Jacob Kozaczuk
Attorneys for Nominal Defendant
Snopes Media Group, Inc.