**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER RICHMOND,<br><br>                              Plaintiff,<br><br>v.<br><br>DAVID MIKKELSON and BRAD WESTBROOK,<br><br>                              Defendants<br><br>and<br><br>SNOPES MEDIA GROUP, INC.,<br><br>                            Nominal Defendant. | Case No.:  20-cv-1925 W (KSC)<br><br>**ORDER:**<br><br>**(1) GRANTING REQUESTS FOR JUDICIAL NOTICE [DOCS. 11-2, 12-2, 20, 25-3, 29-7, 31-7] AND MOTIONS TO FILE DOCUMENTS UNDER SEAL [DOCS. 30, 32];**<br><br>**(2) GRANTING DEFENDANTS' MOTIONS TO DISMISS [DOCS. 11, 12] WITHOUT LEAVE TO AMEND; AND**<br><br>**(3) GRANTING DEFENDANTS' MOTIONS FOR RULE 11 SANCTIONS [DOCS. 25, 26]** |

    Pending before the Court are Defendants' motions to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) and motions for

sanctions under Federal Rule of Civil Procedure 11.  Plaintiff opposes the motions.  Along with the motions, the parties have also filed a number of requests for judicial notice and Plaintiff has filed motions to seal portions of certain documents.

The Court decides the matter on the papers submitted and without oral argument.  See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS** the requests for judicial notice [Docs. 11-2, 12-2, 20, 25-3, 29-7, 31-7], **GRANTS** the motions to file under seal [Docs. 30, 32], **GRANTS** the motions to dismiss [Docs 11, 12] **WITHOUT LEAVE TO AMEND** and **GRANTS** the motions for sanctions [Docs. 25, 26].

I. BACKGROUND

A. The parties.

Nominal Defendant Snopes Media Group, Inc. owns Snopes.com, a website "self-proclaimed as the 'definitive Internet reference source for urban legends, folklore, myths, rumors and misinformation....'" (*FAC* [Doc. 9] ¶ 1.)  Snopes was founded in 2003 by Defendant David Mikkelson and his now ex-wife, Barbara.  (*Id.* ¶ 10.)  Each owned half of the equity in Snopes.  (*State Court TAC* ¶ 39.[1])  David currently serves as Snopes' President, CEO, Chairman of the Board and is its single largest shareholder.  (*FAC* ¶ 10.)  Defendant Brad Westbrook is Snopes' CFO, corporate Secretary, and Director of the Board.  (*Id.* ¶ 11.)

Plaintiff Christopher Richmond and Drew Schoentrup are the co-founders of Proper Media, LLC ("Proper Media").  (*State Court TAC* ¶ 30.)  Proper Media is an Internet media company that "manages several highly-ranked web properties."  (*Id.* ¶ 29.)

---

[1] Plaintiff Christopher Richmond's Third Amended Complaint filed in Proper Media, LLC v. Snopes Media Group, Inc., San Diego Superior Court Case No. 37-2017-00016311 (the "State Court TAC"), is attached as an exhibit to most of the parties' requests for judicial notice.  (*See Indiv. Defs' RJN in Support of MTD* [Doc. 11-2], *Ex. 2* [Doc. 11-4]; *Snopes' RJN in Support of MTD* [Doc. 12-2] *Ex. 8* [Doc. 12-5]; *Snopes' RJN in Support of Sanctions Mot.* [Doc. 25-3] *Ex. 8* [Doc. 25-6]; *Pl's RJN in Support of Opp'n to Indiv. Defs' Sanctions Mot.* [Doc. 29-7] *Ex. A* [Doc. 29-5]; *Pl's RJN in Support of Opp'n to Snopes' Sanctions Mot* [Doc. 31-7] *Ex. A* [Doc. 31-5].)

Until the Spring of 2017, Proper Media also had three minority members: Tyler Dunn, Vincent Green and Ryan Miller.  (*Id.* ¶ 30; *FAC* ¶ 19, n. 1.)

### B. Snopes and Proper Media enter a General Services Agreement, and Proper Media's members purchase Barbara's 50% share of Snopes.

In approximately August 2015, Snopes entered into a General Services Agreement (the "GSA") with Proper Media.  (*State Court TAC* ¶ 42.)  Under the agreement, Proper Media was responsible for managing all content and advertising accounts for Snopes.  (*Id.* ¶ 45.)

