1  Matthew Hrutkay (SBN 297485)
2  HRUTKAY LAW PC
   600 W. Broadway, Suite 700
3  San Diego, CA. 92101
4  matt.hrutkay@hrutkaylaw.com; 858.868.0018

5  Philip C. Tencer (SBN 173818)
6  TENCER SHERMAN LLP
   12520 High Bluff Drive, Suite 230
7  San Diego, CA  92130
8  Phil@TencerSherman.com*; 858.408.6900*

9  Attorneys for Plaintiff
10 CHRISTOPHER RICHMOND

11              UNITED STATES DISTRICT COURT FOR THE
12                 SOUTHERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14 CHRISTOPHER RICHMOND, an individual, | Case No:   3:20-cv-01925-W-KSC |
| 15                    Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' REQUESTS FOR ATTORNEYS' FEES PURSUANT TO ECF 38** |
| 16              v. | |
| 17 DAVID MIKKELSON, an individual; BRAD WESTBROOK, an individual; and DOE DEFENDANTS 1-10, inclusive, | [Filed Concurrently with Declarations of Christopher Richmond, Philip Tencer, Matthew Hrutkay, Heather Rosing, and Alan Brubaker] |
| 18 | |
| 19 | |
| 20                    Defendants, | NO ORAL ARGUMENT per Civil Local Rule 7.1(d)(1) |
| 21 and | |
| 22 SNOPES MEDIA GROUP, INC. | Judge:        Hon. Thomas J. Whelan |
| 23              Nominal Defendant. | Dept.:        3C |
| 24 | Mag. Judge:   Hon. Karen S. Crawford |
| 25 | Action filed:  September 25, 2020 |

26
27
28

## Table of Contents

I.     Introduction ................................................................................................. 5

II.    Relevant Background .................................................................................... 6

    A.     Richmond, Via Hrutkay, Filed the Present Action in Good Faith ............... 6

    B.     Defendants Request Fees Totaling Approximately $270,000 ...................... 7

III.   argument ...................................................................................................... 8

    A.     Fees in Any Amount, Let Alone Fees Totaling More Than a Quarter
Million Dollars, Would be Unduly Punitive and Not Necessary to Accomplish
Rule 11's Deterrent Purpose ...................................................................... 9

    B.     Fees in Any Amount, or, Alternatively, More than a Nominal Amount, Are
Not Warranted Due to Mitigating Factors, Including Counsel's Good Faith and
Inability to Pay and the Danger of Chilling Zealous Advocacy by Other
Attorneys for Other Clients ..................................................................... 14

    C.     Even if This Court Believes Monetary Sanctions Are Warranted, the
Requested Fees Are Excessive, Representing Duplicative Work by Parties Who
Did Nothing to Mitigate Their Expenses Despite Seemingly Aligned Interests and
Efforts From the Outset .......................................................................... 18

    D.     Defendants' Miscellaneous Other Arguments Fail ................................... 25

IV.    Conclusion ................................................................................................ 26

1

## **Table of Authorities**

2

3

<u>CASES</u>

4

*ACLU of Georgia v. Barnes*,

 168 F.3d 423 (11th Cir. 1999)-------------------------------------------------- 17, 20

*Benedict v. Hewlett-Packard Co.*,

 No. 13-CV-00119-LHK,

 2014 WL 234207 (N.D. Cal. Jan. 21, 2014)-------------------------------------13

*Conn v. Borjorquez*, 967 F.2d 1418 (9th Cir. 1992) ------------------------------------11

*DiPaolo v. Moran*, 407 F.3d 140 (3d Cir. 2005) -------------------------------------- 8

*DKN Holdings LLC v. Faerber*, 61 Cal.4th 813 (2015) --------------------------------15

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,

 857 F.2d 191 (3d Cir. 1988) --------------------------------------------------------8, 12

*Ferrantino v. San Juan Unified Sch. Dist.*,

 No. 2:20-cv-808-KJN PS,

 2020 WL 5633004 (E.D. Cal. Sept. 21, 2020) ----------------------------------16

*Frey Dairy v. A.O. Smith Harvestore Prods., Inc.*,

 122 F.R.D. 20 (E.D. Mich. 1988) ---------------------------------------------------18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ----------------------------------------------17

*In re Yagman*, 796 F.2d 1165 (9th Cir. 1986)-------------------------------------16, 17, 20

*Jones v. Encore Credit Corp.*, 2017 WL 6523443 (C.D. Cal. June 8, 2017) --------15

*Kinderstart.com, LLC v. Google Inc.*,

 No. C-06-2057 JF (RS),

 2007 WL 9810898 (N.D. Cal. Apr. 18, 2007)----------------------------------- 14, 16

*Levine v. County of Westchester*, 164 F.R.D. 372 (S.D.N.Y. 1996) -------------------18

*Muraoka v. Am. Osteopathic Assn.*, 117 F.R.D. 616 (N.D. Ill. 1987) -----------------8

*Natural-Immunogenics Corp. v. Newport Trial Group*,

 No. SACV 15-02034JVS(JCGx),

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2020 WL 7263540 (C.D. Cal. Oct. 28, 2020) -------------------------------------- 8

*Refrac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281 (C.D. Cal. 1991) ------------------19

*San Diego Comic Convention v. Dan Farr Prods.*,

   No. 14-cv-1865-AJB-JMA,

   2018 WL 3217741 (S.D. Cal. July 2, 2018) ---------------------------------15, 16, 20

*Strategic Partners, Inc. v. Vestagen Protective Techs.*,

   No. 2:16-cv-05900-RGK-PLA,

   2018 WL 6038275 (N.D. Cal. Jan. 17, 2018) --------------------------------------18

*Temple v. Wisap USA in Texas*, 152 F.R.D. 591 (D. Neb. 1993) ------------- 8, 12, 17

*Tracy v. Scottsdale*,

   No. SA CV 14-1532-DOC (AJWx),

   2015 WL 12765541 (C.D. Cal. Dec. 7, 2015)--------------------------------------16

*United Food & Comm. Workers Union Local No. 115 v. Armour and Co.*, 106

   F.R.D. 345 (N.D. Cal. 1984)-----------------------------------------------------21

*Warren v. Guelker*, 29 F.3d 1386 (9th Cir. 1994) ---------------------------------16

*Willis v. City of Oakland*, 231 F.R.D. 597 (N.D. Cal. 2005)----------------------------16

*Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1985) -----------------------22

R<small>ULES</small>

*Comm. Notes on Amendments to Fed. R. Civ. P.*, 146 F.R.D. 401, 587 (1993) ------ 8

Fed. R. Civ. P. 11 (c)(4) ------------------------------------------------------- 8

Plaintiff Christopher Richmond and his attorney, Matthew Hrutkay, respectfully oppose the request for attorneys' fees and sanctions by nominal defendant Snopes Media Group, Inc. (Snopes) and individual defendants David Mikkelson and Brad Westbrook (the Individual Defendants) (ECF 42, 43).

