1  Matthew Hrutkay (SBN 297485)
2  HRUTKAY LAW PC
   600 W. Broadway, Suite 700
3  San Diego, CA  92101
4  matt.hrutkay@hrutkaylaw.com; (858) 868-0018

5  Philip C. Tencer (SBN 173818)
6  TENCER SHERMAN LLP
   12520 High Bluff Drive, Suite 230
7  San Diego, CA  92130
8  Phil@TencerSherman.com; 858.408.6900

9  Attorneys for the PLAINTIFF

10

11

12                    UNITED STATES DISTRICT COURT

13           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| CHRISTOPHER RICHMOND, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID MIKKELSON, an individual;<br>BRAD WESTBROOK, an individual;<br>and DOE DEFENDANTS 1 – 10,<br>inclusive,<br><br>　　　　　　Defendants,<br><br>　　and<br><br>SNOPES MEDIA GROUP, INC.,<br>　　　　　Nominal Defendant. | Case No. 3:20-cv-01925-W-KSC<br><br>DECLARATION OF ETHICS<br>EXPERT HEATHER LINN ROSING<br>IN SUPPORT OF PLAINTIFF'S<br>OPPOSITION TO SANCTIONS FEE<br>BRIEFING<br><br><br>Judge:　　Hon. Thomas J. Whelan<br>Dept.:　　3C |

26        I, Heather Linn Rosing, declare as follows:

27        1.     I have been asked by Matthew Hrutkay to provide an expert analysis of

28  certain issues and render opinions in the above captioned litigation. This declaration

sets forth those opinions and the bases for those opinions.

**Biography**

2.      I am an attorney licensed to practice law in California since 1996. I am a Shareholder with Klinedinst PC, a law firm with five offices in California and Washington, and approximately 80 attorneys. I also chair the firm's Professional Liability and Ethics Department, and serve as the firm's CEO and President. For approximately 25 years, I have practiced the law of lawyering, in a myriad of matters, including fee disputes, malpractice actions, ethics scenarios, risk-management situations, State Bar matters, partnership disputes, and more. In the course of my practice, I estimate that I have examined and analyzed the conduct of over a thousand lawyers, in terms of standard of care, ethics compliance, and otherwise. I have served as an expert on ethics, standard of care, and related issues in probably about 30-40 cases, with a lesser number resulting in formal designations. Approximately 10-12 have proceeded to the point of testimony over the years. (These are rough approximations, as I do not maintain exact numbers.)

3.      This is my abbreviated biography:

"Heather L. Rosing litigates and tries complex malpractice and fraud cases, advises in the areas of ethics and risk management, and serves as an expert witness. In her decades of defending lawyers and other professionals, Ms. Rosing has numerous notable victories in legal malpractice cases in state court, federal court, and arbitration. Well known for her advocacy and contributions to the profession, Ms. Rosing was one of 18 lawyers honored as 'Lawyer of the Decade' by the Daily Journal in January 2021. In September 2021, the San Diego legal community came together at the annual Red Boudreau Trial Lawyers Dinner to recognize Ms. Rosing with the Daniel T. Broderick III Award, which honors the highest standards of civility, dedication, and professionalism in the practice of law.

Ms. Rosing is a certified specialist in legal malpractice and a former member of the ABA Standing Committee on Lawyers Professional Liability. She served as

1    an appointed advisor to the Rules Revision Commission of the State Bar of
2    California, which recommended wholesale revisions to the Rules of Professional
3    Conduct (adopted in large part by the California Supreme Court in 2018), and as an
4    appointed member of the Mandatory Insurance Working Group of the State Bar. She
5    frequently speaks on a pro bono basis on malpractice, ethics, and risk management
6    issues across California and the country. Ms. Rosing was also appointed to serve as
7    the co-vice chair of the Civility Task Force, which is a joint effort among the
8    California Lawyers Association (CLA), the State Bar, and the California Judges
9    Association (CJA). She is also an appointed member of the ABA Standing
10   Committee on Specialization, which accredits specialty certification programs for
11   lawyers in particular fields of law offered by private organizations.

12         In 2018 and 2019, Ms. Rosing served as the inaugural President of the CLA,
13   the largest statewide voluntary Bar Association in the country. Ms. Rosing is now
14   the President of the philanthropic sister organization of CLA, the California
15   Lawyers Foundation (CLF), which focuses on supporting organizations, causes, and
16   projects related to the core CLA initiatives.

