UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RICHMOND,<br><br>                              Plaintiff,<br><br>v.<br><br>DAVID MIKKELSON and BRAD WESTBROOK,<br><br>                              Defendants<br><br>and<br><br>SNOPES MEDIA GROUP, INC.,<br><br>                              Nominal Defendant. | Case No.:  20-cv-1925 W (KSC)<br><br>**ORDER AWARDING SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 [DOCS. 25, 26]** |

On September 29, 2021, this Court granted Defendants' motions to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) and motions for sanctions under Federal Rule of Civil Procedure 11.  (*See Order* [Doc. 38].) Although Defendants' Rule 11 motions requested reimbursement of their attorneys' fees, their briefs did not discuss the amount incurred.  The Order, therefore, requested supplemental briefing regarding Defendants' attorneys' fees.  (*Id.* 19:25–20:6.)

The matter is now fully briefed.  The Court finds the matter is appropriate for determination on the papers submitted and without oral argument.  See Civ. L.R. 7.1(d)(1).  For the reasons that follow, the Court **SANCTIONS** Plaintiff Christopher Richmond in the amount of $30,000 and Attorney Matthew Hrutkay in the amount of $10,000.

I.  **PROCEDURAL BACKGROUND**[1]

On September 25, 2020, Plaintiff Christopher Richmond filed this lawsuit against Defendants David Mikkelson and Brad Westbrook (the "Individual Defendants"), and Nominal Defendant Snopes Media Group, Inc.  (*See Compl.* [Doc. 1].)  On December 2, 2020, Plaintiff filed the FAC, which asserted four derivative counts on behalf of Snopes and one "direct" count for fraud.  (*See FAC* [Doc. 9].)

On December 16, 2020, the Individual Defendants and Snopes filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Both motions argued, among other things, that the FAC's derivative counts are barred by res judicata because the San Diego Superior Court dismissed similar derivative causes of action in a related and ongoing lawsuit (the "State-Court Action") involving Richmond, Snopes and Mikkelson.  (*Indiv. Defs' MTD P&A* [Doc. 11-1] 11:10–15:2; *Snopes' MTD P&A* [Doc. 12-1] 13:9–19:23.)  Specifically, the state-court granted Snopes' and Mikkelson's special motions to strike derivative causes of action that Richmond asserted on behalf of Snopes, finding the conduct at issue—i.e., Snopes' funding of Mikkelson's litigation fees—was constitutionally protected (the "Anti-SLAPP Order").  (*See Indiv. Defs' RNJ in Support of MTD, Ex. 11* [Doc. 11-13] at p. 5, *Ex. 12* [Doc. 11-14] at p. 4.)

---

[1] The factual background is set forth in this Court's September 29, 2021 Order granting Defendants' motions to dismiss and motions for sanctions.

On January 24, 2021, while the motions to dismiss were pending, Snopes filed a motion for sanctions under Rule 11. On January 26, the Individual Defendants filed a Rule 11 motion. Both motions argued Richmond and his attorney, Matthew Hrutkay, violated Rule 11 because they knew the derivative counts in the FAC were barred by res judicata based on the state-court's Anti-SLAPP Order. (*See Snopes Rule 11 P&A* [Doc. 25-1] 1:7–2:6; *Indiv. Defs' Rule 11 P&A* [Doc. 26-1] 2:9–20.) Defendants requested an award covering their attorneys' fees, but neither motion discussed the amount of fees incurred. (*Snopes' Rule 11 P&A* [Doc. 25-1] 7:19–23; *Indiv. Defs' P&A* [Doc. 26-1] 3:2–5.)