The year before the GSA was entered, David and Barbara began divorce proceedings.  (*State Court TAC* ¶ 45.)  As a result, in 2016, Barbara sought to sell her 50% share in Snopes.  (*Id.*)

During the summer of 2016, Richmond and Schoentrup negotiated for the purchase of Barbara's share.  (*State Court TAC* ¶ 46.)  Originally, they intended Proper Media to purchase the share.  (*Id.*)  However, because Snopes elected pass-through tax treatment under Subchapter S of the Internal Revenue Code, Snopes's shareholders could not be companies.  (*Id.*)  Therefore, Richmond and Schoentrup proposed, and the minority members of Proper Media agreed, to structure the deal as a sale by Barbara to the individual Proper Media members, who would hold their portion of the share for the benefit of Proper Media.  (*Id.*)

On July 1, 2016, the sale of Barbara's share to the Proper Media's members closed.  (*State Court TAC* ¶ 49.)  The same day, Barbara resigned from Snopes' Board of Directors and from all of her officer roles.  (*Id.* ¶ 50.)

In 2017, David Mikkelson (hereinafter "Mikkelson") appointed Westbrook as a director to fill the vacancy left by Barbara's resignation.  (*FAC* ¶ 11.)  Then on October 27, 2017, Westbrook was appointed as Snopes' CFO.  (*Id.*)

**C.     Mikkelson allegedly conspires with Green and Miller to obtain a controlling interest in Snopes, and Richmond, Schoentrup and Proper Media file a lawsuit in the San Diego Superior Court.**

After the Proper Media members purchased 50% of Snopes, disputes arose between Richmond and Schoentrup, on the one hand, and Mikkelson on the other. (*State-Court TAC* ¶¶ 63–70.) Eventually, according to Richmond, Mikkelson decided to conspire with Proper Media minority members Green and Miller to obtain a controlling interest in Snopes and exclude Richmond and Schoentrup from its operation. (*Id.* ¶ 70)

Green and Miller eventually left Proper Media and joined Snopes. Before leaving, Green allegedly removed Richmond and Schoentrup's access to the Snopes' content-management system, which prevented Proper Media from fulfilling its obligations under the GSA. (*State Court TAC* ¶ 78.) Richmond also alleges that Green "instructed three Proper Media employees not to return to work, … removed thousands of dollars of computer equipment from the Proper Media offices used by these three employees," and "removed Snopes-related data from Proper Media's communication and project-management tools." (*Id.* ¶¶ 79, 82.)

Meanwhile, on March 10, 2017, Mikkelson terminated the GSA. (*State- Court TAC* ¶ 84.) Then on April 1, Mikkelson removed Richmond and Schoentrup's access to the bank account used for Snopes' business. (*Id.* ¶ 85.)

Based on the above events, on or about May 4, 2017, Richmond, Schoentrup and Proper Media filed a lawsuit in the San Diego Superior Court against Mikkelson, Snopes, Green and Miller, among others (the "State-Court Action"). (*FAC* ¶ 29; *Indiv. Defs' RJN in Support of MTD*, *Ex. 1* [Doc. 11-3] p. 2 of 57.)

**D.     Snopes advances Mikkelson, Green and Miller's litigation expenses.**

"In the summer and fall of 2017, Mikkelson, Green and Miller requested Snopes to indemnify and advance legal fees" for the State-Court Action. (*FAC* ¶ 31.) In order to obtain the advances, "Mikkelson, Green, and Miller each executed an undertaking,"

which "state[d] falsely and misleadingly that the claims for which they sought advances were brought as and against 'agents' of Snopes." (*Id.* ¶ 34.) "The Undertakings also limited the scope to advances of 'attorneys' fees and costs incurred in *defending* against' the claims brought against Mikkelson, Green, and Miller." (*Id.* ¶ 35, emphasis in original.) According to Richmond, "[t]his intent rendered the statements in the Undertakings false and misleading because they omitted disclosing that Mikkelson, Green, and Miller also used and intended to use the advanced funds to file affirmative claims in their individual capacities." (*Id.*) "Mikkelson and Westbrook, as the only two (2) members of Snopes' Board and in reliance on the statements in the Undertakings, executed three (3) unanimous written consents (the "Consents") approving the advances to Mikkelson, Green, and Miller." (*Id.* ¶ 37.)

### E. **Plaintiffs file the TAC in the State-Court Action challenging, in part, the legal-fee advances.**

On or about April 4, 2019, Richmond, Schoentrup and Proper Media filed the State-Court TAC, which asserted 18 claims for relief, including four derivative claims. (*See State-Court TAC*.) Among the allegations were that the Snopes' Board's authorization of Mikkelson, Green and Miller's legal-fee advances were improper because they were not being sued as agents of Snopes. (*Id.* ¶¶ 128, 130.)