## I.   **INTRODUCTION**

The $270,000 in sanctions requested by defendants collectively are unwarranted, unreasonable, and excessive under the circumstances.

First, Rule 11's purpose is *not* to reimburse the moving parties' legal expenses, but to deter the sanctioned parties' future sanctionable conduct, which the proceedings to date have already accomplished. As discussed, plaintiff Richmond does not intend to initiate any further litigation against these parties, and his counsel, Hrutkay, has little hope for the future of his practice and will avoid filing any new claims on behalf of *any* client, meaning there is nothing left to deter.

Second, all mitigating factors weigh in favor of awarding either no sanctions or nominal sanctions because, unlike the rare case warranting Rule 11 sanctions, there is ample evidence that plaintiff, via his counsel, had a sincerely-held, good faith belief in the present action's validity. This includes a thorough pre-litigation factual and legal investigation by plaintiff at Hrutkay's advice, including with the added expense of associating in a seasoned trial lawyer to provide his independent evaluation regarding the validity of the claims at issue. That plaintiff and his counsel were wrong, at least according to this Court, does not mean they proceeded in bad faith at the time. All the more so as a nationally-renown ethics expert opines that plaintiff's counsel acted in conformity with the standard of care and his professional responsibilities when he filed the present action; that he did not file it for any improper purpose; and that he advanced nonfrivolous arguments on plaintiff's behalf under existing law or to extend or modify existing law.

Finally, even if the Court is nevertheless inclined to award monetary sanctions, the amount sought by Snopes and the Individual Defendants is excessive.

To put it in perspective, the nearly $270,000 in sanctions sought by defendants collectively exceeds Hrutkay's 2020 gross revenues by nearly $100,000. Moreover, as corroborated by a fee expert with nearly five decades of experience in this legal community, Snopes and the Individual Defendants duplicated efforts by filing nearly identical motions to dismiss and to seek Rule 11 sanctions, while also failing to support their staffing and hourly rates as reasonable or their hours spent as necessary. Not to mention that, having supposedly litigated the same claims underlying the same primary rights by the same parties for nearly four years, defendants nevertheless needed nine legal professionals to spend more than 525 hours to establish that the bar of res judicata obviously applied in the present action.

Thus, plaintiff respectfully requests that, having accomplished Rule 11's deterrence purpose and given the mitigating factors discussed, this Court exercise its discretion to impose no or only nominal monetary sanctions so as not to be disproportionately harsh or punitive. Alternatively, plaintiff respectfully requests that this Court significantly reduce the sanctions to include only fees that were *reasonably* necessary for defendants to secure both dismissal of this action and Rule 11 sanctions.

## II.   **RELEVANT BACKGROUND**

### A.   **Richmond, Via Hrutkay, Filed the Present Action in Good Faith**

Though Richmond and Hrutkay limit this opposition to the amount of sanctions to be awarded, they do not concede that Rule 11 sanctions were warranted in the first place, but rather, preserve all arguments from this Court's September 29, 2021 Order to that effect (the "Rule 11 Order"). (ECF 38.) Moreover, as relevant to determining the sanctions amount, Richmond, through his counsel Hrutkay, continues to believe in good faith that the primary rights at issue in the 2017 State Action were different than those at issue in this action such that the doctrine of res judicata arguably did not preclude the present action. (Decl. of Matthew Hrutkay (Hrutkay Dec.) ¶18; Decl. of Christopher Richmond (Richmond Decl.) ¶18.)

**B.    Defendants Request Fees Totaling Approximately $270,000**

1.    <u>Snopes Requests $150,000 in Fees for 300-plus Hours</u>

Snopes seeks all attorneys' fees it has incurred in the present action, which total $150,334, despite its status as a nominal defendant for whose benefit Richmond brought the derivative claims. (ECF 42 at 2:3-8.) According to Snopes, even though the "matter was leanly staffed," four attorneys and a paralegal at Procopio needed to spend 306.7 hours on it for the twelve months that it was pending. (ECF 42 at 2:13-17.) Nearly one-third of this time, or 96.4 hours were spent filing the Rule 11 motion and seeking attorneys' fees. (ECF 42 at 2:23-25.) The 2021 hourly rates for Snopes' four attorneys (Paul A. Tyrell, William Belanger, Ryan Caplan, and Jacob Kozaczuk) range from $780 per hour to $460 per hour, but there is no information concerning the background, experience, or other bases for Belanger's rates. (ECF 42-1, ¶¶ 6–8.) The paralegal on the case charged $300 per hour (*ibid*.), which is only slightly less than Hrutkay's hourly rate as a ten-year attorney. (Hrutkay Decl., ¶15.) Instead of identifying comparable firms, attorneys, hourly rates, or other sources of information, Snopes asserts based on one of its attorney's experiences alone that these rates are consistent with prevailing rates for comparable attorneys at peer firms. (ECF 42-1, ¶¶ 6–7.) Moreover, while arguing that sanctions should be assessed against Richmond and Hrutkay jointly and severally, Snopes invades the attorney-client relationship by asserting for unspecified reasons that Richmond should bear a higher proportion of any sanctions award. (ECF 42 at 5:27-6:2, 6:26-27.) Snopes also claims that sanctions will deter future conduct and that the fees incurred were reasonable compared to the cost it would have incurred to indemnify and defend the Individual Defendants if this action had not been dismissed. (*Id*. at 3:7-15; ECF 42-1 ¶9.)