17         Previously, she served for four years on the State Bar of California's Board of
18   Trustees as Vice-President, Treasurer, and Chairperson of the Regulations,
19   Admissions, and Discipline Oversight Committee. Ms. Rosing has also served in
20   leadership roles of many other organizations, including as President of the San
21   Diego County Bar Association in 2008.

22         The recipient of numerous accolades, Ms. Rosing was recognized by
23   the Daily Journal as a Top Lawyer of the Decade in 2021, as well as one of the Top
24   100 Lawyers in California (2018-2021). Best Lawyers in America® has recognized
25   Ms. Rosing for a number of years, and honored her in both 2014 and 2022 as
26   Lawyer of the Year in Legal Malpractice Law Defense. She also has been frequently
27   honored by San Diego Super Lawyers®, including Top 25 Women San Diego Super
28   Lawyers, Top 50 San Diego Super Lawyers, and the Number 1 Attorney in San

Diego County. Ms. Rosing was named Woman of Influence in Law 2021 by the San Diego Business Journal, which previously honored her as CFO of the Year (2011, 2014, 2016). She is the recipient of the San Diego Law Library Foundation's Excellence in Public Service Award (2019), Fastcase 50 (2019), Earl B. Gilliam Bar Foundation's Corporate Commitment to Diversity Award (2016), Lawyer of the Year by the San Diego Defense Lawyers (2015), and the Exemplary Service Award by San Diego Volunteer Lawyer Program (2014). She holds the highest AV®-Preeminent™ Peer Review Rating by Martindale-Hubbell."

### Facts and Data Considered

4.      My opinions are based on:

a) My 25 years of experience as an ethicist, trial lawyer, and attorney, as described in my biography above;

b) Various rules, cases, and authorities, as cited below and otherwise;

c) The information and documents provided by Matthew Hrutkay, which included nonprivileged information regarding the events leading up to the filing of the September 25, 2020 complaint, as well as various pleadings, including the Third Amended Complaint, August 23, 2019 amended notice of entry of amended order, and August 28, 2019 minute order from *Proper Media, LLC, Inc. v. Snopes Media Group, Inc.* in Superior Court of California case no. 37-2017-00016311-CU-BC-CTL; and

d) ECF nos. 9, 25, 25-1, 26, 26-1, 29, 29-1, 29-2, 29-3, 31, 31-1, 31-2, 31-3, 35, 36, and 38 in this action.

5.      It is my general understanding that on May 4, 2017, Proper Media, LLC, Christopher Richmond, and Drew Schoentrup, through their counsel Karl Kronenberger, filed an action in the Superior Court of California against Snopes Media Group, Inc., Bardav, Inc., David Mikkelson, Vincent Green, Ryan Miller, and Tyler Dunn (the State Action).

6.      On April 4, 2019, those same plaintiffs filed a third amended complaint

in the State Action, where they alleged 18 causes of action. The fifteenth and
sixteenth causes of action for violation of Business and Professions Code section
17200, include allegations that certain representations had been made to induce
donations to a GoFundMe page for an entity were inappropriate when the funds
would be used for personal purposes and challenged the approval of advancements
of attorneys' fees to Messrs. Mikkelson, Green, and Miller; the seventeenth cause of
action for rescission and eighteenth cause of action for declaratory relief both solely
addressed the consents approving of the legal fee advancements.

7.      On or about August 22, 2019, the trial court in the State Action issued
an order granting Snopes Media Group's special motion under the anti-SLAPP
statute to strike the fourteenth through eighteenth causes of action.[1] The same order
concluded with respect to "allegations as to the litigation funding" that the plaintiffs
had not shown minimal merit because they had not shown an injury in fact
consisting of lost money or property.

8.      On or about August 28, 2019, the trial court in the State Action issued
an order granting David Mikkelson's special motion under the anti-SLAPP statute to
strike the fourteenth through eighteenth causes of action. In this order, the trial court
concluded that plaintiffs could not demonstrate a likelihood of success on the merits
(the second prong of the Anti-SLAPP analysis) because they could not rely on
future harm and that they had not proven any actual harm that had then occurred.