On September 29, 2021, this Court granted Defendants' motions to dismiss finding the derivative counts were barred by res judicata based on the Anti-SLAPP Order. (*Order* [Doc. 38] 9:16–13:22.[2]) The Order also found (1) "Attorney Hrutkay should have known this lawsuit was barred by res judicata and that the claims asserted were, therefore, legally baseless" and (2) the filing of the lawsuit was evidence of harassment by Hrutkay and Richmond. (*Id.* 18:26–19:1, 19:6–15.) Because Defendants' briefs did not address the fees incurred, the Order requested supplemental briefing. (*Id.* 19:25–20:6.)

On October 15, 2021, Defendants filed their supplemental briefs. (*See Snope's Supp. Brief* [Doc. 42]; *Indiv. Defs' Supp. Brief* [Doc. 43].) On November 16, Richmond filed his supplemental opposition. (*Pl's Supp. Opp'n* [Doc. 57].) On December 3, Defendants filed their supplemental replies and objections to the declarations and exhibits attached to Richmond's opposition. (*Snopes' Supp. Reply* [Doc. 59]; *Snopes' Obj.* [Doc. 61]; *Indiv. Supp. Reply* [Doc. 60]; *Indiv. Obj.* [Doc. 60-1].)

---

[2] The Order also dismissed the "direct" count for failure to state a claim and denied leave to amend because (1) the FAC specifically alleged any damages were potential and, therefore, speculative and (2) the count was barred by res judicata. (*Id.* 13:25–17:17.)

## II. DISCUSSION

Rule 11 is intended to deter baseless filings in district court and imposes a duty of 'reasonable inquiry' so that anything filed with the court is "well grounded in fact, legally tenable, and not interposed for any improper purpose." Council of So. Cal. v. F.B.I., 757 F.3d 870, 872 (9th Cir. 2014). "An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court 'claims, defenses, and other legal contentions … [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.'" Holgate v. Baldwin, 425 F.3d 671, 675–76 (9th Cir. 2005) (citing Fed.R.Civ.P. 11(b)(2)). Sanctions are "an extraordinary remedy, one to be exercised with extreme caution." Operating Eng'rs Pension Trust v. A-C Co., 859 F.2d 1336, 1345 (9th Cir. 1988).

"Once a court finds that an attorney has violated rule 11, it must impose sanctions." Unioil, Inc. v. E.F. Hutton & Co., Inc., 809 F.2d 548, 559 (9th Cir. 1986). Courts have "broad discretion with regard to the type and amount of sanctions to be imposed." Rivera v. E. Bay Mun. Util. Dist., 2015 WL 6954988, at *9 (N.D. Cal. Nov. 10, 2015) (citing Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir. 1986)); see also Unioil, 809 F.2d at 559 ("The selection of the type of sanction to be imposed lies of course within the district court's sound exercise of discretion. [Citation omitted.]"). "The sanction may include nonmonetary directives; an order to pay a penalty into the court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed.R.Civ.P. 11(c)(4). But whatever the sanction, it "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Id.

Here, Defendants request reimbursement for their attorneys' fees incurred in defending this litigation. In their supplemental brief, Snopes contends it has incurred $150,334 in fees (*Snopes' Supp. Brief* [Doc. 42] 2:3–5) and the Individual Defendants contend they have incurred $119,340 (*Indiv. Defs' Supp. Brief* [Doc. 43] 1:24–2:2).

Richmond attacks the reasonableness of Defendants' fees and argues a sanction of more than a quarter of a million dollars "would be punitive, disproportionate and unnecessary to accomplish Rule 11's purpose." (*Pl's Supp. Opp'n* [Doc. 57] 10:6–7, 18:10–25:21.) Richmond also argues a non-monetary sanction is warranted and would sufficiently deter future violations of Rule 11. (*Id.* 10:9–18:9.)  For the following reasons, the Court finds a sanction of $269,674 is not warranted, and instead finds $40,000 is sufficient to deter future Rule 11 violations.