In response, Snopes and Mikkelson filed Special Motions to Strike the State-Court TAC under California's anti-Strategic Lawsuit against Public Participation statute and other grounds (the "anti-SLAPP motion") and demurrers to the TAC. (*See Indiv. Defs' RJN in Support of MTD*, *Exhs. 4* [Doc. 11-6]*, 5* [Doc. 11-7]*, 8* [Doc. 11-10]*, 10* [Doc. 11-12]*, 13* [Doc. 11-15]*, 15* [Doc. 11-17]*, 17* [Doc. 11-19]*, 19* [Doc. 11-21].) Proper Media and Richmond opposed the motions. (*Id.*, *Exhs. 6* [Doc. 11-8]*, 7* [Doc. 11-9]*, 9* [Doc. 11-11]*, 14* [Doc. 11-16]*, 18* [Doc. 11-20].)

On August 22, 2019, the court granted Snopes' anti-SLAPP motion. (*Indiv. Defs' RJN in Support of MTD*, *Ex. 11* [Doc. 11-13].) With respect to the litigation-funding

claims, the court found the Board's authorizations of the legal-fee advances was "conduct that furthered the exercise of the constitutional right of petition—litigation funding." (*Id.* p. 5.) On August 28, 2019, the state-court granted Mikkelson's anti-SLAPP motion with respect to the litigation-funding claims on the same basis. (*Id.*, *Ex. 12* [Doc. 11-14] p. 4.) The court also sustained the demurrers and dismissed several claims, including the derivative corporate waste and derivative breach of fiduciary duty claims on the ground Richmond and Schoentrup "are not qualified to represent Snopes." (*Id.*, *Ex. 16* [Doc. 11-18] p. 2 of Ex. A.) The state-court plaintiffs appealed, and on December 2, 2019, the parties filed a Stipulation to Stay Entire Action Pending Plaintiffs' Appeals of Anti-SLAPP Rulings. (*Indiv. Defs' RJN in Support of MTD*, Ex. 27 [Doc. 11-29] 3:19–20.) Then on or about January 22, 2020, the state-court plaintiffs dismissed their appeal of the court's order finding that the Board's litigation funding was conduct in furtherance of the constitutional right to petition. (*See Snopes' RJN in Support of MTD, Exhs. 33–35* [Doc. 12-6].)

On September 25, 2020, with the State-Court Action pending, Richmond filed this lawsuit against Mikkelson, Westbrook and Nominal Defendant Snopes. The FAC asserts the following four derivative counts on behalf of Snopes, which again challenge the Board's authorization of Mikkelson's legal-fee advances : (1) Fraud; (2) Negligent Misrepresentation; (3) Unjust Enrichment; and (4) Aiding and Abetting Fraud. (*See FAC*.) In addition, the FAC asserts a direct claim for Breach of Fiduciary Duty against Mikkelson and Westbrook. (*Id.*)

Defendants now seek to dismiss this lawsuit arguing, among other things, that the lawsuit is barred by res judicata, based on the state-court's rulings on the anti-SLAPP motions and demurrers. Defendants also seek reimbursement of their attorneys' fees in this action as sanctions under Federal Rule of Civil Procedure 11.

//
//
//

## II. REQUEST FOR JUDICIAL NOTICE & MOTION TO FILE UNDER SEAL.

Defendants request judicial notice of documents filed in the following state-court cases: (1) Proper Media, LLC v. Snopes Media Group, Inc., et al, San Diego Superior Court Case No. 37-2017-00016311-CU-BC-CTL; (2) Bardav, Inc. v. Schoentrup, et al., San Diego Superior Court Case No. 37-2018-00004335-CU-MCCTL; and (3) Christopher Richmond, et al., v. David Mikkelson, Case No. D076375, in the California Court of Appeal, Fourth Appellate District, Division One.  (*Indiv. Defs' RJN in Support of MTD* [Doc. 11-2] 2:16–4:12; *Snopes' RJN in Support of MTD* [Doc. 12-2] ¶¶ 1,2, 4–35; *Snopes' RJN in Support of Sanctions Mot.* [Doc. 25-3] ¶¶ 1, 2, 4–42.) Snopes also requests judicial notice of its Amended and Restated Articles of Incorporation filed on March 5, 2018, with the California Secretary of State.  (*Snopes' RJN in Support of MTD* ¶ 3; *Snopes' RJN in Support of MTD* ¶ 3.)  Richmond seeks judicial notice of Vincent Green's and Ryan Miller's Third-Amended Cross-Complaint filed in Proper Media, LLC v. Snopes Media Group, Inc., et al, San Diego Superior Court Case No. 37-2017-00016311 and the State-Court TAC.  (*Pl's RJN in Support of Opp'n to MTD* [Doc. 20] 2:2–11; *Pl's RJN in Support of Opp'n to Indiv. Defs' Sanctions Mot.* [Doc. 29-7] 2:6–12; *Pl's RJN in Support of Opp'n to Snopes' Sanctions Mot.* [Doc. 31-7], 2:6–12.)  Additionally, although Richmond himself seeks judicial notice of pleadings filed in the state-court cases, he objects to Defendants' requests for judicial notice.  (*See Pl's Omnibus Objections to Defs' RJNs* [Doc. 19].)