Notably, a week before it even filed its brief regarding the sanctions amount on October 15, 2021, Snopes authored and published an article on its website titled "Federal Judge Says 'Frivolous' Lawsuit Was Filed to 'Harass' Snopes" in which it

summarized the Rule 11 Order to its millions of readers and described it "the biggest victory yet for Snopes." (Richmond Decl., Ex. B.) But, even as Snopes told readers that Richmond and Hrutkay "will have to pay our attorney's fees in the federal case" as sanctions, the story included a direct link to solicit further donations to its "Save Our Snopes" campaign to, among other things, fund its litigation. (*Id.*)

2. The Individual Defendants Seek $120,000 in Fees for 227 Hours

The Individual Defendants seek $119,340 in fees and expenses representing approximately 227.8 hours spent by four attorneys at Gordon Rees with hourly rates ranging from $350 to $575 (Richard P. Sybert, Holly L.K. Heffner, Hannah Brown, and Yan Ren). (ECF 43-1, ¶¶ 8–12). Again, based on nothing more than one of their counsel's respective experience, beliefs, and understanding, the Individual Defendants claim that these hourly rates are comparable to similar firms in San Diego. (ECF 43-1, ¶¶8-9.) The Individual Defendants even argue, without evidence, that one of their counsel believes that Gordon Rees' rates are lower than that of comparable attorneys at similar firms. (ECF 43-1, ¶¶8–9.)

Like Snopes, the Individual Defendants repeat that fees are necessary for deterrence and justified by the much higher fees or damages that *might have been awarded* if the case survived dismissal. (ECF 43 at 10:15-23.) According to the Individual Defendants, if this Court awards lesser fees, "Richmond still wins, and successfully inflicts needless injury on Defendants[.]" (ECF 43 at 1:21-2:2.)

## III. **ARGUMENT**

Contrary to defendants' arguments, monetary sanctions are unnecessary to further Rule 11's deterrent purpose, which the adverse consequences and negative publicity related to this Court's Rule 11 Order and Snopes' full-court press have already accomplished. Further, the balance of mitigating factors also weighs in favor of awarding little to no monetary sanctions, including because Richmond and Hrutkay sincerely believed that the present action was not barred by res judicata

based on careful pre-litigation investigation; Hrutkay has no ability to pay; defendants have no peculiar need for compensation; and monetary sanctions threaten to chill the type of creative advocacy and zealous representation that develops the law and secures justice for underdogs. Finally, even if this Court is inclined to award monetary sanctions, it should significantly reduce the award to no more than $105,000 based on duplicative and unjustified work by Snopes and the Individual Defendants' respective eight attorneys and a paralegal to file nearly identical motions, as well as their above-market fees and unreasonable hours.

### A. Fees in Any Amount, Let Alone Fees Totaling More Than a Quarter Million Dollars, Would be Unduly Punitive and Not Necessary to Accomplish Rule 11's Deterrent Purpose

By focusing on their desire to be compensated for more than a quarter million dollars in fees and expenses, Snopes and the Individual Defendants ignore Rule 11's guiding principle—that is, for courts to exercise their discretion so as to choose sanctions that represent the least severe means of deterring future sanctionable conduct. *See Comm. Notes on Amendments to Fed. R. Civ. P.*, 146 F.R.D. 401, 587 (1993); *see also Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) ("The language of Rule 11 evidences the critical role of judicial discretion, stating that when the district court determines that a filing is in violation of the rule, the court 'shall' impose sanctions that 'may'—not 'shall'—'include an order to pay' the other party's expenses."). In other words, this Court retains absolute discretion not to impose *any* monetary sanctions because again, "the 'proper role of rule 11 . . . is not to compensate parties for such costs; it is to deter litigation abuse.'" *Temple v. Wisap USA in Texas*, 152 F.R.D. 591, 602 (D. Neb. 1993). This is why courts recognize that, in the rare instance when Rule 11 sanctions are warranted, they "*must* be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11 (c)(4) (emphasis added); *see also Muraoka v.*

*Am. Osteopathic Assn.*, 117 F.R.D. 616, 619 (N.D. Ill. 1987) ("the least severe sanction that is adequate to serve the purpose [underlying Rule 11] should be chosen."); *accord DiPaolo v. Moran*, 407 F.3d 140, 146 (3d Cir. 2005); *Natural-Immunogenics Corp. v. Newport Trial Group*, No. SACV 15-02034JVS(JCGx), 2020 WL 7263540 at *12 (C.D. Cal. Oct. 28, 2020).

Here, sanctions in the amount requested would be punitive, disproportionate, and unnecessary to accomplish Rule 11's purpose, including because no monetary sanctions are necessary to deter Richmond or Hrutkay from deliberately engaging in any future sanctionable conduct. Indeed, as discussed, whether or not this Court imposes monetary sanctions, Richmond has no intention of litigating against these parties any further, while Hrutkay believes that the proceedings to date spell the end of his career regardless of what comes next, including on appeal.

    1. <u>Richmond Does Not Intend to Litigate Against These Parties</u>

Even without the imposition of a single dollar of fees as sanctions, Richmond has been effectively deterred from litigating against these parties, removing the possibility that he would engage in or need to be deterred from engaging in any future sanctionable conduct. (Richmond Decl., ¶¶15-16.) At this point, having failed to protect Snopes and minority shareholders like himself from the harm that he sincerely believed was being inflicted by the Individual Defendants' self-interested and iron-clad control over Snopes, Richmond sees no point in litigating against these parties. (*Id*.) The price Richmond has already paid for his efforts, personally, financially, and professionally, is more than enough to convince him that further litigation with these parties is not the answer, no matter how well-intentioned. (*Id*., ¶¶15, 16, 19.) In fact, other than resolving the pending State Court Action—in which Snopes and defendant Mikkelson have sought fees of nearly $450,000—Richmond has no appetite to litigate against these parties given the severe disadvantage he and fellow minority shareholders suffer in the face of the majority shareholders' access to Snopes' revenues (and the generous donations of

Snopes' readers) to fund their litigation. (*Id.*, ¶19.)