9.      Around this time, Mr. Richmond retained a new attorney, Mr. Hrutkay,
who entered an appearance in the State Action on or about September 12, 2019, but
then worked exclusively on appealing the anti-SLAPP dismissals. I understand that
Mr. Hrutkay brought over a decade of experience, having developed his practice at
two internationally recognized New York law firms, as well as at the San Diego

---

[1] The fourteenth claim does not appear to be related to those claims alleged in this
action and, therefore, has not been considered.

offices of Troutman Sanders LLP (now Troutman Pepper), before launching his own firm in 2019. The biography I reviewed of Mr. Hrukay is available at https://www.hrutkaylaw.com/#About.

10.    I have been informed that Mr. Hrutkay's notable representations include victories on behalf of clients in several high-profile complex disputes in federal court, including in this district, such as individual and class actions in the areas of unfair competition, defamation, and securities fraud. I also understand that Mr. Hrutkay was recognized by Super Lawyers® as a New York Rising Star in 2017, 2018, and 2019 and a San Diego Rising Star in 2021 as well as by the San Diego Business Journal as a Leaders in Law finalist.

11.    Nearly a year after Mr. Hrutkay's retention, on September 25, 2020, he and co-counsel Philip Tencer filed this action against Messrs. Mikkelson and Westbrook, with Snopes Media Group as a nominal defendant on Mr. Richmond's behalf.  I understand that the present action was filed only after a well-considered factual and legal inquiry that included an assessment of the res judicata issues.

12.    In the months prior to the filing of the complaint on September 25, 2020, Mr. Hrutkay specifically involved Mr. Tencer as a senior litigator to assist in analyzing the complex issues presented by the situation involving new evidence that was not previously available.  Mr. Tencer brought to the table over 25 years of experience in analyzing, litigating, and trying complex commercial and business disputes in state and federal courts, including securities litigation as well as patent infringement trade secret, and other intellectual property disputes involving cutting-edge technology, such as biotechnology, software development, telecommunications, and the internet. Mr. Tencer's academic credentials are impressive. He went to  University of California at Berkeley, Boalt Hall School of Law where he was on Law Review and graduated from UCSD with a B.A. in Economics and Philosophy.

13.    Here is the biography of Mr. Tencer that I reviewed:

EXPERT DECLARATION OF HEATHER LINN ROSING

https://tencersherman.com/attorneys/philip-c-tencer/. Here is an excerpt from that biography: "His trial experience includes both plaintiff and defense verdicts. He has run a docket of lawsuits and arbitrations prosecuting a company's patent portfolio resulting in several million dollars in settlements. He successfully tried a business case where his client was awarded 100% of its actual damages and punitive damages of four times actual damages. He was instrumental in protecting important technical trade secrets from public disclosure at trial, over the vigorous objections of both major media outlets and his client's litigation opponent. He has worked extensively with expert witnesses on damages and finance issues and also with technical expert witnesses in many areas including telecommunications, computer software, and the chemistry and physics of plastics. He managed extensive e-discovery efforts in extremely large cases, both as outside and in-house counsel."

14.     In filing and maintaining the September 25, 2020 action, Mr. Hrutkay relied not only on his own skill, training, research, and investigation noted above, but also on the opinion, research, and analysis of another highly experienced lawyer who further employed an associate to assist with research and development of the complaint in this Action. They both concluded that the claims were not barred by res judicata because they presented distinct issues not raised or adjudicated in the state action.

15.     I also understand that the new filing focused on the new information obtained by Mr. Richmond in the spring of 2020 in the form of Snopes' financial statements and tax returns from 2017 and 2018 that was not available until months *after* the anti-SLAPP dismissal of certain claims in the State Action on the grounds that Snopes as the company has suffered no damages or injury to make the derivative claims likely to succeed under the second prong of the anti-SLAPP statute. I understand that the thinking was that this information provided evidence of actual, as opposed to potential, damages incurred by Snopes as a result of the advancements of litigation funding (which was absent from the dismissed claims),

and also provided a basis for separate claims seeking damages for improper tax deductions attributed to the accounting treatment of the advancements on Snopes' books.

16.     Based on my review, I understand that this factual investigation and legal inquiry preceding the filing of the federal action was not short or superficial. I have not been provided with any privileged or confidential information, but I nevertheless understand that it took place over the course of two months (August-September 2020), and that there were extensive discussions and communications regarding the bases on which to argue that a separate primary right was at issue. As discussed further below, I have also been presented with a number of cases and citations that demonstrate that California case recognizes that the doctrine of res judicata and the underlying primary rights theory are complicated in their application to specific factual scenarios.