### A.  Defendants' objections are overruled.

Richmond's supplemental brief includes declarations from himself [Doc. 57-2], his attorney Matthew Hrutkay [Doc. 57-1], Philip Tencer [57-3], Heather Rosing [Doc. 57-4] and Alan Brubaker [57-5].  Richmond's declaration also includes exhibits.  Most of Snopes' objections and all the Individual Defendants' objections pertain to statements and exhibits the Court did not consider in determining the sanction.  Accordingly, those objections are denied as moot.

Regarding the statements in Richmond and Hrutkay's declarations considered in determining the sanction, Snopes' primary objection is that they are irrelevant because the Order requested briefing on Defendants' attorneys' fees and the declarations do not address the issue. (*Snopes' Obj.* 2:18–26, 3:10–26, 24:9–25:23.)  Although true, the statements are relevant in determining the appropriate sanction under Rule 11.

The "central purpose of Rule 11 is to deter baseless filing[s] in District Court." Refac Intern. LTD v. Hitachi LTD, 141 F.R.D. 281, 287 (C.D. Cal. 1991).  Rule 11 also explicitly states that the "sanction imposed under this rule *must be limited* to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11 (c)(4) (emphasis added).  To this end, courts have relied on more than a defendant's fees to determine an appropriate sanction.  As discussed below, statements in Richmond and Hrutkay's declarations bear on other relevant factors.

5

Additionally, although the Order requested briefing on Defendants' attorneys' fees, Snopes' supplemental brief addressed factors other than its fees. (*See Snopes' Supplemental Brief* 6:26–7:25.) The Order also allowed Defendants to file a reply to Richmond's supplemental opposition and Snopes, therefore, could have addressed any other issues raised. (*See Dismissal Order* 20:6.) Indeed, the Individual Defendants' supplemental reply addressed Richmond's argument regarding other Rule 11 factors. (*Indiv. Defs' Reply* [Doc. 60] 9:11–10:5.)

For these reasons, the Court will overrule Snopes' objections.[3]

### B. A non-monetary sanction is not warranted.

In his opposition, Richmond argues a non-monetary sanction is warranted because his attorneys, Hrutkay and Philip Tencer, reasonably believed the "claims" were not barred by res judicata and filing this lawsuit could not be construed as harassment. (*See Pl's Supp. Opp'n* 13:7—8; 14:20–16:20.) In support of this argument, attorney Tencer states that he did not believe res judicata applied because "the wrongdoing was first discovered following Richmond's receipt in May 2020 of the Company's 2017, 2018 and 2019 income tax returns, which revealed evidence of damage to Snopes and its shareholders." (*Tencer Decl.* [Doc. 57-3] ¶ 6.) Because the state-court's Anti-SLAPP Order was issued *before* Richmond received those documents, Tencer contends res judicata could not bar "the claims." (*Id.* ¶¶ 6–7.) Similarly, attorney Hrutkay attempts to rely on Richmond's discovery of the potential tax issues after the Anti-SLAPP Order was issued to justify filing this lawsuit: "Richmond was finally provided with financial information in May 2020 that showed the harm to the Company and its shareholders from

---

[3] It is worth mentioning that the Order requested briefing on Defendants' attorneys' fees because the Rule 11 motions were arguably incomplete in that they failed to address the amount of fees incurred. And in requesting briefing only on attorneys' fees, the Court did not anticipate Defendants' fees would exceed a quarter of a million dollars and be so clearly beyond what is warranted in a case dismissed at the pleading stage.

6

the advancements and the related improper income tax deductions…." (*Hrutkay's Decl.* [Doc. 57-1] ¶ 12.) These statements are unpersuasive.

As an initial matter, it is important to reiterate that the Order found Hrutkay and Richmond violated Rule 11 because of the FAC's derivative counts, not the direct count:

> Evidence also supports a finding that this lawsuit was filed for an improper purpose, specifically to harass Defendants. . . . [T]here is no dispute that Richmond, Snopes and Mikkelson were also parties in the State-Court Action. Additionally, the state-court's rulings on the anti SLAPP motions clearly struck claims based on Richmond's contention the litigation advances were unlawful, which is the same issue raised in the derivative counts in this case. Thus, sanctions are appropriate against Richmond and Attorney Hrutkay on this basis. See Zaldivar, 780 F.2d at 834 (finding successive filing of complaints constituted harassment under Rule 11).