In evaluating a motion to dismiss, "[c]ourts may take judicial notice of public records, including court records from another case." Almont Ambulatory Suregery Center, LLC, v. UnitedHealth Group, Inc., 99 F.Supp. 3d 1110, 1125 (C.D.Cal. 2015) (citing United States v. Howard, 381 F.3d 873, 876 n. 1 (9th Cir.2004)).  However, the court may not take judicial notice of disputed facts stated in public records. Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).

As set forth above, all the documents for which the parties seek judicial notice are public records.  Additionally, the primary issue addressed in this motion is whether

Richmond's FAC is barred by res judicata.  For these reasons, the Court will grant the parties' requests for judicial notice.  See Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d 1022, 1037 (9th Cir. 2005) ("judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes"); see also Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of a California Court of Appeal opinion, as well as "the briefs filed in that proceeding and in the trial court" for the purposes of ruling on issue preclusion).

Next, Richmond seeks to file under seal portions of his declaration, as well as selected portions of Exhibit D to the declaration of his attorney, Matthew Hrutkay, on the ground that the documents contain commercially sensitive and confidential business and financial information related to Snopes.  (*Pl's Mot. to Seal in Support of Opp'n to Snopes' Sanctions Mot.* [Doc. 30] 1:24–2:5; *Pl's Mot. to Seal in Support of Opp'n to Indiv. Defs' Sanctions Mot.* [Doc. 30] 1:24–2:5.)  The motions are unopposed.

Having reviewed the motions, and good cause appearing, the Court will grant the motions. See In re. Elec. Arts, Inc., 298 Fed. App'x 568 (9th Cir. 2008) (finding district court committed clear error in refusing to seal document containing confidential and commercially sensitive information).

### III. MOTION TO DISMISS

#### A. Legal Standard

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the

complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

**B.   Discussion**

  *1.   The derivative counts.*

Defendants argue the derivative counts asserted in the FAC are barred by res judicata. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007) (quoting Allen v. McCurry, 449 U.S. 90, 93 (1980)). The rule is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen, 449 U.S. at 94.

Consistent with the Full Faith and Credit statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80-81 (1984); Holcombe, 477 F.3d at

1097. Thus, district courts sitting in diversity must look to state law in evaluating res judicata.

Under California law, res judicata applies when "(1) [a] claim . . . raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." Boeken v. Phillip Morris USA, Inc., 48 Cal. 4th 788, 797 (2010).  California uses the "primary right" approach to determine if the same claim or issue was litigated in a previous proceeding.  Eaton v. Siemens, 2012 WL 1669680 at *6 (E.D. Cal., May 11, 2012).  Under this approach, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 1174 (1983).  Furthermore, res judicata bars consideration of issues raised in the first suit "but also of all matters which could have been raised therein." Id. at 1175.

Here, Richmond does not dispute that the State-Court Action resulted in a final judgment on the merits or that privity exists.  Instead, he argues "that this Action seeks redress for a separate and distinct primary right of Snopes from those at issue in the State Action." (*Omnibus Opp'n* [Doc. 17] 22:7–8.)  The Court disagrees.