As just one example, after Snopes refused to provide an inspection of books and records under the Corporations Code and ignored his repeated requests for information necessary to fulfill his fiduciary duties as a director, Richmond was forced to file a petition for a writ to enforce rights in September 2021. (*Id.*, ¶16.) Snopes provided limited financial information on November 5, 2021, but refused to provide information concerning specific areas of concern, such as the impact of defendant Mikkelson's plagiarism of dozens of articles on the company's readership and revenues. (Hrutkay Decl., ¶20.) Regardless, following this Court's Rule 11 Order, Richmond no longer seeks an inspection of books and records but only appointment of an independent investigator under the Corporations Code to fulfill his fiduciary duties. (*Id.*, ¶16.)

Moreover, Richmond has attempted repeatedly to negotiate a resolution with Snopes, defendant Mikkelson, and other parties to the State Action, with little traction. (Hrutkay Decl., ¶22; Richmond Decl., ¶15.) Further, the public humiliation and rebuke that Richmond has suffered from Snopes' GoFundMe campaign and other public announcements about the proceedings in this Court, the State Action, and any remaining matters that need to be resolved lead Richmond to say "I have had enough." (Richmond Decl., ¶16.)

Notably, Snopes argues that the "significant effort" underlying its fee request was necessary because "Richmond has a well-established history of employing aggressive litigation tactics throughout the multi-year history of the State Court actions . . . , and it was reasonably expected that he would have employed the same tactics in this case if it was allowed to proceed." (ECF 42 at 3:2-7.) The Individual Defendants also argue that the fees sought are reasonable because they could have been liable for several millions if Richmond's asserted aggressive litigation efforts were successful. (ECF 43.) To be fair, however, at the very least, all parties vigorously litigated the State Action, as evidenced by, among other things,

$450,000 in fees sought by Snopes and defendant Mikkelson against Richmond there and the nearly 1500 entries on the docket in that action. (Hrutkay Decl., ¶ 21.)

In the face of potential liabilities of nearly half a million dollars in the State Action, this Court's strong rebuke of his filing of the present action, and the public shame that Snopes has cast on him since 2017, Richmond is simply ready to let the pending actions and litigations run their course and to end the nightmare that has been his and his business partners' original decision to invest in Snopes. (Richmond Decl., ¶¶15, 16, 19.)

2. <u>Hrutkay Will Not Engage in Future Sanctionable Conduct</u>

Hrutkay believes that, regardless of what happens next, that is, whether this Court imposes monetary sanctions or how the Ninth Circuit decides the appeal, his professional career as an attorney must end given the proceedings to date. The Court's decision to grant Rule 11 sanctions, even without accompanying monetary sanctions (so far), has caused Hrutkay agonizing self-doubt about his legal abilities as well as his personal and professional judgment. (Hrutkay Decl., ¶15.) Hrutkay is at a loss to understand how this Court could have found so baseless his well-intentioned and good faith reading of the law, as supported by the independent investigation and analysis by his senior co-counsel, Philip Tencer. (*Id*., ¶14.) Moreover, the publicly-accessible Rule 11 Order can be weaponized in any action in which Hrutkay represents current clients or any action he may bring on behalf of a potential future client, severely hampering his ability to be a powerful advocate for his clients without fear of personal reprisal or suspicion. (*Id*., ¶17.)

The mere publication of the Court's Rule 11 Order on Westlaw, Lexis, and similar services represents a public stain on his professional reputation, his credibility, and his capabilities. (*Id*., ¶14.) Beyond this, Snopes has ensured that its millions of readers learn that Hrutkay "deliberately filed a frivolous lawsuit to harass Snopes; its CEO and Board Chairman, David Mikkelson; and a member of

the Snopes board of directors, Brad Westbrook." (Richmond Decl., Ex. B.) Hrutkay expects no mercy in Snopes' future full-court-press and litigation updates in terms of how his work, professional abilities, and personal motives are characterized. (Hrutkay Decl., ¶ 17.) Despite a decade of meritorious, good-faith, and high-profile advocacy in complex commercial disputes, including in this Court, Hrutkay will neither be able to attract clients to his firm as a solo practitioner nor find employment with any reputable firm, especially given the Court's inexplicable finding he filed this action for improper purposes, including harassment. (*Id.*)

Even if no monetary sanctions are awarded, Hrutkay understands that he faces significant difficulty continuing his practice as a licensed attorney in complex commercial litigation. Since the Court's Rule 11 Order, he has suffered from extreme anxiety, depression, insomnia, and stress, further exacerbated by Snopes' and the Individual Defendants' collective request for more than $270,000 in attorneys' fees. (*Id.*, ¶17.) Neither the satisfaction he used to derive from advocating for clients, usually small plaintiffs, nor the financial independence that his practice has afforded him, can mitigate against the severe harm to his professional and personal well-being following the Rule 11 Order. (*Id.*, ¶14; *see also Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992) ("[Rule 11] sanctions can have an unintended detrimental impact on an attorney's career and personal well-being."). He also has reasonable concerns about the financial impact of the Court's Rule 11 Order on his ability to obtain cost-effective professional liability insurance when his current policy renews, and whether continued practice will make sense in light of potential increased costs and difficulty of retaining his current and new clients in commercial litigation. (Hrutkay Decl., ¶¶ 16, 17.)

Though "courts must be careful not to impose monetary sanctions so great that they are punitive—or that might even drive the sanctioned party out of practice," this Court need not award any monetary sanctions for Hrutkay to be so deterred as to believe that he must leave the practice of law. *Doering v. Union Cnty.*

*Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (explaining that other sanctions may replace a monetary award, including publication of the sanctions order, an order barring an attorney from appearing for a period of time, reprimand, dismissal of baseless claims or defenses, among others); *Temple*, 152 F.R.D. at 602 ("Generally speaking, the least severe sanctions consistent with the goals of Rule 11 and proper regard for an attorney's reputation and career should be imposed.")

> **B.      Fees in Any Amount, or, Alternatively, More than a Nominal Amount, Are Not Warranted Due to Mitigating Factors, Including Counsel's Good Faith and Inability to Pay and the Danger of Chilling Zealous Advocacy by Other Attorneys for Other Clients**

In arriving at appropriate sanctions, courts normally consider the cost of the Rule 11 violation and the presence or absence of the following mitigating factors: "(a) whether counsel subjectively believed he or she was correct; (b) whether counsel acted in a vindicative or punishing manner regarding the opponent; (c) whether there is a need for discipline; (d) whether counsel has the ability to pay; (e) whether there is a peculiar need for compensation; (f) the degree of frivolousness; and (g) the danger of culling vigorous and innovative advocacy." *Temple*, 152 F.R.D. at 602. In addition to the factors already discussed, most of these additional factors also warrant imposing little to no monetary sanctions.