17.     A few months after the initial filing, on December 2, 2020, a verified First Amended Complaint was filed in the present action. That pleading contained four causes of action derivatively on behalf of Snopes for fraud, negligent misrepresentation, unjust enrichment, and aiding and abetting fraud that are each related to claims that Snopes had suffered actual damages due to the unavailability of funds for its operations and other financial needs. As to such claims, the pleading contained allegations of conduct that occurred after the state action, including that Mr. Richmond learned about 2019 financial losses arising from litigation funding when he received a report in 2020.

18.     The fifth cause of action in the First Amended Complaint was for breach of fiduciary duty, and was made as a direct claim. It alleged that Mr. Mikkelson and Mr. Westbrook underrepresented the company's income in its 2017 and 2018 tax returns, thereby exposing shareholders to liability. Of note, the First Amended Complaint is silent as to when these tax returns were filed, though it seems temporally impossible that either could be filed before the State Action was

initiated on May 4, 2017. I further note that the 2018 filing deadline for corporate returns was on April 15, 2019 (without an extension) or October 15, 2019 (with one), both of which were after the April 4, 2019 filing of the Third Amended Complaint in the State Action.

19.     On September 29, 2021, this Court entered an order granting requests for judicial notice and to file documents under seal, granting defendants' motion to dismiss without leave to amend, and granting the defendants' motion for Rule 11 sanctions based on the determination that the doctrine of res judicata should bar the action in this Court. The Court also ordered further briefing on the amount of sanctions.

## Opinions

20.     My primary opinion is that Matthew Hrutkay acted in conformity with the standard of care and his professional responsibilities when he filed the Complaint and the First Amended Complaint in this action, and maintained the action on behalf of Christopher Richmond. In reaching this opinion, I have concluded that Mr. Hrutkay did not file this action for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. To the contrary, the Complaint, and subsequent First Amended Complaint, were both filed after a great deal of research and consultation because they were believed to be necessary to advance the legal rights of the client. While this Court ultimately found that the matter was barred by the doctrine of res judicata, it is my expert opinion that the claims that were made could be construed as a nonfrivolous argument for fitting under the parameters of existing law or extending or modifying existing law.

21.     While I understand that the Court has already determined that Rule 11 was violated, I believe that the conclusions that I offer support a finding that monetary sanctions in any amount are not warranted, or, alternatively, should be kept under $1,000 because any other amount would be disproportionate to the

conduct and situation at hand. "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. Such sanctions can have an unintended detrimental impact on an attorney's career and personal well-being." *Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992).

22.     In reaching these conclusions, I examined Rules of Professional Conduct, rule 3.1 (a) (2) (effective November 1, 2018), which provides as follows: "A lawyer shall not . . . present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of the existing law."

23.     Although the ABA Model Rules are not authoritative in California, when not in conflict, they can be looked to for guidance or support for conduct. *See*, *e.g.*, *Chambers v. Super. Ct. (The State of Cal.)*, 121 Cal.App.3d 893, 898 & n. 3 (1981); *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 439-40 (9th Cir. 1983).

24.     Comment [1] to ABA Model Rule 3.1, an analogue to California Rules of Professional Conduct, rule 3.1, notes that without abusing legal procedure, an "advocate has a duty to use legal procedure for the fullest benefit of the client's cause." It further notes that the "law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change."

25.     California's current provision in rule 3.1 is the same as prior rule 3-200 (B) to which I have looked for interpretation and application because I find no reported cases yet under the current rule.

26.     Business and Professions Code section 6068, subdivision (c), requires, in pertinent part, a lawyer to "counsel or maintain those actions, proceedings or defenses only as appear to him or her legal or just."

27.     While I recognize that the standards for the imposition of monetary sanctions under Rule 11 (the issue before this Court) are not precisely aligned with

the standards for finding a violation of a Rule of Professional Conduct or a provision of the State Bar Act, I do think there is a connection between these inquiries. Specifically, Rule 3.1 parallels and can be analyzed in tandem with Rule 11. *See*, *e.g.*, *Obert v. Republic W. Ins. Co.*, 264 F. Supp. 2d 106 (D.R.I. 2003). In other words, an analysis under the Rules of Professional Conduct and the State Bar Act are relevant to the issue of whether this Court should impose monetary sanctions against Mr. Hrutkay. As discussed below in detail, it is my opinion that the filing and maintenance of this action did not violate the Rules of Professional conduct or the State Bar Act.