(*Order* 19:6–16.)

The problem with Tencer and Hrutkay's explanation is that the derivative counts did not seek or otherwise involve damages arising from the "improper tax deductions" that Richmond discovered reviewing the 2017, 2018 and 2019 tax returns. In fact, none of the derivative counts even mention the improper tax deductions or the tax returns. (*See* FAC ¶¶ 58–86.) Instead, the damages claimed in the derivative counts were for depriving Snopes of "funds that would have otherwise been available for operations purposes, distribution to stockholders, and/or re-investment into Snopes' future growth." (*Id.* ¶¶ 63, 69, 80; *see id.* ¶ 72.) And as stated in the Order, the FAC explicitly tied this harm to "Snopes approval of the [legal] Advances," not the improper tax deductions. (*Id.* ¶¶ 63, 69, 80; *see id.* ¶ 72.) In contrast, only the breach of fiduciary duty count addressed the improper tax deductions, which allegedly subjected Richmond to *potential* damages:

> 90.  In his role as CFO of Snopes, Westbrook caused Snopes to file the 2017 and 2018 Returns, which significantly underrepresented the Company's ordinary business income for those years by improperly deducting from Snopes' business income Advances which funded personal legal fees, and which served no business purpose to Snopes. Because . . . of the sheer significance of the Company's deduction of the Advances to its reported ordinary business income for 2017 and 2018, Westbrook knew or

>should have known at the time of the filing of the 2017 and 2018 Returns that they represented false statements to various governmental agencies, and that making such false statements subjected Richmond to potential criminal, regulatory, and/or civil liability, among other individual damages.

(*FAC* [Doc. 1] ¶ 90.)  Because information revealed in the 2017, 2018 and 2019 tax returns was not relevant to the derivative counts, Tencer and Hrutkay's explanation as to why they believed res judicata did not apply is unpersuasive.  Filing the FAC based on claims dismissed in the State-Court Action is evidence of an intent to harass.  See Zaldivar v. City of Los Angeles, 780 F.2d 823, 832 (9th Cir. 1986) ("Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11.)  A monetary sanction is, therefore, warranted.[4]

### C. $40,000 is sufficient to deter future Rule 11 violations.

The "central purpose of Rule 11 is to deter baseless filings in District Court." Refac Intern. LTD, 141 F.R.D. at 287.  Even where the amount of attorneys' fees requested is reasonable, courts have imposed a smaller sanction where it is sufficient to deter further abuses.  See Stewart v. American Intern. Oil & Gas Co., 845 F.2d 196, 201–202 (9th Cir. 1988) (affirming district court order awarding roughly half of attorneys' fees requested because "district court considered that although the full amounts requested appeared to be reasonable, a lesser amount was sufficient to get the attention of [plaintiff] and deter it from further abuses.")  In determining the type and amount of sanction, courts consider the cost of the Rule 11 violation.  Eastway Const. Corp. v. City of New York, 637 F.Supp. 558, 571 (E.D. NY 1986).  Courts may also consider factors such as:

---

[4] Hrutkay also indicates he did not believe the derivative counts are barred by res judicata because "further advancements had been made by Snopes since the order granting the anti-SLAPP motions in the State Action…." (*Id.* ¶ 13.)  Under Hrutkay's theory, he could refile a new lawsuit every time Snopes' advanced Mikkelson's legal fees.  But, regardless of when the advances were made, the state-court already determined Snopes' payment of Mikkelson's legal fees is protected activity.

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Lee v. POW! Entertainment, Inc., 468 F.Supp.3d 1220, 1234 (C.D. Cal. 2020) (citing Fed.R.Civ.P. 11, Advisory Comm. Notes (1993 Amendments), Subdivisions (b) and (c)).