Each of the derivative counts in the FAC are based on the contention that the legal-fee advances were unlawful and injured Snopes by depriving it of funds.  In the fraud count, Richmond alleges that Mikkelson falsely asserted in the Undertaking that the legal-fee "Advances would be used for legal fees relating to claims as an 'agent' of Snopes" when, in fact, Mikkelson was being sued in "his individual capacity." (*FAC* ¶ 59.)  Richmond further alleges that "Snopes and its Directors" relied on the false statement "in approving Mikkelson's request for Advances" and, as a result, Snopes was deprived of "funds that would have otherwise been available for operational purposes, distribution to shareholders, and/or re-investment into Snopes' future growth." (*Id.* ¶¶

10

61–63.) The same allegations are repeated nearly verbatim in the negligent misrepresentation and aiding and abetting fraud counts. (*Id.* ¶¶ 65, 67–69, 76, 78–80). And in the unjust enrichment count, Richmond alleges Mikkelson was personally and unjustifiably "enriched from Snopes' payment of the Advances for his personal benefit," thereby causing "damage to Nominal Defendant Snopes by making such funds unavailable to Snopes for its operations and other financial needs." (*Id.* ¶¶ 71, 72, 73.)

These allegations establish that the wrongful conduct at issue in the FAC's derivative counts was the Snopes' Board's approval of the improper legal-fee advances to Mikkelson, and the injury was depriving Snopes of funds that could have been used for operations, shareholder distributions or re-investment. Thus, the primary right at issue is Snopes' right to be free from the improper "Advances." See Silverado Modjeska Recreation and Park Dist. v. County of Orange, 197 Cal.App.4th 282, 298 (2011) ("An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose. [Citation omitted.]")

Similar to the FAC, the State-Court TAC challenged the legal advances to Mikkelson and alleged the advances deprived Snopes of funds. The State-Court TAC alleges that on October 13, 2017, Mikkelson and Westbrook executed a "written consent approving and authorizing the advancement and reimbursement of attorney's fees and costs incurred by Mikkelson in defending himself in this litigation… (the "Mikkelson Consent")." (*State-Court TAC* ¶ 125.) "Around the same time, … Mikkelson executed an undertaking to repay" the legal-fee advances. (*Id.*) Richmond contends the advances "constitute improper corporate transactions" under the Corporations Code and Snopes' Bylaws (*id.* ¶ 128) and that Mikkelson is "not entitled to the advancement" because he is not being sued as an "agent" of Snopes, but "for actions he took for his own personal benefit…." (*id.* ¶ 130). The State-Court TAC also alleges that because of the unlawful legal-fee advances to Mikkelson, "Snopes Media Group has been unable to pay any distributions to its shareholders" and is "in critical financial condition and is in imminent danger of insolvency and shutting its doors." (*Id.* ¶¶ 133, 134.) All of these allegations

11

are then incorporated by reference into each of the derivative claims for relief (*id.* ¶¶ 201, 226, 302, 336), which then repeat the contention that the advances were improper and injured Snopes (*id.* ¶¶ 206–208, 234, 237, 317, 322, 340, 341–349).

The above allegations confirm that the wrongful conduct at issue in the State-Court TAC's derivative claims was also the Snopes' Board's approval of the improper legal-fee advances to Mikkelson and the injury was depriving Snopes of funds that could have been used for operations, shareholder distributions or other financial needs. Accordingly, the same primary right is involved in both lawsuits: Snopes' right to be free from the improper "Advances."

The Court recognizes that the FAC and State-Court TAC relied on different legal theories to explain why the legal-fee advances were unlawful. While the FAC alleged the legal-advances were unlawful because they were obtained through Mikkelson's misrepresentations regarding the basis for the "Advances," the State-Court TAC's primary theory was that the "Advances" violated Snopes' Bylaws and the Corporations Code. Where the same primary right is involved in the two cases, the assertion of different legal theories is immaterial. See Eichman, 147 Cal. App. 3d at 1174 ("if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake *even if in the second suit the plaintiff pleads different theories of recovery*….") (emphasis added).

In his opposition, Richmond attempts to distinguish the primary-right at issue in the two lawsuits. He contends the State-Court Action involved "Snopes' right to be free of self-interested decisions made by conflicted directors such as Defendant Mikkelson that were in violation of California law." (*Omnibus Opp'n* 22:9–13.) In contrast, he argues the primary right in this case is different because it involves "damage to Snopes from (i) Defendant Mikkelson's submission of a fraudulent undertaking to secure his own personal advancement from Snopes; (ii) his execution of the Green and Miller Consents knowing that they were based on fraudulent statements; and (iii) Westbrook's approval of

invoices that he knew 'exceeded the scope of the Undertakings and approvals granted by Snopes' Board.'" (*Id.* 22:19–24.) The argument lacks merit for two reasons.