First, both of Richmond's attorneys, Hrutkay and co-counsel Tener, engaged in a significant, thoughtful, and independent factual and legal investigation before filing this action. (Hrutkay Decl., ¶¶ 9-13; Tencer Decl., ¶¶ 5-8.) Following that investigation, and after extensive discussions with Richmond, both attorneys concluded that the claims in the present action concerned primary rights that were both factually and temporally distinct from those raised in the State Court Action, and were thus supported by existing law, or an extension of existing law. (Hrutkay Decl., ¶¶9-13; Tencer Decl., ¶¶5-8.) Specifically, they understood that the claims stricken from the State Court Action concerned competitive injury to Snopes caused

- 14 -

by the conflicted approval of advancing litigation funds to the board member and majority shareholders sued in that case, whereas the present action alleged direct financial injuries related to the premature advancement of the funds and their improper deduction on Snopes' later-filed taxes. (Hrutkay Decl., ¶¶9-13; Tencer Decl., ¶¶5-8.) That the Court disagreed does not undermine Richmond or his counsel's good-faith understanding and interpretation of the law at the time.

Second, notwithstanding this Court's finding to the contrary, Richmond and Hrutkay submit under oath that they had absolutely no bad faith motive for filing the present action, such as to be vindictive or punitive towards any of the parties or their counsel, or to intentionally cause them to incur additional legal fees. As a director and minority shareholder of Snopes, Richmond has made clear that he is only motivated by genuine concerns about self-dealing and other perceived misfeasance at Snopes and that he wants Snopes to succeed in the long run. (Richmond Decl., ¶¶4-10.) Beyond the circumstantial evidence that they filed in support of dismissing this action and seeking sanctions, which this Court found precluded the claims at issue, there is no independent or corroborating evidence that Richmond or Hrutkay harbored an improper purpose or motive. Indeed, as ethics expert Heather Rosing explains, undertaking a two-month investigation and affirmatively seeking the assistance of a reputable, experienced, and senior trial attorney such as Tencer is inconsistent with and rebuts any presumption of such a bad faith motive. (Decl. of Ethics Expert Heather Rosing et al. (Rosing Decl.,¶¶14, 32 ("I have not seen any evidence of such a motive on the part of Mr. Hrutkay, but have seen much evidence rebutting the assertion.").) Rather, "[t]here appears to have been a deeply held and sincere belief that the action was necessary to advance the legal rights of the client, and that the complex case law surrounding the topic of res judicata and the primary rights doctrine would allow a filing of this nature under these actual circumstances as well as clarify and further develop the complicated jurisprudence in this area of the law." (*Id.*, ¶32.) Again, the fact that Richmond's

- 15 -

efforts on Snopes' behalf, and that Hrutkay's efforts on Richmond's behalf, were ultimately unsuccessful does not impugn their good-faith, sincerely-held belief in the propriety of filing this action without the benefit of hindsight. *See Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 234207 at *12-13 (N.D. Cal. Jan. 21, 2014) (declining to award sanctions for Rule 11 violations where no independent evidence of intimidation or harassment and where both parties acted unreasonably in litigation).

Third, as also explained by Rosing as an ethics expert, the circumstances here would not warrant disciplinary action against Hrutkay under the Rules of Professional conduct or the State Bar Act, either for counseling Richmond to pursue this action or for filing it. Rather, "Hrutkay acted in conformity with the standard of care and his professional responsibilities when he filed the Complaint and the First Amended Complaint in this action, and maintained the action on behalf of Christopher Richmond." (Rosing Decl., ¶20.) All the more so as there is no evidence "that Mr. Hrutkay should have known with any degree of certainty how the Court would rule on the motion to dismiss or how clear it would seem to the Court that the doctrine of res judicata barred the action." (*Id.*, ¶31). This is because "the claims that were made could be construed as nonfrivolous argument for fitting under the parameters of existing law or extending or modifying existing law." (*Id.*, ¶20.)

Fourth, though Richmond is a business executive with some resources, the Court should take into account his ability to pay the fees requested in line with his other obligations. Defendants' insinuation that Richmond has sufficient assets to pay sanctions $270,000 because he satisfied debts associated with buying Snopes' shares from defendant Mikkelson's ex-wife or related to the acquisition of Proper Media ignores the substantial fees Richmond has spent on his own attorneys in the State Action and the present action. (Richmond Decl., ¶19.) Where, as here, the attorneys' fees award requested by the defendants is more than a quarter of a

- 16 -

million dollars, payment of more than 50% of his net income for 2020 and 25% of his entire life savings is unnecessary to deter further conduct and would simply be unreasonable. *See KinderStart.com, LLC v. Google, Inc.*, No. C 06-2057 JF (RS), 2007 WL 9810898, at * 2 (N.D. Cal. Apr. 18, 2007) (finding reasonable sanctions of 10% of attorney's income sufficient to deter future conduct). It also ignores the $450,000 in fees sought against him in the State Action. (Richmond Decl., ¶ 19.) Meanwhile, Hrutkay lacks the ability to pay any but the  most nominal of sanctions because his new and relatively modest solo practice earns annual gross revenues that are well overshadowed by the $270,000 in fees sought by Snopes and the Individual Defendants, and he has no significant assets other than his vehicles and retirement savings. (Hrutkay Decl., ¶¶15-17.)

Fifth, given Snopes' successful GoFundMe campaign and advancement of funds to the Individual Defendants, it has no peculiar need for compensation. Notably, this campaign has raised at least $1,793,790 to date, including hundreds of donations in just the past month. (Richmond Decl., Ex. C.) At the same time, the facts discussed above regarding pre-litigation investigation and a good-faith interpretation of an area of the law recognized as complicated and confusing also establish that reasonable minds could dispute that there was any "degree of frivolousness" in filing this action. *See, e.g., DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 818 (2015) ("our terminology in discussing the preclusive effects of judgments has been inconsistent and may have caused some confusion."); *Jones v. Encore Credit Corp.*, No. EDCV 16-2673 JGB (KKx), 2017 WL 6523443, at *3 (C.D. Cal. June 8, 2017) (refusing to impose sanctions "[g]iven the opacity of the primary rights doctrine," among other reasons, and recognizing that "California's 'primary rights' approach [to res judicata] is not a model of clarity").