28.     A review of the authorities attendant to rule 3-200 (B), and, thus rule 3.1, as well as section 6068, subdivision (c), demonstrate that the standard for a violation of filing or maintaining an action is high, and the potential that a lawyer may be deterred from the vigorous assertion of a client's rights must be heavily weighed and considered.

29.     In *In the Marriage of Flaherty*, 31 Cal.3d 637 (1982), the California Supreme Court considered whether an appeal was frivolous, and addressed what procedures courts should follow in finding or criticizing attorneys for allegations of a frivolous appeal. The Court encouraged courts to impose sanctions only for the most "egregious conduct" so as to avoid a "serious chilling" effect on attorneys' as they advocate "vigorously" on their clients' behalf. *Id*. at 647–650. According to the California Supreme Court, "strong public policy" favors that "attorneys not be deterred from pursuing legal remedies because of personal liability" for sanctions that would "inject **undesirable self-protective reservations into the attorney's counseling role**." *Id*. at 647 (citation omitted; emphasis added). Thus, the mere fact that "some or many prudent attorneys would not have made the mistake" is not enough; rather, the attorney's decision must be shown "to have been so manifestly erroneous that no prudent attorney would have done so." *Id*. at 648 (citation omitted; emphasis added). Notably, the *Flaherty* Court recognized both the client and the

counsel's right to "present issues that are **arguably** correct, even if it is extremely unlikely that they will win on appeal." *Id.* at 651 (emphasis added). Thus, because the line between a "frivolous" and one that has "no merit" is vague, courts must be careful not to dismiss appeals as frivolous in all but the "clearest cases," or impose sanctions "sparingly" to deter all but the most "egregious conduct." *Id.* at 650–51.

30.     In another matter, *Lubetzky v. State Bar* (1991) 54 Cal.3d 308, 316, the Supreme Court of California reversed a determination that the applicant was not fit to be a member of the State Bar by, among other things, analogizing the disciplinary standards at issue there to the standards set forth in *Flaherty*. The Court went on to note its concern that sanctions "'should be used most sparingly to deter only the most egregious conduct,'" including to "avoid 'a serious chilling effect on the assertion of litigants' rights of [access]." (*Ibid.*, citations omitted; alteration in original.)

31.     When applying the facts described above to these standards, I conclude that Mr. Hrutkay did not violate rule 3.1 or section 6068, subdivision (c), and, indeed, that Mr. Hrutkay arguably had an obligation to file the pleadings in the present action as part of his duty to use legal procedure for the fullest benefit of the client's cause. This is especially true as Mr. Hrutkay represented the plaintiff in this action, and there are public policy reasons for those prosecuting claims (as opposed to defending them) to pursue them in good faith and after thoughtful investigation without fear of serious personal reprisal, which sanctions in any amount here would represent. I have not seen evidence that Mr. Hrutkay should have known with any degree of certainty how the Court would rule on the motion to dismiss or how clear it would seem to the Court that the doctrine of res judicata barred the action.

32.     In paragraph 20 above, I stated my conclusion that Mr. Hrutkay did not file or maintain the action for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. As stated above in the biographical section, in the course of my career, I have had the opportunity to

EXPERT DECLARATION OF HEATHER LINN ROSING

professionally examine the conduct of over *a thousand attorneys*, and I applied this training and expertise to the instant situation. I have not seen any evidence of such a motive on the part of Mr. Hrutkay, but have seen much evidence rebutting the assertion. If Mr. Hrutkay indeed filed for an improper purpose, he would not have retained Mr. Tencer, a highly experienced practitioner with another law firm, to assist in the evaluation. He also would not have spent nearly two months researching and analyzing the matter. There appears to have been a deeply held and sincere belief that the action was necessary to advance the legal rights of the client, and that the complex case law surrounding the topic of res judicata and the primary rights doctrine would allow a filing of this nature under these actual circumstances as well as clarify and further develop the complicated jurisprudence in this area of the law.

33. As mentioned above, in order to gain an understanding of the authorities at issue in the res judicata analysis, I looked at the cases cited in Mr. Richmond's papers opposing the motion to dismiss. In addition to demonstrating the complexity surrounding any res judicata analysis, the authorities could be construed to support a good faith belief that res judicata may not have been a bar to the claims brought in this action. These are a few of those authorities:

- In *Lawlor v. National Screen Service Corporation*, 349 U.S. 322 (1955), the Supreme Court discussed that two suits involving essentially the same course of wrongful conduct is not necessarily decisive because that course of conduct—such as in the case of an abatable nuisance—may frequently give rise to more than a single action, especially where the conduct alleged in the second action was subsequent to that in the first. *Id.* at 327-28.