    Regarding the cost of the Rule 11 violation, the appropriate "measure to be used is not the actual expenses and fees but those the court determines to be reasonable." Altmann v. Rushmore Loan Management Services, Inc., 2015 WL 8483111, *7 (E.D. Cal. 2015) (quoting In re Yagman, 796 F.2d 1165, 1185 (9th Cir. 1986)).  Here, Snopes and the Individual Defendants contend that from September 25, 2020 through March 2021, they spent more than 500 hours defending this case for a total cost of $269,674. The Court is not convinced the cost was reasonable given that this case was dismissed at the pleading stage, after each set of Defendants filed two motions.  That more than 500 hours was required to file the motions is especially surprising because (1) Defendants' attorneys were also involved in the State-Court Action—in fact, they filed the motions that led to the state court's Anti-SLAPP Order— and thus were already familiar with the relevant facts, many of the legal issues and the procedural background, and (2) there was considerable overlap regarding the legal issues raised in the motions filed in this case, particularly the Rule 11 motions.  Regardless, even if Defendants' attorneys' fees were reasonable, other factors convince the Court that a much smaller sanction is warranted.

    Attorney Hrutkay and Richmond's declarations address their ability to pay Defendants' attorneys' fees.  Richmond states that "[a]lthough I do not claim an inability to pay the fees sought by Snopes and the Individual Defendants, payment of the full amount requested here, would represent approximately 50% of my net income for 2020

and 25% of my entire life savings." (*Richmond Decl.* [Doc. 57-2] ¶ 19.) He further points out that he faces "significant liabilities in the State Action…." (*Id.*) This is confirmed by the state-court's attorney fee award of $233,529.00 (= $67,156.50 to Snopes and $166,372.50 to Mikkelson) against Richmond and the other plaintiff in that case. (*See Kozaczuk Reply Decl.* [Doc. 59-2], *Ex. B* [Doc. 59-4] pp. 3, 4.)

As for attorney Hrutkay, he appears to be a solo practitioner who opened his office in 2019. (*Hrutkay Decl.* [Doc. 57-1] ¶ 3.) His primary office is in Julian, California, a small mountain community in San Diego County. (*Id.* ¶ 15.) In 2020, Hrutkay's gross revenues were approximately $174,000 and he claims to "have no meaningful assets beyond [his] 2002 and 2010 vehicles and [his] retirement account. (*Id.* ¶¶ 15, 16.) He also has approximately $100,000 in liabilities, which include his student loans. (*Id.* ¶ 16.)

Though Richmond does not dispute his ability to pay Defendants' attorneys' fees, the Court is primarily concerned with Hrutkay's ability to pay the sanction. The statements in his declaration strongly suggest a large monetary sanction would cause serious harm to his ability to continue his practice. See Altmann, 2015 WL 8483111, *7 ("In its distilled form, the sanctions are intended to deter, not to implement a professional death penalty.") And while Defendants suggest "Richmond should bear a significant portion of the liability for monetary sanctions" (*see Snopes' Supp. Brief* 6:26–27), the Court is not persuaded that imposing a significantly larger sanction on the client is warranted given that the basis for the Rule 11 violation is the res-judicata doctrine, a legal bar to Richmond's claims. See e.g., Id. (awarding Rule 11 sanctions only against attorney for filing lawsuit barred by res judicata).

Next, the Court considers "whether the lawyer is a neophyte who needs education, a repeat offender, or a person of standing at the bar whose actions have heretofore been ethical and in the high tradition of the bar." Eastway Corp., 637 F.Supp. at 571. There is no evidence in the record suggesting Hrutkay is a repeat offender who needs a severe sanction to deter further violations. Instead, the records suggest he is an upstanding member of the bar. (*Hrutkay Decl.* ¶¶ 5, 6.)