First, in asserting the cases involved different wrongful conduct, Richmond simply dissects the Snopes' Board's alleged improper authorization of the legal advances into the discreet acts—i.e, submission of the undertakings, the consents and approval of the invoices. Second, as Defendants point out, Richmond's description of the primary right incorrectly focuses solely on the wrongful conduct and not on the harm. (*See Indiv. Defs. Reply* [Doc. 23] 13:1–8.) Although the primary-right analysis includes an evaluation of the defendant's wrongful conduct (see Eichman, 147 Cal. App. 3d at 1174), the determining factor is the harm (see Roche v. Hyde, 51 Cal. App. 5th 757, 823 (2020)). As discussed above, the FAC and State-Court TAC establish that the harm at issue in the two lawsuits is the same: depriving Snopes of funds that could have been used for operations, shareholder distributions, etc.

Richmond next argues that a different primary right is at issue because he has new information that was unavailable to him before 2020. (*Omnibus Opp'n* 23:8–10.) In support of this argument, Richmond cites the FAC's allegations that he was "repeatedly denied access to information concerning key issues facing the Company" until March 13, 2020, when "Mikkelson provided Richmond with a preliminary draft of Snopes' financial statement for 2019.…" (*Id.*; *FAC* ¶¶ 51.) However, none of the derivative counts are based on this "new" information Richmond obtained in 2020. Rather, the derivative counts are based on the improper legal-fee advances. Because the "unavailable" information is not relevant to the derivative counts, his argument lacks merit.

### 2.   *The direct count.*

Mikkelson and Westbrook argue that Richmond cannot sue them "on an individual basis because his alleged claim rests solely on his status as a shareholder who is similarly situated to all other shareholders…." (*Indiv. Defs' P&A* [Doc. 11-1] 24:13–16.) The Court agrees.

A shareholder can only sue for an injury directly to the shareholder. <u>Vardanyan v. Moroyan</u>, 2014 WL 3749655, at *2 (N.D. Cal. July 29, 2014). Where the shareholder's injury is not unique, the shareholder must sue derivatively. <u>Mieuli v. Debartolo</u>, 2001 WL 777091, at *4 (N.D. Cal. May 7, 2001). "If a corporation suffers a direct injury to the whole of its assets, any corresponding injury… is merely incidental to, or an indirect result of the direct injury to the corporations' assets. An action by stockholders for that injury must be brought derivatively." <u>Pareto v. F.D.I.C.</u>, 139 F.3d 696, 699 (9th Cir. 1998).

In his opposition, Richmond insists he "was personally injured by Snopes' submission of income tax returns that inaccurately underreported Snopes taxable income…." (*Omnibus Opp'n* 21:1–6.) He further contends, that even if other shareholders are injured, an individual action exists so long as "the injury is not incidental to an injury to the corporation…." (*Id.* 21:9–15, quoting <u>Jones v. H.F. Ahmanson & Co.</u>, 1 Cal.3d 93, 107 (1969).) The Court is not persuaded by Richmond's argument for two reasons.

First, Richmond's contention that "he was personally injured" is directly contradicted by the FAC's allegation that the Snopes' tax returns "subjected Richmond to *potential* criminal, regulatory, and/or civil liability, among other damages." (*FAC* ¶ 89, emphasis added.) In other words, the FAC admits Richmond has not in fact suffered damages and, at this point, any damages are speculative. For this reason alone, Richmond's direct count is defective.

Second, Richmond's contention that he was personally injured also misses the point. Under <u>Pareto</u>, 139 F.3d at 699, the issue is whether his injury would also be incurred by Snopes' other shareholders *and* is not incidental to the corporation's injury. Richmond has failed to identify such an injury and the Court agrees with Defendants that filing incorrect tax returns causes an injury to Snopes that is shared by all its shareholders. Additionally, Richmond's potential tax liability would be incidental to any

tax liability Snopes would face if audited.  For these additional reasons, the direct count is defective.

### 3.  *Leave to amend.*

Richmond requests leave to amend the FAC to assert (1) a derivative breach of fiduciary duty claim based on the filing of the inaccurate 2017 and 2018 tax returns, and (2) challenging the legal-fee advances under the theory they were unauthorized constructive indemnifications and preferential distributions under Corporations Code § 316.  (*Omnibus Opp'n* 24:24–25:2.)

Generally, leave to amend shall be freely granted.  Schaffer Family Investors, LLC v. Sonnier, 120 F.Supp.3d 1028, 1038 (2015).  However, amendment will be denied where it would be futile.  Id.  Here, leave to amend would be futile.