Finally, whereas Hrutkay's role as Richmond's counsel gave rise to his professional responsibility to "use legal procedure for the fullest benefit of his client's cause" (Rosing Decl., ¶24), imposing sanctions would chill other attorneys

from pursuing such advocacy on behalf of other clients. This would not just harm the particular attorneys and clients involved here, but also the development of the law, which necessarily depends on creative advocacy, particularly in confusing or complicated areas of the law such as the primary rights doctrine. Imposing monetary sanctions under the circumstances here, including pre-litigation investigation and good-faith interpretation of the law, would undermine the public policy to avoid a chilling effect on attorneys from advocating for their clients due to fear of personal liability and inflicting harm on their clients through the award of debilitating sanctions. (*Id.*, ¶¶29, 37.)

C.     **Even if This Court Believes Monetary Sanctions Are Warranted, the Requested Fees Are Excessive, Representing Duplicative Work by Parties Who Did Nothing to Mitigate Their Expenses Despite Seemingly Aligned Interests and Efforts From the Outset**

To the extent this Court believes that a monetary fee award is nevertheless appropriate, "Rule 11 awards are subject to two conditions: (1) the fee award is limited to fees 'directly resulting from the violation'; and (2) the fees to be awarded must be reasonable." *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865-AJB-JMA, 2018 WL 3217741, at *1 (S.D. Cal. July 2, 2018). Similarly, "the court must cast a critical eye on the reward request, which means that the fees and expenses requested must be scrutinized carefully for reasonableness by the district judge." *Ferrantino v. San Juan Unified Sch. Dist.*, No. 2:20-cv-808-KJN PS , 2020 WL 5633004, at *8 (E.D. Cal. Sept. 21, 2020). The appropriate measure of fees under the lodestar analysis is based on three factors: "(1) counsel's *reasonable* hours, (2) counsel's *reasonable* hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel or the *ex ante* risk of nonrecovery in the litigation)." *Willis v. City of Oakland*, 231 F.R.D. 597, 600 (N.D. Cal. 2005) (emphasis added); However, in cases such as this involving dismissal of an action, "[a] multiplier is irrelevant to the fee calculation . .

- 18 -

1   . because the court need not consider the results achieved by defense counsel in

2   connection with the original complaint." *Ibid*. As a result, the analysis focuses on

3   two factors—the reasonableness of the hourly rates and of the time spent in light of

4   the facts of the case. *San Diego Comic Convention*, 2018 WL 3217741, at *1.

5   Defendants fail to make this showing for several reasons. Ultimately, "the type and

6   amount of sanctions remain largely within the discretion of the Court." *Tracy v.*

7   *Scottsdale*, No. SA CV 14-1532-DOC (AJWx), 2015 WL 12765541, at * 11 (C.D.

8   Cal. Dec. 7, 2015) (awarding $3,000 in monetary sanctions, less than 5% of the

9   $81,363.21 requested by Defendants, due to mitigating factors) (quoting *Warren v.*

10  *Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994) (internal quotation marks omitted).

11      First, contrary to defendants' arguments, the correct inquiry is not the amount

12  of fees they actually incurred, but instead, the fees that were reasonably *necessary*

13  to challenging the problematic pleading. *In re Yagman*, 796 F.2d 1165, 1184-85

14  (9th Cir. 1986) (finding $250,000 sanctions award unreasonable); *Kinderstart.com,*

15  *LLC v. Google Inc.*, No. C-06-2057 JF (RS)2007 WL 9810898, at *2 (N.D. Cal.

16  Apr. 18, 2007) (awarding $7,500 sanctions in the face of a $14,297 request due to

17  mitigating factors, and lack of showing of subjective bad faith). Here, Snopes and

18  the Individual Defendants turn this inquiry on its head, claiming that the requested

19  amount is reasonable *not* because the work was necessary, but because it is much

20  less than what Snopes would have had to spend if the action survived dismissal or

21  in comparison to the potential ultimate liability that the Individual Defendants

22  faced.

23      Second, defendants' arguments as to the reasonableness of their time spend

24  contradict their prior arguments in moving to dismiss the action and seeking

25  sanction to the effect that this was a textbook case of *res judicata* based on a plain

26  reading of a 21-page complaint that purportedly alleged the same facts and

27  circumstances as in the State Action filed four years ago. (*See generally* ECF 11-1,

28  12-1.) Now, defendants suddenly argue that their hours and fees were reasonable

- 19 -

because the litigation was complex (ECF 43-1, ¶15); the application of the primary rights doctrine governing *res judicata* is "difficult and confusing" (ECF 43 at 7-8); and there were both multiple issues to address and a number of tasks to be performed. (ECF 42 at 2; ECF 43-1, ¶15; ECF 42-1, ¶9.)

Third, regardless of which position they now maintain, it seems unreasonable for Snopes and the Individual Defendants to have filed *four* separate, but nearly identical briefs to dismiss the action and seek Rule 11 sanctions, requiring more than 525 hours from no less than *eight* legal professionals at two large law firms. As parties challenging pleadings claimed to be factually or legally baseless, Snopes and the Individual Defendants nevertheless have a duty to mitigate their fees and expenses:

> In assessing the damage done, the court should consider the extent to which it is self-inflicted due to the failure to mitigate . . . . A party having vigorously resisted a baseless claim may therefore find that the court, in making an award, will consider its expenditures have been excessive.

*In re Yagman*, 796 F.2d at 1184-85 (internal quotation marks and citation omitted); *see also Temple*, 152 F.R.D. at 602 ("there is also an obligation to mitigate under Rule 11"); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("In the private sector, 'billing judgment' is an appropriate component in fee setting."). Where, as here, "fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Lack of good billing judgment is shown here because, for example, even as nominal defendant, Snopes purports to have incurred $30,000 *more* in attorneys' fees than the Individual Defendants facing personal liability.