- In *Commissioner v. Sunnen*, 333 U.S. 591 (1948), the Supreme Court determined that income tax claims for successive tax years are not the same claim for res judicata purposes. *Id.* at 597-98.

- In *Hawaiian Telephone Co. v. Public Utilities Comm'n*, 827 F.2d 1264

(9th Cir. 1987), there was no collateral estoppel or judicial estoppel for a telephone carrier who challenged a rate decision in federal court for a different rate period than a matter addressed in state court proceedings, even though both matters concerned FCC Order 81-312, which addressed such rate adjustments. *Id.* at 1274.

34.     Finally, I believe it is important to address the reasons why neither Mr. Hrutkay nor Mr. Tencer detailed their specific work product research, efforts, conversations, and analysis, in the opposition to defendants' Rule 11 motion. To a large extent, they are limited in what they can reveal to either me or this Court due to the duties owed to Mr. Richmond. California Business and Professions Code section 6068, subdivision (e) (1), provides that it is the duty of every California attorney "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

35.     The Rules of Professional Conduct further provide that lawyers, absent informed client consent, must not reveal confidential information and must protect confidentiality as provided by section 6068, subdivision (e) (1). So strong is the public policy behind this that non-clients may not pursue claims against lawyers when the defense of such claims would require the lawyers to refer to client confidential information; such matters are subject to dismissal. *See, e.g.*, *McDermott, Will & Emery v. Superior Court (Donna Smith James)*, 83 Cal.App.4th 378, 382–83 (2000); *Solin v. O'Melveny & Myers*, 89 Cal.App.4th 451, 456–57 (2001) (holding that dismissal is appropriate because there can be no balancing of confidentiality against the right to prosecute a lawsuit to redress a legal wrong).

36.     The duty of confidentiality applies to information relating to the legal representation, whatever its source, and encompasses matters communicated in confidence by the client, and therefore protected by the attorney-client privilege, matters protected by the work product doctrine, and matters protected under ethical standards of confidentiality, all as established in law, rule and policy. *See In the*

Case No. 3:20-cv-01925-W-KSC

1   *Matter of Johnson*, 4 Cal. State Bar Ct. Rptr. 179 (Rev. Dept. 2000) (also

2   concluding that the ethical duty of confidentiality "prohibits an attorney from

3   disclosing facts and even allegations that might cause a client or a former client

4   public embarrassment"); *Goldstein v. Lees*, 46 Cal.App.3d 614, 621 (1975). In short,

5   "[c]lient secrets means any information obtained by the lawyer during the

6   professional relationship, or relating to the representation, which the client has

7   requested to be inviolate or the disclosure of which might be embarrassing or

8   detrimental to the client." Cal. State Bar Formal Opn. No. 1993-133. Information

9   can be "confidential," even if it is not "privileged." *See id.* at 621, n.5 ("The

10  attorney-client privilege is more limited than the ethical obligation of a lawyer to

11  guard the confidences and secrets of his client."); *see also* Cal. Rules of Prof. Cond.,

12  rule 1.6, Cmt. [2]; Cal. State Bar Formal Opn. Nos. 2003-161, 1988-96, 1986-87,

13  and 1981-58; Los Angeles County Formal Opn. No. 436. Accordingly, a lawyer

14  may not reveal confidential information except with the consent of the client or

15  holder of the privilege as authorized or required by the State Bar Act, the Rules of

16  Professional Conduct, or other law.

17      37.    As stated above, I believe the conclusion that Mr. Hrutaky acted in

18  conformity with the standard of care and his professional responsibilities when he

19  filed and maintained this action on behalf of Christopher Richmond support a

20  finding that monetary sanctions in any amount are not warranted, or, alternatively,

21  that they should be kept under $1,000 because any other amount would be

22  disproportionate to the conduct and situation at hand. Sanctions of $1,000 is the

23  amount pursuant to Business and Professions Code section 6068, subdivision (o)(3),

24  that would be reportable to the State Bar of California, and carry potentially

25  significant adverse consequences to Mr. Hrutkay's career, which, in my opinion, are

26  not warranted under the circumstances.

27      I declare under penalty of perjury under the laws of California and the United

28  States of America that the foregoing is true and correct. Executed this 15th day of

1 | November 2021 at San Diego, California.

2

3 | _____

   Heather Linn Rosing

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28