10

1      Another factor is Defendants' need for compensation.  The record indicates Snopes has raised "at least $1,793,810 over the last several years" to help pay for litigation.  (*Richmond Decl.* ¶ 20.)  Accordingly, this factor also supports a reduced award, particularly with respect to Snopes.

     Also relevant is the degree of frivolousness and vindictiveness.  Although the filing of this lawsuit supports a finding of harassment, there is no evidence suggesting a high degree of frivolousness or vindictiveness, particularly with respect to attorney Hrutkay.  Unlike Defendants' attorneys, attorney Hrutkay was not involved in the State-Court Action until after the Anti-SLAPP Order was issued, which led him to consult with Tencer regarding the res judicata issue.  (*Hrutkay Decl.* ¶ 12.)  In fact, before Hrutkay was retained, Richmond had been represented by at least three other law firms in the case.  (*See Snopes' RJN in Support of MTD* [Doc. 12-2], *Ex. 1* [Doc. 12-4], *Ex. 6* [Doc. 12-4], *Ex. 23* [Doc. 12-6].)  Hrutkay's late appearance and more limited role in the State-Court Action, together with his statement about consulting with Tencer regarding "strategic concerns about whether to pursue certain claims, and if so, how those claims should be pursued within the bounds of the law" (*Hrutkay Decl.* ¶ 10).  The Court is also sympathetic to Hrutkay's contention that California's primary-right analysis can be complicated.  For these reasons, the Court does not find a high degree of frivolousness or vindictiveness.

     Finally, although the parties are aggressively litigating the State-Court Action, this Court's Order was the first determination that the derivative counts based on Snopes' litigation funding are barred by res judicata.  This is in contrast to other cases that have awarded sanctions based on a plaintiff's repeated attempt to relitigate claims.  See <u>Cannon v. Loyola University of Chicago</u>, 784 F.2d 777, 782 (7th Cir. 1986) (affirming Rule 11 sanctions awarded after dismissal of plaintiff's third lawsuit, reasoning plaintiff's "ten year history of litigation demonstrates her penchant for harassing the defendants"); <u>Lee v. POW! Ent., Inc.</u>, 468 F.Supp.3d 1220 (C.D. Cal. 2020) (subject agreement was subject of "numerous cases filed in federal courts throughout the country."); <u>Kaufman v.

Int'l Long Shore & Warehouse Union, 2017 WL 3335760 (N.D. Cal. 2017) (pro se plaintiffs previously filed 7 cases); McMahon v. Pier 39 Ltd. Partnership, 2003 WL 22939233 (N.D. Cal. 2003) (declaring plaintiff a vexatious litigant and awarding sanctions after plaintiff filed approximately 12 lawsuits against defendant); Damiani v. Adams, 657 F.Supp. 1409, 1418 (S.D. Cal. 1987) (plaintiff's lawsuit involved "legal arguments already aired, and rejected, in numerous other lawsuits."); see also Sommer v. Unum Life Ins. Co. of America, 35 Fed. Appx. 489 (9th Cir. 2002) (affirming district court's increase in sanctions with the dismissal of each successive lawsuit). For all these reasons, the Court does not find a high degree of frivolousness or vindictiveness.

In summary, based on Hrutkay and Richmond's respective ability to pay, as well as the other factors discussed above, the Court finds a $10,000 sanction is sufficient to deter future violations by attorney Hrutkay, and $30,000 is sufficient to deter future violations by Richmond.

### III.   CONCLUSION & ORDER

For the foregoing reasons, the Court **SANCTIONS** Plaintiff Christopher Richmond in the amount of $30,000 and Attorney Matthew Hrutkay in the amount of $10,000 payable as follows:

- $20,000 towards Defendant Snopes's attorneys' fees.
- $20,000 towards David Mikkelson and Brad Westbrook's attorneys' fees.

**IT IS SO ORDERED.**

Dated:  January 25, 2022

_____
Hon. Thomas J. Whelan
United States District Judge