Richmond's request for leave to assert new legal theories challenging the legal-fee advances would be futile.  As explained above, regardless of the legal theory asserted, the Court has found Richmond's successive challenges to the legal-fee advances involve the same primary right.  Accordingly, Richmond's proposed derivative counts challenging the legal-fee advances are barred by res judicata.  See Eichman, 147 Cal. App. 3d at 1174 ("if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake *even if in the second suit the plaintiff pleads different theories of recovery*…."); Silverado Modjeska Recreation and Park Dist., 197 Cal.App.4th at 298 ("The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based.")

With respect to Richmond's proposed derivative breach of fiduciary duty claim based on the inaccurate tax returns, the Court finds the claim is defective for two reasons.  First, as discussed above, Richmond admits in the FAC that any potential damage related to the filing of the tax returns is speculative because it is based on "*potential* criminal, regulatory, and/or civil liability…."  (*FAC* ¶ 89, emphasis added.)  For this reason, leave to amend to assert a derivative claim based on the filing of the tax returns would be futile.

15

20-cv-1925 W (KSC)

Second, Richmond's proposed derivative claim is also barred by res judicata. The claim asserts that "Snopes has been separately harmed by Defendants' filing of Snopes' inaccurate 2017 and 2018 income tax returns…." (*Omnibus Opp'n* 24:24–27.) Richmond further contends the tax returns are inaccurate because the legal advances "funded personal legal fees… which served no business purpose to Snopes." (*FAC* ¶ 89.) Thus, the proposed derivative claim rests on the same basic theory Richmond is asserting in the State-Court TAC and the FAC: that the legal-fee advances were improper.

As discussed above, res judicata not only bars consideration of issues raised in the first lawsuit, "but also of all matters which could have been raised therein." Eichman, 147 Cal..App.3d at 1175. Because Richmond's proposed breach of fiduciary duty claim arises from Snopes' Board's alleged improper authorization of the legal-fee advances, the Court finds the claim could have been brought in the State-Court Action and is, therefore, barred by res judicata.

In his opposition, Richmond nevertheless argues that the claim could not have been brought in the State-Court Action because the "information was unavailable to Richmond prior to 2020…." (*Omnibus Opp'n* 23:8–13.) In other words, Richmond appears to be arguing that Defendants prevented him from pursuing the claim by concealing or refusing to turn over Snopes' financial records. The Court is not persuaded

In Eichman, 147 Cal. App. 3d 1170, plaintiff sought to avoid res judicata by arguing the defendant fraudulently concealed facts until after the judgment was rendered. Id. at 1175. The Court of Appeal rejected the argument because, in part, under California law, "fraud or perjury by a party, which goes undiscovered until after judgment is entered, does not affect the finality and conclusiveness of the judgment." Id. As the court explained,

> Fraud by a party will not undermine the conclusiveness of a judgment unless the fraud was extrinsic, i.e., it deprived the opposing party of the opportunity to appear and present his case. The suppression of evidence is intrinsic [citations omitted]. Therefore, a judgment does not lose its res judicata effect because it was entered while evidence was being suppressed [citations

omitted]. "If the aggrieved party had a reasonable opportunity to appear and litigate his claim or defense, fraud occurring in the course of the proceeding is not a ground for equitable relief. The theory is that these matters will ordinarily be exposed during the trial by diligence of the party and his counsel, and that the occasional unfortunate results of undiscovered perjury or other intrinsic fraud must be endured in the interest of stability of final judgments." [Citation omitted.]

Id. at 1175–76.

Here, the records in the State-Court Action confirm Richmond had the opportunity to appear and challenge the legal-fee advances, as well as any related issues. The State-Court TAC further establishes that as early as 2017, Richmond contended Mikkelson was improperly refusing to turn over Snopes' financial information. (*State-Court TAC* ¶¶ 96–102.) Thus, Richmond also had the opportunity to challenge Mikkelson's alleged refusal to turn over those records. Based on these facts, the Court finds Richmond's alleged "inability" to discover claims related to the tax returns is, at best, the result of the "suppression of evidence [which] is intrinsic." Eichman, 1478 Cal. App. 3d at 1175. Richmond's proposed derivative claim relating to the tax returns is, therefore, barred by res judicata.

For these reasons, the Court finds leave to amend is not warranted.