Further, instead of joining the Individual Defendants' motion, Snopes' made

nearly identical arguments seeking dismissal as to (1) Richmond's failure and inability to plead demand futility (ECF 12-1 at 5–12; ECF 11-1 at 15–16); (2) his inadequacy to represent Snopes' shareholders (ECF 12-1 at 20–25; ECF 11-1 at 17–18; and (3) the bar of res judicata on Richmond's derivative claims. (ECF 12-1 at 13–20; ECF 11-1 at 11-15.) Snopes further ignored its duty to mitigate fees by filing a duplicative Rule 11 motion repeating arguments in the Individual Defendants' Rule 11 motion. (*Compare* ECF 25-1 at 7, 7–19 *with* ECF 26-1 at 5–8, 8–9 .) Sanctions are not reasonable if they reward the parties seeking them for being intentionally inefficient. *Frey Dairy v. A.O. Smith Harvestore Prods., Inc.*, 122 F.R.D. 20, 22 (E.D. Mich. 1988) (unreasonable for defendants to request fees for filing independent briefs asserting the same arguments); *Strategic Partners, Inc. v. Vestagen Protective Techs.*, No. 2:16-cv-05900-RGK-PLA, 2018 WL 6038275, at *3 (N.D. Cal. Jan. 17, 2018) (reducing hours claimed by more than 50% where counsel "over-complicated a relatively simple breach of contract counterclaim and generated unnecessary work"); *Levine v. County of Westchester*, 164 F.R.D. 372, 375 (S.D.N.Y. 1996) (noting that "concededly frivolous claim should not reasonably require an enormous expenditure of time and effort to refute" where two sanctions motions and arguments in opposing the claims were nearly identical and duplicative). If there were any particular reason that each responding party had an independent strategy, that might justify such an overinflated approach to fighting for dismissal and sanctions. Defendants' evidence makes clear, however, that the defendants could have advanced the same arguments and presented the same evidence through more reasonable billing judgment and mitigation efforts, such as filing joinders to the other party's briefs, but did not. (Brubaker Decl., ¶23.) The motions to dismiss and for sanctions show substantial identicality of arguments, and viewed alongside evidence of multiple conferences, calls, correspondence between the two respective defense firms it is obvious that there was a unified strategy and well-coordinated response. (Brubaker Decl., ¶¶24, 25.) With such extensive

- 21 -

1   coordination and information efforts already in place, the duplicative filing of

2   nearly identical separate briefing appears to be poor billing judgment at its worst.

3          Brubaker, a well-recognized fee expert who has tried sixty cases in state and

4   federal courts in San Diego over the last 45 years, opines that this duplicative

5   billing is unreasonable and merits significant reduction. (Brubaker Decl., ¶¶3, 29-

6   42.) Specifically, Brubaker opines that a total of 237.75 hours was a reasonable

7   number of billable hours that were necessary for defendants' to collectively obtain a

8   successful result, and that a reasonable award would include among this figure 97

9   hours of partner time, and 140.75 hours of associate time. (Brubaker Decl., ¶¶44-

10  50.) This represents the total reasonable hours to be multiplied by reasonable hourly

11  rates for San Diego partners and associates to arrive at the lodestar figure.

12         Fourth, Snopes and the Individual Defendants improperly attempt to sweep

13  all the fees billed in this action into their sanctions request. But the case on which

14  they rely for an award of *all* legal fees incurred as sanctions, *Refrac Int'l, Ltd. v.*

15  *Hitachi Ltd.*, 141 F.R.D. 281, 287-88 (C.D. Cal. 1991), is easily distinguishable.

16  The court in *Refrac* awarded nearly $1.5 million in fees as Rule 11 sanctions after

17  already imposing terminating sanctions for repeated discovery abuse by plaintiff's

18  counsel in an action plaintiff filed against 118 different defendants accused of

19  patent infringement despite, for example, admitting in open court that the LCD

20  products defendants manufactured or sold did not infringe on the patents at issue.

21  *Id.* at 283–86. The court in *Refrac* expressly found that plaintiff and his counsel

22  "assumed without justification that all of the accused products violated one or more

23  of its patents, but made no reasonable (or any) investigation to confirm this." *Id*. at

24  286. Here, of course, the facts could not be more different, from the absence of any

25  admissions in "open court" that the action was improper to the conduct of a

26  thorough pre-litigation factual and legal investigation. As noted by legal fees expert

27  Brubaker, who reviewed the reasonableness of defendants' fee requests, the

28  decisions by Snopes and the Individual Defendants to participate in separate

- 22 -

briefing for their nearly-identical motions to dismiss and to seek Rule 11 motions created unnecessary and unreasonable duplicative effort that should not be properly awarded as monetary sanctions. (Brubaker Decl., ¶¶23, 42. This demonstrates poor billing judgment, particularly where the arguments advanced in the defendants' respective separate briefing are functionally identical, and the defendants were regularly communicating and conferring throughout the present action, seemingly in an effort to align into a unified strategy to dismiss and impose sanctions that made a joinder in the other's motion reasonable.

Fifth, defendants do not show that their counsel's hourly rates were reasonable. In assessing the reasonableness of hourly rates, courts can but need not base their awards on prevailing market rates. *Compare In re Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1986) *with San Diego Comic Convention*, 2018 WL 3217741, at *2. If, as all parties appear to agree, prevailing market rates should be used, San Diego is the appropriate "market" for purposes of comparison. Here, defendants have not met their "burden to produce 'satisfactory evidence, in addition to the affidavits of its counsel,' that the requested rates are reasonable. *San Diego Comic Convention*, 2018 WL 3217741 at *2 (emphasis added).) Snopes and the Individual Defendants have failed to satisfy this burden, leaving Plaintiff in the dark as to which firms Procopio and Gordon Rees view as "peer firms"; what hourly rates those firms charge; or whether those purported comparable rates are for work of a similar nature. For example, whereas Snopes argues that an hourly rate of $300 for its paralegal is reasonable (ECF 42-1, ¶ 7), courts in this district have found this rate excessive. *San Diego Comic Convention*, 2018 WL 3217741 at *2 (instead of $300 per hour, range of $125 per hour to $225 per hour is reasonable for paralegal). Moreover, Hrutkay, with a ten years of complex commercial litigation at reputable firms in New York and San Diego charges $350 per hour, only $50 more than Snopes' paralegal. (Hrutkay Decl., ¶15.) The unreasonableness of the rates requested by defendants is made clear when comparing to publicly available data

from objective sources, such as the 2020 Real Rate Report. (Brubaker Decl., ¶56; *id.*, Ex. 12 at 31.) The Real Rate Report shows that reasonable hourly rates for San Diego litigation attorneys in the third quartile are $605 per hour for partners, and $295 per hour for associates. (Brubaker Decl., ¶56; *id.*, Ex. 12 at 31.) Plaintiff's expert opines that these are reasonable hourly rates for 2020 and 2021 due to various market pressures, and that these are the rates the Court should multiply by the total number of reasonable billable time by associates and partners, respectively, to arrive at an appropriate lodestar figure. (Brubaker Decl. ¶56-59.)