IV.  **MOTION FOR SANCTIONS**

   A.  **Legal Standard**

Defendants request monetary sanctions against Richmond and his attorney, Matthew Hrutkay, under Federal Rule of Civil Procedure 11. "Rule 11 is intended to deter baseless filings in district court and imposes a duty of 'reasonable inquiry' so that anything filed with the court is 'well grounded in fact, legally tenable, and not interposed for any improper purpose." Council of So. Cal. v. F.B.I., 757 F.3d 870, 872 (9th Cir. 2014). Sanctions are "an extreme remedy, one to be exercised with extreme caution." Operating Eng'rs Pension Trust v. A-C Co., 859 F.3d 13336, 1345 (9th Cir. 1988). An

attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court 'claims, defenses, and other legal contentions… [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.'" Holgate v. Baldwin, 425 F.3d 671, 675-76 (9th Cir. 2005). The "test for whether Rule 11 is violated does not require a finding of subjective bad faith by the attorney." McMahon v. Pier 39, Ltd. Partnership, 2003 WL 22939233, *6, (N.D. Cal. 2003) (citing Zaldivar v. City of Los Angeles, 780 F.2d 823, 829 (9th Cir. 1986).

When a complaint is the primary focus of the Rule 11 motion, the district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." Holgate, 757 F.3d at 676. "Frivolous . . . denote[s] a filing that is both baseless and made without a reasonable and competent inquiry." Id. (citation omitted). Additionally, the Ninth Circuit has held that "successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997) (citing Zaldivar, 780 F.2d at 833).

**B.   Discussion**.

As discussed above, the records in the State-Court Action and the FAC establish that the same primary right is involved in both cases. The derivative claims asserted in the FAC are, therefore, clearly barred by res judicata. The files from the State-Court Action also confirm Attorney Hrutkay was actively involved in the State-Court Action, was aware of the claims for relief asserted in the State-Court TAC, and filed the request for dismissal of the appeal of the state-court's anti-SLAPP order. (*Snopes' RJN in Support of Sanctions Mot.*, *Ex. 38* [Doc. 25-7] and *Ex. 41* [Doc.25-7].) The Court agrees with Defendants' contention that given these facts, Attorney Hrutkay should have known this lawsuit was barred by res judicata and that the claims asserted were, therefore,

legally baseless.  Thus, sanctions are appropriate against Attorney Hrutkay.  See <u>Altmann v. Rushmore Loan Mgmt. Servs. Inc.</u>, 2015 WL 8483111, at *6 (E.D. Cal. Dec. 10, 2015) (awarding sanctions where lawsuit barred by res judicata); <u>Sommer v. Unum Life Ins. Co. of Am.</u>, 35 F.App'x 489, 491 (9th Cir. 2002) (affirming award of sanctions where counsel should have known case barred by res judicata).

Evidence also supports a finding that this lawsuit was filed for an improper purpose, specifically to harass Defendants. "[T]o sustain a claim of harassment on the ground of successive filings, the parties must be the same in the successive claim, and there must be a clear indication that the proposition urged in the repeat claim was resolved in the earlier one." <u>McMahon</u>, 2003 WL 22939233, *6 (citing <u>Zaldivar</u>, 780 F.2d at 834).  Here, there is no dispute that Richmond, Snopes and Mikkelson were also parties in the State-Court Action.  Additionally, the state-court's rulings on the anti-SLAPP motions clearly struck claims based on Richmond's contention the litigation advances were unlawful, which is the same issue raised in the derivative counts in this case.  Thus, sanctions are appropriate against Richmond and Attorney Hrutkay on this basis.  See <u>Zaldivar</u>, 780 F.2d at 834 (finding successive filing of complaints constituted harassment under Rule 11).

For all these reasons, the Court finds Defendants have established this lawsuit is both frivolous and was filed to harass Defendants.  Accordingly, sanctions are appropriate in this case.

## V.  CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** the requests for judicial notice [Docs. 11-2, 12-2, 20, 25-3, 29-7, 31-7], **GRANTS** the motions to file under seal [Docs. 30, 32], and **GRANTS** Defendants' motions to dismiss the FAC [Docs. 11, 12] **WITHOUT LEAVE TO AMEND**.  Additionally, the Court **GRANTS** Defendants motions for Rule 11 sanctions [Docs. 25, 26] and **ORDERS** as follows:

19

20-cv-1925 W (KSC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- **On or before October 15, 2021**, Defendants shall submit a brief, along with supporting evidence, regarding the attorneys' fees and costs incurred in this case.
- **On or before October 29, 2021**, Richmond may file a brief challenging the reasonableness of Defendants' attorneys' fees and costs.
- **On or before November 5, 2021**, Defendant may file a reply.

Upon submission of the above briefing, the matter shall be deemed under submission.

**IT IS SO ORDERED.**

Dated:  September 29, 2021

_____
Hon. Thomas J. Whelan
United States District Judge