Sixth, Snopes and the Individual Defendants fail to justify the need for eight attorneys and a paralegal spending collectively more than 525 hours to defeat a 21-page complaint that they argued (and the Court agreed) was substantively identical to the State Action which they have been litigating for more than four years. *ACLU of Georgia*, 168 F.3d at 428-29 ("a fee applicant is entitled to recover for the hours of multiple attorneys *if* he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation") (emphasis added).Where a defendant can secure "the same result by a less formal and less costly means" downward reductions to arrive at a reasonable fee award are appropriate. *United Food & Comm. Workers Union Local No. 115 v. Armour and Co.*, 106 F.R.D. 345, 349 (N.D. Cal. 1984) ("What troubles the court greatly is the extensive amount of work Armour's counsel did in utilizing the formal motion a machinery of litigation, when Armour's attorney might have brought about the same result by a less formal and less costly means."). Defendants' billing shows significant amounts of work by attorneys that provided no distinct contribution to defendants' success. (Brubaker Decl., ¶¶29-39.)

One example of unnecessary and duplicative hours includes the time billed by three attorneys from the two firms and a paralegal. William Belanger and Ryan Caplan (both representing Snopes through Procopio); Richard Sybert (representing

the Individual Defendants at Gordon Rees); and paralegal Erin Alcantara (representing Snopes at Procopio). (ECF 42-1.) Snopes fails to provide any information about Belanger's background, experience, reasons for involvement, and affirmative contribution and Belanger only billed for reviewing filings or corresponding about them, duplicating substantive reviews by other counsel. (ECF 42-1; *see also* Brubaker Decl., ¶¶29-30, *id.*, Ex. 5, 6; *see also id.*, ¶¶ 34-35 (Alcantara); *id.*, Ex. 8.)  Likewise, many of the entries relating to work or research performed by former Procopio attorney Ryan Caplan are vague and appear to duplicate others' work. (Brubaker Decl., ¶31-33; *id.*, Ex. 7 (research and analysis regarding "response to complaint", "pleading challenges to complaint", "status of lawsuits", and vague descriptions of assistance with the motion to dismiss). Further, missing from the billing records is "any indication of the distinct contribution each attorney made." *ACLU of Georgia*, 168 F.3d at 428–29, Similar issues are found with respect to the time and fees claimed by the Individual Defendants for work performed by Richard Sybert, a partner at Gordon Rees with the highest hourly rate charged to the Individual Defendants. (Brubaker Decl., ¶¶36, 37; *id.*, Ex. 9.)

Under these circumstances, it is appropriate to reduce the overall fee award requested from nearly $270,000 to $105,893.75, half to each firm, which excludes all duplicative time and entries, all work performed by those who made no distinct contribution to defendants' success, and captures all time *reasonably necessary* to securing the results obtained.

### D.    Defendants' Miscellaneous Other Arguments Fail

A few additional arguments merit a brief rebuttal here. First, notwithstanding any implication of independence between Snopes and the Individual Defendants, any award of fees to the Individual Defendants should be paid to Snopes, which has continuously advanced the Individual Defendants' fees.

Second, contrary to Snopes's arguments, this Court should draw no negative inferences from the fact that plaintiffs in the State Action have been represented by

five separate attorneys or firms. (ECF 42 at 6-7, n.2.) The implication that any prior changes in counsel are caused by any conflicts or in an attempt to shop around for attorneys willing to harass Snopes is completely unsupported. Without revealing privileged information, and out of respect for former counsel, plaintiff merely notes that there were ample grounds for plaintiffs in the State Action to retain new and independent counsel to provide reasoned guidance at reasonable rates.

Third, Snopes argues that "forcing the defendants to incur fees was Richmond's intent and part of his improper purpose." (ECF 42 at 4.) This conveniently allows it to then argue that unless *all* **$150,000** in legal fees spent by its counsel are awarded, Richmond and his attorney will have "succeeded" in their harassment, and will not have been effectively "deterred." But, as discussed, other than the fact that this Court found the present action barred, there is no independent or corroborating evidence of bad faith or improper purpose. Finally, the Individual Defendants fail to show that the operative complaint in this action is frivolous or improper by clear and convincing evidence that plaintiff lacked a good faith argument for his view of what the law is, or should be. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830-31. At the very least, plaintiff's filings in opposition to the motions to dismiss, to seek sanctions, and to award fees as monetary sanctions establish that plaintiff and his counsel believed, in good faith, that the present action was allowed.

## IV.   <u>CONCLUSION</u>

For the reasons discussed, Richmond and Hrutkay respectfully request that the Court award no monetary sanctions to Snopes or the Individual Defendants because its Rule 11 Order, among other things, has already accomplished Rule 11's deterrent purpose and the presence of mitigating factors also counsel against monetary sanctions. However, to the extent the Court is nevertheless inclined to award sanctions in the form of attorneys' fees incurred by Snopes and the Individual Defendants, those fees should be reduced to no more than $105,000 in

- 26 -

light of the duplicative, unreasonable, and unjustified work, fees, and hours spent.

1

Dated:  November 16, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
HRUTKAY LAW PC

By:      *s/ Matthew Hrutkay*
            Matthew Hrutkay

and

TENCER SHERMAN LLP
Philip C. Tencer

*Attorneys for Plaintiff Christopher
Richmond*

- 28 -